UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-cv-23429-MGC

JEFF RODGERS, et. al.,
individually and on behalf of
all others similarly situated,

    Plaintiffs,

vs.

HERBALIFE, LTD., et. al.

    Defendants.

_____/

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS[1]

Defendants Mark Addy, Jillian Addy, Dennis Dowdell, Garrain S. Jones, Cody Morrow, Christopher Reese, Gabriel Sandoval, Emma Sandoval, John Tartol, Leslie R. Stanford, Fernando Rancel, Lori Baker, Manuel Costa, Mark Davis, Jenny Davis, Danielle Edwards, Graeme Edwards, Thomas P. Gioiosa, Sandra Gioiosa, Alcides Mejia, Miriam Mejia, Paulina Riveros, Ron Rosenau, Carol Rosenau, Amber Wick, Jason Wick, Jorge De La Concepcion, Disney De La Concepcion, Jennifer Micheli, Guillermo Rasch, Claudia Rasch, Samuel Hendricks, Amy Hendricks, Bradley Harris, Paymi Romero, Arquimedes G. Valencia, Ryan Baker, Kristopher Bickerstaff, Mark Matika, Enrique Carillo, Daniel J. Waldron, Susan Peterson, Michael Katz, and Debi Katz (collectively the "Individual Defendants") move the Court pursuant to Rule 12(b)(6) for an order dismissing all claims asserted by Plaintiffs in this action.[2]

---

[1] This Motion is filed without prejudice to Defendants' Joint Motion to Compel Arbitration (ECF No. 62) and Defendants' Joint Motion to Transfer Venue to the Central District of California (ECF No. 63).

[2] Defendants Herbalife, Ltd., Herbalife International, Inc., and Herbalife International of America, Inc. ("Herbalife"), separately move for dismissal of the Complaint under Rule 12(b)(6). The Individual Defendants incorporate by reference and join in Herbalife's

1

I.     **INTRODUCTION.**

Herbalife is a global company that markets and sells nutritional products through a network of independent Distributors ("Distributors").  Herbalife markets and sells its products using a direct-selling model, which avoids traditional retail outlets and makes sales directly to consumers as well as through a network of nearly 2.3 million independent distributors.  In this case, eight individuals—some current Distributors, some former Distributors—have filed a putative class action, accusing the defendants of federal racketeering in connection with Herbalife's distributor events.  (*See generally* ECF No. 1.)  Plaintiffs seek to recover—trebled—the money they spent attending Herbalife events, which they now claim were worthless.  (*E.g.*, *id.* ¶¶ 10–11 & pp. 76, 77.)  Plaintiffs name Herbalife in the lawsuit on grounds that it originated, controlled, orchestrated, and benefitted from the events.  (*E.g.*, *id.* ¶¶ 57, 60, 62, 63, 70, 78, 90, 118.)  They claim Herbalife delegated certain tasks to an "ever-changing," "shifting list" of distributors that formed an "amorphous group" of leaders.  (*Id.* ¶¶ 56, 71, 82.)  Plaintiffs selected forty-four of those distributors to name as Individual Defendants.  (*E.g.*, *id.* ¶ 4.)

The Individual Defendants are comprised of a group of men and women who are diverse in their level of involvement with Herbalife, their financial success with Herbalife, and their geographical location.  But that cannot be gleaned from the Complaint, which is long on conclusory, repetitive allegations, grouping all forty-four Individual Defendants together, but bereft of critical facts about each.  The consequences of Plaintiffs' failure to provide sufficient information and facts about the Individual Defendants are that (1) the alleged predicate acts of wire fraud fail to satisfy Rule 9(b); (2) each Individual Defendants' alleged misconduct does not causally connect to Plaintiffs' injuries; (3) the Complaint does not plausibly establish scienter for each Individual Defendant; (4) the Complaint does not plausibly establish that each Individual Defendant participated in the operation or management of the alleged RICO enterprise; and (5) no facts support that any Individual Defendant willingly entered into a conspiracy to defraud Plaintiffs.  Each of these shortcomings is grounds for dismissal of Plaintiffs' claims.

---

Motion to Dismiss (except with respect to the state law claims brought only against Herbalife).

