1  Mark T. Drooks - State Bar No. 123561
      mdrooks@birdmarella.com
2  Paul S. Chan - State Bar No. 183406
      pchan@birdmarella.com
3  Gopi K. Panchapakesan - State Bar No. 279586
      gpanchapakesan@birdmarella.com
4  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
5  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
6  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
7
8  Attorneys for Defendants Herbalife
   Nutrition Ltd. (fka Herbalife Ltd.);
   Herbalife International, Inc.; and Herbalife
9  International of America, Inc.

10

11              UNITED STATES DISTRICT COURT

12       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| | |
|---|---|
| 14  JEFF RODGERS; PATRICIA RODGERS; JENNIFER RIBALTA; IZAAR VALDEZ, individually and on behalf of all others similarly situated, | CASE NO. 2:18-cv-07480-JAK (MRWx) |
| 15 | [Related Case 2:13-cv-02488-BRO-RZ] |
| 16 | **HERBALIFE'S NOTICE OF MOTION AND MOTION TO DISMISS** |
| 17          Plaintiffs, | |
| 18          vs. | *[Filed concurrently with Declaration of Roxane Romans and Request for Judicial Notice]* |
| 19  HERBALIFE LTD.; HERBALIFE INTERNATIONAL, INC.; HERBALIFE INTERNATIONAL OF AMERICA, INC., | Date:     January 28, 2019 |
| 20 | Time:     8:30 A.M. |
| 21          Defendants. | Crtrm.:   10B |
| 22 | Assigned to Hon. John A. Kronstadt |

23

24

25

26

27

28

3523632.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2019, at 8:30 A.M., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable John A. Kronstadt, United States District Judge for the Central District of California, Western Division, in Courtroom 10B, Defendants Herbalife Ltd., Herbalife International, Inc., and Herbalife International of America, Inc. ("Herbalife") will, and hereby do, move pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiffs Jeff Rodgers, Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez's Class Action Complaint (the "Complaint"). The motion is based on the following grounds:

- Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs Jeff Rodgers, Patricia Rodgers, and Izaar Valdez fail to state a claim upon which relief may be granted as to all of their claims because their claims were released in the class action settlement approved in *Bostick, et al. v. Herbalife International of America, Inc.*, et al., Case No. 2:13-cv-02488-BRO-RZ (C.D. Cal.).

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), all of the Plaintiffs fail to state a claim upon which relief may be granted with respect to Counts I (conducting the affairs of a civil RICO enterprise) and II (conspiracy to violate civil RICO) because Plaintiffs do not sufficiently allege (a) the existence of a distinct enterprise; (b) a cognizable injury to their business or property; (c) that the alleged misrepresentations that form the basis for their RICO claims amount to more than mere puffery; and (d) the predicate act of wire fraud with the requisite specificity. Plaintiffs also separately fail to allege their claim for RICO conspiracy with specificity.

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), all of the Plaintiffs fail to state a claim upon which relief may be granted with respect to Count III

(the Florida Deceptive and Unfair Trade Practices Act, or "FDUTPA") because (a) the California choice-of-law clause contained in Plaintiffs' distributorship agreements bars Plaintiffs from bringing a claim under FDUTPA; (b) Plaintiffs fail to allege with specificity that Herbalife engaged in deceptive or unfair practices, or that such alleged practices amounted to more than mere puffery; and (c) Plaintiffs fail to allege that Herbalife's conduct proximately caused them damages recoverable under FDUTPA.

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), all of the Plaintiffs fail to state a claim upon which relief may be granted with respect to Count IV (unjust enrichment) because (a) Plaintiffs do not, as they must, allege the claim under a quasi-contract theory and (b) the claim sounds in fraud and is not alleged with the requisite specificity.

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Plaintiffs fail to state a claim upon which relief may be granted with respect to Count V (negligent misrepresentation) because Plaintiffs fail to plead with specificity (a) the misrepresentations on which their fraud claim is premised; (b) the defendants responsible for the alleged misrepresentations; and (c) statements that amount to more than mere puffery.

The motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Roxane Romans, Herbalife's Request for Judicial Notice, the pleadings on file, and such other evidence and argument as the Court may receive.

Pursuant to Local Rule 7-3, counsel for Herbalife and Plaintiffs met and conferred concerning Herbalife's anticipated motion to dismiss on September 5, 2018, but did not reach a resolution.

1  DATED:  September 28, 2018

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:        /s/ Mark T. Drooks
                   Mark T. Drooks
         Attorneys for Defendants Herbalife
         Nutrition Ltd. (fka Herbalife Ltd.);
         Herbalife International, Inc.; and Herbalife
         International of America, Inc.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................ 1

II. PROCEDURAL BACKGROUND .............................................................. 2

III. RELEVANT FACTUAL BACKGROUND ................................................ 3

    A. Plaintiffs' Allegations ...................................................................... 3

    B. All Four Plaintiffs Entered into Distributorship Agreements with Herbalife Containing California Choice-of-Law Clauses. ................ 4

    C. Plaintiffs Patricia Rodgers, Jeff Rodgers, and Izaar Valdez Released Their Claims in the Class Action Settlement in *Bostick v. Herbalife* .................................................................................... 5

        1. The Plaintiffs in *Bostick* Alleged the Same Misrepresentations That Form the Basis for Plaintiffs' Claims Here. ............................................................................ 5

        2. Patricia Rodgers, Jeff Rodgers, and Izaar Valdez Were *Bostick* Settlement Class Members. ................................. 5

        3. The *Bostick* Settlement Release Broadly Covers Claims Arising from Misrepresentations Made by Herbalife Concerning its Business Opportunity. ................................ 6

IV. ARGUMENT .............................................................................................. 8

    A. Patricia Rodgers, Jeff Rodgers, and Izaar Valdez's Claims Are Barred by the *Bostick* Class Action Settlement Release. ................ 8

        1. The *Bostick* Settlement Agreement Is Governed by California Law, Which Broadly Construes Settlement Releases. ................................................................................ 8

        2. The *Bostick* Settlement Release Subsumes the Claims Brought by Patricia Rodgers, Jeff Rodgers, and Izaar Valdez. ................................................................................... 9

            a. The Misrepresentations Alleged in *Bostick* Form the Basis for Plaintiffs' Complaint. ............................... 9

            b. The Original *Bostick* Complaint Alleged RICO Claims Identical to the RICO Claims Plaintiffs Assert Here. .................................................................. 10

            c. The *Bostick* Settlement Compensated Class Members for the Same Losses Plaintiffs Claim Here. ........................................................................... 11

B.   Plaintiffs' RICO Claims (Counts I and II) Fail.....................................12

   1.   Plaintiffs Allegations' Fail to Establish the Most Basic
        Elements of a Section 1962(c) Claim Under RICO. .................13

        a.   Plaintiffs Fail to Allege the Existence of a Distinct
             RICO Enterprise. ................................................13

        b.   Plaintiffs Improperly Seek Recovery for an
             Expectancy Interest Under RICO...................................14

        c.   The Misrepresentations Alleged in the Complaint
             Amount to Non-Actionable Puffery, Not Fraud. .............15

        d.   Plaintiffs Fail to Plead the Predicate Act of Wire
             Fraud with Particularity.......................................15

   2.   Plaintiffs Also Fail Adequately to State a Claim for RICO
        Conspiracy Under Section 1962(d). ...........................................17

C.   Plaintiffs' Claim Under the Florida Deceptive and Unfair Trade
     Practices Act (Count III) Fails. ............................................18

