1   submitting claims for a cash award are "Business Opportunity Claimants."

2         4.4.1    <u>Qualified Products</u>.  Amounts to be paid to Business

3   Opportunity Claimants out of the Net Settlement Fund shall be derived from

4   information submitted to the Claims Administrator by the Business Opportunity

5   Claimants and the price paid for Qualified Products identified through the claims

6   process.  A "Qualified Product" shall consist of an Herbalife product purchased by

7   the Business Opportunity Claimant directly from Herbalife for which the Business

8   Opportunity Claimant certifies the following:

9         (a)    The product was purchased for resale purposes during the Class

10             Period;

11         (b)    The product was purchased from within the United States and

12             shipped directly to the Claimant at a location in the United

13             States;

14         (c)    The product was not sold for at least the cost of purchase; and

15         (d)    The product was not returned to Herbalife through Herbalife's

16             buyback program, Herbalife's satisfaction guarantee, or as part

17             of the Product Return program provided in this settlement.

18         4.4.2    Business Opportunity Claimants shall also certify under

19   penalty of perjury: (a) that they joined Herbalife primarily to pursue a business

20   opportunity and not primarily for self-consumption; (b) that in total, they lost money

21   on Herbalife products pursuing the Herbalife business opportunity; (c) that they

22   have never been GET Team or higher level members; and (d) the Claimant's best,

23   good faith estimate of his or her total loss from Qualified Product sales.

24         4.4.3    The Claims Administrator, using purchase data supplied by

25   Herbalife, shall compare the Business Opportunity Claimant's estimated total loss

26   from Qualified Product sales to the price paid by that claimant for the claimant's

27   aggregate Qualified Products.

28         4.4.4    The Claims Administrator, using purchase data supplied by

1  Herbalife, shall determine for each Business Opportunity Claimant whether during

2  any Claims Year during the Class Period the claimant paid Herbalife at least $750 to

3  purchase products (the "Minimum Purchase Amount"). A Claims Year shall be

4  defined as any twelve-month period beginning on the later of: (i) the first day of the

5  month in which the Business Opportunity Claimant became an Herbalife member or

6  distributor, or (ii) the beginning of the Class Period. A Business Opportunity

7  Claimant who purchased at least the Minimum Purchase Amount shall be entitled to

8  a Pro Rata Award (defined in Subsection 4.4.5). All other Claimants shall be "Flat

9  Rate Claimants" entitled to "Flat Rate Awards" (defined in Subsection 4.4.6).

10         4.4.5    Pro Rata Awards.  Business Opportunity Claimants

11  submitting valid claims shall be entitled to a payment equal to the lesser of 100% of

12  the estimated total loss from Qualified Product sales or 50% of the price paid by that

13  claimant for the claimant's aggregate Qualified Products.

14              (a)    If the aggregate payment for Pro Rata Awards due to Business

15                     Opportunity Claimants exceeds the Net Settlement Fund less the

16                     aggregate Flat Rate Awards described below in Subsection 4.4.6,

17                     payments shall be subject to pro rata diminution. If the

18                     aggregate payment for Pro Rata Awards is less than 75% of the

19                     Net Settlement Fund less the aggregate Flat Rate Awards

20                     described below in Subsection 4.4.6, either party may move the

21                     Court to increase payments to Business Opportunity Claimants

22                     receiving a Pro Rata Award up to the lesser of (i) 75% of the

23                     price paid by that claimant for the claimant's aggregate Qualified

24                     Products; or (ii) the total Net Settlement Fund.

25         4.4.6    Flat Rate Award.  Flat Rate Claimants submitting valid

26  claims shall receive a payment of $20 to be paid from the Net Settlement Fund (the

27  "Flat Rate Award"). If the aggregate Flat Rate Award for all Flat Rate Claimants

28  exceeds $3 million, Flat Rate Awards shall be subject to pro rata diminution. If the

1  aggregate Flat Rate Award is less than $3 million, then the difference shall remain

2  in the Net Settlement Fund and be available for Pro Rata Awards.

3        4.5     Claim Forms. Claim Forms (for both Product Return and Business

4  Opportunity claims) shall be available from the Claims Administrator, as set forth in

5  the Notice to the Settlement Class.  Completed Claims Forms shall be due to the

6  Claims Administrator no later than 90 days after a date to be mutually agreed upon

7  by the parties upon preliminary approval of the Settlement Agreement.

8        4.6     Opt-Out Forms.  Class Members may submit an Opt-Out Form or

9  letter to the Claims Administrator prior to the Claims Deadline asking to be

10  excluded from the monetary portion of the settlement.  If a Class Member submits

11  both a Claims Form and an Opt-Out Form, the Claims Administrator shall disregard

12  the Opt-Out Form.

13        4.7     The claims process shall employ standard anti-fraud measures to be

14  implemented by the Claims Administrator.  These measures may include comparing

15  data provided by Settlement Class Members with information otherwise available to

16  Herbalife.

17        4.8     No Disbursement of Direct Relief Before Effective Date. The Escrow

18  Agent and the Claims Administrator shall not disburse any portion of the Net

19  Settlement Fund or the Net Product Return Fund before the Effective Date, except

20  as provided for in the Settlement Agreement.

21        4.9     Privacy. The Claims Administrator shall take reasonable measures to

22  the extent permitted by law to assert and to protect the privacy rights of Settlement

23  Class Members, including by maintaining the confidentiality and security of and

24  preventing the unauthorized access or acquisition of any financial or personal

25  information submitted in connection with any claim for benefits pursuant to this

26  Settlement Agreement.  In the event of any unauthorized access to or acquisition of

27  personal information concerning any Settlement Class Member as a direct result of

28  the intentional or negligent acts or omissions of Claims Administrator, the Claims

1  Administrator shall be responsible for complying with any privacy, data security, or

2  breach notification obligations under state or federal law, and will be solely

3  responsible for directly providing notice to state agencies, affected Settlement Class

4  Members, and/or other persons or entities.

5         4.10  <u>Taxes on Escrow Account</u>. The Settlement Fund and Product Return

6  Fund shall constitute a qualified settlement fund within the meaning of Treasury

7  Regulations Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through

8  1.468B-5 (1992).  The Settling Parties shall treat the Settlement Fund and Product

9  Return Fund as qualified settlement funds for all reporting purposes under the

10  federal tax laws. For the purpose of Section 468B of the Internal Revenue Code of

11  1986, as amended, and the regulations promulgated thereunder, the "administrator"

12  shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all

13  informational and other tax returns necessary or advisable with respect to the

14  Settlement Fund and Product Return Fund (including, without limitation, the returns

15  described in Treas. Reg.  Section 1.468B-2(k)).  Such returns shall be consistent

16  with this Subsection and in all events shall reflect that all taxes (including any

17  interest or penalties) on the income earned by the Settlement Fund and Product

18  Return Fund shall be paid out of the income earned by the Settlement Fund and the

19  Product Return Fund. Taxes and tax expenses shall be treated as, and considered to

20  be, a cost of administration of the Settlement Fund and paid without prior order

21  from the Court.  The Escrow Agent shall be obligated (notwithstanding anything

22  herein to the contrary) to withhold from the income earned by the Settlement Fund

23  and the Product Return Fund any funds necessary to pay such taxes, including the

24  establishment of adequate reserves for any taxes and tax expenses (as well as any

25  amounts that may be required to be withheld under Treas. Reg.

26  Section 1.468B-2(1)(2)).  The Escrow Agent shall maintain accurate records of all

27  expenditures made pursuant to this Subsection, and shall provide the records upon

28  request to Plaintiffs' Counsel and Herbalife's counsel.  None of the Settling Parties,

1   or any of their counsel, shall have any responsibility for the payment of taxes

2   described in this Subsection.  The parties hereto agree to cooperate with the Escrow

3   Agent, each other, and their tax attorneys and accountants to the extent reasonably

4   necessary to carry out the provisions of this Subsection.

5       4.11   <u>Discretion of Claims Administrator</u>. The Claims Administrator, who

6   shall be jointly proposed by Herbalife and Plaintiffs' Counsel and approved by the

7   Court, shall have discretion to make equitable decisions to carry out the intent of the

8   Settlement Agreement.

9       4.12   <u>Continuing Jurisdiction Over Direct Relief</u>. The Settlement Fund and

10   Product Return Fund shall be within the control and jurisdiction of the Court,

11   *custodia legis*, until such time as they are distributed pursuant to this Settlement

12   Agreement.

13   **5.**        **CORPORATE POLICIES**

14       5.1.1   All corporate policies set forth in this Section 6 shall be

15   continued for no less than three years from the date the Court issues final approval

16   of the Settlement Agreement.

17       5.1.2   At least in part as a result of the filing of the lawsuit,

18   Herbalife implemented, instituted, or continued to maintain, as the case may be, the

19   following corporate policies identified in Subsections 5.1.3-5.1.15.

20       5.1.3   Herbalife shall not simultaneously and separately charge its

21   members a "Packaging & Handling" fee (or similar fee) and an "Order Shipping

22   Charge" (or similar fee) as was done during the Class Period up until Herbalife

23   adopted its Simplified Pricing Structure, when the two charges were combined into

24   a single "Shipping & Handling" charge.

25       5.1.4   Herbalife shall not define "Distributor" in its Glossary of

26   Terms as "Everyone who purchases an Official Herbalife Member Pack (HMP) and

27   submits to Herbalife a valid and complete Membership Application and whose

28   Application has been accepted by Herbalife."

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 6 of 194   Page ID
#:2923
Case 2:13-cv-02488-BRO-SH   Document 95   Filed 11/03/14   Page 16 of 32   Page ID #:2887

1          5.1.5      Herbalife shall continue to discourage members from

2 incurring debt to pursue the Herbalife business opportunity, consistent with Rule

3 1.1.2 of Herbalife's Member Rules of Conduct.

4          5.1.6      Herbalife shall continue to pay shipping charges for the

5 return of products to Herbalife in connection with inventory repurchases, consistent

6 with Rule 2.5.3 of Herbalife's Member Rules of Conduct.

7          5.1.7      Herbalife shall continue to maintain procedures for the

8 enforcement of its rules, including but not limited to continuing to maintain a

9 member compliance department to enforce its policies, procedures and member

10 rules.  Herbalife shall continue to revise and supplement such policies, procedures

11 and member rules as deemed necessary by Herbalife in the exercise of reasonable

12 business judgment.

13          5.1.8      Herbalife shall maintain its rule prohibiting members from

14 selling leads to other members or purchasing leads from any source, consistent with

15 Rule 3.3.2 of Herbalife's Member Rules of Conduct.

16          5.1.9      Herbalife shall continue to prohibit members from requiring

17 a person to buy product (other than a Mini or Full Member Pack) as a condition to

18 becoming an Herbalife member or distributor.

19          5.1.10     Herbalife shall maintain its rule that before signing a lease or

20 opening a Nutrition Club in a non-residential location, the member must have been

21 an Herbalife member for at least 90 days and receive mandatory Nutrition Club

22 operator training, consistent with Rule 8.4.1 of Herbalife's Member Rules of

23 Conduct.

24          5.1.11     Herbalife shall include its Statement of Average Gross

25 Compensation ("SAGC") as part of its member application either incorporated as

26 part of that application, attached thereto, or otherwise prominently located and

27 accessible.

28          5.1.12     Herbalife shall require that new members acknowledge

1  reviewing the SAGC when signing a new Herbalife Membership Application and

2  Agreement (the "Membership Agreement").  Herbalife shall continue to include

3  and/or link to the SAGC with the Membership Agreement.

4         5.1.13   Herbalife shall continue disclosing in its SAGC the total

5  number and percentage of all members who do not receive any compensation

6  payment directly from Herbalife.

7         5.1.14   Herbalife shall clarify in its Sales & Marketing Plan that

8  upon qualifying as a Supervisor, a member shall have at least twelve (12) months

9  during which to requalify as a Supervisor.

10         5.1.15   Herbalife shall amend the hardcopy Membership Agreement

11  as follows: (a) the term "Compensation Statement" shall be expressly defined as

12  "Statement of Average Gross Compensation Paid by Herbalife;" and (b) the second

13  sentence of paragraph 2 of box B in version 42 of the Membership Agreement shall

14  read:  "I hereby represent, warrant and agree that I am not relying upon and that I

15  will not rely upon any other written or oral information or representations about the

16  financial results I might achieve."  Herbalife reserves the right to modify its

17  Membership Agreement and other documents provided that such modifications are

18  not materially inconsistent with the amendments provided in this Subsection.

19  **6.  ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE**

20  **SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT**

21      6.1   <u>Motion for Preliminary Approval</u>. Promptly upon execution of this

22  Settlement, the Settling Parties shall submit this Settlement Agreement together with

23  its exhibits and shall jointly apply to the Court (in a joint filing if the parties agree

24  or, if they do not, in separate filings) for entry of the Preliminary Approval Order,

25  which includes provisions that, among other things, will:

26         6.1.1   Preliminarily approve the Settlement Agreement as being

27  reasonable and the product of good faith negotiations;

28         6.1.2   Certify for settlement purposes only the Settlement Class

1   under Rule 23 of the Federal Rules of Civil Procedure;

2         6.1.3    Approve the Claim Form substantially in the form attached

3   as Exhibit 4, and approve KCC LLC as the Claims Administrator, or as otherwise

4   proposed by the parties or selected by the Court;

5         6.1.4    Approve the Opt-Out Form substantially in the form attached

6   as Exhibit 5;

7         6.1.5    Approve the Notice substantially in the form attached as

8   Exhibit 1 and the Summary Notice substantially in the form attached as Exhibit 2;

9         6.1.6    Order that the Summary Notice be disseminated in the

10   manner set forth in the Notice Program attached as Exhibit 6 and in accordance with

11   the Preliminary Approval Order;

12         6.1.7    Provide that any person falling within the definition of the

13   Settlement Class who desires to be excluded from the Settlement Class must request

14   exclusion by submitting a timely and valid exclusion request, in compliance with the

15   instructions in the Notice of Proposed Settlement, to the Claims Administrator not

16   later than thirty (30) days before the Settlement Hearing;

17         6.1.8    Provide that persons falling within the definition of the

18   Settlement Class who do not file valid and timely requests for exclusion will be: (i)

19   bound by the Final Judgment dismissing the Action on the merits and with

20   prejudice; and (ii) permanently barred and enjoined from commencing, prosecuting

21   or participating in the recovery in any direct or representative action, or any action

22   in any other capacity, asserting or relating to any of the Released Claims, in the

23   manner described in Section 8;

24         6.1.9    Find that the notice to be given in accordance with the

25   Preliminary Approval Order (including the contents of the Notice and Summary

26   Notice and the proposed means for effecting notice to persons falling within the

27   definition of the Settlement Class) constitutes the best notice practicable under the

28   circumstances and constitutes valid, due, and sufficient notice to all members of the

1    Settlement Class, complying fully with the requirements of Rule 23 of the Federal

2    Rules of Civil Procedure, the Constitution of the United States, and any other

3    applicable law;

4              6.1.10    Order that notice to persons falling within the definition of

5    the Settlement Class shall be structured to be as efficient as possible and to make

6    maximum use of notice by e-mail and other electronic means and that such notice

7    shall be undertaken by the Claims Administrator;

8              6.1.11    Schedule a Settlement Hearing to consider and determine

9    whether the Settlement proposed under the terms of this Settlement Agreement

10   should be finally approved as fair, reasonable, and adequate, and whether the Final

11   Judgment approving the Settlement Agreement and resolving the Action should be

12   entered, and to consider the request for an award of attorney's fees and

13   reimbursement of expenses;

14             6.1.12    Provide that the hearing on this Settlement Agreement and

15   any request for an award of attorneys' fees and reimbursement of expenses may,

16   from time-to time and without further notice to the Settlement Class, be continued or

17   adjourned by order of the Court;

18             6.1.13    Provide that objections by any Settlement Class Member to

19   (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order

20   approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees

21   and reimbursement of expenses to Plaintiffs' Counsel shall be heard and any papers

22   submitted in support of said objections shall be considered by the Court at the

23   Settlement Hearing only if, no later than thirty (30) days before the Settlement

24   Hearing, such objector files with the Claims Administrator a written notice of his,

25   her, or its intention to appear and states the basis for the objections;

26             6.1.14    Provide that, on the Effective Date, all Settlement Class

27   Members, whether or not they file a Claim Form or sign a release, shall be barred

28   from asserting any Released Claims against any of the Released Parties, and each

1  and all Settlement Class Members shall conclusively be deemed to have released

2  and forever discharged any and all such Released Claims as against all of the

3  Released Parties, in the manner described in Section 8.

4      6.2    <u>Cooperation</u>. Herbalife shall cooperate in providing to the Claims

5  Administrator information such as names, addresses, and e-mail addresses for the

6  notice and settlement administration process, which shall be provided to the Claims

7  Administrator pursuant to a confidentiality agreement.

8      6.3    <u>Motion for Final Judgment</u>. If, after the Settlement Hearing scheduled

9  by the Court in the Preliminary Approval Order, the Court approves the Settlement

10  Agreement, then counsel for the Settling Parties shall request that the Court enter

11  Final Judgment.

12  **7.    NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING**

13      7.1    <u>The Settlement is Not an Acknowledgement of Liability or</u>

14  <u>Wrongdoing</u>. Herbalife enters into this Settlement Agreement without in any way

15  acknowledging any fault, liability, or wrongdoing of any kind.  Herbalife continues

16  to deny all of the material allegations in the First Amended Complaint and to assert

17  that Plaintiffs' claims are without merit.

18      7.2    <u>The Settlement Raises No Inference of Liability or Wrongdoing</u>.

19  Neither this Settlement Agreement, nor any of the negotiations or proceedings

20  connected with them, nor any other action taken to carry out this Settlement

21  Agreement by any of the Settling Parties shall be construed as, or shall be used as,

22  or shall raise any presumption or inference of, an admission or concession by or

23  against or respecting Herbalife of the truth of any of the allegations in the Complaint

24  or First Amended Complaint, or of any liability, fault or wrongdoing.

25      7.3    <u>The Settlement is Not Evidence of Liability or Wrongdoing</u>. Neither

26  this Settlement Agreement, nor any of its terms or provisions, nor any of the

27  negotiations or proceedings connected with them shall be offered as evidence or

28  received in evidence in any pending or future civil, criminal, or administrative

1 action or be used to create any inference or presumption of liability or an admission

2 of any kind by Herbalife, except as may be necessary to enforce the terms of this

3 Settlement Agreement.

**8.    RELEASE**

5       8.1     As of the Effective Date and in consideration of this Settlement

6 Agreement and the benefits extended to the Class, Herbalife International of

7 America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively,

8 "Herbalife") and each of their present and former, direct and indirect, subsidiaries,

9 parents, affiliates, unincorporated entities, divisions, groups, officers, directors,

10 shareholders, partners, partnerships, joint ventures, employees, agents, servants,

11 assignees, successors, insurers, indemnitees, attorneys, transferees, and/or

12 representatives (collectively, the "Released Parties") shall be released and forever

13 discharged by the Class Representatives, for themselves and as the representatives

14 of each Settlement Class Member; each Settlement Class Member on behalf of

15 himself or herself; and their respective present and former, direct and indirect,

16 subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers,

17 directors, shareholders, partners, partnerships, joint ventures, employees, agents,

18 servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or

19 representatives (collectively, the "Releasing Parties") from all claims, demands,

20 rights, liabilities, suits, or causes of action, known or unknown, as of the Effective

21 Date that (1) were or could have been asserted in the complaints filed in this Action

22 against Herbalife, or (2) are based upon, arise out of, or reasonably relate to: (i) the

23 purchase or sale or offer of sale of any Herbalife product, including the IBP and

24 Mini-IBP, during the Class Period; (ii) any packaging and handling or shipping

25 charges paid in connection with purchase or sale or offer of sale of any Herbalife

26 product during the Class Period; (iii) the Herbalife Membership Application and

27 Agreement, including any materials attached thereto and/or referenced therein,

28 including the Statement of Average Gross Compensation; (iv) any actual, potential,

1   or attempted recruitment of any Herbalife member or distributor during the Class

2   Period; (v) any allegation that, during the Class Period, Herbalife engaged in any

3   acts of unfair competition; false and/or misleading advertising; or operated any type

4   of illegal, pyramid, endless chain, or fraudulent scheme; and (vi) any of the facts,

5   schemes, transactions, events, matters, occurrences, acts, disclosures, statements,

6   misrepresentations, omissions, or failures to act that have been or could have been

7   alleged or asserted in the Action (collectively, the "Released Claims"); provided,

8   however, that the Released Claims do not include claims arising out of (1) the

9   purchase or sale of Herbalife's common stock, publicly traded on the New York

10  Stock Exchange under the ticker symbol, "HLF;" (2) federal, state, or local

11  government statues, rules, regulations or ordinances over which a federal, state, or

12  local government agency or similar authority retains sole jurisdiction and for which

13  there is no private right of action accruing to the Settlement Class Members, either

14  collectively or individually; (3) the calculation of bonuses or payments for the sale

15  of Herbalife products owed by Herbalife to any Settlement Class Member, to the

16  extent such bonuses or payments are not related to any Qualified Products; or (4)

17  any allegation that an Herbalife product was defective.

18      8.2     The Released Claims include any unknown claims that reasonably

19  could have arisen out of the same facts alleged in the Action that the Settlement

20  Class Members do not know or suspect to exist in their favor at the time of the

21  release, which, if known by them, might have affected their settlement with, and

22  release of, the Released Parties or might have affected their decision not to object to

23  this Settlement.  With respect to the Released Claims only, the Settlement Class

24  Members stipulate and agree that, upon the Effective Date, the Settlement Class

25  Members shall be deemed to have, and by operation of the Final Judgment shall

26  have, expressly waived and relinquished, to the fullest extent permitted by law, the

27  provisions, rights and benefits of Section 1542 of the California Civil Code, or any

28  other similar provision under federal or state law, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR.

8.3     The Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in this Action without regard to the subsequent discovery or existence of such different or additional facts.

8.4     Continuing Jurisdiction.  Except for the enforcement of the Final Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall be barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim. The Court shall retain jurisdiction to enforce the Final Judgment, releases, and bars to suits contemplated by this Settlement Agreement. It is further agreed that the Settlement Agreement and the Final Judgment may be pleaded as a complete defense to any proceeding subject to this Section.

**9.     EXCLUSION (OPTING-OUT) FROM THE SETTLEMENT CLASS**

1        9.1     Any Person falling within the definition of the Settlement Class who

2 does not wish to participate in the Net Settlement Fund or Net Product Return Fund

3 described in Section 5 and be bound by the dismissals and releases provided for in

4 this Settlement Agreement, must request exclusion from the Settlement Class. A

5 request for exclusion must state: (1) the name, address, and telephone number of the

6 Person requesting exclusion and (2) that the person wishes to be excluded from the

7 Settlement Class.  The exclusion request must be sent by mail or e-mail to the

8 Claims Administrator and postmarked or e-mailed on or before the date specified in

9 the Preliminary Order.  The Claims Administrator shall deliver copies of any and all

10 requests for exclusion to Plaintiffs' Counsel and Herbalife's counsel. The Claims

11 Administrator shall make such deliveries on a weekly basis and shall ensure that the

12 final such delivery is received by Plaintiffs' Counsel and Herbalife's counsel at least

13 thirty (30) days before the Settlement Hearing. Plaintiffs' Counsel shall file any and

14 all such requests for exclusion with the Court at or before the Settlement Hearing.

15 All Persons who submit valid and timely requests for exclusion in the manner set

16 forth in this Section shall have no rights under this Settlement Agreement, and shall

17 not share in the distribution of the Net Settlement Fund or Net Product Return Fund.

18 All Persons falling within the definition of the Settlement Class who do not request

19 exclusion in the manner set forth in this Section shall be Settlement Class Members

20 and shall be bound by this Settlement Agreement and the Final Judgment.  Any

21 Person falling within the definition of the Settlement Class who timely requests

22 exclusion shall, upon approval of the Court, be excluded from the class certified

23 pursuant to Fed. R. Civ. Proc. 23(b)(3); each such Person shall remain in the class

24 for purposes of injunctive relief claims, certified pursuant to Fed. R. Civ. Proc.

25 23(b)(2).

26 **10.    ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES**

27        10.1    Application for Attorneys' Fees and Expenses.  Plaintiffs' Counsel

28 may apply to the Court at the Settlement Hearing for an award of attorneys' fees and

1 reimbursement of their expenses and costs from the Settlement Fund in an amount

2 to be determined by the Court as a percentage of the entire value of settlement,

3 including monetary and other relief (such as corporate reforms), as a common fund,

4 in accordance with Ninth Circuit Court of Appeals precedent and the pertinent law.

5 Herbalife agrees not to oppose an application by Plaintiff's Counsel for attorneys'

6 fees consistent with fee awards previously approved by the Ninth Circuit Court of

7 Appeals. Plaintiffs' Counsel anticipates requesting an award of attorneys' fees

8 Plaintiffs' Counsel will file a separate motion with the Court requesting an award of

9 attorney fees, costs to be reimbursed, and any enhancements from the Settlement

10 Fund in an amount consistent with Ninth Circuit precedent. Plaintiffs and Plaintiffs'

11 Counsel agree that they will not seek to collect any attorneys' fees, expenses, or

12 costs from any source other than the Settlement Fund. To the extent the Court may

13 award fees to counsel for any class member appearing before the Court in

14 connection with the approval or implementation of this Settlement Agreement, such

15 fees shall be payable solely from the Settlement Fund.

16       10.2 <u>Payment of Attorneys' Fees and Expenses Award</u>. The attorneys'

17 fees, expenses, and costs approved by the Court to be distributed to Plaintiffs'

18 Counsel shall be paid by the Escrow Agent to Plaintiffs' Counsel from the

19 Settlement Fund, within five (5) business days after the Effective Date.

20       10.3 <u>Named Plaintiffs' Compensation</u>. The Court may award reasonable

21 incentive compensation to the named Plaintiffs for their service in the case, which

22 shall come from the Settlement Fund. Any such Court-ordered compensation shall

23 be paid within (5) five business days after the Effective Date. The Released Parties

24 shall have no responsibility for, and no liability whatsoever with respect to, any

25 incentive compensation to any of the named Plaintiffs, except as expressly provided

26 in Subsection 5.1.

27       10.4 <u>No Effect On Settlement</u>. Any orders or proceedings relating to the

28 application of Plaintiffs' Counsel for an award of attorneys' fees, costs, and

expenses shall not operate to terminate or cancel this Settlement Agreement, and shall have no effect on the finality of the Final Judgment to be entered pursuant to this Settlement Agreement.

10.5     Released Parties Not Responsible for Payment of Award.  The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel from the Settlement Fund that may occur, except as expressly provided in Subsection 5.1.

10.6     Released Parties Not Responsible for Allocation of Award.  The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' counsel, and any other Person who may assert some claim thereto, of any award of attorneys' fees, costs, or expenses that the Court may make.

**11.     TERMINATION OF SETTLEMENT AGREEMENT**

11.1     Conditions Permitting Termination. Herbalife or Plaintiffs may elect to terminate the Settlement Agreement, at their option, in the event that more than five percent (5%) of members of the Settlement Class exclude themselves from the Settlement pursuant to the provisions of Section 10.

11.2     Procedure for Termination. In order to terminate this Settlement Agreement pursuant to Subsection 11.1, a party must serve a written notice of termination on the Court and on opposing counsel, by hand delivery or by first class mail. Such written notice must be delivered or postmarked within ten (10) business days after counsel for the party seeking termination of the Settlement Agreement receives from the Claims Administrator the last weekly delivery of copies of requests for exclusion as provided for in Section 10 or within ten (10) business days after the Court grants any additional request for exclusion from the Settlement Class for any reason.

11.3     Consequences of Termination. If the Effective Date does not occur or if a party terminates this Settlement Agreement as provided in this Section 11, then

1  this Settlement Agreement shall have no further force or effect and the Settling

2  Parties shall revert to their respective positions as of the date that the Settlement

3  Agreement was executed by Plaintiffs and Herbalife, as though this Settlement

4  Agreement had never been executed.  In that event, within five (5) business days

5  after written notification of such event is sent by Herbalife's counsel or Plaintiffs'

6  Counsel to the Escrow Agent, the Settlement Fund and Product Return Fund, less

7  expenses and any costs which have been disbursed pursuant to Subsections 5.1

8  and/or 5.2, shall be refunded by the Escrow Agent to Herbalife's counsel. In such

9  event, Herbalife shall be entitled to any tax refund owing to the Settlement Fund

10  and/or Product Return Fund.  At the request of Herbalife, the Escrow Agent or its

11  designee shall apply for any such refund and pay the proceeds, after deduction of

12  any fees or expenses incurred in connection with such application(s) for a refund, to

13  Herbalife.

14        11.4    <u>Inadmissible for Purposes of Certifying a Litigation Class</u>. If the

15  Settlement Agreement is terminated pursuant to the provisions set forth in this

16  Section 11 or the Effective Date does not occur for any reason, the parties will not

17  offer this Settlement Agreement, any agreement negotiated between the parties in

18  connection with or regarding the Settlement or the Settlement Agreement, or any

19  motion seeking approval of the Settlement or Settlement Agreement in connection

20  with a motion to certify a litigation class or in any other proceeding in this Action.

21  **12.    OTHER PROVISIONS OF THE SETTLEMENT**

22        12.1    <u>Public Communications</u>. The Settling Parties shall consult concerning

23  separate communications with respect to the Settlement, and shall agree that any

24  other communications regarding the settlement will be consistent with those

25  communications. The Settling Parties and their counsel agree not to disparage each

26  other.

27        12.2    <u>Stay of Proceedings</u>. Upon the execution of this Settlement

28  Agreement, all discovery and other proceedings in the Action shall be stayed until

1  further order of the Court, except for proceedings that may be necessary to

2  implement the Settlement or comply with or effectuate the terms of this Settlement

3  Agreement.

4      12.3   <u>Restoration to Status Quo Upon Termination</u>. In the event this

5  Settlement Agreement is not approved by the Court in its present form, or the

6  conditions required for the Settlement Agreement to be consummated do not occur,

7  then the Settling Parties hereto shall be restored to their respective positions as of

8  the date that the Settlement Agreement was executed by Plaintiffs and Herbalife,

9  the terms and provisions of the Settlement Agreement shall have no further force and

10  effect with respect to the Settling Parties, and to the extent permitted by law, the

11  Settlement Agreement and associated exhibits shall not be used in any action or

12  proceeding for any purpose and any orders entered by the Court in accordance with

13  the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*.

14      12.4   <u>Best Efforts and Cooperation</u>. The Settling Parties acknowledge that it

15  is their intent to consummate this Settlement Agreement. Accordingly, the Settling

16  Parties agree to cooperate to the extent necessary to effectuate and implement all

17  terms and conditions of the Settlement Agreement and exercise their best efforts to

18  establish the foregoing terms and conditions of the Settlement Agreement. The

19  Settling Parties further agree to cooperate in effecting notice to members of the

20  Settlement Class and in securing the Court's approval of the Settlement.

21      12.5   <u>Authorization of Counsel</u>. The undersigned counsel represent that

22  they are fully authorized to execute and enter into the terms and conditions of the

23  Settlement Agreement on behalf of their respective clients.

24      12.6   <u>Entire Agreement</u>. This Settlement Agreement (along with the

25  exhibits thereto) constitutes the entire agreement among the Settling Parties and

26  supersedes any prior agreements or understandings between them. All terms of this

27  Settlement Agreement are contractual and not mere recitals and shall be construed

28  as if drafted by all Settling Parties. The terms of this Settlement Agreement are and

1  shall be binding upon and inure to the benefit of each of the Settling Parties and

2  Settlement Class Members, their agents, attorneys, employees, heirs, successors, and

3  assigns, and upon all other persons claiming any interest in the subject matter hereto

4  through any of the parties hereto, including any Plaintiff or Settlement Class

5  Member.

6       12.7   <u>Amendment</u>. This Settlement Agreement may be amended or

7  modified only by a written instrument signed by or on behalf of all parties hereto or

8  their successors in interest. Amendments and modifications may be made without

9  notice to the Settlement Class, unless notice is required by the Court.

10       12.8   <u>Execution in Counterparts</u>. This Settlement Agreement may be

11  executed in counterparts or by facsimile, with each counterpart or facsimile

12  signature having the same force and effect as an original. All executed counterparts

13  and each of them shall be deemed to be the one and the same instrument.  Counsel

14  for the parties to this Settlement Agreement shall exchange among themselves

15  original signed counterparts and a complete set of original executed counterparts

16  shall be filed with the Court.

17       12.9   <u>Jurisdiction</u>. The Court shall have exclusive and continuing

18  jurisdiction over the implementation, interpretation, and execution of the Final

19  Judgment and this Settlement Agreement and all exhibits thereto, with respect to all

20  parties hereto, including all Settlement Class Members.

21       12.10   <u>Governing Law</u>. The rights and obligations of the parties to the

22  Settlement Agreement shall be construed and enforced in accordance with, and

23  governed by, the laws of the State of California.

24       12.11   <u>Headings</u>. The headings and subheadings to this Settlement

25  Agreement have been inserted for convenience only and are not to be considered

26  when construing the provisions of this Settlement Agreement.

27

28

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 20 of 194   Page ID
#:2937
Case 2:13-cv-02488-BRO-SH   Document 95   Filed 11/03/14   Page 30 of 32   Page ID #:2901

1    12.12   <u>Severability</u>. In the event any one or more of the provisions contained

2  in this Settlement Agreement shall for any reason be held to be invalid, illegal, or

3  unenforceable in any respect, such invalidity, illegality, or unenforceability shall not

4  affect any other provision if the Settling Parties all elect to proceed as if such

5  invalid, illegal, or unenforceable provision had never been included in the

6  Agreement.

7        IN WITNESS WHEREOF, each of the Parties hereto has caused the

8  Agreement to be executed on its behalf by its duly authorized counsel of record, all

9  as of the day set forth below.

10

11

12

Dated: October 31, 2014    BOIES, SCHILLER & FLEXNER LLP

13

14

15    By: _____
       Jonathan D. Schiller (admitted *pro hac vice*)
16       jschiller@bsfllp.com
       Joseph F. Kroetsch (admitted *pro hac vice*)
17       jkroetsch@bsfllp.com
       575 Lexington Avenue
18       New York, NY 10022
       Telephone: 212-446-2300
19       Facsimile: 212-446-2350

20

21       David L. Zifkin (SBN 232845)
       dzifkin@bsfllp.com
22       401 Wilshire Boulevard, Suite 850
       Santa Monica, CA 90401
23       Telephone: 310-752-2400
       Facsimile: 310-752-2490

24

25       *Attorneys for Defendants Herbalife International of*
       *America, Inc., Herbalife*
26       *International, Inc., and Herbalife Ltd.*

27

28

28

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 21 of 194   Page ID
#:2938
Case 2:13-cv-02488-BRO-SH   Document 95   Filed 11/03/14   Page 31 of 32   Page ID #:2902

1    Dated: October 31, 2014     BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
2                                DROOKS, LINCENBERG & RHOW, P.C.

3
                                 By: /s/ Mark T. Drooks[1]
4                                    A. Howard Matz (SBN 55892)
                                     ahm@birdmarella.com
5                                    Mitchell A. Kamin (SBN 202788)
                                     mak@birdmarella.com
6                                    Mark T. Drooks (SBN 123561)
                                     mtd@birdmarella.com
7                                    Gopi K. Panchapakesan (SBN 279586)
                                     gkp@birdmarella.com
8                                    1875 Century Park East, 23rd Floor
                                     Los Angeles, California  90067-2561
9                                    Telephone:  (310) 201-2100
                                     Facsimile:  (310) 201-2110
10
11                               *Attorneys for Defendants Herbalife International
12                               of America, Inc.; Herbalife International, Inc.;
                                 and Herbalife Ltd.*
13

14   Dated: October 31, 2014     FOLEY BEZEK BEHLE & CURTIS, LLP
15

16                               By: /s/ Thomas G. Foley, Jr.
                                     Thomas G. Foley, Jr., SBN 65812
17                                   tfoley@foleybezek.com
                                     Robert A. Curtis, SBN 203870
18                                   rcurtis@foleybezek.com
                                     Justin P. Karczag, Esq., SBN 223764
19                                   jkarczag@foleybezek.com.
                                     15 West Carrillo Street
20                                   Santa Barbara, CA  93101
                                     Telephone: (805) 962-9495
21
22                               *Attorneys for Plaintiffs Dana Bostick, Anita
23                               Vasko, Judi Trotter, Beverly Molnar, and Chester
                                 Cote*
24
25
26   _____
27   [1] I hereby attest that all other signatories listed, and on whose behalf the filing is
28   submitted, concur in the filing's content and have authorized the filing.

                                          29

1

2    Dated: October 31, 2014        FABIAN & CLENDENIN

3

4                                   By: /s/ Scott M. Petersen[2]
                                        Scott M. Petersen (admitted *pro hac vice*)
5                                       spetersen@fabianlaw.com
                                        Jason W. Hardin (admitted *pro hac vice*)
6                                       jhardin@fabianlaw.com
                                        Philip D. Dracht (SBN 219044)
7                                       pdracht@fabianlaw.com

8                                       215 South State Street, Suite 1200
                                        Salt Lake City, UT 84151-0210
9                                       Telephone: (801) 531-8900
                                        Facsimile: (801) 596-2814

10                                      *Attorneys for Plaintiffs Dana Bostick, Anita Vasko,*
11                                      *Judi Trotter, Beverly Molnar, and Chester Cote*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [2] I hereby attest that all other signatories listed, and on whose behalf the filing is
28   submitted, concur in the filing's content and have authorized the filing.

30

# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# If you were an Herbalife Distributor or Member at Any Time Between April 1, 2009, and [Month 00], 2014,

## You Could Get Benefits from a Class Action Settlement.

Para una notificatión en Español, llamar 1-800-000-0000 o visitar [website].

*A federal court authorized this notice. This is **not** a solicitation from a lawyer.*

- A Settlement has been reached with Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife") regarding its business practices.

- Those included in the Settlement may be eligible to receive a payment. Herbalife has also agreed to change or preserve recent changes to its business practices.

  **Your legal rights are affected even if you do nothing.  Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM AND/OR REFUND CLAIM FORM** | This is the only way to get a payment.  This option will result in you giving up your rights to sue Herbalife about the legal claims in this lawsuit. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against Herbalife about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up your rights to sue Herbalife about the claims in this lawsuit. |

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

## WHAT THIS NOTICE CONTAINS

**Page**

BASIC INFORMATION ........................................................................................... 1
   1. Why did I get this notice package? ................................................................. 1
   2. What is this lawsuit about? ............................................................................ 1
   3. Why is this a class action? ............................................................................ 1
   4. Why is there a settlement? ............................................................................ 1
WHO IS IN THE SETTLEMENT? ............................................................................... 2
   5. How do I know if I am part of the settlement? ............................................. 2
   6. Are there exceptions to being included? ....................................................... 2
   7. I'm still not sure if I am included. ................................................................. 2
THE SETTLEMENT BENEFITS—WHAT YOU GET ..................................................... 2
   8. What does the settlement provide? ............................................................... 2
   9. How much will my payment be? ................................................................... 4
HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM ................................... 6
  10. How can I get a payment? ............................................................................. 6
  11. When would I get my payment? ................................................................... 7
  12. What am I giving up to get a payment and stay in the
      Settlement Class? ......................................................................................... 7
EXCLUDING YOURSELF FROM THE SETTLEMENT ................................................... 8
  13. How do I get out of the settlement? ............................................................. 8
  14. If I do not exclude myself, can I sue Herbalife for the same thing later? ..... 8
  15. If I exclude myself, can I get money from this settlement? .......................... 8
THE LAWYERS REPRESENTING YOU ...................................................................... 8
  16. Do I have a lawyer in this case? ................................................................... 8
  17. How will the lawyers be paid? ..................................................................... 9
OBJECTING TO THE SETTLEMENT ......................................................................... 9
  18. How do I tell the Court that I don't like the settlement? .............................. 9
  19. What is the difference between objecting and excluding? ........................... 10
THE COURT'S FAIRNESS HEARING ...................................................................... 10
  20. When and where will the Court decide whether to approve the settlement? ........ 10
  21. Do I have to come to the hearing? ............................................................... 10
  22. May I speak at the hearing? ........................................................................ 10
IF YOU DO NOTHING ......................................................................................... 11
  23. What happens if I do nothing at all? ............................................................ 11
GETTING MORE INFORMATION ........................................................................... 11
  24. Are there more details about the settlement? ............................................... 11
  25. How do I get more information? .................................................................. 11

# BASIC INFORMATION

### 1. Why did I get this notice package?

This notice is being sent to those individuals who may have had a valid agreement of distributorship or membership with Herbalife between April 1, 2009 and _____.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it, and after objections and appeals are resolved, an administrator appointed by the Court (the "Claims Administrator") will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Central District of California, and the case is known as *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ. Judge Beverly Reid O'Connell is overseeing this class action. The people who sued are called "Plaintiffs." The people who were sued, Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife"), are the "Defendants."

### 2. What is this lawsuit about?

The lawsuit claimed that Herbalife operated a pyramid scheme contrary to California state law. The lawsuit also claims that Herbalife's promotional materials made misleading claims regarding certain business opportunities. Herbalife denies that it did anything wrong and vigorously defended the litigation.

### 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Dana Bostick, Anita Vasko, Judi Trotter, Beverly Molnar, and Chester Cote), sue on behalf of people who have similar claims. All these people are a "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Herbalife. Instead, both sides agreed to a settlement. That way, both sides avoid the cost of a trial, and the people affected will get compensation. Herbalife denies all legal claims in this case. The Class

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

1

Representatives and their attorneys think that the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT?

To see if you will get money from this settlement, you must first be a Class Member.

### 5. How do I know if I am part of the settlement?

The Class Members are described in the Stipulation of Settlement. In general, all persons who, during the period from April 1, 2009 through _____, had a valid agreement of distributorship or membership with Herbalife are included in the class.

### 6. Are there exceptions to being included?

You are not a Class Member if you were or are either an employee of Herbalife or a family member of an employee of Herbalife. You are not a Class Member if you were or are a member of the Herbalife President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or GET Team.

You are not a Class Member entitled to receive any payment if you agreed to be subject to the arbitration provisions found in the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement effective as of September 2013. You may still, however, be a Class Member affected by the non-monetary elements of the settlement even if you signed an Arbitration Agreement.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help by contacting Plaintiffs' Counsel at: _____. You can also call 1-800-XXX-XXXX or visit [website] for more information. Or you can fill out and return the claim form described on page 4, in question 10, to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 8. What does the settlement provide?

Herbalife has agreed to establish two Settlement Funds for current and former members and distributors:

- **Cash Settlement Fund**: $15 million in cash will be used to pay Herbalife members or distributors who file valid claims. The fund will also be used to pay attorneys' fees and costs (*See* Question 17) as well as the costs to administer the settlement.

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

- **Product Return Fund**: Up to $2.5 million will be available to pay members or distributors who file valid claims for the return of unused and unopened products (excluding International Business Packs and Mini-International Business Packs). An additional $2.5 million from the Cash Settlement Fund described above may be used to pay for additional product returns if valid claims exceed the amount of the Product Return Fund.

Herbalife has also agreed to make or continue several changes to its corporate policies and procedures for no less than three years from the date the Court gives final approval of this settlement. Those corporate policies are listed below:

1. Herbalife shall not simultaneously and separately charge its members a "Packaging & Handling" fee (or similar fee) and an "Order Shipping Charge" (or similar fee).

2. Herbalife shall not define "Distributor" in its Glossary of Terms as "Everyone who purchases an Official Herbalife Member Pack (HMP) and submits to Herbalife a valid and complete Membership Application and whose Application has been accepted by Herbalife."

3. Herbalife shall continue to discourage members from incurring debt to pursue the Herbalife business opportunity.

4. Herbalife shall continue to pay shipping charges for the return of products to Herbalife in connection with its inventory repurchase policies.

5. Herbalife shall continue enforcement of its rules and maintain a member compliance department. Herbalife shall also continue to revise and supplement its policies, procedures and member rules as deemed necessary by Herbalife in the exercise of reasonable business judgment.

6. Herbalife shall continue prohibiting members from selling leads to other members or purchasing leads from any source.

7. Herbalife shall continue to prohibit members from requiring a person to buy product (other than a Mini or Full Member Pack) as a condition to becoming an Herbalife member or distributor.

8. Herbalife shall continue to require that before opening a Nutrition Club in a non-residential location, the Herbalife member must have been a member for at least 90 days and receive mandatory Nutrition Club operator training.

3121619.1

3

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 29 of 194   Page ID
#:2946
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 7 of 30   Page ID #:2910

9.  Herbalife shall include its Statement of Average Gross Compensation
("SAGC") as part of its member application.

10. Herbalife shall require that new members acknowledge reviewing the
SAGC when signing a new Herbalife Membership Application and
Agreement and shall continue to include and/or link to the SAGC with that
Agreement.

11. Herbalife shall continue disclosing in its SAGC the total number and
percentage of all members who do not receive any compensation payment
directly from Herbalife.

12. Herbalife shall clarify in its Sales & Marketing Plan that upon qualifying
as a Supervisor, a member shall have at least 12 months during which to
requalify as a Supervisor.

13. Herbalife shall amend the hardcopy Membership Agreement to define
"Compensation Statement" as "Statement of Average Gross
Compensation Paid by Herbalife," and include the following statement:  "I
hereby represent, warrant and agree that I am not relying upon and that I
will not rely upon any other written or oral information or representations
about the financial results I might achieve."  Herbalife may modify the
Membership Agreement provided that such modifications are not
materially inconsistent with these amendments.

Notes:  The attorneys' fees and costs, settlement administration costs, and other relevant
costs will be paid from the Cash Settlement Fund.  The remainder of the Cash Settlement
Fund will be used to pay valid claims submitted by Class Members.

More details on the settlement are available in the Stipulation of Settlement, which is
available at:  [website]

## 9. How much will my payment be?

Your share of the settlement will depend on the number of valid claim forms that Class
Members send in, the nature of your claim, and the amount of attorneys' fees and costs
awarded by the Court.

Three types of monetary benefits will be available from the two settlement Funds.  Class
Members could receive benefits in the following ways:

### Type 1: Product Return Award (Product Return Fund)

Class Members may submit claims to return unused and unopened products (excluding
International Business Packs and Mini-International Business Packs) purchased more
than one year prior to _____, the deadline for submitting claims forms.  Following
this deadline, the Claims Administrator will post on the class action settlement website

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

4

[website name] a notice of the return payment and at that point, you will have the ability to return the products identified in your claim forms.

Notes:  If the total product return amount exceeds the amount in the Product Return Fund, payments to the Class Members will be reduced on a proportional basis so that all valid claims can be paid.  Any shipping costs will be paid out of the Product Return Fund.  If you purchased Herbalife products within one year prior to _____, you may be entitled to a refund under Herbalife's Gold Standard Guarantees, which are administered directly by Herbalife and not part of this Settlement.

### Type 2:  Business Opportunity Award (Cash Settlement Fund)

If you (a) joined Herbalife primarily to pursue a business opportunity and not primarily for personal and/or family consumption of Herbalife products; (b) in total, lost money on Herbalife products pursuing the Herbalife business opportunity; and (c) have never been a GET Team or higher-level member, then you may qualify for an award from the Cash Settlement Fund based on your purchases of "Qualified Products."

An Herbalife product is a "Qualified Product," if it was (i) purchased for resale purposes; (ii) purchased from within the U.S. and shipped to you at a location in the U.S.; (iii) not sold for at least the cost of purchase; (iv) not returned through Herbalife's buyback program or Herbalife's satisfaction guarantee; and (v) not the subject of a claim for recovery from the Product Fund that has been filed pursuant to this Settlement.

#### Pro Rata Award

If you paid Herbalife at least $750 to purchase Qualified Products during any Claims Year, you may qualify for a pro rata award from the Cash Settlement Fund equal to the lesser of 100% of the estimated total loss from your sales of "Qualified Products" or 50% of the price you paid for your aggregate "Qualified Product."  A Claims Year is a twelve month period beginning and ending on the first day of the month in which you became an Herbalife member.

Notes:  If claims exceed the amount available for Pro Rata Awards, payments to the Class Members will be reduced on a proportional basis so that all valid claims can be paid.

#### Flat Rate Award

If you did not pay Herbalife at least $750 to purchase Qualified Products during a Claims Year (as defined above), you may be entitled to a payment of $20 to be paid from the Cash Settlement Fund.

Notes:  If claims exceed the amount available for Flat Rate Awards, payments to the Class Members will be reduced on a proportional basis so that all valid claims can be paid.

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

5

Any amounts remaining in the Cash Settlement Fund after the payments specified in the Business Opportunity Award shall be paid pursuant to the *cy pres* doctrine to the following charity, or such charity as the parties may agree upon and the Court approves:

Consumer Federation of America

To the extent interest is earned on amounts held by the Claims Administrator prior to distribution as set forth in the Stipulation of Settlement, it shall accrue and be payable to Herbalife.

## HOW YOU GET A PAYMENT— SUBMITTING A CLAIM FORM

**10.  How can I get a payment?**

To qualify for payment from the either the Cash Settlement Fund or Product Return Fund, you must send in a claim form.  A claim form may be obtained from the Claims Administrator from its website at [_____] or by telephone request by calling [_____].  Read the instructions carefully, fill out the form(s) and sign and (if not filled out online) mail the form(s) postmarked no later than _____.

**Product Return Payments**

To receive a payment under the Product Return Fund, in your claim form, you must identify the following:

- Product Stock-Keeping Unit number ("SKU").

- Estimated purchase date of the products to be returned.

- The actual amount paid for each product you intend to return.

- If you are unable to provide the actual amount paid for the products you intend to return, you must certify under penalty of perjury that you are unable to provide that information and then provide an estimated purchase amount.  Assuming all other information you provide is proper, the Claims Administrator will then calculate the amount paid as the lesser of your estimated purchase amount or 50% of Herbalife's Suggested Retail Price for the product on the purchase date.

To qualify for a payment from the Product Return Fund, after the Claims Administrator posts a notice of the return payment on the Internet at [website], you must return the product identified in your claim form by following the directions on the website.

**Cash Settlement Payments**

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

6

To receive a payment under the Cash Settlement Fund, in your claim form, you must certify under penalty of perjury the following:

- You joined Herbalife primarily to pursue a business opportunity and not primarily to personally (or as a family) consume Herbalife's product.

- In total, you lost money on Herbalife products pursuing the Herbalife business opportunity.

- You have never been a GET Team or higher-level member.

- The amount of your best, good faith estimate of your total loss from product sales.

Payments under the Cash Settlement Fund will be made only for purchases of Qualified Products.  Qualified Products are products that were :

- Purchased for resale purposes.

- Purchased from within the U.S. and shipped to you at a location in the U.S.

- Not sold by you for at least the cost of purchase.

- Not returned through Herbalife's buyback program or Herbalife's satisfaction guarantee.

- Not the subject of a claim for recovery from the Product Fund that has been filed pursuant to this Settlement.

You must certify the aforementioned information under penalty of perjury.

## 11.  When would I get my payment?

The Court will hold a hearing on _____, to decide whether to approve the settlement.  If Judge O'Connell approves the settlement, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time.  Everyone who sends in a form will be informed of the progress of the settlement.  Please be patient.

## 12.  What am I giving up to get a payment and stay in the Class?

Unless you exclude yourself, you will remain in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against Herbalife about the legal issues in *this* case, except as permitted in the Stipulation of Settlement.  It also means that all of the Court's orders, including a release of claims alleged or that could have been alleged in the lawsuit, will apply to you and legally bind you.

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

7

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Herbalife on your own about the legal claims in this case for monetary relief, then you must take steps to get out of the Class. This is called excluding yourself, or "opting out" of the Class.

### 13. How do I get out of the settlement?

To exclude yourself from the monetary portion of the settlement), you must send an Opt-Out Form (available on the Claims Administrator's website) or letter by mail or by email saying that you want to be excluded from *Bostick v. Herbalife*. Be sure to include your name, address, telephone number, and your signature. You must mail or email your exclusion request postmarked no later than _____ to:

Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

Herbalifexclusions@XXXXX.com

You cannot exclude yourself on the phone, but you can request an Opt-Out Form by calling the Claims Administrator at the phone number listed in this Notice. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Herbalife in the future about the legal issues in this case.

### 14. If I do not exclude myself, can I sue Herbalife for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Herbalife for the claims that this settlement resolves. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is _____.

### 15. If I exclude myself, can I get money from this settlement?

No. If you take the steps to exclude yourself, do not send in a claim form. But, you may sue, continue to sue, or be part of a different lawsuit against Herbalife, subject to the law applicable to your case.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

8

The Court approved the law firms of Fabian & Clendenin, P.C. of Salt Lake City, Utah and Foley Bezek Behle & Curtis, LLP of Santa Barbara, CA to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees of 30% of the total settlement value in an amount not to exceed $5,250,000 and costs of approximately $200,000 for pursuing this case. The Court may award less than the amounts requested. These amounts and the costs to administer the settlement will come out of the Cash Settlement Fund, which will reduce the amount of money available to each member of the Class.

### OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

## 18. How do I tell the Court that I don't like the settlement?

If you are a Class Member and you have not excluded yourself, you can object to the settlement if you do not like some or all of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To do so, you must mail in a written objection in the case, *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ, to:

> United States District Court
> Central District of California
> 312 North Spring Street
> Los Angeles, California 90012
>
> Herbalife Objections
> Fabian & Clendenin, P.C.
> 215 South State Street, Suite 1200
> Salt Lake City, UT 84151-0210
>
> Herbalife Objections
> Foley Bezek Behle & Curtis, LLP
> 15 West Carrillo Street
> Santa Barbara, California 93101
>
> Herbalife Objections
> Boies, Schiller & Flexner LLP
> 333 Main Street
> Armonk, NY 10504
>
> Herbalife Objections
> Bird Marella P.C.

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL. LLAME O VISITE NUESTRO WEBSITE

9

1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561

Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Your objection must be postmarked no later than _____:

### 19. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

Judge O'Connell will hold a Fairness Hearing at _____. on _____ _____ at the United States District Court for the Central District of California, 312 North Spring Street, Los Angeles, California 90012, Department 14, Spring St. Floor. At this hearing Judge O'Connell will consider whether the settlement is fair, reasonable, and adequate. If there are objections, Judge O'Connell will consider them. Judge O'Connell will listen to people who have asked to speak at the hearing. Judge O'Connell may also decide how much to pay to Class Counsel. After the hearing, Judge O'Connell will decide whether to approve the settlement. We do not know how long these decisions will take.

### 21. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge O'Connell may have. However, you or your own lawyer are welcome to come at your own expense. If you send in a written objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time and in accordance with this Notice, the Court will consider it.

### 22. May I speak at the hearing?

You may ask Judge O'Connell for permission to speak at the Fairness Hearing. To do so, you must send a letter to the address listed in Question 18 saying that it is your "Notice of Intention to Appear in *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ." Be sure to include your name, address, telephone

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

10

number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than _____.  You cannot speak at the hearing if you excluded yourself.

## IF YOU DO NOTHING

### 23.  What happens if I do nothing at all?

If you do nothing, you will get no money from this settlement.  And unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Herbalife about the legal issues in this case, ever again, except as permitted in the Stipulation of Settlement.

## GETTING MORE INFORMATION

### 24.  Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in a Stipulation of Settlement.  You can get a copy of the Stipulation of Settlement at [website].

### 25.  How do I get more information?

You can visit the website at [website], where you will find answers to common questions about the settlement, a claim form, and other information to help you determine whether you are a Class Member and whether you are eligible for a payment or you can call 1-800-XXX-XXXX toll free; or write to Bostick v. Herbalife Settlement Administrator, P.O. Box xxxx, Providence, RI 02940.

3121619.1

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT [WEBSITE].COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

11

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO CENTRAL DE CALIFORNIA

# Si usted fue distribuidor o miembro de Herbalife en cualquier momento entre el 1 de abril de 2009, y el [00 de mes] de 2014,

## podría obtener beneficios de una Conciliación de demanda colectiva.

Para obtener una notificación en español, llame al 1-800-000-0000 o visite [sitio web].

*Un tribunal federal autorizó esta notificación. La presente **no** se trata de un ofrecimiento de servicios por parte de un abogado.*

- Se ha llegado a una Conciliación con Herbalife International of America, Inc.; Herbalife International, Inc.; y Herbalife Ltd. (en conjunto, "Herbalife") respecto a sus prácticas comerciales.

- Los individuos que sean incluidos en la Conciliación pueden ser elegibles para recibir un pago. Herbalife también ha acordado cambiar o preservar los recientes cambios a sus prácticas comerciales.

  **Sus derechos legales podrían verse alterados aun cuando no actúe. Lea esta Notificación detenidamente.**

| SUS DERECHOS LEGALES Y OPCIONES EN ESTA CONCILIACIÓN | |
|---|---|
| **PRESENTAR UN FORMULARIO DE RECLAMACIÓN Y/O FORMULARIO DE RECLAMACIÓN DE REEMBOLSO** | Esta es la única forma de obtener un pago. Esta opción tendrá como consecuencia que usted renuncia a sus derechos de demandar a Herbalife sobre las reclamaciones legales en este litigio. |
| **EXCLUÍRSE** | No obtiene pago alguno. Esta es la única opción que le permite a usted formar parte de cualquier otra demanda en contra de Herbalife sobre las reclamaciones legales en este caso. |
| **OBJETAR** | Escribir al Tribunal sobre el motivo por el cual le agrada o no, la conciliación. |
| **ASISTIR A UNA AUDIENCIA** | Puede pedir la palabra ante el Tribunal con respecto a la imparcialidad de la conciliación. |

| NO HACER NADA | No obtiene pago alguno. Renuncia a sus derechos de demandar a Herbalife sobre las reclamaciones en este litigio. |
|---|---|

## QUÉ CONTIENE ESTA NOTIFICACIÓN

**Página**

INFORMACIÓN BÁSICA ............................................................................................ 1
   1. ¿Por qué recibí este paquete de notificación? .......................................... 1
   2. ¿De qué trata esta demanda? ...................................................................... 1
   3. ¿Por qué esta es una demanda colectiva? ................................................... 1
   4. ¿Por qué existe una conciliación? .............................................................. 2
¿QUIÉNES ESTÁN INCLUIDOS EN LA CONCILIACIÓN? ............................................... 2
   5. ¿Cómo sé si formo parte de la conciliación? ............................................. 2
   6. ¿Hay excepciones para poder ser incluido? ............................................... 2
   7. Todavía no estoy seguro de si estoy incluido. ........................................... 2
LOS ........................................................................................................................... 3
   8. ¿Qué es lo que se ofrece en la conciliación? ............................................. 3
   9. ¿De cuánto será mi pago? .......................................................................... 5
CÓMO OBTENER UN PAGO O DESCUENTO — PRESENTACIÓN DE UN FORMULARIO DE RECLAMACIÓN .......................................................................................................... 7
   10. ¿Cómo puedo obtener un pago? ............................................................... 7
   11. ¿Cuándo obtendría mi pago? .................................................................... 8
   12. ¿A qué estoy renunciando para recibir un pago y seguir formando parte del Grupo de demandantes? ..................................................................................................... 8
EXCLUIRSE DE LA CONCILIACIÓN ........................................................................... 9
   13. ¿Cómo puedo salirme de la conciliación? ................................................ 9
   14. Si no me excluyo, ¿puedo demandar más adelante a Herbalife por este mismo asunto? ................................................................................................................... 9
   15. Si me excluyo, ¿puedo obtener dinero de esta conciliación? ................... 10
LOS ABOGADOS QUE LO REPRESENTAN A USTED ..................................................... 10
   16. ¿Tengo un abogado en este caso? ............................................................ 10
   17. ¿Cómo se les pagará a los abogados? ...................................................... 10
OBJETAR LA CONCILIACIÓN ..................................................................................... 10
   18. ¿Cómo puedo informar al Tribunal que no me agrada la conciliación? ............. 10
   19. ¿Cuál es la diferencia entre presentar una objeción y excluirse? ............. 11
LA AUDIENCIA DE IMPARCIALIDAD DEL TRIBUNAL ................................................. 11
   20. ¿Cuándo y dónde decidirá el Tribunal si aprueba o no la conciliación? ............. 11
   21. ¿Debo asistir a la audiencia? ................................................................... 12
   22. ¿Podré hablar en la audiencia? ................................................................ 12
SI OPTA POR NO HACER NADA ................................................................................... 12
   23. ¿Qué sucede si no hago nada en absoluto? .............................................. 12
OBTENER MÁS INFORMACIÓN .................................................................................... 12
   24. ¿Hay mayor información detallada sobre la conciliación? ........................ 12
   25. ¿Cómo puedo obtener más información? .................................................. 12

## INFORMACIÓN BÁSICA

### 1. ¿Por qué recibí este paquete de notificación?

Esta notificación se envía a aquellos individuos que posiblemente hayan tenido un acuerdo de distribución válido o membrecía válida con Herbalife entre el 1 de abril de 2009 y el _____.

El Tribunal le envió esta notificación porque usted tiene el derecho de saber acerca de la propuesta de conciliación de un litigio de demanda colectiva, y todas las opciones que tiene a su disposición antes de que el Tribunal decida si aprueba o no la conciliación. Si el Tribunal la aprueba, y una vez resueltas las objeciones y apelaciones, un administrador nombrado por el Tribunal (el "Administrador de reclamaciones") distribuirá los pagos dispuestos en la conciliación. Usted recibirá información sobre el progreso de la conciliación.

Este paquete explica la demanda, la conciliación, sus derechos legales, lo beneficios de los que dispone, quiénes son elegibles para recibirlos y cómo obtenerlos.

El Tribunal a cargo del caso es el Tribunal de Distrito de los Estados Unidos para el Distrito Central de California, y el caso se conoce como *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Caso n.° 2:13-cv-02488-BRO-RZ. El juez Beverly Reid O'Connell supervisa esta demanda colectiva. Las personas que presentaron la demanda se denominan "Demandantes". La personas que fueron demandadas, Herbalife International of America, Inc.; Herbalife International, Inc.; y Herbalife Ltd. (en conjunto, "Herbalife"), son los "Demandados".

### 2. ¿De qué trata esta demanda?

La demanda reclamaba que Herbalife operaba bajo un esquema piramidal contrario a la legislación estatal de California. La demanda también reclama que los materiales promocionales de Herbalife hacían afirmaciones engañosas respecto a ciertas oportunidades de negocio. Herbalife niega que haya obrado de mala forma y se defendió de forma enérgica en la demanda.

### 3. ¿Por qué esta es una demanda colectiva?

En una demanda colectiva, una o más personas llamadas Representantes del Grupo de demandantes (en este caso Dana Bostick, Anita Vasko, Judi Trotter, Beverly Molnar y Chester Cote), presentan una demanda en nombre de personas que se encuentran en una situación similar. Todas estas personas son el "Grupo de demandantes" o los "Miembros del Grupo de demandantes". Un tribunal resuelve los problemas de todos los Miembros del Grupo de demandantes, excepto los de las personas que se excluyan del Grupo de demandantes.

3121619.1

1

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 41 of 194   Page ID
#:2958
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 19 of 30   Page ID
#:2922

**4. ¿Por qué existe una conciliación?**

El Tribunal no falló a favor de los Demandantes ni de Herbalife. En su lugar, ambas partes aceptaron llegar a una conciliación. De esta forma, ambas partes evitan el costo de un juicio, y las personas afectadas recibirán compensación. Herbalife niega todas las reclamaciones legales en este caso. Los Representantes del Grupo de demandantes y sus abogados consideran que la conciliación es lo mejor para todos los Miembros del Grupo de demandantes.

## ¿QUIÉNES ESTÁN INCLUIDOS EN LA CONCILIACIÓN?

Para ver si usted obtendrá dinero de esta conciliación, primero debe convertirse en Miembro del Grupo de demandantes.

**5. ¿Cómo sé si formo parte de la conciliación?**

Los Miembros del Grupo de demandantes son detallados en la Estipulación de la Conciliación. En general, todas las personas que, durante el periodo comprendido entre el 1 de abril de 2009 hasta el _____, hayan tenido un acuerdo de distribución válido o membrecía válida con Herbalife se incluyen en el grupo de demandantes.

**6. ¿Hay excepciones para poder ser incluido?**

Usted no es Miembro del Grupo de demandantes si fue o es empleado de Herbalife o miembro familiar de un empleado de Herbalife. Usted no es Miembro del Grupo de demandantes si fue o es miembro del President's Team (Equipo de Presidencia), Founder's Circle (Círculo del Fundador), Chairman's Club (Club de Presidencia), Millionaire Team (Equipo Millonario), o GET Team (Equipo GET).

Usted no es Miembro del Grupo de demandantes con derecho a recibir algún pago si usted aceptó someterse a las disposiciones de arbitraje que se encuentran en el Acuerdo de arbitraje para disputas entre miembros y Herbalife contenidas en el Acuerdo de solicitud de membrecía vigente a septiembre de 2013. Sin embargo, aún puede ser Miembro del Grupo de demandantes afectado por los elementos no monetarios de la conciliación incluso si usted firmó un Acuerdo de arbitraje.

**7. Todavía no estoy seguro de si estoy incluido.**

Si usted aún no está seguro de si está incluido, puede solicitar ayuda gratuita poniéndose en contacto con los Abogados de los Demandantes a: _____. También puede llamar al 1-800-XXX-XXXX o visite [sitio web] para obtener mayor información. O puede diligenciar y regresar el formulario de reclamación descrito en la página 4, en la pregunta 10, para ver si usted reúne los requisitos necesarios.

3121619.1

## LOS BENEFICIOS DE LA CONCILIACIÓN - LO QUE USTED OBTIENE

### 8. ¿Qué es lo que se ofrece en la conciliación?

Herbalife ha acordado establecer dos Fondos de conciliación para miembros y distribuidores actuales y pasados.

- **Fondo de conciliación en efectivo**: Se usarán 15 millones USD en efectivo para pagar a miembros o distribuidores de Herbalife que hayan presentado reclamaciones válidas.  El fondo también se usará para pagar honorarios y costos de abogados (*véase* Pregunta 17) así como los costos de administración de la conciliación.

- **Fondo de devolución de productos**: Se pondrán a disposición hasta 2,5 millones USD para pagar a miembros o distribuidores que presenten reclamaciones válidas para la devolución de productos no usados ni abiertos (lo que excluye los Paquetes Comerciales Internacionales [International Business Packs] y los Minipaquetes Comerciales Internacionales [Mini-International Business Packs]). Se pueden usar 2,5 millones USD adicionales del Fondo de conciliación en efectivo descrito anteriormente para pagar por devoluciones de productos adicionales si las reclamaciones válidas exceden el monto del Fondo de devolución de productos.

Herbalife también ha acordado hacer o continuar varios cambios a sus políticas y procedimientos corporativos durante mínimo tres años a partir de la fecha en que el Tribunal dé su aprobación final de esta conciliación. A continuación se detallan dichas políticas corporativas:

1. Herbalife no podrá cobrar simultáneamente y por separado a sus miembros un honorario de "Empaque y manejo" (o un honorario similar) y un "Cargo de transporte de pedido" (o un honorario similar).

2. Herbalife no definirá "Distribuidor" en su Glosario de términos como "Toda persona que compre un Paquete de miembro Herbalife oficial (Official Herbalife Member Pack) y presente a Herbalife una Solicitud de membrecía válida y completa y cuya Solicitud haya sido aceptada por Herbalife".

3. Herbalife continuará disuadiendo a sus miembros de incurrir en deudas para dedicarse a la oportunidad de negocio de Herbalife.

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 43 of 194   Page ID
#:2960
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 21 of 30   Page ID
#:2924

4. Herbalife continuará pagando los cargos de transporte para la devolución de productos a Herbalife en relación con sus políticas de recompra de inventario.

5. Herbalife continuará ejecutando sus normas y manteniendo un departamento de cumplimiento normativo de miembros. Herbalife también deberá continuar revisando y complementando sus políticas, procedimientos y reglamentos de miembros según Herbalife considere necesario en el ejercicio de su juicio comercial razonable.

6. Herbalife continuará prohibiendo a sus miembros vender listas de clientes potenciales a otros miembros o comprar listas de clientes potenciales de cualquier otra fuente.

7. Herbalife continuará prohibiendo a sus miembros que soliciten a una persona que compre un producto (salvo un Paquete de Miembro Mini o Completo) como condición para convertirse en miembro o distribuidor de Herbalife.

8. Herbalife continuará solicitando que antes de abrir un Club de Nutrición (Nutrition Club) en una sede no residencial, el miembro de Herbalife debe haber sido miembro durante mínimo 90 días y recibir capacitación obligatoria de operador de Club de Nutrición.

9. Herbalife incluirá su Declaración de compensación bruta promedia (Statement of Average Gross Compensation, "SAGC") como parte de su solicitud de membrecía.

10. Herbalife deberá exigir que los nuevos miembros reconozcan haber revisado la SAGC cuando firmen una nueva Solicitud y Acuerdo de membrecía Herbalife y continuará incluyendo o vinculando a la SAGC con ese Acuerdo.

11. Herbalife deberá continuar divulgando en su SAGC el número total y porcentaje de todos los miembros que no reciban ningún pago compensatorio directamente de Herbalife.

12. Herbalife deberá aclarar en su Plan de ventas y mercadeo que tras cumplir los requisitos necesarios para ser Supervisor, un miembro tendrá como mínimo 12 meses durante los cuales podrá ser reevaluado como Supervisor.

13. Herbalife deberá enmendar el Acuerdo de membrecía en versión física para definir "Declaración de compensación" como "Declaración de compensación bruta promedio pagada por Herbalife", e incluir la siguiente declaración: "Por medio del presente asevero, garantizo y acuerdo que no

3121619.1

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 44 of 194   Page ID
#:2961
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 22 of 30   Page ID
#:2925

me estoy basando y que no me basaré en ninguna otra información o afirmación verbal o escrita sobre los resultados financieros que yo pueda lograr". Herbalife puede modificar el Acuerdo de membrecía siempre que dichas modificaciones no sean considerablemente incongruentes con estas enmiendas.

Notas: Los honorarios y costos de abogados, los costos de administración de la conciliación y otros costos correspondientes, serán pagados a partir del Fondo de conciliación en efectivo. El saldo del Fondo de conciliación en efectivo será usado para pagar reclamaciones válidas presentadas por Miembros del Grupo de demandantes.

Podrá conocer más detalles sobre la conciliación, consulte la Estipulación de conciliación, que se encuentra disponible en: [sitio web]

## 9. ¿De cuánto será mi pago?

Su cuota de la conciliación dependerá del número de formularios de reclamación válidos que envíen los Miembros del Grupo de demandantes, la naturaleza de su reclamación y el monto de honorarios y cotos de abogados adoptados por el Tribunal.

Habrá disponibles tres tipos de beneficios monetarios a partir de los dos Fondos de conciliación. Los Miembros del Grupo de demandantes podrían recibir beneficios de las siguientes formas:

### Tipo 1: Indemnización de devolución de producto (fondo de devolución de productos)

Los Miembros del Grupo de demandantes pueden presentar reclamaciones para regresar productos no usados ni abiertos (excluidos los Paquetes Comerciales Internacionales y Minipaquetes Comerciales Internacionales) comprados con más de un año de antelación al _____, la fecha límite para presentar formularios de reclamación. Después de este plazo, el Administrador de reclamaciones publicará en el sitio web de la conciliación de demanda colectiva [nombre del sitio web] una notificación del pago de devolución y en ese momento, usted tendrá la posibilidad de devolver los productos identificados en sus formularios de reclamación.

Notas: Si el monto de devolución de productos excede el monto en el Fondo de devolución de productos, los pagos a los Miembros del Grupo de demandantes se reducirán de forma proporcional para que se puedan pagar todas las reclamaciones válidas. Todo costo de envío será pagado a partir del Fondo de devolución de productos. Si usted compró productos Herbalife dentro de un año antes del _____, usted puede tener derecho a un reembolso en virtud de las Garantías estándares Gold de Herbalife (Gold Standard Guarantees), que son administradas directamente por Herbalife y no forman parte de esta Conciliación.

### Tipo 2: Indemnización de oportunidad de negocio (Fondo de conciliación en efectivo)

3121619.1

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 45 of 194   Page ID
#:2962
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 23 of 30   Page ID
#:2926

Si usted (a) se adhirió a Herbalife principalmente para dedicarse a una oportunidad de
negocio y su razón principal para adherirse no fue el consumo personal y/o familiar de
productos Herbalife; (b) en total, perdió dinero en productos de Herbalife en la
dedicación a la oportunidad de negocio de Herbalife; y (c) nunca ha sido miembro del
GET Team o un equipo de nivel más alto, entonces es posible que usted reúna los
requisitos para una indemnización del Fondo de conciliación en efectivo con base en sus
compras de "Productos aceptables".

Un producto Herbalife es un "Producto aceptable" si este (i) fue comprado con propósito
de reventa; (ii) fue comprado dentro de los EE. UU. y enviado a usted en un lugar de los
EE. UU.; (iii) no fue vendido por mínimo el costo de compra; (iv) no fue devuelto a
través del programa de recompra de Herbalife o garantía de satisfacción de Herbalife; (v)
no fue objeto de una reclamación para compensación del Fondo de productos que haya
sido registrada conforme a esta Conciliación.

### Indemnización prorrateada

Si usted pagó a Herbalife como mínimo 750 USD para comprar Productos aceptables
durante cualquier Año de reclamación, puede ser elegible para una indemnización
prorrateada obtenida del Fondo de conciliación en efectivo igual a un 100 % de la pérdida
total estimada de sus ventas de "Productos aceptables" o un 50 % del precio que usted
pago para su total de "Producto aceptable", el monto que sea menor. Un Año de
reclamación es un periodo de doce meses que inicia y finaliza el primer día del mes en
que usted se convirtió en miembro de Herbalife.

Notas: Si las reclamaciones exceden el monto disponible para Indemnizaciones
prorrateadas, se reducirán los pagos a los Miembros del Grupo de demandantes en forma
proporcional para que puedan pagarse todas las reclamaciones válidas.

### Indemnización de tarifa plana

Si usted no pagó a Herbalife como mínimo 750 USD para comprar Productos aceptables
durante un Año de reclamación (como se define arriba), usted puede tener derecho a un
pago de 20 USD que serán pagados a partir del Fondo de conciliación en efectivo.


Notas: Si las reclamaciones exceden el monto disponible para Indemnizaciones de tarifa
plana, se reducirán los pagos a los Miembros del Grupo de demandantes en forma
proporcional para que puedan pagarse todas las reclamaciones válidas.
Todo monto restante en el Fondo de conciliación en efectivo después de los pagos
especificados en la Indemnización de oportunidad de negocio será pagado conforme a la
doctrina *cy pres* a la siguiente organización de beneficencia o  a la organización de
beneficencia que acuerden mutuamente las parten y cuente con la aprobación del
Tribunal:

Consumer Federation of America (Federación de Consumidores de América)

3121619.1

En la medida en que se acumulen intereses sobre los montos mantenidos por el Administrador de reclamaciones antes de la distribución conforme a lo establecido en la Estipulación de conciliación, estos le corresponderán y serán pagaderos a Herbalife.

## CÓMO OBTENER UN PAGO—
## PRESENTACIÓN DE UN FORMULARIO DE RECLAMACIÓN

**10. ¿Cómo puedo obtener un pago?**

Para poder obtener un pago del Fondo de conciliación en efectivo y un Fondo de devolución de productos, debe enviar un formulario de reclamación. Puede obtener el formulario de reclamación con el Administrador de reclamaciones en su sitio web [       ] o  solicitándolo por teléfono llamando a la línea [       ]. Lea las instrucciones con detenimiento, llene el(los) formulario(s) y firme y (si no lo llena en Internet) envíe por correo postal el(los) formulario(s) con fecha de sello postal de a más tardar el _____.

**Pagos de devolución de productos**

Para recibir un pago en virtud del Fondo de devolución de productos, debe identificar lo siguiente en su formulario de reclamación:

- Número de referencia de producto (Stock-Keeping Unit, "SKU").

- Fecha estimada de compra de los productos que se van a devolver.

- El monto real pagado para cada producto que usted pretende devolver.

- Si no puede proveer el monto real pagado por los productos que usted pretender devolver, debe certificar bajo pena de perjurio que usted no está en capacidad de brindar dicha información y luego indicar un monto de compra estimado. Asumiendo que toda la otra información que usted brindó es adecuada, el Administrador de reclamaciones entonces calculará el monto pagado como su monto de compra estimado o un 50 % del Precio sugerido de venta al público de Herbalife para el producto en la fecha de compra, el monto que sea menor.

Para poder obtener un pago del Fondo de devolución de productos, después de que el Administrador de reclamaciones publique una notificación del pago de devolución en Internet en [sitio web], debe regresar el producto identificado en su formulario de reclamación siguiendo las indicaciones detalladas en el sitio web.

**Pagos de conciliación en efectivo**

Para recibir un pago en virtud del Fondo de conciliación en efectivo, debe certificar, en su formulario de reclamación, bajo pena de perjurio lo siguiente:

3121619.1

PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

- Usted se adhirió a Herbalife principalmente para dedicarse a una oportunidad de negocio y no por el motivo principal de consumir personalmente (o como familia) productos Herbalife.

- En total, usted perdió dinero en productos Herbalife al dedicarse a la oportunidad de negocio de Herbalife.

- Usted nunca ha sido miembro del GET Team o un nivel superior.

- El monto de su estimado más cercano y de buena fe de su pérdida total derivada de las ventas de productos.

Los pagos en virtud del Fondo de conciliación en efectivo serán hechos solamente para compras de Productos aprobados. Los Productos aceptables son productos que:

- Fueron comprados con propósitos de reventa.

- Fueron comprados dentro de los Estados Unidos y enviados a usted en un lugar de los EE. UU.

- No fueron vendidos por usted como mínimo al costo de compra.

- No fueron devueltos a través del programa de recompra de Herbalife o la garantía de satisfacción de Herbalife.

- No fueron objeto de un reclamo de indemnización a partir del Fondo de productos que haya sido registrado conforme a esta Conciliación.

Usted debe certificar la anterior información bajo pena de perjurio.

## 11. ¿Cuándo obtendría mi pago?

El Tribunal llevará a cabo una audiencia el _____, para decidir si aprueba la conciliación. Si el juez O'Connell aprueba la conciliación, puede haber apelaciones. Es imposible determinar con certeza si estas apelaciones pueden resolverse, y el hecho de resolverlas puede tardar cierto tiempo. Todas las personas que envíen un formulario serán informadas del progreso de la conciliación. Tenga paciencia.

## 12. ¿A qué estoy renunciando para recibir un pago y seguir formando parte del Grupo de demandantes?

A menos que se excluya usted mismo, seguirá formando parte del Grupo de demandantes, y eso significa que usted no puede demandar, seguir demandando ni ser parte de cualquier otra demanda en contra de Herbalife sobre los asuntos legales en *este* caso, salvo en la medida permitida por la Estipulación de conciliación. También significa que todas las órdenes del Tribunal, incluida una exoneración de reclamaciones alegadas o

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 48 of 194   Page ID
#:2965
Case 2:13-cv-02488-BRO-SH   Document 95-1   Filed 11/03/14   Page 26 of 30   Page ID
#:2929

que pudieran haber sido alegadas en la demanda, se aplicarán a usted y serán legalmente
vinculantes para usted.

# EXCLUIRSE DE LA CONCILIACIÓN

Si no desea obtener un pago de esta conciliación, pero desea conservar su derecho a
demandar o proseguir una demanda en contra de Herbalife mediante sus propios medios
sobre las reclamaciones legales en este caso por compensación monetaria, entonces usted
debe tomar medidas para salir del Grupo de demandantes. Esto se conoce como el
nombre de exclusión, o "excluirse" del Grupo de demandantes.

## 13. ¿Cómo puedo salirme de la conciliación?

Para excluirse de la conciliación, usted debe enviar un Formulario de exclusión (que es
está disponible en el sitio web del Administrador de reclamaciones) o una carta por
correo postal o por correo electrónico en la que indique que usted desea ser excluido de
*Bostick v. Herbalife*. Asegúrese de incluir su nombre, dirección, número de teléfono y
firma. Debe enviar por correo postal o electrónico su solicitud de exclusión con fecha de
franqueo postal de a más tardar el _____ a:

Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

Herbalifexclusions@XXXXX.com

No puede excluirse por teléfono, pero puede solicitar un Formulario de exclusión
llamando al Administrador de reclamaciones al número telefónico que se indica en esta
Notificación. Si solicita ser excluido, no obtendrá ningún pago de conciliación, y no
podrá objetar la conciliación. No quedará vinculado legalmente por cualquier hecho que
suceda en esta demanda. Usted puede demandar (o proseguir su demanda contra)
Herbalife en el futuro respecto a los asuntos legales de este caso.

## 14. Si no me excluyo, ¿puedo demandar más adelante a Herbalife por este mismo asunto?

No. A menos que se excluya, usted renuncia a cualquier derecho de demandar a Herbalife
por las reclamaciones que resuelve esta Conciliación. Debe excluirse de *este* Grupo de
demandantes para proseguir su propia demanda. Recuerde que la fecha límite para la
exclusión es el _____.

### 15. Si me excluyo, ¿puedo obtener dinero de esta conciliación?

No. Si toma las medidas para excluirse, no envíe un formulario de reclamación. Pero, puede demandar, proseguir su demanda, o formar parte de una demanda diferente en contra de Herbalife, a reserva de la legislación aplicable a su caso.

## LOS ABOGADOS QUE LO REPRESENTAN A USTED

### 16. ¿Tengo un abogado en este caso?

El Tribunal aprobó los bufetes de abogados de Fabian & Clendenin, P.C. de Salt Lake City, Utah, y Foley Bezek Behle & Curtis, LLP de Santa Barbara, CA, para que lo representen a usted y a otros Miembros del Grupo de demandantes. Estos abogados se denominan Abogados del Grupo de demandantes. A usted no se le cobrará por estos abogados. Si desea ser representado por su propio abogado en este caso, puede contratar a uno y responsabilizarse por los gastos pertinentes.

### 17. ¿Cómo se les pagará a los abogados?

Los Abogados del Grupo de demandantes solicitarán al Tribunal honorarios de abogados equivalentes a un 30 % del valor de conciliación total por un monto que no exceda los 5.250.000 USD y costas por aproximadamente 200.000 USD por hacerse cargo de este caso.. El Tribunal puede adjudicar un monto menor al solicitado. Estos montos y los costos de administrar la conciliación serán extraídos del Fondo de conciliación en efectivo, que reducirá el monto de dinero disponible para cada miembro del Grupo de demandantes.

## OBJETAR LA CONCILIACIÓN

Usted puede indicarle al Tribunal que no acepta la conciliación o alguna parte de la misma.

### 18. ¿Cómo puedo informar al Tribunal que no me agrada la conciliación?

Si usted es Miembro del Grupo de demandantes y no se ha excluido, puede objetar la conciliación si no le gusta alguna parte o la totalidad de la misma. Podrá manifestar los motivos por los que cree que el Tribunal no debe aprobarla.  El Tribunal considerará su opinión. Para hacerlo, debe enviar por correo postal una objeción escrita en el caso, *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ, a:

> United States District Court
> Central District of California
> 312 North Spring Street
> Los Angeles, California 90012

3121619.1

Herbalife Objections
Fabian & Clendenin P.C:
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210

Herbalife Objections
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, California 93101

Herbalife Objections
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Herbalife Objections
Bird Marella P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561

Asegúrese de incluir su nombre, dirección, número de teléfono y firma junto con los motivos por los que objeta la conciliación. Su objeción debe tener fecha de franqueo postal de a más tardar el _____ :

## 19. ¿Cuál es la diferencia entre presentar una objeción y excluirse?

Presentar una objeción simplemente significa decirle al Tribunal que a usted no le agrada algo acerca de la conciliación. Solo puede presentar una objeción si usted permanece en el Grupo de demandantes. Excluirse es decirle al Tribunal que usted no quiere formar parte del Grupo de demandantes. Si se excluye, no tendrá motivos para presentar objeciones dado que usted ya no está vinculado con el caso.

## LA AUDIENCIA DE IMPARCIALIDAD DEL TRIBUNAL

El Tribunal llevará a cabo una audiencia para decidir si aprueba la conciliación. Usted puede asistir y pedir la palabra, aunque no es necesario que lo haga.

## 20. ¿Cuándo y dónde decidirá el Tribunal si aprueba o no la conciliación?

El juez O'Connell llevará a cabo una Audiencia de imparcialidad a las _____ del _____ en el Tribunal de Distrito de los Estados Unidos para el Distrito Central de California (United States District Court for the Central District of California), 312 North Spring Street, Los Angeles, California 90012, Department 14, Spring St. Floor. En esta audiencia, el juez O'Connell considerará si la conciliación es justa, razonable y adecuada. Si hay objeciones, el juez O'Connell las considerará. El juez O'Connell escuchará a las personas que hayan pedido la palabra en la

3121619.1

audiencia. El juez O'Connell también puede decidir cuánto pagar a los Abogados del Grupo de demandantes. Después de esta audiencia, el juez O'Connell decidirá si aprueba o no la conciliación. No sabemos cuánto tiempo tardará tomar estas decisiones.

### 21. ¿Debo asistir a la audiencia?

No. Los Abogados del Grupo de demandantes responderán las preguntas que pueda tener el juez O'Connell. Sin embargo, usted o su propio abogado están bienvenidos a asistir a sus propias expensas. Si envía una objeción por escrito, no es necesario que se presente ante el Tribunal para hablar sobre ella. Siempre y cuando haya enviado su objeción por escrito oportunamente y de conformidad con esta Notificación, el Tribunal la tendrá en cuenta.

### 22. ¿Podré hablar en la audiencia?

Usted puede pedirle permiso al juez O'Connell para tomar la palabra en la Audiencia de imparcialidad. Para hacerlo, debe enviar una carta a la dirección que aparece en la pregunta 18 indicando que esta es su "Notice of Intention to Appear in (Notificación de intención de comparecer en) *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Caso n.° 2:13-cv-02488-BRO-RZ." Asegúrese de incluir su nombre, dirección, número de teléfono y firma. Su notificación de intención de Comparecer debe tener fecha de franqueo postal de a más tardar el _____. No puede tomar la palabra en la audiencia si se excluyó.

## SI OPTA POR NO HACER NADA

### 23. ¿Qué sucede si no hago nada en absoluto?

Si no hace nada, no obtendrá dinero de esta conciliación. Y a menos que se excluya, no podrá en ningún momento en el futuro entablar una demanda, continuar una demanda, ni ser parte de ninguna otra demanda contra Herbalife sobre los asuntos legales en este caso, salvo lo dispuesto en la Estipulación de conciliación.

## OBTENER MÁS INFORMACIÓN

### 24. ¿Hay mayor información detallada sobre la conciliación?

La presente notificación es un resumen de la conciliación propuesta. En la Estipulación de conciliación podrá encontrar más detalles. Usted puede obtener una copia de la Estipulación de conciliación en [sitio web].

### 25. ¿Cómo puedo obtener más información?

Puede visitar el sitio web en [sitio web], donde encontrará respuestas a preguntas frecuentes sobre la conciliación, un formulario de reclamación y otra información que le

3121619.1

PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAME O VISITE NUESTRO WEBSITE

ayudará a determinar si usted es un Miembro del Grupo de demandantes y si usted es elegible para obtener un pago o puede llamar a la línea gratuita 1-800-XXX-XXXX; o escribir a Bostick v. Herbalife Settlement Administrator, P.O. Box xxxx, Providence, RI 02940.

# EXHIBIT 2

To:
From:    Herbalife Claims Administrator
Subject: Herbalife Settlement

**If you were an Herbalife Distributor or Member at Any Time Between
April 1, 2009, and Month 00, 2014, You Could Get Benefits from a Class Action Settlement.**

Records show that you are a current or former Herbalife distributor.  A lawsuit was filed against Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife, Ltd. (collectively, "Herbalife") over its business model, alleging the Herbalife operates a pyramid scheme.  Herbalife denies that it did anything wrong.  The Settlement includes $15 million for cash awards, $2.5 million for product returns, and a legal commitment from Herbalife that it will change or preserve recent changes to certain business practices.  Go to [website] for more information and to file a claim online.

**Who's Included?**  You are included in the Settlement if at any time between April 1, 2009, and _____ you had a valid agreement of distributorship or membership with Herbalife.

**What Can You Get?**  You may be eligible to return unused and unopened Herbalife products (excluding International Business Packs and Mini-International Business Packs) purchased more than one year prior to the deadline for submitting claim forms and receive in exchange, the actual amount you paid for each returned product.  Even if you are unable to return products, you may be eligible to receive a cash payment for losses on Herbalife product purchases incurred in pursuing the Herbalife business opportunity.

**How to Get Benefits?**  You must submit a Claim Form to get benefits.  The Claim Form is available at [website] or by calling 1-800-000-0000.  You can submit a Claim Form online or by mail.  The deadline to submit a Claim Form is **Month 00, 2015.**

**Your Other Rights.**  If you do nothing, your rights will be affected.  If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement.  The deadline to exclude yourself is **Month 00, 2015.**  If you do not exclude yourself you will be unable to sue Herbalife for any claim relating to the lawsuit.  If you stay in the Settlement, you may object to it by **Month 00, 2015.**  The Court will hold a hearing on **Month 00, 2014,** to consider whether to approve the Settlement and award attorneys' fees.  The Plaintiffs' attorneys anticipate seeking attorneys' fees of 30% of the total settlement value in an amount not to exceed $5,250,000 and costs of approximately $200,000 for pursuing this case.  Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund. You can appear at the hearing, but you don't have to.  You can hire your own attorney at your own expenses to appear or speak for you at the hearing.

**For more information or a Claim Form:  1-800-000-0000**     [website]

COURT-ORDERED LEGAL NOTICE

# If you were an Herbalife Distributor or Member at Any Time Between April 1, 2009, and Month 00, 2014, You Could Get Benefits from a Class Action Settlement.

Records show that you are a current or former Herbalife distributor. A lawsuit was filed against Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife, Ltd. (collectively, "Herbalife") over its business model, alleging the Herbalife operates a pyramid scheme. Herbalife denies that it did anything wrong. The Settlement includes $15 million for cash awards, $2.5 million for product returns, and a legal commitment from Herbalife that it will change or preserve recent changes to certain business practices. Go to [website] for more information and to file a claim online.

## WHO'S INCLUDED?

You are in included in the Settlement if at any time between April 1, 2009, and _____ you had a valid agreement of distributorship or membership with Herbalife.

## WHAT CAN YOU GET?

You may be eligible to return unused and unopened Herbalife products (excluding International Business Packs and Mini-International Business Packs) purchased more than one year prior to the deadline for submitting claim forms and receive in exchange, the actual amount you paid for each returned product. Even if you are unable to return products, you may be eligible to receive a cash payment for losses on Herbalife product purchases incurred in pursuing the Herbalife business opportunity.

## HOW TO GET BENEFITS?

You must submit a Claim Form to get benefits. The Claim Form is available at [website] or by calling 1-800-000-0000. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **Month 00, 2015.**

## YOUR OTHER RIGHTS

If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself is **Month 00, 2015.** If you do not exclude yourself you will be unable to sue Herbalife for any claim relating to the lawsuit. If you stay in the Settlement, you may object to it by **Month 00, 2015.** The Court will hold a hearing on **Month 00, 2014,** to consider whether to approve the Settlement and award attorneys' fees. The Plaintiffs' attorneys anticipate seeking attorneys' fees of 30% of the total settlement value in an amount not to exceed $5,250,000 and costs of approximately $200,000 for pursuing this case. Any awarded attorneys' fees and costs will be paid from the Cash Settlement Fund. You can appear at the hearing, but you don't have to. You can hire your own attorney at your own expenses to appear or speak for you at the hearing.

FOR MORE INFORMATION OR A CLAIM FORM:
1-800-000-0000 [WEBSITE]

3121617.1

Para:
De: Administrador de reclamaciones de Herbalife
Asunto: Conciliación de Herbalife

**Si usted fue distribuidor o miembro de Herbalife en cualquier momento comprendido entre el 1 de abril de 2009, y mes 00 de 2014, puede obtener beneficios de una Conciliación de demanda colectiva.**

Los registros muestran que usted es o fue distribuidor de Herbalife. Se interpuso una demanda contra Herbalife International of America, Inc.; Herbalife International, Inc.; y Herbalife, Ltd. (en conjunto, "Herbalife") sobre su modelo comercial, en la que se alega que Herbalife opera con base en un esquema piramidal. Herbalife niega que haya obrado de mala forma. La Conciliación incluye 15 millones USD por concepto de indemnizaciones en efectivo, 2,5 millones USD por devoluciones de productos y un compromiso legal asumido por Herbalife de que cambiará o mantendrá los cambios recientes a ciertas prácticas comerciales. Visite [sitio web] para obtener más información y registrar una reclamación en línea.

**¿Quién está incluido?** Usted está incluido en la Conciliación si en algún momento comprendido entre el 1 de abril de 2009 y el _____ usted tuvo un acuerdo válido de distribución o membrecía con Herbalife.

**¿Qué puede obtener?** Usted puede ser elegible para devolver productos Herbalife no usados ni abiertos (excluidos los Paquetes Comerciales Internacionales [International Business Packs] y los Minipaquetes Comerciales Internacionales [Mini-International Business Packs]) comprados con más de un año de antelación a la fecha límite de presentación de formularios de reclamación y recibir en intercambio, el monto real que usted pagó para cada producto devuelto. Incluso si usted no está en capacidad de devolver los productos, puede ser elegible para recibir un pago en efectivo por las pérdidas sobre las compras de productos Herbalife asumidas en la dedicación a la oportunidad de negocio de Herbalife.

**¿Cómo obtener beneficios?** Debe enviar un Formulario de reclamación para obtener beneficios. Los Formularios de Reclamación están disponibles en [sitio web] o puede obtenerlos llamando al 1-800-000-0000. Puede enviar su Formulario de reclamación por Internet o por correo postal. La fecha límite para presentar su Formulario de reclamación es el **00 del mes de 2015.**

**Sus otros derechos.** Incluso si elige no hacer nada, sus derechos legales se verán alterados. Si no desea quedar vinculado legalmente por esta Conciliación, debe excluirse de la misma. La fecha límite para excluirse es el **00 de mes de 2015.** Si no se excluye, no podrá demandar a Herbalife por cualquier reclamación relacionada con el litigio. Si permanece en la Conciliación, podrá presentar objeciones a la misma a más tardar el **00 de mes de 2015.** El Tribunal llevará a cabo una audiencia el **00 de mes de 2014,** para considerar si aprueba la Conciliación y adjudica honorarios de abogados. Los abogados de los Demandantes prevén solicitar honorarios de abogados equivalentes a un 30 % del valor de conciliación total por un monto que no exceda los 5.250.000 USD y costas de aproximadamente 200.000 USD  por hacerse cargo de este caso. Todos los honorarios y costos de abogados que sean aprobados serán pagados a partir del Fondo de conciliación en efectivo. Usted puede comparecer en la audiencia, pero no está obligado a hacerlo. También puede contratar su propio abogado, por su cuenta, para comparecer o hablar en su nombre en la audiencia.

**Si desea más información o un Formulario de reclamación: 1-800-000-0000   [sitio web]**

<u>NOTIFICACIÓN LEGAL ORDENADA POR UN TRIBUNAL</u>

# Si usted fue distribuidor o miembro de Herbalife en cualquier momento comprendido entre el 1 de abril de 2009 y el 00 del mes de 2014, puede obtener beneficios de una Conciliación de demanda colectiva.

Los registros muestran que usted es o fue distribuidor de Herbalife. Se interpuso una demanda contra Herbalife International of America, Inc.; Herbalife International, Inc.; y Herbalife, Ltd. (en conjunto, "Herbalife") sobre su modelo comercial, en la que se alega que Herbalife opera con base en un esquema piramidal. Herbalife niega que haya obrado de mala forma. La Conciliación incluye 15 millones USD por concepto de indemnizaciones en efectivo, 2,5 millones USD por devoluciones de productos y un compromiso legal asumido por Herbalife de que cambiará o mantendrá los cambios recientes a ciertas prácticas comerciales. Visite [sitio web] para obtener más información y registrar una reclamación en línea.

### ¿QUIÉN ESTÁ INCLUIDO?

Usted está incluido en la Conciliación si en cualquier momento comprendido entre el 1 de abril de 2009 y el _____ usted tuvo un acuerdo de distribución válido o membrecía válida con Herbalife.

### ¿QUÉ PUEDE OBTENER?

Usted puede ser elegible para devolver productos Herbalife no usados ni abiertos (excluidos los Paquetes Comerciales Internacionales [International Business Packs] y los Minipaquetes Comerciales Internacionales [Mini-International Business Packs]) comprados con más de un año de antelación a la fecha límite de presentación de formularios de reclamación y recibir en intercambio, el monto real que usted pagó para cada producto devuelto. Incluso si usted no está en capacidad de devolver los productos, puede ser elegible para recibir un pago en efectivo por las pérdidas sobre las compras de productos Herbalife asumidas en la dedicación a la oportunidad de negocio de Herbalife.

### ¿CÓMO OBTENER BENEFICIOS?

Debe enviar un Formulario de reclamación para obtener beneficios. Los Formularios de Reclamación están disponibles en [sitio web] o puede obtenerlos llamando al 1-800-000-0000. Puede enviar su Formulario de reclamación por Internet o por correo postal. La fecha límite para presentar su Formulario de reclamación es el **00 del mes de 2015.**

### SUS OTROS DERECHOS

3121617.1

Incluso si no hace nada, sus derechos legales se verán alterados. Si no desea quedar vinculado legalmente por esta Conciliación, debe excluirse de la misma. La fecha límite para excluirse es el **00 de mes de 2015**. Si no se excluye, no podrá demandar a Herbalife por cualquier reclamación relacionada con el litigio. Si permanece en la Conciliación, podrá presentar objeciones a la misma a más tardar el **00 de mes de 2015**. El Tribunal llevará a cabo una audiencia el **00 de mes de 2014**, para considerar si aprueba la Conciliación y adjudica los honorarios de los abogados. Los abogados de los Demandantes prevén solicitar honorarios de abogados equivalentes a un 30 % del valor de conciliación total por un monto que no exceda los 5.250.000 USD y costas de aproximadamente 200.000 USD por hacerse cargo de este caso. Todos los honorarios y costos de abogados que sean aprobados serán pagados a partir del Fondo de conciliación en efectivo. Usted puede comparecer en la audiencia, pero no está obligado a hacerlo. También puede contratar su propio abogado, por su cuenta, para comparecer o hablar en su nombre en la audiencia.

**SI DESEA MÁS INFORMACIÓN O UN FORMULARIO DE RECLAMACIÓN: 1-800-000-0000** [SITIO WEB]

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

*Dana Bostick, et al. v. Herbalife International of America Inc. et al.*
## Case No. 13-CV-02488-BRO

## CLAIMS PROTOCOL

This Claims Protocol (the "Protocol") is part of the Stipulation of Settlement ("Stipulation") and shall be used by the Claims Administrator to review and process those Claims submitted pursuant to the Stipulation and otherwise implement the terms of the claim review and administration process. All capitalized terms used in this Protocol shall have the same meaning given them in the Stipulation.

1. **Claims Administrator's Role and Duties**

   (a)  The Claims Administrator shall be selected by the agreement of the Parties and recommended to and approved by the Court.

   (b)  The Claims Administrator must consent, in writing, to serve and shall abide by the obligations of the Stipulation, this Protocol, and the Orders issued by the Court.

   (c)  The Claims Administrator, as the Escrow Agent, shall maintain the funds in the escrow account in a blocked account or certificate of deposit at a nationally recognized, FDIC insured bank. The Claims Administrator shall have no authority, under any circumstance, to withdraw or disburse any escrowed funds without the written instructions of Defendant and Class Counsel.

   (d)  The Claims Administrator shall have access to information about the balance of the escrowed funds to perform calculations relating to (i) the costs and expenses associated with disseminating the Class Notice; (ii) the costs and expenses associated with claims administration; and (iii) the total amount due to Authorized Claimants.

   (e)  The Claims Administrator shall warrant that it knows of no reason why it cannot fairly and impartially administer the claim review process set forth in the Stipulation. If the Claims Administrator, Defendant, or Class Counsel learns of a conflict of interest as to a Claim, that party shall give written notice to the other parties, who shall resolve any such circumstances by further written agreement. Any unresolved dispute over such conflict of interest shall be submitted to the Court for resolution. The Claims Administrator shall indemnify and defend the Parties and their counsel against any liability arising from the Claims Administrator's breach of this provision.

   (f)  The Claims Administrator shall keep a clear and careful record of all communications with Class Members, all claims decisions, all expenses, and all tasks performed in administering the Notice and claim review processes.

(g)     The Claims Administrator shall provide periodic reports to Class Counsel and Defendant's Counsel regarding Claim Form submissions beginning not later than one week after Class Notice is first disseminated and continuing on a weekly basis thereafter.

(h)     The actual cost of the Claims Administrator shall be paid, from time to time, as determined by submitted and approved invoices, from the escrowed funds.

(i)     The Claims Administrator shall take all reasonable efforts to administer the Claims efficiently and avoid unnecessary fees and expenses.  The Claims Administrator shall only be reimbursed for fees and expenses supported by detailed and clear timesheets and receipts for costs.  As soon as work commences, the Claims Administrator shall provide a detailed written accounting of all fees and expenses on a monthly basis to Class Counsel and Defendant's Counsel, and shall respond promptly to inquiries by these counsel concerning fees and expenses.

(j)     The Parties are entitled to observe and monitor the performance of the Claims Administrator to assure compliance with the Stipulation and this Protocol.  The Claims Administrator shall promptly respond to all inquiries and requests for information made by Defendant or its counsel or Class Counsel.

2.     **Providing and Submitting Claim Forms**

(a)     The Claim Form, which is in substantially the form attached as [Exhibit 2] to the Stipulation, shall be available on the Claims Administrator's website (the "Settlement Website"), or by contacting the Claims Administrator.  The Claim Form on the Settlement Website and the hard copy Claim Form shall be consistent in content.

(b)     The Claims Administrator shall establish and maintain the Settlement Website, which shall be easily accessible through commonly used Internet Service Providers for the submission of Claims.  The Settlement Website shall be designed to permit Class Members to readily and easily submit Claims and obtain information about the Class Members' rights and options under the Stipulation. The Settlement Website shall be maintained continuously until the Effective Date.

(c)     The Claims Administrator also shall establish a toll-free telephone number that will have recorded information answering frequently asked questions about the Stipulation, including, but not limited to, the instructions about how to request a Claim Form and/or Class Notice as well as an option to reach a live operator.

3.     **Claim Form Review and Processing**

(a)     Class Members may timely submit a Claim to the Claims Administrator up to the Claims Deadline.  Class Members shall be eligible for the relief provided in the Stipulation, provided Class Members complete and timely submit the Claim Form to the Claims Administrator by the Claims Deadline.

- 2 -

(b)    The Claims Administrator shall complete the claim review process within the time period specified in the Stipulation.

(c)    The Claims Administrator shall gather and review the Claim Forms received pursuant to the Stipulation, and fulfill valid Claims.

    (i)    Class Members who submit a timely and valid Claim Form shall be designated as Authorized Claimants. The Claims Administrator shall examine the Claim Form before designating the Class Member as an Authorized Claimant to determine that the information on the Claim Form is reasonably complete and contains sufficient information to fulfill the claim.

    (ii)    <u>Product Return Claimants</u>. Settlement Class Members may submit claims to return unused and unopened products (excluding International Business Packs ["IBPs"] and mini-IBPs) that were purchased more than one year prior to the deadline for submitting claims forms. In exchange, Settlement Class Members shall receive a Return Payment from the Net Product Return Fund. Settlement Class Members submitting claims to return products are "Product Return Claimants."

        (A)    In their claim forms, Product Return Claimants shall identify the (1) SKU of the product(s) to be returned, (2) estimated purchase date of the product(s) to be returned, and (3) actual amount paid for each returned product (the "Product Return Amount"). If the Product Return Claimant is unable to provide the actual amount paid, the Product Return Claimant shall so certify and shall provide an estimated payment. Assuming all other information is properly provided to the Claims Administrator, the Claims Administrator shall calculate the Return Payment as the lesser of the Product Return Claimant's estimated payment or 50% of Herbalife's Suggested Retail Price for the product(s) on the purchase date.

        (B)    Following the deadline for submitting claim forms, the Settlement Website shall provide Product Return Claimants with notice of the amount of the proposed payment (the "Return Payment"). If the total Return Payment exceeds the Net Product Return Fund, the Return Payment for each Product Return Claimant shall be subject to pro rata diminution. Beginning within ten (10) business days following the Settlement Administrator's online posting of notice of the Return Payment and continuing for sixty (60) days thereafter, Product Return Claimants shall be permitted to return the products identified in their claim forms in exchange for a Return Payment.

- 3 -

(iii)   <u>Business Opportunity Claimants</u>.  Settlement Class Members may submit claims for a cash award, as described below.  Settlement Class Members submitting claims for a cash award are "Business Opportunity Claimants

(A)   Amounts to be paid to Business Opportunity Claimants out of the Net Settlement Fund shall be derived from information submitted to the Claims Administrator by the Business Opportunity Claimants and the price paid for Qualified Products identified through the claims process.

(B)   The Claims Administrator, using purchase data supplied by Herbalife, shall compare the Business Opportunity Claimant's estimated total loss from Qualified Product sales to the price paid by that claimant for the claimant's aggregate Qualified Products.

(C)   The Claims Administrator, using purchase data supplied by Herbalife, shall determine for each Business Opportunity Claimant whether during any Claims Year (defined as any twelve-month period beginning and ending on the first day of the month in which the Business Opportunity Claimant became an Herbalife member or distributor) during the Class Period the claimant paid Herbalife at least $750 to purchase products (the "Minimum Purchase Amount").

(D)   A Business Opportunity Claimant who purchased at least the Minimum Purchase Amount shall be entitled to a Pro Rata Award (defined in Subsection 4.4.5 of the Stipulation of Settlement).  All other Claimants shall be "Flat Rate Claimants" entitled to "Flat Rate Awards" (defined in Subsection 4.4.6 of the Stipulation of Settlement).

(1)   <u>Pro Rata Awards.</u>  Business Opportunity Claimants submitting valid claims shall be entitled to a payment equal to the lesser of 100% of the estimated total loss from Qualified Product sales or 50% of the price paid by that claimant for the claimant's aggregate Qualified Products. If the aggregate payment for Pro Rata Awards due to Business Opportunity Claimants exceeds the Net Settlement Fund less the aggregate Flat Rate Awards described in Subsection 4.4.6 of the Stipulation, payments shall be subject to pro rata diminution.  If the aggregate payment for Pro Rata Awards is less than 75% of the Net Settlement Fund less the aggregate Flat Rate Awards described below in Subsection 4.4.6 of the Stipulation, either party may move the Court to increase payments to Business Opportunity Claimants receiving a Pro Rata Award up to the lesser of (i) 75% of the price paid by that

claimant for the claimant's aggregate Qualified Products; or (ii) the total Net Settlement Fund.

(2)    <u>Flat Rate Award.</u>  Flat Rate Claimants submitting valid claims shall receive a payment of $20 to be paid from the Net Settlement Fund (the "Flat Rate Award"). If the aggregate Flat Rate Award for all Flat Rate Claimants exceeds $3 million, Flat Rate Awards shall be subject to pro rata diminution. If the aggregate Flat Rate Award is less than $3 million, then the difference shall remain in the Net Settlement Fund and be available for Pro Rata Awards.

(iv)    No Class Member may submit more than one Claim Form. The Claims Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Class Member ("Duplicative Claim Forms"). The Claims Administrator shall determine whether there is any duplication of Claims, if necessary by contacting the claimant(s) or their counsel. The Claims Administrator shall designate any such Duplicative Claims as invalid claims to the extent they allege the same damages or allege damages on behalf of the same Class Member.

(v)    The Claims Administrator shall exercise, in its discretion, all usual and customary measures to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the claim process. These measures may include comparing data provided by Settlement Class Members with information otherwise available to Herbalife. The Claims Administrator may, in its discretion, deny in whole or in part any claim to prevent actual or possible fraud or abuse.

(vi)    By agreement of the Parties, the Parties can instruct the Claims Administrator to take whatever steps they deem appropriate to preserve the Settlement Fund to further the purposes of the Stipulation if the Claims Administrator identifies actual or possible fraud or abuse relating to the submission of Claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse.

(vii)    The Claims Administrator shall, in its discretion, following consultation and agreement with counsel, reasonable agreement not to be withheld, decide whether to accept Claim Forms submitted after the Claims Deadline.

(d)    Class Members may timely submit an Opt-Out Form to the Claims Administrator up to the Claims Deadline. The Claims Administrator shall maintain records of those Class Members who have timely submitted Opt-Out Forms and provide periodic reports to Class Counsel. If a Class Member submits both a Claims Form and an Opt-Out Form, the Opt-Out Form shall be disregarded.

(e)     The Claims Administrator shall provide periodic reports to Class Counsel and Defendant's Counsel regarding the implementation of the Stipulation and this Protocol.

(f)     If a Claim Form cannot be processed without additional information, the Claims Administrator shall promptly notify the Parties and mail a letter that advises the claimant of the additional information and/or documentation needed to validate the claim.  The claimant shall have thirty-five (35) days from the date of the postmarked letter sent by the Claims Administrator to respond to the request from the Claims Administrator and the claimant shall be so advised.

    (i)     In the event the claimant timely provides the requested information, the Claim shall be deemed validated and shall be processed for payment.

    (ii)    In the event the claimant does not timely provide the information, the Claim may be denied or reduced to the claim amount reasonably supported by the documentation without further communication with the claimant.

(g)     If a Claim is reduced or denied because the Claims Administrator determined that the additional information and/or documentation was not sufficient to prove the Claim, the Claims Administrator shall provide a report to Class Counsel and Defendant's Counsel who shall meet and confer in an attempt to resolve these Claims.  If Class Counsel reasonably recommends payment of the Claim or payment of a reduced claim amount and Defendant agrees (and Defendant's agreement shall not be unreasonably withheld), then the Claims Administrator shall be instructed to pay those Claims.

(h)     The Claims Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Claims Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant.

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

*Dana Bostick, et al. v. Herbalife International of America Inc. et al.*
**Case No. 13-CV-02488-BRO**

**CLAIM FORM**

**Deadline for Submission:   [DATE] (the "Filing Deadline")**

## SECTION I:  GENERAL INSTRUCTIONS

If you were a Herbalife Distributor or Member in the United States any time after April 2009, you may be eligible to receive the following benefits under the Settlement Agreement (the "Settlement"):

- **Product Return Award**:  up to a 100% refund in exchange for return of unused and unopened products (except International Business Packs ("IBPs") or Mini-IBPs) purchased more than one year prior to the Filing Deadline (*see* SECTION IV); and

- **Business Opportunity Award**: up to: (i) 100% of your estimated total loss from product sales; (ii) 50% of the price you paid for Qualified Products (*see* SECTION V); or (iii) $20.

To determine your eligibility for these benefits, complete the applicable section(s) of this Claim Form, sign and date it, and mail it, postmarked no later than the Filing Deadline, to:

Claims Administrator
Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

It is important that all of the information you provide in this Claim Form is true, accurate, and complete.  You may be required to provide documentation supporting the answers you have provided.  Persons who submit false or fraudulent claims will not be eligible for compensation.

**Note:** *You may elect to be excluded from the monetary portion of the Settlement by submitting an Opt-Out Form (available on the Claims Administrator's website) or sending a letter asking to be excluded on or before  [DATE].  See the Class Notice for more details. If you elect to be excluded from the Settlement, you will not be eligible to receive any monetary benefits under the Settlement.*

## SECTION II:  DISTRIBUTOR/MEMBER INFORMATION

*All Claimants must provide the following identifying information:*

**Name:** _____

**Address:** _____

**City:** _____

1

**State:** _____

**Zip Code:** _____

**Phone Number:** _____

**E-mail:** _____

**Herbalife ID Number:** _____

## SECTION III:  CLAIM ELIGIBILITY

*To be eligible for any Claim, you must certify that you meet the following eligibility requirements.  If you do not meet all of the following requirements, you are not eligible to make a Claim.*

| | |
|---|---|
| _____ | By initialing here, I certify under penalty of perjury that I was an Herbalife Distributor or Member in the United States for some period of time during the period from April 2009 to the present. |
| _____ | By initialing here, I certify under penalty of perjury that I am not an employee or immediate family member of an employee of Herbalife. |
| _____ | By initialing here, I certify under penalty of perjury that I was never a member of the Herbalife President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or the GET Team. |
| _____ | By initialing here, I certify under penalty of perjury that I did not sign an Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement dated on or after September 2013. |

## SECTION III:  PRODUCT RETURN CLAIMS

*You may use this section to submit a Claim for a Product Return Payment in exchange for return of unused and unopened Herbalife products, excluding International Business Packs (IBPs) and mini-IBPs, purchased more than one year prior to the Filing Deadline.*

To determine your Product Return Payment amount, provide the following information in the table below for each unused and unopened Herbalife product that you wish to return:  (i) Herbalife Product Stock Keeping Unit ("Product SKU") number; (ii) the approximate date on which you purchased the product ("Purchase Date"); and (iii) the actual purchase price paid for the product ("Actual Purchase Price).  If you require additional space, please attach an addendum to this Claim Form providing the requested information for the additional Herbalife products that you wish to return.

If you are unable to provide the actual purchase price for a particular product, please provide an Estimated Purchase Price for that product.  Assuming all other information is provided for that item, the Claims Administrator will determine the amount paid to be the lesser of the estimated purchase price or 50% of Herbalife's Suggested Retail Price for the product on the Purchase Date.

| Product SKU | Purchase | Actual Purchase Price | Estimated Purchase Price |
|---|---|---|---|

2

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 71 of 194   Page ID
#:2988
Case 2:13-cv-02488-BRO-SH   Document 95-4   Filed 11/03/14   Page 4 of 12   Page ID #:2952

| | | Date | | |
|---|---|---|---|---|
| 1. | | | $ | $ |
| 2. | | | $ | $ |
| 3. | | | $ | $ |
| 4. | | | $ | $ |
| 5. | | | $ | $ |
| 6. | | | $ | $ |
| 7. | | | $ | $ |
| 8. | | | $ | $ |

| | |
|---|---|
| _____ | By initialing here, I certify under penalty of perjury that the products listed above are unopened and unused, and that they were purchased more than one year prior to the Filing Deadline. |
| _____ | By initialing here, I certify under penalty of perjury that for each Estimated Purchase Price provided above, I am unable to determine the Actual Purchase Price for that item. |

The Claims Administrator will determine the amount of the Product Return Payment for which you may be eligible based on the information you provide in the table above and the available settlement funds. Your Product Return Payment may be reduced based on the amount of funds available to satisfy all claims (see the Class Notice for more details). By [DATE], you may view the amount of the Product Return Payment for which you are eligible (subject to proper return of all identified products) by visiting the Claims Administrator Website at [Website URL] and providing your e-mail address and Herbalife Identification Number.

If the Settlement is approved by the Court, you will receive notice of the approval and will be provided with instructions on how to complete your Product Return Claim. At that time, you will be instructed to return within a specified time period the above-listed Herbalife products that you wish to return. Once Herbalife has processed your return, a Product Return Payment will be issued.

## SECTION V:  BUSINESS OPPORTUNITY CLAIMS

*You may use this section to submit claims for a cash award based on losses you claim to have incurred by purchasing Qualified Products while pursuing the Herbalife Business Opportunity.  You will receive a larger payment if you return a product by making a Product Return Claim than if you make a claim based on that purchase under this section.*

To be eligible for a Business Opportunity Claim, you must certify that you meet the following eligibility requirements.  If you do not meet one or more of the following requirements, you are not eligible to make a Business Opportunity Claim.

3

| | |
|---|---|
| _____ | By initialing here, I certify under penalty of perjury that I joined Herbalife primarily to pursue a business opportunity and not primarily for personal and/or family consumption. |
| _____ | By initialing here, I certify under penalty of perjury that, in pursuing the Herbalife business opportunity, I did not recover/earn back the amount of money I spent purchasing product directly from Herbalife for resale. |

Only purchases of Qualified Products are eligible for a Business Opportunity Claim. A Qualified Product is a Herbalife Product that:

- You purchased <u>directly</u> from Herbalife on or after April 1, 2009;

- Was purchased for <u>resale</u> purposes;

- Was purchased within the United States and <u>shipped directly to you</u> at a location in the United States;

- You <u>did not resell</u> for at least a break-even price;

- Was <u>not returned</u> through Herbalife's buyback program, Herbalife's satisfaction guarantee, or for which you have made or will make a Product Return Claim under the terms of this Settlement.

Please provide the Estimated Total Loss you incurred in selling Qualified Products in the space provided below. Your Estimated Total Loss is the difference between the total amount you paid to purchase Qualified Products and the total revenues that you received selling those products. Your estimate must be based on the best information available to you with which you can be reasonably certain of your claimed losses.

**Estimated Total Loss:** _____

| | |
|---|---|
| _____ | By initialing here, I certify under penalty of perjury that the Total Estimated Loss I have provided is a good faith estimate of the losses that I incurred in selling Qualified Products. |

Your Estimated Total Loss will be reviewed by the Claims Administrator using purchase history data provided by Herbalife to ensure that your Business Opportunity Claim Award does not exceed the limits provided under the Settlement Agreement. For an explanation of how your Business Opportunity Claim Award is determined, please refer to Section 9 of the Class Notice. Your Business Opportunity Claim Award may be reduced based on the amount of funds available to satisfy all claims (see the Class Notice for more details). By [DATE], you may view your Business Opportunity Claim Award by visiting the Claims Administrator Website at [Website URL] and providing your e-mail address and Herbalife Identification Number.

If the Settlement is approved by the Court, you will receive notice of the approval and your Business Opportunity Award will be issued unless you request to be excluded from the Settlement on or before [DATE].

4

**SECTION VI:  CERTIFICATION AND SIGNATURE**

*By signing this Claim Form, you acknowledge that the Claims Administrator may ask Herbalife to provide certain information related to your Herbalife Distributorship, including tax forms and other financial data, to verify your Claim.*

I certify under penalty of perjury that the information contained in this Claim Form is true and correct to the best of my knowledge and belief.

**Signature:** _____    **Date:** _____

**Print Name:** _____

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## DISTRITO CENTRAL DE CALIFORNIA

*Dana Bostick, et al. v. Herbalife International of America Inc. et al.*
Caso n.° 13-CV-02488-BRO

### FORMULARIO DE RECLAMACIÓN

**Fecha límite de entrega: [FECHA] (la "Fecha límite de entrega")**

## SECCIÓN I: INSTRUCCIONES GENERALES

Si usted fue distribuidor o miembro de Herbalife en los Estados Unidos en cualquier momento después de abril de 2009, puede ser elegible para recibir los siguientes beneficios en virtud del Acuerdo de conciliación (la "Conciliación"):

- **Indemnización de devolución de productos**: hasta un 100 % de reembolso en intercambio por la devolución de productos no usados ni abiertos (excepto Paquetes Comerciales Internacionales (International Business Packs) o Minipaquetes Comerciales Internacionales (Mini-International Business Packs) *(consulte la* SECCIÓN IV); y

- **Indemnización de oportunidad de negocio**: de hasta: (i) 100 % de su pérdida total estimada de las ventas de productos; (ii) 50 % del precio que usted pagó por Productos aceptables (*véase* SECCIÓN V); o (iii) 20 USD.

Para determinar su elegibilidad para estos beneficios, complete la(s) sección(es) correspondiente(s) de este Formulario de reclamación, fírmelo, féchelo y envíelo por correo postal con fecha de franqueo de a más tardar la Fecha límite de entrega, a:

Claims Administrator (Administrador de reclamaciones)
Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

Es importante que toda la información que usted suministre en este Formulario de reclamación sea veraz, precisa y completa. Es posible que se le solicite proveer documentación que respalde las respuestas que usted haya suministrado. Las personas que presenten reclamaciones falsas o fraudulentas no serán elegibles para compensación.

**Nota:** *Puede optar por ser excluido de la porción monetaria de la Conciliación enviando un Formulario de exclusión (que está disponible en el sitio web del Administrador de reclamaciones) o una carta en la que solicite ser excluido a más tardar el [FECHA]. Véase la Notificación del Grupo de demandantes para conocer más detalles. Si usted opta por ser excluido de la Conciliación, no será elegible para recibir ningún beneficio monetario en virtud de la Conciliación.*

## SECCIÓN II: INFORMACIÓN DEL DISTRIBUIDOR/MIEMBRO

*Todos los reclamantes deben presentar la siguiente información de identificación:*

1

Case 2:18-cv-07480-JAK-MRW   Document 142-4   Filed 09/28/18   Page 76 of 194   Page ID
#:2993
Case 2:13-cv-02488-BRO-SH   Document 95-4   Filed 11/03/14   Page 9 of 12   Page ID #:2957

Nombre: _____

Dirección: _____

Ciudad:

Estado: _____

Código postal: _____

Número de teléfono: _____

Correo electrónico:

Número de ID de Herbalife:

## SECCIÓN III: ELEGIBILIDAD DE RECLAMACIONES

*Para ser elegible para cualquier Reclamación, debe certificar que usted cumple los siguientes requerimientos de elegibilidad. Si no cumple todos los siguientes requerimientos, no es elegible para hacer una Reclamación.*

| | |
|---|---|
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que fui distribuidor o miembro de Herbalife en los Estados Unidos por algún periodo de tiempo durante el periodo comprendido entre abril de 2009 hasta el presente. |
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que no soy empleado ni miembro familiar inmediato de un empleado de Herbalife. |
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que nunca fui miembro del President's Team (Equipo de Presidente), Founder's Circle (Círculo del Fundador), Chairman's Club (Club del Presidente), Millionaire Team (Equipo Millonario), o el GET Team (Equipo GET) de Herbalife. |
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que no firmé un Acuerdo de arbitraje para disputas entre miembros y Herbalife contenido en el Acuerdo de solicitud de membrecía fechado en o después de septiembre de 2013. |

## SECCIÓN III: RECLAMACIONES DE DEVOLUCIÓN DE PRODUCTOS

*Puede usar esta sección para presentar una Reclamación para un Pago de devolución de productos en intercambio por devolución de productos no usados ni abiertos, excluidos los Paquetes Comerciales Internacionales (International Business Packs) o Minipaquetes Comerciales Internacionales (Mini-International Business Packs) comprados con más de un año de antelación a la Fecha límite de entrega.*

Para determinar su monto de Pago de devolución de productos, provea la siguiente información en el cuadro a continuación para cada producto Herbalife no usado ni abierto que usted desee devolver: (i) número de referencia (Stock Keeping Unit, SKU) del producto Herbalife ("SKU del producto"); (ii) la fecha aproximada en que compró el producto ("Fecha de compra"); y (iii) el precio de compra real pagado por el producto ("Precio de compra real"). Si usted necesita espacio adicional, sírvase adjuntar una adenda a este Formulario de reclamación en la que indique la información solicitada para los productos Herbalife adicionales que usted desee regresar.

2

Si no está en capacidad de proveer el precio de compra real para un producto particular, sírvase proveer un Precio de compra estimado para ese producto. Asumiendo que se suministra toda la otra información para ese artículo, el Administrador de reclamaciones determinará que el monto pagado será el precio de compra estimado o un 50 % del Precio sugerido de venta al público de Herbalife para el producto en la Fecha de compra, el monto que sea menor.

| N.º de referencia del producto (SKU) | Fecha de compra | Precio real de compra | Precio estimado de compra |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| | |
|---|---|
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que los productos antes indicados no han sido abiertos ni usados, y que fueron comprados con más de un año de antelación a la Fecha límite de entrega. |
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que para cada Precio de compra estimado indicado anteriormente, no estoy en capacidad de determinar el Precio de compra real para ese artículo. |

El Administrador de reclamaciones determinará el monto del pago de devolución del producto para el que usted pueda ser elegible con base en la información que usted provea en el cuadro anterior y los fondos de conciliación disponibles. Su Pago de devolución de producto puede reducirse con base en la cantidad de fondos disponibles para atender todas las reclamaciones (consulte la Notificación del Grupo de demandantes para obtener más detalles). Para el [FECHA], usted puede visualizar el monto del Pago de devolución de producto para el que usted sea elegible (a reserva de una devolución adecuada de todos los productos identificados) visitando el Sitio web del Administrador de reclamaciones en [URL del sitio web] y suministrando su dirección de correo electrónico y el Número de identificación de Herbalife.

Si la Conciliación es aprobada por el Tribunal, usted recibirá notificación de la aprobación y recibirá instrucciones sobre cómo completar su Reclamación de devolución de productos. En ese momento, se le ordenará devolver dentro de un periodo de tiempo determinado los productos Herbalife antes indicados que desee devolver. Luego de que Herbalife haya procesado su devolución, se emitirá un Pago de devolución de producto.

**SECCIÓN V: RECLAMACIONES DE OPORTUNIDAD DE NEGOCIO**

3

*Usted puede usar esta sección para presentar reclamaciones para una indemnización en efectivo con base en las pérdidas que usted reclame haber sufrido por la compra de Productos aceptables mientras se dedicaba a la Oportunidad de negocio de Herbalife. Recibirá un pago más alto si devuelve un producto haciendo una Reclamación de devolución de producto que si hace una reclamación con base en esa compra en virtud de esta sección.*

Para poder presentar una Reclamación de oportunidad de negocio y que esta sea aceptada, debe certificar que cumple los siguientes requerimientos de elegibilidad. Si no cumple uno o más de los siguientes requerimientos, no es elegible para hacer una Reclamación de oportunidad de negocio.

| | |
|---|---|
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que me adherí a Herbalife principalmente para dedicarme a una oportunidad de negocio y no con el motivo principal de consumo personal y/o familiar. |
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que, al dedicarme a la oportunidad de negocio de Herbalife, no recuperé/gané de vuelta el monto de dinero que gasté al comprar el producto directamente de Herbalife para reventa. |

Solo las compras de Productos aceptables son elegibles para una Reclamación de oportunidad de negocio. Un Producto aceptable es un Producto de Herbalife que:

- usted compró <u>directamente</u> de Herbalife en o después del 1 abril de 2009;

- haya sido comprado con propósito de <u>reventa</u>;

- haya sido comprado dentro de los Estados Unidos y haya sido <u>enviado directamente a usted</u> en un lugar en los Estados Unidos;

- usted <u>no haya vendido</u> por mínimo el precio de compra;

- no <u>haya sido devuelto</u> a través del programa de recompra de Herbalife, garantía de satisfacción de Herbalife, o para el que usted haya hecho o hará una Reclamación de devolución de producto en virtud de los términos de esta Conciliación.

Sírvase indicar la Pérdida total estimada que usted haya asumido al vender los Productos aceptables en el espacio que se provee a continuación. Su Pérdida total estimada es la diferencia entre el monto total que usted pagó para Productos aceptables y los ingresos totales que usted recibió de la venta de dichos productos. Su estimado debe basarse en la mejor información de la que usted disponga con la que usted pueda estar razonablemente seguro de sus pérdidas reclamadas.

**Pérdida total estimada:** _____

| | |
|---|---|
| _____ | Al poner mis iniciales aquí, certifico bajo pena de perjurio que la Pérdida estimada total que he indicado es un estimado de buena fe de las pérdidas en que he incurrido al vender los Productos aceptables. |

4

Su Pérdida total estimada será revisada por el Administrador de reclamaciones usando los datos de historial de compras suministrado por Herbalife para asegurar que su Indemnización de reclamaciones de oportunidad de negocio no excede los límites establecidos en virtud del Acuerdo de conciliación. Para obtener una explicación de cómo se determina su Indemnización de reclamación de oportunidad de negocio, sírvase consultar Sección 9 de la Notificación del Grupo de demandantes. Su Indemnización por Reclamación de oportunidad de negocio puede reducirse con base en la cantidad de fondos disponibles para atender todas las reclamaciones (consulte la Notificación del Grupo de demandantes para obtener más detalles). Para el [FECHA], puede consultar su Indemnización de reclamación de oportunidad de negocio visitando el Sitio web del Administrador de reclamaciones en la dirección [URL del sitio web] y suministrando su dirección de correo electrónico y el Número de identificación de Herbalife.

Si la Conciliación es aprobada por el Tribunal, recibirá la notificación de la aprobación y se emitirá su Indemnización de oportunidad de negocio a menos que usted solicite ser excluido de la Conciliación a más tardar el [120 días después de la Fecha límite de entrega].

## SECCIÓN VI: CERTIFICACIÓN Y FIRMA

*Al firmar este Formulario de reclamación, usted reconoce que el Administrador de reclamaciones puede solicitar a Herbalife que provea cierta información relacionada con su Distribución de Herbalife, lo que incluye formularios de impuestos y otros datos financieros, para verificar su Reclamación.*

Certifico bajo pena de perjurio que la información contenida en este Formulario de reclamación es veraz y correcta a mi leal saber y entender.

**Firma: _____**                    **Fecha:**

**Nombre en letra de imprenta:**

# EXHIBIT 5

# OPT-OUT FORM

*Dana Bostick, et al. v. Herbalife International of America, Inc. et al.*
United States District Court, Central District of California, Western Division
Case No. 2-13- CV-02488-BRO-RZ

**This is NOT a Claim Form. It EXCLUDES you from the monetary portion of this Class Action.**
**DO NOT use this Form if you wish to remain IN this Class Action.**

Name of Class Member: _____

Address: _____
          Street                      City           State        Postal Code

Telephone: _____
            Area Code/Phone No. (Ext. if applicable)

*I understand that by opting out of this Class Action, I will not be eligible to receive any money that may result from any trial or settlement of this lawsuit, if there is one. I do not wish to receive monetary compensation under the terms of any judgment or settlement or to otherwise participate in the monetary portion of this Class Action. I further understand that by opting out, all personal representatives, spouses and relatives who on account of a personal relationship to me might assert a derivative claim for money will be deemed to have opted out as well.*

If you wish to opt out of the monetary portion of this Class Action, please check the box below.

☐     By checking this box, I affirm that I wish to be excluded from the monetary portion of this Class Action.

_____      _____
Date Signed           Signature of Class Member or Executor, Administrator or Personal
                      Representative

**This form must be postmarked to the Claims Administrator NO LATER THAN _____ __, 201__,**
**at the addresses below, or else you will lose your right to opt out.**

**CLAIMS ADMINISTRATOR**

Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

# FORMULARIO DE EXCLUSIÓN

*Dana Bostick, et al. v. Herbalife International of America, Inc. et al.*
Tribunal de Distrito de los Estados Unidos, Distrito Central de California, División Oeste
Caso n.° 2-13- CV-02488-BRO-RZ

**Este NO es un formulario de reclamación. Este formulario lo EXCLUYE a usted de la porción monetaria de esta Demanda colectiva.**
**NO use este Formulario si desea permanecer EN esta Demanda colectiva.**

Nombre del miembro del Grupo de demandantes:
_____

Dirección: _____
　　　　　　Calle　　　　　　　　　　　Ciudad　　　　　　Estado　　　Código postal

Teléfono: _____
　　　　　Código de área/n.° de teléfono (ext. si corresponde)

*Comprendo que al excluirme de esta Demanda colectiva, no seré elegible para recibir ningún dinero que pueda resultar de cualquier juicio o conciliación de esta demanda, si es que surge alguno. No deseo recibir compensación monetaria en virtud de las disposiciones de cualquier sentencia o conciliación ni participar de alguna otra forma en la porción monetaria de esta Demanda colectiva. Asimismo, comprendo que al excluirme, se considerará que también se han excluido todos los representantes personales, cónyuges y familiares que por motivo de una relación personal conmigo puedan entablar una reclamación derivada de dinero.*

Si usted desea excluirse de la porción monetaria de esta Demanda colectiva, marque la siguiente casilla.

☐　　Al marcar esta casilla, afirmo que deseo ser excluido de la porción monetaria de esta Demanda colectiva.

_____　　_____
Fecha de la firma　　Firma del miembro del Grupo de Demandantes o albacea, administrador o
　　　　　　　　　　representante personal

**Este formulario debe ser enviado al Administrador de reclamaciones con sello postal fechado A MÁS TARDAR EL ____ de _____ de 201_____, en la siguiente dirección, o de lo contrario usted perderá su derecho a excluirse.**

**CLAIMS ADMINISTRATOR (ADMINISTRADOR DE RECLAMACIONES)**

Bostick v. Herbalife Settlement Administrator
P.O. Box xxxx
Providence, RI 02940

# EXHIBIT 6



## *Bostick v Herbalife* Case No. 13-cv-02488-PA (RZx)
### Settlement Notice Program

### Case Analysis

The following known factors were considered when determining our recommendation:

1. The Class consists of approximately 1.55 million Class members;
2. Class members are located throughout the U.S., including large cities and rural areas;
3. Contact information is available for all Class members; and
4. Effective reach and notice content is vital to convey the importance of the information affecting Class members' rights, as well as to withstand challenge and collateral review.

### Objective

To design a notice program that will effectively reach Class members.

### Target Audience

Class members include all persons who were Herbalife independent distributors from April 2009 to the present.

### Notice Tactics

The following notice tactics will be employed to best reach the Class:

1. **Individual Emails:** An Email Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website will be sent to all available email addresses. It is our understanding that email addresses are available for approximately 1,260,000 Class members. Class members whose emails bounce back or are otherwise undeliverable will be mailed a single-postcard Summary Notice via first class mail to their corresponding postal address.

2. **Individual Mailings:** A single-postcard Summary Notice will be sent via first class mail to all known Class members for whom a postal address is available, as well as to Class members subject to an email bounceback.

   Prior to mailing, the names and addresses will be:
   - Checked against the USPS National Change of Address (NCOA)[1] database;
   - Certified via the Coding Accuracy Support System (CASS);[2] and
   - Verified through Delivery Point Validation (DPV).[3]

   Notices returned as undeliverable will be re-mailed to any address available through postal service information. For example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but is still within the period that the USPS

---

[1] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[2] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[3] Records that are ZIP + 4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses, and reports exactly what is wrong with incorrect addresses.



returns the piece with the new address indicated. Any returned mailing that does not contain an expired forwarding order with a new address indicated may be researched through a third party look-up service, if applicable.

## Plan Delivery

The individual notice effort will reach over 95% of the Class.

## Additional Information

KCC advocates the utilization of a website and toll-free number to allow the Class verifiable opportunities to solicit information and communicate about the case.

1. **Case Website:** An informational website with an easy to remember domain name will be established, allowing Class members the ability to obtain additional information and documents about the settlement. The website address will be prominently displayed in all printed notice materials and will be accessible through an embedded link in the email Notice.

2. **Toll-Free Number:** A toll-free number allows a simple way for Class members to learn more about the settlement in the form of frequently asked questions and answers and to request to have more information mailed directly to them. The toll-free number will be prominently displayed in all notice materials.

**Karen M. Minutelli**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, November 03, 2014 10:36 AM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:13-cv-02488-BRO-SH Dana Bostick v. Herbalife International of America Inc et al Stipulation for Settlement |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA**

### Notice of Electronic Filing

The following transaction was entered by Petersen, Scott on 11/3/2014 at 10:36 AM PST and filed on 11/3/2014

| | |
|---|---|
| **Case Name:** | Dana Bostick v. Herbalife International of America Inc et al |
| **Case Number:** | 2:13-cv-02488-BRO-SH |
| **Filer:** | Dana Bostick |
| | Chester Cote |
| | Beverly Molnar |
| | Judi Trotter |
| | Anita Vasko |

**Document Number:** 95

**Docket Text:**
**STIPULATION for Settlement filed by Plaintiffs Dana Bostick, Chester Cote, Beverly Molnar, Judi Trotter, Anita Vasko. (Attachments: # (1) Exhibit 1-Proposed Class Notice, # (2) Exhibit 2-Proposed Summary Notice, # (3) Exhibit 3-Claims Protocol, # (4) Exhibit 4-Proposed Claim Form, # (5) Exhibit 5-Proposed Opt-Out Form, # (6) Exhibit 6-Claims Administrator Notice Program)(Petersen, Scott)**

**2:13-cv-02488-BRO-SH Notice has been electronically mailed to:**

A Howard Matz   ahm@birdmarella.com, dh@birdmarella.com, krw@birdmarella.com, mwm@birdmarella.com

Aaron Lee Arndt   aarndt@foleybezek.com

David L Zifkin   dzifkin@bsfllp.com, dmcknight@bsfllp.com, ecolle@BSFLLP.com, Lcajigas@bsfllp.com, tsparks@bsfllp.com

Gopi K Panchapakesan    gkp@birdmarella.com, kmm@birdmarella.com

Jason W Hardin    jhardin@fabianlaw.com

Jonathan Sherman    jsherman@bsfllp.com

Jonathan David Schiller    jschiller@bsfllp.com

Joseph F Kroetsch    jkroetsch@bsfllp.com

Justin P Karczag    jkarczag@foleybezek.com, cwalker@foleybezek.com, ehuffman@foleybezek.com

Kevin D Gamarnik    kgamarnik@foleybezek.com

Mark T Drooks    mtd@birdmarella.com, lak@birdmarella.com

Mitchell A Kamin    mak@birdmarella.com, lak@birdmarella.com

Philip D Dracht    pdracht@fabianlaw.com, aclark@fabianlaw.com, smcnett@fabianlaw.com

Robert Allen Curtis    rcurtis@foleybezek.com, cconnors@foleybezek.com, jkassity@foleybezek.com

Scott M Petersen    spetersen@fabianlaw.com, smcnett@fabianlaw.com

Thomas Foley    tfoley@foleybezek.com, aarndt@foleybezek.com, cconnors@foleybezek.com

William S Ohlemeyer    wohlemeyer@bsfllp.com

**2:13-cv-02488-BRO-SH Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Bostick-Herbalife Stipulated Settlement Agreement.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-0
] [8c89d0cd7be91ec84b2fd756496a392a0c70924bc80c154556760be7cb18b978a66
f225e2fd825e43aee62f34181beb7b9c6d5ff10127d87d44f06119252550e]]
**Document description:**Exhibit 1-Proposed Class Notice
**Original filename:**C:\fakepath\Exh 1-Proposed Class Notice.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-1
] [7e93da3b6bb4c5a9ed6e81c77b0c93d123f3f4f91466ecbc8b08126f779d8cb8e0e
288de2d99a28a4a7e902193576feffb756c6095d0aa4ca1a0ba7dd33459a1]]
**Document description:**Exhibit 2-Proposed Summary Notice
**Original filename:**C:\fakepath\Exh 2-Proposed Summary Notice.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-2
] [79a6c82231f6e205f2289907e1ffaf01c097441c3a077e38bf2a688e1d9cea695c7

90468f5778b8898a4ee7f4002e8b8185fcafd2fa4fd676df21e4f91a8dc8b]]

**Document description:**Exhibit 3-Claims Protocol

**Original filename:**C:\fakepath\Exh 3-Claims Protocol.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-3] [92262f3f963a0e552ea6b79e3138a4c95b3763b39aaae1b0c3d0d0c57308fe51236b6a18cde3de35b86248bbf7d50632f759c46f203dcc58f3fd74c940823113]]

**Document description:**Exhibit 4-Proposed Claim Form

**Original filename:**C:\fakepath\Exh 4-Proposed Claim Form.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-4] [5f3e2e234386e68d9c20fb5a7b125c6999627328583c4dc7a996247ad70d16ddea67ef8050f1386f451e361af01852fa2feca7f8219de2a7f5448d4a0f9418e4]]

**Document description:**Exhibit 5-Proposed Opt-Out Form

**Original filename:**C:\fakepath\Exh 5-Proposed Opt-Out Form.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-5] [9bcc8e8c50fe6470f8a96cce2655a9d684ff8235ad87925f6b088e0ada8f043682dcdc1b0486ef28629af5bd7bc661d990b07b7ac2a58a7f3c5d855d77fde0df]]

**Document description:**Exhibit 6-Claims Administrator Notice Program

**Original filename:**C:\fakepath\Exh 6-Claims Admin Notice Program.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=11/3/2014] [FileNumber=18421089-6] [43e4845d3ce6bae355ffe6b8a0b9ad34eaca6393264c022acf7ee94d633570ee124c000b6169812e467c4091afdc7236541fd7c7250444d5e4599891632939d4]]

# Exhibit 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:**    (IN CHAMBERS)
ORDER RE: (1) PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, TO INCREASE THE AWARDS TO BUSINESS OPPORTUNITY CLAIMAINTS, AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES [110, 125, 129]; (2) DEFENDANTS' MOTION FOR JOINDER [131]; AND (3) AMICI'S MOTIONS FOR LEAVE TO FILE AMICUS CURIAE BRIEFS [114, 117]

# I.    INTRODUCTION

Pending before the Court are six separate motions related to the proposed settlement of this class action.  Plaintiff Dana Bostick, on behalf of himself and a class of others similarly situated (collectively, "Plaintiffs"), have filed a Motion for Final Approval of Class Action Settlement, a Motion to Increase the Awards to Business Opportunity Claimants, and a Motion for Attorneys' Fees and Expenses.[1]  (Dkt. Nos. 110, 125, 129.)  Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife") have joined the Motion for Final Approval on the basis that the proposed class settlement is fair, adequate, and reasonable.  (Dkt. No. 131.)  Two non-party entities have filed Motions for Leave to file amicus curiae briefs in opposition to the proposed class settlement.  (Dkt. Nos. 114, 117.)

---

[1] The Court will refer to these motions as "Motion for Final Approval," "Motion to Increase Awards," and "Motion for Fees," respectively.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

  The Court held a final fairness hearing on these matters on May 11, 2015. After considering the papers filed in connection with the instant motions, the arguments advanced at the hearing, and the entirety of the record, the Court finds that the proposed settlement is fair, adequate, and reasonable within the meaning of Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiffs' Motion for Final Approval and Motion to Increase Awards are **GRANTED in full**. The Court also finds that an award of attorneys' fees equal to 28% of the total settlement fund, rather than class counsel's request for 30%, will provide adequate compensation and accordingly **GRANTS in part** Plaintiffs' Motion for Fees. In deciding these motions, the Court has considered Herbalife's joinder and amici's requests for leave. These motions are therefore **GRANTED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Instant Dispute and Plaintiffs' Allegations

  Plaintiff Dana Bostick ("Mr. Bostick"), an individual residing in California, initiated this lawsuit against Herbalife on behalf of himself and a putative class of individuals injured by what Plaintiffs believe to be a large pyramid scheme, pursuant to which Herbalife systematically rewards recruiting new product distributors over actual retail sales. (First Am. Compl. ("FAC") ¶¶ 3–6.) Plaintiffs bring this action on behalf of all persons who were Herbalife distributors from April 2009 until the present. (FAC ¶ 5.) An individual may become a distributor, or in other words a vendor of Herbalife products, by recruiting an existing product distributor to serve as his or her "sponsor" and purchasing an Herbalife International Business Pack ("IBP") for $95.95 or a mini International Business Pack ("Mini-IBP") for $57.75. (FAC ¶ 30.)

  Herbalife is a multi-level marketing and distribution system, which relies on individual distributors to market, promote, sell, and distribute its products. (FAC ¶ 28.) Herbalife recruits potential distributors by promising the chance to earn a "substantial and ongoing income" based upon immediate, daily profit while also providing an opportunity to take charge of one's life by being one's own boss. (FAC ¶¶ 31–33.) Herbalife promotes itself through a magazine titled "*Live The Good Life! Herbalife*," a website, training programs, and videos. (FAC ¶¶ 39–45.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Herbalife is comprised of a hierarchy of distributors, with the various levels determining each participant's eligibility for discounted Herbalife products and other benefits. (*See* FAC ¶¶ 83–151). This hierarchy is comprised of eleven levels of distributors, starting at the Distributor rank and ending at the Founder's Circle rank. (FAC ¶ 83.) All new distributors join a line of sponsorship traced "upline" to the highest level of the Herbalife hierarchy. (FAC ¶ 84.) Junior (or "downline") distributors purchase Herbalife products from "upline" (or more senior) distributors, or from Herbalife directly; Herbalife then pays bonuses to upline distributors based upon purchases by downline distributors. (FAC ¶ 85.) A distributor may move upline and qualify for higher levels of compensation by achieving a certain volume of Herbalife product during a particular time period. (FAC ¶¶ 87, 90.) Volumes are calculated on a monthly basis, and a distributor's volume is based upon his or her own purchases of Herbalife product, as well as the purchases of his or her downstream. (FAC ¶¶ 87–90.)

Distributors, as the lowest rung of the Herbalife hierarchy, may purchase products at a 25% discount from the suggested retail price of goods. (FAC ¶¶ 91–92.) For every one dollar that a distributor spends on Herbalife products, $0.64 goes upline. (FAC ¶ 93.) The fifth rung in the hierarchy, called a supervisor, classifies a distributor as a Sales Leader, and allows an individual to purchase Herbalife products at a 50% discount. (FAC ¶ 119.) There are a number of ways to become a supervisor, (*see* FAC ¶¶ 109–112), and a distributor can do so without personally purchasing or reselling any Herbalife products, (FAC ¶¶ 113–114.)

A supervisor receives an additional benefit by becoming eligible for "Royalty Overrides," which are a commission based upon other downline supervisors' volume. (FAC ¶¶ 122–123.) To qualify for Royalty Overrides, a supervisor must comply with both the "10-Retail Customer Rule" and the "70% Rule." (FAC ¶ 125.) These rules require a supervisor to personally sell Herbalife products to at least ten separate retail customers; additionally, at least 70% of the total value of Herbalife products that the supervisor purchases must be sold or consumed within that month. (FAC ¶ 125.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Distributors may return products purchased from Herbalife within twelve months of the purchase date. (FAC ¶ 231.) To do so, however, a distributor must comply with certain provisions, including resigning and effectively forfeiting his or her downstream. (FAC ¶ 231.a.) Additionally, distributors may not return any products purchased from an upline supervisor. (FAC ¶ 232.)

**B. Mr. Bostick's Participation**

Mr. Bostick became an Herbalife distributor in April 2012. (FAC ¶¶ 6, 38, 46.) Over a four month period, Mr. Bostick placed eight orders for Herbalife products. (FAC ¶ 48.)[2] Although Plaintiff worked hard to build his business, (*see* FAC ¶¶ 47, 49, 50), he recruited only one person—his lifelong friend, (FAC ¶ 47). Mr. Bostick believes his attempts to sell products to wholesalers were unsuccessful because he had to sell at nearly full retail value to make a profit—an unappealing rate compared to prices offered by higher upline distributors and other online sources. (FAC ¶ 50.) Mr. Bostick contends that he cannot make a profit selling Herbalife products because the company's system of graduated discounts means that those participants purchasing Herbalife products at a 25% discount must compete with those purchasing products at a 50% discount. (FAC ¶ 157.) Further, Mr. Bostick believes the Herbalife structure systematically rewards recruiting other distributors over retail sales. (FAC ¶ 3.)

Dissatisfied with Herbalife's structure and misrepresentations regarding the chance to generate meaningful income, Mr. Bostick filed a Complaint on April 8, 2013. (Dkt. No. 1.) On July 7, 2014, Plaintiffs filed the First Amended Complaint.[3] (Dkt. No. 78.) Plaintiffs bring claims under California's Endless Chain Scheme Law, Cal. Penal Code § 327 and Cal. Civ. Code § 1689.2; California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* Plaintiffs' first claim under the Endless Chain Scheme Law seeks rescission, restitution, compensatory damages, and consequential

---

[2] Plaintiff placed these orders on April 6, 2012; April 26, 2012; May 21, 2012; June 18, 2012; June 19, 2012; June 22, 2012; June 27, 2012; and July 20, 2012. (FAC ¶ 48.)

[3] The First Amended Complaint adds Anita Vasko ("Ms. Vasko"), Judy Trotter ("Ms. Trotter"), Beverly Molnar ("Ms. Molnar"), and Chester Cote ("Mr. Cote") as named plaintiffs. (*See generally* FAC.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

damages for Herbalife's operation of an alleged pyramid scheme. (FAC ¶¶ 255–58.) Plaintiffs' UCL claim is predicated upon Herbalife's allegedly fraudulent and misleading representations regarding the chance of success and product packaging and handling and freight fees. (FAC ¶¶ 260–315.) Plaintiffs seek an injunction prohibiting Herbalife from continuing to engage in these allegedly unlawful and fraudulent business practices. Plaintiffs' final claim for violations of the FAL is predicated upon the same allegedly unlawful and fraudulent practices and seeks similar injunctive relief. (FAC ¶¶ 316–27.)

### C. The Proceedings Leading to the Settlement Agreement

On December 9, 2013, the Court ordered the parties to attend a mandatory private mediation session. (Dkt. No. 52.) Beginning in February 2014, the parties began a three-step mediation process involving significant discovery, the exchange of multiple mediation briefs, and various bilateral discussions regarding the strengths and weaknesses of Plaintiffs' case. (*See* Mot. for Preliminary Approval at 5.)[4] All together, the parties attended six separate mediation sessions. (*Id.*) The parties also engaged in numerous direct settlement negotiations, including three in-person meetings and various telephone conferences. (*Id.*) These efforts ultimately culminated in the October 31, 2014 joint stipulated Settlement Agreement, for which the parties now seek final approval.

### D. The Terms of the Settlement Agreement

The Settlement Agreement provides two separate forms of class economic relief, as well as non-monetary relief in the form of thirteen corporate reforms. The relevant provisions are set forth in further detail below. Class members may request exclusion from the monetary portion of the proposed settlement by submitting a valid opt-out form.

---

[4] A copy of Plaintiffs' Motion for Preliminary Class Action Settlement Approval is available at Docket No. 94, and the supporting documentation is available at Docket Nos. 95 to 98.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

### 1. The Business Opportunity Settlement Fund

The first form of economic relief consists of a $15 million cash settlement fund to compensate "Business Opportunity Claimants," meaning those individuals who (1) joined Herbalife primarily to pursue a business opportunity (as opposed to joining primarily for personal or family consumption), and (2) lost money in pursuing that opportunity. (*See* Settlement Agreement ¶ 4.1.)[5] The fund is non-reversionary. (*Id.*) The net settlement fund available for distribution among the Business Opportunity Claimants will be calculated by deducting the class settlement notice and administration costs, class counsel's attorneys' fees and expenses, and the named plaintiffs' service awards. (*Id.*) Up to an additional $2.5 million may also be deducted if necessary to compensate class members who submit valid claims for product returns.[6] (*Id.*) In the event any amount of the net settlement fund remains after distributing payments to the Business Opportunity Claimants, the remainder shall be distributed to the Consumer Federation of America under the *cy pres* doctrine. (*Id.*)

Business Opportunity Claimants may submit claims for products they purchased for resale purposes and not for personal consumption and which they did not sell for the cost of purchase or return through either Herbalife's buyback program or the product return fund portion of the settlement detailed below. (*Id.* ¶ 4.4.1.) To be eligible for a settlement payment, claimants must also certify under penalty of perjury that they: (1) joined Herbalife primarily to pursue a business opportunity; (2) lost money; and (3) never exceeded a certain level in the hierarchy. (*Id.* ¶ 4.4.2.) Claimants must also certify, to the best of their knowledge, the actual loss they sustained. (*Id.*)

Business opportunity claims will be calculated under one of two methods of payment depending on how much product the claimant purchased from Herbalife. Those claimants who purchased at least $750 worth of product within a claim year[7] will qualify

---

[5] A copy of the Settlement Agreement is available at Docket No. 95.
[6] The Settlement Agreement also provides for a separate product return fund to be exhausted before deducting any portion of the $15 million business opportunity fund. *See infra* Part II.D.2.

[7] A "claim year" is defined as any twelve-month period beginning on the later of the first day a claimant became a distributor or the beginning of the class period. (Settlement Agreement ¶ 4.4.4.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

for a pro rata award. (*Id.* ¶ 4.4.4.) Those claimants who did not purchase at least $750 within a claim year will receive a flat rate award. (*Id.*)

Under the proposed Settlement Agreement, pro rata awards will be equal to the lesser of 100% of the claimant's estimated total loss or 50% of the price the claimant paid for the products. (*Id.* ¶ 4.4.5.) The agreement provides, however, that if the sum of all claimed pro rata awards is less than 75% of the net business opportunity fund less the aggregate flat rate awards, either party may move to increase the pro rata awards to 75% of the price each claimant paid for the products. (*Id.*) Plaintiffs have requested this increase in connection with their Motion for Final Approval. (*See* Dkt. No. 125.)

Flat rate claimants are entitled to a $20 award from the net settlement fund. (Settlement Agreement ¶ 4.4.6.) If the total flat rate awards exceed $3 million, each claimant's payment will be reduced on a pro rata basis. (*Id.*) If the total flat rate awards are less than $3 million, the difference will remain in the net business opportunity fund for distribution to the pro rata Business Opportunity Claimants. (*Id.*)

## 2. The Product Return Fund

The Settlement Agreement also provides for a separate product return fund of $2.5 million. (*Id.* ¶ 4.2.) This fund will compensate class members who submit valid claims for product returns, called "Product Return Claimants. (*Id.*) To submit such a claim and be eligible for a payment from the product return fund, a class member must return unopened and unused Herbalife products, excluding IBPs and Mini-IBPs, to the company. (*Id.* ¶ 4.3.) The cost of return shipping will be paid by the product return fund. (*Id.* ¶ 4.2.) Because Herbalife already permits distributors to return unopened and unused products within one year, class members may only submit product return claims for unopened and unused products that were purchased more than one year before the deadline for submitting claims forms. (*Id.* ¶ 4.3.) In the event any portion of the product return fund remains after compensating all Product Return Claimants, the remainder shall be returned to Herbalife. (*Id.* ¶ 4.2.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

To submit a product return claim, a class member must identify: (1) the product SKU; (2) the approximate purchase date; and (3) the actual amount he or she paid for the product, or a certified estimate if the member does not know the actual amount. (*Id.* ¶ 4.3.1.) Each Product Return Claimant is entitled to the lesser of (1) the actual or estimated amount he or she paid, or (2) 50% of the product's suggested retail price at the time of purchase. (*Id.*) If the total value of the Product Return Claimants' claims exceed the sum of the $2.5 million product return fund and the $2.5 million portion of the net business opportunity fund available for product returns, each claimant's award will be reduced on a pro rata basis. (*Id.* ¶ 4.3.2.) The claims administrator will post each claimant's estimated return payment on its website so that each Product Return Claimant can see the return to which he or she will be entitled. (*Id.*) Claimants must return the products within 60 days to obtain payment. (*Id.*)

### 3. Corporate Reforms

In addition to the above economic relief, the Settlement Agreement requires Herbalife to agree to and abide by several corporate reforms. Herbalife has already implemented some of these reforms in response to the filing of this lawsuit. (*See id.* ¶ 5.1.2.) The Settlement Agreement requires Herbalife to maintain and continue thirteen agreed-upon reform policies for three years from the date of final approval. (*Id.* ¶ 5.1.1.)

These reform policies include all of the following: (1) Herbalife shall not separately charge members a "Packaging & Handling Fee" and an "Order Shipping Charge"; (2) Herbalife shall not define "Distributor" as "Everyone who purchases an Official Herbalife Member Pack (HMP) and submits to Herbalife a valid and complete Membership Application and whose Application has been accepted by Herbalife"; (3) Herbalife shall discourage members from incurring debt to pursue an Herbalife business opportunity; (4) Herbalife shall pay the shipping charges for the return of Herbalife products; (5) Herbalife shall maintain procedures for enforcing its rules, including as by maintaining a member compliance department; (6) Herbalife shall prohibit members from selling leads to other distributors and from purchasing leads from any source; (7) Herbalife shall prohibit members from requiring individuals to buy Herbalife products as a condition to membership; (8) Herbalife shall require members to be active for at least 90 days before opening a nutrition club; (9) Herbalife shall include the Statement of Average Gross Compensation in the membership application; (10) Herbalife shall require

Case 2:13-cv-02488-BRO-SH Document 145 Filed 05/14/15 Page 9 of 194 Page ID #:3016
Case 2:13-cv-02488-BRO-SH Document 145-4 Filed 05/09/18 Page 9 of 194 Page ID #:4292

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

new members to acknowledge their review of the Statement of Average Gross Compensation when signing a membership application; (11) Herbalife shall continue to disclose the Statement of Average Gross Compensation, as well as the percentage of members who receive no compensation from Herbalife; (12) Herbalife shall clarify that upon qualifying as a supervisor, members have twelve months to requalify; (13) Herbalife shall amend its membership agreement so that new members must certify they are not relying on representations regarding the financial results they may obtain. (*Id.* ¶¶ 5.1.3–5.1.15.)

### 4. Release of Claims

In exchange for the agreed upon economic and non-economic relief, class members must agree to the following release:

> [A]ll claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date that (1) were or could have been asserted in the complaints filed in this Action against Herbalife, or (2) are based upon, arise out of, or reasonably relate to: (i) the purchase or sale or offer of sale of any Herbalife product, including the IBP and Mini-IBP, during the Class Period; (ii) any packaging and handling or shipping charges paid in connection with purchase or sale or offer of sale of any Herbalife product during the Class Period; (iii) the Herbalife Membership Application and Agreement, including any materials attached thereto and/or referenced therein, including the Statement of Average Gross Compensation; (iv) any actual, potential, or attempted recruitment of any Herbalife member or distributor during the Class Period; (v) any allegation that, during the Class Period, Herbalife engaged in any acts of unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme; and (vi) any of the facts, schemes, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act that have been or could have been alleged or asserted in the Action (collectively, the "Released Claims").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

(*Id.* ¶ 8.1; *see also* Dkt. No. 108.)[8]  The release does not include claims arising out of the purchase or sale of Herbalife's publicly traded common stock; the calculation of bonuses or payments for the sale of Herbalife products owed to class members; or allegedly defective products.  (*Id.* ¶ 8.1; *see also* Dkt. No. 108.)  The release also does not cover claims related to government agency actions.  (*See* Dkt. No. 108 ¶ 8.5.)  Additionally, the release does not include claims by Herbalife members who agreed to be subject to arbitration in a Membership Application Agreement revised during or after September 2013.  (*See id.* ¶ 8.6; *see also* Dkt. No. 127.)[9]

### E. Notice to the Class Members and the Class Response

The class notice of settlement included six separate components, including direct mail and email notice; a long-form notice available online; a settlement website for filing and checking the status of claims, as well as filing objections; a settlement website posting frequently asked questions and answers; and a telephone help line for class members to discuss questions with class counsel.  (*See* Mot. for Final Approval at 4–5.)

On December 12, 2014, the claims administrator received a list from Herbalife of approximately 1,533,339 class members' names and mailing addresses, as well as a list of email addresses for 1,051,342 of those members.  (Decl. of Eric Robin in Supp. of Mot. for Final Approval ("Robin Notice Decl.") ¶ 4.)  The administrator used the National Change of Address system to update the list of mailing addresses and located new addresses for 188,158 class members.  (*Id.* ¶ 5.)  Of the 1,533,339 class members, only 114 had incomplete or missing mailing or email addresses.  (*Id.* ¶ 6.)

The claims administrator emailed notices to the 1,051,342 class members with known email addresses.  (*Id.* ¶ 8.)  As of January 8, 2015, 70.06% of the emails were

---

[8] Docket No. 108 contains the parties' first stipulation to amend the Settlement Agreement, which the Court has already approved.  (*See* Dkt. Nos. 108, 109.)  The stipulation adds two paragraphs to the section governing the release of claims.  (*See* Dkt. No. 108 ¶¶ 8.5, 8.6.)

[9] Docket No. 127 contains the parties' second stipulation to amend the Settlement Agreement.  Pursuant to the Court's preliminary approval order, which provides that the parties may agree to amend the Settlement Agreement before final approval so long as the amendment does not materially change the terms of the agreement, the Court hereby **GRANTS** the parties' second stipulation.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

successfully delivered, and 29.94% were undeliverable. (*Id.*) Of the 314,786 class members whose email notices were undeliverable, the claims administrator had valid physical addresses for 314,711 and accordingly mailed postcard notices to these individuals. (*Id.* ¶ 9.)

The claims administrator also mailed postcard notices to those 481,883 class members for whom only a mailing address was known. (*Id.* ¶ 7.) 1,396 notices were returned with forwarding addresses, and the administrator re-mailed these notices to the forwarding address. (*Id.* ¶ 10.) 121,963 notices were returned without a forwarding address. (*Id.*) The claims administrator has located updated mailing addresses for 71,294 of these members and re-mailed the notices to the proper address. (*Id.*) The combined email and postcard notices have reached approximately 92.91% of the class. (*Id.* ¶ 11.)

In addition to mailing and emailing class settlement notices, the claims administrator also established a telephone system to provide information about the settlement and field requests for notice packets. (*Id.* ¶ 12.) The system received 21,291 calls, and the claims administrator has fulfilled all 3,793 requests for notice packets. (*Id.*) The settlement website includes links to the notice form, claim form, and Settlement Agreement, and class members may submit claims online through the website. (*Id.* ¶ 13.)

### 1. The Number of Claims

The deadline to submit a monetary claim for relief from the business opportunity fund or product return fund was February 3, 2015. (*Id.* ¶ 20.) As of April 13, 2015, 7,238 class members had filed timely claims forms. (*Id.* ¶ 19.) The parties agreed to permit class members to file late claims through the settlement website until April 30, 2015. (*Id.* ¶ 20.) As of May 12, 2015, 7,457 class members submitted timely claims. (*See* Supplemental Robin Notice Decl. ¶ 4.)

Every Business Opportunity Claimant who could not demonstrate a loss, as well as every claimant who purchased less than $750 worth of Herbalife product, will receive a $20 flat rate payment. (Robin Notice Decl. ¶ 21.) Every Business Opportunity Claimant who could demonstrate a loss and who purchased at least $750 worth of product will receive the lesser of his or her estimated total loss or 75% of the amount he or she paid for Herbalife products. (*Id.*) Of the Business Opportunity Claimants entitled to a pro rata

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

award, 114 will receive payments greater than $10,000, 329 will receive payments greater than $5,000, and 1,655 will receive payments in excess of $1,000. (Supplemental Robin Notice Decl. ¶ 5.) The average payout is $1,101.48, and the largest award is $98,588.36. (*Id.*)

As of April 13, 2015, the total value of the business opportunity awards to be paid from the $15 million business opportunity fund is $7,396,407.90. (*Id.*) The total value of the product return awards is $938,280.75. (*Id.* ¶ 6.) The claims administrator has notified each class claimant of the value of his or her business opportunity or product return award. (Robin Notice Decl. ¶ 23.)

## 2. Requests for Exclusion and Objections

As of April 13, 2015, the claims administrator had received 687 requests for exclusion from the settlement. (*Id.* ¶ 14, Ex. E.) The administrator received two objections which were later withdrawn, (*see* Dkt. Nos. 115, 116), as well as eighteen objections which remain, (*see* Robin Notice Decl. ¶ 15).[10] Of the eighteen remaining objectors, three have filed claims as Business Opportunity Claimants. The first such objector, Susana Perez ("Ms. Perez"), estimated her total loss to be $30,000; she will receive a pro rata business opportunity award equal to this claimed loss. (*Id.* ¶ 16.) The second such objector, Eric Rodensky ("Mr. Rodensky") estimated his loss to be $3,000 and will receive a pro rata award of $2,983.30. (*Id.* ¶ 17.) The third such objector, Julio Ulloa ("Mr. Ulloa"), estimated his total loss to be $20,000 and will receive an award of $14,094.29. (*Id.* ¶ 18.)

## F. Relevant Procedural History

The Court issued an order granting preliminary approval of the Settlement Agreement on December 2, 2014. (Dkt. No. 105.) On April 13, 2015, Plaintiffs filed the instant Motion for Final Approval, (Dkt. No. 129), as well as the Motion to Increase

---

[10] One additional "objection" has been filed by individual Jeff Lokken ("Mr. Lokken"). (*See* Dkt. No. 124.) Mr. Lokken believes Herbalife's business model is sound and only generally objects to the notion that Herbalife should settle this matter. Mr. Lokken has not raised any substantive objections to the terms of the proposed Settlement Agreement.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Awards, (Dkt. No. 125). Herbalife filed a notice of joinder that same day. (Dkt. No. 131.) Previously, two non-parties to this action, Truth In Advertising, Inc. ("TINA.org") and National Consumers League, Inc. ("NCL"), filed Motions for Leave to file amici briefs. (Dkt. Nos. 114, 117.) The eighteen objectors, all of whom are represented by attorney Douglas M. Brooks ("Mr. Brooks"), have filed an opposition to the Motion for Final Approval.[11] (*See* Dkt. Nos. 121, 134.) Class counsel has also filed a Motion for Attorneys' Fees. (Dkt. No. 110.)

The Court held a final fairness hearing on these matters on May 11, 2015. Mr. Brooks, along with nine of the eighteen objectors he represents, attended the hearing. Counsel for TINA.org was also present. The Court questioned and heard oral argument from class counsel for Plaintiffs, Herbalife's counsel, and Mr. Brooks. Counsel for TINA.org submitted on the papers.

## III.   LEGAL STANDARD

There is a strong judicial policy favoring settlement agreements, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when reviewing a proposed class action settlement, district courts "have the responsibility of ensuring fairness to all members of the class." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). This responsibility is especially acute where the parties reach a settlement agreement prior to class certification. *Id.* In such cases, the court's final approval requires ratification of "both the propriety of the certification and the fairness of the settlement." *Id.*

A court's assessment of a proposed class settlement proceeds in two steps. First, the court must determine whether a class properly exists under Federal Rule of Civil Procedure 23. *Id.* Second, the court must consider whether the proposed settlement is fair, adequate, and reasonable to the class. *Id.* at 952–53.

---

[11] These objectors include: Elvia Acosta, Sabas Avila, Miguel Calderon, Felipe Colon, Elizabeth Correa, Maria Cutzal, Juana Estala, Jose G. Garcia, Valentina Leon, Rossina Martinez, Gilberto Melchor Sanchez, Martil Palma Vallecillo, Yader A. Pastran, Susana Perez, Eric Rodensky, Jose Tafoya, Olivia Torres, and Julia Ulloa. (*See* Dkt. No. 134 at 1 n.1.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

### A. Class Certification Under Rule 23

A party seeking class certification bears the burden of establishing that the prospective class satisfies Rule 23. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Certification under Rule 23 first requires a threshold showing under Rule 23(a). *Id.* Assuming Rule 23(a)'s requirements are met, the party seeking certification must also demonstrate that the proposed class falls into at least one of the categories outlined in Rule 23(b). *See Valentino v. Carter–Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Under Rule 23(a), the party seeking certification must establish all four of the following: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). This requires proof that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Certification should only be granted if, "after a rigorous analysis," the court determines that the prospective class satisfies the requirements of Rule 23(a). *Wal-Mart Stores*, 131 S. Ct. at 2551 (internal quotation marks omitted).

Under Rule 23(b)(3), class certification is appropriate where (1) common questions "predominate over any questions affecting only individual members," and (2) class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). The predominance inquiry "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation" and "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* at 623. The inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

A finding of commonality under Rule 23(a)(2) is insufficient by itself to satisfy Rule 23(b)(3). *Id.* ("[The predominance] analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."). Nevertheless, predominance does not require that the legal and factual issues be identical across the class. Certification under Rule 23(b)(3) is appropriate where "[a] common nucleus of facts and potential legal remedies dominates [the] litigation." *Id.*

When reviewing a motion for class certification, district courts are generally bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)). But "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores*, 131 S. Ct. at 2551. Thus, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (internal quotation marks omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Ultimately, district courts have "broad discretion to determine whether a class should be certified." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

## B. Final Approval of a Class Action Settlement Under Rule 23(e)

Under Rule 23(e), a district court may not finally approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (internal quotation marks omitted). The very circumstances of settlement negotiations raise "incentives for the negotiators to pursue their own self-interest and that of certain class members." *Id.* at 960. Thus, a district court must review a proposed class action settlement not only for actual fraud, overreaching, or collusion, but also with an eye to whether the terms are fair, adequate, and reasonable to the class. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

       In determining whether a proposed settlement meets the fundamental standard of fairness, adequacy, and reasonableness, a district court may consider the following factors: (1) "the strength of [the] plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed, and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Id.* at 959 (internal quotation marks omitted); *see also Hanlon*, 150 F.3d at 1026. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable[,] and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Accordingly, a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations[,] and rough justice." *Id.* (internal quotation marks omitted).

### C. Attorneys' Fees Under Rule 23(h)

       In any certified class action, a district court may award reasonable attorneys' fees and nontaxable costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Where, as here, a proposed class action settlement contains a fee provision, the provision is subject to the inquiry into whether the settlement is fair, adequate, and reasonable. *Staton*, 327 F.3d at 963 (explaining that "[t]here is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements"). A district court must "carefully assess" the reasonableness of a fee provision. *Id.* The mere fact that the defendant agrees to pay the fees "does not detract from the need to carefully scrutinize the fee award." *Id.* at 964. This is because the allocation between the class award and the attorneys' fees "is of little or no interest to the defense." *Id.* (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is known as the "common fund" doctrine. As the Supreme Court has explained,

> The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (internal citations omitted). Thus, the common fund doctrine permits a district court to award attorneys' fees from the total monetary fund recovered by the class to ensure that each class member "contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

The Supreme Court has set forth three criteria for obtaining an award of attorneys' fees from a common fund. First, the class of persons benefiting from the fund must be "easily identifiable." *Van Gemert*, 444 U.S. at 478–79. Second, the court must be able to accurately trace the benefits from the fund to the class beneficiaries. *Id.* at 479. Finally, the court must be able to shift the fee from the fund to those benefiting from it "with some exactitude." *Id.* Generally, these three criteria are satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.*

In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method. *Staton*, 327 F.3d at 967–68; *see also Hanlon*, 150 F.3d at 1029. If the court adopts the lodestar method, it may apply a risk multiplier to increase or decrease the fee award based on various factors, including the risk involved and the length of the proceedings. *Staton*, 327 F.3d at 968. If the court adopts the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

Although a court has discretion to apply either method, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In applying the percentage method, the court "must show why [the chosen] percentage and the ultimate award are appropriate based on the facts of the case. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (explaining that the court may not "arbitrarily apply a percentage"). The "benchmark" for percentage method fee awards in the Ninth Circuit is 25% of the common fund. *Hanlon*, 150 F.3d at 1029. Notwithstanding this benchmark, the percentage should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

The ultimate goal under either the lodestar method or the percentage method is to "reasonably compensate counsel for their efforts in creating the common fund." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).

## IV. DISCUSSION

The Court first considers whether Plaintiffs have satisfied the requirements for class certification under Federal Rule of Civil Procedure 23. Finding that they do, the Court then addresses whether the Settlement Agreement comports with Rule 23(e)'s standard of fairness, reasonableness, and adequacy. In doing so, the Court has considered the arguments advanced by Herbalife in their notice of joinder.[12] (*See* Dkt. No. 131.)

---

[12] As these arguments are essentially identical to those expressed in Plaintiffs' Motion for Final Approval, the Court will cite to Plaintiffs' motion only, unless otherwise indicated.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

The Court has also considered the arguments advanced by TINA.org and NCL in their amici briefs.[13] (*See* Dkt. Nos. 114, 117.) Given that the Court finds the Settlement Agreement to be a fair, reasonable, and adequate resolution of this case, the Court will also evaluate Plaintiffs' Motion for Fees.

## A. Whether Class Certification is Appropriate

Where, as here, the parties request class certification for the purpose of settlement, a court must give "undiluted, even heightened attention to [the] class certification requirements." *See Hanlon*, 150 F.3d 1011, 1019 (9th Cir. 1998) (internal quotation marks omitted) (quoting *Amchem Prods.*, 521 U.S. at 620). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods.*, 521 U.S. at 620. After reviewing the parties' joint Motion for Preliminary Approval[14] and the relevant pleadings, documents, and evidence, the Court concludes that certification is appropriate under Rule 23.

---

[13] Although Plaintiffs object to these briefs on the basis that TINA.org and NCL's participation in these proceedings is neither helpful nor useful, (*see* Dkt. No. 126), the Court finds otherwise. Many of the objectors' arguments are similar to those expressed in TINA.org and NCL's amici briefs. (*Compare* Dkt. Nos. 121, 134, *with* Dkt. Nos. 114, 117.) Indeed, the objectors directly reference and incorporate some of these arguments in their opposition. To ensure a full, fair, and objective review of the Settlement Agreement, the Court finds it appropriate to consider the full range of concerns raised by the objecting class members, as well as those expressed by non-parties TINA.org and NCL. *See Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), *or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide*." (emphasis added)). Accordingly, TINA.org and NCL's Motions for Leave to file amici briefs are hereby **GRANTED**.

[14] The Motion for Preliminary Approval sets forth the parties' joint arguments regarding the propriety of class certification for purposes of the proposed settlement. Plaintiffs' Motion for Final Approval expressly incorporates these arguments. (*See* Mot. for Final Approval at 9.) The Court will therefore refer to the preliminary approval motion in discussing whether class certification is appropriate.

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

### 1.  Whether Plaintiffs Have Satisfied Rule 23(a)'s Threshold Requirements

As discussed above, Plaintiffs bear the burden of satisfying Rule 23(a)'s four threshold requirements for class certification.  Plaintiffs seek to certify the following class of persons for purposes of settlement: "all persons who are or were Herbalife members or distributors in the United States at any time during the Class Period."  (*See* Mot. for Preliminary Approval at 17; *see also* Settlement Agreement § 1.13.)  The "Class Period" is defined as the period beginning on April 1, 2009 and ending on December 2, 2014, the date the Court preliminarily approved the proposed class settlement.  (*See* Settlement Agreement § 1.5.)  The class does not include "the Defendants, their employees, family members, and any member who has been a member of Herbalife's President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or GET Team," nor does it include "Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013."[15]  (*Id.* §§ 1.13.1, 1.13.2.)  Also excluded are those individuals who fall within the class definition but who timely and validly opt out.  (*Id.* § 1.14.)

#### a.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1).  Although the numerosity requirement "is not tied to any fixed numerical threshold" and imposes no absolute limitations, the Ninth Circuit has often found that a class of at least forty members is sufficient.  *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).  At the time the Court preliminarily approved the Settlement Agreement, the parties estimated that the settlement class consists of approximately 1.3 million individuals.  (*See* Mot. for Preliminary Approval at 18–19.)  Based upon Herbalife's records and the notices sent to putative class members, it appears that the class in fact exceeds 1.5 million members and distributors.  (*See* Robin

---

[15] The original Settlement Agreement excluded members who agreed to the arbitration provisions from only the monetary portion of the settlement.  The parties now agree that such members should be excluded from the portion of the settlement providing injunctive relief and have stipulated to an amendment to the Settlement Agreement to reflect the same.  (*See* Dkt. No. 127.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

Notice Decl. ¶ 4.)  The class size clearly satisfies Rule 23(a)'s numerosity requirement, as joinder of the approximately 1,532,652[16] class members would be impracticable.

### b. Commonality

To meet the commonality requirement, a plaintiff must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requires a showing that "the class members 'have suffered the same injury.'"  *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co.*, 457 U.S. at 156).  The "same injury" requirement can be misleading.  It does not mean that each class member must suffer the same violation of the law; rather, the class members' claims must share a common contention capable of class-wide resolution.  *Id.*  The commonality requirement under Rule 23(a) is "less rigorous" than the predominance inquiry under Rule 23(b).  *See Hanlon*, 150 F.3d at 1019.  The inquiry "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1165 (9th Cir. 2014).  The requirement is met when even a single common question exists, so long as it is "apt to drive the resolution of the litigation."  *Id*; *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2551).  Whether a common question will drive the resolution of a case depends on the nature of the underlying legal claim.  *Jimenez*, 765 F.3d at 1165.

Common questions will drive the resolution of Plaintiffs' claim for violations of California's Endless Chain Scheme Law.  The basic inquiry of whether Herbalife's business and marketing model in fact constitutes an endless chain scheme prohibited by Penal Code section 327 is common among all the class members.  This determination depends on other common questions, such as whether Herbalife required members and distributors to pay for the right to sell Herbalife products or receive monetary rewards for recruiting new members.  *See* Cal. Penal Code § 327 ("[A]n 'endless chain' means any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive

---

[16] The Court arrived at this figure by deducting the 687 individuals who have validly opted out of the settlement from the 1,533,339 individuals to whom the claims administrator directed notice.  (Robin Notice Decl. ¶¶ 4, 14, Ex. E.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

compensation when a person introduced by the participant introduces a new participant."). These common questions are sufficient to satisfy Rule 23(a).

Plaintiffs' claims under the UCL and FAL are also likely to generate common answers. These claims depend, for example, upon whether Herbalife's representations regarding the chance of financial success and the legitimacy of membership as a real "business opportunity" constitute unfair or deceptive business practices or false advertising. The resolution of these inquiries may depend upon whether the company's Statements of Average Gross Compensation for the years between 2008 and 2013 in fact contained misrepresentations or omissions, as well as whether the alleged misrepresentations or omissions were material to members' decisions to join Herbalife. These common questions also meet Rule 23(a)'s commonality requirement.

### c. Typicality

Typicality under Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether [class] members have the same or similar injury [as the named plaintiffs], whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The named plaintiffs and class representatives include Mr. Bostick, Ms. Vasko, Ms. Trotter, Ms. Molnar, and Mr. Cote. (*See* FAC ¶¶ 1–10.) Each of these individuals purchased IBPs and signed agreements to become Herbalife distributors. (FAC ¶¶ 2, 6–10.) Each of these individuals also relied on Herbalife's representations that if they "put in the time, effort, and commitment," they could make money selling Herbalife products and recruiting others to become Herbalife distributors. (FAC ¶ 1.) And each of these individuals failed because of Herbalife's marketing plan that "systematically rewards recruiting distributors over retail sales of product" and "pays millions to those few at the top in recruiting rewards at the expense of the many at the bottom." (FAC ¶ 3.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Although the actual experiences of and damages suffered by the named plaintiffs may differ,[17] these disparities do not necessarily defeat typicality. *See* 7A Fed. Prac. & Proc. Civ. § 1764 (3d ed.) ("In general, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members."). Each named plaintiff brings the same three claims for relief as the class, and the basis for the named plaintiffs' claims is the same as the basis for the class's claims— that is, Herbalife's allegedly unlawful marketing plan and deceptive and misleading representations. Accordingly, their claims are typical of those of the class.

### d. Adequacy of Representation

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement turns on the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The examination of potential conflicts of interest is "especially critical" when the parties have settled prior to class certification. *Id.* Courts must apply "heightened scrutiny" where the class members may have claims of varying strength. *Id.*

Plaintiffs' counsel indicate that they "are not aware of any conflicts of interest between the named Plaintiffs and the Settlement Class." (Mot. for Preliminary Approval at 21.) Given the identity of issues shared by the class and proposed class representatives, the named plaintiffs' interests are sufficiently aligned with those of the class. That differences exist with respect to the amount of products purchased by class members and the named plaintiffs (and therefore the value of relief to which each may be entitled) does not suggest a conflict of interest. *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (rejecting claim of inadequacy and noting that "varied relief among class members with differing claims in class settlements is not unusual"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("If the objectors mean to maintain that a conflict of interest requiring subdivision is created when some class members receive more than other class members in a settlement, we

---

[17] For example, Ms. Vasko opened a nutrition club and purchased enough products to become a supervisor, (*see* FAC ¶¶ 52–59), whereas Ms. Trotter purchased leads, (*see* FAC ¶¶ 60–68).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

think that the argument is untenable. It seems to us that almost every settlement will involve different awards for various class members."). Additionally, that some of the named plaintiffs are no longer Herbalife distributors does not create a conflict in this case, as the proposed Settlement Agreement does not distinguish between current and former distributors and awards relief to both. (*See* Settlement Agreement § 1.13 (defining settlement class as "all persons who are or were Herbalife members or distributors" during the class period).)

To fully satisfy the adequacy requirement, Plaintiffs and class counsel must also demonstrate that they vigorously prosecuted this action on the class's behalf. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Here, the named plaintiffs and class counsel conducted extensive discovery and engaged in multiple mediation and negotiation sessions before reaching the proposed Settlement Agreement. The named plaintiffs affirm that they are prepared to fully litigate this case, and that they believe settlement to the most appropriate resolution to ensure full class recovery, as well as immediate compensation and corporate reform. (*See* Joint Decl. in Supp. of Mot. for Preliminary Approval ("Joint Decl.") Exs. B–F.)[18] Additionally, Plaintiffs' counsel invested considerable time in this case and have substantial experience with class action litigation, including pursuing claims involving consumer fraud and violations of the UCL and FAL. (*See id.* ¶¶ 6–10, 15–32.) Like the named plaintiffs, class counsel believe that the proposed settlement represents the best resolution of this case given the inherent risks of trial and the potential viability of Herbalife's factual and legal defenses. (*Id.* ¶¶ 33, 55–63.) The named plaintiffs and class counsel have proceeded throughout this litigation with the class's interests in mind; similarly, they have agreed to the proposed settlement because they believe it will benefit the class more than further litigation. This is sufficient to demonstrate adequacy under Rule 23(a).

## 2. Whether Plaintiffs Have Satisfied Rule 23(b)

The Settlement Agreement affords both non-monetary and monetary relief. Accordingly, Plaintiffs seek class certification under Rule 23(b)(2) and (b)(3). *See Ellis*,

---

[18] A copy of the Joint Declaration is available at Docket No. 96.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|----------|----------------------|---|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

657 F.3d at 987 (indicating that a district court may certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class for damages). Certification under Rule 23(b)(2) is appropriate when the defendant's alleged misconduct applies to the class as a whole such that injunctive or declaratory relief is appropriate on a class-wide basis. *See* Fed. R. Civ. P. 23(b)(2). A class may be certified under Rule 23(b)(3) when the interests of the parties are so aligned that the parties are best served by resolving their differences in a single action. *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) requires Plaintiffs to meet the predominance and superiority requirements.

### a. Whether Injunctive or Declaratory Relief is Appropriate on a Class-Wide Basis

"Rule 23(b)(2) applies when a single injunction or declaratory judgment would provide relief to each member of the class." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2557). Plaintiffs request injunctive relief in connection with their endless chain scheme claim to prohibit Herbalife from paying distributors recruiting awards that are unrelated to retail sales to ultimate users. Plaintiffs also request an appropriate injunction in connection with their UCL and FAL claims prohibiting Herbalife from engaging in further unfair, unlawful, fraudulent, or deceptive business practices. (*See* FAC Prayer for Relief.) Given that Herbalife's allegedly unlawful conduct relates to its overall marketing and business structure, each member or distributor has suffered a similar harm, and the requested injunctions would accordingly provide relief to each member of the class. As the requests "can be satisfied with 'indivisible' equitable relief that benefits all class members at once," certification comports with Rule 23(b)(2). *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012).

Although the eighteen objectors do not formally oppose class certification in connection with the proposed settlement, they do assert that the named plaintiffs lack standing to pursue injunctive relief. (*See* Dkt. No. 121 at 38–41; *see also* Dkt. No. 134 at 13–16.) Objectors contend that all of the named plaintiffs are no longer Herbalife distributors and that, accordingly, no named plaintiff has standing to enforce the thirteen proposed corporate reforms. The facts, however, do not support this contention. As recently as April 27, 2015, Ms. Molnar affirmed that she currently remains an Herbalife distributor or member. (*See* Dkt. No. 138-2, ¶ 4.) Additionally, Ms. Vasko declared on

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

April 25, 2015 that since she joined Herbalife in September 2012, she has "remained continuously" a distributor of Herbalife products. (*See* Dkt. No. 138-1.) Accordingly, the standing objections lack merit, and certification under Rule 23(b)(2) is appropriate.

### b. Whether Common Questions Predominate Over Individualized Inquiries

Predominance under Rule 23(b)(3) regards whether the proposed class is sufficiently cohesive to warrant class treatment. *Hanlon*, 150 F.3d at 1022. Whereas Rule 23(a)'s commonality requirement focuses on the presence of common legal questions, Rule 23(b)(3)'s predominance requirement focuses on the balance between the common and individual issues. *Id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino*, 97 F.3d at 1234. "Whether judicial economy will be served in a particular case turns on close scrutiny of 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

As discussed above in connection with Rule 23(a), the Court finds that common questions exist with respect to each of Plaintiffs' claims. The relevant inquiry under Rule 23(b) is whether these common questions predominate. Plaintiffs' own counsel recognize that the litigation involves certain individual issues. For example, during discovery Herbalife produced surveys indicating that 73% of its distributors joined the company to obtain a discount on products they purchased for personal consumption and not to pursue a business opportunity. (*See* Mot. for Final Approval at 14–15.)

Although the reason why class members chose to become Herbalife distributors may be highly individualized, this does not necessarily mean that the issue will disrupt judicial economy or result in numerous mini-trials. The ultimate issue driving Plaintiffs' endless chain scheme claim is whether distributors paid money for: (1) the right to sell a product and (2) the right to receive rewards for recruiting other distributors, which were unrelated to the sale of products to ultimate users. *See Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781–82 (9th Cir. 1996) (adopting the Federal Trade Commission's standard for determining what constitutes a pyramid scheme). This inquiry may be resolved on a class-wide basis without resorting to an individual inquiry into each member's reason for

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|----------|--------------------------|------|--------------|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

joining the company. If the surveys are credible and in fact most distributors joined Herbalife for personal consumption purposes, this finding could undermine Plaintiffs' claim that the company operates as an illegal pyramid scheme, as the distributors could be determined to be the "ultimate users" of products purchased for their own consumption. *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 887 (9th Cir. 2014) ("BurnLounge is correct that when participants bought packages in part for internal consumption . . . the participants were the 'ultimate users' of the merchandise and that this internal sale alone does not make BurnLounge a pyramid scheme."). Nevertheless, the overriding inquiry is whether distributors received rewards "primarily in return for selling the right to participate in the money-making venture"—that is, in return for recruiting new Herbalife distributors. *See id.* at 887–88. The resolution of this inquiry does not depend on the reason why a distributor joined Herbalife. Accordingly, the differences between distributors' motivations do not defeat predominance in this case.

Plaintiffs' counsel also recognize that damages may present an obstacle to predominance and class certification. (Mot. for Final Approval at 15.) In connection with their UCL and FAL claims, Plaintiffs seek disgorgement and injunctive relief only. (*See* FAC ¶¶ 314–15, 324–27.) Assuming Plaintiffs prevail on these claims, these remedies may be readily fashioned on a class-wide basis and do not require individual proof, as the disgorgement remedy depends upon Herbalife's own profits and the equitable relief depends upon what conduct and representations are found to be unfair, deceptive, false, or otherwise unlawful.

Plaintiffs seek rescission, restitution, and compensatory and consequential damages (where not inconsistent with rescission or restitution) in connection with their claim under the Endless Chain Scheme Law. (*See* FAC ¶ 258.) Plaintiffs aver that under the law of the case, class members are limited to rescission as the sole remedy for this claim. (*See* Mot. for Final Approval at 15–16 (citing Dkt. No. 40 at 10–11.).) Contrary to Plaintiffs' assertion, however, the Court did not previously hold that rescission is the only available remedy for an endless chain scheme claim. Rather, in ruling on Herbalife's motion to dismiss the original Complaint, the Court merely noted that the only remedy Mr. Bostick sought was rescission, and the Court then found that he would be entitled to rescission to the extent he could return products he purchased from Herbalife. (*See* Dkt. No. 40 at 10–11 ("The only remedy which Plaintiff seeks for his

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Endless Chain Scheme claim is rescission. . . . Plaintiff can still return the International Business Pack that he purchased. . . . Therefore, if Plaintiff prevails in this action, he will be entitled to $95.95 in rescission, and the first cause of action cannot be dismissed on the ground that no remedy is available.").)[19]

California statutory law permits participants in an endless chain scheme to "rescind the contract upon which the scheme is based" and "recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme." Cal. Civ. Code § 1689.2. The Court is not aware of any binding authority discussing whether the statute permits the recovery of consequential damages. Assuming Plaintiffs prevailed on their endless chain scheme claim, the Court would have to consider whether they are entitled to consequential damages under section 1689.2. This determination involves a question of law and is clearly capable of class-wide resolution. The Court is mindful that assessing consequential damages could result in numerous individualized inquiries. But given the legal uncertainty as to whether consequential damages are recoverable, the Court does not find the possibility that damages will differ sufficient to swing the balance in favor of individual litigation. Accordingly, the Court finds that sufficient common questions predominate so as to warrant class treatment under Rule 23(b).

### c. Whether A Class Action is the Superior Method of Adjudication

Rule 23(b)(3) also requires a class action to be superior to other methods of adjudication. The superiority inquiry "requires [a] determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. This determination is guided by consideration of four non-exclusive factors listed in Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3)(A–D).

---

[19] Indeed, Herbalife's motion to dismiss argued only that Mr. Bostick was not entitled to rescission in connection with his endless chain scheme claim. (*See* Dkt. No. 22 at 18–19.) Although Mr. Bostick argued in his opposition that he should not be limited to rescission, and that California Civil Code section 1692 permits the recovery of restitution and consequential damages on this claim, (*see* Dkt. No. 27 at 18–19), the Court only addressed the limited argument advanced by Herbalife—that is, whether Mr. Bostick was entitled to rescission.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

The first Rule 23(b)(3) factor considers the individual interests at stake. Fed. R. Civ. P. 23(b)(3)(A). Where the individual class members have suffered only slight damages, this factor weighs in favor of finding superiority and certifying a class action. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Indeed, in cases with the potential for only small individual recovery, class certification may be the only feasible method of adjudicating a claim. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013). This case involves a large class of over 1.5 million individuals. Many of the individuals stand to recover only small sums of money. The practical unlikelihood that such class members will pursue individual lawsuits against Herbalife weighs in favor of a finding of superiority. Although some putative class members no doubt invested heavily in Herbalife and may be entitled to a large monetary recovery for the company's alleged wrongdoing, these individuals may opt out of the proposed settlement if they believe that an individual lawsuit will better resolve their injury.

The second Rule 23(b)(3) factor considers "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to ensure judicial economy by reducing the possibility of multiple lawsuits. *Zinser*, 253 F.3d at 1191. Plaintiffs' counsel have indicated that they have no knowledge of any pending state or federal litigation against Herbalife involving the claims released by the proposed settlement. (*See* Mot. for Preliminary Approval at 26.) Plaintiffs' counsel communicated with Herbalife and conducted independent legal research in coming to this conclusion. (*Id.*; *see also* Joint Decl. ¶ 73.) Thus, this factor also favors superiority.

The third and fourth factors under Rule 23(b)(3) are also aimed at efficient litigation. *See Zinser* 253 F.3d at 1191–92. The third factor looks to "the desireability or undesireability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Given that this Court is familiar with the facts and claims involved in this litigation, this factor favors superiority. The fourth factor considers "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Where a district court certifies a class for the purpose of settlement, it is unnecessary to assess this factor. *See Amchem Prods.*, 521 U.S. at 620 (explaining that where the parties seek class certification in connection with a settlement, the court need not inquire whether the case, if tried, would present manageability problems). Accordingly, the final superiority factor carries little weight.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|----------|--------------------------|--|------|--------------|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

In sum, Plaintiffs have satisfied the requirements for class certification under Rule 23. The proposed class meets the four threshold requirements for certification under Rule 23(a), and sufficient common questions predominate so as to warrant class treatment and ensure that the class action is the superior method of adjudication under Rule 23(b). The Court therefore **GRANTS** Plaintiffs' request for class certification in accordance with the class definition set forth in this Order and the parties' proposed Settlement Agreement.

## B. Plaintiffs' Motion for Final Approval of Class Action Settlement

As detailed above, a district court may only approve a class settlement after a hearing and upon a finding that the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). After considering the papers filed in connection with Plaintiffs' Motion for Final Approval, the arguments advanced at the final fairness hearing, and the relevant factors, the Court concludes that the Settlement Agreement comports with Rule 23(e). Accordingly, Plaintiffs' Motion for Final Approval is **GRANTED**.

### 1. The Strength of Plaintiffs' Case

The first fairness factor considers the strength of the plaintiffs' case. *See Staton*, 327 F.3d at 959. In assessing the strength of the case, a district court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. The Court first considers the strength of Plaintiffs' endless chain scheme claim. The Court then considers Plaintiffs' UCL and FAL claims.

#### a. Endless Chain Scheme Claim

Plaintiffs' primary claim alleges that Herbalife's business and marketing model constitutes an unlawful pyramid scheme in violation of California Penal Code section 327. As indicated above, this claim ultimately depends upon whether distributors paid money for both: (1) the right to sell a product and (2) the right to receive rewards for recruiting other distributors unrelated to the sale of products to ultimate users. *See Omnitrition*, 79 F.3d at 781–82. Herbalife presented survey statistics during discovery estimating that approximately 73% of its members and distributors joined Herbalife

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

primarily for self-consumption purposes and not to pursue a business opportunity.  (*See* Joint Decl. ¶ 56.)  This evidence seriously undermines Plaintiffs' endless chain scheme claim, as it suggests most members did not join "for the chance to receive compensation" for recruiting new members.  *See* Cal. Penal Code § 327.  Although Plaintiffs' counsel question the survey's efficacy, they also reviewed a second survey, which indicated that over half of Herbalife's members joined for self-consumption purposes only.  (*Id.* ¶ 57.)  Based on this survey evidence, a reasonable fact finder could conclude Herbalife does not operate as an illegal pyramid scheme.  (*Id.* ¶ 60.)

The eighteen objectors point to additional surveys suggesting that the 73% figure overestimates the number of Herbalife members and distributors who joined to purchase products at a discount rather than to pursue a business opportunity.  (*See* Dkt. No. 121 at 14–17.)  One of these is an industry-wide survey, which found that 29% of former direct sellers began their direct selling career for the purpose of obtaining product discounts.  (*Id.* at 15–16.)  Given that this survey is not limited to Herbalife members or distributors, its probative value is minimal.  A second survey conducted by Herbalife in January 2013 found that "most former distributors joined Herbalife to supplement their income."[20]  (*Id.* at 16.)  Although this finding suggests that the risks associated with Plaintiffs' endless chain scheme claim may not be as high as Plaintiffs anticipate, it does not dispel the risks entirely.[21]  The Court is also mindful of its limited role in assessing the merits once the parties have reached a settlement agreement and will not make credibility determinations regarding the persuasiveness of one survey's results over those of another.  Plaintiffs and class counsel weighed the efficacy of the 73% figure and the results of these other surveys in concluding that the endless chain scheme claim presented real litigation risks.  (*See* Decl. of Thomas G. Foley in Supp. of Mot. for Final Approval ("Foley Decl.") ¶¶ 5,

---

[20] According to the survey, 44% of Herbalife's members joined to supplement their income, 13% joined to gain a primary source of income, 10% believed their membership could raise their income, and 10% sought self-employment.  Only 17% joined to receive a product discount.

[21] Plaintiffs also contest the efficacy of this survey, as it had only forty-eight respondents, all of whom were supervisors.  (*See* Decl. of Thomas G. Foley in Supp. of Mot. for Final Approval ("Foley Decl.") ¶ 8.)  Plaintiffs note that to become a supervisor, distributors must regularly purchase a specific quantity of Herbalife products.  (*Id.*)  Thus, the respondents were more likely to have joined Herbalife for a business opportunity rather than for personal consumption purposes.  (*Id.*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

9 (affirming that class counsel reviewed and considered the surveys referenced by the objectors in connection with the settlement negotiations and found the survey with the 73% figure most credible).)  This suggests that the settlement is fair and not the product of collusion or overreaching.

### b.  UCL and FAL Claims

Significant evidentiary risks accompany Plaintiffs' claims for violations of the UCL and FAL.  One basis for these claims is Plaintiffs' belief that Herbalife's Statements of Average Gross Compensation from April 2009 to February 2013 were deceptive and misleading.  (*See* FAC ¶¶ 19–27, 81, 179–92, 261, 274–79, 318, Ex. A.)  During the course of discovery, Herbalife disclosed evidence that after it adopted a more comprehensive disclosure statement in its marketing materials in February 2013 showing the number of members and distributors who earn no income by participating in the program, the number of members and distributors who joined Herbalife actually increased.  (*See* Mot. for Final Approval at 13.)  This evidence would support Herbalife's argument that the alleged misrepresentations and omissions in the earlier Statements of Average Gross Compensation were not material and did not impact members or distributors' decisions to join Herbalife.[22]

A second basis for Plaintiffs' UCL and FAL claims are the allegedly false, misleading, and deceptive packaging and handling and freight fees charged by Herbalife before April 14, 2013.  (*See* FAC ¶¶ 262, 280–98, 319, 322–23.)  Plaintiffs allege that the 7% packaging and handling fee charged for each product order was based upon the total suggested retail price of the products, which far exceeded the actual packaging and handling fees Herbalife incurred in distributing orders and thereby amounted to a "secret profit generator[]."  (FAC ¶¶ 280–84.)  Plaintiffs also allege that Herbalife represented that the freight fee charged for product orders was a direct pass through charge, when in fact Herbalife paid far less than the fee to ship and deliver its goods.  (FAC ¶¶ 285–98.)

---

[22] The Court is mindful that a claim for fraud under the UCL is distinct from a common law fraud claim, as the relevant inquiry is not whether deception in fact occurred, but whether the public is likely to be deceived.  *See  Searle v. Wyndham Int'l., Inc.*, 102 Cal. App. 4th 1327, 1335 (Cal. Ct. App. 2002) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 888 (Cal. Ct. App. 1999)).  Nevertheless, the evidence would lend support to Herbalife's argument that its earlier disclosures were not likely to deceive any potential members or distributors.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Plaintiffs maintain that these theories of liability are uncertain, as evidence disclosed during discovery suggested that some distributors successfully resold Herbalife products at the full suggested retail price, including all costs of shipping and handling, such that these distributors suffered no loss from the alleged misrepresentations. (*See* Mot. for Final Approval at 13; *see also* Reply at 8.) Plaintiffs also cite to *Searle v. Wyndam International, Inc.*, 102 Cal. App. 4th 1237 (Cal. Ct. App. 2002), as adverse legal authority which they would have had difficulty overcoming in pursuing these statutory claims. In *Searle*, the California Court of Appeal rejected the notion that a hotel's 17% service charge, which the hotel failed to disclose was paid to its servers, amounted to a fraudulent business practice or false advertising under the UCL or FAL. 102 Cal. 4th at 1335. The court reasoned that the hotel's patrons had no right to know how much the hotel pays its servers, and that the hotel had "no obligation to advise consumers about what it does with the revenue it receives from them." *Id.* Although the Court does not agree that *Searle* would necessarily have been dispositive of these claims, its reasoning does suggest that Herbalife members and distributors have no real interest in whether Herbalife in fact profited from packaging and handling or freight fees, so long as the company clearly disclosed the fact and amount of the fees.

The eighteen objectors, however, maintain that these theories of liability are stronger than Plaintiffs estimate. The objectors cite to *Ehret v. Uber Technologies, Inc.*, No. CV 14-00113 EMC, 2014 WL 4640170, at *2 (N.D. Cal. Sept. 17, 2014), as support. *Ehret* involved a UCL claim related to a 20% mandatory "gratuity" charge that Uber represented was paid to the driver when the company allegedly retained a portion of the charge itself. The court distinguished *Searle* on the ground that the hotel in that case "made no representation about the nature of the service charge or where the funds collected would be distributed." *Id.* at 9. In contrast, the plaintiff in *Ehret* alleged that Uber actually misrepresented the purpose of the 20% "gratuity" charge. On that basis, the *Ehret* court found that *Searle* was not controlling. *Id.*

*Ehret* appears more readily analogous here, at least with respect to the freight charge theory of liability, as Plaintiffs allege that "all of Herbalife's disclosures implied a direct pass through of third party FedEx charges." (FAC ¶ 291.) If Herbalife in fact retained a portion of the charge itself, this misrepresentation could be actionable regardless of the California Court of Appeals' statements in *Searles*. Plaintiffs appear to concede as much, but nevertheless believe that the claim could still prove problematic, as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

Herbalife could argue that it lost money on the freight charges, depending on the weight and distance of the products shipped. (*See* Reply at 9.)

Plaintiffs' counsel believe the packaging and handling fee theory falls somewhere in between *Searle* and *Ehret*. They also believe that, to the extent *Searle* does not foreclose the theory entirely, the claim could still present litigation challenges, particularly with respect to calculating restitution damages on a class-wide basis. To that end, Plaintiffs point to evidence that some Herbalife members and distributors recouped the packaging and handling fee on resale, as well as the reality that the aggregate sums spent by each class member on packaging and handling costs would require individual proof. (*See* Reply at 10.)

Based on the foregoing, it appears that Plaintiffs and their counsel adequately accounted for the strengths and weaknesses of their case and reasonably projected the potential risks of further litigation. This suggests that the settlement is fair and reasonable. Although the objectors assert that the Settlement Agreement unfairly deprives class members of monetary relief for these claims, (*see* Dkt. No. 121 at 24–25), this objection is somewhat misguided. Business Opportunity Claimants may include the allegedly deceptive packaging and handling fees, as well as freight charges, in their estimated losses, and Product Return Claimants will also receive compensation for these costs.[23] (*See* Reply at 11; *see also* Settlement Agreement ¶¶ 4.3.1, 4.4.5.) Accordingly, although there is no separate, independently named fund for compensating class members for allegedly unlawful packaging and handling and freight fees, class members will still recover for these losses.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor considers the risk, expense, complexity, and likely duration of further litigation. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (2004) (internal quotation marks omitted). Here, Plaintiffs assert that the litigation burdens are

---

[23] At the hearing on May 11, 2015, class counsel affirmed that these costs and expenses could be recovered in business opportunity and product return awards.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

"monumental."  (Mot. for Final Approval at 14.)  Both parties have already expended significant time, effort, and resources in conducting discovery and reaching the proposed Settlement Agreement.  (*See* Joint Decl. ¶¶ 15–32.)  Assuming Plaintiffs prevailed at the class certification and summary judgment stages, a trial on the merits would require even further discovery, and would no doubt prove to be expensive and time-consuming for the parties, the class, and the Court.  The likelihood of an appeal of both the class certification order and a judgment on the merits suggests that this matter would not reach a final resolution in the near future.  In contrast, the proposed Settlement Agreement affords immediate class relief without the attendant risks and costs of trial.  This factor therefore favors approval.

### 3.  The Risk of Maintaining Class Action Status Throughout the Trial

The third factor considers the risk of maintaining class action status.  In this case, the parties did not litigate the issue of class certification before reaching the Settlement Agreement.  Although the Court has found certification to be appropriate for purposes of the proposed settlement, the issue has not been fully and contentiously briefed, as Herbalife agreed not to oppose settlement certification.  Nevertheless, Herbalife reserves the right to challenge certification if the Court does not grant final settlement approval.  (*See* Mot. for Final Approval at 14; *see also* Decl. of Daniel H. Weinstein in Supp. of Mot. for Preliminary Approval ("Weinstein Decl.") ¶ 11.)

Plaintiffs believe that certification of the proposed class is appropriate and that they would prevail on such a motion if the Court does not approve the proposed settlement.  Nevertheless, Plaintiffs recognize that the issue is not certain.  To that end, Plaintiffs considered the advice of Judge James Larson, a former magistrate judge with the United States District Court for the Northern District of California.  (Decl. of James Larson in Supp. of Mot. for Preliminary Approval ("Larson Decl.") ¶ 2.)[24]  Judge Larson conducted an independent neutral evaluation of the range of reasonable values of Plaintiffs' case.  (*Id.* ¶¶ 4–7.)  With respect to the issue of certification, Judge Larson concluded that the sheer size of the proposed class "creates problems with respect to all of the factors in Rule 23(b), including standing, predominance, damages, and manageability."  (*Id.* ¶ 7.)

---

[24] A copy of Judge Larson's declaration is available at Docket No. 96-1.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|----------|----------------------|---|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Plaintiffs considered at least two potential predominance-defeating issues, including the primary reason why members and distributors joined Herbalife, as well as damages. Based on the limited briefing on the certification question, the Court does not believe that the disparate motivations of members and distributors necessarily defeats predominance. But the Court recognizes that the issue of damages would introduce uncertainty and complexity and, upon full briefing, could demonstrate that relief on a class-wide basis is impractical and requires highly individualized inquiries.[25] Given Herbalife's expressed intent to oppose certification absent settlement, the size of the proposed class, and the uncertainty regarding whether consequential damages could be measured on a class-wide basis, it is far from clear that Plaintiffs would prevail after a full briefing of the certification question. This factor therefore favors approval.

### 4. The Amount Offered in Settlement and the Method of Distribution

The fourth factor considers the amount offered in settlement. In considering the overall fairness of a settlement, a court should view "the complete package taken as a whole, rather than the individual component parts." *Officers for Justice*, 688 F.2d at 628. A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions. *See Hanlon*, 150 F.3d at 1027. A district court must also find that a proposed settlement's plan for allocation among the class members is fair and reasonable before granting final approval. *See Class Plaintiffs*, 955 F.2d at 1284–85.

---

[25] As the Court has noted, it has not yet considered or ruled on whether Plaintiffs are entitled to consequential damages for their endless chain scheme claim. Assuming such damages are recoverable, it is not clear that the calculation or distribution of such damages is readily susceptible to class treatment. Plaintiffs concede as much and have not offered any method for measuring such damages on a class-wide basis. (*See generally* Mot. for Final Approval.) Although the Ninth Circuit has stated that damages calculations alone cannot defeat certification, *see Leyva*, 716 F.3d at 513, the Supreme Court has made clear that damages must still be capable of measurement on a class-wide basis to demonstrate predominance under Rule 23(b)(3), *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432–33 (2013).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

### a. The Monetary Relief

The Settlement Agreement provides for two separate monetary funds, including $15 million to compensate Business Opportunity Claimants and $2.5 million to reimburse Herbalife members and distributors for unopened and unused products. (*See* Settlement Agreement ¶ 4.) As of May 12, 2015, the aggregate value of the awards to Business Opportunity Claimants is $7,396,407.90. (*See* Supplemental Robin Notice Decl. ¶ 5.) Among those claimants who purchased at least $750 worth of Herbalife products, the average award is $1,101.48; the largest award is $98,588.36. (*Id.*) At least 114 of these claimants will receive payments greater than $10,000, and at least 329 will be entitled to an award of more than $5,000. (*Id.*) Claimants who did not purchase at least $750 in Herbalife products will receive a flat award of $20. (*Id.*)

The objectors contend that the $15 million business opportunity fund will not provide fair or adequate class compensation. (*See* Dkt. No. 121 at 7–24.) They first attack Plaintiffs' estimation of the case's total value, asserting that Plaintiffs have offered no evidence of the potential range of recovery. This objection is somewhat misguided, however, as Plaintiffs have provided declarations from the mediator who helped resolve this case, retired Judge Daniel Weinstein, as well as the independent evaluator, Judge Larson. Both affirm that the proposed settlement represents a reasonable recovery in light of the facts and the parties' claims and defenses. (*See* Weinstein Decl. ¶¶ 3, 12, 14, 18; *see also* Larson Decl. ¶ 11 (noting that the proposed settlement is within the range he suggested).) Although Plaintiffs' failure to provide the Court with other documentary evidence prevents the Court from arriving at its own independent estimate of the value of Plaintiffs' case, the Court does not find this failure to be fatal given the objective third-party evaluations supporting the settlement's fairness and reasonableness.

The objectors also assert that Plaintiffs seriously undervalued the endless chain scheme claim. Using their own methodology, the objectors value this claim between approximately $700 million and $1.2 billion. (*See* Dkt. No. 121 at 14–24.) The methodology, however, assumes that 77% of the class joined Herbalife to pursue a business opportunity and would be entitled to an award as a Business Opportunity Claimant. (*See id.* at 17.) The objectors arrived at the 77% figure based upon three surveys other than the one Plaintiffs relied upon in reaching the proposed settlement, which estimated that only 27% of the class joined Herbalife for purposes other than self-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

consumption. As noted above, it is not clear to the Court that these surveys are reliable. One is an industry-wide survey of direct sellers, which reveals nothing specific to Herbalife's members or distributors. And another had only forty-eight respondents, all of whom were Herbalife supervisors and therefore likely to have invested in the company for a business purpose. But even assuming the objectors' methodology is sound, it does not take into account the risk that Plaintiffs might not prevail on this claim at trial. Given that Plaintiffs and their counsel considered these other surveys, found them to be incredible, and evaluated the endless chain scheme claim in light of its factual and legal weaknesses, the Court finds the $15 million business opportunity fund sufficient to provide fair and adequate compensation to those class members who suffered harm investing in Herbalife as an entrepreneurial venture.[26]

Finally, the objectors contend that the settlement fails to adequately compensate class members for losses incurred on packaging and handling and freight fees. (*See* Dkt. No. 121 at 24–28.) They estimate that these losses exceed at least $260 million. (*Id.* at 25.) This estimate is based upon what they believe to be a reasonable markup of 100%. (*Id.*) The Court has already discussed some of the litigation risks associated with this theory of recovery, particularly the fact that discovery revealed many Herbalife members and distributors resold purchased products at the full suggested retail value, thereby recouping the cost of packaging and handling and freight fees. These class members suffered no monetary loss and cannot be included in the estimated value of the claim. Additionally, the Settlement Agreement provides compensation to those Business Opportunity Claimants who in fact lost money investing in Herbalife products, as these claimants are entitled to the lesser of 100% of their estimated total losses (including losses incurred in connection with packaging and handling and freight fees) or 75% of the total value of the products they purchased. And class members submitting claims to the product return fund will be compensated for the costs of packaging and handling and freight fees, as they will receive a full refund for any unused, unopened products they return to Herbalife. Thus, objectors' contention that the settlement unfairly deprives class members of compensation for these losses is somewhat speculative and does not accord with a plain reading of the Settlement Agreement.

---

[26] That each Business Opportunity Claimant will be entitled to the full value of his or her claim and will not be subject to a pro rata deduction supports this conclusion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

In sum, the Court finds that the monetary component of the proposed Settlement Agreement is sufficient to fairly and adequately compensate the class. Although a larger award is theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted). In light of the risks and expense associated with proceeding to trial, the Settlement Agreement will provide class members with significant and immediate relief.

**b. The Corporate Reforms**

In addition to providing monetary relief, the Settlement Agreement also requires Herbalife to maintain thirteen corporate reforms aimed at ensuring Herbalife does not engage in unfair, deceptive, or misleading business practices for a period of three years. (*See* Settlement Agreement ¶ 5.) The objectors contend that the proposed injunctive relief falls short of that sought in the First Amended Complaint, as the settlement does not prohibit Herbalife from rewarding members and distributors for their recruiting efforts. (*See* Dkt. No. 121 at 44.) The Court has already found, however, that Plaintiffs' endless chain scheme claim was far from certain. Accordingly, a fair and reasonable settlement agreement need not require Herbalife to entirely upend its business model.

The objectors also contest the lack of an enforcement mechanism for ensuring that Herbalife in fact abides by the reforms. (*See id.* at 45.) The Court does not find this argument to be persuasive. The Settlement Agreement vests the Court with continuing jurisdiction to enforce its terms. (*See* Settlement Agreement ¶ 8.4) Additionally, Plaintiffs' counsel represent that they will oversee the reforms even though they have not requested any fees for their potential future efforts.[27] (Mot. for Final Approval at 40.) And as to any alleged "judicial imprimatur," (*see* Dkt. No. 121 at 44), the Court notes that its approval and enforcement of the proposed Settlement Agreement does not bear on the ultimate merits of Plaintiffs' claims and allegations, nor amount to an endorsement of the thirteen corporate reforms' comprehensiveness. The Court's role at this stage is

---

[27] Plaintiffs' counsel affirmed as much at the hearing.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

limited to assessing whether the proposed settlement represents a fair, reasonable, and adequate resolution of this case free from collusion, fraud, or overreaching.[28]

Although the objectors attack the substance of the proposed reforms, the Court finds them to be fair and reasonable. The settlement requires Herbalife to include its Statement of Average Gross Compensation in the membership application, ensure that new members acknowledge receipt and review of the statement, and disclose in the statement the total number and percentage of its members who receive no compensation. (*See* Settlement Agreement ¶¶ 5.1.11–5.1.13.) These reforms adequately address Plaintiffs' allegation that Herbalife failed to disclose the fact that many members and distributors generated no income from their participation in the program. The agreement also requires Herbalife to prohibit both: (1) current members from requiring new recruits to purchase Herbalife products as a condition to membership, and (2) current members from selling leads to other members or purchasing leads from any source. (*See id.* ¶¶ 5.1.8, 5.1.9.) These requirements go to the core of Plaintiffs' endless chain scheme claim and help ensure that current members do not take advantage of other members or new recruits. Additionally, the agreement provides for several broad-based reforms aimed at mitigating the losses members may incur in investing in Herbalife as a business venture. To that end, the settlement requires Herbalife to: (1) discourage members from incurring debt, (2) require members to serve a minimum time and receive training before opening a nutrition club, and (3) maintain procedures for enforcing its internal rules and regulations. (*See id.* ¶¶ 5.1.5, 5.1.7, 5.1.10.)

The objectors assert that these reforms are inadequate, as Herbalife has already initiated some in response to the filing of this lawsuit. The objectors also contend that the limited duration of the reforms renders them unreasonable and inadequate. That Herbalife instituted some of the reforms before the parties reached the proposed Settlement Agreement does not render the relief illusive or incomplete. Pursuant to the

---

[28] Additionally, as Plaintiffs' counsel argued at the hearing, the objectors' concerns regarding the substantive adequacy of the proposed corporate reforms are internally inconsistent. On the one hand, the objectors assert that the reforms do not require meaningful change and will not provide real class relief. At the same time, however, the objectors argue that the Court should not approve the reforms because doing so may discourage government regulators from investigating Herbalife. The notion that the reforms are meaningless, and yet at the same time substantial enough to halt investigations into Herbalife's business practices, is purely speculative and lacks a logical basis.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

settlement, Herbalife will be required to maintain the reforms for a period of three years. Absent a judicially-enforceable settlement agreement, Herbalife would be free to revert to its old policies, practices, and procedures. Accordingly, the Court is satisfied that the proposed injunctive relief will confer a real benefit on the class as a whole.

### c. The Method of Distribution

In assessing the overall fairness and reasonableness of the amount offered in settlement, the Court must also consider the method of distribution. "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). The proposed method of distribution here will fairly compensate class members according to their injuries.

Class members who joined Herbalife to pursue a business opportunity are entitled to monetary compensation from the $15 million business opportunity fund. Those claimants who purchased at least $750 in Herbalife products will receive a pro rata award equal to the lesser of 100% of his or her total losses or 75% of the total value of the products he or she purchased. Those claimants who purchased less than this threshold amount will receive a flat $20 award. Although the objectors and amici aver that this system unfairly favors claimants who purchased greater values and quantities of Herbalife products, the differential treatment appears reasonable in light of the facts and circumstances of this case. Survey evidence suggests that a majority of all Herbalife members and distributors joined to obtain a product discount and not to pursue a business opportunity. Given the product purchase requirements for becoming a supervisor, members who purchased less than $750 worth of Herbalife product in one year are likely to be among those who joined primarily for self-consumption purposes and who suffered no loss. To the extent these individuals affirm that they did join for a business purpose, however, they are still entitled to $20, as well as full relief from the product return fund. Conversely, those members who purchased at least $750 worth of product in one year are likely to have joined Herbalife to pursue a business opportunity. And these individuals will be compensated for the full value of their estimated loss, or 75% of the value of the products they purchased. Thus, although it is possible some class members qualifying for

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|----------|--------------------------|------|--------------|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

only a flat rate award would have been entitled to greater compensation if they qualified for a pro rata award, the likelihood of this occurrence is low.[29]

Class members who did not join Herbalife to pursue a business opportunity cannot obtain monetary relief from the $15 million business opportunity fund, but they may seek compensation from the product return fund. To do so, they need only return unopened, unused products to the company; they will receive a refund for the full retail value of the products and will not be charged for return shipping. Although the Settlement Agreement limits refund awards to products purchased over one year ago, this limitation is reasonable in light of Herbalife's policy permitting members to return unopened, unused products within one year of purchase.

Given that the reason why an individual joined Herbalife impacts whether or not he or she is likely to have suffered any damages, the Settlement Agreement's distinction between Business Opportunity and non-Business Opportunity Claimants is reasonable. Further, the distinction between pro rata and flat rate Business Opportunity Claimants is based upon reasonable assumptions regarding the likelihood and scope of their potential losses. Finally, the method of distribution among the pro rata claimants is logically tied to each claimant's loss or investment. Overall, these parameters ensure that the business opportunity awards are fair and reasonable. That every class member, regardless of his or her reason for joining or level of investment in Herbalife, may return unused, unopened products for a full refund and stands to benefit from the corporate reforms provides additional relief to which the class members would not otherwise be entitled. Based on the forgoing, the Court finds the plan of allocation fair, adequate, and reasonable.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

The fifth factor looks to the extent of discovery and the stage of the proceedings. These considerations may reflect the parties' knowledge of the case and are therefore relevant to the overall fairness of a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (internal quotation marks omitted). "A settlement following sufficient discovery and genuine

---

[29] Indeed, none of the eighteen objectors claim to have been prejudiced in this manner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

arms-length negotiation is presumed fair." *Id.*; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (noting that a court may consider both formal and informal methods of discovery, investigation, and research).

The parties began conducting formal discovery soon after Mr. Bostick filed the original Complaint. In late 2013, the parties exchanged initial disclosures and served requests for production. (*See* Joint Decl. ¶ 15.) The parties resolved a discovery dispute regarding Herbalife's refusal to produce certain documents, pursuant to which Herbalife agreed to produce over 18,500 physical documents totaling over 148,000 pages, as well as 2.4 million pages of electronic text files. (*Id.* ¶¶ 16–17.) These documents contained information regarding, among other matters, distributor and member levels as well as purchase information. (*Id.* ¶ 18.) Plaintiffs reviewed and analyzed the documents with the aid of a documents expert. (*Id.*) Both parties conducted numerous depositions and served interrogatories, requests for admissions, and further requests for production. (*Id.* ¶ 19.) Plaintiffs also investigated Herbalife nutrition clubs and fit camps; interviewed current and former Herbalife members, distributors, and consumers; sampled Herbalife products; interviewed Herbalife senior executives and managers; and inspected the company's quality control facilities, research and development offices, and corporate headquarters. (*Id.* ¶¶ 20–21.)

In addition to these discovery and investigatory efforts, Plaintiffs also conducted extensive legal research and consulted with experts regarding the question of class certification. (*Id.* ¶ 22.) Beginning in February 2014 and continuing through August 2014, the parties engaged in extensive negotiations, including attending six formal mediation sessions before Judge Weinstein and his co-mediator. (*Id.* ¶ 26.) The parties also conducted direct settlement negotiations, and Plaintiffs retained an independent evaluator to value the case in light of the claims, facts, and Herbalife's factual and legal defenses. (*Id.* ¶¶ 27, 31–32; *see also* Larson Decl.)

Based on the foregoing, it is clear that both parties have a comprehensive understanding of the underlying facts, the strengths and weaknesses of their case, and the risks of further litigation. The information known to the parties was sufficient to permit a competent and informed decision regarding the propriety of the proposed settlement. Additionally, although the objectors disagree with class counsel's ultimate evaluation of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

the strength of Plaintiffs' case, they do not appear to attack class counsel's knowledge of the facts and legal issues presented. This factor thus strongly favors final approval.

### 6. The Experience and Views of Class Counsel

A district court should also consider the experience and views of class counsel, as "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the record clearly reflects Plaintiffs' counsel's competency and experience. (*See* Joint Decl. ¶¶ 1–10.) Together, Plaintiffs' counsel have over fifty-nine years of representative experience. (*Id.* ¶¶ 5, 8.) Mr. Foley has significant class action litigation experience and has served as lead or co-lead in at least thirteen class actions, including cases involving alleged consumer fraud and Ponzi schemes. (*Id.* ¶ 6.) Mr. Petersen has prosecuted class actions involving unfair business practices and consumer fraud under the UCL and FAL. (*Id.* ¶ 9.)

Based on this experience and their knowledge of the facts and issues involved in this case, class counsel believe that the Settlement Agreement represents a fair, adequate, and reasonable resolution that is preferable to what is sure to be lengthy, contentious, and uncertain litigation. (*Id.* ¶ 33.) Judge Weinstein, the mediator who helped the parties resolve this dispute, agrees that the proposed settlement "represents a well-reasoned and sound resolution of this complex and highly uncertain litigation." (Weinstein Decl. ¶ 3.) Both Judge Weinstein and the independent evaluator Plaintiffs' hired to value their case believe that the settlement's monetary and non-monetary components reasonably reflect the parties' factual, legal, and damages positions. (*Id.* ¶¶ 12, 14, 18; *see also* Larson Decl. ¶ 11 (noting that the proposed settlement is within the range he suggested).) Thus, this factor also favors approval.

### 7. The Presence of a Governmental Participant

Although no government entities or agencies are a party to this action, Plaintiffs complied with the notice requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, by providing notice to the requisite state and federal government officials. The Court has not received any objections from state or federal entities in connection with these proceedings. Nevertheless, Plaintiffs' counsel represent that the parties met

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

and conferred with the representatives of several state Attorneys' General's offices in response to notice of the proposed settlement. (*See* Mot. for Final Approval at 21.) These discussions led to an amendment to the scope of the settlement release to ensure that the released claims "shall not be deemed to include any claims asserted against any of the Released Parties by any federal, state, or local governmental agency or similar authority, arising out of any statutes, rules, regulations or ordinances over which such entity has jurisdiction, provided that such claims shall not result in or allow a double recovery for any Class Member." (*See* Dkt. Nos. 108, 109.) This amendment appears to have cured the concerns raised by state Attorneys' General, some of whom have publicly announced investigations into Herbalife's business practices. (*See* Joint Decl. ¶ 62.) Given that the lack of objections by government entities does not necessarily amount to an endorsement of a class action settlement, the Court considers this factor to be neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

The eighth factor considers the class reaction to the proposed settlement. The proposed settlement class consists of approximately 1.5 million individuals. As of April 13, 2015, 687 individuals have requested exclusion from the settlement. (Robin Notice Decl. ¶ 14.) This equates to approximately one out of every 2,183 class members. Eighteen individuals—or approximately one out of every 8,333 class members—have filed objections with the Court.[30] (*Id.* ¶ 15.) Courts generally consider a low number of requests for exclusion or objections to weigh strongly in favor of settlement approval. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").

Here, the Court finds that the overall class reaction to the settlement is favorable. Although some class members have raised vociferous objections, the number of objectors is quite small in comparison to the total class size. Courts have approved settlements where the objector-class ratio is similar to the ratio here and even higher. *See, e.g.,*

---

[30] As noted above, the two other individuals who filed objections have since withdrawn them. (*See* Dkt. Nos. 115, 116; *see also* Robin Notice Decl. ¶ 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|----------|----------------------|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's grant of final settlement approval for a class of 90,000 where forty-five class members objected to the settlement and 500 opted out); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–119 (3d Cir. 1990) (affirming final settlement approval where there were twenty-nine objectors in a class of 281 members); *In re TD Ameritrade Acc't Holder Litig.*, Nos. CV 07-02852 SBA, CV 07-04903 SBA, 2011 WL 4079226, at *7 (N.D. Cal. Sept. 13, 2011) (finding a positive class reaction where, in a class of six million, there were only twenty-three objections and less than 200 requests for exclusion). The Court has addressed some of the objectors' arguments already and will address any remaining arguments below in Part IV.C. Having considered these arguments and finding them unpersuasive, the Court finds that the overall class response, both in numbers and rationale, favors the proposed Settlement Agreement.

## C. The Remaining Objections to the Settlement Agreement

The Court has already considered some of the arguments advanced by the eighteen objectors and amici TINA.org and NCL. The Court will address the remaining objections below.

### 1. Notice and the Claims Forms

The objectors challenge the adequacy of the class settlement notice and assert that the claims form is confusing and prevented numerous class members from filing a valid, timely claim for relief. (*See* Dkt. No. 121 at 58–63.) The Court first addresses the objections to the notice and claims forms. The Court then considers the class response.

#### a. Objections to the Class Notice and Claims Forms

First, the objectors point out that the notice form "fails to provide class members with any information concerning what they might receive under the settlement." (*Id.* at 59.) The full notice form, however, clearly details the product return fund and the business opportunity cash settlement fund. (*See* Robin Notice Decl. Ex. C.) With respect to business opportunity awards, the notice details the method of distribution among individuals who purchased at least $750 worth of Herbalife products and individuals who did not. (*Id.* Ex. C at 5.) Given that each class member's potential recovery depends on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

the amount of Herbalife product he or she purchased, as well as the amount of his or her projected loss, it is not possible for the notice form to estimate what each individual class member might receive. As the notice clearly apprises class members of the method by which their awards will be calculated, the fact that it does not estimate an individual's potential recovery is immaterial. Moreover, the claims administrator has notified all claimants of the actual value of their settlement awards. (*Id.* ¶ 23.)

The objectors also contend that the claims form fails to apprise Business Opportunity Claimants that their award may be subject to a pro rata deduction. (Dkt. No. 121 at 60.) The full notice form, however, expressly states as much, (*see* Robin Notice Decl. Ex. C at 5), and the claims form directs class members to refer to the full notice form for an explanation of how each award will be calculated, (*see id.* Ex. D at 4). Further, the claims form states that all business opportunity awards "may be reduced based on the amount of funds available to satisfy all claims (see the Class Notice for more details)." (*Id.* Ex. D. at 4.) Accordingly, this objection lacks merit. It is also irrelevant given that no business opportunity awards will be subject to pro rata deduction.

The objectors next assert that the notice improperly implied that class members could not file both an objection to the settlement and a claim for payment. (Dkt. No. 121 at 59.) At least ten of the eighteen objectors have filed declarations demonstrating their confusion on the issue. The Court is mindful that the notice form does not expressly state that a class member may both object to the settlement and file a claim. Nevertheless, some confusion among class members is to be expected. Given that each page of the class notice directs members to a toll-free questions line, as well as the settlement website, class members seeking further clarification could readily resolve the issue.

Finally, the objectors believe that the class notice failed to reach Herbalife's Latino members and distributors. (Dkt. No. 121 at 60–63.) They believe that the email and postcard notices were insufficient, and that a greater outreach effort should have been made to ensure these class members properly understood their rights under the Settlement Agreement. Although the Court agrees in theory that a broader notice campaign could have benefited the class, the notice procedures approved here comport with due process and Rule 23. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (explaining that Rule 23 does not require actual notice to each class member). The objectors do not dispute that the combined email and postcard notices reached approximately 92.91% of

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|----------|--------------------------|------|--------------|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

the class. (*See* Robin Notice Decl. ¶ 11.) Nor do they dispute that the claims administrator distributed the notices and claims forms in both English and Spanish. (*Id.* ¶ 3, Exs. A–D.) Under the circumstances, the notice was sufficient.

### b. Objections to the Class Response

In addition to challenging the propriety of the class notice and claims forms, the objectors assert that the notice procedures have "proven to be an abject failure." (Dkt. No. 134 at 3.) They point to the low claims rate and the short claims period as evidence that the class notice failed to reach a majority of the class members. (*Id.* at 3–11.) The Court recognizes that the class response rate is low, as only 7,457 class members have filed a claim for relief. (*See* Supplemental Robin Notice Decl. ¶ 4.) This equates to a response rate of less than 1%.

Many courts have found that the class response rate is not the touchstone of the adequacy of the class notice. For example, the court in *In re Packaged Ice Antitrust Litigation*, a case involving a class response of less than 1% of the total number of mailed notices, explained that "this ratio is not dispositive" and "should not be given great significance" because "many factors affect response rates." No. CV 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (finding a positive class reaction where few class members sought exclusion and no objections were filed). The court in *In re Serzone Products Liability Litigation* expressed a similar view in stating that "the adequacy of notice is measured by whether notice reached [c]lass [m]embers and gave them an opportunity to participate, not by actual participation." 231 F.R.D. 221, 236 (S.D. W. Va. 2005). Here, the settlement notice reached 92.91% of the class. More importantly, however, the facts and circumstances of this case reasonably suggest a low response rate. As has been discussed throughout this Order, survey evidence suggests that most Herbalife members and distributors joined to obtain a product discount. These members are unlikely to have unopened and unused Herbalife products they wish to return for a refund, as they are most likely to have purchased the products for personal consumption. Further, these individuals are unlikely to have suffered any financial losses on a failed business opportunity, as their reason for joining the company was not to generate income or pursue an entrepreneurial enterprise. Under these circumstances, and given the low number of objections and requests for exclusion, the Court finds that the

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

low response rate here comports with Rule 23 and does not per se demonstrate the Settlement Agreement's inadequacy.

## 2. The Scope of the Release

The Settlement Agreement's release extends to Herbalife's "present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives." (Settlement Agreement ¶ 8.1.) The objectors assert that the release is overbroad and will unfairly deprive class members of the right to sue lead generators or third parties who solicited class members to join Herbalife and caused them harm. (Dkt. No. 121 at 55–58.) According to the objectors, the scope of the release will be interpreted by future courts according to its plain terms, such that the parties' subjective intent that the release not include third party claims will not be effected. Even assuming the scope of the release may extend to Herbalife's officers and directors who engaged in lead generation, however, by its plain terms it does not extend to third party lead generation businesses unassociated with Herbalife. As a result, class members believing these businesses harmed them may still file separate lawsuits to recover damages and consequential losses.

## 3. Propriety of the *Cy Pres* Fund

TINA.org and NCL object to the *cy pres* award for unclaimed portions of the $15 million business opportunity settlement fund. (*See* Dkt. Nos. 114, 117.) A *cy pres* remedy "is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). The doctrine allows a court to distribute unclaimed portions of a class action settlement "to the 'next best' class of beneficiaries." *Id.* (internal quotation marks omitted) (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). "The district court's review of a class-action settlement that calls for a *cy pres* remedy is not substantively different from that of any other class-action settlement except that the court should not find the settlement fair, adequate, and reasonable unless the *cy pres* remedy 'accounts for the nature of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" *Id.* at 819–20 (citing *Nachshin*, 663 F.3d at 1036).

The Settlement Agreement here provides that any unclaimed portions of the business opportunity cash settlement fund will be distributed to the Consumer Federation of America pursuant to the *cy pres* doctrine. Amici TINA.org and NCL primarily assert that this distribution is unfair to those Business Opportunity Claimants who only qualify for a $20 flat rate award. For the reasons detailed above, however, the Court finds the method of distribution here to be fair, adequate, and reasonable based upon the facts and circumstances of this case.

Additionally, the *cy pres* award comports with the reasonableness factors set forth by the Ninth Circuit. The Consumer Federation of America is a nonprofit organization founded to advance consumer interests through research, education, and advocacy. (*See* Decl. of Stephen Brobeck in Supp. of Mot. for Preliminary Approval ("Brobeck Decl.") ¶ 3.)[31] The organization is frequently invited to give congressional testimony on issues related to consumer interests, and the organization maintains several education and outreach initiatives. (*Id.* ¶¶ 5–7.) The organization has represented that it will use the *cy pres* award to further its existing education initiatives or, if sufficient funds exist, develop a new one focused specifically on multi-level marking programs like Herbalife. (*Id.* ¶ 8.) Given the nature of this case and Plaintiffs' claims, the Consumer Federation of America is an appropriate *cy pres* recipient.

## 4. Exclusion of Members and Distributors Subject to the Arbitration Clause

The objectors next contend that the Settlement Agreement unfairly excludes Herbalife members and distributors who signed membership agreements after September 2013 containing an arbitration provision. (Dkt. No. 121 at 28–34.) Some of the bases for this objection do not bear on the overall fairness and reasonableness of the proposed settlement. For example, the objectors argue that Herbalife waived the right to enforce the arbitration provision by failing to assert it at any time during the litigation, and that the provision is illusory and unenforceable. (*See id*. at 33–34.) The enforceability of the

---

[31] A copy of this declaration is available at Docket No. 97.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

arbitration clause is not at issue here. The relevant inquiry is whether it is fair and reasonable to exclude individuals subject to the clause from the settlement class.

To that end, the objectors have argued that the Settlement Agreement unfairly excludes these individuals from the Rule 23(b)(3) class while including them in the Rule 23(b)(2) class. (*See id.* at 31–33.) The parties' second stipulation to amend the agreement, however, cures this potential defect. The amendment changes the class definition to exclude from the settlement class "all Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Membership Application Agreement revised during or after September 2013." (*See* Dkt. No. 127 (amending Settlement Agreement ¶ 1.13.2).) The amendment further clarifies that the scope of the release "shall not include any individual claims asserted by any Settlement Class Member who is excluded from the Settlement Class pursuant to Paragraph 1.13.2 and who has agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013." (*Id.* (amending Settlement Agreement ¶ 8.6).) These amendments clearly exclude individuals subject to the arbitration provision from the settlement class and ensure that such individuals' claims will not be released pursuant to the settlement. Thus, these individuals will not suffer any disparate treatment or prejudice. In fact, they are likely to benefit to the same degree as settlement class members from the proposed corporate reforms, without any accompanying waiver of the right to sue Herbalife individually for damages or further non-monetary relief.

Finally, the objectors argue that the arbitration agreement likely covers all Herbalife members and distributors who have remained active since Herbalife instituted the agreement in September 2013. (Dkt. No. 121 at 30–31.) To support this argument, the objectors point to Herbalife's Agreement of Distributorship, which states that "the Rules of Conduct and Distributor Policies, the Sales and Marketing Plan, Ordering Procedures and Sample Forms" along with "such other rules and policies as Herbalife has published, or in the future may publish, together with such modifications and amendments as Herbalife shall make from time to time in its sole and absolute discretion (collectively, the "Rules"), are each hereby incorporated into this Agreement of Distributorship." (*See* FAC Ex. C at 39.) To the extent the objectors contend that all

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

current Herbalife members and distributors are subject to the September 2013 arbitration agreement via this clause, the Court disagrees. The objectors have cited no authority for the proposition that these members and distributors could be subject to an arbitration provision contained within an agreement they neither agreed to nor signed at the time they joined Herbalife simply because the company retains the right to amend its rules and policies. Nor is it clear to the Court that a binding contract such as an arbitration agreement could be included within the definition of a corporate "rule or policy." Accordingly, the objectors have identified no basis for their contention that the Settlement Agreement's exclusion of individuals expressly subject to the arbitration agreement renders the settlement unfair, unreasonable, or inadequate.

In sum, the Court finds that the majority of the relevant factors favor a finding that the Settlement Agreement is fair, adequate, and reasonable. The Court also finds that the arguments advanced by a small number of objectors to be unpersuasive. Accordingly, Plaintiffs' Motion for Final Approval is **GRANTED**.

### D. Plaintiffs' Motion for Fees

Plaintiffs' Motion for Fees requests (1) an award of attorneys' fees equal to $5.25 million, or 30% of the $17.5 million combined total value of the business opportunity settlement fund and the product return fund;[32] (2) reimbursement for class counsel's costs and expenses equal to $212,862.64; and (3) incentive awards for the named plaintiffs, including a $10,000 award for Mr. Bostick and $5,000 awards for the remaining class representatives. The Court will address each request in turn.

#### 1. Class Counsel's Request for Attorneys' Fees

##### a. Whether an Award of Attorneys' Fees from the Gross Settlement Sum is Appropriate

Plaintiffs' counsel seeks a percentage method fee award based upon the $17.5 million gross settlement sum. As discussed above, an award of attorneys' fees from a common fund is appropriate only where the court can: "(1) sufficiently identify the class

---

[32] For purposes of clarity and efficiency, the Court will refer to this sum as the gross settlement sum.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|----------|--------------------------|---|------|--------------|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citing *Van Gemert*, 444 U.S. at 478–79). These criteria are not met when the litigants "simply vindicate a general social grievance." *Van Gemert*, 444 U.S. at 479. But so long as each class member has "an undisputed and mathematically ascertainable claim" to a sum recovered on his or her behalf, a fee award from the sum is appropriate. *Id.*

The objectors assert that the proposed fee method is inappropriate because the $2.5 million product return fund is reversionary and has not been exhausted by the existing class claims. (*See* Dkt. No. 134 at 5 n.2.) According to the objectors, any fee award should be based upon the aggregate value of the actual claims for product returns rather than the $2.5 million fund. The United States Supreme Court and the Ninth Circuit specifically addressed this issue in *Van Gemert* and *Williams v. MGM-Pathe Communications Co.* In *Van Gemert*, the Supreme Court explained that a defendant's "latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." 444 U.S. at 482. And in *Williams*, the Ninth Circuit, relying on the reasoning in *Van Gemert*, held that where class counsel seek a fee award based on the percentage method, the percentage should be applied to the entire common fund. 129 F.3d 1026, 1026–27 (9th Cir. 1997) (reversing district court's fee award where the court based the fee on class members' actual claims against the common fund rather than the entire value of the common fund).

Thus, a percentage method fee award based upon the $17.5 million gross settlement sum here is appropriate so long as the *Staton* criteria are met. The first requirement is satisfied, as the class definition is clear and the parties have identified a class of approximately 1.5 million individuals. The Court can also accurately trace the benefits of the settlement and shift the fee with some exactitude, as the method for apportioning each class member's business opportunity award, product return award, or both is fair and readily calculable. *See Van Gemert*, 444 U.S. at 479. The Court thus approves class counsel's request to base the fee award upon the $17.5 million gross settlement sum.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|----------|----------------------|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

### b. Whether Class Counsel's Requested Fee is Fair and Reasonable

The Court next considers whether the particular fee request is fair and reasonable. Here, Plaintiffs' counsel request a fee equal to 30% of the $17.5 million gross settlement sum, or $5.25 million. This request diverges from the Ninth Circuit's 25% benchmark for percentage method fee recovery. *See Hanlon*, 150 F.3d at 1029. Nevertheless, the Ninth Circuit has emphasized that although the benchmark is "a starting point for analysis," it "may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048.

In evaluating a percentage method fee request that diverges from the benchmark, the relevant inquiry is whether, under all the facts and circumstances of the case, the percentage is reasonable. *Id.* Factors to consider include: (1) the results achieved; (2) the risk undertaken by class counsel in pursuing the case; (3) whether the settlement generated benefits beyond a cash payment; (4) the market rate for similar representations; and (5) the nature of the representation, including whether it was executed on a contingency basis. *Id.* at 1048–50. Some of these factors overlap with those relevant to a fee award's overall fairness and reasonableness. *Compare In re Omnivision Techs.*, 559 F. Supp. 2d at 1046, *with Vizcaino*, 290 F.3d at 1048–50. Accordingly, the Court will simultaneously consider the factors relevant to fee requests in general, as well as those relevant to requests above the 25% benchmark.

### i. The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Here, class counsel obtained a total of $17.5 million to be distributed among the class members, with $2.5 million reserved for product returns and $15 million reserved for class members who joined Herbalife to pursue a business opportunity and suffered a loss. The average business opportunity award is $1,101.48, and the largest award is $98,588.36. (*See* Supplemental Robin Notice Decl. ¶ 5.) All class members with unopened and unused Herbalife products will receive a full refund. (Robin Notice Decl. ¶ 22.) Thus, the settlement will provide a real and immediate benefit to class members, and this result is clearly favorable in light of the complex factual and legal issues involved in the case. This factor favors an increase from the 25% percentage method benchmark.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

### ii. The Benefits Generated Beyond Cash Payment

In addition to the $17.5 million gross settlement sum, Plaintiffs' counsel obtained injunctive relief by negotiating for thirteen separate corporate reforms. As detailed above, these reforms will benefit all class members, regardless of why they joined Herbalife or whether they suffered any actual monetary loss. In considering the fairness and reasonableness of a fee request, a district court should recognize the value of non-monetary relief, *see Vizcaino*, 290 F.3d at 1049, and may increase an award "to reflect the benefits to the public flowing from th[e] litigation," *see Bebchick v. Washington Metropolitan Area Transit Commission*, 805 F.2d 396, 408 (D.C. Cir. 1986). The corporate reforms Plaintiffs' counsel achieved suggest that an award higher than the benchmark is appropriate in this case.

### iii. The Risks of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. *In re Omnivision*, 559 F. Supp. 2d at 1046–47. Throughout this Order, the Court has detailed the various risks involved in this litigation. For example, the parties did not litigate the issue of class certification before reaching the proposed settlement. Additionally, extensive fact discovery revealed weaknesses with respect to each of Plaintiffs' claims. Given the uncertainty that Plaintiffs would prevail on a motion for class certification, a full trial on the merits, and a likely appeal, this factor favors an upward adjustment from the benchmark.

### iv. The Skill Required and the Quality of Class Counsel's Work

The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiffs' counsel's overall performance. *See In re Omnivision*, 559 F. Supp. 2d at 1047. As the *In re Omnivision* court noted, complex national class actions such as this one "require[] unique legal skills and abilities." *Id.* (internal quotation marks omitted). The Court has detailed the factual and legal complexities in this case, as well as

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

Plaintiffs' counsel's skill and experience, in connection with the Motion for Final Approval. The Court will not repeat these findings here. Overall, the Court finds that this factor generally favors Plaintiffs' counsel's fee request given the large size of the class, the legal uncertainties, and the amount recovered in settlement.

> ### v.    The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel

The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. The risk that counsel will not recover, as well as the financial burden accompanying the contingent nature of the representation, may justify a higher percentage fee award. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (awarding 28% fee where class counsel spent three years and over 7500 hours litigating on a contingency basis); *see also Vizcaino*, 290 F.3d at 1050 (affirming district court's 28% fee award where class counsel litigated the case for eleven years, and, as a result, declined other work and suffered a decrease in annual income).

Plaintiffs initiated this case just over two years ago. Throughout the litigation, Plaintiffs' counsel worked on a contingency basis, with a combined total investment of 6,479.75 hours. (*See* Decl. of Scott Petersen in Supp. of Mot. for Fees ("Petersen Fee Decl.") ¶ 7; Decl. of Thomas G. Foley in Supp. of Mot. for Fees ("Foley Fee Decl.") ¶ 64.) During this time, Plaintiffs' counsel received no compensation, advanced approximately $212,862.64 in expenses, and had to decline other legal work for which they would have been paid on an hourly basis. (*See* Mot. for Fees at 21–22.) And all of this effort was at the risk that they would not receive any compensation if Plaintiffs lost at trial. Under the circumstances, the Court finds that class counsel's significant investment of time and effort into this case on a contingency basis warrants an upward adjustment from the 25% benchmark for fee awards.

> ### vi.    The Awards Made in Similar Cases

Plaintiffs' counsel cite to numerous cases awarding fee awards in excess of the 25% benchmark, ranging from 26.6% to 37.1%, with common awards of 30% and 33.33%. (*See* Mot. for Fees at 19–21.) These cases generally support class counsel's request for an upward adjustment from the benchmark. The Court notes, however, that

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

many of these cases involved securities litigation, more prolonged proceedings than this one, successful appeals, and larger settlement sums. *See, e.g.*, *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-02147 PHX, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (approving 33.33% fee award in a securities class action lasting seven years); *In re Heritage Bond Litig.*, No. CV 02-1475 DT, 2005 WL 1594389, at *17 (C.D. Cal. June 10, 2005) (awarding 33.33% in a securities case involving a $27.78 million settlement).

### vii.    The Reaction of the Class

Finally, the reaction of the class is relevant in determining the overall fairness and reasonableness of an award of attorneys' fees. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). The Court has already discussed the class reaction to the Settlement Agreement at length. In sum, the Court finds the reaction to be favorable, but not overwhelmingly so. That a more favorable reaction is theoretically possible does not persuade the Court that class counsel's requested fee is unfair or unreasonable. But the finding that the class has not clearly and significantly responded in favor of the settlement suggests that a more appropriate award may require a percentage less than the requested 30%.

### viii.    The Balance of the Factors

In sum, the Court finds that all of the relevant factors favor an upward adjustment from the Ninth Circuit's 25% benchmark for percentage method fee awards. Nevertheless, after considering the amount in settlement, the class reaction, the number of claims, and the fact that the parties did not proceed past the pleadings stage, the Court finds that a fee award of 28% of the gross settlement fund, or $4.9 million, will more than adequately compensate Plaintiffs' counsel for their time and efforts while ensuring that sufficient funds remain to fully compensate all claimants, without a pro rata deduction, and to assess a *cy pres* award that may allow the Consumer Federation of America to establish an educational initiative directed at multi-level marketing schemes. The Court will compare the 28% fee award it finds most appropriate, as well as Plaintiffs' counsel's requested 30% fee award, to the lodestar as an additional measure of the fairness and reasonableness of the Court's proposed fee award.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

### c. The Lodestar Method Cross-Check

Courts may apply the lodestar method as a "cross-check" on the reasonableness of a percentage-based fee award. *Vizcaino*, 290 F.3d at 1050. The lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A court may adjust the lodestar figure upward or downward by an appropriate multiplier to reflect "a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941–42 (internal quotation marks omitted). Where class counsel's investment of time in the litigation is minimal, such as in the case of an early settlement, the lodestar calculation may favor a lower percentage. *Vizcaino*, 290 F.3d at 1050.

Here, Plaintiffs' counsel calculate their attorneys' fees under the lodestar method to be $3,076,403.50, based upon 6,479.75 working hours at rates ranging from $75 to $600 per hour. (*See* Petersen Fee Decl. ¶¶ 7–9, Ex. A; Foley Fee Decl. ¶¶ 62–67, Ex. E.) Counsel has reasonably supported this figure with evidence of the hours worked on this case, (*see generally* Petersen Fee Decl.; Foley Fee Decl.), and case law supporting the reasonableness of the hourly rates, (*see* Mot. for Final Approval at 23–24). Counsel's suggested multiplier of 1.7 equates the attorneys' fees with the $5.25 million class counsel has requested. A multiplier of 1.59 equates the attorneys' fees with the $4.9 million the Court finds more appropriate. Both of these multipliers are well within the range courts have approved as fair and reasonable. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 (affirming district court's approval of a 3.65 multiplier). For the reasons discussed above, however, the Court finds an award of $4.9 million, based upon the lower 1.59 multiplier, to be most appropriate and reasonable in this case.

### 2. Class Counsel's Request for Reimbursement is Reasonable

Class counsel also request reimbursement for the $212,862.64 they advanced in costs and expenses in connection with the litigation. (*See* Mot. for Fees at 24.) At least $175,609.62 of these expenses includes fees for legal research, court filings, transcripts, expert witness consultation, mediation, photocopying, postage, and other necessary costs. (*See* Petersen Fee Decl. Ex. B; Foley Fee Decl. Ex. F.) Class counsel has adequately

| |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

documented these expenses, all of which may be reimbursed. *See Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."). The Court therefore approves reimbursement for these costs.

The Court declines to award reimbursement for two categories of expenses at this time. Plaintiffs' counsel request $590.98 for "miscellaneous" expenses. (*See* Petersen Fee Decl. Ex. B.) Because counsel has not apprised the Court as to the nature or use of these expenses, the Court cannot reasonably conclude whether they were necessary for this litigation. Class counsel also request $36,662.04 for "travel/meals." (*See id.* Ex. B; Foley Fee Decl. Ex. F.) This Court does not find meal expenses to be a necessary cost of litigation that should be borne by the class. Accordingly, Plaintiffs' counsel's request for reimbursement for these expenses is **DENIED**, as the Court cannot segregate travel costs from meal costs based upon the existing record. This denial is without prejudice, and the Court will review a renewed request should class counsel wish to file supplemental declarations or documentation appropriately identifying which costs were attributable to travel, which costs were attributable to meals, and why the costs were necessary.

### 3. Class Counsel's Request for Incentive Awards is Reasonable

In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless "fairly typical." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are designed "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. Factors to consider in determining whether to approve an incentive award include:

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs' counsel request an incentive award of $10,000 for Mr. Bostick and awards of $5,000 for the remaining named plaintiffs. (*See* Mot. for Fees at 24–25.) All of the relevant factors favor the proposed incentive awards. The named plaintiffs have all contributed their time and resources to this case, aided class counsel's discovery efforts and litigation strategy, provided supporting declarations, and assisted with the settlement negotiations. (*See generally* Joint Decl. Exs. B–F.) And given that Mr. Bostick was the only plaintiff named in the original Complaint, it is appropriate to compensate him for the extra time and effort he expended on the litigation.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval, including the parties' second stipulation to amend the Settlement Agreement and Plaintiffs' Motion to Increase Awards. The Court also **GRANTS in part** Plaintiffs' Motion for Fees, as set forth below:

1. The Court approves class counsel's request for attorneys' fees in the amount of $4.9 million as fair and reasonable.
2. The Court approves class counsel's request for reimbursement for costs and expenses in the amount of $175,609.62.
3. The Court approves class counsel's request for incentive awards and directs payment of $10,000 to Mr. Bostick and $5,000 each to Ms. Vasko, Ms. Trotter, Ms. Molnar, and Mr. Cote.

The parties shall file a proposed judgment in accordance with this order **by no later than Friday, May 29, 2015 at 5:00 p.m.** Should class counsel wish to file additional documentation regarding the denied expenses, these documents shall be filed by not later than the same date and time.

# Exhibit 5

JS-6

Philip D. Dracht (SBN 219044)
  pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
  spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
  jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
  tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
  jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick, Anita Vasko,
Judi Trotter. Beverly Molnar. and Chester Cote

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, *et al.*, | CASE NO. CV 13-02488 BRO (RZx) |
| Plaintiffs, | AMENDED<br>**FINAL JUDGMENT AND ORDER<br>OF DISMISSAL** |
| vs. | |
| HERBALIFE INTERNATIONAL OF<br>AMERICA, INC., *et al.*, | |
| Defendants. | |

This matter came on for hearing on May 11, 2015. The Court has considered the Stipulation of Settlement, as amended, and all oral and written objections, briefs, and comments received regarding the proposed Settlement, and has reviewed the entire record. The Court has: (1) previously granted preliminary approval of the Stipulation of Settlement; (2) been informed by the Settlement Administrator that notice of the Settlement has been given to the Settlement Class (as defined below); (3) held a final fairness hearing at which *amici curiae*, objectors, and all parties appeared by their counsel and at which the Court afforded *amici curiae* and class members the opportunity to object to the Stipulation of Settlement ("Approval Hearing"); (4) received and reviewed Plaintiffs' Motion for Final Approval of the Settlement, Defendants' Joinder in support of Motion for Final Approval of the Settlement, and all papers filed in connection therewith, including evidence, showing why the proposed settlement is fair, adequate, and in the best interests of the represented class; and (5) considered all other arguments and submissions in connection with the proposed settlement.

By order dated May 14, 2015, the Court: (a) granted the parties' Second Stipulation to Amend the Settlement Agreement; (b) granted plaintiffs' Motion to Increase the Awards to Business Opportunity Claimants; (c) granted Plaintiffs' Motion for Final Approval of Class Action Settlement; and (d) granted in part Plaintiffs' counsel's Motion for Attorneys' Fees and Expenses.

Good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court, for purposes of this Final Judgment and Order of Dismissal, adopts the definitions set forth in the Stipulation of Settlement ("Stipulation" or "Settlement") (Dkt. 95), and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2. The Court has jurisdiction over the subject matter of this Action, the Plaintiffs, the Settlement Class Members, and Defendants Herbalife International of America, Herbalife International, Inc., and Herbalife Ltd. (collectively, "Herbalife").

3. Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, and solely for purposes of the Settlement, the Court hereby finally certifies a Rule 23(b)(2) and Rule 23(b)(3) Settlement Class, from which exclusions were permitted, defined as: "all persons who are or were Herbalife members or distributors in the United States at any time from April 1, 2009 to December 2, 2014. Excluded from the Settlement Class are the Defendants, their employees, family members, and any member who has been a member of Herbalife's President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or GET Team. Also excluded from the Settlement Class are all Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013." ("Settlement Class") With respect to the Rule 23 (b)(2) and Rule 23(b)(3) Settlement Class, this Court finds, solely for the purposes of the Settlement, that the prerequisites for a class action under Rules 23(a) and (b)(3) have been satisfied.

4. The named plaintiffs identified as parties to the First Amended Complaint shall serve as Class Representatives of the Settlement Classes. The law firms of Foley Bezek Behle & Curtis, LLP and Fabian & Clendenin, P.C. shall continue to serve as Class Counsel.

5. The definitions of the proposed classes in the First Amended Complaint are hereby amended to be the same as the Settlement Classes finally certified above.

6.      The Court finds that the form, content, and distribution (by individual notice by e-mail or direct mail to all Settlement Class Members who could be identified through reasonable efforts) of the Notice of Proposed Settlement, the Claim Form, and the Summary Notice as provided by the parties ("Class Notice") were adequate and reasonable and constituted the best notice practicable under the circumstances to all persons fitting within the definition of the Settlement Class. The Class Notice fully satisfied due process requirements, and constituted adequate notice of: (a) the nature of the case; (b) the settlement terms as set forth in the Stipulation of Settlement; (c) the Final Approval Hearing; (c) Class Counsel's intention to seek attorneys' fees and expenses and compensation for the named Plaintiffs; (d) each Class Member's right to exclude him or herself from the Settlement Class; and (e) each Class Member's right to object to the proposed settlement and to Class Counsel's application for attorneys' fees and expenses. The Class Notice has been provided to the Settlement Class (as defined above in conformity with the December 2, 2014 Preliminary Approval Order (Dkt. No. 105). Based on the evidence and other material submitted in conjunction with the Final Approval hearing, the form, content, and distribution of the Class Notice fully complied with Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.  The Court finds that appropriate notice was given by Defendants to all "appropriate State and Federal officials" under 28 U.S.C. §1715(a), and that no objections were filed.

7.      The Court approves the Settlement set forth in the Stipulation and each of the releases and other terms as fair, reasonable, and adequate to the Settling Parties. The Settling Parties shall consummate the Settlement in accordance with its terms as set forth in the Stipulation.

8.      The Court also finds that Settlement now will avoid additional and potentially substantial litigation costs, and delay and risks if the Parties continued to litigate the case. After considering the prospective and monetary relief provided as

part of the Settlement in light of the challenges posed by continued litigation, the Court concludes that Class Counsel secured significant relief for Class Members.

9.      The Court finds that the Settlement has been reached because of informed and non-collusive arm's length negotiations. The Court further finds that Plaintiffs and Defendants have conducted extensive investigation and research, and their attorneys could reasonably evaluate their respective positions. The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

10.      All Class Members were given a full and fair opportunity to participate in the Approval Hearing, and all Class Members wishing to be heard have been heard.  The Court has reviewed and considered the objections of Elvia Acosta, Sabas Avila, Miguel Calderon, Felipe Colon, Elizabeth Correa, Maria Cutzal, Juana Estala, Jose G. Garcia, Valentina Leon, Rossina Martinez, Gilberto Melchor Sanchez, Yader A. Pastran, Susana Perez, Eric Rodensky, Jose Tafoya, Olivia Torres, Julia Ulloa, Martil Palma Vellecillo, and Jeff Lokken on the merits. The Court finds that the substance of the objections to the proposed Stipulation of Settlement are without merit in light of the substantial evidence of the fairness, adequacy, and reasonableness of the proposed Stipulation of Settlement, and are hereby overruled.  Konstance Armstrong's and Wyman Jong's requests to withdraw their objections are approved. Class Members have had a full and fair opportunity to exclude themselves from the proposed Settlement and the Class. The terms of the Stipulation of Settlement and of the Court's Order shall be forever binding on members of the Class who did not timely exclude themselves.  Attached as Exhibit A to this Final Judgment is a list setting forth the name of each person who has requested exclusion from the Rule 23(b)(3) Class under the procedures set forth in the Preliminary Approval Order.

11.     The Court has considered the Motion for Attorneys' Fees, Expenses, and Incentive Awards separately from its consideration of the fairness, reasonableness, and adequacy of the Stipulation of Settlement. Any order or proceeding relating to the Motion for Attorneys' Fees, Expenses, and Incentive Awards, or any appeal from any order relating thereto or reversal or modification thereof shall not disturb or affect or delay the finality of this Judgment.

12.     This Action, and all claims contained therein, are dismissed on the merits and with prejudice as to the Plaintiffs and all Settlement Class Members and without prejudice as to any non-certified potential putative class members falling outside the definition of the Settlement Classes approved by the Court. As of the Effective Date, Herbalife and each of their present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Released Parties") shall be released and forever discharged by the Class Representatives, for themselves and as the representatives of each Settlement Class Member; each Settlement Class Member on behalf of himself or herself; and their respective present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Releasing Parties") from all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date that (1) were or could have been asserted in the complaints filed in this Action against Herbalife, or (2) are based upon, arise out of, or reasonably relate to: (i) the purchase or sale or offer of sale of any Herbalife product, including the IBP and Mini-IBP, during the Class Period; (ii) any packaging and handling or shipping charges paid in connection with purchase or sale or offer of sale of any Herbalife

product during the Class Period; (iii) the Herbalife Membership Application and Agreement, including any materials attached thereto and/or referenced therein, including the Statement of Average Gross Compensation; (iv) any actual, potential, or attempted recruitment of any Herbalife member or distributor during the Class Period; (v) any allegation that, during the Class Period, Herbalife engaged in any acts of unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme; and (vi) any of the facts, schemes, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act that have been or could have been alleged or asserted in the Action (collectively, the "Released Claims"); provided, however, that the Released Claims do not include claims arising out of (1) the purchase or sale of Herbalife's common stock, publicly traded on the New York Stock Exchange under the ticker symbol, "HLF"; (2) the calculation of bonuses or payments for the sale of Herbalife products owed by Herbalife to any Settlement Class Member, to the extent such bonuses or payments are not related to any Qualified Products; or (3) any allegation that an Herbalife product was defective.

13. Notwithstanding any other term of this Final Judgment, the Released Claims shall not be deemed to include any claims asserted against any of the Released Parties by any federal, state, or local governmental agency or similar authority, arising out of any statutes, rules, regulations or ordinances over which such entity has jurisdiction, provided that such claims shall not result in or allow a double recovery for any Settlement Class Member. This Final Judgment shall not be deemed to limit or diminish Herbalife's prospective obligations to comply with applicable consumer protection laws or laws concerning the obligations of multi-level marketing companies, including, without limitation, applicable laws mandating certain levels of buybacks and refunds of products, services, and other consideration. This Final Judgment shall not be deemed to limit the right of any Settlement Class Member to provide information, file complaints or cooperate with

1    any federal, state, or local governmental agency in connection with any matter

2    relating to the Released Claims, nor does it purport to limit the jurisdiction or

3    authority of any governmental agency to consider or investigate such claims.

4         14.    Notwithstanding any other term of this Final Judgment, the Released

5    Claims shall not include any individual claims asserted by any Settlement Class

6    Member who is excluded from the Settlement Classes pursuant to Paragraphs 3 and

7    4 of this Final Judgment and who has agreed to be subject to the arbitration

8    provisions of the Arbitration Agreement for Disputes Between Members and

9    Herbalife contained in the Member Application Agreement revised during or after

10   September 2013.

11        15.    As of the Effective Date, all Released Parties shall conclusively be

12   deemed to have acknowledged that the Released Claims include claims, demands,

13   rights, liabilities, suits, or causes of action, known or unknown, as of the Effective

14   Date. The Releasing Parties nonetheless release all such claims. Each Settlement

15   Class Member, whether or not such Settlement Class Member executes and delivers

16   a Claim Form, is bound by this Judgment, including, without limitation, the Release

17   set forth above. All Releasing Parties shall further, as of the Effective Date,

18   conclusively be deemed to have waived the rights afforded by California Civil Code

19   Section 1542, and any similar statute or law, or principle of common law, of

20   California or any other jurisdiction.

21        16.    Without affecting the finality of this Judgment in any way, this Court

22   hereby retains continuing jurisdiction over: (i) implementation of the Settlement; (ii)

23   the allowance, disallowance or adjustment of any Settlement Class Member's claim

24   on equitable grounds and any award or distribution of the Settlement Fund and

25   Product Return Fund (collectively, the "Settlement Funds"), including all disputed

26   questions of law and fact with respect to the validity of any claim or right of any

27   Person to participate in the distribution of the Settlement Funds; (iii) disposition of

28   the Settlement Funds; (iv) hearing and determining applications for attorneys' fees,

costs, interest and payment of expenses in the Action; (v) all Settling Parties for the purpose of construing, enforcing and administering the Settlement and this Judgment; and (vi) other matters related or ancillary to the foregoing,

17.     Within sixty (60) days of the final distribution of the Settlement Funds, Plaintiffs' Counsel shall provide a report to the Court regarding the distribution of the Settlement Funds. If the funds have not been distributed within six (6) months after the Effective Date, Plaintiffs' Counsel shall provide a report to the Court regarding the status of the distribution of the Settlement Funds.

18.     The terms and provisions of the Stipulated Order Governing the Designation and Handling of Confidential Materials, approved by the Court on April 23, 2014, shall survive and continue in effect through and after entry of this Final Judgment.

19.     This Judgment and the Stipulation, whether or not this Judgment becomes Final, any discussions, negotiations, proceedings, agreements or other papers relating to the Stipulation, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Settling Parties, or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

          a. do not constitute, and shall not be offered or received against or to the prejudice of Herbalife as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Herbalife with respect to the truth of any allegation in the First Amended Complaint or original Complaint, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including, but not limited to, the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Herbalife or any Person whatsoever;

b. do not constitute, and shall not be offered or received against or to the prejudice of Herbalife as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Herbalife, or against or to the prejudice of Plaintiffs or any other Settlement Class Members as evidence of any infirmity in the claims of Plaintiffs or the other Settlement Class Members;

c. do not constitute, and shall not be offered or received against or to the prejudice of Herbalife, Plaintiffs, any other Settlement Class Members, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of Herbalife, Plaintiffs, any other Settlement Class Members, or their respective counsel, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement;

d. do not constitute, and shall not be construed against Herbalife, Plaintiffs, or any other Settlement Class Member, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

e. do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or any other Settlement Class Members that any of their claims are without merit or infirm or that damages

recoverable under the First Amended Complaint or original Complaint would not have exceeded the Settlement amount.

20.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

21.     The Settling Parties are hereby directed to consummate the Stipulation and to perform its terms.

22.     A separate order shall be entered regarding Plaintiffs' Counsel's application for attorneys' fees and payment of expenses as allowed by the Court.

23.     Nothing in this Final Judgment is intended to or shall modify the terms of the Settlement as expressly amended.

24.     Final Judgment in this action is hereby entered. All claims against Defendants in the Action are hereby dismissed on the merits with prejudice, with each party to bear its own costs, except as and to the extent provided for in the Settlement. There is no just reason for delay in the entry of this Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## INCENTIVE AWARDS AND ATTORNEYS' FEES AND EXPENSES

Plaintiffs in this class action have also moved for an award of attorneys' fees and expenses, as well as approval of incentive awards for class representatives. (Dkt No. 113.)  The Court reviewed and considered all objections to the settlement and Class Counsels' request for an award of attorneys' fees, expenses, and incentive awards.  The Court held a hearing on the motion on May 11, 2011, took the matter under submission, and on May 14, 2015, issued Civil Minutes in Chambers making findings of fact and law regarding Plaintiffs' Motion for Attorneys' Fees and Expenses (Docket No. 145), which are incorporated into this order.

1   The Court approved attorneys' fees in the amount of $4.9 million as fair and

2 reasonable.

3   The Court denied, without prejudice, Class Counsels' request for

4 reimbursement for costs and expenses in the amount of $212,862.64 but granted the

5 request as to $175,609.62 of expenses, allowing Class Counsel to submit

6 supplemental declarations or documentation further supporting their request and

7 segregating meal expenses from travel expenses.

8   The Court approved Class Counsels' request for incentive awards and directs

9 payment of $10,000 to Mr. Bostick and $5,000 each to Ms. Vasko, Ms. Trotter, Ms.

10 Molnar, and Mr. Cote.

11   Thomas G. Foley, Jr. and Scott M. Petersen have submitted supplemental

12 declarations supporting their expenses incurred in this case.  Pursuant to their

13 supplemental declarations, Class Counsel have removed any request for

14 reimbursement of meals or miscellaneous expenses from their expense

15 reimbursement request. Pursuant to their supplemental declarations, Class Counsels

16 have incurred an additional $5,588.35 in costs and their expenses relating to legal

17 research, copying, travel, expert witness services, and delivery expenses that that

18 were not requested in the Motion for an Award of Attorney Fees and Expenses filed

19 on March 10, 2015.  Plaintiffs' counsel have adequately documented these expenses,

20 all of which the Court finds these additional costs were necessary for this litigation

21 and may be reimbursed.  The Court therefore approves reimbursement for these

22 costs, equaling $109,466.21 for the Foley Bezek Behle & Curtis law firm and

23 $102,196.42 for the Fabian & Clendenin law firm, totaling $211,662.63.

24   IT IS HEREBY ORDERED

25   Pursuant to Sections 10.2 and 10.3 of the Stipulation of Settlement (Dkt No.

26 95), the Escrow Agent is AUTHORIZED and DIRECTED to pay the following

27 amounts from the Cash Fund:

28

1.    $4,900,000 for attorneys' fees to Class Counsel

2.    $211,662.63 in expenses to Class Counsel

3.    $10,000 to Dana Bostick

4.    $5000 to Anita Vasko

5.    $5000 to Judi Trotter

6.    $5000 to Beverly Molnar

7.    $5000 to Chester Cote

**IT IS SO ORDERED.**

Dated: June 17, 2015

By: _____

HON. BEVERLY REID O'CONNELL
United States District Court Judge

ATTACHMENT A

**KCC Class Action Services**
**Bostick v. Herbalife International of America Inc et al.**
**Exclusion Report**

Count
687

| ClaimID | Last Name | First Name |
|---|---|---|
| 10001892001 | ABRAHAM | TIFFANY |
| 60003162001 | ABREU | ALLAN |
| 60001543101 | ACOSTA | YADIRA |
| 10008656101 | ADAMS | SHAWNDA |
| 10010368601 | AGOVINO | KATHLEEN |
| 10023295401 | ALBA | GUILLERMINA |
| 10026059701 | ALCAZAR | MARTA E |
| 10026204101 | ALCOCER | JOSEFINA |
| 60000147001 | ALEXANDER | ALICIA |
| 60002325801 | ALLGEYER | EILEEN |
| 10033031901 | ALMANY | DAVID |
| 10038939901 | ALVARADO | MANUELA |
| 10041053401 | ALVAREZ | ALEXANDRA |
| 10050334201 | AMMU | RAMA SUNDARI |
| 60000346501 | ANDERSEN | GLORIA |
| 10052982301 | ANDERSON | KALEENA R |
| 10054898201 | ANDRADE | LUCINDA |
| 10058211401 | ANGUIANO | LUIS A |
| 10058482201 | ANGULO | DELFINO |
| 10059061501 | ANNETTE | HUNTER |
| 10060775501 | AOCHI-BORDON | SHINOBU |
| 60001483601 | ARAYA | JOSE M |
| 10072615001 | ARIZA | PABLO |
| 10073502201 | ARMENTA | CARLOS |
| 10074110101 | ARMSTRONG | DEBBI S |
| 60003142701 | ATCHISON | LISA |
| 10084337201 | AVALOS | AARON |
| 60001651401 | AVILA | ROSA MARIA |
| 10094568501 | BADILLO | MARIA DE LOS ANGELES |
| 10095585001 | BAEZA | MARIA C |
| 10096468001 | BAILEY | ANGEL D |
| 10097223801 | BAIONE | DAVID |
| 10097684001 | BAKER | BRIAN L |
| 10098352201 | BAKER | SUSAN M |
| 10098471001 | BAKKEM | KELLY M |
| 10098702301 | BALBANEDA | MARIA |
| 60003028601 | BALDRIDGE | HAZEL |
| 60003065001 | BALL | MYA |
| 10100515501 | BALLARE | KAREN E |
| 10100778401 | BALLEW | TAMMY |
| 10104192501 | BARAJAS | CLAUDIA |
| 10107561301 | BARKEY | ERICA N |
| 60002034001 | BARNUM | EVERETT |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60000661201 | BARTOSH | JAMES |
| 60003167501 | BASS | TAMICA |
| 10125345001 | BEHN | JAIME B |
| 10125594901 | BEJAR | MARIA |
| 10126621201 | BELL | PATRICIA A |
| 10129762201 | BENAVIDEZ | SOPHIA R |
| 60003062801 | BERGESON | RICHARD B |
| 10134060601 | BERGMAN | ERIC D |
| 10138949801 | BETANCUR | ARELYS |
| 10139446901 | BEVER | DEBRA K |
| 10139613201 | BEYER | JULIE |
| 10141090601 | BILLS | KATHLEEN S |
| 10141316601 | BINION | KASEY |
| 10141785801 | BISCH | KATIE L |
| 60000059101 | BISHOP | ANNETTE |
| 10142707401 | BLACK | MICHELLE D |
| 60003036601 | BLACK | CAROLYN |
| 10142918601 | BLACKMAN | AINKA A |
| 60003147101 | BLOCK | WAYNE |
| 10147389801 | BOFF | LEON C |
| 60002759801 | BOLER | JAMES |
| 10150675201 | BONILLA | MARTHA |
| 60000532501 | BONO | VINCENT |
| 10152955701 | BOROK | ADAM |
| 10153962901 | BOTELLO | MARIA C |
| 60001513601 | BOWLIN | JAMES |
| 10155945801 | BOYD | ANGELA D |
| 60001314101 | BRANDENBURG | DONALD |
| 10168915901 | BROWN | RONALD L |
| 10166586601 | BROWN | AKEMI M |
| 60003153001 | BROWN | ALICIA |
| 10169638301 | BROWNELL | DEBORAH W |
| 10169904901 | BRUCE | ALICE F |
| 10173826201 | BUITRAGO | HEYSOL I |
| 10175281701 | BURGEN | SHERRY |
| 10176121101 | BURKE | DONALD F |
| 10176744401 | BURNETT | JEROME |
| 60002556001 | BURY | DAVID |
| 10177970701 | BURZOTTA | ANTONINO |
| 10180880001 | BYRD | ELLIOT |
| 10181440901 | CABALLERO | ANCELMA |
| 10182537701 | CABRAL | ALICIA A |
| 60001852001 | CABRERA | ARISDELCI |
| 10188797801 | CALDERON | NATALIA |
| 10191581001 | CALVILLO | GERARDO |
| 10196261701 | CAMPER | MARLA H |
| 60000726201 | CAMPOS | JUDY |
| 10198267701 | CAMPOS | ROSA E |
| 10200245901 | CANCINO | OSCAR |
| 10201969101 | CANO | MARIA E |
| 10205079001 | CARBAJAL | DANIEL R |

| ClaimID | Last Name | First Name |
|---|---|---|
| 10205956101 | CARCAMO ORTIZ | ELDYN |
| 10207136601 | CARDENAS | LUIS A |
| 60003144901 | CARDOZA | SARAH |
| 10209523101 | CARE | ANITA S |
| 10209695801 | CAREY | SAMANTHA M |
| 10210483901 | CARLOS | CRIZAM C |
| 60000348701 | CARPENTER | ANDREA |
| 60003165301 | CARTER | DANIEL |
| 70000332001 | CASTILLO | JOSE |
| 10231147001 | CASTILLO | VERONICA |
| 10229672801 | CASTILLO | MARIA DEL ROSARIO |
| 60000490101 | CASTLLO | ERAN |
| 10233755001 | CASTRO | GISELA |
| 60001445001 | CASTRO | DANIELA |
| 10236114901 | CASTRO | TERESA |
| 60001794701 | CAVASOS | ANGELITA |
| 10238353401 | CAVINESS | BRUCE H |
| 60000439901 | CEBRERO | YESENIA |
| 10241157801 | CELEDON | ALICIA |
| 10245022501 | CERVANTES | MARLEN |
| 70003475401 | CHAINAY | RITA |
| 10249189601 | CHANDARLIS | MICHAEL A |
| 10250466001 | CHAPMAN | MARYLAN M |
| 10253737901 | CHAVEZ | DORA C |
| 10253548601 | CHAVEZ | CRISTINA |
| 10259740601 | CHERIYAN | SUJA |
| 10263682501 | CHRISTENSEN | JERRY R |
| 60001300601 | CHRISTENSEN | JENNIFER |
| 70000500601 | CIBRIAN | SOCORO |
| 10267230101 | CISNEROS | JESUS T |
| 10270479001 | CLAYTON | SANDRA |
| 10271543901 | CLINESMITH | JONNA M |
| 10272029001 | COATES | KAMIE D |
| 10273375201 | COFFIN | SARA A |
| 10279360801 | CONDON | CARA |
| 10281534301 | CONTRERAS | FELIPE |
| 10282387001 | CONTRERAS | MARIA |
| 10285685001 | COPELAND | PATSY A |
| 10291083201 | CORONEL | ESTELA M |
| 10293063601 | CORTAZAR | WENDY |
| 10296172401 | CORTEZ | MONICA E |
| 10296971101 | CORTINO | MITCHEL L |
| 60000170001 | CRANE | SHANNON |
| 10312389101 | CRUZ BARCENAS | MAGALY |
| 10315476001 | CUEVAS | ANA |
| 10317529501 | CUNNINGHAM | KENYA D |
| 10320765001 | DALE | CECILE D |
| 10321820801 | DAN | RYAN |
| 10321998501 | DANFORTH | PORTIA ELAINE |
| 10322954101 | DANIELSON | SUSAN |
| 10323547401 | DARIUS-RICHARDS | DEBROAH L |

| ClaimID | Last Name | First Name |
|---------|-----------|------------|
| 10323735501 | DAROTITHY | SANDRA P |
| 60002395001 | DAVILA | ROSARIO |
| 10329336001 | DE ARMAS | RHODERICK G |
| 10331046001 | DE LA CRUZ | FRANCY J |
| 60001643401 | DEASE | SHELLEY |
| 60000208701 | DEMARCUS | BRIAN |
| 10347013001 | DENNIS | MICHELLE S |
| 70003558801 | DIAL | JOHN |
| 10351620701 | DIAZ | CHARLOTTE AURORA |
| 10351679701 | DIAZ | CLAUDIA |
| 60003092301 | DIETZ | ANNA |
| 60000920201 | DLUGOPOLSKI | PAMELA |
| 60002758701 | DOMINGUEZ | JESUS |
| 10366231501 | DOMINGUEZ | RUTH |
| 60002391701 | DORSEY | SUSAN |
| 60001195101 | DRESSLER | JAMES |
| 60003171101 | DUNAGAN | MAUREEN |
| 10374975501 | DUNCANSON | LAN |
| 10378054301 | DURHAM | HARLEY N |
| 60000144801 | EAKMAN | JANET |
| 10380130301 | EATON | BARBARA J |
| 10380455901 | EBRAHIM | EZZAT |
| 10381372001 | ECKMAN | MONICA B |
| 10382529001 | EDWARDS | KIMBERLY L |
| 10382528901 | EDWARDS | KIMBERLY L |
| 60002393901 | EISCHEID | CAROL |
| 60002183101 | EISENBERG | ELI |
| 60003025301 | EISENHARD | JOANNE |
| 10383923901 | EKSUZIAN | CYNTHIE E |
| 60000088601 | ELDRIDGE | CATHERINE |
| 60003071901 | ELKINS | ROSALIND H |
| 10386350301 | ELLIS | L KAREN |
| 60001624101 | ENGLISH | JANET |
| 60003154001 | EPPARD | BILLIE |
| 10390845601 | ERICKSON | BRANDI L |
| 10394229401 | ESCOBAR | MARIA |
| 10396894501 | ESPARZA | LETICIA |
| 60003044601 | ESPINAL | EVA GRACIELA |
| 60000345401 | ESPINOZA | PALMIRA |
| 60003116501 | ESTIGARRIBIA | HUGO |
| 60002705501 | ESTRADA | HAYDE |
| 60001077701 | EUBANK | KAYE |
| 10419866701 | FERNANDEZ | LEONOR |
| 10421535501 | FERRANDO | KARLA M |
| 60002869201 | FERREIRA | DANIEL |
| 60003043501 | FIALLOS | MARIO |
| 60001430401 | FIERRO | GRICELDA |
| 60002717901 | FIGUEROA | MARIA |
| 10426273401 | FILSON | RICHELLE A |
| 10426720301 | FINLEY | DONNA R |
| 60000875301 | FLICK-NARMORE | SUSAN |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60002620101 | FLIETH | MICHAEL |
| 60003130301 | FLORES | MARLENY |
| 60001124801 | FOATE | LISA |
| 10441398001 | FOLEY | CHRIS M |
| 10442371701 | FONTANEZ | TERESA |
| 10448403201 | FRANK | SONIA J |
| 10449042101 | FRASER | PHYLLIS M |
| 10449119001 | FRAUSTO | ALICIA |
| 10449518201 | FRAZIER | TERRELL D |
| 10450021901 | FREEMAN | INGRID H |
| 10450509601 | FREISINGER | JOYCE A |
| 10450780901 | FRESCAS | ERIN |
| 10450939901 | FREY | PEGGY L |
| 10452146601 | FROST | AFONZA C |
| 10452494701 | FRYE | WILLIAM C |
| 60003077401 | GALLAEDO | ANTONIO |
| 10460452901 | GALLAGHER | JANICE |
| 10462605701 | GALLEGOS ZACARIAS | ROSA MARIA |
| 10463080201 | GALOPE | AUDREY A |
| 60001821401 | GAMEZ | MARÍA ISABEL |
| 10467553601 | GARBER | JOANN C |
| 60001466501 | GARCIA | GUADALUPE |
| 60003170001 | GARCIA | DEYSI |
| 10469645001 | GARCIA | ANGELITA |
| 10489513501 | GARCIA | TATYANA |
| 10490181001 | GARCIA | VICTOR |
| 10487621901 | GARCIA | ROSA |
| 10482668001 | GARCIA | MARIA ESTHER |
| 10470890601 | GARCIA | BRENDA A |
| 10491637001 | GARCIA DOMINGUEZ | ESTELA |
| 10495099701 | GARMON | PAIGE |
| 60003030001 | GARRISON | LEE |
| 10497281601 | GARZA | JUANITA E |
| 60000843601 | GAUDENCIO | CELIA |
| 10501475801 | GEESMAN | ISAAC |
| 10502472701 | GEORGE | JEROME |
| 10504532901 | GIBBS | AUDIE J |
| 60003072001 | GILLESPIE | JILL |
| 10507445701 | GILMOUR | JANET L |
| 60002212001 | GLENN | SAMUEL B |
| 60003117601 | GOMEZ | PAVEL |
| 10513709101 | GOMEZ | ANA L |
| 60003040201 | GOMEZ | MARIA |
| 60002881901 | GONZALES | CORINA |
| 60003169701 | GONZALES | SALLY |
| 10532566101 | GONZALEZ | JORGE |
| 60002905001 | GONZALEZ | STEPHANIE |
| 10525463001 | GONZALEZ | AGUSTINA |
| 60003115401 | GORDAN | ARMANNI |
| 10544781001 | GORDON | CYNTHIA S |
| 60003164201 | GORTON | MICHAEL |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60000166301 | GOTTLIEB | MICHAEL |
| 60003026401 | GRAHAM | DEBORA |
| 10547821001 | GRAMOWSKI | BRUCE M |
| 10552709901 | GREMS | VALERIE R |
| 60001261501 | GRIECO | KATHLEEN |
| 10553557601 | GRIFFIN | WYNNETTE C |
| 10554120501 | GRIMALDI | LEEANN J |
| 10558496401 | GUDENKAUF | KELLY |
| 10568106401 | GUTIERREZ | ANA I |
| 10572039201 | GUTIERREZ | MAYELA |
| 60003107401 | GUZMAN | ISABEL |
| 10579325501 | HACKMAN | LUZ F |
| 60000098801 | HALE | CYNTHIA |
| 60001704001 | HALL | SHARON |
| 10582627301 | HAMEL | BETTY |
| 60000074001 | HANSEN | JOAN |
| 10588388801 | HARRIS | DOREEN D |
| 10591456301 | HASTINGS | AMANDA G |
| 10591779501 | HATFIELD | VERONICA |
| 10592394101 | HAVLICEK | MYRA |
| 60001076601 | HAWKINS | KRISTEN |
| 10593406901 | HAYES | MARIA B |
| 60001289601 | HAYES | SCOTT |
| 10593558001 | HAYHURST | SANDRA |
| 60000146001 | HEIMAN | RHONDA |
| 60002260801 | HENDERSON | DARYL |
| 10598631801 | HENRY | JORDAN E |
| 10600570401 | HERNADEZ | JANET |
| 10622361601 | HERNANDEZ | SANTOS RAFAEL |
| 10612212501 | HERNANDEZ | JUAN J |
| 60002479301 | HERNANDEZ | LIBRADA |
| 10626835101 | HERNESMAN | RAYMOND J |
| 10627934801 | HERRERA | DEYSI |
| 10627829001 | HERRERA | CRISTINA A |
| 10627905101 | HERRERA | DEBBIE C |
| 10631554701 | HERRERA VASQUEZ | SAMUEL ALEJANDRO |
| 10633828601 | HIDROGO | MARIA E |
| 10635556901 | HILL | NANCY A |
| 60003101901 | HO | MARY |
| 10640031901 | HOKANSON | MEGHAN C |
| 60002959301 | HOLLIDAY | MONICA |
| 60003168601 | HOLMES | TERESA |
| 60003149301 | HOLMQUIST | LINDA |
| 60000042301 | HOOVER | CAROLYN |
| 60001580601 | HORN | TAMARA |
| 10646525901 | HOWLETT | TERRI |
| 60000405001 | HUAMANI | JIM |
| 10650519101 | HUGHES | PEGGY J |
| 10650540301 | HUGHES | ROBYNE L |
| 60003143801 | HUME | LINDA |
| 60000730901 | HURTADO PEREZ | ESTHER |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60003118701 | HYRE | MELISSA |
| 10655117601 | HYTCHE | KATHRYN |
| 10663641801 | JABLONSKY | HEATHER |
| 10663992401 | JACKOLA | ROBERT E |
| 60003161001 | JACKSON | BOBBI JO |
| 60000462801 | JAIME | YANET |
| 10667506001 | JAIMES | LORENA |
| 10669036001 | JANE | MORGAN |
| 10669292601 | JANKOVIC | ANDJELKA |
| 60003033301 | JARRELL | MARY |
| 10672275001 | JAUREGUI-VARGAS | REBECCA |
| 10674673001 | JENSEN | LESLEE RAE |
| 60000838901 | JEWELL, II | PORTER |
| 10676252701 | JILL | GOLDEN N |
| 10682291301 | JIMISON | JERMY L |
| 10686258301 | JOHNSON | MICHAEL |
| 60000916601 | JONES | LEIGH |
| 60001735701 | JORDAN | LEON |
| 60003166401 | JORDAN | JOSEPH |
| 10693326701 | JOYCE | PATRICK M |
| 10700625001 | KARCZEWSKI | SARAID A |
| 10702735501 | KEAN | SAMUEL NATHAN |
| 10703245401 | KEENE | JO R |
| 60000502001 | KEGERREIS | LEIGH |
| 10703703801 | KEIVER-HEWETT | GWENDOLYN J |
| 60003104101 | KELEMEN | LISA |
| 10706085101 | KENSIL | LISA A |
| 10706746801 | KERSTEN | MARY B |
| 10707888001 | KIBBLE | BETTY L |
| 60003135801 | KING | PAUL |
| 10712498101 | KLEIN | AMY L |
| 60001477801 | KLEIN | DAVID |
| 60003079601 | KNOLLHOFF | DANIEL |
| 10716191601 | KOPETS | LILIYA |
| 60001709501 | KORBER | DENNIS |
| 60002784901 | KROPF | ELMA |
| 60000237101 | KRUG | TIMOTHY |
| 10719130101 | KRULL | TAMMIE L |
| 60003091201 | KULLMAN | MICHELENE |
| 10720658401 | KURTZ | BETH A |
| 10721085001 | KWOCK | DOUGLAS |
| 10721150601 | KWONG | MAN-FAI |
| 60000986901 | KYLE | NANCY |
| 60003150701 | LAGUNAS PALACIOS | BEATRIZ |
| 10723705201 | LAHTI | STEPHANIE D |
| 60003152901 | LANGE | JENNA |
| 60001629601 | LARA | MARIA L |
| 60000627001 | LARSON | LYN |
| 10733415001 | LAUER | JOHN D |
| 60001535101 | LAVERTY | JAMES |
| 10736109701 | LAZO | MAGALI D |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60001607001 | LEBLANC | LYNN |
| 60003155101 | LEDEZMA | MARIA |
| 10740171001 | LEE | KAREN R |
| 60001620801 | LEGG | DENISE |
| 10743044701 | LEMONS | DOYLE R |
| 60000086401 | LEPINE GARCIA | PIERRE CARLOS |
| 60001633201 | LESSOW | CINDY |
| 60001378601 | LEVANDER | JENELL |
| 60003112101 | LEWIS | KRISTEL |
| 60000364701 | LEWIS | LINDA |
| 60003055901 | LINDBERG | WANDA |
| 10754880001 | LINDELL | JOY M |
| 60002118301 | LIPKA | DENISE |
| 10755985701 | LIPPI | EDNA M |
| 60003133601 | LIZARRAGA | BLANCA |
| 60002215301 | LLIVIZACA (CESPEDES) | ROSA |
| 60002639101 | LOAYES | LUCIA |
| 10764218901 | LOPEZ | ADONIS F |
| 10778654001 | LOPEZ | OFELIA |
| 10764367401 | LOPEZ | AIDA N |
| 10781532101 | LOPEZ | TERESA |
| 10778165701 | LOPEZ | NANCY |
| 10773897101 | LOPEZ | LETICIA Y |
| 10785838101 | LORENZ | JOYCE J |
| 60002877201 | LORENZO | DORKA |
| 10790857801 | LUCARI | JESSICA |
| 10791169301 | LUCAS | MICHAEL F |
| 10791718001 | LUCERO | GUILLERMINA |
| 60001940001 | LUCIANI | ROBERTA |
| 10794855201 | LUMBRERAS | RICARDO |
| 10795714001 | LUNA | HELEN U |
| 10799740001 | LYTLE | FREDERICK N |
| 10803202401 | MACINTOSH | GARY R |
| 60001036901 | MACLUKIEWICZ | KATARZYNA |
| 10805190001 | MADRIGAL | MARIA |
| 10809429701 | MALAGON | MARIA |
| 10814232201 | MANDRAS | MARIA L |
| 60000607701 | MANJI | RYHANA |
| 10820532001 | MARICHE | MAYRA |
| 60002537701 | MARIN | CARMEN |
| 10821748601 | MARIN | YOLANDA |
| 10823386801 | MARMOL-MARTINEZ | IRWIN M |
| 60002533301 | MARQUEZ | MARIA |
| 10825887701 | MARRERO | BREGMA J |
| 60001399001 | MARTIN | GLEN |
| 10850894801 | MARTINEZ | VICTOR M |
| 10839768301 | MARTINEZ | JORGE |
| 60000038701 | MAST | DENNIS |
| 10858189501 | MATOS | MARISOL |
| 60003067201 | MATTHEWS | CANDACE |
| 10859147501 | MATURINO | MARIA D |

| ClaimID | Last Name | First Name |
|---|---|---|
| 10861230201 | MAYES | LYNN M |
| 60003080001 | MAYNE | DEBORAH |
| 10861963101 | MAYORGA | ROGER |
| 60003041301 | MAZO | JOHANA |
| 60001582801 | MCCALL | CONSTANCE |
| 10863889301 | MCCALLUM | BEVERLY J |
| 10864664601 | MCCLEERY | KAREN N |
| 60000614601 | MCCLENNY | KATRINA |
| 10869487201 | MCKENNEY | JUDITH C |
| 10870636901 | MCLEOD | JENNIFER L |
| 60003140501 | MCNEIL | JUDY |
| 10871844001 | MCQUEEN | CHRIS |
| 10874121701 | MEDINA | EVA |
| 60001470101 | MEDINA | MARIA |
| 60003056001 | MEDINA | FEDERICO |
| 10873223001 | MEDINA | ALICIA |
| 60003127801 | MEJORADO | JENNIFER |
| 10884892901 | MELLEN | DARLENE |
| 10902864801 | MEYERS | KIMBERLY A |
| 10904368601 | MEZESKI | ANNA |
| 10905532901 | MIDDLEBROOKS | CHRIS J |
| 10906912201 | MILES | AMY R |
| 10906939001 | MILES | DEANNA |
| 10908104301 | MILLER | COLETTE |
| 10908314301 | MILLER | DONOVAN D |
| 60001039101 | MINNS | LARS |
| 10911775001 | MIOT | MARIE |
| 10911864901 | MIRABELLA | ISENIJA J |
| 60001326501 | MIRAKIAN | MELISA |
| 10914521501 | MIRICH | ROCK |
| 60001032501 | MOLINA-AGUILA | LIZET |
| 10920769501 | MONARREZ | MANUELA |
| 10922203901 | MONIZ | MARIA AS |
| 60000427501 | MONTERROSO | MIREYA |
| 10931726901 | MOORE | REBECCA P |
| 10930761601 | MOORE | ANTHONY D |
| 10932417101 | MORA | CLAUDIA |
| 10934107701 | MORALES | ANA |
| 60001722201 | MORENO | FRANCISCO |
| 60000817401 | MORGAN | PATRICIA |
| 60002181001 | MORRISON | DORA |
| 60000317001 | MORRISON | HEATH |
| 60000360301 | MORYN | DIANE |
| 10951515801 | MOSCOSO HERRERA | WILMER OMAR |
| 60000240701 | MRACZEK | THOMAS |
| 60003084301 | MURIEL | ANA |
| 60000216701 | MYLES | JANCEY |
| 60003123401 | NAJARRO | BRENDA |
| 10966058401 | NAJERA | RODOLFO |
| 60000700301 | NAQUIN | CRAIG |
| 10967612901 | NARVAEZ | GRISELDA |

| ClaimID | Last Name | First Name |
|---|---|---|
| 10974874801 | NELSON | AMY J |
| 60003049001 | NELSON | MELISSA |
| 10976873501 | NEULS | KERRI A |
| 60003160901 | NEWELL | DEBORAH |
| 10978555101 | NGUYEN | AN H |
| 60000063801 | NIEDER | ANGELA |
| 10982507001 | NIEVES | JIMY |
| 10985200001 | NOLASCO JR | FEDERICO |
| 60002140101 | NORBERG | JEFFREY |
| 10986850001 | NORWARD | JAIME M |
| 10991431401 | NYDEREK | MARY LOU |
| 10992481201 | O'BRIEN | SHIRLEY A |
| 10995691601 | O'CONNELL | RENEE J |
| 10997350101 | OJEDA | JOAQUIN |
| 10998152201 | OLAIS | YAMEL |
| 60002824001 | OLIVARES | DEYANIRA |
| 60003125601 | ONEY | SUSAN |
| 11007573001 | ORELLANA | LUIS A |
| 70000877901 | OROZCO | GUSTAVO |
| 11010494801 | OROZCO | LUISA |
| 11016340001 | ORTIZ | ELSA |
| 11025721201 | OWSLEY | CYNTHIA A |
| 11026683301 | PACE | DONNA |
| 60003052601 | PACHECO | DENNIS |
| 60003035501 | PADILLA | VILMA |
| 11037909301 | PANUCO JIMENEZ | BRENDA VERENICE |
| 11039236001 | PAREDES | GERONIMA |
| 11040918801 | PARKER | LISA G |
| 11040959001 | PARKER | MEGAN E |
| 11044751701 | PATEL | BHAGVATI |
| 11048469101 | PAXTOR | PAULA |
| 11048924001 | PAYNE | MICHAEL S |
| 60003081001 | PEARSON | ROSIE |
| 60003086501 | PECINA | MARIBEL |
| 11051278901 | PEDERSON | LORELEI R |
| 60003137001 | PENA DE LA TORRE | JOSE |
| 11056330001 | PENALOZA DELEBRA | CLAUDIA |
| 60000963201 | PEREZ | VICTOR H |
| 60001843001 | PEREZ | MARINA |
| 11077032801 | PERRY | HOLLIE R |
| 60000072901 | PETSCH | NANCY |
| 11080728501 | PHELPS | PHYLLIS |
| 60003095601 | PINEDA | MARIBEL |
| 60003100801 | PLAISTED | ERIN |
| 11091434001 | PLEASANT | CHARLIE H |
| 11091949001 | PLUTZKER | PAUL |
| 11092558001 | POLACH | MEGAN M |
| 60003139101 | POLANCO | YSABEL |
| 11102619201 | PRICE | RUTH C |
| 11104607501 | PRUNEAU | THOMAS |
| 60003105201 | PULIDO | MARINA |

| ClaimID | Last Name | First Name |
|---|---|---|
| 11107370401 | PURVES | PATRICIA L |
| 60001233101 | QUINONES | YESENIA |
| 11116467901 | RAFAEL | VERONICA |
| 60000795401 | RAMIREZ | MARTIN |
| 11128346201 | RAMIREZ | PATRICIA |
| 60001825801 | RAMIREZ | ANGEL P |
| 60000551801 | RAMIREZ | JUANA |
| 11126594001 | RAMIREZ | MARIA NATIVIDAD |
| 60002984401 | RAMOS | CECILIA |
| 11139330901 | RANGEL | IDALIA |
| 11145187501 | REDUS | MARSHA L |
| 11146861901 | REHAUME | GEORGE H |
| 60000884401 | REISINGER | DAN |
| 11148222701 | REMACHE | ADREANA J |
| 60002594501 | RESENDEZ | CIDALIA |
| 11154890101 | REYES | INES ANDINA |
| 11156494301 | REYES | MARIA |
| 60001817801 | REYES | NOEMI |
| 11159551401 | REYES DE CONTRERAS | ERIKA DEL CARMEN |
| 60003054801 | RIVAS | OSCAR |
| 60002835301 | RIVERA | ROBERTO |
| 11178033001 | RIVERA | NANCY L |
| 60000804001 | ROBERTS | AMY |
| 11182222101 | ROBERTS | NACI |
| 11185367901 | ROBLES | JOSUE |
| 11186957201 | ROCHA | IRMA C |
| 11189535201 | RODRIGUES | CHRISTINA A |
| 60001479001 | RODRIGUEZ | MARIA |
| 60000933701 | RODRIGUEZ | MELINDA |
| 11207239201 | RODRIGUEZ | RUBI |
| 11199481001 | RODRIGUEZ | JULISSA |
| 11200861601 | RODRIGUEZ | LUZ ELBA |
| 11190769001 | RODRIGUEZ | AMY M |
| 11198395201 | RODRIGUEZ | JORGE |
| 60002853501 | RODRIGUEZ GARCIA | ANAIS |
| 60001332301 | ROETHKE | JENNIFER |
| 60000047801 | ROGERS | REED |
| 60000328301 | ROGERS | ANGELA |
| 60002166001 | ROMERO | TERESA |
| 60003073001 | ROQUE PANTON | RAISA |
| 11230728001 | ROSER | JAMIE L |
| 11232756401 | ROWLAND | ROBERT |
| 11235940101 | RUELAS | TERESA |
| 60001981801 | RUIZ | ROCIO |
| 60001306101 | SALAZAR | ANGELA |
| 11254216501 | SALDIVAR | AURELIA |
| 60003106301 | SAMFORD | JAMES |
| 60003064001 | SANCHEZ | MYRNA |
| 11280677601 | SANTA CRUZ | MARIA ESMERALDA |
| 60001960301 | SANTAFERRARA | TERI |
| 60003024201 | SANTIAGO | GISSEL |

| ClaimID | Last Name | First Name |
|---|---|---|
| 11283194101 | SANTIAGO | GIOVANNI |
| 11293140601 | SCARBROUGH | GLORIA A |
| 11293709301 | SCHAR | STEPHANIE D |
| 11295149101 | SCHMIDT | KAREN |
| 11295602601 | SCHNEIDER | ANNE C |
| 60003151801 | SCHROEDER | JOYCE |
| 60000199101 | SCHULTZ | DEBRA |
| 11297995601 | SCHWERTEL | RONALD T |
| 11299013701 | SCOTT | ROBERT A |
| 11301054001 | SEGOVIA | MARISELA |
| 60000553001 | SENNE | SUSAN |
| 60003156201 | SERNA | SONIA |
| 60002080601 | SETU | IOSEFA SETU |
| 11309188601 | SHARER | MARY CHARLENE |
| 11312683901 | SHIRLEY | DOYLE S |
| 11316709001 | SILLERUD | LINDSEY R |
| 11317067101 | SILVA | BLANCA BARBARA |
| 11318912601 | SILVA | RUDY S |
| 11320790601 | SIMMONS ARZU | TASHA |
| 11321482001 | SIMPSON | BRENDA C |
| 11322514301 | SINGH | DELIA R |
| 60000101801 | SIRIGNANO | JESSICA |
| 11324051001 | SKALA | JARED J |
| 60001697701 | SLAGOSKI | SALLY |
| 11324939101 | SLAUGHTER | ANGELA R |
| 11330082701 | SMITH | SKIPPER |
| 11329040801 | SMITH | MARK A |
| 60000096601 | SMITH | JO ANN |
| 60001764101 | SMITH | BRIANA |
| 60001763001 | SOLONOSKI | MICHAEL |
| 11337182201 | SOMERS | SUSAN F |
| 11338152901 | SORIA | MARIA M |
| 11345913001 | SPEEDE | JOSE M |
| 11346973101 | SPOFFORD | TOM |
| 11347433701 | SPROULL | CHRIS |
| 60001673001 | STAMM | GREGORY |
| 11349490701 | STANTON | THARSILLA C |
| 11349780501 | STARKS | KESHANA N |
| 60002130001 | STEFFES | CONNIE S |
| 11354616601 | STOKER | ROD |
| 11355141101 | STONE | ROD J |
| 11355894601 | STRADER | JENNIFER S |
| 11355986001 | STRAMA | MARIA |
| 11357506301 | STUBER | CYNTHIA |
| 60003039901 | STYRON | DIANE |
| 60000760401 | SUBBIONDO | DENNIS |
| 60000189001 | SUMRALL | BOB |
| 11366955001 | TALLMAN | KATHY S |
| 60000217801 | TANG | QI |
| 60000107301 | TAYLOR | SONJA |
| 11373407401 | TAYLOR | TAVARES L |

Exhibit A
Page 12 of 14

| ClaimID | Last Name | First Name |
|---|---|---|
| 60002370201 | TAYLOR | LAURA |
| 60003053701 | TAYLOR | MARIA |
| 60002106001 | TEALE | LINDA |
| 11374683001 | TEJEDA | ALONDRA |
| 11374763901 | TEJEDA | FLORA |
| 11376213601 | TELLO | PERLA |
| 60003090101 | TERRY | DEBORAH |
| 60000930401 | THEIS | BONNIE |
| 60002205101 | THOMAS | ADAM |
| 60000065001 | THOMAS | RAYE |
| 11384587001 | THUECKS | TOM J |
| 60003124501 | TIETYEN | NOREEN |
| 11386563601 | TINO | DIANE V |
| 60003148201 | TONDREAU | MILDRED |
| 60003069401 | TORRES | PAULA |
| 11393449001 | TORRES | BLANCA |
| 60003070801 | TOVAR-TORRES | JONICE |
| 60000085301 | TRUMAN | KIM |
| 60003134701 | TUCKER | MEREDITH |
| 11410989801 | TUCKER | CHRISTINE |
| 60003075201 | TURNER | CRYS |
| 11412840601 | TURNER | LAWRENCE E |
| 11413789401 | TYLER | LA'KESHIA L |
| 60003034401 | UMEH | VIVIAN |
| 60002335001 | UPCHURCH | BRIANNE |
| 60000562001 | VALENZUELA | YOCELYN |
| 11434315901 | VARGAS | ALEXANDRA |
| 11437362001 | VARGAS | RICHARD |
| 60000521201 | VARGAS | KARLA |
| 60003027501 | VAUGHN | JANET |
| 11444311701 | VAZQUEZ | BARBARA LIZ |
| 11449894501 | VEGA | OSCAR W |
| 11451101901 | VELA | VALENTIN V |
| 11455433001 | VELAZQUEZ | LILIA E |
| 11457163601 | VELEZ | ROLANDO |
| 11456609401 | VELEZ | CARMEN |
| 11461807001 | VERNESS | KAY L |
| 60003126701 | VIERA | JUAN |
| 60003146001 | VIKE | KELSEY/SHERRY |
| 60001949801 | VILLA | ENRIQUE |
| 11467277501 | VILLAFANA | ALMA Y |
| 60002152501 | VILLALVAZO | MAGDALENA |
| 60002129601 | VILLANUEVA | OLGA |
| 11476072001 | VITAL | MARIA GUADALUPE |
| 60000678001 | VLLE | ELVA |
| 60000266601 | WALLACE | TARA |
| 60000417301 | WALTH | CHERIE K |
| 11483645001 | WARD | EDNA M |
| 11485770201 | WATERS | TAMMY |
| 11486609001 | WATT | VIOLET |
| 11486621101 | WATTERS | DANA C |

| ClaimID | Last Name | First Name |
|---|---|---|
| 60001525001 | WAYMAN | BILL |
| 60000111001 | WEATROWSKI | JEAN |
| 60003088701 | WEIR | CARLYE |
| 11489816901 | WELLIVER | JEROME A |
| 11493655901 | WHITE | LAUETA M |
| 60000850501 | WHITE | MELODY |
| 11493427701 | WHITE | JEFF |
| 60003098901 | WHITMER | LEUMA |
| 60000078401 | WIEGAND | GLEN |
| 60000841401 | WILLIAMS | LARRY |
| 60003083201 | WILLIAMS | WALTER |
| 60000121101 | WILLIAMS | VALERI |
| 900007001 | WILLIAMS | FRANKIE |
| 11502489001 | WILSON | GABRIEL |
| 11502780401 | WILSON | KELLY A |
| 11504878901 | WISE | MATT |
| 11505241001 | WITMAN | KATRINA P |
| 11506559301 | WONG | ELDON |
| 11508758801 | WORM | MARY ANN |
| 11508760601 | WORM | PAUL C |
| 11510196201 | WROBLESKI | CHRISTINA M |
| 11513902301 | YATES | EMILY A |
| 60003122301 | YEPES | GLORIA |
| 60002243701 | YODER | IVA |
| 11518061801 | YURIVILCA | MAYOK |
| 11518659101 | ZACCARELLO | CAROLE |
| 900005201 | ZARATE-GOMEZ | AVELINA |
| 11524852301 | ZAVALA | ERIKA |
| 11527167301 | ZELKO | SANDRA C |
| 60001134001 | ZHUNGUR | DINORAH |
| 60002516201 | ZUNIGA | MATILDE |
| 11532973001 | ZUNUN | SILVINO |

Exhibit A
Page 14 of 14

# Exhibit 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | Date | August 18, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**         (IN CHAMBERS)

## ORDER DENYING MOTION FOR RECONSIDERATION [157]

## I.    INTRODUCTION

Pending before the Court is a Motion for Reconsideration filed by nineteen objectors[1] represented by attorney Douglas M. Brooks ("Mr. Brooks") (collectively, "Objectors").  (Dkt. No. 157.)  Objectors seek reconsideration of the Court's May 14, 2015 order granting final approval of the proposed class action settlement of this case, contending that the Court committed clear error in considering the adequacy of the class notice program, the propriety of the injunctive relief class, and the amount of the class's claims.  After considering the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for resolution without oral argument of counsel.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court **DENIES** Objectors' Motion for Reconsideration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. The Class Dispute

Plaintiff Dana Bostick ("Mr. Bostick"), an individual residing in California, initiated this lawsuit against Defendants Herbalife International of America, Inc., Herbalife International, Inc., and Herbalife Ltd. (collectively, "Herbalife") in April 2013. Mr. Bostick filed suit on behalf of himself and a putative class of individuals (collectively, "Plaintiffs") injured by what Plaintiffs believe to be an unlawful pyramid

---

[1] These individuals include the original eighteen objectors to the proposed class action settlement, as well as Silvia C. Arias.  (*Compare* Dkt. No. 134 at 1 n.1, *with* Dkt. No. 157 at 2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

scheme. According to Plaintiffs, Herbalife systematically rewards recruiting new product distributors over actual retail sales. (First Am. Compl. ("FAC") ¶¶ 3–6.)

Herbalife is a multi-level marketing and distribution system that relies on individual distributors to market, promote, sell, and distribute its products. (FAC ¶ 28.) Herbalife recruits potential distributors by promising the chance to earn a "substantial and ongoing income" based upon immediate, daily profit while also providing an opportunity to take charge of one's life by being one's own boss. (FAC ¶¶ 31–33.) Herbalife promotes itself through a magazine titled "*Live the Good Life! Herbalife*," a website, training programs, and videos. (FAC ¶¶ 39–45.)

Herbalife is comprised of a hierarchy of distributors, with the various levels determining each participant's eligibility for discounted Herbalife products and other benefits. (*See* FAC ¶¶ 83–151). This hierarchy is comprised of eleven levels of distributors, starting at the Distributor rank and ending at the Founder's Circle rank. (FAC ¶ 83.) All new distributors join a line of sponsorship traced "upline" to the highest level of the Herbalife hierarchy. (FAC ¶ 84.) Junior (or "downline") distributors purchase Herbalife products from "upline" (or more senior) distributors, or from Herbalife directly; Herbalife then pays bonuses to upline distributors based upon purchases by downline distributors. (FAC ¶ 85.) A distributor may move upline and qualify for higher levels of compensation by achieving a certain volume of Herbalife product during a particular time period. (FAC ¶¶ 87, 90.) Volumes are calculated on a monthly basis, and a distributor's volume is based upon his or her own purchases of Herbalife product, as well as the purchases of his or her downstream. (FAC ¶¶ 87–90.)

Mr. Bostick became an Herbalife distributor in April 2012. (FAC ¶¶ 6, 38, 46.) Over a four month period, Mr. Bostick placed eight orders for Herbalife products. (FAC ¶ 48.) Although Mr. Bostick worked hard to build his business, (*see* FAC ¶¶ 47, 49, 50), he recruited only one person—his lifelong friend, (FAC ¶ 47.) Mr. Bostick believes his attempts to sell products to wholesalers were unsuccessful because he had to sell at nearly full retail value to make a profit—an unappealing rate compared to prices offered by higher upline distributors and other online sources. (FAC ¶ 50.) Mr. Bostick contends that he cannot make a profit selling Herbalife products because the company's system of graduated discounts means that those participants purchasing Herbalife

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488 BRO (SHx) | Date | August 18, 2015 |
|----------|----------------------|------|-----------------|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

products at a 25% discount must compete with those purchasing products at a 50% discount. (FAC ¶ 157.) Further, Mr. Bostick believes the Herbalife structure systematically rewards recruiting other distributors over retail sales. (FAC ¶ 3.)

Dissatisfied with Herbalife's structure and misrepresentations regarding the chance to generate meaningful income, Mr. Bostick filed a Complaint on April 8, 2013. (Dkt. No. 1.) On July 7, 2014, Plaintiffs filed the First Amended Complaint.[2] (Dkt. No. 78.) Plaintiffs bring claims under California's Endless Chain Scheme Law, Cal. Penal Code § 327 and Cal. Civ. Code § 1689.2; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* Plaintiffs' first claim under the Endless Chain Scheme Law seeks rescission, restitution, compensatory damages, and consequential damages for Herbalife's operation of an alleged pyramid scheme. (FAC ¶¶ 255–58.) Plaintiffs' UCL claim is predicated upon Herbalife's allegedly fraudulent and misleading representations regarding the chance of success and product packaging and handling and freight fees. (FAC ¶¶ 260–315.) Plaintiffs seek an injunction prohibiting Herbalife from continuing to engage in these allegedly unlawful and fraudulent business practices. Plaintiffs' base their final claim for violations of the FAL upon the same allegedly unlawful and fraudulent practices and seeks similar injunctive relief. (FAC ¶¶ 316–27.)

**B. The Proceedings Leading to the Settlement Agreement**

Beginning in February 2014, the parties began a three-step mediation process involving significant discovery, the exchange of multiple mediation briefs, and various bilateral discussions regarding the strengths and weaknesses of Plaintiffs' case. (*See* Mot. for Preliminary Approval at 5.) All together, the parties attended six mediation sessions. (*Id.*) The parties also engaged in numerous direct settlement negotiations,

---

[2] The First Amended Complaint adds Anita Vasko ("Ms. Vasko"), Judy Trotter ("Ms. Trotter"), Beverly Molnar ("Ms. Molnar"), and Chester Cote ("Mr. Cote") as named plaintiffs. (*See generally* FAC.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

including three in-person meetings and various telephone conferences. (*Id.*) These efforts culminated in the October 31, 2014 joint stipulated Settlement Agreement.[3]

### C. The Notice to the Class Members and the Class Response

The class notice of settlement included six separate components, including direct mail and email notice; a long-form notice available online; a settlement website for filing and checking the status of claims, as well as filing objections; a settlement website posting frequently asked questions and answers; and a telephone help line for class members to discuss questions with class counsel. (*See* Mot. for Final Approval at 4–5.)

On December 12, 2014, the claims administrator received a list from Herbalife of approximately 1,533,339 class members' names and mailing addresses, as well as a list of email addresses for 1,051,342 of those members. (Decl. of Eric Robin in Supp. of Mot. for Final Approval ("Robin Notice Decl.") ¶ 4.) The administrator used the National Change of Address system to update the list of mailing addresses and located new addresses for 188,158 class members. (*Id.* ¶ 5.) Of the 1,533,339 class members, only 114 had incomplete or missing mailing or email addresses. (*Id.* ¶ 6.)

The claims administrator emailed notices to the 1,051,342 class members with known email addresses. (*Id.* ¶ 8.) As of January 8, 2015, 70.06% of the emails were successfully delivered, and 29.94% were undeliverable. (*Id.*) Of the 314,786 class members whose email notices were undeliverable, the claims administrator had valid physical addresses for 314,711 and accordingly mailed postcard notices to these individuals. (*Id.* ¶ 9.)

The claims administrator also mailed postcard notices to those 481,883 class members for whom only a mailing address was known. (*Id.* ¶ 7.) 1,396 notices were returned with forwarding addresses, and the administrator re-mailed these notices to the forwarding address. (*Id.* ¶ 10.) 121,963 notices were returned without a forwarding address. (*Id.*) The claims administrator has located updated mailing addresses for 71,294

---

[3] The Court detailed the terms of the proposed Settlement Agreement in its order granting final settlement approval. (*See* Dkt. No. 145.) The Court will not recount these details here, as Objectors primarily object to the class notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02488 BRO (SHx) | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

of these members and re-mailed the notices to the proper address. (*Id.*) The combined email and postcard notices have reached approximately 92.91% of the class. (*Id.* ¶ 11.)

In addition to mailing and emailing class settlement notices, the claims administrator also established a telephone system to provide information about the settlement and field requests for notice packets. (*Id.* ¶ 12.) The system received 21,291 calls, and the claims administrator has fulfilled all 3,793 requests for notice packets. (*Id.*) The settlement website includes links to the notice form, claim form, and Settlement Agreement, and class members could submit claims through the website. (*Id.* ¶ 13.)

## 1. The Number of Claims

The deadline to submit a monetary claim for relief from the business opportunity fund or product return fund was February 3, 2015. (*Id.* ¶ 20.) As of April 13, 2015, 7,238 class members had filed timely claims forms. (*Id.* ¶ 19.) The parties agreed to permit class members to file late claims through the settlement website until April 30, 2015. (*Id.* ¶ 20.) As of May 12, 2015, 7,457 class members submitted timely claims. (*See* Supplemental Robin Notice Decl. ¶ 4.)

Every Business Opportunity Claimant who could not demonstrate a loss, as well as every claimant who purchased less than $750 worth of Herbalife product, will receive a $20 flat rate payment. (Robin Notice Decl. ¶ 21.) Every Business Opportunity Claimant who could demonstrate a loss and who purchased at least $750 worth of product will receive the lesser of his or her estimated total loss or 75% of the amount he or she paid for Herbalife products. (*Id.*) Of the Business Opportunity Claimants entitled to a pro rata award, 114 will receive payments greater than $10,000, 329 will receive payments greater than $5,000, and 1,655 will receive payments in excess of $1,000. (Supplemental Robin Notice Decl. ¶ 5.) The average payout is $1,101.48, and the largest award is $98,588.36. (*Id.*)

As of April 13, 2015, the total value of the business opportunity awards to be paid from the $15 million business opportunity fund was $7,396,407.90. (*Id.*) The total value of the product return awards was $938,280.75. (*Id.* ¶ 6.) The claims administrator has notified each class claimant of the value of his or her business opportunity or product return award. (Robin Notice Decl. ¶ 23.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

### 2. Requests for Exclusion and Objections

As of April 13, 2015, the claims administrator had received 687 requests for exclusion from the settlement. (*Id.* ¶ 14, Ex. E.) The administrator received two objections which were later withdrawn, (*see* Dkt. Nos. 115, 116), as well as eighteen objections which remained at the time of final approval, (*see* Robin Notice Decl. ¶ 15). Of the eighteen remaining objectors, three filed claims as Business Opportunity Claimants. The first such objector, Susana Perez ("Ms. Perez"), estimated her total loss to be $30,000; she will receive a pro rata business opportunity award equal to this claimed loss. (*Id.* ¶ 16.) The second such objector, Eric Rodensky ("Mr. Rodensky") estimated his loss to be $3,000 and will receive a pro rata award of $2,983.30. (*Id.* ¶ 17.) The third such objector, Julio Ulloa ("Mr. Ulloa"), estimated his total loss to be $20,000 and will receive an award of $14,094.29. (*Id.* ¶ 18.)

### D. Relevant Procedural History

The Court issued an order granting preliminary approval of the Settlement Agreement on December 2, 2014. (Dkt. No. 105.) On April 13, 2015, Plaintiffs filed a motion for final settlement approval and motion for attorneys' fees. (Dkt. Nos. 110, 129.) The eighteen objectors represented by Mr. Brooks filed an opposition to final settlement approval. (*See* Dkt. Nos. 121, 134.) The Court held a final fairness hearing on the matters on May 11, 2015. (Dkt. No. 144.) Mr. Brooks, along with nine of the eighteen objectors he represents, attended the hearing. The Court questioned and heard oral argument from class counsel for Plaintiffs, Herbalife's counsel, and Mr. Brooks.

The Court granted the parties' request for final settlement approval on May 14, 2015 and issued a final judgment and order of dismissal on June 17, 2015. (Dkt. Nos. 145, 154.) Objectors now move for reconsideration of these orders. (Dkt. No. 157.) Plaintiffs and Herbalife timely objected to the motion, (Dkt. Nos. 160, 162), and Objectors timely replied, (Dkt. No. 167).[4]

---

[4] Objectors' original reply brief exceeded twenty pages in length. (Dkt. No. 164.) The Court struck the filing for failure to comply with the page limitations set forth in the Standing Order. (Dkt. No. 166.) Objectors timely refiled a page-compliant brief, (Dkt. No. 167), and the Court has considered it in full.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

## III.  LEGAL STANDARD

A final order may be reconsidered "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).  If the motion is filed within twenty-eight days of entry of judgment, it is treated as a Rule 59(e) motion.  *See Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (referring to an older version of Rule 59(e) when the motion had to be filed within ten days of judgment instead of twenty-eight days); Fed. R. Civ. P. 59(e) (requiring a motion to alter or amend a judgment to be filed within twenty-eight days after entry of judgment); *see also* Fed. R. Civ. P. 59 advisory committee's notes to 2009 Amendments.  Otherwise, the motion is treated as a Rule 60(b) motion.  *Am. Ironworks & Erectors*, 248 F.3d at 899.

Here, Objectors filed their Motion for Reconsideration on July 15, 2015, exactly twenty-eight days after the Court issued a final judgment and order of dismissal.  (*See* Dkt. Nos. 154, 157.)  Accordingly, the motion will be considered pursuant to Rule 59(e).  Under Rule 59(e), reconsideration is appropriate if (1) the court "is presented with newly discovered evidence," (2) the court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law."  *Sch. Dist. No. 1J*, 5 F.3d at 1263.  Other highly unusual circumstances may also warrant reconsideration.  *Id.*

The standard for reconsideration under the Central District's Local Rules is similar.  *Compare* C.D. Cal. L.R. 7-18, *with Sch. Dist. No. 1J*, 5 F.3d at 1263.  Under Local Rule 7-18, a party may seek reconsideration only upon a showing one of the following: (1) "a material difference in fact or law" from that initially presented to the Court, which the party could not have known by exercising reasonable diligence; (2) "the emergence of new material facts or a change of law" after the Court's order; or (3) "a manifest showing of a failure to consider material facts presented to the Court."  C.D. Cal. L.R. 7-18.  Local rules have the force and effect of law so long as they are not inconsistent with a statute or the Federal Rules.  *See Atchison, Topeka & Santa Fe R.R. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).  A court should not depart from the local rules unless the effect on the parties' rights would be "so slight and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488 BRO (SHx) | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

unimportant that the sensible treatment is to overlook it." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

## IV.   DISCUSSION

Objectors seek reconsideration under Rule 59(e) on the basis of clear error.[5] Objectors argue that the Court clearly erred in determining the class notice was appropriate, in finding Ms. Molnar and Ms. Vasko have standing to represent the Rule 23(b)(2) injunctive relief class, and in failing to independently evaluate the value of Plaintiffs' claims.  The Court addresses each of these arguments in turn.

### A. Whether the Court Clearly Erred in Determining the Class Notice Satisfied Rule 23 and Due Process

Objectors first argue the Court clearly erred in approving the class notice and request that the Court appoint an independent notice expert to re-evaluate the program's adequacy.  (Mot. for Reconsideration at 6–16.)  Objectors point to the statement in the final settlement approval order that "the Court agrees in theory that a broader notice campaign could have benefitted the class" and argue this statement does not comport with Rule 23's notice requirements.  Objectors also challenge the length of the notice period, the low claim response rate, the notice program's use of email, and the program's purported failure to properly consider the demographics of the class.

Objectors' focus on the Court's statement regarding the theoretical benefit of a broader notice program is taken out of context.  The full statement makes clear that the Court considered the adequacy of the class notice with the requirements of both the Federal Rules and the Constitution in mind: "Although the Court agrees in theory that a broader notice campaign could have benefited the class, *the notice procedures approved here comport with due process and Rule 23*."  (Dkt. No. 145 at 47 (emphasis added).)

---

[5] Objectors' original motion also asserted the existence of newly discovered evidence.  (*See* Dkt. No. 157 at 9–10, 25–28.)  Their reply withdraws this basis for reconsideration and confirms that Objectors only argue in favor of clear error.  (*See* Dkt. No. 167 at 1 ("Objectors hereby withdraw their arguments based on new evidence.").)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488 BRO (SHx)** | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

The remainder of the settlement approval order confirms that the Court considered Objectors' concerns regarding the adequacy of the class notice, including those related to the claim form, the class response, and the outreach to Herbalife's Latino members and distributors. (*See* Dkt. No. 145 at 46–49.) Certification of an injunctive relief class requires "appropriate notice to the class," and certification of a monetary relief class requires "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(A), (B). As the Court explained in approving the class settlement, and as Ninth Circuit authority makes clear, the "best notice that is practicable" does not require actual notice to each member of the class. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ("We do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice."). The relevant inquiry is whether the notice "is reasonably certain to inform the absent members of the plaintiff class." *Id.* (quoting *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 865 (9th Cir. 1986)). Given that the settlement notice reached 92.91% of the class, the Court did not clearly err in finding this standard satisfied.

Moreover, as stated above, the Court previously considered Objectors' arguments regarding the length of the claim period and the class response in finding the notice adequate under the circumstances. (*See* Dkt. No. 145 at 48–49.) The Court rejected these arguments and reasoned as follows:

Many courts have found that the class response rate is not the touchstone of the adequacy of the class notice. . . . Here, the settlement notice reached 92.91% of the class. More importantly, however, the facts and circumstances of this case reasonably suggest a low response rate. As has been discussed throughout this Order, survey evidence suggests that most Herbalife members and distributors joined to obtain a product discount. These members are unlikely to have unopened and unused Herbalife products they wish to return for a refund, as they are most likely to have purchased the products for personal consumption. Further, these individuals are unlikely to have suffered any financial losses on a failed business opportunity, as their reason for joining the company was not to generate income or pursue an entrepreneurial enterprise. Under these circumstances, and given the low number of objections and requests for exclusion, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02488 BRO (SHx) | | Date | August 18, 2015 |
|----------|------------------------|---|------|------------------|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

finds that the low response rate here comports with Rule 23 and does not per se demonstrate the Settlement Agreement's inadequacy.

(*Id.*)

Objectors have not cited to any controlling authority demonstrating that the Court erred in reaching this conclusion. With respect to the length of the claim period, Objectors concede that as few as thirty days is appropriate but argue sixty to ninety days is preferred. (Mot. for Reconsideration at 14–15 (citing *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (Federal Judicial Center 2010)).) Although some district courts have concluded that, under the facts and circumstances of the particular case, the claim period should exceed thirty days, these cases do not demonstrate that the Court clearly erred in finding the thirty-five day claim period here was sufficient. Given the unique circumstances explaining the low response rate, the fact that the class notice reached nearly 93% of the class, the relatively low number of opt-outs, and the parties' agreement to accept all late-filed claims, the cases requiring a longer claim period do not demonstrate that a longer period was also required here.

Objectors' argument concerning the notice program's use of email is also unavailing, for two reasons. First, Objectors should have raised the argument in advance of or at the hearing on the motion for final settlement approval. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). The settlement agreement and parties' motion for preliminary approval clearly called for the use of email notice; Objectors therefore could have contested this form of notice far earlier in the proceedings.

Second, the Ninth Circuit has approved the use of mixed email and mail notice similar to the notice program employed here. In *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015), the Ninth Circuit found adequate notice where the claims administrator emailed the settlement notice to the thirty-five million class members and then mailed the notice to the nine million members whose invalid email addresses "bounced back" the email notice. *Id.* at 941. Although the objectors in *In re Online DVD-Rental* did not specifically argue, as Objectors do here, that email should not

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-02488 BRO (SHx)** | Date | August 18, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

have been used or used as prevalently, the Ninth Circuit's approval of the notice procedures affirms that the Court did not clearly err in finding the notice program appropriate here. As the *In re Online DVD-Rental* panel explained,

> The notice provided in this settlement, in both mail and email form, was sufficient under the Constitution and Rule 23(e). . . . The email notice provides simple and straightforward information about the class action, about the status of the cases against both Netflix and Walmart, about what action class members may take in either case, and about the uncertain nature of the Netflix litigation and the need to check the website for more detail. Most importantly, the notice states the amount of the settlement fund with Walmart, the amount class counsel will seek in fees, litigation expenses, and incentive awards, the fact that class counsel will seek payment for other costs from the fund, the fact that class members will need to submit a claim to obtain relief, an internet link and phone number to obtain a claim form, and the deadline for objecting or submitting a claim. The mail form is substantially the same. The e-mail and mail notices, which did not need to and could not provide an exact forecast of how much each class member would receive, gave class members enough information so that those with "adverse viewpoints" could investigate and "come forward and be heard."

*Id.* at 946.

Similarly here, the email and mail notices apprised class members about the nature and status of the class action dispute, the persons included in the class, the types of relief available to class members, the deadline to submit a claim, the deadline to request exclusion or object, the date of the final settlement approval hearing, and the details of plaintiffs' counsel's request for costs and fees. (*See* Dkt. No. 130 Exs. A, B.) Both notices also directed class members to the settlement website to obtain further details about the matter or to file a claim form and included the number of a toll-free hotline to ask questions or request a claim form. (*Id.* Exs. A, B.) As the email and mail notices

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488 BRO (SHx) | Date | August 18, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

here provided the same types of information as those in *In re Online DVD-Rental*, the Court did not err in approving them.[6]

Finally, Objectors argue, as they have before, that the class notice program did not properly consider the demographics of the settlement class. (Mot. for Reconsideration at 10–13.) The Court addressed these concerns in granting final settlement approval and found that the 92.91% notice receipt rate, combined with the fact that the notices were distributed in both English and Spanish, adequately ensured the class members received proper notice of the settlement, regardless of their language or cultural background. (Dkt. No. 145 at 47–48.) Objectors offer no arguments the Court has not already considered, nor any controlling authorities requiring a different result.

### B. Whether the Court Clearly Erred in Finding at Least One Class Representative Had Standing to Pursue Injunctive Relief

Objectors next argue the Court clearly erred in determining that two of the named representatives, Ms. Molnar and Ms. Vasko, have standing to represent the injunctive relief class. The Court previously rejected this argument on the basis of Ms. Molnar and Ms. Vasko's declarations. Ms. Molnar's declaration states, "I became an Herbalife distributor in 2011. Since that date I have remained continuously an Herbalife distributor or member"; Ms. Vasko's declaration similarly affirms that she "became an Herbalife distributor in approximately September of 2012" and that, "[s]ince that date [she has] remained continuously an Herbalife distributor." (Dkt. Nos. 138-1, 138-2.)

---

[6] Objectors attempt to distinguish *In re Online DVD-Rental* on the basis that the Ninth Circuit did not expressly consider whether the parties' predominant use of email rendered the class notice inadequate. (*See* Reply at 10–11.) But in finding that the combined mail and email notices satisfied Rule 23 and the Constitution, the Ninth Circuit implicitly approved the use of email notice. That the defendants in *In re Online DVD-Rental* may have primarily conducted their business online does not require a different result here, as it is undisputed that the combined notices reached 92.91% of the class. Moreover, because the email and mail notices are identical, Objectors' contention that the notice program relied too heavily on the use of email is inapposite; Objectors do not explain how receiving a notice of the settlement by mail may have induced more class members to file claims than receiving the same notice by email.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488 BRO (SHx) | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Article III standing requires a showing of an injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing to pursue injunctive relief requires "a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that [the plaintiff] will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan*, 504 U.S. at 560) (internal citation omitted). Objectors do not dispute that Ms. Molnar and Ms. Vasko suffered an injury in fact, or that Herbalife's allegedly unlawful business structure and practices caused these injuries. Rather, Objectors assert that Ms. Molnar and Ms. Vasko are not "active" distributors of Herbalife products, such that there is no sufficient likelihood they will be harmed again in a similar way. With respect to Ms. Vasko, this argument relies upon a strained reading of the First Amended Complaint and fails to give proper weight to her declaration. Nothing in the First Amended Complaint shows Ms. Vasko has closed her nutrition club or otherwise ceased operations as an Herbalife distributor. That she affirmed her distributor status at the time of final settlement approval demonstrates a sufficient likelihood of future harm and establishes her standing to represent the Rule 23(b)(2) class. Thus, the Court did not clearly err in certifying the injunctive relief class. *See Bates*, 511 F.3d at 985 ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.").[7]

**C. Whether the Court Clearly Erred in Considering the Value of the Class's Claims**

One of the factors a district court must consider in determining whether to grant final settlement approval is the amount offered in settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). In doing so, the court should view "the complete package

---

[7] None of the cases cited by Objectors are to the contrary. *Carroll* regarded standing in the particular context of an equal protection challenge to a race-conscious program, which requires that a plaintiff show he or she is "able and ready" to participate but that a discriminatory policy prevents the plaintiff from doing so on an equal basis. *See Carroll*, 342 F.3d at 941–43. Given the difference between the legal claims in *Carroll* and those at issue in this case, the *Carroll* decision is unhelpful. *Beal v. Lifetouch, Inc.*, No. CV 10-08454 JST, 2012 WL 3705171, at *3 (C.D. Cal. Aug. 27, 2012) is also distinguishable. That class action involved workplace claims under the California Labor Code, and the sole plaintiff seeking injunctive relief was no longer employed by the defendants. In contrast here, Ms. Vasko affirms she has "remained continuously" an Herbalife distributor throughout the proceedings.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 13-02488 BRO (SHx) | | Date | August 18, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

taken as a whole, rather than the individual component parts." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982). Objectors' final argument contends the Court clearly erred in failing to independently evaluate the monetary value of Plaintiffs' claims. (Mot. for Reconsideration at 24–25.)

In determining the adequacy of the amount offered in settlement, the Court considered the declarations of the mediator who helped resolve this case and an independent evaluator. Both of these individuals affirmed that the proposed settlement represented a reasonable recovery in light of the facts of this case and the parties' claims and defenses. (*See* Dkt. No. 145 at 37.) The Court also considered Objectors' proposed methodology for valuing the class claims but ultimately concluded that the methodology was flawed and unreliable, as it relied on an unsubstantiated assumption regarding the number of class members who joined Herbalife to pursue a business opportunity rather than for self-consumption purposes.[8] (*Id.* at 37–38.) Additionally, the Court took into account the risk that Plaintiffs might not prevail, as well as the fact that each Business Opportunity Claimant would receive the full value of his or her claim. (*Id.* at 38.)

The foregoing illustrates that the Court analyzed and considered the value of the class's claims in determining whether the proposed settlement agreement was fair and reasonable. Unlike the cases cited by Objectors, which involved wage and hour claims readily calculable based upon the time each class member worked, the claims at issue in this case depended on the total losses sustained by class members in pursuing Herbalife product sales as a business venture. Calculating these losses would require an individualized determination as to each class member's reason for joining Herbalife. It would also require determining speculative lost sales. Objectors have not offered a reasonable method for making these determinations, nor have they argued that the parties could have done so on the basis of the information available to them. That each Business Opportunity Claimant who submitted a claim will fully recover his or her estimated loss,

---

[8] As the Court explained,

> [I]t is not clear to the Court that these surveys [upon which Objectors' assumption relied] are reliable. One is an industry-wide survey of direct sellers, which reveals nothing specific to Herbalife's members or distributors. And another had only forty-eight respondents, all of whom were Herbalife supervisors and therefore likely to have invested in the company for a business purpose.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488 BRO (SHx) | Date | August 18, 2015 |
|----------|------------------------|------|-----------------|
| Title | DANA BOSTICK V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

or at least the amount he or she spent in purchasing Herbalife products, supports the Court's conclusion that the amount offered in settlement was fair and reasonable.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Objectors' Motion for Reconsideration.  Objectors have not offered any newly discovered evidence or identified any change in the law to warrant reconsideration.  Nor have Objectors cited to controlling authority demonstrating that the Court clearly erred in its findings regarding the class notice, the availability of injunctive relief, or the value of the class's claims.  The hearing scheduled for this matter on Monday, August 24, 2015, at 1:30 p.m., is hereby **VACATED**.

**IT IS SO ORDERED.**

|  | : |
|--|--|
| Initials of Preparer | rf |