**PAUL A. LEVIN (State Bar No. 229077)**
**MORTGAGE RECOVERY LAW GROUP LLP**
**700 North Brand Boulevard, Suite 830**
**Glendale, California 91203**
**TELEPHONE: (818) 630-7900 FASCIMILE: (818) 630-7920**
**EMAIL:      plevin@thelmrg.com**

**ETAN MARK (admitted *pro hac*)**
**DONALD J. HAYDEN (admitted *pro hac*)**
**MARK MIGDAL & HAYDEN**
**80 SW 8th Street, Suite 1999**
**Miami, Florida 33130**
**TELEPHONE: (305) 374-0440**
**EMAIL:      etan@markmigdal.com**
**               don@markmigdal.com**

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JEFF RODGERS; PATRICIA RODGERS; JENNIFER RIBALTA; IZAAR VALDEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>HERBALIFE LTD.; HERBALIFE INTERNATIONAL, INC.; HERBALIFE INTERNATIONAL OF AMERICA, INC.,<br><br>               Defendants. | CASE NO. 2:18-cv-07480-JAK (MRWx)<br>[Related Case 2:13-cv-02488-BRO-RZ]<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: January 28, 2019<br>Time: 8:30 A.M.<br>Crtrm.: 10B<br><br>Assigned to Hon. John A. Kronstadt |

I

# **TABLE OF CONTENTS**

**INTRODUCTION**............................................................................................1

I.     **MEMORANDUM OF POINTS AND AUTHORITIES**..............................2

   A.     **Plaintiffs plead actionable RICO claims.** ..............................2

      1. Plaintiffs have alleged a distinct RICO Enterprise...............................2

      2. Plaintiffs have alleged losses sufficient to confer RICO standing. ....................4

      3. The Complaint alleges actionable misstatements that do not constitute mere "puffery." .................................................................5

      4. The allegations in the Compliant satisfy Rule 9(b)...............................7

      5. Herbalife conspired to violate RICO. .................................9

   B.     **Plaintiffs state a claim for violation of FDUTPA** .......................10

      1. The Herbalife distributor agreements are outside the pleadings and not neccesary to Plaintiffs' claims ................................................10

      2. The choice-of-law provision in the distributor agreements is nevertheless inapplicable to Plaintiffs' claims. ..............................11

      3. Plaintiffs have adequately plead FDUTPA claims against Herbalife...............14

   C.     **Plaintiffs adequately plead unjust enrichment** .......................15

   D.     **Plaintiffs adequately plead negligent misrepresentation**...............15

   E.     **The *Bostick* Release**...............................................16

      1. Release is an affirmative defense. ...................................17

      2. Jennifer Ribalta was excluded from the *Bostick* release. ...................17

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

3. Herbalife's post-settlement conduct has not been released. ............................17

4. Plaintiffs' interests were not adequately represented in *Bostick*. .......................18

5. The claims in *Bostick* were based on different factual predicate. ......................19

**II.      CONCLUSION** .................................................................................................20

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Federal Statutes & Rules**

Federal Rule of Civil Prodceure 8 ........................................................................22

Federal Rule of Civil Procedure 9 ...............................................................passim

Federal Rule of Civil Procedure 12……………………………………………………..2

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961-1962.......... passim

**California Statutes**

California Business and Professions Code section 17200 ........................................16

**Florida Statutes**

Florida Deceptive and Unfair Trade Practices Act ...................................... passim

**United States Supreme Court**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 ..................................................2

*Boyle v. U.S.*, 556 U.S. 938 (2009) ...............................................................2, 3

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).........................3

*Bostick v. Herbalife Int'l., et al., Case No. 2:13-cv-02488-BRO-RZ (C.D. Cal.)* ............... passim

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).....................................18

*Salinas v. United States*, 522 U.S. 52 (1997).................................................9

*Schmuck v. United States*, 489 U.S. 705 (1989) .............................................8

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985).................................2

*Williams v Boeing co.,* 517 F.3d (1982).........................................................19

**9th Circuit Court of Appeals**

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ...................................7

*Brown v. Ticor Title Ins. Co.,* 982 F.2d 386 (9th Cir. 1992) .........................18

*Chaset v. Fleer/ Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) .....................5

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242 (9th Cir. 1990)..........................................................................6

*Feller v. Transamerica Life Insurance*, 2016 WL 6602561 (9th Cir. Nov. 8, 2016).....................17

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................. 18

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ........................................... 18, 19

*Howard v. America Online, Inc.*, 208 F.3d (9th Cir. 2000) ........................................... 9

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ........................................... 3

*Sever v. Alaska Pulp Corp.*, 978 F. 2d 1529 (9th Cir. 1992) ........................................... 4

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................................... 2

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ........................................... 7

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,* 42 F.3d 1292 (9th Cir.1994) ........................................... 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................... 7

**Central District of California**

*Conseco Life Ins. Co. Cost of Ins. Litig.*, ML 04-1610 AHM, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ........................................... 18

*In re Am. Apparel, Inc. Shareholder Litig.*, 855 F. Supp. 2d 1043 (C.D. Cal. 2012) ........................................... 3

*Jackson v. Capital Mgmt. Services, LP*, CV 13-8267-DMG-SHX, 2014 WL 12601055 (C.D. Cal. June 18, 2014) ........................................... 11

*Lee v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, CV142396GHKMRWX, 2014 WL 12597086 (C.D. Cal. July 9, 2014) ........................................... 11

