UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO DISMISS (DKT. 142)

**I.   Introduction**

On September 18, 2017, this putative class action was filed in the Southern District of Florida. Complaint, Dkt. 1. The Plaintiffs were eight individuals who were distributors, or spouses of distributors, of Herbalife, a multi-level marketing business. *Id.* ¶¶ 2, 147-202. The following Defendants were named: Herbalife, Ltd.; Herbalife International, Incl; and Herbalife International of America, Inc. (collectively, "Herbalife," the "Herbalife Defendants"); as well as 44 high-ranking Herbalife distributors (the "Individual Defendants"). *Id.* ¶¶ 203-327. Plaintiffs sought certification under Fed. R. Civ. P. 23(b)(3). *Id.* ¶ 329. They advanced five causes of action: (1) conducting the affairs of a racketeering enterprise in violation of 18 U.S.C. § 1962(c); (2) conspiracy to conduct the affairs of a racketeering enterprise in violation of 18 U.S.C. § 1962(d); (3) deceptive and unfair trade practices in violation of Fla. Stat §§ 501.201-.213; (4) unjust enrichment; and (5) negligent misrepresentation. *Id.* ¶¶ 341-88.

The claims arose from Plaintiffs' attendance at more than 150 of "Circle of Success" events, which were organized by both Herbalife and the Individual Defendants. *Id.* ¶¶ 146-147. Plaintiffs alleged that these events, which were "pitched as the guaranteed pathway to attaining life changing financial success with . . . Defendant Herbalife," were "emotionally manipulative live events," designed to cause financial losses to Plaintiffs. *Id.* ¶¶ 1-2, 148.

On December 14, 2017, Herbalife and the Individual Defendants moved to compel arbitration of Plaintiffs' claims or, in the alternative, to transfer the claims to the Central District of California. Dkts. 62, 63, 64. On August 23, 2018, the motions were granted in part as to the claims against Herbalife, and arbitration compelled as to the claims of four Plaintiffs. Dkt. 106. The claims of the other four Plaintiffs -- Jeff Rodgers, Patricia Rodgers, Jennifer Ribalta and Izaar Valdez -- were transferred to this District, pursuant to the choice-of-law provision in the applicable Herbalife distributor agreements. *Id.* The claims against the Individual Defendants were severed; the appeal by the Individual Defendants of the denial of their motion to arbitrate or transfer is pending before the Eleventh Circuit. Dkt. 106 at 2; No. 17-23429 (S.D. Fla), Dkt. 113.

On September 28, 2018, Herbalife filed a Motion to Dismiss (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). Dkt. 142. Plaintiffs opposed the Motion on October 19, 2018. Dkt. 151. Herbalife filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

a Reply on November 2, 2018. Dkt. 152. A hearing on the Motion was conducted on February 11, 2019, and the matter was then taken under submission. Dkt. 163.

For the reasons stated in this Order, the Motion is **GRANTED**, without prejudice as to the filing of an amended complaint.

II.     **Factual Background**

      A.     General Structure of the Alleged Operations

The Complaint alleges that Herbalife is a multi-level marketing operation. Dkt. 1 ¶ 2. The Herbalife Defendants and high-ranking distributors allegedly produce and then sell access to Herbalife-related events, which are marketed as the "Circle of Success." *Id.* ¶¶ 1-4. Herbalife distributors, and others who are recruited to attend, are allegedly continually told, "If you go to all the events, you qualify for everything -- you will get rich." *Id.* ¶ 6. Plaintiffs allegedly collectively attended more than 150 Circle of Success events, and they seek to represent a putative class of persons who attended such events, but did not achieve any financial success. *Id.* ¶147.

Circle of Success events are allegedly presented on an annual cycle and include four large-scale events for which attendees pay up to $120 per person. *Id.* ¶ 55. In the other months of the year, Herbalife allegedly presents eight local Success Training Seminars ("STS"), for which the cost of admission is up to $50 per person. *Id.* ¶ 56. The large-scale events allegedly include "Leadership Development Weekends" ("LDW") and "Extravaganzas," produced by Herbalife, as well as "January Spectaculars," sponsored by Herbalife prior to 2015. *Id.* ¶¶ 76-89. The STS and post-2015 January Spectaculars are allegedly controlled by a "web of Defendant connected entities, including high-ranking Herbalife distributors and board members." *Id.* ¶¶ 71-74, 82. Herbalife allegedly collaborates on event production, and reviews in advance the materials that will be presented to attendees. *Id.* ¶¶ 138, 143-144. Herbalife also allegedly profits from the sale of event tickets. *Id.* ¶ 140.