The deficiencies of the Complaint are not bound to Plaintiffs' conclusory pleading style, however.  In filing this lawsuit, Plaintiffs have also ignored that, in 2015, a class of independent distributors, which included four of the eight plaintiffs here (Patricia Rodgers, Jeff Rodgers, Izaar Valdez, and Felix Valdez), entered into a settlement with Herbalife under which they released the claims brought here.  For all these reasons, as fully set forth herein, Plaintiffs' RICO claims against the Individual Defendants should be dismissed.

## II.     ARGUMENT.

Plaintiffs attempt to state two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. against the Individual Defendants. Count One alleges a claim for a primary violation of RICO Section 1962(c), which makes it unlawful for a person employed by or associated with an enterprise to conduct or participate in conducting the affairs of such enterprise through a pattern of racketeering activity.  *See* 18 U.S.C. § 1962(c).  Count Two alleges a claim of conspiracy in violation of RICO Section 1962(d) to commit the primary RICO violations asserted in Count One.  *See* 18 U.S.C. § 1962(d).  For the reasons discussed below, both counts fail to state a claim upon which relief may be granted and should be dismissed, with prejudice.

### A.     The Section 1962(c) Claim Fails As Against the Individual Defendants.

To state a civil RICO claim, "a plaintiff must establish 'three essential elements': first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).  When the first element (predicate acts) is premised on fraud, the fraud must be pled with particularity. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

In their attempt to name more than forty individual defendants in this case, Plaintiffs have overlooked several critical pleading requirements. First, Plaintiffs base their Section 1962(c) claims on alleged predicate acts of wire fraud, but do not set out specific acts of fraud with particularity, much less differentiate the alleged conduct of each Individual Defendant. Second, Plaintiffs do not plausibly connect their alleged injuries to racketeering activity by the Individual Defendants, thereby failing to plead proximate cause.  Third,

3

Plaintiffs fail to allege facts supporting that the Individual Defendants committed predicate acts with the requisite scienter.  Fourth, Plaintiffs have not pled facts plausibly showing that any of the Individual Defendants, directly or indirectly, participated in the operation or management of the alleged RICO enterprise's affairs.

### 1. The Allegations of Racketeering Activity Do Not Satisfy Rule 9(b).

To be liable under RICO, a defendant must have "participated in an illegal enterprise 'through a pattern of racketeering activity.'"  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting 18 U.S.C. § 1962(c)).  "Racketeering activity" includes "such predicate acts as mail and wire fraud."  *Id.* (quoting 18 U.S.C. § 1961(1)).  A "pattern" of such activity requires at least two "distinct crimes."  *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1377 (S.D. Fla. 2012).  "Each predicate act must be pled individually and be capable of standing on its own; *i.e.*, it must contain all of the elements of the crime."  *Id.*  "The RICO claim, in other words, must read like a 'mini-indictment,' alleging separate 'counts' of mail or wire fraud."  *Id.* at 1376.

In this case, Plaintiffs attempt to allege predicate acts consisting of wire fraud.  "[W]ire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme."  *Am. Dental*, 605 F.3d at 1290.  Rule 9(b) requires the details of the alleged wire fraud to be pled with particularity.  *Ambrosia*, 482 F.3d at 1316–17.  Thus, for each predicate act, Plaintiffs must allege "the parties to, the place of, or the content of the wire communications, any misrepresentations made, or how the communications were entwined in the scheme to defraud."  *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 790 (11th Cir. 2016); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) ("the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud").

Consistent with Rule 9(b), a plaintiff must differentiate among defendants and "inform each defendant of the nature of his alleged participation in the fraud."  *Ambrosia*, 482 F.3d at 1317.  Defendants may not be "lumped" together.  *See, e.g., Bray & Gillespie*

4

*Management LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1363 (M.D. Fla. 2007) ("When the complaint asserts claims against multiple defendants, it cannot merely 'lump together all of the defendants in their allegations of fraud.'" (quoting *Brooks*, 116 F.3d at 1317)).