   1.   The Choice-of-Law Clause Found in Plaintiffs'
        Distributorship Agreements Bars the Claim...............................18

   2.   Plaintiffs in Any Event Fail to Plead a Claim Under
        FDUTPA. ..........................................................................19

        a.   Plaintiffs' FDUTPA Claim Fails Because It Is
             Based on Alleged Puffery and Is Not Pled with the
             Requisite Specificity............................................20

        b.   Plaintiffs Fail to Allege That Herbalife's Conduct
             Proximately Caused Damages Recoverable Under
             FDUTPA..........................................................20

D.   Plaintiffs Fail to Plead Sufficient Facts Supporting a Claim for
     Unjust Enrichment (Count IV).............................................21

E.   Plaintiffs' Claim for Negligent Misrepresentation (Count V)
     Fails for the Same Reasons That Its Claim for Wire Fraud Fails.........23

V.   CONCLUSION .................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarelis v. Notter Sch. of Culinary Arts,*
LLC, No. 6:13-CV-54-ORL-31KRS, 2014 WL 5454387 (M.D. Fla. Oct. 27, 2014) .................................................................................................. 14

*Basco v. Toyota Motor Corp.,*
No. CV 09-6307-GHK (RZX), 2011 WL 13127142 (C.D. Cal. Nov. 30, 2011) ........................................................................................................ 8

*Bostick v. Herbalife Int'l of America, Inc., et al.,*
Case No. 2:13-cv-02488-BRO-RZ (C.D. Cal.) ................................. 1, 5

*BPI Sports, LLC v. Labdoor, Inc.,*
No. 15-62212-CIV-BLOOM, 2016 WL 739652 (S.D. Fla. Feb. 25, 2016) ................................................................................................ 19, 20

*Canyon Cty. v. Syngenta Seeds, Inc.,*
519 F.3d 969 (9th Cir. 2008) .............................................................. 12

*Chaset v. Fleer/Skybox Int'l, LP,*
300 F.3d 1083 (9th Cir. 2002) ............................................................ 14

*Chi Pham v. Capital Holdings, Inc.,*
No. 10CV0971-LAB AJB, 2011 WL 3490297 (S.D. Cal. Aug. 9, 2011) ................................................................................................... 14

*Chung Y. Goh, et al. v. Prima Fin. Grp. Inc. et al.,*
No. CV 17-03630-SVW-PJW, 2017 WL 7887860 (C.D. Cal. July 26, 2017) .............................................................................. 17, 18

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .............................................................. 9

*Comet Theatre Enterprises, Inc. v. Cartwright,*
195 F.2d 80 (9th Cir. 1952) ................................................................ 23

*Cty. of Marin v. Deloitte Consulting LLP,*
836 F. Supp. 2d 1030 (N.D. Cal. 2011)............................................... 15

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*,
   No. 15-81062-CIV, 2016 WL 4256916 (S.D. Fla. May 16, 2016)....................21

*Ellis v. Warner*,
   No. 15-10134-CIV, 2017 WL 634287 (S.D. Fla. Feb. 16, 2017) .......................20

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999)...............................................15

*Goldman v. Bayer AG*,
   No. 17-CV-0647-PJH, 2017 WL 3168525 (N.D. Cal. July 26, 2017)..........21, 22

*Haddock v. Countrywide Bank*,
   NA, No. CV146452PSGFFMX, 2015 WL 9257316 (C.D. Cal.
   Oct. 27, 2015) ......................................................................23

*Hill v. Opus Corp.*,
   841 F. Supp. 2d 1070 (C.D. Cal. 2011)...............................................16

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ...............................................11, 17, 18

*Hutson v. Am. Home Mortg. Servicing, Inc.*,
   No. C 09-1951 PJH, 2009 WL 3353312 (N.D. Cal. Oct. 16, 2009) ...................24

*In re All Terrain Vehicle Litig.*,
   No. CV-89-3334-RSWL, 1990 WL 138229 (C.D. Cal. July 19,
   1990) ...............................................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prod. Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011)...........................................13, 16

*J. Greenburg, D.D.S., Inc. v. White Rock Capital Sols.*,
   LLC, No. CV 11-9498 PA, 2012 WL 13012673 (C.D. Cal. Feb. 22,
   2012) ...............................................................................19

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,
   No. CV1701875MWFMRWX, 2017 WL 4286577 (C.D. Cal.
   Sept. 20, 2017).....................................................................22

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992)...............................................................19

3523632.1

iv

*Palomino v. Facebook, Inc.*,
   No. 16-CV-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ................... 19

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ............................................................................. 4, 6

*Perret v. Wyndham Vacation Resorts, Inc.*,
   889 F. Supp. 2d 1333 (S.D. Fla. 2012) .................................................................. 20

*Prime Healthcare Servs., Inc. v. Humana Ins. Co.*,
   230 F. Supp. 3d 1194 (C.D. Cal. 2017) ................................................................. 23

*Rodriguez v. Recovery Performance & Marine, LLC*,
   38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ......................................................... 20, 21

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) .............................................................................. 13

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................... 24

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................... 17

*United Food & Commercial Workers Unions & Employers Midwest*
   *Health Benefits Fund v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ............................................................................... 14

*United States v. Shipsey*,
   363 F.3d 962 (9th Cir. 2004) ............................................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................................. 22

*Villacres v. ABM Indus. Inc.*,
   189 Cal. App. 4th 562 (2010) ................................................................................. 8

*Williams v. Countrywide Fin. Corp.*,
   No. 216CV04166CASAGRX, 2017 WL 986517 (C.D. Cal. Mar. 13,
   2017) ...................................................................................................................... 12

**Statutes**

18 U.S.C.

§ 1962, *et seq.* ..................................................................................*passim*
§ 1962(c) ..................................................................................... 12, 13
§ 1962(d) ..................................................................................... 13, 17

Cal. Civ. Code § 1542 ......................................................................... 7, 8

Fla. Stat. Ann. § 501.201, *et seq.* ...........................................*passim*

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ........................................................................ 6

Fed. R. Civ. P. 9(b) ..............................................................*passim*

Fed. R. Civ. P. 23 ...................................................................... 12

HERBALIFE'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Three of the four remaining Plaintiffs in this putative class action assert claims against Herbalife that were fully and finally adjudicated and released in the 2015 nationwide class action settlement in *Bostick v. Herbalife* approved by this Court.[1]  The *Bostick* Plaintiffs, like the Plaintiffs here, alleged that Herbalife misrepresented the nature of its business opportunity, and that it made these misrepresentations at various events.  The *Bostick* settlement provided for $17.5 million in cash rewards to individuals who were Herbalife distributors at any time from April 1, 2009, to December 2, 2014, in order to compensate them for their alleged failed pursuit of the Herbalife business opportunity.

Plaintiffs Patricia Rodgers, Jeff Rodgers, and Izaar Valdez, each of whom was an Herbalife distributor during the *Bostick* class period, are therefore subject to the *Bostick* settlement's broad release.  The *Bostick* release, among other things, precludes *Bostick* settlement class members from bringing claims premised on allegations that Herbalife engaged in "false and/or misleading advertising" or that Herbalife operated a "fraudulent scheme."  The claims these three Plaintiffs now bring fall squarely within the scope of the *Bostick* release and are therefore barred. Notwithstanding Plaintiffs' transparent attempt to plead around the *Bostick* settlement, this case, like *Bostick*, is fundamentally about alleged misrepresentations Herbalife made to its distributors about the likelihood of success regarding its business opportunity.  That is precisely the claim that was settled and released in *Bostick*.