*Molloy v. RK Netmedia, Inc.*, CV0902614MMMAGRX, 2009 WL 10669608 (C.D. Cal. Oct. 8, 2009) ........................................... 13

*Reddam v. KPMG LLP*, SACV04-1227GLT(MANX), 2004 WL 3761875 (C.D. Cal. Dec. 14, 2004) ........................................... 12

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) ........................................... 16

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ........................................... 4

*Vanguard Integrity Professionals, Inc. v. Team Gordon, Inc.*, SACV080185DOCANX, 2008 WL 11342701 (C.D. Cal. Apr. 4, 2008) ........................................... 10

**Other California Federal Courts**

*Chi Pham v. Capital Holdings, Inc.*, 2011 WL 3490297 (S.D. Cal. Aug. 9, 2011) .......................4

*Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030 (N.D. Cal. 2011)......................6

*Mauro v. Gen. Motors Corp.*, CIV.S-07-892FCD GGH, 2008 WL 2775004 (E.D. Cal. July 15, 2008)..................................................................................................................................13

**Federal Courts Outside of California**

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345 (S.D. Fla. 2016) ..................................17

*Rodriguez-Alexander v. CACI Int'l Inc.*, CV 11-740 TUC-DCB, 2012 WL 13026919 (D. Ariz. Apr. 3, 2012)....................................................................................................................12

*United Food & Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) .............................................................................................4

**California Supreme Court**

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) ..................................................11,12

**California Court of Appeals**

*Fox v. Pollack*, 181 Cal. App. 3d 954, 962, 226 Cal. Rptr. 532 (1986)................................15,16

**Florida Court of Appeals**

*Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87 (Fla. 2d DCA 2003) ..........................13

# INTRODUCTION

Herbalife is more than just a con-artist selling a dream while it picks your pocket. It is the primary cog in a wheel of despair. It pays its henchmen richly to further its aims, provides them with the platform, helps create the content, and provides a veneer of credibility that has allowed the scam to scale to sizes unimaginable. It is, after all, a publicly traded company.

Herbalife is one of the largest – and longest lasting – of America's so-called "multi-level marketing" companies. MLMs rely on armies of uncompensated salespeople to make bulk product purchases and to recruit new uncompensated salespeople to do the same. Herbalife has been part of the multi-billion-dollar industry for nearly four decades and many of the standard techniques used by MLMs first originated and evolved at Herbalife. Chief among these techniques is the subordinate conspiracy.

In an MLM subordinate conspiracy, the company allows – even assists – top recruiters to set up lucrative side businesses selling the alleged secrets to success in the company. These side businesses do much of the fraudulent heavy lifting and are often responsible for recruitment, retention, and maximizing monetary extraction. At issue in this case is one such racketeering enterprise: Herbalife's Circle of Success event system.

Herbalife's Motion to Dismiss ("Motion") fundamentally misrepresents the nature and specificity of the allegations contained within the Complaint. Herbalife would have this Court believe that the Complaint is nothing more than the standard attack on its chain recruiting business; but this is simply not the case. Plaintiffs have not taken aim at Herbalife for what the FTC recently insisted were its illegitimate business practices, nor the products it sells, but rather zero in on the harms done by the subordinate Circle of Success conspiracy.

Plaintiffs' allegations are well pled and well founded. They describe a continuous pattern of wire fraud in support of a cartel – cleverly and intentionally disguised as a group of like-minded entrepreneurs – that relieves victims monthly of their money and saturates them with the idea that events are the key to unlocking Herbalife's just-out-of-reach treasures. The Complaint adequately pleads a distinct RICO enterprise and alleges dozens of

specific acts of wire fraud which led directly to the concrete losses suffered by the Plaintiffs. The events scheme detailed in the Complaint does not, as Defendants argue, arise from the same facts and circumstances as the claims in the *Bostick* action. And by Herbalife's own admission, not all Plaintiffs are subject to the release negotiated in that settlement.

For these reasons and those argued below, Herbalife's Motion must be denied.

## I.     MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs have satisfied their burden of pleading a facially plausible claim. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Courts require plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level." *Id.* at 555. However, "[t]he complaint must be read in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### A. Plaintiffs plead actionable RICO claims.

To state a claim under § 1962(c), a plaintiff must adequately allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). These terms are to be "liberally construed to effectuate [their] remedial purposes." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009).

The Circle of Success is a textbook violation of the RICO statute. Herbalife and its co-conspirators continuously conduct their event enterprise through a pattern of racketeering activity. That pattern involves tens of thousands of fraudulent, manipulative messages distributed online and over social media. These messages amount to more than mere puffery and the Complaint points with specificity to Herbalife's role in effectuating this fraudulent scheme.

### 1.   Plaintiffs have alleged a distinct RICO Enterprise.

Plaintiffs do not, as Herbalife contends, make allegations that "amount to nothing more than a claim that Herbalife's business model is fraudulent." ECF No. 142 at 23. Herbalife's core business, according to its own public filings, is the sale of "weight

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

management; targeted nutrition; energy, sports, & fitness; and outer nutrition products to and through a network of independent members, or Members."[1] Put another way, when Cristiano Ronaldo dons his Herbalife soccer jersey, he is promoting the *product*, not the Circle of Success.