Circle of Success promotional materials allegedly include testimonials by purportedly successful Herbalife distributors, which usually lack legible disclaimers. *Id.* ¶¶ 91-93. These materials, as well as training materials regarding event production, are allegedly distributed by wire. *Id.* ¶¶ 95-96, 99. Similar testimonials are also allegedly the central feature of Circle of Success events. *Id.* ¶¶ 58. At each event, attendees are allegedly told that the key to success is to continue to attend every future event, which will result in an annual cost of more than $600. *Id.* ¶¶ 101-122. It is also alleged that attendees are encouraged to buy non-refundable tickets for future events. *Id.* ¶ 75.

Plaintiffs allege that the Circle of Success is an event system that is distinct from the "structure and deceptive business practices" of Herbalife, which were the subject of prior litigation. *Id.* ¶¶ 8-9. However, it is alleged that, in both models, Herbalife distributors can rise through a sequence of compensation levels based on the dollar amount of their purchases of Herbalife products and their success in recruiting new distributors. *Id.* ¶¶ 123-125. "Qualification" for new levels allegedly entitles distributors to benefits. *Id.* However, "Qualification" also allegedly refers to purchases made specifically to attain recognition within the Circle of Success. *Id.* ¶¶ 126-137. Distributors are allegedly encouraged to "qualify for everything," with many of the rewards for qualification tied to event participation. *Id.* ¶¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

133-137. Therefore, it is alleged that Distributors are "locked in a cycle of mandatory monthly purchases" in order to benefit from the perks of qualification. *Id.* ¶ 140.

    B.    The Experiences of The Plaintiffs

        1.    <u>Jeff and Patricia Rodgers</u>

Patricia Rodgers was allegedly introduced to Herbalife at a January 2011 recruiting event. *Id.* ¶ 149. In March 2011, she allegedly brought her husband, Jeff Rodgers, to a Circle of Success event, and soon thereafter, he lost his job due to his poor health. *Id.* ¶¶ 151-153. The couple allegedly attended another Circle of Success event during his recovery, and "were convinced by an onslaught of guarantees" that "formulaic participation in the Herbalife Circle of Success" would lead to financial security. *Id.* ¶¶ 154-157. Both of them allegedly attended "almost every" Circle of Success event between 2011 and 2015 and spent more than $100,000 on Herbalife, including "at least $20,000 . . . directly from their participation in the Circle of Success event cycle." *Id.* ¶¶ 158-163.

        2.    <u>Jennifer Ribalta</u>

Jennifer Ribalta allegedly attended her first Circle of Success event in January 2011. *Id.* ¶ 193. She was allegedly encouraged to attend future events to guarantee her success, and was allegedly selected to become a member of the "event 'Production Team.'" *Id.* ¶¶ 194-195. This position required that she pay to attend events at which she also worked. *Id.* She allegedly attended two Extravaganza events, which have the highest admission cost, and 38 consecutive monthly events, and "volunteer[ed]" to work without compensation at 30 of them. *Id.* ¶¶ 198-201. Ribalta allegedly spent more than $15,000 attending events. *Id.* ¶ 202.

        3.    <u>Izaar Valdez</u>

Izaar Valdez has allegedly been active with Herbalife since 2008. *Id.* ¶ 183. Valdez's "upline" of more senior distributors allegedly "instructed [her] to participate in continuous 'training systems,'" including frequent Circle of Success events. *Id.* ¶¶ 186-187. Valdez allegedly paid cash to attend events, including events sponsored by the Herbalife Defendants. *Id.* ¶ 188. Valdez allegedly spent more than $3500 on Circle of Success events in 2014, and more than $10,000 purchasing products for "qualification." *Id.* ¶ 190.

**III.**    <u>Request for Judicial Notice</u>

The Herbalife Defendants have requested judicial notice of the Complaint, First Amended Complaint, Stipulation of Settlement, Order Re Plaintiffs' Motion for Final Approval, Amended Final Judgment and Order of Dismissal, and Order Denying Motion for Reconsideration in the class action *Bostick v. Herbalife International of America, Inc.*, No. 2:13-cv02488-BRO-RZ (C.D. Cal.) ("*Bostick*"). Dkt. 142-2 ("RJN"). They contend that these documents show that the present claims were released through the settlement of the *Bostick* action. Plaintiffs object, and argue that it is inappropriate to consider that release at this stage of the proceedings. They contend that a determination as to the application of the release may turn on whether their interests were adequately represented in that prior action. Dkt. 151 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

23.

Courts generally look only to the face of the complaints and any exhibits when resolving a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Consideration of "evidence outside the pleadings" converts a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment. *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). A "court may, however, consider certain materials," including "documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. A court may take judicial notice of facts that are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[C]ourt filings and orders are judicially noticeable because they are readily verifiable." *Mitchell v. Medtronic, Inc.*, No. CV-13-6624, 2015 WL 12747824, at *2 (C.D. Cal. Feb. 13, 2015), *aff'd* 684 F. App'x 624 (9th Cir. 2017). However, a court may not take judicial notice of a fact that is "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)).