In this case, instead of submitting a "mini-indictment" that alleges at least two "separate counts" of wire fraud by each Individual Defendant, Plaintiffs allege globally that "[e]ach month Defendants distribute, or cause to be distributed, hundreds of thousands of fraudulent messages about Circle of Success events across the wires" and that "[t]hese messages persuade participants to attend these events." (ECF No. 1 ¶ 96; *id.* ¶ 94 (alleging that the Individual Defendants "conspire to promote" the events using various social media outlets); *see also id.* ¶¶ 54, 56, 61, 97, 100.)  This is insufficient under Rule 9(b).  *See Transatlantic*, 666 F. App'x at 790 (RICO claims properly dismissed where based on "conclusory allegations of mail and wire fraud," *i.e.*, plaintiff failed to "describe the parties to, the place of, or the content of the wire communications, any misrepresentations made, or how the communications were entwined in the scheme to defraud"); *see also Libov v. Readix, Inc.*, 2011 WL 13216996, at *1 (S.D. Fla. Sept. 8, 2011) ("Plaintiffs have engaged in impermissible group pleading by lumping all Defendants together, rather than differentiating between the individual Defendants in setting forth who made the alleged misrepresentations.").[3]

Moreover, even the Complaint's exhibits, ostensibly included in an attempt to avoid the Complaint's obvious group pleading problems and demonstrate each Individual

---

[3] In the few instances where Plaintiffs actually allege that a specific communication was made using the wires, they nonetheless omit essential details, such as the identities of the parties to the alleged wire communications and the manner in which the statements misled the Plaintiffs.  For example, Paragraph 104 refers to a post published to an unidentified audience on an unidentified social media platform in January 2017.  Paragraph 105 pastes a "meme" published to a Defendant's "downline"—without identifying a single member of the "downline" or explaining how the statement that "I told them to get to presidents team is just go to every event" is misleading.  *See* also ECF No. 1 ¶ 167 (failing to explain how statement in video that Mr. and Mrs. Wick "started plugging in to" and "bringing people with us to events" was false or misleading).

Defendant's "direct involvement in the scheme" (*e.g.*, ECF No. 1 ¶ 208), are insufficient to establish two predicate acts of wire fraud for each Individual Defendant.[4]

First, as explained above, Plaintiffs do not provide essential factual allegations about these documents, *e.g.*, *who* transmitted each by wire, to *whom* and *when*. Plaintiffs also do not allege *how* any of the documents were misleading or false. *See Am. Dental*, 605 F.3d at 1290 ("Plaintiffs do not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated in any of these communications, nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b)."); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings). Instead, the documents are simply referenced and then attached as "examples" of "direct involvement in the scheme," without any additional information at all, leaving Defendants and the Court to simply guess about the 9(b) elements for each.

Second, the majority of the materials in the exhibits, on their face, either (1) do not indicate that that they were transmitted by wire or (2) do not indicate that they were transmitted by wire *by a Defendant* or as result of any Defendant. Many of Plaintiffs' "examples" are nothing more than a flyer featuring an Individual Defendant's picture. (*See, e.g.*, ECF No. 1 Ex. 19, 23, 26, 30, 40 (no indication of transmission by wire)). Many other "examples" are posts from social media accounts that have no apparent connection to an Individual Defendant beyond the inclusion of an Individual Defendant's name or picture in the post. (*See* ECF No. 1 Ex. 9, 20–22, 24–28, 31–36, 38–43, 46 (no indication of transmission by the Individual Defendant referenced)). Accordingly, Plaintiffs fail to set forth facts describing *two specific instances* in which each Individual Defendant *used the wires* to further the alleged scheme. *See, e.g.*, *Am. Dental*, 605 F.3d at 1290 (wire fraud "occurs when a person … uses the mails or wires"); *see also Abrams v. CIBA Specialty Chemicals Corp.*, 2008 WL 4183344, at *12 (S.D. Ala. Sept. 10, 2008) ("a RICO claim predicated on mail or

---

[4] Plaintiffs have not even included exhibits for all of the Individual Defendants.

wire fraud must allege specific facts to show … that on at least two occasions [defendants] used the mails or wires").

Third, on top of the previous shortcomings, several of the documents attached as exhibits are in a foreign language and thus cannot be considered by the Court.  (*See, e.g.*, ECF No. 1 Ex. 23, 25, 31, 32, 38, 42, 44.)  *See Perego v. JR Prod. & Distribution Int'l, Inc.*, 2009 WL 10668183, at *2 (S.D. Fla. June 8, 2009) ("Federal court proceedings in the United States are conducted in English, and I will not consider the foreign language document, nor Rossi's statements regarding its content, in making my ruling.") (Cooke, J.); *Rivas-Montano v. United States*, 2006 WL 1428507, at *1 (M.D. Fla. May 22, 2006) (striking affidavit filed in Spanish); *see also United States v. Rivera-Rosario*, 300 F.3d 1, 5, 7 n.4 (1st Cir. 2002) (noting "well-settled rule that parties are required to translate all foreign language documents into English").