---

[1]   Of the eight Plaintiffs who initially brought this putative class action in the Southern District of Florida, four were compelled to arbitrate their claims against Herbalife.  D.E. 106.  The claims of the remaining four Plaintiffs, Jeff Rodgers, Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez, against Herbalife were transferred to this Court pursuant to the California forum selection clauses found in their distributorship agreements with Herbalife.  *Id.*

1    Separate and apart from the *Bostick* release, all four of the remaining

2    Plaintiffs, including Jennifer Ribalta, also separately fail to allege facts sufficient to

3    sustain each of their claims.  First, Plaintiffs cannot allege the most basic elements

4    of a RICO claim.  The Complaint does not, and cannot, allege the existence of a

5    distinct enterprise, as opposed to the ordinary business affairs of Herbalife and its

6    distributor network.  Nor do Plaintiffs allege a cognizable injury to their business or

7    property under RICO, but instead seek losses stemming from a failed business

8    opportunity, an expectancy interest that is not recoverable under RICO.

9    Moreover, Plaintiffs' allegations of wire fraud fail to meet Rule 9(b)'s

10   heightened pleading standard.  Plaintiffs merely cite puffery found in social media

11   posts, fliers, and pep talks given at in-person presentations, without specifying

12   which particular Herbalife entity, if any, made these statements.  Plaintiffs do not

13   even attempt to allege which of these alleged statements form the basis for their wire

14   fraud claim, but instead expect Herbalife and the Court to sift through these alleged

15   statements, including hundreds of pages of exhibits (mostly consisting of photos and

16   generic fliers), and connect the dots themselves.  Neither the length of the

17   Complaint nor its broad class allegations are a substitute for specificity as to the

18   named Plaintiffs.

19   Plaintiffs' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

20   claim is barred by the valid California choice-of-law provision found in Plaintiffs'

21   distributorship agreements with Herbalife, which plainly covers the parties' dispute

22   here.  Plaintiffs also impermissibly seek consequential damages under their

23   FDUTPA claim, *i.e.*, what they expected to earn in pursuing the Herbalife business

24   opportunity.  Finally, Plaintiffs' FDUTPA claim and its remaining common law

25   claims for unjust enrichment and negligent misrepresentation, each of which is

26   grounded in fraud, are not pled with the requisite specificity under Rule 9(b).

27   **II.    PROCEDURAL BACKGROUND**

28   This putative class action was originally filed in the Southern District of

3523632.1

2

Florida on September 18, 2017, by eight current and former Herbalife distributors against Herbalife and 44 of Herbalife's highest-ranking individual distributors (the "Individual Defendants").  D.E. 1. at ¶ 4.  On December 14, 2017, Herbalife and the Individual Defendants jointly moved to compel the arbitration of all eight Plaintiffs' claims, and in the alternative, transfer their claims to this Court.  D.E. 62, 63.  On August 23, 2018, Judge Cooke granted the motions in part, compelling four of the Plaintiffs' claims against Herbalife to arbitration and transferring the remaining four Plaintiffs' claims to this Court.  D.E. 106.  Judge Cooke denied the motions as to the Individual Defendants, ordering the severance of the case and that all eight Plaintiffs' claims against the Individual Defendants remain open in the Southern District of Florida.  *Id.*  Judge Cooke denied Herbalife's pending Motion to Dismiss as moot.  *Id.*

On September 20, 2018, the Individual Defendants noticed their appeal of Judge Cooke's ruling.  On September 24, 2018, Judge Cooke stayed Plaintiffs' action against the Individual Defendants pending the appeal.  The four Plaintiffs who were compelled to arbitrate their claims against Herbalife have yet to make a demand for arbitration.

## III.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs' Allegations

Each of the Plaintiffs is either an Herbalife distributor or the spouse of a distributor.  D.E. 1 (Complaint) at ¶¶ 26, 149, 151, 164, 179, 182, 193; Declaration of Roxane Romans ("Romans Decl."), Exhs. A-C.  Plaintiffs contend that they attended numerous Herbalife sponsored events, at which misrepresentations were made regarding the viability of the Herbalife business opportunity.  Complaint at ¶¶ 3, 26, 147.  Plaintiffs allege primarily that they were pitched a "guaranteed pathway to attaining life changing financial success," and were encouraged to "attend every event" in order to achieve such success.  *Id.* at ¶¶ 2, 9.  Plaintiffs allege that they have been attending such events since as early as 2008.  *Id.* at

¶¶ 149, 183.  Plaintiffs appear to seek as damages not only the cost of attending events, but also money spent in pursuing what they deem to be a "fraudulent and illusory" business opportunity.  *Id.* at ¶¶ 163, 173, 181, 190.  Based on these allegations, Plaintiffs bring claims under the federal RICO statute and FDUTPA, along with common law claims for unjust enrichment and negligent misrepresentation.

**B.      All Four Plaintiffs Entered into Distributorship Agreements with Herbalife Containing California Choice-of-Law Clauses.**

Plaintiffs each entered into distributorship agreements with Herbalife in order to pursue the Herbalife business opportunity.  Romans Decl., Exhs. A-C.  Each of those agreements contains a California choice-of-law clause, which provides that "[t]his Agreement, and any dispute arising from the relationship between the parties to this Agreement, shall be governed by the domestic law of the State of California without the application of conflict of law principles."  *Id.*, Exhs. A and B at ¶ 11, Exh. C at ¶ 17.[2]

---

[2]      The Court may consider the distributorship agreements entered into between the Plaintiffs and Herbalife, because the agreements are "integral" to their claims and their authenticity is undisputed.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds* ("Where [a document attached to a motion to dismiss] is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.").  Notably, these agreements are already in the record, and Plaintiffs have never disputed their authenticity.  *See* D.E. 63-2.  Judge Cooke relied on these agreements in ordering the transfer of Plaintiffs' claims to this Court.  D.E. 106.

**C.** **Plaintiffs Patricia Rodgers, Jeff Rodgers, and Izaar Valdez Released Their Claims in the Class Action Settlement in *Bostick v. Herbalife*.**

> **1.** **The Plaintiffs in *Bostick* Alleged the Same Misrepresentations That Form the Basis for Plaintiffs' Claims Here.**

In 2015, Herbalife settled *Bostick v. Herbalife Int'l of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ (C.D. Cal.), a nationwide class action brought by Herbalife distributors. Like the Plaintiffs here, the *Bostick* Plaintiffs alleged primarily that Herbalife had misrepresented to them that if they "put in the time, effort, and commitment," they could successfully pursue the Herbalife business opportunity. Request for Judicial Notice ("RJN"), Exh. 2 (*Bostick* Amended Complaint) at ¶ 1. Additionally, the *Bostick* complaint, like the Complaint here, alleged that such misrepresentations were made at Herbalife-sponsored events. *See, e.g.*, *id.* at ¶ 32, ¶ 146, ¶ 166 ("You only have to put in the hard work along with the dedication, patience and discipline, attributes you can learn at the events"), ¶¶ 174-177 (describing alleged misrepresentations made at Herbalife "Extravaganza" events), ¶ 214 (alleging Herbalife encouraged distributors to put money towards attending "Training events/seminars"), ¶ 302(f) (alleging that at "[t]raining and events, such as the Extravaganza, . . . Herbalife distributors made material false representations regarding the 'business opportunity' and the success that a distributor could get through Herbalife by purchasing products and recruiting others to do the same.").