The RICO statute defines a RICO enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The definition of an association in fact enterprise is intended to have "wide reach" as "the very concept of an association in fact is expansive." *Boyle,* 556 U.S. at 944. "It is undisputed that a corporation can be an 'individual' for purposes of an associated-in-fact enterprise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). But in order "to establish liability under [RICO] one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

A corporation cannot serve as both the RICO "person" and the RICO "enterprise." Herbalife argues that Plaintiffs "fail to allege an enterprise that is distinct from Herbalife's business and the ordinary channels through which it sells its products and recruits distributors." ECF No. 142 at 23. But the fact pattern here does not present a distinctiveness issue. Herbalife's fraudulent business model is not the subject of this litigation; its alleged pyramid scheme merely forms the backdrop for the harm perpetrated by the Circle of Success event enterprise – in which Herbalife is but one participant. Nor does the enterprise consist only of Herbalife and its own distributors. The Complaint alleges a tangle of entities and individuals – some, but not all of whom are named Defendants. Compl. ¶¶72-73.

---

[1] *See* Herbalife Nutrition Ltd., Quarterly Report (Form 10-Q) (Aug. 1, 2018). The Court may take judicial notice of this public filing. *In re Am. Apparel, Inc. Shareholder Litig.*, 855 F. Supp. 2d 1043, 1061 (C.D. Cal. 2012).

The association-in-fact RICO enterprise alleged in the Complaint consists of dozens of named individuals and "a web of Defendant connected entities." Compl. ¶71. The enterprise is sprawling. Event tickets, in contrast to Herbalife's "ordinary" product sales, are completely non-refundable. Compl. ¶¶75, 80, 83, 89. Many of the financial transactions alleged in the Complaint have occurred between the Plaintiffs and Herbalife's Circle of Success co-conspirators. Compl. ¶¶71-73. These individuals are not employees or agents of Herbalife. They, together with Herbalife and other unaffiliated corporate entities they created, have contrived their own fraudulent ecosystem, euphemistically called the Circle of Success, comprised of cash transactions (Compl. ¶¶72, 188, 195), an ever-shifting list of websites and business entities (Compl. ¶¶71, 82, 109), and a social media subculture (Compl. ¶¶91, 94, 97-100).

The case law Herbalife cites is unavailing. *See Sever v. Alaska Pulp Corp.*, 978 F. 2d 1529 (9th Cir. 1992) (reversing the district court's determination that plaintiff failed to allege a RICO enterprise because naming both the corporation and the individual officers/directors is sufficient to state a claim so long as the enterprise is either formally or informally distinct from the individual); *Chi Pham v. Capital Holdings, Inc.*, 2011 WL 3490297, at *5 (S.D. Cal. Aug. 9, 2011) (Defendants and RICO enterprise were one and the same); *United Food & Com. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (Complaint failed to detail anything other than a "normal commercial relationship"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 826 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011) (alleged RICO enterprise solely related to the design, manufacture and sale of Toyota vehicles – its "primary business purposes"). Here, the event system enterprise is separate and distinct from Herbalife's core business.

2. <u>Plaintiffs have alleged losses sufficient to confer RICO standing.</u>

Plaintiffs do not seek to recover the "money they hoped to earn" pursuing Herbalife's business opportunity, as Herbalife disingenuously claims. ECF No. 142 at 24. If that were

the case, each Plaintiff would be seeking not just the money they wasted attending events, but damages to cover the "expected" exorbitant lifestyle they were promised. Nor are Plaintiffs in this case seeking recovery for the tens of thousands of dollars they wasted purchasing Herbalife's products, or renting "nutrition clubs" at the merciless exhortation of their uplines.  Instead, Plaintiffs seek recovery for the direct and substantial financial losses they incurred attending manipulative events calculated to do them harm. The damages sought here are targeted – the money wasted on attending Circle of Success events. An "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002). RICO standing is conferred by allegations of "concrete financial loss" or direct damage to a property interest. *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005). Plaintiffs here have pled a clear, concrete financial injury to a specific business or property interest. *See, e.g.,* Compl. ¶163 ("At least $20,000 of those loses stem directly from their participation in the Circle of Success event cycle."), ¶190 ("Izaar lost more than $3,500 attending Circle of Success events in 2014."), ¶202 ("Over the course of her involvement with Herbalife, Jen spent more than $15,000 attending Circle of Success events.").

Events are billed as a guaranteed path to success and are said to feature speakers who have achieved success themselves through their own participation in the Circle of Success event system. Compl. ¶92. But the Complaint alleges a reality where events are a path only to ensnarement and loss. Events feature speakers who – contrary to their own claims – have not achieved their success through event attendance. Compl. ¶¶32-53. These speakers pledge to reveal the secrets of their success but never actually do so. Circle of Success events are not as advertised and are simply another avenue by which Herbalife and its top distributors extract money from their victims. Plaintiffs have suffered concrete losses as a consequence.

3.  The Complaint alleges actionable misstatements that are more than mere "puffery."

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

The Complaint alleges a continuing pattern in which Herbalife's Circle of Success enterprise manufactures and mass distributes two specific falsities: 1) Circle of Success event attendance will lead to substantial financial success and 2) Circle of Success event speakers attained substantial financial success via event attendance. Both claims are false and intended to induce reliance in the inundated listener.

Representations are considered "puffery" when they are vague, exaggerated, generalized or highly subjective statements. *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242 (9th Cir. 1990). A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. *Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011). Courts have found that the "common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Cook*, 911 F.2d 242 at 246.