The materials of which the Herbalife Defendants seek judicial notice are on the docket of this District. Therefore, they are documents of which judicial notice may be taken. Accordingly, the RJN is **GRANTED**; provided, however, that the notice is only of the existence of the filings, and not the truth of any facts they may state.

IV.     **Analysis**

     A.     General Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but it must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support" one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be "construed in the light most favorable" to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

If a motion to dismiss is granted, leave to amend should be permitted freely. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); see *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

    B.    Application

        1.    <u>Failure to State a Claim Because Claims Were Released in Prior Settlement</u>

"It is well-settled that in order to achieve a comprehensive settlement . . . a court may permit the release of a [later] claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133-34 (9th Cir. 2008) (alteration in original) (quoting 4 W. Rubenstein, Newberg on Class Actions, § 16:7 (4th ed. 2007)).

Whether Plaintiffs released their claims against the Herbalife Defendants in *Bostick*, as the Herbalife Defendants argue, is not a question appropriate for resolution on a motion to dismiss. *Low v. Altus Fin. S.A.*, 136 F. Supp. 2d 1113, 1118 (C.D. Cal. 2001) ("[I]n light of the disputed scope and validity of the release . . . dismissal based on motions challenging the mere pleadings would be premature and inappropriate. . . . [S]ummary judgment motion practice is necessary."). Although judicial notice has been taken of filings in *Bostick*, the scope and validity of the release that is included there is not an "undisputed matter[] of public record." *Lee*, 250 F.3d at 690 (emphasis in original). Plaintiffs have raised issues as to the scope of the release insofar as it relates to alleged ongoing or subsequent conduct; they also contend that it is not clear that their interests were adequately represented in that action. Dkt. 151 at 23-25. "[I]f the plaintiff was not adequately represented in the prior action, or there was a denial of due process, then the prior decision has no preclusive effect." *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992).

As in *Lee*, where it was deemed error for a district court to take judicial notice of the validity of a release, rather than its existence, it would be improper at this stage of the litigation to determine whether the *Bostick* settlement precludes Plaintiffs' claims. 250 F.3d at 690. Moreover, a release is an affirmative defense, which may be properly raised in the Herbalife Defendants' responsive pleading. Fed. R. Civ. P. 8(c)(1); *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading.").

For these reasons, the Motion is **DENIED** insofar as it seeks a determination that the *Bostick* settlement released Plaintiffs' claims, without prejudice to the renewal of this defense based on an appropriate factual record.

        2.    <u>Failure to State RICO Claims (First and Second Causes of Action)</u>

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The term "racketeering activity" includes mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. 18 U.S.C. § 1961(1).

The RICO statute provides for a private right of action. 18 U.S.C. § 1964(c). The elements of a civil RICO claim are "that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

        a)       Distinct Enterprise

The Herbalife Defendants argue that the Complaint does not sufficiently allege the distinct "enterprise" element of a RICO claim, because "Plaintiffs' allegations amount to nothing more than a claim that Herbalife's business model is fraudulent." Dkt. 142 at 23. Thus, they contend that, because Plaintiffs allege an "association-in-fact enterprise" that consists only of Herbalife and Herbalife distributors, they "fail to allege an enterprise that is distinct from Herbalife's business and the ordinary channels through which it sells its products and recruits distributors." *Id.*

A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although the statute makes clear that a single such entity can be an "enterprise" unto itself, so too are associated-in-fact groups of entities, as alleged here. *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). The "enterprise" and the "pattern of racketeering activity," are distinct:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583 (1981) (internal citations omitted). However, an associated-in-fact enterprise "does not require any particular organizational structure, separate [beyond that required to engage in racketeering] or otherwise." *Odom*, 486 F.3d at 551. Rather, the enterprise is established by showing only the *Turkette* requirements: (a) a common purpose for (b) an ongoing organization (c) which functions as a continuing unit. *Id.* at 552.

In *Odom*, the first element of "common purpose" was satisfied by allegations that two corporations had associated for the purpose of fraudulently increasing the actual number of consumers who used certain software. One corporation allegedly did so by distributing the software and collecting payment information, while the other used the payment information to create customer accounts. *Id.* at 552. The

Case 2:18-cv-07480-JAK-MRW   Document 196   Filed 10/22/19   Page 7 of 15   Page ID #:4200

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

"ongoing organization" element was met by showing that the entities "formed a vehicle" for committing two or more acts of fraud, such as a mechanism to transfer customers' financial information or a cross-marketing agreement. *Id.*; *see also United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 361 (9th Cir. 1988) (A RICO claim must "allege two or more RICO predicate acts, occurring over a significant period of time, evidencing a threat of continuing activity."). The "continuing unit" element was met by showing that the associated entities engaged in fraudulent activities during a period of several years, which did not require that they did so continuously or that both members were involved in every act. *Id.* at 552-53.