Plaintiffs' RICO claims should be dismissed for Plaintiffs' failure to state clearly and with particularity how *each* Defendant is alleged to have engaged in two predicate acts of wire fraud.

### 2. Plaintiffs Have Not Pled Plausible, Factual Allegations Demonstrating A Causal Relationship Between Predicate Acts Committed By Each Individual Defendant And Plaintiffs' Injuries.

A civil RICO claim requires a plaintiff to "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity … was the but-for and proximate cause of the plaintiffs' injuries."  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016).  "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect"—rather, "there must be some direct relation between the conduct and the injury to sustain a claim."  *Id.*  Thus, when evaluating a RICO claim for proximate causation, the "central question" is "whether the alleged violation led directly to the plaintiff's injuries."  *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

According to the Eleventh Circuit, "courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th

Cir. 2006) (abrogated on other grounds by *Simpson*, 744 F.3d 702).  "Even if causing the 'harm' asserted was the purpose of a criminal scheme, and acts in furtherance of that scheme have caused it, unless a designated 'predicate act directly caused' that harm, then RICO's proximate causation requirement has not been met."  *Hall v. Thomas*, 753 F. Supp. 2d 1113, 1152 (N.D. Ala. 2010) (quoting *Anza*, 547 U.S. at 460).

  Here, it is not plausible that the Defendants' alleged racketeering activity (distributing "hundreds of thousands of fraudulent messages about Circle of Success events across the wires") was the "but for" cause of Plaintiffs' injuries—because Plaintiffs do not allege that they received or reviewed any of those messages.  They do not allege that they attended events because of communications the Individual Defendants made using the wires.  They do not allege that they were "lured" into attending events by others who had been influenced by these electronic communications.  Additionally, some of the communications incorporated into the Complaint were made *after* Plaintiffs stopped attending the events that they claim caused their damages.  (*See, e.g.*, ECF No. 1 ¶ 104 & Ex. 39, 40, 45 (appearing to promote events in 2017, when no Plaintiff alleges to have attended an event later than 2016).)[5]

  Plaintiffs not only fail to allege that "designated predicate acts" caused their harm— they largely fail to allege any connection whatsoever to the Individual Defendants.  For example, Plaintiffs Michael and Jennifer Lavigne claim they were deceived into attending events in the states of Ohio, Michigan, Missouri, and Georgia.  (*Id.* ¶ 169.)  Yet, the majority of the Individual Defendants are alleged to operate in totally separate geographic areas, *e.g.*, Minnesota (*id.* ¶¶ 275, 282); Oklahoma (*id.* ¶ 301); New England (*id.* ¶ 216), the "Rocky Mountain" region (*id.* ¶ 212); "New York / New Jersey" (*id.* ¶ 309); Pennsylvania and Delaware (*id.* ¶ 248); California (*id.* ¶¶ 232, 240, 244, 256, 260, 323); "the Southwest region" (*id.* ¶ 236); and Florida (*id.* ¶¶ 265, 268, 286, 290, 293).  Similarly, Plaintiff Cody Pyle alleges he attended events only in Oklahoma, Texas, Nevada, and Long Beach,

---

[5] Plaintiffs allege that certain Individual Defendants own websites through which event tickets are sold.  (ECF No. 1 ¶ 71.)  But, Plaintiffs do not allege that they purchased tickets from these websites or otherwise link their injuries to any website operated by a Defendant.  Additionally, there are no particularized allegations surrounding the use of these websites to accomplish fraud.