> **2.** **Patricia Rodgers, Jeff Rodgers, and Izaar Valdez Were *Bostick* Settlement Class Members.**

The *Bostick* class action settlement that this Court approved defines the "Settlement Class" as "all persons who are or were Herbalife members or distributors in the United States at any time from April 1, 2009 to December 2,

1  2014." RJN, Exh. 5 (*Bostick* Amended Final Judgment) at ¶ 3.[3]  Plaintiffs Patricia

2  Rodgers and Izaar Valdez were *Bostick* class members, because each of them is

3  alleged to have been, and in fact was, an Herbalife distributor during the *Bostick*

4  class period.[4]  Complaint at ¶¶ 149-156, 161, 183, 189-90; Romans Decl., Exhs. A,

5  C.  Neither of them opted out.  RJN, Exh. 5 at Attachment A.  Plaintiff Jeff Rodgers,

6  who is alleged to have pursued the Herbalife business opportunity under his wife's

7  distributorship, is bound by the release contained in the *Bostick* judgment, as it

8  extends to any agents or representatives of the Settlement Class members.

9  Complaint at ¶¶ 155-163; RJN, Exh. 5 at ¶ 12.

10              **3.      The *Bostick* Settlement Release Broadly Covers Claims**

11                        **Arising from Misrepresentations Made by Herbalife**

12                        **Concerning its Business Opportunity.**

13              The release contained in the *Bostick* judgment broadly provides that Herbalife

14  is released from "all claims . . . known or unknown" as of September 18, 2015,[5]

---

16  [3]   The *Bostick* settlement excludes those Herbalife distributors who signed an
17  arbitration agreement with Herbalife during or after September 2013 (when
   Herbalife began incorporating arbitration clauses directly into its distributorship
18  agreements).  RJN, Exh. 5 at ¶ 3.  None of the Plaintiffs whose claims were
   transferred to this Court signed such an agreement.
19
20  [4]   Although Plaintiff Jennifer Ribalta also was a distributor during this time period,
   she was excluded from the *Bostick* settlement because she was a Global Expansion
21  Team or "GET" member, one of Herbalife's higher levels of distributors.  RJN, Exh.
   5 at ¶ 3.
22
23  [5]   While the Final Judgment in *Bostick* was issued on June 17, 2015, the "Effective
   Date" of the *Bostick* settlement, as defined in the Stipulation of Settlement, occurred
24  when the Final Judgment became "final," specifically when the "time for the filing
   or noticing of any appeal from the Court's Final Judgment" expired.  RJN, Exh. 3 at
25  ¶ 1.7.3.  The *Bostick* judgment became final when the time for the objectors to the
   appeal the denial of their motion for reconsideration of this Court's order granting
26  final approval expired.  This Court denied objectors' motion for reconsideration on
27  August 18, 2015.  RJN, Exh. 6 at 1.  The objectors' deadline to appeal the order
   denying their motion was 30 days later, on September 17, 2015.  *See* Fed. R. App. P.

28

3523632.1

that:

- Were or could have been asserted in *Bostick*; and

- "[A]re based upon, arise out of, or reasonably relate to," among other things: (1) "any actual, potential or attempted recruitment of any Herbalife member during the Class Period;" (2) "**any allegation that,** during the Class Period, Herbalife engaged in any acts of unfair competition; *false and/or misleading advertising*; or operated any type of illegal, pyramid, endless chain, or *fraudulent scheme*;" and (3) "any of the facts, schemes, transactions, *events*, matters, occurrences, acts, disclosures, statements, *misrepresentations, omissions*, or failures to act *that have been or could have been alleged or asserted in the Action*."

RJN, Exh. 5 at ¶ 12 (emphasis added).

The *Bostick* release further provides that all claims "***known or unknown***, as of the Effective Date" are released "whether or not such Settlement Class Member executes and delivers a Claim Form." *Id.* at ¶ 15 (emphasis added). The release also provides that all Settlement Class Members shall "conclusively be deemed to have waived the rights afforded by California Civil Code Section 1542, and any similar statute or law, or principle of common law, of California or any other jurisdiction." *Id.*

The *Bostick* release expressly excludes from its scope claims arising out of the purchase of Herbalife stock, bonuses for the sale of certain products owed by Herbalife to its distributors, or any allegation that an Herbalife product was defective. *Id.*, Exh. 5 at ¶ 12.

---

4(a)(1)(A). Thus, the Final Judgment became "final" on September 18, 2015. RJN, Exh. 6 at 1.

7

IV.    **ARGUMENT**

    A.    **Patricia Rodgers, Jeff Rodgers, and Izaar Valdez's Claims Are
Barred by the *Bostick* Class Action Settlement Release.**

        1.    **The *Bostick* Settlement Agreement Is Governed by California
Law, Which Broadly Construes Settlement Releases.**

The Stipulation of Settlement in *Bostick* provides that "[t]he rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of California." *Id.*, Exh. 3 at ¶ 12.10.  Under California law, the release in the *Bostick* settlement deserves the broadest possible treatment.  First, because the *Bostick* settlement releases "all claims . . . known or unknown, as of the Effective Date," it constitutes a "standard general release" and "includes claims that are not expressly enumerated in the release."  *Id.*, Exh. 5 at ¶ 12; *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 587 (2010).[6]  Moreover, where, as here, "a settlement's text demonstrates a clear intent to release unknown claims, such a release is valid."  *Basco v. Toyota Motor Corp.*, No. CV 09-6307-GHK (RZX), 2011 WL 13127142, at *8 (C.D. Cal. Nov. 30, 2011); RJN, Exh. 3 at ¶ 8.2, Exh. 5 at ¶ 15 (expressly waiving the protections afforded by Cal. Civ. Code § 1542).[7]

In addition, releases such as the one approved in *Bostick* "are not to be shorn of their efficiency by any narrow, technical, and close construction . . . .  If parties intend to leave some things open and unsettled, their intent so to do should be made manifest."  *Villacres*, 189 Cal. App. 4th at 589 (quoting *United States v. Wm. Cramp*

---

[6]   Unless otherwise noted, internal citations and quotation marks have been omitted.

[7]   That section of the California Civil Code provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

1    & Sons Co., 206 U.S. 118, 128 (1907)); RJN, Exh. 5 at ¶ 12 (excluding from the

2    scope of the *Bostick* release claims not at issue here).

3              2.       **The *Bostick* Settlement Release Subsumes the Claims**

4                       **Brought by Patricia Rodgers, Jeff Rodgers, and Izaar**

5                       **Valdez.**

6         The Ninth Circuit has held that "a federal court may release not only those

7    claims alleged in the complaint, but also a claim based on the identical factual

8    predicate as that underlying the claims in the settled class action even though the

9    claim was not presented *and might not have been presentable in the class action*."

10   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (emphasis in

11   original). The *Bostick* release therefore bars the claims brought by Plaintiffs Patricia

12   Rodgers, Jeff Rodgers, and Izaar Valdez, each of whom is a *Bostick* settlement class

13   member, because (1) the misrepresentations alleged in *Bostick* also form the basis

14   for Plaintiffs' Complaint; (2) the original *Bostick* complaint alleged RICO claims

15   identical to the ones Plaintiffs bring here; and (3) the *Bostick* settlement

16   compensated class members for the same losses Plaintiffs seek to recover here.