To support their argument that Plaintiffs allege no more than "classic puffery," Herbalife cherry picks sentence fragments and presents them without context. For instance, Herbalife refers to one of dozens of deceptive marketing fliers referenced in the Complaint as a "social media post" proclaiming "NEVER GIVE UP." ECF No. 142 at 25. Such a vague assertion may well be puffery, but the next two sentences from the same flier make highly specific factual assertions calculated to induce reliance: "[T]he couple's income averages over $45K per month. They live in a beautiful custom home with a brand new 2015 Corvette Stingray in the driveway." Compl. ¶165.

The Complaint is replete with examples of the sort of fraudulent messaging that the Circle of Success enterprise must employ to sell non-refundable event tickets to distributors who can ill afford to purchase them. In context, or even taken alone, these highly specific claims cannot be said to be mere puffery. *See, e.g.,* Compl. ¶6 ("If you go to all the events, you qualify for everything – you will get rich."), ¶61 ("There is a DIRECT CORRELATION between the amount of people you bring to an event and your position in the Herbalife

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

Marketing Plan!), ¶92 ("Lisa Arnold was able to go from a zero dollar income to a 6 figure income in 12 months and she will be sharing in detail exactly how she did so!"), ¶108 ("THE pathway to advancing in the business can ONLY be done by attending the events and bringing people with you."), ¶110  ("Attending these events is ESSENTIAL TO SUCCESS in working the 2-4-1 Plan."), ¶113 ("[F]or every person you get to an event, you can expect your check to go up by a certain amount."). These statements are well beyond puffery; they are outright lies.[2]

    4.  <u>The allegations in the Compliant satisfy Rule 9(b).</u>

    The Complaint alleges that Herbalife – in conjunction with its Circle of Success co-conspirators – is responsible for a pattern of wire fraud intended to lure Plaintiffs into regularly sinking money into deceptive and valueless events. The majority of this fraud is distributed online and over social media. The pervasiveness of social media has created a newly dangerous form of wire fraud – a creeping, constant fraud disguised as casual coffee shop conversation and cooperative scrapbooking.

    Federal Rule of Civil Procedure 9(b) requires that "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of this heightened pleading requirement is to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted). However, "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

---

[2] Importantly, the Complaint also alleges that even claims of individual success are often untrue. Compl. ¶¶49-52.

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

The allegations in the Complaint illustrate both the pattern and purpose behind the fraudulent Circle of Success scheme. They place Herbalife squarely on notice of its role as the cornerstone of the deceptive enterprise. Herbalife posts fliers for events on its various websites which are republished in increasingly fraudulent form by high-ranking distributors and aspirants. Compl. ¶¶98-100. Non-refundable tickets for LDW and Extravaganza events are purchased directly from Herbalife (including online purchase options through myherbalife.com). Compl. ¶¶76, 84-85. Herbalife exerts control over Circle of Success event content by distributing event curriculum and agendas over its websites. Compl. ¶¶118-120. On March 26, 2012 at 6:30 p.m., Herbalife sponsored a toll-free conference call for all distributors featuring co-conspirators Dan Waldron, Dani Edwards, Mark Matika, and Brad Harris, each promoting the importance of event attendance. Compl. at Exh. 22. On September 24, 2012 at 6:30 p.m. Herbalife sponsored a toll-free conference call for all distributors, featuring co-conspirators Enrique Carrillo, Dani Edwards, and Graeme Edwards, each promoting the importance of event attendance. Compl. at Exh. 6. For two years, Herbalife sponsored monthly conference calls like these to promote Circle of Success events. Compl. ¶69. Herbalife's member-only website provides tracking tools that encourage distributors to spend huge sums of money "qualifying" for events. Compl. ¶132.

Any use of the wires – even an "innocent" use – can be sufficient to satisfy the wire fraud statute so long as the use was in support of a scheme to defraud. *Schmuck v. United States*, 489 U.S. 705, 715 (1989). Herbalife's use of the wires to support and promote its Circle of Success enterprise is not innocent; but is constant, continuing, and undeniable. Plaintiffs have not pled vague allegations or cursory legal conclusions. The Complaint is packed with corroborated factual allegations supporting a more than plausible pattern of wire fraud. Herbalife Defendants have been notified of their alleged role in the fraudulent scheme as required by Rule 9(b).

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

5.   <u>Herbalife conspired to violate RICO.</u>

The conspiracy at the heart of the Circle of Success RICO enterprise is both overt and covert. The conspirators overtly "unite their efforts" and work together toward "common goals." Compl. ¶¶141-43. Covertly, they agree to hide the fact that success in Herbalife cannot be had – as they claim – through the Circle of Success but only by some combination of "illegal or impermissible activity." Compl. ¶¶31-33. Circle of Success victims are lured into expensive serial participation not just by the fraudulent promises made by the Defendants in isolation, but by the persuasiveness of a unified message presented by hundreds of seemingly independent spokespersons.

Herbalife argues that because Plaintiffs purportedly do not state viable claims for substantive RICO violations under § 1962(c), the RICO conspiracy claim necessarily fails as well. *See* ECF No. 142 at 27. For the reasons stated above, Plaintiffs adequately plead substantive RICO violations and Defendants' argument should be rejected.