The allegations in the Complaint satisfy the three elements of the distinct enterprise test. They allege a common purpose of selling access to a series of events, designed to recruit new customers to participate in what is actually a fraudulent business opportunity and to convince those customers who are already enrolled to increase their financial and emotional commitment. Dkt. 1 ¶¶ 346-347. The Complaint also alleges an "ongoing organization" through its claims that the Herbalife Defendants create a master calendar of events and an agenda for event organizers, and that the Herbalife and Individual Defendants "jointly affect the strategic direction . . . through meetings of the various Strategy & Planning Committees." *Id.* ¶¶ 351-352. Finally, it is alleged that the enterprise's joint planning and execution of these events has been in place since 2009, when the Herbalife Defendants gave certain individuals ownership of some of the event structure. *Id.* ¶ 346.

    b)  Cognizable Injury

The Herbalife Defendants next argue that Plaintiffs' alleged injury is only an expectancy interest in profits from Herbalife sales. Dkt. 142 at 24. "RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'" *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) (quoting *Oscar v. Univ. Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (*en banc*)). "Without a harm to a specific business or property interest -- a categorical inquiry typically determined by reference to state law -- there is no injury to business or property within the meaning of RICO." *Id.* at 900. An expectancy interest alone is insufficient. *See Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1090 (C.D. Cal. 2011).

The Complaint alleges that each Plaintiff sustained an event-related loss that is distinct from any expectations about greater financial success. The losses of the Rodgers allegedly exceeded $100,000, but they attribute "[a]t least $20,000 . . . directly [to] participation in the Circle of Success event cycle." Dkt. 1 ¶ 163. Ribalta's Circle of Success expenses allegedly exceeded $15,000. *Id.* ¶ 202. Valdez allegedly spent more than $3,500 on Circle of Success events in one year. *Id.* ¶ 190. The ticket cost of attendance to every event is about $600 per year (*id.* ¶ 122), but Plaintiffs allege that Circle of Success attendees make "bulk purchases . . . to satisfy requirements which are tied directly, and exclusively, to the Circle of Success . . . [and are] completely detached from the compensation scheme." *Id.* ¶ 126. Viewed collectively, these allegations are sufficient to satisfy the requirement of a "concrete financial loss."

    c)  Quantifiable Misstatement

The mail or wire fraud underlying a RICO claim must consist of "quantifiable, actionable misstatements," and not the sort of "highly subjective, generalized statements" that typify "puffery." *Cty.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

of *Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011). "'Puffing' concerns expressions of opinion, as opposed to the knowingly false statements of fact which the law proscribes." *United States v. Gay*, 967 F.2d 322, 329 (9th Cir. 1992). The Herbalife Defendants argue that the Complaint includes only "slogans," and "to the extent these statements do convey affirmative representations," they are "mere sales puffing." Dkt. 142 at 25.

The detailed Complaint alleges several specific misstatements. For example, ten income-specific testimonials allegedly given as event promotions are quoted at length and included as exhibits, "very few of [which] have any sort of associate income disclaimer." Dkt. 1 ¶¶ 92-93; Dkt. 1-8 at 9 (*e.g.*, "I hit a six-figure income in 3 years, and now I earn more per month working the hours I choose around my family than I used to make in one year as a Marine!"). There are also many allegations regarding statements made to distributors to the effect that attending events is a prerequisite to Herbalife success. *E.g.*, Dkt. 1 ¶¶ 107-108 ("For those of you serious Herbalife Distributors in Miami, I'll tell you like we tell our team; Events/Trainings are non negotiable!"; "THE pathway to advancing in the business can ONLY be done by attending the events . . . . plan everything else around those dates.") Plaintiffs also allege that specific and misleading promises are made at the events, such as that bringing ten new recruits to another event "equals President's Team" level recognition, notwithstanding that President's Team membership was, at a practical level, already closed. *Id.* ¶¶ 29, 114.

The allegations of misstatements go significantly beyond "general assertions" and, in many cases, could be proven or disproven. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). Therefore, the allegations are not as to statements that would constitute mere puffery.

        d)      Particularity

           (1)      <u>Fraud</u>

Fed. R. Civ. P. 9(b) provides that, with respect to claims of fraud, which would include the predicate acts of mail or wire fraud, a complaint must state "the circumstances constituting the fraud or mistake . . . with particularity." Stating with particularity requires "an account of the time, place, and specific content of the false representations as well as the *identities of the parties* to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citations omitted) (emphasis added). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Id.* at 764-65 (citing *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). This is necessary because "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citations omitted). If conduct is alleged only against a group of defendants, no single defendant is on notice of their alleged role in the predicate act. *See id.*

The predicate act alleged in the Complaint is wire fraud: "[b]y transmitting and causing others to transmit, by means of wire in interstate commerce, writing, signs, signals, pictures and sounds . . . in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

furtherance of, and for the purposes of, executing a scheme or artifice to defraud. . . . Defendants have collectively persuaded hundreds of thousands of victims to invest substantial sums into attending events . . . ." Dkt. 1 ¶¶ 355-356. "[A] wire fraud violation[] consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber Distrib. Co.*, 806 F.2d at 1400. The first and third elements may be pled generally, but the second element requires that Plaintiffs plead "particularized allegations [about] the factual circumstances of the fraud itself." *Odom*, 486 F.3d at 554.