California. (*Id.* ¶ 176.) It is simply implausible that each of the Individual Defendants' racketeering activity was the "but-for" cause of Plaintiffs paying to attend *any* Herbalife event, *anywhere*. *See Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1357 (S.D. Fla. 2015) ("Accepting Plaintiffs' allegations as true for purposes of this Motion, Ideal could not have standing to bring this RICO action because its damages could not flow *directly* from Press and Silverman's conduct."). Besides hearing statements made in-person by certain Individual Defendants at events (which is not wire fraud), or alleging to have been recruited into the downlines of specific Individual Defendants (which is not wire fraud), Plaintiffs allege no connection whatsoever to the Individual Defendants, thus necessitating dismissal. *See Spirit Airlines*, 836 F.3d at 1350 (RICO claim failed where plaintiffs failed to allege "a direct link—or, indeed, any link at all—between Spirit's presentation of its Passenger Usage Fee and the plaintiffs' decision to purchase tickets on Spirit's website").[6]

### 3. There Are No Facts Supporting A Plausible Inference of Scienter.

To state a claim for RICO based on a pattern of wire fraud, Plaintiffs must plead that each Defendant acted with the intent to defraud. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Intent to defraud exists "when the defendant believed that he could deceive the person to whom he made the material misrepresentation out of money or property of some value." *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009). Although this required scienter element may be alleged generally, "a RICO plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations." *Portionpac Chemical Corp. v. Sanitech Systems Inc.*, 210 F. Supp. 2d 1302, 1307 (M.D. Fla. 2002). Rather, the plaintiff must provide a factual basis giving rise to a "strong inference that [the] defendants possessed the requisite factual intent." *Republic of Panama*, 119 F.3d at 949.

---

[6] To the extent Plaintiffs contend that the causation element is satisfied because the Individual Defendants created the *overall* scheme to defraud people into attending events, that argument is not supported by specific facts in the Complaint nor is it consistent with the allegations that Herbalife created the event system and historically controlled it, to only later involve "top distributors." (*See, e.g.*, ECF No. 1 ¶¶ 57, 60, 64, 118.)

Here, Plaintiffs allege globally that the Individual Defendants "have collectively" persuaded victims to purchase tickets to events "held out as the secret to becoming financially successful in a fraudulent scheme to which Defendants know financial success is not possible." (ECF No. 1 ¶ 356.) Plaintiffs speculate that each of the Individual Defendants knew "financial success is not possible" with Herbalife because members of the "President's Team" allegedly achieved their own "financial success" by using "banned methods," receiving preferential treatment, engaging in money laundering, and other illicit tactics. (*See id.* ¶¶ 31–48.) They also theorize that, because one "President's Team member" (who is not a Defendant) filed for bankruptcy after having spoken at events regarding his financial success, all forty-four Individual Defendants knew that the income claims of all other presenters were false. (*Id.* ¶¶ 50–51.) But Plaintiffs do not plead sufficient facts under either theory to support an inference of scienter for each of the Individual Defendants. Instead, Plaintiffs attempt to support these theories with vague allegations grouping not only all the Individual Defendants together, but also an unspecified number of other high-level distributors. (*See, e.g.*, *id.* ¶¶ 32 ("many North American President's Team members"), 35 ("Many top earning President's Team downlines"), 36 ("stacked downlines are the norm for Herbalife President's Team members"), 37 ("children and family of Herbalife's President's Team members"), 41 ("certain members of its President's Team"), 42 ("unique opportunities for the Defendants"), 44 ("President's Team members"), 48 ("President's Team distributors do not disclose"), 49 ("not unusual for top distributors")). As alleged against a group of forty-four people, without alleging specific facts about each one's conduct or knowledge, neither theory gives rise to a plausible inference of scienter for each of the Individual Defendants.

    **4.**    **Plaintiffs Have Failed to Sufficiently Allege that Each Individual Defendant Participated in the Operation or Management of the Alleged Rico Enterprise.**

To be liable under RICO Section 1962(c), a defendant must "conduct or participate, directly or indirectly, in the conduct of" the alleged RICO enterprise's affairs. 18 U.S.C. § 1962(c). To satisfy this requirement, a plaintiff must set forth facts plausibly establishing that the defendants "participated in the operation or management of the enterprise itself,"

*i.e.*, that the defendant had "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993).