17             a.       **The Misrepresentations Alleged in *Bostick* Form the**

18                      **Basis for Plaintiffs' Complaint.**

19        The misrepresentations Plaintiffs allege were made at certain events are

20   identical to those the *Bostick* plaintiffs alleged occurred at these very same events.

21   *Compare* Complaint at ¶ 3 (encouraging distributors to "'attend every event' if they

22   want to be successful"), ¶ 6 ("If you go to all of the events, you qualify for

23   everything – you will get rich"), ¶¶ 84-89 (describing the "Extravaganza" events,

24   alleging that "attendance is pushed aggressively") *with* RJN, Exh. 2 at ¶¶ 32, 146,

25   166 ("You only have to put in the hard work along with the dedication, patience and

26   discipline, attributes you can learn at the events"), ¶¶ 174-77 (describing alleged

27   misrepresentations made at Herbalife "Extravaganza" events), ¶ 214 (alleging

28   Herbalife encouraged distributors to put money towards attending "Training

9

1   events/seminars"), ¶ 302(f) (alleging that at "[t]raining and events, such as the

2   Extravaganza, . . . Herbalife distributors made material false representations

3   regarding the 'business opportunity' and the success that a distributor could get

4   through Herbalife by purchasing products and recruiting others to do the same.").

5   Therefore, not only "could" Plaintiffs' allegations "have been asserted" in

6   *Bostick*—their allegations ***were asserted*** in *Bostick* and later released in the *Bostick*

7   judgment.  RJN, Exh. 5 at ¶ 12.  That Plaintiffs here choose to focus their

8   allegations on their attendance at certain Herbalife events does not save their claims

9   from the *Bostick* release.  Plaintiffs fundamentally allege the "promotion of an

10  inherently fraudulent business opportunity, in which the Herbalife Defendants know

11  participants have no reasonable chance of success."  Complaint at ¶ 372.  ***This same***

12  ***allegation*** formed the basis for the *Bostick* complaint, thereby barring Plaintiffs'

13  claims here.  RJN, Exh. 2 at ¶ 269 (alleging as fraudulent "the touted, yet non-

14  existent, Herbalife 'business opportunity' for everyone, including but not limited to

15  Herbalife's massive advertising campaign."), ¶ 271 ("Herbalife has made numerous

16  misleading representations about the business opportunity of Herbalife and the

17  income that a recruit or a distributor can realize by becoming a distributor and

18  participating in the scheme."); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442

19  F.3d 741, 749 (9th Cir. 2006) ("While Plaintiffs seek to hold Defendants liable by

20  positing a different theory of anti-competitive conduct, the price-fixing predicate . . .

21  and the underlying injury are identical.  Therefore, Plaintiffs' claims were

22  extinguished by the [prior class action] settlement.").

23                    **b.      The Original *Bostick* Complaint Alleged RICO Claims**

24                             **Identical to the RICO Claims Plaintiffs Assert Here.**

25  The original *Bostick* complaint asserted several claims under RICO, including

26  alleged violations of sections 1962(c) and (d), which subsume the RICO claims

27  brought by Plaintiffs here.  The *Bostick* complaint alleged, as Plaintiffs do here, an

28  enterprise consisting of Herbalife and its "beneficiaries" and "promoters," including

3523632.1

10

1  some of the same individuals named in the Complaint.[8]  RJN, Exh. 1 at ¶¶ 11, 236.

2  The *Bostick* complaint also alleged, as Plaintiffs do here, that the purpose of the

3  enterprise was to:

> (1) earn money through fraudulent means, (2) entice individuals to become Herbalife distributors, (3) entice individuals to purchase products from Herbalife, (4) entice individuals to recruit others to become Herbalife distributors and profit off those recruits' purchases of Herbalife products, and (5) reap large profits for themselves based on false representations.

8  *Id.* at ¶ 239; *compare* Complaint at ¶ 347 (alleging the same).

9  The *Bostick* complaint also asserted wire fraud as a predicate act for its RICO

10  claims, alleging that misrepresentations regarding the Herbalife business

11  opportunity and the "wealth that a recruit or Herbalife distributor could achieve"

12  were transmitted through e-mail, videos, and websites.  RJN, Exh. 1 at ¶¶ 253, 254,

13  257; *compare*, e.g., Complaint at ¶¶ 68, 93, 96, 124, 155 (alleging the same).

14  That the RICO claims brought in *Bostick* were voluntarily dismissed after

15  Herbalife brought its initial motion to dismiss is of no moment because the *Bostick*

16  release covers all claims that "were or could have been asserted in the ***complaints***

17  filed in" *Bostick*.  RJN, Exh. 5 at ¶ 12; *see also Howard v. Am. Online Inc.*, 208 F.3d

18  741, 748 (9th Cir. 2000) ("A judicially approved settlement agreement is considered

19  a final judgment on the merits.").

20            **c.    The *Bostick* Settlement Compensated Class Members**

21                    **for the Same Losses Plaintiffs Claim Here.**

22  As in *Bostick*, Plaintiffs here allege that Herbalife's business opportunity is

23  not "viable," and they seek damages for money they lost pursuing this allegedly

24  "fraudulent and illusory" opportunity, including alleged losses stemming from the

25  purchase of Herbalife products.  *See, e.g.*, Complaint at ¶ 3 ("Herbalife business

26

27  _____

28  [8]    Plaintiffs' claims against the Individual Defendants remain in the Southern District of Florida.

1 opportunity participants are told that they must 'attend every event' if they want to

2 be successful; and that they must 'qualify' for special treatment at these events by

3 making large monthly purchases of Herbalife's products."), ¶ 26 ("[T]here is no

4 viable retailing opportunity."), ¶ 163 (seeking losses of at least $80,000 from

5 "pursuing Herbalife's fraudulent and illusory business opportunity," outside of the

6 $20,000 the Rodgers Plaintiffs allegedly spent by participating at events), ¶¶ 179,

7 181, 190; *compare* RJN, Exh. 2 at ¶ 3 (alleging the *Bostick* plaintiffs "did not make

8 money as promised" and "failed [at the Herbalife business opportunity] because

9 they were doomed from the start . . . .").

10      The *Bostick* settlement compensated class members for the same losses

11 Plaintiffs seek to recover here, allocating $17,500,000 in cash awards to class

12 members who allegedly lost money pursuing the Herbalife business opportunity.

13 RJN, Exh. 3 at ¶ 4.1.  Importantly, regardless of whether or not Plaintiffs Patricia

14 Rodgers, Jeff Rodgers, and Izaar Valdez filed claims and received settlement

15 payments in *Bostick*, they are still bound by its release.  *Id.*, Exh. 5 at ¶ 15, Exh. 4 at

16 47 (in its order approving the *Bostick* settlement, this Court held that "the notice

17 procedures approved here comport with due process and Rule 23.").

18      **B.      Plaintiffs' RICO Claims (Counts I and II) Fail.**

19      In order to state a section 1962(c) violation of civil RICO, a plaintiff must

20 allege "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering

21 activity." *Williams v. Countrywide Fin. Corp.*, No. 216CV04166CASAGRX, 2017

22 WL 986517, at *9 (C.D. Cal. Mar. 13, 2017).  Moreover, a civil RICO plaintiff must

23 allege injury to his "business or property" and that such injury was "'by reason of'

24 the RICO violation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th

25 Cir. 2008) (quoting 18 U.S.C. § 1964(c)).

26      All of the Plaintiffs' RICO claims under section 1962(c) (conducting the

27 affairs of an enterprise) should be dismissed because Plaintiffs do not sufficiently

28 allege: (1) the existence of a distinct enterprise; (2) a cognizable injury to their

business or property; (3) that the alleged misrepresentations amount to more than mere puffery; and (4) the predicate act of wire fraud with particularity.  For the same reasons, Plaintiffs' RICO conspiracy claim under section 1962(d) fails.  The conspiracy claim also fails because Plaintiffs do not plead the existence of a conspiracy with particularity.