Alternatively, Herbalife argues that Plaintiffs fail to adequately allege a conspiracy. To establish a violation of section 1962(d), plaintiffs need allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). A defendant must also be "aware of the essential nature and scope of the enterprise and [intend] to participate in it." *Christensen*, 828 F.3d at 780 (citation omitted). As long as the conspirator "adopt[s] the goal of furthering or facilitating the criminal endeavor," the conspirator "may do so in any number of ways short of agreeing to undertake all the acts necessary for the crime's completion." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

<u>Herbalife agreed to participate in the conspiracy.</u> The Complaint alleges that Herbalife's founder Mark Hughes concocted the idea behind the Circle of Success: Hold frequent live events built almost exclusively around personal success testimonials. Compl. ¶¶58-60. In 2009, Herbalife divested control over a large portion of the event system to a cartel of top distributors. Compl. ¶¶64, 118. This divestment had the effect of increasing

recruitment and driving growth within the company. Compl. ¶65. Circle of Success event agendas created and distributed by Herbalife encourage featured presenters to emphasize the centrality of event attendance and "qualifying for everything." Compl. ¶120.

Herbalife participated in the conspiracy. As part of Herbalife's effort to reach $1 billion in North American revenue, they set out to heavily promote the part of the event system – the STS – that they had divested to "the leadership." Compl. ¶¶64-65. Herbalife sponsored and advertised toll-free conference calls promoting these events every month for two consecutive years. Precise dates and times for nine of these calls are provided in the Complaint. Compl. at Exh. 5, 6, 22. Herbalife promotes and sells events over its own websites. Compl. ¶¶76, 82, 84, 98, 140.

Herbalife was aware of the essential nature and scope of the enterprise. Herbalife's magazine frequently profiles top distributors who fraudulently credit their financial success to event attendance. Compl. ¶106. Herbalife distributed training DVD's where "the leadership" attributed the size of their Herbalife checks directly to event attendance. Compl. ¶¶112-14. Event presentations must be presented to Herbalife in order for "sales representatives, branding specialists and legal to review." Compl. ¶144. Herbalife knows *exactly* how it is impacting the victims of this conspiracy.

**B. Plaintiffs state a claim for violation of FDUTPA**
1. The Herbalife distributor agreements are outside the pleadings and not necessary to Plaintiffs' claims.

The distributor agreements signed by certain Plaintiffs containing a California choice-of-law provision are outside the pleadings and are not necessary to the claims in this lawsuit. Generally, a court will not look beyond the four corners of the complaint in deciding a motion to dismiss with the exception of documents of undisputed authenticity on which the complaint necessarily relies. *Vanguard Integrity Professionals, Inc. v. Team Gordon, Inc.*, SACV080185DOCANX, 2008 WL 11342701, at *2 (C.D. Cal. Apr. 4, 2008) (citation

omitted); *see also Jackson v. Capital Mgmt. Services, LP*, CV 13-8267-DMG-SHX, 2014 WL 12601055, at *1 (C.D. Cal. June 18, 2014); *Lee v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, CV142396GHKMRWX, 2014 WL 12597086, at *1 (C.D. Cal. July 9, 2014). The choice-of-law provision contained in the distributor agreements is not implicated by the Complaint and should not be considered in connection with Defendants' Motion to Dismiss.

Plaintiffs' claims, including the FDUTPA claim, concern Defendants' intentional misrepresentations and deception in connection with an ongoing event system scheme in which Plaintiffs were duped into paying money to attend worthless events on the false premise that these events would provide information on how Herbalife's most successful distributors acquired their wealth. The events did not provide any such information, rather, they presented a series of well-coordinated lies. The Complaint does not reference or attach the distributor agreements because they are not relevant or necessary to Plaintiffs' claims. Plaintiffs' claims are based upon the Circle of Success events scheme that impacts distributors and non-distributors alike. Individuals do not have to be distributors to purchase event tickets, attend events, or incur expenses related to event attendance. Plaintiff Jeff Rodgers, for example, was not an Herbalife distributor, but attended events and was damaged thereby. Accordingly, the distributor agreements are not properly considered in connection with the Motion to Dismiss because they are not necessary to Plaintiffs' claims, which do not depend upon the existence of a distributor relationship with Herbalife.

2. The choice-of-law provision in the distributor agreements is nevertheless inapplicable to Plaintiffs' claims.

Defendants argue erroneously that the FDUTPA claims arise from a distributor relationship between certain Plaintiffs and Herbalife and therefore the choice-of-law provisions in distributor agreements signed by those Plaintiffs bar all of the Plaintiffs' FDUTPA claims. ECF No. 142 at 28-29. Defendants cite *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992), for the proposition that "a valid choice-of-law clause, which

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." ECF No. 142 at 29 (emphasis added). Defendants are wrong for several reasons.