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) is instructive. There, Plaintiffs brought RICO claims against Toyota Motor Corporation ("TMC") and its subsidiaries, Toyota Motor North America, Inc. ("TMA"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor Engineering and Manufacturing North America, Inc. ("TEMA") (collectively, "Toyota" or "the Toyota Defendants"). *Id.* at 1185. The alleged predicate acts included wire and mail fraud, to which the Rule 9(b) pleading requirements applied. *Id.* at 1201. Plaintiffs alleged several acts, including telephone calls made by a "Toyota spokesman" and letters mailed in which "Toyota" had issued denials. *Id.* Although some of these allegations identified the person who made the statements, "the Toyota entity upon whose behalf such statements were made [was] not identified." *Id.* The claim was dismissed due to the "failure to ascribe any predicate act to a particular Defendant rather than impermissibly ascribing conduct to 'Toyota' or 'Defendants' generally. . . . although the what, when and where are sometimes alleged, the 'who' is never identified." *Id.*

Where the identity of an individual defendant is within the particular knowledge of the moving party, the standards of Rule 9(b) may be relaxed. "Instances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Exp.*, 885 F.2d 531, 540 (9th Cir. 1989). This principle has been applied to RICO claims involving individuals working on behalf of corporations, where "it is unrealistic to expect that [a] retail customer would remember the name of the cash register employee," *Odom*, 486 F.3d at 554, or where the complaint alleges action by "a narrowly defined group of officers" in the preparation of reports, *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987), *superseded on other grounds by* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67. However, district courts have held that "to benefit from the presumption of collective action created in *Wool* . . . a plaintiff must allege 'some detail demonstrating collective responsibility.'" *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1374 (D. Haw. 1995) (quoting *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 795 (S.D. Cal. 1990)). Moreover, Plaintiffs have not cited any cases in which the standards of Rule 9(b) were relaxed due to the presence of more than one entity defendant.

The allegations in the Complaint are specific as to several Individual Defendants. Attached to the Complaint are more than two dozen exhibits as to allegedly false statements by certain persons and their transmission by wire, including through Facebook postings. *See, e.g.*, Dkt. 1-33; Dkt. 1-39. However, no Individual Defendants are named in the Complaint. The Complaint does not include allegations as to any specific actions taken by wire by any single Herbalife Defendant. Indeed, the Complaint deems "Herbalife" and "Company" as collective terms in its opening paragraph. *See* Dkt. 1 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

2. Actions that could be attributed to one or more of the Herbalife Defendants are alleged as to either or all defendants, inclusive of the claims against those Individual Defendants that were not transferred to this District, or to Herbalife generally, without distinguishing among corporate entities. *See, e.g., id.* ¶ 96 ("Each month Defendants distribute, or cause to be distributed, hundreds of thousands of fraudulent messages about Circle of Success events across the wires."); *id.* ¶ 97 ("Defendants expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires via the social media accounts of event participants."). No allegations are made regarding the relationship among the three Herbalife Defendants or their respective responsibilities. This is similar to the allegations in *Toyota Motor Corp.*, which were deemed insufficient under Rule 9(b).

Plaintiffs respond by citing a few allegations. Dkt. 151 at 14. For example, it is alleged that a flier for an event "was originally published to Defendant Herbalife's various websites," with "hopeful distributors repackag[ing] the flier and pass[ing] it along through the wires." Dkt. 1 ¶¶ 98-100. However, the Complaint does not state which, if any, of the Individual or Herbalife Defendants published something on the websites, or to which websites. Further, the cited exhibit reflects a post of the event on a Facebook page of an entity called "STS Tampa Bay," ownership or control of which has not been alleged. Dkt. 1-9. Plaintiffs also cite an internet advertisement for an event that "was posted by new president[']s team member, Bill Garvey & reposted by Pres Team Lori Baker." Dkt. 1-7; *see also* Dkt. 1 ¶¶ 84-85. The Herbalife Defendants' role in these actions is not alleged. The outcome is the same as to the allegations in Paragraph 76 of the Complaint., which alleges that events generally are "sponsored and sold by Defendant Herbalife." This allegation lacks specificity as to the entity allegedly committing wire fraud, and as to the time, place and method of transmission.

Other allegations have more details. Dkt. 1 ¶ 132 (Herbalife operates a "members only website, myherbalife.com," that allows distributors to track their progress toward event qualification); *id.* ¶ 69 ("Throughout 2011, Defendant Herbalife [promoted] monthly training calls with President's Team members who espoused the primacy of the STS as a business building strategy. Herbalife ran a similar promotion in 2012 . . . ."). Fliers promoting calls, held on March 26, 2012, and September 24, 2012, are attached as exhibits. Dkts. 1-6, 1-22. However, because all of these allegations are as to the collective Herbalife Defendants, which Plaintiffs define as "Herbalife," they fail to identify the "who" as required by Rule 9(b).