The Eleventh Circuit has explained that "one may be liable under the operation or management test by knowingly implementing decisions, as well as by making them." *United States v. Starrett*, 55 F.3d 1525, 1548 (11th Cir. 1995); *see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (quoting *Starrett* in civil RICO context); *Portland General Elec. Co. v. Westinghouse Elec. Corp.*, 842 F. Supp. 161, 167 (W.D. Pa. 1993) (plaintiff must allege that defendant had "some supervisory or directory role" and "at least in part, operated the … enterprise"). "The key to RICO liability is *actual* participation in the operation or management of the enterprise, not job titles or mere employment." *Comcast of S. Florida II, Inc. v. Best Cable Supply, Inc.*, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008). Merely promoting a fraudulent enterprise does not constitute operation or management, either. *See, e.g.*, *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998) (no "operation or management" for, *inter alia*, producing and distributing promotional materials).

It is not enough to plead the conclusory allegation that a person "operated" a RICO enterprise without offering "factual allegations as to how the individual Defendants played a part in directing the affairs of the enterprise." *Comcast*, 2008 WL 190584 at *8 ("It is possible that those individuals were 'owner' and 'employees' only in title, or participated in the corporations in an entirely innocuous way, totally unassociated with the racketeering activity alleged."); *Heise v. Porcelli*, 2008 WL 2439884, at *4 (M.D. Fla. June 13, 2008) ("[A] plaintiff must offer specific factual assertions as to how the defendants participated in the operation or management of the RICO enterprise.").

Here, Plaintiffs allege in the Complaint that *Herbalife*—not the Individual Defendants—operates and manages the Circle of Success system. Plaintiffs allege that Herbalife "craft[s] the agenda and select[s] the speakers who present at these events," "carefully orchestrate[s]" them, "sponsors and sells" them, compensates those who speak at them, and "retains significant control" over them. (*Id.* ¶¶ 62, 90, 145, 78, 118.) By contrast, Plaintiffs allege generally that the Individual Defendants sell tickets for, speak at, market,

11

and "organize and control"[7] *individual events*. (*E.g.*, *id.* ¶¶ 56, 77–78, 100, 232). They allegedly do so under the watchful eye of Herbalife, and "report back" afterwards. (*Id.* ¶ 145.) Taking these allegations as true, the Individual Defendants have no "supervisory role" in, and do not direct, the alleged RICO enterprise.

Plaintiffs' allegations about the Individual Defendants' alleged involvement are vague and speculative. <u>First</u>, they equivocate as to *which* Individual Defendants actually engaged in the conduct. For example, they allege that event tickets are "sold by an amorphous group" of distributors—elsewhere described in the Complaint as a "shifting list." (*Id.* ¶¶ 56, 82.) Plaintiffs describe as "ever-changing" the "web of Defendant connected entities" that allegedly own and control the STS system. (*Id.* ¶ 71.) <u>Second</u>, Plaintiffs fail to describe what each Individual Defendant actually *did*. For example, Plaintiffs allege that each Individual Defendant is a member of and participates in "Secretive Strategy and Planning Committees" (*id.* ¶ 352), but do not explain what these "Committees" did, identify the responsibility or authority conferred on each member, or describe each Individual Defendant's role in the "Committees." Plaintiffs generally describe each Plaintiff's "involvement" using rote allegations, copied and pasted, with little-to-no variation among them. (*Id.* at pp. 49–67 (for each Defendant, alleging that he or she is "one of Herbalife's top earning distributors," "a featured guest speaker," and "claims that attending all Circle of Success events is necessary").)[8]

In sum, the allegations in the Complaint do not make it plausible that any Individual Defendant directed the affairs of the alleged RICO enterprise. Thus, Count One should be dismissed as to the Individual Defendants.

---

[7] Without explaining the difference, Plaintiffs allege that other Defendants only "help" to "organize and control" events. (*E.g.*, ECF No. 1 ¶ 256.) Other Individual Defendants are not alleged to do either.

[8] Plaintiffs also allege that the Individual Defendants profit on an individual, per event, basis. (*See, e.g.*, ECF No. 1 ¶ 139 ("The Individual Defendants profit directly from the sale of Circle of Success event tickets, and from speaking fees received for appearing at Circle of Success events."); *see also id.* ¶ 177).) *Reves* makes clear, however, that liability does not arise from promoting a RICO enterprise in the course of conducting one's *own* affairs. *See* 507 U.S. at 185.