### 1. Plaintiffs Allegations' Fail to Establish the Most Basic Elements of a Section 1962(c) Claim Under RICO.

#### a. Plaintiffs Fail to Allege the Existence of a Distinct RICO Enterprise.

Under RICO, "an 'enterprise' is a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992).  Plaintiffs run afoul of this rule because they plead an association-in-fact enterprise consisting entirely of Herbalife and some of its own distributors.  Complaint at ¶¶ 4, 138, 206-325 (alleging that Herbalife "and its highest ranking members . . . jointly produce and sell these events in close association," and that these members are Herbalife's "top distributors," two of whom, John Tartol and Leslie Stanford, allegedly served on Herbalife's Board of Directors).

Plaintiffs' allegations amount to nothing more than a claim that Herbalife's business model is fraudulent.  *See id.* at ¶¶ 7, 26, 29, 34 (contending that Herbalife's business model precludes success on the part of Plaintiffs, and that there "is no viable retailing opportunity").  Plaintiffs therefore fail to allege an enterprise that is distinct from Herbalife's business and the ordinary channels through which it sells its products and recruits distributors.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (dismissing RICO claim because "Plaintiffs merely allege that the Defendants are associated in a manner directly related to their own primary business activities . . . .  Indeed, the [Complaint] alleges no more than that

1   Defendants' primary business activity—the design, manufacture, and sale or lease of

2   Toyota vehicles—was conducted fraudulently."); *Chi Pham v. Capital Holdings,*

3   *Inc.*, No. 10CV0971-LAB AJB, 2011 WL 3490297, at *5 (S.D. Cal. Aug. 9, 2011)

4   (dismissing RICO claim because "Plaintiffs have alleged only an enterprise that is

5   the defendants by a different name.  Neither the alleged RICO enterprise nor the

6   defendants has a purpose distinct from the goals and objectives of the other.");

7   *United Food & Commercial Workers Unions & Employers Midwest Health Benefits*

8   *Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (affirming dismissal of

9   RICO claim for failure to plead distinct enterprise, holding that the complaint "does

10  not adequately allege that [Defendants] were conducting the affairs of [an

11  enterprise], as opposed to their own affairs.").

12              **b.    Plaintiffs Improperly Seek Recovery for an Expectancy**

13                      **Interest Under RICO.**

14          In order to have standing to sue under RICO, a plaintiff must allege a

15  "concrete financial loss."  *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1090 (C.D.

16  Cal. 2011).  Therefore, "[i]njury to mere expectancy interests or to an intangible

17  property interest is not sufficient to confer RICO standing."  *Chaset v. Fleer/Skybox*

18  *Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002).  Plaintiffs lack standing under RICO

19  because they allege they "received no benefit" from attending events, and seek as

20  losses money they hoped to earn in pursuing "Herbalife's fraudulent and illusory

21  business opportunity."  Complaint at ¶¶ 7, 163.  Plaintiffs therefore seek an

22  expectancy interest that is not cognizable under RICO.  *See also Amarelis v. Notter*

23  *Sch. of Culinary Arts*, LLC, No. 6:13-CV-54-ORL-31KRS, 2014 WL 5454387, at

24  *2, 6 (M.D. Fla. Oct. 27, 2014) (dismissing RICO claim brought by graduates of

25  culinary institute against their former school, because the allegation that the school

26  misrepresented the amount of money students could earn after graduation

27  constituted an "expectancy interest[]" that does not "give rise to [an] actionable

28  RICO injury.").

1

2

### c.   The Misrepresentations Alleged in the Complaint Amount to Non-Actionable Puffery, Not Fraud.

3    Puffery cannot form the basis for a wire fraud claim.  *See Cty. of Marin v.*

4  *Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011).  Puffery is

5  characterized by "vague, exaggerated, generalized or highly subjective statements

6  regarding a product or business which do not make specific claim."  *Id.*  Moreover,

7  "assertions that a particular product is ***the 'best'*** or speculative statements about

8  ***possible profits*** are non-actionable opinions ('puffing') and a party is not entitled to

9  rely upon them."  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086,

10  1093 (C.D. Cal. 1999) (emphasis added).

11    The misrepresentations alleged in the Complaint are classic puffery, and fall

12  outside the ambit of the RICO statute.  *See, e.g.*, Complaint at ¶ 66 ("[W]ith the

13  right training, anything is possible . . . ."), ¶ 68 ("I can do this!"), ¶ 84 (referencing

14  "the BIGGEST and MOST IMPORTANT event to attend"), ¶ 86 ("[W]e were all

15  extremely moved by the enthusiasm and excitement in the business."), ¶ 127

16  (referencing a sign at an event that notes: "CHANGING PEOPLE'S LIVES"), ¶ 165

17  (referencing a social media post that said: "NEVER GIVE UP").  These alleged

18  statements amount to "slogans" that are not "capable of being classified as true or

19  false," but to the extent these statements do convey affirmative representations, "the

20  representations are mere sales puffing that is not actionable RICO mail or wire

21  fraud."  *In re All Terrain Vehicle Litig.*, No. CV-89-3334-RSWL, 1990 WL 138229,

22  at *2 (C.D. Cal. July 19, 1990).

23

24

### d.   Plaintiffs Fail to Plead the Predicate Act of Wire Fraud with Particularity.

25    The elements of wire fraud are: "(1) a scheme to defraud; (2) use of the wires

26  in furtherance of the scheme; and (3) a specific intent to deceive or defraud."

27  *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004).  The predicate act of

28  wire fraud is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading

standard, which "requires that a plaintiff allege the time, place, and manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme." *Toyota Motor Corp.*, 826 F. Supp. 2d at 1201; *Hill*, 841 F. Supp. 2d at 1088.  Therefore, "[a] plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *Toyota Motor Corp.*, 826 F. Supp. 2d at 1201.  The Complaint fails to plead wire fraud with the requisite specificity.

First, Plaintiffs fail to allege any misrepresentations with particularity. Plaintiffs purport to identify a laundry list of alleged statements made at events, but do not identify which of these statements form the basis for their wire fraud claim (indeed, many of these alleged statements were apparently made orally at live events, not over the wires).  *See, e.g.*, Complaint at ¶¶ 61-62, 64, 66, 68, 77, 84, 90, 92.  Defendants and the Court cannot be forced to sift through the exhibits attached to the Complaint, which compile various fliers, social media postings, and photos, and speculate as to which statements amongst these various exhibits constitute the alleged misrepresentations on which Plaintiffs' RICO claims are premised. Plaintiffs conclude by alleging that "[e]ach month Defendants distribute, or cause to be distributed, hundreds of thousands of fraudulent messages about Circle of Success events across the wires," a hopelessly vague allegation that plainly fails to meet the high pleading bar set by Rule 9(b).  *Id.* at ¶ 96.