First, the choice-of-law provision in the distributor agreements is narrow and does not apply to the claims in this case. Courts generally hold that clauses containing the phrase "relating to" are construed broadly, whereas those containing only the phrase "arising from" or "arising out of" are construed narrowly to involve only those matters based upon contract interpretation and performance as opposed to matters collateral to the contract.[3] *Reddam v. KPMG LLP*, SACV04-1227GLT(MANX), 2004 WL 3761875, at *6 (C.D. Cal. Dec. 14, 2004) (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,* 42 F.3d 1292, 1294–95 (9th Cir.1994)); *see also Stella Maris, Inc. v. Cork Supply USA, Inc.*, 6:11-CV-954-HO, 2012 WL 1468488, at *8 (D. Or. Apr. 26, 2012) ("arising under" an agreement or "arising out of" as opposed to arising "in connection with" or "related to" are interpreted more narrowly to involve only claims relating to interpretation and performance of the contract itself and not those collateral to the contract); *Rodriguez-Alexander v. CACI Int'l Inc.*, CV 11-740 TUC-DCB, 2012 WL 13026919, at *2 (D. Ariz. Apr. 3, 2012) (the use of the terms "arising out of," "arising under" and "arising hereunder" signify a narrow scope whereas "in connection with" and "relating to" are construed broadly). Here, Plaintiffs' claims are collateral to the distributor agreements and the distributor relationship between the contracting parties. Accordingly, the choice-of-law provision does not apply.[4]

---

[3] *Nedlloyd*, 3 Cal. 4th 459, also involved a contract between two sophisticated commercial entities. The distributor contracts – drafted by Herbalife – were between unsophisticated plaintiffs and a massive, publicly traded company.

[4] Defendants, moreover, do not explain how the choice-of-law provision would apply to Jeff Rodgers, who was not a distributor and did not sign a distributor agreement.

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

Second, Plaintiffs' choice-of-law argument results in a distinction without a difference. As argued below, Plaintiffs' adequately plead a claim under FDUTPA. However, Plaintiffs allegations are also sufficient to state a claim under California's equivalent Unfair Competition Law ("UCL"). *See Mauro v. Gen. Motors Corp.*, CIV.S-07-892FCD GGH, 2008 WL 2775004, at *6 (E.D. Cal. July 15, 2008). Plaintiffs' FDUTPA claims may be considered under the UCL as was done in *Mauro*:

> Defendant moves to dismiss the FDUTPA claim because of insufficient facts alleging "deception." (MTD at 7-8.) As the court finds that California law applies, it considers this claim under the California Business and Professions Code section 17200 *et seq.,* commonly known as the Unfair Competition Law ("UCL"), which is California's equivalent to FDUTPA.

2008 WL 2775004, at *6. Either FDUTPA or the UCL must apply. An application of the choice-of-law provision to deprive Plaintiffs of relief against Herbalife under the equivalent consumer statutes in both states would violate Florida and California public policy, rendering the choice-of-law provision unenforceable in these circumstances. *See, e.g., Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 89 (Fla. 2d DCA 2003) (any attempt to limit FDUTPA is contrary to public policy, rendering arbitration clause unenforceable), *cited favorably in Molloy v. RK Netmedia, Inc.*, CV0902614MMMAGRX, 2009 WL 10669608, at *9 n.58 (C.D. Cal. Oct. 8, 2009) (noting that California has a similar public policy against waiver of litigants' consumer protection rights under the UCL).

Finally, Plaintiffs' suggestion that Judge Cooke found otherwise is untenable. *See* ECF No. 142 at 19, n.9. Judge Cooke conducted a threshold venue analysis in which the court considered, among other factors, that certain Plaintiffs signed what were assumed to be valid forum selection clauses. *See* ECF No. 106. The court did not conduct a choice-of-law analysis, nor was that issue before the court. As noted above, the choice-of-law provision cannot, in any event, be used to bar all avenues of consumer protection that Plaintiffs might

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

have in either state. Accordingly, either the FDUTPA claims may be converted to, or re-pled as UCL claims, or the California choice-of-law provisions are unenforceable and the FDUTPA claims should proceed.

    3. <u>Plaintiffs have adequately pled FDUTPA claims against Herbalife.</u>

        a. Defendants' deceptive practices and misrepresentations are alleged with specificity and constitute more than mere puffery.

As demonstrated in response to Defendants' same argument with respect to Plaintiffs' RICO claims, the Complaint refers to numerous, specific and actionable misrepresentations contained in the coordinated Circle of Success messaging. *See supra* § A (citing Compl. ¶¶6, 61, 92, 108, 110, 113, and 165). These are not vague statements that are mere opinions or puffery. To the contrary, Plaintiffs allege specific, demonstrably false factual misrepresentations made by Defendants in a coordinated effort to defraud Plaintiffs and others similarly situated into attending worthless events. *Id.* Accordingly, Plaintiffs allege actionable deceptive practices and misrepresentations by the Defendants in connection with their FDUTPA claims.

        b. Plaintiffs adequately allege proximate causation of damages recoverable under FDUTPA.

Defendants misrepresent the damages sought in the Complaint. They argue that Plaintiffs seek lost profits and consequential damages under FDUTPA, and that the Complaint does not allege a difference in value between the actual events and what Plaintiffs reasonably expected from them. ECF No. 142 at 30-31. They argue Plaintiffs could not make such a claim "having regularly attended such events." *Id.* at 31. However, Plaintiffs plainly allege that they were deceived into paying to attend Circle of Success events based on the reasonable expectation that the events would provide information about how to legitimately make money through Herbalife. In reality, the events were worthless and did not provide

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

such information. Instead, the events provided false information about how top distributors succeeded, intentionally hiding the real, illegitimate methods used by those individuals. Compl. ¶¶31-48. As alleged extensively in the Complaint, the most successful distributors made money through banned methods and other practices that had nothing to do with events. *Id.* Thus, Plaintiffs adequately allege that Defendants knowingly coerced Plaintiffs into purchasing tickets to attend events that presented knowingly deceptive and worthless content.