Because Plaintiffs have failed sufficiently to plead the fraud elements of their RICO claims, the Motion is **GRANTED** as to the first cause of action, with leave to amend.

(2) <u>Conspiracy</u>

"[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Because the Motion is granted as to the first cause of action, it is also **GRANTED** as to the second cause of action, with leave to amend.

Even if the first cause of action was adequately alleged, where "RICO claims are undoubtedly 'grounded in fraud,' the conspiracy allegations 'must satisfy the heightened pleading requirements of Rule 9(b)'. . . [and] give each of the defendants notice of the specific charges against them." *Tatung Co., Ltd. v. Hsu*, No. CV 13-01743, 2015 WL 11072178, at *25 (C.D. Cal. Apr. 23, 2015) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "In other words, '[Plaintiff] must allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

with particularity (1) an agreement to participate in an unlawful act[;] and (2) an injury caused by an unlawful overt act performed in furtherance of the agreement.' Conclusory allegations that RICO defendants entered into an agreement are insufficient." *Chung Goh v. Prima Fin. Grp., Inc.*, No. CV 17-03630-SVW-PJW, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520-21 (N.D. Cal. 1990)).

Plaintiffs' allegations regarding an agreement are no more specific than those as to wire fraud. Plaintiffs rely on the allegations that Mark Hughes, the founder of Herbalife, developed the Circle of Success. Dkt. 1 ¶¶ 57-63. Although it could be inferred from this allegation that Hughes may have linked the Herbalife Defendants to the alleged scheme, this is not consistent with other allegations. Thus, it is alleged that during "the tenure of Mr. Hughes, the STS (and events like it) were held up to three times a week *at no cost to the distributor.*" *Id.* ¶ 63 (emphasis added). Plaintiffs allege that the transition to STS as its own profit center was the result of actions by Individual Defendant Dan Waldron in 2009, "when top members of the President's Team . . . 'took ownership' of the STS event structure." *Id.* ¶ 64. Thereafter, Herbalife's alleged agreement to the Circle of Success conspiracy must be inferred from actions by the Herbalife Defendants that are not alleged with specificity. *See, e.g., id.* ¶ 118 ("While Herbalife ceded the financing and operation of the STS system to top distributors, the company retains significant control."); *id.* ¶ 121 ("According to Defendant Herbalife's agenda, the key takeaway message of these events is to keep qualifying for, and attending, these events."). These allegations as to the exercise of control over the content and production of the fraudulent event system are likely sufficient to indicate someone's agreement to a conspiracy. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion."). However, the Complaint does not allege that any particular Herbalife Defendant agreed to participate in an unlawful act.

        3.        <u>Failure to State Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Claims (Third Cause of Action)</u>

The first step in the evaluation of the adequacy of the FDUTPA claims is to determine whether Florida or California law applies. The Herbalife Defendants argue that the Plaintiffs' distributorship agreements have valid choice-of-law terms that designate California law as controlling. Dkt. 142 at 28-29. Plaintiffs respond that their claims are "collateral to the distributor agreements and the distributor relationship" so that the choice of law provision does not apply. Dkt. 151 at 16-20. They add that Jeff Rodgers, who is one of the Plaintiffs, never had a distributor agreement with the Herbalife Defendants. *Id.*

The Herbalife Defendants seek judicial notice of the three relevant distributor agreements. Dkt. 142 at 14; Dkt. 142-1. "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended, superseded by statute on other grounds*. Although the Complaint does not rely specifically on the distributorship agreements, it contains many allegations as to the relationship between the Circle of Success and Herbalife distributors. *See, e.g.*, Dkt. 1 ¶ 139 ("Defendants rely on the Circle of Success to recruit new distributors, to retain current distributors, and to keep all distributors making bulk purchases that will translate into increased commission checks."). The Complaint also refers to documents that are only available to Herbalife distributors. *See, e.g., id.* ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

142 (citing information "available for download on Herbalife's member only website"). Although none of the four Plaintiffs is specifically identified as a distributor, that status can be clearly inferred about some of the Plaintiffs. *See, e.g., id.* ¶¶ 193-194 ("[Ribalta] was recruited into Herbalife's 'opportunity' [and convinced to attend an event where] presenters preached about the importance of attending Circle of Success events in order to guarantee success as an Herbalife distributor.").

Plaintiffs do not dispute the authenticity of the distributorship agreements. *See* Dkt. 151 at 16-17. Additionally, as discussed, it is clear from the Complaint that Plaintiffs' participation in the Circle of Success was closely linked to certain Plaintiffs' status as distributors or spouses of distributors.[1] Therefore, the request for judicial notice of the three distributor agreements is **GRANTED**. *See* Dkt. 142-1.