### B. Plaintiffs Have Not Pled An Actionable Claim For RICO Conspiracy Under Section 1962(d).

Because Plaintiffs have failed to state viable claims for alleged primary RICO violations under § 1962(c) for the reasons discussed above, the RICO conspiracy claim necessarily fails. *See Jones v. Scott Davis Chip Mill*, 2017 WL 5127717, at *19 (N.D. Ala. Nov. 6, 2017).

Even if the Court finds that Plaintiffs have successfully pled a claim under § 1962(c) against one or more of the defendants, the Court should still dismiss Plaintiffs' § 1962(d) claim against the Individual Defendants. To allege a Section 1962(d) claim, a plaintiff must allege "that the conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996). An agreement to participate in a RICO conspiracy can be established by either: (1) "showing an agreement of an overall objective" or (2) "in the absence of an agreement on an overall objective, by showing that a defendant agreed personally to commit two predicate acts." *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992). "Plaintiffs must allege both that the conspirators agreed to participate in the affairs of an enterprise through a pattern of racketeering activity and sufficient conduct on the part of the participants that such an agreement can be inferred." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1280–81 (S.D. Fla. 2003) (citations omitted). "The existence of an agreement to further illegal acts is the key." *Id.* And, specific factual allegations must support the inference of an "agreement" to violate RICO. *Carter v. MGA, Inc.*, 189 Fed. Appx. 893, 895 (11th Cir. 2006).

Here, Plaintiffs' conspiracy allegations are entirely conclusory. (*See* ECF No. 1 ¶¶ 363–64.) There are no facts describing an agreement among the Individual Defendants to defraud people into attending STS events. And there no facts to support that any Individual Defendant "agreed personally to commit two predicate acts" of wire fraud nor "sufficient conduct" such that an agreement can be inferred. *See id.* ("[P]laintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiff's conclusory allegations that Defendants conspired with each other are insufficient to survive a motion to dismiss."). As explained above, the Individual Defendants' conduct is described

13

in a shot-gun approach that alleges, at best, that the Individual Defendants were part of a large "amorphous" group of individuals that promoted events, at their own volition, for their own personal benefit. Those allegations do not meet the Eleventh Circuit's requirement that Plaintiffs allege specifically an agreement to violate RICO.

> C. **Alternatively, the *Bostick* Settlement Bars the Claims By the Rodgers and Valdez Plaintiffs Against the Individual Defendants.**

To the extent the Court finds that Plaintiffs Rodgers and Valdez have sufficiently pled that one or more of the Individual Defendants operated or managed a racketeering enterprise with Herbalife, then those Plaintiffs' claims are barred under the *Bostick* settlement. First, their claims against the Individual Defendants are identical to their claims against Herbalife, and are thus covered by the *Bostick* settlement for the same reasons that their claims against Herbalife are covered. Second, the *Bostick* settlement extends not just to Herbalife, but also to Herbalife's "present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or *representatives*." (Order Granting Final Approval of *Bostick* Settlement at 49.) Based on Plaintiffs' own allegations, the Individual Defendants are sufficiently related to Herbalife to fall within that broad scope, barring the claims by Plaintiffs Jeff and Patricia Rodgers, Izaar Valdez, and Felix Valdez.[9]

Indeed, Plaintiffs allege numerous facts establishing a sufficiently close relationship between the Individual Defendants and Herbalife, dating back long before the *Bostick* settlement. Specifically, Plaintiffs' main argument is that Defendants misrepresented the correlation between attendance and qualification at Herbalife events and success in the Herbalife business opportunity as a Distributor. (ECF No. 1 ¶¶ 1–12.) And, Plaintiffs allege

---

[9] That is not to say that Plaintiffs are correct that the Individual Defendants are "representatives," or any of the other groups to whom the *Bostick* Settlement inures. But, if the Court finds that Plaintiffs' allegations establish that the Individual Defendants operated or managed a RICO enterprise with Herbalife, then Plaintiffs' allegations also establish that the Individual Defendants and Herbalife are sufficiently closely related such that the Individual Defendants fall within the broad scope of the *Bostick* Settlement.