Second, the Complaint fails to specify which defendants, if any, made the alleged misrepresentations, instead impermissibly lumping together three Herbalife entities and a slew of Individual Defendants, who are not a part of the action that was transferred to this Court.  *See* Complaint at ¶¶ 4, 54 (contending that all Defendants "jointly produce and sell" the events at issue and collectively "encouraged Plaintiffs and Class Members to attend a Circle of Success event every month."), ¶ 61 ("***Individual Defendants*** constantly reiterate . . ."), ¶ 68 ("Long scripted days of income claims accompanied by loud music, shouting, clapping,

hugging, and crying . . . .) (emphasis added), ¶ 71 ("Herbalife's STS system is owned and controlled by a web of ***Defendant connected entities*** . . . .") (emphasis added), ¶ 84 ("Extravaganza is billed as 'the BIGGEST and MOST IMPORTANT event to attend' on the Circle of Success calendar."), ¶ 90 ("***Speakers*** tell the audience that they can achieve the same level of success themselves simply by continuing to attend events.") (emphasis added), ¶ 97 ("***Defendants*** expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires.") (emphasis added), ¶ 136 (referencing "more than 4,000" Instagram posts).

Because it is impossible to glean from these allegations who allegedly made the cited statements, Plaintiffs fail sufficiently to allege a claim for wire fraud.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (Rule 9(b) require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

## 2. Plaintiffs Also Fail Adequately to State a Claim for RICO Conspiracy Under Section 1962(d).

Plaintiffs' claim for RICO conspiracy under § 1962(d) fails because, as explained above, they have not sufficiently alleged a substantive violation of RICO. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.")

Plaintiffs' RICO conspiracy claim also fails independently because the Complaint does not plead the alleged conspiracy with particularity under Rule 9(b). *See Chung Y. Goh, et al. v. Prima Fin. Grp. Inc. et al.*, No. CV 17-03630-SVW-PJW, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) ("[T]o state a claim for RICO conspiracy where the predicate acts sound in fraud, the plaintiff must plead the conspiracy with the particularity required by Rule 9(b)."). Plaintiffs do not

1  allege with specificity either "an agreement that is a substantive violation of RICO

2  or that [Herbalife] agreed to commit, or participated in, a violation of two predicate

3  offenses." *Howard*, 208 F. 3d at 751.  Nor do Plaintiffs plead with specificity that

4  Herbalife was "aware of the essential nature and scope of the enterprise and

5  intended to participate in it." *Id.*

6         Plaintiffs merely contend that:

7                 Defendants have agreed and conspired to violate 18 U.S.C.
               § 1962(c) as set forth above in violation of 18 U.S.C.

8                 § 1962(d).  Defendants have intentionally conspired and
               agreed to directly, and indirectly, conduct and participate

9                 in the conduct of the affairs of the Circle of Success
               enterprise through a pattern of racketeering activity.

10

11  Complaint at ¶ 363.  This conclusory allegation is plainly insufficient to establish

12  the existence of an agreement to violate RICO under Rule 9(b)'s heightened

13  pleading standard.  *See Prima Fin. Grp.*, 2017 WL at *3 ("Conclusory allegations

14  that RICO defendants entered into an agreement are insufficient.").

15      **C.**    **Plaintiffs' Claim Under the Florida Deceptive and Unfair Trade**

16             **Practices Act (Count III) Fails.**

17          **1.**    **The Choice-of-Law Clause Found in Plaintiffs'**

18                 **Distributorship Agreements Bars the Claim.**

19         The valid California choice-of-law clauses found in each of the Plaintiffs'

20  distributorship agreements requires the dismissal of Plaintiffs' FDUTPA claim.  *See*

21  Romans Decl., Exhs. A and B at ¶ 11, Exh. C at ¶ 17.  Plaintiffs' claims plainly

22  "arise[] from the relationship" between them and Herbalife, as Plaintiffs claims are

23  based on their alleged failed pursuit of the Herbalife business opportunity and the

24  misrepresentations Herbalife allegedly made to them as distributors.  *Id.*; *see*

25  Complaint at ¶ 163 (alleging that the Rodgers Plaintiffs "lost more than $100,000

26  pursuing Herbalife's fraudulent and illusory business opportunity."), ¶ 190 (alleging

27  that Izaar Valdez "spent more than $10,000 purchasing Herbalife products in order

28  to 'qualify for events' and move up in the Herbalife marketing plan.").

Indeed, the only reason Plaintiffs attended the events alleged in the Complaint was to pursue the Herbalife business opportunity. *Id.* at ¶ 3 ("Herbalife business opportunity participants are told that they must 'attend every event' if they want to be successful . . . ."); *see Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992) ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.").[9]

The choice-of-law clause is enforceable because California "has as a substantial relationship to the parties or their transaction," as Herbalife is headquartered in Los Angeles, California.  Complaint at ¶¶ 203-205; *Palomino v. Facebook, Inc.*, No. 16-CV-04230-HSG, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (also noting that "California has a strong policy favoring enforcement of choice-of-law provisions.").  Plaintiffs' claims are therefore barred under the California choice-of-law clause found in their distributorship agreements.

### 2. Plaintiffs in Any Event Fail to Plead a Claim Under FDUTPA.

In order to state a claim under FDUTPA, a plaintiff must plead: "(1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-

---

[9]   Notably, Judge Cooke in the Southern District of Florida found the forum selection clause contained in Plaintiffs' distributorship agreements to be valid and to encompass their claims.  D.E. 106.  Plaintiff Jeff Rodgers, although not a signatory to his wife's distributorship agreement, is nevertheless bound by its choice-of-law clause because his claims are "closely related to the contractual relationship" between Patricia Rodgers and Herbalife.  *See J. Greenburg, D.D.S., Inc. v. White Rock Capital Sols.*, LLC, No. CV 11-9498 PA (JEMX), 2012 WL 13012673, at *4 (C.D. Cal. Feb. 22, 2012) (enforcing forum selection clause against non-signatory on this ground).

1    62212-CIV-BLOOM, 2016 WL 739652, at *4 (S.D. Fla. Feb. 25, 2016).  Rule

2    9(b)'s heightened pleading standard applies to FDUTPA claims "based on deception

3    or fraud."  *Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at *23 (S.D. Fla.

4    Feb. 16, 2017).  Plaintiffs fail to allege that Herbalife engaged in deceptive or unfair

5    practices, or that Herbalife proximately caused damages cognizable under

6    FDUTPA.

7          a.    **Plaintiffs' FDUTPA Claim Fails Because It Is Based on**

8                **Alleged Puffery and Is Not Pled with the Requisite**

9                **Specificity.**

10         Plaintiffs' allegations do not establish that Defendants violated FDUTPA.  As

11   discussed above in Section II(B)(1), the misrepresentations alleged in the Complaint

12   amount to mere puffery and are not pled with the specificity required by Rule 9(b).

13   *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D.

14   Fla. 2012) (dismissing FDUTPA claim because "most of the alleged

15   misrepresentations Plaintiffs rely upon are nothing more than opinion or puffery.").

16         b.    **Plaintiffs Fail to Allege That Herbalife's Conduct**

17                **Proximately Caused Damages Recoverable Under**

18                **FDUTPA.**

19         FDUTPA permits recovery for "actual damages," as opposed to consequential

20   or special damages.  *BPI Sports*, 2016 WL at *6.  Actual damages under FDUTPA

21   are defined as "the difference in the market value of the product or service in the

22   condition in which it was delivered and its market value in the condition in which it

23   should have been delivered according to the contract of the parties."  *Rodriguez v.*

24   *Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App.