### C. Plaintiffs adequately plead unjust enrichment.

The Complaint, transferred to this Court from the Southern District of Florida, was pled pursuant to Florida law, which recognizes a cause of action for unjust enrichment. As Defendants acknowledge, California recognizes a remedy in quasi-contract based upon the same theory that Plaintiffs have unjustly conferred a benefit on the Defendants, and that it was unjustly conferred through mistake, fraud, coercion or request. *See* ECF No. 142 at 31-32. Plaintiffs clearly satisfy this standard, as they have detailed how Defendants coerced and defrauded Plaintiffs into paying for and attending events, conferring a benefit on Herbalife and receiving no value in return. Herbalife has unjustly retained these benefits. It is also plain from the allegations in the Complaint that Plaintiffs did not receive the 'benefit of the bargain', as Defendants wrongly suggest. Plaintiffs attended worthless events that presented false content, while Herbalife retained the benefit of Plaintiffs' event attendance, including Plaintiffs' unpaid labor and money flowing from event ticket purchases.

### D. Plaintiffs adequately plead negligent misrepresentation.

Herbalife misrepresents the value of attending Circle of Success events and fails to disclose an important material fact: how featured event speakers actually make their money. Compl. ¶¶32-48. The tort of negligent misrepresentation requires, "(1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages." *Fox v.*

*Pollack*, 181 Cal. App. 3d 954, 962, 226 Cal. Rptr. 532 (1986). Herbalife argues this count should be dismissed based on Rule 9(b)'s heightened pleading requirements but concedes that California courts are split on the issue. ECF No. 142 at 23. *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 418 (C.D. Cal. 2012) ("the California tort of negligent misrepresentation need not satisfy the heightened pleading standard of Rule 9(b)"); *but see Prime Healthcare Services, Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1208 (C.D. Cal. 2017) ("Plaintiffs' negligent misrepresentation claim is inadequately pleaded because Plaintiffs fail to plead this cause of action with the particularity required by Federal Rule of Civil Procedure 9(b).""). Whatever the standard, as argued extensively above, Plaintiffs have met their burden.

Herbalife's magazine, for instance, which is made available to all distributors, frequently publishes material misrepresentations regarding Circle of Success events. Many instances of this are detailed in the Complaint. *See e.g.*, Compl. ¶66 ("If you're wondering how to boost your Herbalife business, but you've yet to attend a Success Training Seminar (STS), now's the time!"), Compl. ¶67 ("That's why the STS's are the key to help make your business grow, and to helping others achieve success."), Compl. ¶106 (Amber and Jason Wick credit their success in Herbalife to attending "every event possible" and "qualify[ing] for everything."). In a further example, the Complaint alleges specific instances in which speakers at events produced by Herbalife made misrepresentations from the stage about the value of attending events. *See, e.g.*, Compl. ¶6 ("If you go to all the events, you qualify for everything – you will get rich."), Compl. ¶¶115-116 ("Ms. Addy charts out a 'Systematic Flow from Fitcamps Into HLF Events,' for which she credits an 800% increase in compensation over four years."), Compl. ¶113 (In a presentation later converted into a training DVD, Amber Wick states that "for every person you get to an event, you can expect your check to go up by a certain amount."). Thus, based on these allegations and those cited in the sections above, the Complaint adequately pleads negligent misrepresentation.

## E. The *Bostick* Release

Dana Bostick and the other Plaintiffs in the *Bostick* action were part of Herbalife's

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

long running internet "lead generation" system – the subordinate conspiracy Herbalife relied on before the Circle of Success became ascendant. Under the "lead generation" system, Defendants and other high-level Herbalife distributors made significant financial outlays to purchase radio and television advertising touting vague "work from home" and "internet business" opportunities. Those successfully recruited into the Herbalife business opportunity by this form of advertising were then sold the names of other "leads" like themselves who could potentially be recruited into the scheme. *Bostick* Compl. ¶¶42-51. The Complaint alleges largely post-settlement conduct that does not arise from identical, or even similar, factual predicates to those in the *Bostick* action.

1. Release is an affirmative defense.

Relying on documents outside the four corners of the Complaint, Herbalife argues that the issues alleged in the Complaint were released by the settlement that resulted from a 2013 lawsuit brought against Herbalife's alleged pyramid scheme. If Defendants wish to raise release as an affirmative defense, they will have the opportunity to do so in their Answer. *See* Fed. R. Civ. P. 8(c)(1); *see also Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1356 (S.D. Fla. 2016) (consideration of releases premature at motion to dismiss stage). Consideration of the *Bostick* release at this stage is premature and would require consideration of evidence of whether Plaintiffs' interests were adequately represented in the prior case. *See infra* §E.4.

2. Jennifer Ribalta was excluded from the *Bostick* release.

Herbalife admits that Plaintiff Jennifer Ribalta "was excluded from the *Bostick* settlement because she was a Global Expansion Team member." ECF No. 142 at 16, n.4. Thus, Defendants' arguments in favor of applying the *Bostick* release cannot apply to her claims.