In relevant part, these agreements provide that "any dispute arising from the relationship between the parties to this Agreement, shall be governed by the domestic law of the State of California without the application of conflict of law principles." *E.g., id.* at 6 ¶ 11. When parties to a contract have incorporated a choice-of-law clause, California courts generally apply that law to disputes that fall within the scope of the clause. *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 464 (1992) (citing *Smith, Valentino & Smith, Inc., v. Superior Court,* 17 Cal. 3d 491, 495-96 (1976)). "[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement." *Id.* at 470. Under California law, the party who contends that a choice of law provision applies, has the burden of establishing that the causes of action that are advanced are within its scope. *Abat v. Chase Bank USA, N.A.,* 738 F. Supp. 2d 1093, 1094 (C.D. Cal. 2010) (citing *Wash. Mut. Bank, F.A. v. Superior Court,* 24 Cal. 4th 906, 916 (2001)).

The Herbalife Defendants argue that the "claims plainly 'arise[] from the relationship' between [Plaintiffs] and Herbalife, as Plaintiffs['] claims are based on their alleged failed pursuit of the Herbalife business opportunity and the misrepresentations Herbalife allegedly made to them as distributors." Dkt. 142 at 28. In response, Plaintiffs cite cases that adopted a narrow interpretation of "arising under" clauses, where the clause in each of the cited cases referred to disputes arising under the agreement itself. Dkt. 151 at 18. The clause at issue here is "arising from the *relationship*," which California courts have distinguished. *See EFund Cap. Partners v. Pless,* 150 Cal. App. 4th 1311, 1328 ("The critical language [was] 'arising hereunder' . . . and 'arising out of this Agreement' . . . . By contrast the language in the arbitration clause in this case is materially broader -- "arising from or out of."). Where the language is "'*[any]* dispute' . . . [it] extends beyond contract claims to encompass tort causes of action." *Id.* at 1322 (citing *Lewsadder v. Mitchum, Jones & Templeton, Inc.* 36 Cal. App. 3d 255, 259 (1973); *Crofoot v. Blair Holdings Corp.,* 119 Cal. App. 2d 156, 182 (1953)) (emphasis original); *accord JMP Sec. LLP v. Altair Nanotechs. Inc.,* 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("Under the California approach, all claims 'arising from or related to' a contract are covered by the contract's choice-of-law clause, regardless of whether they are characterized as contract or tort claims.").

Applying these principles here, the choice of law clauses warrant the application of California law to the present claims brought by the Plaintiffs who were distributors. Thus, the clause applies to all of their

---

[1] Jeff Rodgers was not a distributor, but the Complaint alleges that he and his wife both "worked the Herbalife business." Dtk. 1 ¶ 155.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

claims arising from their relationships with Herbalife, and no exceptions are stated. Where California and not Florida law applies to Florida unfair trade practice claims, the court may consider the claim as if it were brought under California's equivalent to the FDUTPA, Cal. Bus. & Prof. Code § 17200 et seq., known as the Unfair Competition Law ("UCL"). *Mauro v. Gen. Motors Corp.*, 2008 WL 2775004, at *6 (E.D. Cal. July 15, 2008) (converting an FDUTPA claim to an UCL claim following a choice of law determination). The UCL prohibits "unfair competition," which is defined to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

"It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103. Plaintiffs contend that they have alleged "specific, demonstrably false factual misrepresentations made by [the Herbalife] Defendants in a coordinated effort to defraud Plaintiffs." Dkt. 151. at 20. However, although there is some specificity as to the alleged conduct of the Individual Defendants, the allegations against Herbalife are stated in general terms. *See* Dkt. 1 ¶ 372 ("The Herbalife Defendants' promotion of an inherently fraudulent business opportunity, in which the Herbalife Defendants know participants have no reasonable chance of success, is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers in breach of public policy."). These allegations are insufficient for the same reasons stated above with respect to the RICO fraud claim.

For these reasons, the Motion is **GRANTED** as to the third cause of action insofar as it is brought by Patricia Rodgers, Jennifer Ribalta and Izaar Valdez, with leave to amend.

With respect to Jeff Rodgers, the Herbalife Defendants' contention that he is also be bound by the distributorship agreement that his spouse signed is unpersuasive. Rodgers never signed the agreement. Dkt. 151 at 18 n.4. The Herbalife Defendants argue that he should be bound as a party "closely related to the contractual relationship," and cite *J. Greenburg, D.D.S., Inc. v. White Rock Cap. Sols., LLC*, 2012 WL 13012673, at *4 (C.D. Cal. Feb. 2, 2012). Dkt. 142 at 29 n.9. As in *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir.1988), from which the "closely-related" doctrine derives, *J. Greenburg, D.D.S* applied a forum selection clause, not a choice of law provision, to a nonparty. There are no cases in this Circuit that apply *Manetti* in a choice of law context. *See Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1162 (D. Or. 2015) (rejecting as unprecedented an attempt to apply *Manetti* in a choice of law doctrine). Therefore, as to Jeff Rodgers, the FDUTPA claim is presented directly.