14

that "Herbalife and its highest-ranking members (including the Individual Defendants) *jointly produce and sell* these events *in close association*. Defendants market *their event system* . . . ." (*Id.* ¶ 4 (emphasis added).) Plaintiffs further allege that "Herbalife's Circle of Success," *i.e.*, the foundation of Plaintiffs' allegations, "is the product of *a close association between Herbalife and its highest-ranking Distributors*." (*Id.* ¶ 138 (emphasis added).) In fact, Plaintiffs' claims against the Individual Defendants, for violation of RICO and RICO Conspiracy, are *jointly* pled against Herbalife. Even further, to establish the elements of those claims, Plaintiffs make numerous allegations about the close relationship between Herbalife and the Individual Defendants: "Defendants *jointly conduct, manage, and control* the affairs of the Circle of Success enterprise"; "Defendants *jointly affect* the strategic direction of the Circle of Success enterprise"; and "Defendants have intentionally *conspired and agreed* to directly, and indirectly, conduct and participate in the conduct of the affairs of the Circle of Success enterprise." (*Id.* ¶¶ 349, 352, 363 (emphasis added).) And they allege that this close relationship began in 2009, the very years covered by the *Bostick* settlement. (*Id.* ¶ 346.)

Plaintiffs cannot claim that the Individual Defendants and Herbalife are essentially one and the same for purposes of this lawsuit, and then elude the *Bostick* settlement by arguing that Herbalife and the Individual Defendants are not sufficiently closely related. That result would be not just contradictory, but also nonsensical. Based on Plaintiffs' own allegations, the Individual Defendants have a sufficiently close relationship with Herbalife to be covered by the *Bostick* settlement. Accordingly, Plaintiffs Jeff and Patricia Rodgers, Izaar Valdez, and Felix Valdez's claims against the Individual Defendants are barred.

### III. CONCLUSION.

For all of the foregoing reasons, the Individual Defendants respectfully request that the Court dismiss each claim asserted against them by Plaintiffs.

15

Date: December 22, 2017           Respectfully submitted,

        **QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
101 E. Kennedy Boulevard, Suite 3400
Tampa, FL 33602
Telephone: (813) 387-0300
Facsimile: (813) 387-1800

By: */s/ Zachary S. Foster*
**ZACHARY S. FOSTER**
Florida Bar No. 111980
Zachary.Foster@quarles.com
**S. DOUGLAS KNOX**
Florida Bar No. 849871
Douglas.Knox@quarles.com


**QUARLES & BRADY, LLP**
*Attorneys for Individual Defendants*
Two North Central Avenue
Phoenix, AZ 85004
Telephone: (602) 229-5200
Facsimile: (602) 229-5690

**KEVIN D. QUIGLEY**
Arizona Bar No. 015972
*Admitted Pro Hac Vice*
Kevin.Quigley@quarles.com
**EDWARD SALANGA**
Arizona Bar No. 020654
*Admitted Pro Hac Vice*
Edward.Salanga@quarles.com
**BRIAN A. HOWIE**
Arizona Bar No. 026021
*Admitted Pro Hac Vice*
Brian.Howie@quarles.com
**MICHAEL S. CATLETT**
Arizona Bar No. 025238
*Admitted Pro Hac Vice*
Michael.Catlett@quarles.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss was served electronically using the CM/ECF system, on December 22, 2017, on all electronic filing to all counsel or parties of record on the service list.

## SERVICE LIST

Etan Mark, Esq.
Donald J. Hayden, Esq.
Lara O'Donnell Grillo, Esq.
*Attorneys for Plaintiffs*
MARK MIGDAL & HAYDEN
80 S.W. 8th Street, Suite 1999
Miami, FL, 33130
don@markmigdal.com
lara@markmigdal.com
etan@markmigdal.com

Mark T. Drooks, Esq.
Paul S. Chan, Esq.
Gopi K. Panchapakesan, Esq.
*Attorneys for Herbalife Defendants*
(pending admission *pro hac vice*)
BIRD MARELLA
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
mdrooks@birdmarella.com
pchan@birdmarella.com
gpanchapakesan@birdmarella.com

Steve I. Silverman, Esq.
Todd A. Levine, Esq.
Erin E. Bohannon, Esq.
*Co-Counsel for Herbalife Defendants*
KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.
201 South Biscayne Boulevard
Suite 2700
Miami, FL 33131
ebohannon@klugerkaplan.com
tlevine@klugerkaplan.com
ssilverman@klugerkaplan.com

          */s/ Zachary S. Foster*
          Attorney