25   2010).  Here, it appears that Plaintiffs seek as damages both the cost of attending

26   Herbalife events and their purported losses in pursuing the Herbalife business

27   opportunity.  Complaint at ¶¶ 163, 173, 179, 181, 184.  Neither alleged injury is

28   sufficient to support a claim under FDUTPA.

1    First, Plaintiffs fail adequately to plead damages stemming from the

2    attendance at events because they do not allege that there was any difference

3    between the content presented at such events and the content they reasonably

4    expected to be presented at such events.  *See Rodriguez*, 38 So. 3d at 180.  Nor can

5    Plaintiffs make such a claim since Plaintiffs, having regularly attended such events,

6    admit they well knew what to expect at each event they attended.  *See* Complaint at

7    ¶¶ 55, 56, 76, 84, 90, 147.

8    Second, to the extent Plaintiffs seek as losses their "large monthly purchases

9    of Herbalife product," they fail to allege the "difference in the market value"

10   between the products they purchased and the products they expected to receive.  *See*

11   *id.* at ¶¶ 3, 163, 179, 181; *Rodriguez*, 38 So. 3d at 180.  Plaintiffs do not allege that

12   the products they purchased were not delivered in adequate condition, nor do they

13   allege that they were unable to sell, consume, or return such products.  And, to the

14   extent Plaintiffs instead seek the profits they expected to earn through the pursuit of

15   the Herbalife business opportunity, *i.e.*, the sale of Herbalife product, such damages

16   plainly are not recoverable under FDUTPA.  *See Diversified Mgmt. Sols., Inc. v.*

17   *Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *6 (S.D. Fla.

18   May 16, 2016) ("[C]onsequential damages, including lost profits, cannot be

19   recovered under FDUTPA.").[10]

20   **D.     Plaintiffs Fail to Plead Sufficient Facts Supporting a Claim for**

21   **Unjust Enrichment (Count IV).**

22   Although there is no standalone cause of action for unjust enrichment in

23   California, the Ninth Circuit allows for such a claim if it is stylized as one based in

24   quasi-contract.  *See Goldman v. Bayer AG*, No. 17-CV-0647-PJH, 2017 WL

25   3168525, at *8 (N.D. Cal. July 26, 2017).  Such a claim, however, must be pled

26

27

28   [10]  To the extent Plaintiffs seek to recover treble damages under their FDUTPA claim, there is no statutory basis for such a request.

under the theory that the defendant "has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id.* (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  Additionally, a claim for unjust enrichment that sounds in fraud must be pled with specificity under Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).").

Here, Plaintiffs altogether fail to plead their unjust enrichment claim under a quasi-contract theory of recovery.  Ultimately, their claim for unjust enrichment is based on the same allegations as their other claims, namely that Herbalife misrepresented the nature of its business opportunity and Plaintiffs' likelihood of succeeding at that opportunity should they attend certain events.  *See* Complaint at ¶ 382 ("[T]he Herbalife Defendants conned Plaintiffs into benefitting the Defendants by using the same or materially similar representations and methods, and by exploiting the same informational advantage, giving Plaintiffs the false expectation that Plaintiffs would benefit from their participation in the Circle of Success events.").  As discussed above in Section II(B)(1), these allegations are not pled with the requisite specificity and therefore also fail to support a claim for unjust enrichment.  *See Bayer*, 2017 WL at *9 (dismissing unjust enrichment claim where it was "premised on the same allegations as the UCL, CLRA, and (possibly) breach of warranty claim" and plaintiff had failed sufficiently to allege that the labeling on defendant's product was deceptive).

Even if the Court were to construe Plaintiffs' claim as one grounded in quasi-contract, Plaintiffs' claim still fails because "[a] claim for unjust enrichment, restitution and/or quasi-contract cannot lie where the plaintiff has received the benefit of the alleged bargain." *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,

No. CV1701875MWFMRWX, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017); *see also Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.").  Here, Plaintiffs fail to plead with specificity what benefits they unjustly conferred on Herbalife, or how they were deprived of the benefit of the alleged bargain.

First, Plaintiffs only vaguely allege that they conferred on Herbalife the benefit of "hundreds of hours in unpaid labor."  Complaint at ¶ 380.  Plaintiffs, however, fail to allege with any specificity what this "labor" entailed or how this labor benefited Herbalife.  Second, Plaintiffs do not allege how Herbalife unjustly retained the proceeds from event ticket sales, nor can they, as they were not denied attendance at such events or otherwise deprived of hearing the content they expected to hear at such events.  *Id.* at ¶¶ 55, 56, 76, 84, 90 (alleging that each event "delivers substantially similar content . . . in a substantially similar format" and that these events occur at regular intervals with set pricing).  Third, Plaintiffs fail to specifically plead that they themselves recruited people to become Herbalife distributors.  *Id.* ¶ 380.  Ultimately, the utter lack of plausible allegations supporting Plaintiffs' unjust enrichment claim demonstrates that it falls well short of meeting an ordinary pleading standard, let alone Rule 9(b)'s heightened pleading bar.

### E.   Plaintiffs' Claim for Negligent Misrepresentation (Count V) Fails for the Same Reasons That Its Claim for Wire Fraud Fails.

Rule 9(b)'s heightened pleading standard also applies to claims for negligent misrepresentation.  *See Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1208 (C.D. Cal. 2017).[11]  As discussed above in Section II(B)(1), the

---

[11]   Although California courts are split on this issue, because Plaintiffs contend that Herbalife "actively made false statements," Plaintiffs' negligent misrepresentation claim is really one for fraudulent misrepresentation, and is therefore unquestionably

1  Complaint's allegations of fraud fail to meet Rule 9(b)'s pleading requirements,

2  because Plaintiffs do not plead with specificity (1) the misrepresentations on which

3  their fraud claim is premised; (2) the defendants responsible for making the alleged

4  misrepresentations; and (3) statements that amount to more than mere puffery. *See*

5  *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *12

6  (N.D. Cal. June 5, 2009) ("[S]tatements amounting to mere puffery are not

7  actionable" under a claim for negligent misrepresentation.); *Hutson v. Am. Home*

8  *Mortg. Servicing, Inc.*, No. C 09-1951 PJH, 2009 WL 3353312, at *14 (N.D. Cal.

9  Oct. 16, 2009) (dismissing claim for negligent misrepresentation, because "[m]ere

10  labels and conclusions that lump all defendants together are insufficient to withstand

11  Rule 9(b)'s standard.").

12  **V.    CONCLUSION**

13         Based on the foregoing, Herbalife respectfully urges the Court to grant its

14  Motion and dismiss the Complaint with prejudice.

15

16  DATED:  September 28, 2018         Respectfully submitted,

17                                     Mark T. Drooks
18                                     Paul S. Chan
19                                     Gopi K. Panchapakesan
                                       Bird, Marella, Boxer, Wolpert, Nessim,
20                                     Drooks, Lincenberg & Rhow, P.C.

21

22                                     By:  _____*/s/ Mark T. Drooks*_____
23                                              Mark T. Drooks
                                            Attorneys for Defendants Herbalife
24                                          Nutrition Ltd. (fka Herbalife Ltd.);
                                            Herbalife International, Inc.; and Herbalife
25                                          International of America, Inc.

26

27  _____

28  subject to Rule 9(b).  *Haddock v. Countrywide Bank, NA*, No. CV
    146452PSGFFMX, 2015 WL 9257316, at *22 (C.D. Cal. Oct. 27, 2015).