3. Herbalife's post-settlement conduct has not been released.

It is well established that "a class action settlement's release is unenforceable against claims predicated on the defendant's post-settlement conduct." *Feller v. Transamerica Life*

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

*Insurance*, 2016 WL 6602561, at *6 (9th Cir. Nov. 8, 2016) (refusing to apply release to post-settlement conduct); s*ee also In re Conseco Life Ins. Co. Cost of Ins. Litig.*, ML 04-1610 AHM, 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005) (Plaintiffs' breach of contract claims were not based on the identical factual predicate as the prior action because it involved actions by defendants years after the settlement which could not have been asserted in the prior litigation. Accordingly, the release, 'as broad as it is' could not bar Plaintiffs' breach of contract claim"). Here, even if the December 2014 *Bostick* release were the operative cut-off point, the Complaint alleges dozens of examples of post-settlement conduct. *See, e.g.* Compl. ¶¶74, 92, 102, 104-108, 127-31, 136, 155-62, 165-72, 176-80.

    4.  <u>Plaintiffs' interests were not adequately represented in *Bostick*.</u>

        Dismissal based on *Bostick* would be improper because nothing within the four corners of the Complaint or in the record before this Court shows that Dana Bostick adequately represented the interests of Plaintiffs or the putative class in connection with these claims in *Bostick*. "Without adequate representation, a court order approving a claim-preclusive class action settlement agreement cannot satisfy due process as to all members of the class." *Hesse v. Sprint Corp.*, 598 F.3d 581, 588–89 (9th Cir. 2010) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[T]he Due Process Clause ... requires that the named plaintiff at all times adequately represent the interests of the absent class members."); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998) ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."); *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 390 (9th Cir. 1992) ("[I]f the plaintiff was not adequately represented in the prior action, or there was a denial of due process, then the prior decision has no preclusive effect.")). "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse*, 598 F.3d at 589 (citing *Hanlon,* 150 F.3d at 1020 (9th Cir. 1998)). As shown below, *Bostick* arose from a different factual predicate than this case. It did not seek damages in connection

with an events-based scheme or event attendance. Moreover, it does not appear that in *Bostick*, the class representative vigorously prosecuted or represented these interests on behalf of the class. Herbalife has not shown otherwise. Accordingly, Herbalife has not established the adequacy of the class representative in *Bostick* to satisfy due process.

    5.  <u>The claims in *Bostick* were based on a different factual predicate.</u>

    A "settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse*, 598 F.3d at 590 (internal citations omitted). Although a settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, that is only the case where the released claim is "based on the **identical factual predicate** as that underlying the claims in the settled class action." *Hesse*, 598 F.3d at 590 (quoting *Williams,* 517 F.3d at 1133) (emphasis added).

    The factual predicate in this case is distinct from that in *Bostick*. *Bostick* involved claims that Herbalife induced members to purchase unsellable products in unnecessary bulk. The centerpiece of *Bostick* was class members' purchases of Herbalife products based on misrepresentations in mostly mailed marketing materials. *Bostick* Compl. ¶¶175-185. *Bostick* examined Herbalife's marketing plan and failure to follow its own safeguards. *Id.* ¶¶186-213. The *Bostick* plaintiffs raised claims under RICO based on Herbalife's use of a pyramid scheme to defraud class members; those claims were dismissed before settlement. *Id.* ¶¶56-137. The separate predicate in this case is laid out in the first paragraph of the Complaint:

> This action seeks recovery from a corrupt organization of individuals and entities who act together, using misrepresentation and deceit, **to sell access to a series of emotionally manipulative live events**.

Compl. ¶1 (emphasis added). The Complaint details a Circle of Success enterprise comprised of these live events. It alleges that the "events are pitched as the guaranteed pathway to attaining life changing financial success" and that they "are held each month in dozens of

locations across the country, and range in size from 200 to 20,000 attendees." Compl. ¶2. Members are told that they must attend every event to be successful and that they should "qualify for everything." Compl. ¶¶3, 6.

There were no event-based claims in *Bostick*; the claims were based on product purchases. *See, e.g., Bostick* ECF No. 131 at 4 ("Such product purchases were the only way in which money was allegedly transferred from claimants to Herbalife."). Events are mentioned just a handful of times and only in connection with Herbalife's marketing of itself and its products. *Bostick* plaintiffs did not seek damages in connection with event attendance. The *Bostick* complaint does not allege that Bostick attended events or seek any recovery in connection with such attendance, nor does Herbalife argue in its Motion that Bostick ever attended an event. Thus, the nucleus of operative facts in *Bostick* is far from identical to that in the present case. The Circle of Success damages alleged here are distinct from damages Herbalife may have caused through the operation of the pyramid scheme alleged in *Bostick*.

## II.   CONCLUSION

Herbalife attempts to shield itself from liability for its bad acts by divesting responsibility for much of its operations to a subordinate conspiracy of its own devising. This conspiracy takes the form of a RICO enterprise in which dozens of individuals and entities act together to cajole victims into participating in an expensive, and useless, event scheme calculated to cause harm. Plaintiffs plead concrete, cognizable, and continuing harm from a racketeering enterprise in which Herbalife plays a critical role. Accordingly, Herbalife's Motion to Dismiss should be denied.

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS

DATED: October 19, 2018                    Respectfully submitted,

                                           Paul A. Levin, Esq.
                                           Etan Mark, Esq. (admitted *pro hac*)
                                           Donald J. Hayden, Esq. (admitted *pro hac*)

                                           By: /s/ Paul A. Levin
                                                   Paul A. Levin
                                                   Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE IN OPPOSITION TO HERBALIFE'S MOTION TO DISMISS