"FDUTPA claims can be based on deceptive or unfair practices that do not involve fraud," and in such cases, they "need not be pled with particularity." *SIG, Inc. v. AT&T Dig. Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013). Where the complaint sounds in fraud, the heightened pleading standards of Rule 9(b) apply. *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015); s*ee also Gen. Motors Acceptance Corp. v. Laesser,* 718 So. 2d 276, 279 (Fla. Dist. Ct. App. 1998) (Gross, J., concurring) (applying the Florida rule that parallels Rule 9 (b) to require specificity in pleading a FDUTPA claim as "a statutory cause of action similar to fraud").

Under these standards, and for the same reasons stated above, the Motion is **GRANTED** as to the third cause of action insofar as it is brought by Jeff Rodgers, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

    4.    <u>Failure to State Unjust Enrichment Claims (Fourth Cause of Action)</u>

The Herbalife Defendants argue that Plaintiffs do not allege a claim under a theory of quasi-contract, as required by California law, and that unjust enrichment claims are akin to those for fraud and must be alleged with specificity. Dkt. 142 at 31-33. As noted, the parties dispute whether California or Florida law applies to this claim. However, in either state, where "the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)." *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017); *accord U.S. Stepe v. R S Compounding LLC*, 325 F.R.D. 699, 710 (M.D. Fla. 2017) (collecting cases)). A claim is based on fraud where a plaintiff alleges that defendant engaged in fraudulent conduct and relies solely on that conduct to prove a claim. *Vess*, 317 F.3d at 1103-04.

Plaintiffs contend, "[s]pecifically, the Herbalife Defendants conned Plaintiffs into benefitting the Defendants by using the same or materially similar representations and methods, and by exploiting the same informational advantage, giving Plaintiffs the false expectation that Plaintiffs would benefit from their participation in the Circle of Success events. Instead, the Herbalife Defendants knowingly benefited at Plaintiffs' expense." Dkt. 1 ¶ 382. This confirms that Plaintiffs contend, in general, that the Herbalife Defendants knowingly induced them to take actions by making material, false representations. It also shows that this is a fraud-based claim. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (defining fraud as "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage").

Under these standards, and for the reasons stated above, the Motion is **GRANTED** as to the fourth cause of action, with leave to amend.

    5.    <u>Failure to State Negligent Misrepresentation Claims (Fifth Cause of Action)</u>

A cause of action for negligent misrepresentation has five elements: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

Many district courts in California have concluded that the particularity requirements of Fed. R. Civ. P. 9(b) apply to claims for negligent misrepresentation. *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012) ("The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but most district courts in California hold that it does."); *see, e.g., Sanchez v. Aurora Loan Servs., LLC*, 2014 WL 12589659, at *12 (C.D. Cal. Mar. 11, 2014) ("Claims for . . . negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)." (quoting *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999)). District courts in Florida have reached the same outcome. *See, e.g., Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation sounds in fraud.") (internal citations and quotation marks omitted). To state a plausible negligent misrepresentation claim, the complaint must include allegations as to the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-07480 JAK (MRWx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Michael Lavigne, et al. v. Herbalife, LTD, et al. | | |

*Sanchez*, 2014 WL 12589659, at *12 (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). This approach is adopted here. For the same reasons stated in these cases, this standard is adopted here.

The Complaint does not state a plausible claim for negligent misrepresentation because its allegations do not meet the heightened pleading standard of Rule. 9(b). Plaintiffs have made broad, conclusory allegations regarding the conduct of "the Herbalife Defendants," without providing specificity as to which Herbalife Defendants took what actions. Dkt. 1 ¶¶ 384-388. Thus, Plaintiffs do not identify "the relevant speakers or the time at which the statements were made," or even the substance of the alleged statements. *See Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1163 (N.D. Cal. 2013) (complaint did not state a plausible negligent misrepresentation claim where it did "not give notice who made each statement, when th[e] statements were made . . . or the precise content of any of the statements").

For these reasons, as well as those stated above with respect to the fraud-based claims, the Motion is **GRANTED** as to the fifth cause of action, with leave to amend.

**V.      Conclusion**

For the reasons stated in this Order, the Complaint does not state viable claims against the Herbalife Defendants. Accordingly, the Motion is **GRANTED**, without prejudice. Leave to amend is warranted, given that this is the first version of the Complaint that has been presented, and under the permissive standards that apply, there is no showing that any amendment would be futile. Any amended complaint shall be filed no later than November 12, 2019. Pursuant to the Order of March 18, 2019, the deadline to amend or add parties is also set as 21 days from the issuance of this Order. *See* Dkt. 168.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |