1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PAUL A. LEVIN (State Bar No. 229077)**
**MORTGAGE RECOVERY LAW GROUP LLP**
**700 North Brand Boulevard, Suite 830**
**Glendale, California 91203**
**TELEPHONE: (818) 630-7900 FASCIMILE: (818) 630-7920**
**EMAIL:**    plevin@themrlg.com

**ETAN MARK (admitted *pro hac*)**
**DONALD J. HAYDEN (admitted *pro hac*)**
**MARK MIGDAL & HAYDEN**
**80 SW 8th Street, Suite 1999**
**Miami, Florida 33130**
**TELEPHONE: (305) 374-0440**
**EMAIL:**    etan@markmigdal.com
              don@markmigdal.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, | CASE NO. 2:18-cv-07480-JAK (MRWx) |
| Plaintiffs, | [Related Case 2:13-cv-02488-BRO-RZ] |
| vs. | **AMENDED COMPLAINT** |
| HERBALIFE INTERNATIONAL OF AMERICA, INC., | Assigned to Hon. John A. Kronstadt, Courtroom 10B |
| Defendant. | |

## INTRODUCTION

1.      Herbalife International of America, Inc. ("Herbalife") calls it the Circle of Success. You build your life around a series of scripted, highly emotional, day or

weekend long events; you attend one of these events every month; between events you participate in a series of mini-events that feed into the big events. "This business builds itself," you're told. Follow the path — and follow instructions — and you'll achieve the same success as the "experts" Herbalife so vigorously promotes.



GIOIOSA000209

2.     Herbalife actively promotes the Circle of Success fraud directly to its distributors and encourages those distributors to promote the events to others. It then provides the stage (literally) for these experts to make their fraudulent statements and omissions to tens of thousands of unsuspecting distributors annually.

2

3.    This action seeks recovery from a corrupt organization of individuals and entities who act together, using misrepresentation and deceit, to sell access to a series of emotionally manipulative live events.

4.    The events are pitched as the guaranteed pathway to attaining life changing financial success with the multi-level marketing business opportunity sold by Defendant Herbalife. Events are held each month in dozens of locations across the country, and range in size from 100 to 20,000 attendees.

5.    Herbalife business opportunity participants are told that they must "attend every event" if they want to be successful; and that they must "qualify" for special treatment at these events by making large monthly purchases of Herbalife's products.

6.    Defendant Herbalife and many of its most active and highest-ranking members (the "Featured Speakers") jointly produce, market and sell these events in close association. The intricately coordinated pattern of manipulation keeps victims under the thrall of a harmful illusion manufactured by Herbalife.

7.    On or about October 26, 2011, from the stage of that year's largest event, Featured Speaker Mark Addy concisely stated the credo that is used to deceive thousands of Herbalife distributors and potential recruits in the U.S. every year: "If you go to all the events, you qualify for everything — you will get rich." This mantra has been repeated thousands of times over the past decade by the Featured Speakers

3

in close collaboration with Herbalife.

8.   The Plaintiffs here, each of whom has spent thousands of dollars attending these events, have received no financial benefit from doing so, despite Herbalife's continuous barrage of guarantees to the contrary.

9.   If Herbalife told the truth — that there is no correlation between financial success and event attendance, — no reasonable person, including Plaintiffs, would have attended Circle of Success events, paid for tickets to Circle of Success events, and paid for incidental expenses (such as hotel and airfare) to attend Circle of Success events.

10.   The Circle of Success does not produce financial success for business opportunity participants, and Herbalife knows it.

11.   Plaintiffs seek damages and injunctive relief against the corrupt organization of individuals and entities who sell, operate, and compel participation in the Circle of Success.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs assert claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

13.   This Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

14.  This Court has personal jurisdiction over Herbalife by virtue of Herbalife's extensive business operations in California, its Los Angeles headquarters; and its selection of this forum, and the substantive law of this forum, in its consumer contracts.

15.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391, because substantial events giving rise to this Complaint took place in this District and because the Defendants compelled transfer of this action to this District from the Southern District of Florida.

## PARTIES

16.  **Defendant Herbalife International of America, Inc.** ("Herbalife") is a Nevada corporation with its principal place of business in Los Angeles, California. It is a wholly-owned subsidiary of Herbalife Nutrition, Ltd., a publicly traded company. Defendant Herbalife International of America, Inc. is responsible for the marketing and promotion of events within the United States. It is also the entity responsible for the operation and coordination of all of Herbalife's corporate events within the United States.

17.  **Plaintiff Patricia Rodgers** is an individual who resides in Miami, Florida. Ms. Rodgers signed up to be an Herbalife distributor June 23, 2010, and attended numerous Circle of Success events.

18.  **Plaintiff Jeff Rodgers** is an individual who resides in Miami, Florida.

Mr. Rodgers did not sign Herbalife's "Application for International Distributorship" but did actively pursue the Herbalife business opportunity and attended numerous Circle of Success events.

19.    **Plaintiff Izaar Valdez** is an individual who resides in Miami, Florida. Ms. Valdez signed up to be an Herbalife distributor on June 14, 2008, and again on March 22, 2013, and attended numerous Circle of Success events.

20.    **Plaintiff Jennifer Ribalta** is an individual who resides in Palm Harbor, Florida. Ms. Ribalta signed up to be an Herbalife distributor February 14, 2011, and attended numerous Circle of Success events.

## SUBSTANTIVE ALLEGATIONS

## I.    MAKING MONEY WITH HERBALIFE

21.    None of Herbalife's top distributors, past or present, has built a significant income by retailing Herbalife's products according to Herbalife's rules as they exist today. Defendant and the Featured Speakers have actual knowledge that — despite their incessant misleading claims to the contrary — event attendance is not a viable path to financial success in the Herbalife business opportunity.

22.    Yet, at event after event, Herbalife promotes a steady stream of speakers who claim that they can teach you how to be a successful distributor by focusing on event attendance.

23.    The chain recruiting aspect of the Herbalife business opportunity also

produces dismal results for participants. According to the analysis included in the FTC's 2016 against the company:

- 80% of distributors failed to entice a single new recruit into the scheme.
- 43% of those who had succeeded in recruiting a new participant, had nevertheless received no compensation from the company.
- More than half of the top 13% of distributors grossed less than $300 per year in payments from the company.
  *See* **Exhibit 1**.

24.     Although Herbalife's compensation plan includes eleven levels of distributors, there are effectively two classes of Herbalife participants: the infinitesimally small percentage of "haves," insiders who will trumpet alleged successes and "you can do it too" encouragement; and the "have-nots," outsiders comprising over 99 percent of all Herbalife participants.

25.     Of the millions of people around the globe who have been duped over the last four decades into investing substantial sums to pursue Herbalife's business opportunity, fewer than 200 have achieved anything resembling the kind of lifestyles that are the steady refrain of Herbalife's marketing messages. These 200, the top rungs of the President's Team, receive most of the recruiting rewards paid out by Herbalife. The President's Team members conspire to keep themselves on the top of the pyramid and to prevent their share of the take from being diluted.

26.     Herbalife promotes the fetishized narrative surrounding the income claims of these President's Team members. President's Team members are cast as

former dropouts, vagrants, bartenders, flight attendants, nurses, teachers, single mothers, used car salesmen, bus drivers, and college volleyball players — each of whom has achieved astounding success through Herbalife and through religious attendance of Circle of Success events.

27.     These President's team members are paraded around the country as the Featured Speakers at event after event. But the "success" of these Featured Speakers is largely attributable to some combination of illegal or impermissible activity; none of which is disclosed to Circle of Success attendees.

### Reliance on Banned Methods

28.     For example, many Featured Speakers built large portions of their downlines relying on highly aggressive lead generation techniques that were banned by Herbalife six years ago as scrutiny of the company's business practices increased. These systems relied on mass marketing the Herbalife opportunity as a "work from home" internet system, and on charging distributors thousands of dollars a month to obtain leads generated through this deceptive advertising.

29.     These internet lead generation systems were descended from similar marketing techniques, long prominent among top distributors, which relied extensively on large-scale direct mail campaigns.

30.     Herbalife's stipulated settlement with the FTC fundamentally changes the way Herbalife operates by requiring distributors to prove retail sales and by

forbidding standard practices such as using images containing, "opulent mansions, private helicopters, private jets, yachts, exotic automobiles." Yet the Featured Speakers who are still recognizing the residual benefits from these banned methods do not disclose that their downline was created in the first instance using these methods. Instead they continually defraud unsuspecting participants into believing that the key to their success was — and is — event attendance and the Circle of Success.

### **Roll-up**

31.   Many Featured Speakers became wealthy by relying on the tens of thousands of people who fail or drop out of the Herbalife business opportunity each year. The downlines recruited by these drop-outs, often consisting of their own friends and family, are "rolled up" the scheme — greatly advantaging those at the top. Similarly, multi-level compensation is rolled up when a downline distributor fails to "qualify" for their full check by making the requisite monthly product purchases required by Defendant.

32.   Many top earning Featured Speakers have had the advantage of absorbing decades worth of Herbalife's 50% plus churn rate. Prospects and new recruits will not have that same opportunity when pursuing their own Herbalife business. Yet when promoting their allegedly lavish lifestyles, these Featured Speakers fail to disclose that a significant source of their income was generated by

9

downline recruits quitting, or failing to satisfy purchase requirements, not by any affirmative act or conduct on their own part.

## **Stacking**

33.     Some of the biggest Herbalife downlines are grown and maintained by "stacking" the line with distributors, at key positions, who are essentially empty proxies of the upline. Controlling multiple points of an Herbalife downline organization facilitates the naked manipulation of the compensation scheme. The FTC alleged one telling example of this endemic practice among Herbalife's most successful distributors:

> Savvy Distributors have figured out ways to use the recruiting reward structure to reap rewards, even without profitable retail sales. For example, during the years 2009–14, one top Distributor paid over $8 million for product (with a total Suggested Retail Price of over $16 million) which the Distributor purchased in the names of various downline members, thereby generating additional rewards and qualifying for higher payments from Defendants. This Distributor then donated all of this product to charity, rather than attempting to sell it. The Distributor generated enough rewards through these purchases to make a net profit, without even selling the products.

> *See* **Exhibit 1 ¶** 86.

34.     Stacked downlines are the norm for Herbalife President's Team members, but Herbalife never discloses this to potential recruits.

10

**Nepotism**

35.     The children and family of Herbalife's President's Team members are artificially placed in high-ranking positions throughout the scheme. In promotional materials and at Circle of Success events, family members hold themselves out as having achieved high incomes by adhering to the Circle of Success and by religiously attending and qualifying for special treatment at all events.

36.     For example, Featured Speaker John Tartol, a top earning distributor and member of Herbalife's parent entity's board of directors, has at least twelve members of his family highly placed within his downline; all boast about their achievements at Circle of Success events across the country, telling others that they can do the same.

37.     But the children of President's Team members who become President's Team members themselves do not work the plan as explained to new recruits. They are stacked into preexisting downlines. Their Herbalife recruiting compensation checks are largely detached from their own efforts. This experience cannot be replicated by new recruits who lack connection to high-level Herbalife insiders, yet the income claims made by these members are a significant part of Herbalife's business opportunity sales pitch. Yet while promoting these individuals, Herbalife never discloses the true source of their so-called "success" within the business.

11

## **Pre-opening International Markets**

38.     Herbalife affords some Featured Speakers the opportunity to pre-open markets outside of the United States. Herbalife's products and business opportunity are currently available in more than ninety countries. In many of those countries, members of the President's Team were permitted (through the conspicuous non-enforcement of Herbalife's rules) to enter the market and start building downline sales organizations before the market was officially open. This selective enforcement allows preferred distributors to claim a place at the top of the compensation structure in a given country — assuring that virtually all recruiting and sales within that country will generate commissions for these distributors. Yet while promoting these individuals, Herbalife never discloses that they achieved so-called "success" in Herbalife by leveraging an opportunity that the overwhelming majority of distributors would never have.

39.     The limitations on unfair business practices put in place by the FTC's permanent injunction against the Defendant do not apply to volume purchases originating outside of the United States.

## **Money Laundering**

40.     Large "stacked" downlines in conjunction with high volume cross border transactions presents the opportunity for top distributors to generate illegal profits impossible for new recruits. Receiving compensation for *purchasing*

products creates an obvious opportunity and incentive to launder illicit monies through the scheme.

41.     Money comes into a downline organization as product purchases and goes out as legitimized dollar-denominated commission checks from a global company with a New York Stock Exchange listing.

### Currency Arbitrage

42.     Certain President's Team members have profited greatly from an undisclosed currency arbitrage scheme. The complex arrangement involved a very favorable exchange rate that Herbalife utilized to convert Venezuelan bolivar purchases into U.S. dollar commission checks, effectively turning the purchase of Herbalife products into a profitable method of transferring money out of Venezuela despite their strict capital controls.

43.     The existence of this method of operation was never disclosed to new recruits as an income tool, though the income and lifestyle claims of distributors utilizing the method were frequently included among the testimonials presented at Circle of Success events.

### The Tools Business

44.     A large percentage of the wealth amassed by President's Team members came from selling leads, systems, trainings, websites, marketing materials, mentoring group access, private events, etc. directly to recruits. These side

13

businesses, collectively known as the "tools business," are fully detached from Herbalife's compensation plan.

45.     Herbalife does not disclose when the mansions, exotic automobiles, yachts, and helicopters used in the Featured Speakers' Circle of Success marketing efforts were in fact funded by these supplementary sources of income, nor does Herbalife disclose that the very methods that these Featured Speakers used to attain their standing in the Herbalife business are currently banned.

## **Broke and Bankrupt**

46.     Many of the income claims made by the Featured Speakers at Circle of Success events are altogether false. It is not unusual for top distributors to be struggling to survive financially, while boasting from the Circle of Success stage about the life changing financial security of their large Herbalife incomes.

47.     For example, Featured Speaker Michael Burton tells the story of his success at Herbalife events across the country. On June 22, 2013 Mr. Burton was the guest speaker at the Miami Success Training Seminar, speaking to members and recruits about the "financial freedom" he had attained via his Herbalife business. *See* **Exhibit 2**.

48.     The next month Michael Burton filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Texas, Case No. 13-41669.

14

49.     Herbalife sporadically requires Featured Speakers to pair their claims of enormous incomes with ineffective "results not typical" style disclaimers; but frequently the claimed results are not just atypical... they are fictional.

50.     The Herbalife success story is a fraud; a predatory scheme intentionally rigged against newcomers playing by the rules. The success claimed — and promised — by Herbalife and its Featured Speakers at Circle of Success events across the country is impossible to attain under its own terms.

## III.     THE HERBALIFE EVENT CYCLE

51.     Herbalife aggressively encourages Plaintiffs and prospective Class Members to attend a relentless cycle of highly repetitive Circle of Success events which the Featured Speakers use as the platform for their lies.

52.     Since its founding in the 1980s, Herbalife has relied on live events for both recruitment and retention. Live events are built around the persuasive power of the personal success testimonial. Herbalife founder Mark Hughes consistently emphasized the importance of this tool.

53.     According to Mr. Hughes, only 25% of an event should be devoted to information about Herbalife's products and marketing plan, while the remaining 75% should be reserved for success testimonials. The informational part of the meeting was intended only as a setup for the emotionally manipulative testimonials.

54.     At an Herbalife training event posted to YouTube, Mr. Hughes

15

explained his theory on the subject:

> The more people that you can hear from, and the more different backgrounds you hear; and the more different circumstances, and where they were, and where they came from; and what their first month's income was, and what it is now; the more eyes that you can see; the more somebody, and there's going to be somebody today that you're going to see and you're going to say, 'If that person can do it, I can do it.' And that's the most important thing that can happen to you in Herbalife.

55.     Herbalife has swelled its revenues by relying on a river of "and you can too" personal success testimonials. The density, and seeming sincerity, of these income testimonials can overwhelm the resistance of even the most skeptical prospect.

56.     Featured Speakers constantly reiterate the central importance of attending Circle of Success events and of getting guests and prospects to do the same.

> "Our ultimate goal with everything we do in our precess[sic] is getting people plugged into the Herbalife Event Calendar," President's Team member Jorge de la Concepción Jr.

> Events are the, "FASTEST way to build the BIGGEST checks in the SHORTEST period of time," President's Team member Andrea Villegas-Shanahan.

> "There is a **DIRECT CORRELATION** between the amount of people you bring to an event and your position in the Herbalife Marketing Plan! It is impossible to explain

16

(or re-create) the excitement and impact of 300, 400, 500+ people in a room, all excited and talking about their results and how Herbalife has changed their lives."

*See* Composite **Exhibit 3**.

57.     The FTC provided some details about Herbalife's Circle of Success event culture:

> Defendants also sponsor numerous events for Distributors in both English and Spanish. Many of these events include live presentations at which speakers boast about the high incomes they earn as Herbalife Distributors. These events have names such as "Extravaganzas," "Leadership Development Weekends," and "Success Training Seminars. Defendants strongly encourage Distributors to attend these events, which often require Distributors to pay an attendance fee and/or purchase a minimum amount of product from Herbalife.

> Defendants craft the agendas and select the speakers who present at these events. Speakers are usually chosen from among the very small percentage of Herbalife participants who have reached the highest status levels of the Herbalife organization. The presentations made by the selected top Distributors repeatedly emphasize that Distributors are likely to earn substantial income through Herbalife, and that Distributors' income potential is limited only by their own efforts.

> *See* **Exhibit 1** ¶¶ 30-31.

58.     At every event, Herbalife promotes the importance of attending the next event in a preset agenda item called either "Next Steps" or "Last Five Minutes."

59.    On April 23, 2013, an Herbalife employee circulated a set of presentations to various Featured Speakers with the following instructions: "You may share these with your Members and use them in all Nutrition Club trainings." One of those presentations — "Duplication: How to Create Personal Growth" — is attached as **Exhibit 4**.



**WHY DOES GETTING PEOPLE TO EVENTS CREATE ROYALTY DUPLICATION?**

– Hear Many Stories (opportunity to relate)
– See a bigger picture of Herbalife (not just you)
– More People to Events = More Royalty.

– MY ABILITY TO GROW A ROYALTY CHECK IS COMPLETELY DEPENDENT ON MY ABILITY TO GET PEOPLE TO EVENTS!
– *Why is this?*
  • Leverage Your Time:

5

Confidential                                                    HLF_037340

(slide from Exhibit 4)

60.    Defendant and the Featured Speakers claim that financial success is "COMPLETELY DEPENDENT" on participation in the Circle of Success; a false and wholly uncorroborated assertion.

61.    Three months a year Herbalife produces its own large-scale events: two

18

regional $100 "Leadership Development Weekends" in April and October, and a national $120 "Extravaganza" each July.

62.     In January, Herbalife produces a hybrid event called the "January Kickoff."

63.     The rest of the year, Herbalife relies on distributor-run events called Success Training Seminars, or "STSs."

64.     Herbalife publishes "Speaker Guidelines" and purports to require any speaker who speaks at an Herbalife event to follow those guidelines.

65.     Pursuant to the Speaker Guidelines, any speaker at any event must use "approved template(s), current logos and trademarks, and approved nomenclature." Further, Herbalife requires that any earnings claim "that cannot be easily obtained from BizWorks" must be substantiated. By way of example, "if you want to talk about your earnings from your Nutrition Club, you must provide written proof of your earnings, such as receipts for Attendee Fees." Attached hereto as **Exhibit 5** is a copy of Herbalife's speaker guidelines.

66.     In fact, Herbalife does not enforce these guidelines. It does not require substantiation of statements made at events (for example, it does not require its Featured Speakers to substantiate claims that events attendance was critical to their success). Further, according to Herbalife's corporate representative, Herbalife does not require pre-approval for statements made at STS events, because of the sheer

19

"number of events." In other words, it would just be too much work to require compliance.

## The STS

67.    The STS is the most common Herbalife event. For eight months a year, distributors are pressured to attend their semi-local STSs, which range in cost from $20 to $50. Herbalife provides food and marketing assistance to officially recognized STS events, including promoting these events on myherbalife.com, a website registered to Herbalife.  Tickets to these events are sold by an amorphous group of President's Team distributors that are most commonly referred to simply as "the leadership." According to Defendant Herbalife, "the Success Training Seminar (STS) is designed to teach expert techniques for achieving business success."  Attached hereto as **Exhibit 6** is a copy of the relevant excerpt from myherbalife.com.

68.    The STS has a long history at Herbalife. During the tenure of Mr. Hughes, the STS was held up to three times a week at no cost to the distributor. In the years following Mr. Hughes' death — as the company first stagnated, and then turned all its efforts towards "work from home" lead generation systems — the STS was a slow growing, once a month, corporate sponsored event.

69.    This changed in 2009. One of Herbalife's original distributors, Featured Speaker Cody Morrow, gave an extensive presentation on the history and future of

20

the STS at the 2013 "Future President's Team Retreat" in Boca Raton. According to that presentation, the growth arc of the STS substantially changed in 2009 when top members of the President's Team, spearheaded by Featured Speaker Dan Waldron, "took ownership" of the STS event structure. Attached as **Exhibit 7** is a copy of that presentation.

70.     This decision to shift swaths of STS responsibility to the Featured Speakers was done in close collaboration with Herbalife.

71.     Featured Speaker Tommy Gioiosa testified that the 2009 revitalization of the STS under leadership control brought Herbalife back from the "low time" it experienced in the years following the death of Mr. Hughes.

72.     At the beginning of this decade, as the Company transitioned away from its reliance on "work from home" systems, the STS became increasingly important as a driver of recruitment. Herbalife's push for $1 billion in North American revenues, dubbed "Mission 1 Billion" by the company, was to be achieved by "riding the wave" of exponential STS growth.

73.     Edition No. 150 of *Herbalife Today*, a promotional magazine distributed by Herbalife online and through the mails, contained a cover article entitled, *STS 100K in 2011: Catch the Wave*. Attached as **Exhibit 8** is a copy of that Herbalife Today article.

PLAINTIFFS' AMENDED COMPLAINT

> If you're wondering how to boost your Herbalife business, but you've yet to attend a Success Training Seminar (STS), now's the time! These crucial events provide you with the skills you need to take it to the next level. After all, with the right training, anything is possible, especially when it comes to setting new records, like being the first region ever to reach a billion dollars in sales!

74.     The STS had become the foundation of Herbalife's intricately coordinated Circle of Success event cycle. Local meetings, nutrition clubs, fitness and weight loss challenges, social media posts — all of Herbalife's so-called "Daily Methods of Operation" — were now aimed at finding prospects to feed into the STS. From the same Herbalife Today article:

> That's why the STS's are the key to help make your business grow, and to helping others achieve success. "STS's are enough to make a new person say, 'I want to be part of this. I can do this!'" says Mark Matika, Executive President's Team 15K member, who has been an Herbalife Independent Distributor for more than 29 years.

*See id.*

75.     Long, scripted days of income claims accompanied by loud music, shouting, clapping, hugging, and crying, move the prospect toward "I can do this!" Just as importantly, the STS is critical to convincing people to keep pouring money into the scheme — a monthly reaffirmation of the life changing power of Herbalife's business opportunity.

22

76.     Herbalife's STS system is owned and controlled by a web of entities. There are currently more than sixty ever-changing U.S. based STS websites registered to various distributors. Some of the site registrations are private or registered to mid-level proxies, but many are registered to one of the President's Team members controlling a local area for Herbalife:

- STSMiami.com is registered to Featured Speaker Jorge de la Concepción
- STSOrlando.com is registered to Featured Speaker Sandy Gioiosa
- BostonSTS.com is registered to Featured Speaker Jim Tartol
- DallasSTS.com is registered to Featured Speaker Dan Waldron
- OrangeCountySTS.com is registered to Featured Speaker Cody Morrow

77.     STS tickets are purchased online over these sites or can be purchased on site with cash or credit. For example, attendees of the Central Florida STS previously submitted payment to Defendant Tommy and Sandy Gioiosa's "Gioiosa Marketing" for event tickets. Currently the tickets are being sold through an entity called "OrlandoSTS."

78.     STS events are run by Featured Speakers but are partially financed by Herbalife. According to Herbalife's Senior Director of Sales and Strategy, Bob Bogard, Herbalife helps fund STS events and provides products and marketing to sanctioned events.

79.     Herbalife also provides core training materials to Featured Speakers running STSs and expects that STSs will be run using a consistent, uniform agenda, provided by Herbalife. All of these training materials are available on Herbalife's

23

member website, myherbalife.com.

80.     While top distributors receive all of the revenue from STS ticket sales, they are staffed by a large "Production Team" of business opportunity participants. These individuals are cajoled into volunteering their time to setup audio equipment and chairs, hang banners, assemble welcome kits, and make shakes for the VIP tables.



81.     At Circle of Success events, attendees are encouraged to buy tickets for future STS events in bulk packages of between five and twenty tickets. STS tickets and STS ticket packs are non-refundable.

24

## **Leadership Development Weekend**

82.     Leadership Development Weekends ("LDW"), currently held in April and October, are large regional events sponsored and sold by Defendant Herbalife in some twenty cities across the country. The weekend long events cost $75 – $110 to attend and require most participants to travel and stay two nights in a hotel.

83.     The LDW offers the same basic content as the STS with larger venues and bigger crowds adding to the emotional impact of the event. LDW features speakers chosen from a small subset of regular STS speakers.

84.     Defendant Herbalife provides travel and accommodations for the speakers and compensates certain Featured Speakers for their participation in these events.

85.     As with the STS, the LDW is staffed by a Production Team of business opportunity participants working uncompensated behind the scenes to produce the very events they are paying to attend.

86.     LDW event tickets are non-refundable.

## **January Spectacular / Kickoff**

87.     The January Circle of Success event is a hybrid of the STS and LDW. The events tend to be larger and more expensive to attend than the STS; they are often held over two days.

88.     Prior to 2014, the event was called "January Spectacular" and it was

25

sponsored and sold directly by Defendant Herbalife. But recently "the leadership" has absorbed the event into the STS system and renamed it "January Kickoff." Tickets are now purchased from the same shifting list of top distributor-related entities and individuals who sell STS tickets to Circle of Success participants.

89.     Herbalife's corporate representative testified that Herbalife covers the major expenses associated with producing these events but allows local leadership to "collect the revenue from the ticket sales themselves and thus begin the year with a — potentially a bank for future events, future STSs." In other words, Herbalife bears the cost of the event but allows the local event leadership to sell the tickets and retain the revenue generated from those events.  Herbalife expects that the Featured Speakers will use the proceeds from January Kickoff ticket sales to the to fund future, distributor-run events.

90.     January Spectacular / Kickoff tickets are non-refundable.

### Extravaganza

91.     Extravaganza is billed as "the BIGGEST and MOST IMPORTANT event to attend" on the Circle of Success calendar. *See* **Exhibit 9**. The $120 annual event is attended by some 20,000 business opportunity participants and is produced and sold directly by Herbalife.

92.     The event features similar content to the STS and LDW. Presentations and panel discussions are hosted by the same small subset of speakers utilized at the

LDWs, but Extravaganzas also feature the direct participation of Defendant Herbalife's corporate executives.

93.     The excitement generated by so many Circle of Success participants concentrated in one location is often cited favorably by Herbalife's executives when speaking to analysts and stock market investors. On Herbalife's second quarter 2017 earnings conference call for example, former CEO Rich Goudis deflected an analyst's question about a decrease in North American sales by referencing the national event.

> "But listen, we came out of July Extravaganza with 21,000 people. And we were all extremely moved by the enthusiasm and excitement in the business. It was apparent. It was visible. You could hear it."

94.     Extravaganza attendance is pushed aggressively by speakers at Circle of Success events throughout the year. Extravaganza tickets are available for purchase at STS and LDW registration tables as much as six months prior to the event.

95.     Extravaganza attendance requires air travel and a multi-night hotel stay for the vast majority of attendees — a fact frequently referenced by Featured Speakers and Herbalife executives during the events. At the 2014 Extravaganza in Chicago Herbalife CEO Michael O. Johnson put it like this:

> You spent money to be here, your hard-earned dollars, to
> get here this weekend. You got a hotel room, you traveled
> here with your friends — some of you, many of you, with
> your family members — you got your kids babysitters; an
> expensive proposition to come here and be with us this
> weekend. But this is the place where the big picture gets
> taught. This is the place where you understand about the
> opportunity.

96.     Extravaganza tickets are non-refundable.

**Herbalife Utilizes the Mails and Wires to Promote the Circle of Success**

97.     Defendant's misleading event related promotions and advertising lay
the foundation for a deceptive echo chamber constantly clattering about the
importance of event attendance.

Websites

98.     Herbalife promotes the Circle of Success via its members-only website
myherbalife.com. Distributors must access this site to purchase products and view
their volume and compensation information. Fliers, videos, and conference calls
promoting the next event are always available — and often prominently featured —
on myherbalife.com.

99.     Herbalife publishes a Circle of Success focused website,
herbalifeevents.com, which is exclusively used by the company to promote events.
The website is always available and posts fliers, videos, and promotions for
upcoming events.

28

100. Herbalife publishes a single purpose website, herbalifeextravaganza.com, devoted to promoting Extravaganza year-round. The website is always available and posts pictures, videos, and fliers regarding the upcoming Extravaganza.



(HerbalifeExtravaganza.com as it appeared July 15, 2015)

Marketing Mail

101. Herbalife utilizes a mass marketing sales tool to send frequent marketing messages to its distributors. The messages are image rich and are sent from usa@herbalifemail.com. These mass mailings are sent to most distributors and regularly promote Circle of Success events.

PLAINTIFFS' AMENDED COMPLAINT

(Image captured from message sent by usa@herbalifemail.com July 20, 2016)

102.   Attached as **Exhibit 10** is an email sent by Defendant Herbalife to Plaintiff Izaar Valdez on October 7, 2015 from usa@herbalifemail.com. The email's content contains a link to an online ticket purchase location and instructs Ms. Valdez that:

> "October is the month to enhance your business!
>
> Sharpen your skills and take your team to the next level. There is still time to purchase your tickets online for select cities. Go to HerbalifeEvents.com for additional details and to see which incredible leaders will be speaking at a city near you and other details."

103.   Attached as **Exhibit 11** is email sent by Defendant Herbalife to Plaintiff Patti Rodgers on April 8, 2014 from usa@herbalifemail.com. The email has the subject line, "HerbalifeExtravaganza.com — All things Herbalife Extravaganza just

a few clicks away!" The message promotes four different Circle of Success events and has links to ticket sales, schedules, lists of VIP qualifiers, and Herbalife's event websites. Ms. Rodgers forwarded this message to Mr. Rodgers.

Herbalife Emails

104.   Defendant's employees regularly email distributors directly regarding events and event promotions utilizing the company's internal email servers.

105.   Attached as **Exhibit 12** is an email sent by Herbalife employee Kristin Fauth on November 14, 2012. The email was sent to thousands of Herbalife distributors, including Plaintiff Jen Ribalta, and warned that time was running out to purchase discounted tickets for the 2013 January Spectacular. A flier for the event attached to the email reads:

> "Ignite Your Business in 2013 With Top-Level Training Herbalife's best of the best are going city by city to give you the best tools and strategies that will accelerate your business"

106.   The message encourages recipients to: "Please forward this message to ensure your Team get the Early Bird price."

107.   Attached as **Exhibit 13** is an email sent by Herbalife employee Kristin Fauth on August 16, 2013. The email was sent to more than ten thousand Herbalife distributors, including Ms. Rodgers and Ms. Ribalta, and promotes the 2013 Extravaganza. The attached flier states that the event will help distributors, "learn to

build a more successful business" and that it is "the event that will help you build your future."

Conference Calls

108.  Defendant hosts live conference calls to promote specific events and the importance of attending Circle of Success events more generally. These Herbalife hosted calls showcase the event-related advice and testimonials of the Featured Speakers. **Exhibit 8** is an excerpt from a copy of Herbalife Today that lists the dates and times for seven such "Catch the Wave" calls held in 2011.

109.  Attached as **Exhibit 14** is an email sent by Herbalife employee Kristin Fauth on August 27, 2012. The email was sent to thousands of Herbalife distributors, including Ms. Rodgers and Ms. Ribalta, and promotes a "Ride the Wave" conference call to be held the same day. These calls were held throughout the year and focused on the importance of event attendance. "Ride the wave to Extravaganza 2012!" exclaims the email, "Level Ten Herbalife Leaders sharing the success secrets to take your business to Level Ten!"

Herbalife Today

110.  Herbalife's magazine, *Herbalife Today*, has been printing and shipping through the U.S. mails to distributors for decades. The magazine is also available on Herbalife's websites and downloadable copies are promoted in many of Herbalife's emails. Most editions of *Herbalife Today* contain Circle of Success event

32

promotions.

111.   The edition printed and shipped in July 2011 featured a cover story about Extravaganza. Inside a multi-page spread makes highly specific claims about the "proven success" of attending events.



- "My business expanded an additional 20 percent shortly after the trainings."
- "It exploded our business, brought us to President's Team and it will definitely do the same for you!"

112.   The edition of Herbalife Today that printed and shipped in June 2012 also featured a cover story about Extravaganza attendance.

33

113.   According to the story event qualification and attendance is a way to:

- Change your life
- Take control of your finances
- Be your own boss
- Earn what you're worth
- Have more time to spend with loved ones

114.   Herbalife mails *Herbalife Today* thousands of times a year to thousands of distributors a year and has done so continuously for the past ten years. In every edition of *Herbalife Today*, Herbalife promotes events, often dedicating several pages to their promotion.

### Featured Speakers Promote Events

115.   The promotion of upcoming STS events begins with a one-page flier

34

distributed at the current month's STS. The flier is posted to the leadership-controlled STS website for the area and on social media pages managed and controlled by that same leadership.

116.   Officially recognized STS events are also listed on Herbalife's websites along with links to the local leadership site where promotional fliers can be attained and event tickets purchased.

117.   Most fliers tell the brief story of a person who was once lost in the normal struggle of human existence that has since been set free from the bondage of work and uncertainty via the "anyone can do this" power of the Herbalife business opportunity:

- Just by recommending the nutrition to my circle of influence and my local community, I was generating over $4000 extra. In January 2013, after another amazing event, I was so blown away by the testimonies that I decided to quit my job and take this business to the next level. [Karim Ali, 2016 Miami STS]

- I quit my internship @ the states attorneys office and decided to ditch law school to pursue the Herbalife business opportunity full time! My first check was $61 and two years later I earn over $7,000 + every single month! [Maigan Graham, 2014 Phoenix STS]

- Lisa Arnold was able to go from a zero dollar income to a 6 figure income in 12 months and she will be sharing in detail exactly how she did so! [Lisa Arnold, 2015 Boston STS]

- They both had great results using the products and when their parttime income reached $5000 a month, Laura quit her job as a banker and Mike

35

left his job in non-profit fundraising... "We are truly living our dreams!" [Mike and Laura Curtis, 2013 Denver STS]

- After doing Herbalife for just 21 months they were able to reach President's Team, along with Jorge's parents!!!!! The most important part is that they are able to stay at home with their kids and spend every moment with them because of the lifestyle they have earned! [Disney & Jorge de la Concepción, 2015 Tampa Bay STS]
- Within 3 weeks she attended her first STS and that help launch her business to making over $8000 a month within 90 days. [Launa Rasch, 2012 Denver STS]

- In the first 10 weeks Tim made more part-time than he did full time... "I hit a six-figure income in 3 years, and now I earn more per month working the hours I choose around my family than I used to make in one year as a Marine! [Tim Hendricks, 2015 Chicago STS]

Attached as Composite **Exhibit 15** is a sampling of these STS fliers.

118.   Each of these major market events referenced in Composite Exhibit 15 was directly supported and/or promoted by Herbalife.

119.   In a training video distributed by Defendant, Featured Speaker Amy Hendricks tells distributors that event promotions should focus on the uniqueness of the Featured Speaker. "It's all about the story, and promoting the trainer themselves," says Hendricks.

120.   Herbalife and its Featured Speakers expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires via the social media accounts of event participants. Each event flier published by Herbalife

1  generates thousands of clone publications in the months leading up to the event.

2  121.  For example, the flier for the October 3 – 5, 2014, LDW in Jacksonville

3
4  was originally published to Defendant Herbalife's event websites. Regional

5  leadership then republished the flier over their event websites and social media

6
7  feeds.

8  122.  In the final step, hopeful distributors repackaged the flier and passed it

9  along through the wires to their own social networks.

10

11
12
13  
14
15
16
17
18
19
20

21

22  "If you are serious about growing your business and
23  making an impact in your community YOU WILL BE
   THERE!!!!"

24

25  123.  Although tickets for LDWs and Extravaganzas are purchased directly

26  from Defendant Herbalife, the Featured Speakers play a critical role in the marketing

27

28
                                37

and promotion of the events. At the behest of the company, these regional and national events are promoted from the STS stage and over the same online and social media channels that "the leadership" use to promote the STS.

## **Attend Every Event**

124. Circle of Success events present the same basic content month after month, year after year, yet Herbalife's business opportunity participants are nevertheless exhorted to "attend every event." Attending every event is presented as the path to success walked by all of the company's leading lights; a duplicable pattern that anyone can use to achieve the same results.

125. Events are time consuming, expensive, and highly repetitive — but Herbalife business opportunity participants are expected to attend them all.

126. An April 30, 2015, Facebook post by Featured Speaker Lori Baker made the proposition simple for the members of her downline. The post, a popular Herbalife meme featuring Featured Speakers Mark Addy and Enrique Carrillo, was shared more than sixty times after it was posted by Baker:

PLAINTIFFS' AMENDED COMPLAINT



127.   According to their biography in a 2009 issue of *Herbalife Today*,
Featured Speakers Amber and Jason Wick replaced their incomes as engineers by
working the Herbalife business opportunity. Their alleged keys to success:

> Attend every event possible.
> Bring as many people as you can.
> Qualify for everything you can at events.
> *See* **Exhibit 16**.

128.   May 25, 2017 Featured Speakers Jorge and Disney de la Concepción
posted a promotion for the upcoming Miami STS to their popular Instagram feed.
The post reminded members of their downline that event attendance was mandatory:

> "For those of you serious Herbalife Distributors in Miami,
> I'll tell you like we tell our team; Events/Trainings are non
> negotiable!"
> *See* **Exhibit 17**.

39

129.   A May 29, 2017, post by President's Team member Heather Gregg, posted to the private Facebook group for members of Featured Speaker Mark Matika's downline (which includes Plaintiffs Jeff and Patti Rodgers), declares event attendance to be the "FASTEST WAY TO GROW."

> "THE pathway to advancing in the business can ONLY be done by attending the events and bringing people with you.
>
> Be SURE you have your calendar filled with the dates of all events first... then plan everything else around those dates."
> *See* **Exhibit 9**.

130.   A video recording from the October 26 – 29, 2011, Extravaganza was distributed by Defendant as a "training DVD" to attendees (including Plaintiffs) of the 2012 January Spectaculars held across the country.

131.   The DVD shows Featured Speaker Amber Wick hosting a panel discussion about succeeding with Herbalife Nutrition Clubs in front of thousands of Herbalife business opportunity participants. Wick introduces Featured Speakers Sam and Amy Hendricks, telling the audience that Sam and Amy built their fast-growing Herbalife paycheck by relying on the Circle of Success and by working their business "event, to event, to event." Wick says that, "for every person you get to an event, you can expect your check to go up by a certain amount."

132.   On October 11, 2013, during Herbalife's Extravaganza weekend,

Featured Speaker Jillian Addy gave a presentation to thousands of Herbalife distributors detailing the staggering growth of her and her husband's organization since their 2009 switch to focusing on working "event to event."



133.   Ms. Addy charts out a "Systematic Flow from Fitcamps Into HLF Events," for which she credits an 800% increase in compensation over four years. A similar story is told company-wide, month after month, at event after event; Herbalife's top North American distributors credit their entire operations on the Circle of Success event cycle.

134.   Herbalife consistently emphasizes the essential nature of event attendance. For example, the "Herbalife Lead" program allocates prospects generated by Herbalife's website and direct marketing efforts to qualifying distributors. Attendance at four Circle of Success events, at least two of them corporate-sponsored events, is required to be eligible for the program. *See* **Exhibit 18**.

41

135.   While Herbalife ceded the financing and operation of the STS system to top distributors, the company retains significant control. The full curriculum for the STS event is provided to Featured Speakers by Defendant Herbalife via myherbalife.com. Under a section titled, "Building Your Business -- Approved Trainings for Meetings" the company describes the STS as the "mother of all group meetings" and prescribes the materials to be used when presenting it. *See* **Exhibit 6**.

136.   The suggested agenda provided with the event materials lays out the whole STS day with great specificity. *See* **Exhibit 19**. Local leaders are admonished not to stray too far from the provided scripts, agendas, and presentations because "everything works".

137.   The Herbalife provided agenda calls for Featured Speakers to close the day with a fifteen-minute discussion of the "Action Steps" participants should take upon leaving:

> "Key piece: next steps, next meeting (STS, LDW)
>
> Strive to qualify for everything, consistency, plugging into the Cycle of Success and bringing people with you to the next events!"
> *Id.*

138.   According to Defendant Herbalife's agenda, the key takeaway message of these events is to keep qualifying for, and attending, these events. This section,

42

which is also frequently labeled "Next Steps" or "Last Five Minutes" is presented at the end of every Circle of Success event.  While Herbalife, on the one hand, expects its Featured Speakers to promote the next event as critical to an individual distributor's success, Herbalife does not require, on the other hand, Featured Speakers to provide any kind of disclaimer that (i) the Featured Speakers did not achieve success in Herbalife through event attendance; (ii) the Featured Speakers' success is attributable to means and methods unavailable to the vast majority of distributors, or (iii) Herbalife is not aware that attending more events will lead to greater success within Herbalife.

139.   It costs event participants more than $600 per year in ticket prices alone to "attend every event."

## Qualify for Everything

140.   "Qualification" is an idea deeply embedded within the Herbalife subculture.

141.   "Qualification" is Herbalife parlance for meeting the bulk purchasing and recruiting requirements arbitrarily established by both Herbalife and the Featured Speakers.

43

## Attend all the events-

***Uncommitted Distributors Will Never Get Committed People!!***

# Qualify for everything

## Your people do what you do not what you say.
## That builds retention !!!!!

GIOIOSA001788

 **HERBALIFE.**
Independent Distributor

(slide from presentation regularly given by Featured Speaker Tommy Gioiosa)

142.  Herbalife's compensation and commission structure encourages participants to progress up a ladder of clearly delineated ranks. According to Herbalife, "qualifying" for a new rank, an achievement recognized with great fanfare at Circle of Success events, correlates with an increased earning potential. The more you recruit, the more you are compensated for those you have already recruited.

143.  There are eight compensation levels between a new Herbalife recruit and the vaunted President's Team. In recent years, Herbalife has added four additional "recognition levels" to the stairway. Recognition levels are qualifications celebrated with pins and certificates at Circle of Success events, but which do not

44

actually have an effect on a distributor's compensation.

144.    But "qualification" also refers to bulk purchases made in order to satisfy requirements which are tied directly, and exclusively, to the Circle of Success. These qualifications are completely detached from the compensation scheme. When Herbalife's business opportunity participants are daily entreated to "qualify for everything," it is this ceremonial event qualification which is usually being referenced.



145.    A photo posted to Facebook by an Herbalife distributor shows Defendant Tommy Gioiosa, appearing at a January 29, 2017 Circle of Success event in Philadelphia, standing beneath a sign reading, "CHANGING PEOPLE'S LIVES."

146.    "I always qualify for everything ... no matter what," reads the PowerPoint presentation displayed on the monitor in front of Gioiosa and later produced to Plaintiffs in discovery. "Get as many people to qualify for all the events

with you."

147.   At Circle of Success events participants can qualify for "advanced" trainings, mentoring sessions, dinner with guest speakers, special photo opportunities, and "VIP seating and treatment" while at the event.

 

(January 24, 2017 Instagram post by Erika Martin)

148.   VIP qualifiers are positioned at the front of the venue, usually seated at tables where they are served — and conspicuously consume — Herbalife products throughout the event. During the days-long seminars frequent reference is made to the accomplishment and import of being seated at the VIP tables. VIP qualifiers are said to be signaling the seriousness of their commitment to their downline members, and to "the leadership."

149.   VIP and other qualification requirements vary by event and location. For example, in 2016:

46

- Miami STS VIP qualification required "10,000 Personal Volume Points" (roughly $7000 worth of purchases) in the preceding month
- Spanish language Miami STS VIP qualification required 2500 Personal Volume Points in the preceding month
- Tampa Bay STS VIP qualification required 7500 Personal Volume Points the preceding month
- Silver VIP qualification for the Orlando LDW required an accumulation of 25,000 Total Volume Points during the four months preceding the event
- Silver VIP qualification for the Atlanta Extravaganza also required an accumulation of 25,000 Total Volume Points during the four months preceding the event.



(July 10, 2017 screen capture inside myherblife.com)

150.   Herbalife's members only website, myherbalife.com, has a "Qualification Status" tracking system to allow distributors to see the progress they have made toward Circle of Success event qualifications.



(July 10, 2017 screen capture inside myherblife.com)

47

151.   Qualification for "advanced trainings," like the "Supervisor School" portion of the STS training or the "Supervisor Workshop" portion of the LDW event, require a participant to hold the rank of Supervisor in Herbalife's marketing plan. Supervisor is the rank at which Herbalife business opportunity participants can start earning commissions on their recruiting. This level can be attained by achieving 2500 personal volume points in each of two consecutive months. Once achieved, the rank can be held for up to a year without further action.

152.   But at most Circle of Success events, access to the "advanced" Supervisor training is only available to participants who have satisfied their buying quotas in the immediately preceding months.

153.   Qualification and recognition at monthly events works in conjunction with the marketing plan levels to continually convince Plaintiffs that there is reason to invest in one more months' worth of qualifying volume.

154.   A search for the hashtag #qualifyforeverything on the social media site Instagram returns more than 6000 posts; mostly posted by hopeful Herbalife distributors repeating the lessons taught by company leadership.



"Our Secret? Use the products. Wear the brand. Talk to people. Qualify for EVERYTHING. Never miss an event. Take people with you."

(September 5, 2015, Instagram post by Featured Speaker Fabiola Barinas)

155.   When Herbalife's distributors place orders with the company, many are purchasing Circle of Success qualifications as much as they are wholesale products to resell; fraudulently induced into a belief that "qualify for everything" is a viable strategy for building an income in Herbalife.

**Mutual Control and Benefit**

156.   Herbalife's Circle of Success is the product of a close association between Herbalife and its highest-ranking distributors — the Featured Speakers. While neither Herbalife nor the Featured Speakers will claim ownership over the enterprise that produces these events, both Herbalife and its top Distributors rely on the Circle of Success to perform core functions of their individual operations.

49

157.   The Featured Speakers receive revenue directly from the sale of Circle of Success event tickets. Herbalife compensates certain Featured Speakers (those holding the highest ranks in the marketing plan) for appearing at Circle of Success events. The reputations of the Featured Speakers are significantly strengthened by being routinely held out as Herbalife's most successful distributors. The Featured Speakers rely on the Circle of Success to recruit new business opportunity participants, to retain current participants, and to keep all participants making bulk purchases that will translate into increased commission checks for the Featured Speakers.

158.   Defendant Herbalife receives revenues directly for the sale of the regional and national Circle of Success event tickets. The stunning stories of rapid financial success peddled at these events are at the heart of the pitch for the Herbalife business opportunity. Circle of Success events rely on deceit and misrepresentation to recruit new participants into Herbalife's fraudulent proposition and to keep those participants (like Plaintiffs) locked in a cycle of mandatory monthly purchases.

159.   At Herbalife's behest, Circle of Success events utilize standardized presentations decks, scripts, and agendas. Local leaders are instructed to work together and stick with the approved materials. Slides from a 2015 presentation given by Featured Speaker Mike Patterson explain that a "unified message across the country creates certainty for our members." *See* **Exhibit 20**.

PLAINTIFFS' AMENDED COMPLAINT

160.   Circle of Success events require the close collaboration of Herbalife and the Featured Speakers; and the events are essential to each.

## PLAINTIFFS

161.   Representative Plaintiffs have collectively attended more than 75 Circle of Success events, each spending more than a year trapped in a cycle of manipulation calculated to produce financial loss.

162.   Plaintiffs are hardworking, diligent, conscientious citizens who were ensnared into an aggressively fraudulent scheme by Herbalife's exploitation of their trust, their hope, and their vulnerability.

### Jeff and Patricia Rodgers

163.   Patti attended her first large Herbalife recruiting event on January 22 – 23, 2011; traveling 140 miles to Herbalife's "January Spectacular" in Orlando. The event featured one of Herbalife's top distributors, Featured Speaker Susan Peterson, as its keynote speaker.

164.   Peterson convincingly claimed that the Herbalife business opportunity offered a certain path to financial freedom for anyone willing to invest the time, money, and energy. Patti committed herself to vigorously pursuing the Herbalife business opportunity.

165.   Patti's husband Jeff Rodgers had a successful career as a construction estimator. In March 2011, Patti brought Jeff to a Circle of Success event in Daytona

51

Beach. Shortly thereafter, Jeff suffered a serious stroke which cost him his job — and his sense of stability. While Jeff was still recovering from this health crisis, the Rodgers attended a Circle of Success event from July 8 – 10, 2011 in Jacksonville.

166.   That weekend, Featured Speaker Amber Wick gave a version of her standard Herbalife testimonial. She and her husband, Jason Wick, claimed that they spent many long years with a stagnant Herbalife business. Ms. Wick explained that once the couple started working their business by funneling prospects into the "Circle of Success," everything changed. Jason and Amber claimed they were now living a life of total financial freedom and empowerment, and that anyone willing to "duplicate" their model was sure to achieve the same liberation.

167.   Over the next few years Jeff and Patti Rodgers — like thousands of other prospective class members similarly situated — were convinced by an onslaught of guarantees that if they modeled the methods of leaders like Featured Speakers Wick, Addy, Bickerstaff, Baker, Carrillo, Jones, and De la Concepción, and worked the Herbalife business "event to event," lasting success was the certain outcome.



(Jeff Rodgers on the cover of the March 2012 edition of *Herbalife Today*)

168.   The Rodgers rarely missed another event for the duration of their four-year involvement with Herbalife; attending more than fifty events, sometimes at a rate of two a week, and doing everything the Featured Speakers told them was necessary to achieve financial independence. Even though they were losing money every month, Jeff and Patti continued to attend monthly Herbalife events where they were exhorted to double down their efforts with the guarantee that the pot of gold at the end of the rainbow was just within reach.

169.   In their pursuit of the Herbalife business, they cashed out a retirement account and a settlement annuity, sold jewelry, moved into shared housing, and borrowed money from family members on more than one occasion.

170.   The Rodgers followed the instructions of company "mentors" and "planned their lives around the Herbalife calendar." Trips to visit grandchildren were postponed while the couple's dwindling resources were used to attend expensive Herbalife events.

171.   The constant promotion of the next big event, each promising to be the key to success; and their constant attendance of those highly charged emotional events, kept their false hopes at a steady boil.

172.   The Rodgers attended almost every event from 2011 – 2015. At each of these events they heard the Featured Speakers making the same misrepresentation: Remain dedicated to the Circle of Success and you will become rich like us.

173.   Yet religious adherence to the Circle of Success did not lead to financial success for Jeff and Patti Rodgers. They didn't quit Herbalife; after years of fruitless toil, they simply ran out of money to lose.

174.   Not accounting for their time, the Rodgers lost more than $100,000 pursuing Herbalife's fraudulent and illusory business opportunity. At least $20,000 of those loses stem directly from their participation in the Circle of Success event

54

cycle.

## **Izaar Valdez**

175.   Izaar Valdez spent, off and on, almost a decade trying to achieve the success promised by Herbalife's President's Team members from Circle of Success stages across the country.

176.   From the stage of a 2008 Herbalife STS in Miami, Izaar was told that she could be making $500,000 per year in Herbalife, that she would be able to purchase homes using cash, and that her family's future could be secured for generations.

177.   Izaar is a U.S. citizen who immigrated to Miami from the Dominican Republic. She is an administrative assistant who has worked the Herbalife business opportunity in both Miami, Florida and Elizabeth, New Jersey.

178.   Izaar was in the downline organization of Featured Speakers Guillermo and Claudia Rasch. Like many others in Herbalife's Latino market, Izaar was instructed by her upline to participate in continuous, time intensive, "training systems." The systems associated with Defendant Guillermo Rasch had Izaar attending tri-weekly events costing up to $200 per month.

179.   At the tri-weekly events, and the monthly Circle of Success events, distributors were continually reminded that event attendance was the crucial step to achieving success in the Herbalife business opportunity. Persuaded by these

messages, Izaar attended many Circle of Success events.

180.   Twelve thousand people, including Izaar, attended Herbalife's Extravaganza Latina in Atlantic City, New Jersey between October 16 – 19, 2014. Defendant and the Featured Speakers collectively produce Spanish language Circle of Success events that run in parallel to English events in cities with dense populations of new immigrants.

181.   Izaar lost more than $3,500 attending Circle of Success events in 2014. That same year, while working her business from dawn to dusk, she spent more than $10,000 purchasing Herbalife products in order to "qualify for events" and move up in the Herbalife marketing plan.

182.   Izaar's longtime partner left her and her three children in desperation over her continuous Herbalife losses. When she sought advice from her "mentors" about the collapse of her family, Featured Speakers Guillermo and Claudia Rasch told her to stay the course, to continue to make the necessary purchases, and to attend all the necessary events — this was no time to give up.

183.   Circle of Success organizers categorize skeptical family members as stumbling blocks to be avoided and forgotten on the path to infinite success. This January 18, 2015 Facebook event post by Omar Lorenzo, one of Guillermo Rasch's ranking agents, sadly illustrates this pervasive message.



THE NO. 1 REASON
PEOPLE FAIL IN LIFE IS
BECAUSE THEY LISTEN
TO THEIR FRIENDS,
FAMILY, AND
NEIGHBORS.

### **Jennifer Ribalta**

184.   Ms. Ribalta was recruited into Herbalife's "opportunity" directly by Featured Speaker Tommy Gioiosa. Mr. Gioiosa, who was managing a strip club at the time, was a frequent customer of the photo/printing shop where Jen was employed. Jen was convinced by Mr. Gioiosa to sign up for Herbalife, and to attend her first Circle of Success event in February of 2011.

185.   At that event, like every other Circle of Success event, presenters preached about the importance of attending Circle of Success events every month in order to guarantee success as an Herbalife distributor.

186.   Ms. Ribalta was drafted into the event "Production Team" by Featured Speaker Sandy Gioiosa. Production Team duties require an average of eight hours unpaid labor per event and often mean an extra night away from home. But working

57

long hours on the event does not free you from your obligation to pay for the event. Jen usually paid for Circle of Success events by giving cash directly to Tommy Gioiosa.

187.   In her first year, Jen attended events in Daytona Beach, Jacksonville, Orlando, and Las Vegas. She was also expected to attend smaller weekly recruiting meetings held at the Gioiosa's Nutrition Club, where she was paying $100 per month for the right to work behind the counter uncompensated.

188.   On September 26, 2012, Sandy Gioiosa hosted a call to promote the upcoming Extravaganza to members of her downline. Featured Speakers Amber Wick and Dani Edwards were presented as "special guests" and were introduced as two of the company's fastest growing, top earning, distributors.

189.   On that call, Edwards states that Extravaganza attendance has "completely transformed" her life, allowing her to build up what she called "legacy" wealth in just five years. She says she knows many people are "putting together every single penny that they have," to be able to attend the event. She claims it will be worth overcoming any "excuse" not to attend, including; insufficient funds, an unsupportive spouse, a job, or the need to take care of children. Whatever a person's financial or emotional position, Edwards claims that, "it is vital that you do whatever you have to do to get to this event."

190.   Amber Wick claims on the call that attending Extravaganza,

"absolutely changed the course of our entire lives," and insists that people "find a way" to attend even if it means putting the year's most expensive event on a credit card like she and Featured Speaker Jason Wick had done at the beginning of their Herbalife careers – a time during which they were already so deeply indebted that the thought of putting another $1000 on a credit card made Wick "want to throw up."

191.   Both Wick and Edwards describe finding a way to attend Extravaganza at a time when they certainly could not afford to attend, and the massive life changing success that resulted from that reckless decision. If you want the health, the wealth, the lifestyle — even the ability to help those in need — then you must attend the Circle of Success events. "You can't help the poor if you are one of them," say both Edwards and Wick during the hour-long pitch.

192.   Ms. Ribalta attended the 2012 Extravaganza in Long Beach the following month as instructed, and she attended the 2013 Extravaganza in Las Vegas. In between, she attended local and regional events across Florida. In fact, Jen Ribalta attended a Circle of Success event every month for 40 consecutive months, "volunteering" to work Production Team at 30 of those events. The tables below show the dates, locations, and Featured Speakers at the events Ms. Ribalta attended.

| Date / Year | Event Type | Location | Speaker |
|---|---|---|---|
| Feb-11 | STS | Daytona Beach | Meg Lyle |
| Mar-11 | Did Not Attend | | |
| Apr-11 | LDW | Jacksonville | Debbi Combs |
| May-11 | STS | Daytona Beach | Laura McClure |
| Jun-11 | African American Recruiting Tour | Orlando | Enrique Carillo |
| Jul-11 | LDW | Jacksonville | Laura Meister Brad Harris |
| Aug-11 | STS | Daytona Beach | Sam Hendricks |
| Sep-11 | STS | Daytona Beach | Graeme Edwards Ron Rosenau |
| Oct-11 | Extravaganza | Las Vegas | N/A |
| Nov-11 | STS | Ormond Beach | DJ Humphries |
| Dec-11 | STS | Daytona Beach | Roxanne Chauvanne Daytona |
| | | | |
| Jan-12 | Spectacular | Jacksonville | Kurt O'Connell  (Amber & Jason Wick?) |
| Feb-12 | STS | Daytona Beach | Jack Gibson |
| Mar-12 | STS | Daytona Beach | Alexis Pelfrey |
| Apr-12 | LDW | Jacksonville | David Hayes Michael Burton |
| May-12 | STS | Daytona Beach | John & Bobby Franchetti |
| Jun-12 | STS | Jacksonville | Dr. John Heiss |
| Jul-12 | LDW | Jacksonville | Enrique Carillo Jason Wick |
| Aug-12 | STS | Daytona Beach | Trey Herron |
| Sep-12 | STS | Daytona Beach | Tommy & Sandy (?) |
| Oct-12 | Extravaganza | Long Beach CA | N/A |
| Nov-12 | STS | Lake Mary | Tommy Gioiosa Mark Davis |
| Nov-12 | Chairman's Club Event | Orlando | Dan Waldron |
| Dec-12 | STS | Lake Mary | David Hayes |

| Date / Year | Event Type | Location | Speaker |
|---|---|---|---|
| Jan-13 | Spectacular | Orlando | Dani Edwards |
| Feb-13 | STS | Lake Mary | Zach Tartol |
| Mar-13 | STS | Lake Mary | Alcides Mejia |
| Apr-13 | LDW | Jacksonville | Sam & Amy Hendricks |
| May-13 | STS | Tampa | Nestor Villageliu |
| Jun-13 | STS | Lake Mary | Local Leadership |
| Jul-13 | LDW | Jacksonville | Craig & Caroline Tsutakawa |
| Aug-13 | STS | Altamonte | Kevin & Laurie Gross and Mona Shultz |
| Sep-13 | STS | Lake Mary | |
| Oct-13 | Extravaganza | Las Vegas | |
| Nov-13 | STS | Altamonte | Body Transformation Challenge |
| Dec-13 | STS | Lake Mary | Sandra and Maurice Smith |
| | | | |
| Jan-14 | Spectacular | Orlando | Alexis Pelfrey Jack Gibson |
| Feb-14 | STS | Lake Mary | Kim Muniz |
| Mar-14 | STS | Tampa | |
| Apr-14 | LDW | Daytona Beach | Mike Patterson |
| May-14 | STS | Lake Mary | Jake Holloway |
| Jun-14 | STS | Lake Mary | Local Leadership |
| Jul-14 | Extravaganza | Chicago | |

193.   Over the course of her involvement with Herbalife, Ms. Ribalta spent more than $10,000 attending Circle of Success events.

## CLASS ALLEGATIONS

194.   This action is brought by Plaintiffs as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

195.   Plaintiffs seek relief under 18 U.S.C. § 1962, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and for negligent misrepresentation on behalf of themselves and a nationwide class (the "Class") defined as:

> All persons who purchased tickets to and attended at least two Circle of Success events from 2009 until the present, in pursuit of Herbalife's business opportunity.

196.   Excluded from the Class are all past and present members of Herbalife's President's Team (including members of the "Chairman's Club" and "Founder's Circle"), their employees, proxies, and family members.

60

197.   The members of the prospective Class are so numerous that joinder of all Class members in a single action would be impracticable. There are at least 80,000 potential Class members who can be readily identified through the records of the Defendant and the Featured Speakers.

198.   There are substantial questions of law and fact common to all potential Class members.  Herbalife's operation of the Circle of Success scheme is directed and implemented in the same or similar manner toward all potential members of the nationwide Class. These common questions include but are not limited to:

1.   Whether Herbalife committed wire fraud by implementing, facilitating, and participating in the Circle of Success enterprise using the common methods described herein;

2.   Whether the wire fraud committed by Herbalife constitutes a pattern of racketeering activity;

3.   Whether Herbalife committed mail fraud by implementing, facilitating, and participating in the Circle of Success enterprise using the common methods described herein;

4.   Whether the mail fraud committed by Herbalife constitutes a pattern of racketeering activity;

5.   The extent to which Herbalife operates and controls the alleged racketeering enterprise;

6.   Whether Defendant engaged in a conspiracy to commit wire fraud through the Circle of Success enterprise using the common methods described herein;

61

7.  Whether Defendant engaged in a conspiracy to commit mail fraud through the Circle of Success enterprise using the common methods described herein;

8.  Whether Defendant's conduct constitutes an unlawful, unfair and fraudulent business practice under California law;

9.  Whether Defendant intentionally withheld material information about the likelihood and ability of Plaintiffs' obtaining the promised results and monetary returns from pursuing the Herbalife business opportunity;

10. Whether the Defendant failed to disclose that President's Team members built their downlines by using now banned methods;

11. Whether the Featured Speakers "stacked" their downlines with empty proxies to facilitate their top-down manipulation of the compensation scheme;

12. Whether Defendant failed to disclose that the Featured Speakers stacked their downlines with empty proxies to facilitate their top-down manipulation of the compensation scheme;

13. Whether Defendant fraudulently represented that qualifying for, and attending, events was the key to success in the Herbalife business opportunity;

14. Whether Herbalife and the Featured Speakers used the Circle of Success to misrepresent that the children and family members of the President's Team had achieved success through the Circle of Success;

15. Whether Defendant knowingly presented financial success testimonials from people who were not having financial success;

16. Whether Defendant sufficiently corroborates the claims made by the Featured Speakers at Circle of Success events;

62

17. Whether Herbalife's disclaimers were legally insufficient given the net impression created by the Circle of Success, and the explicit, intentional disavowal by Herbalife and the Featured Speakers of the substance of those disclaimers;

18. Whether the Circle of Success events were inherently fraudulent and/or exploitative;

19. Whether Herbalife's and the Featured Speakers' coordinated sales and marketing of the Circle of Success is inherently fraudulent and/or exploitative;

20. Whether the Defendant took affirmative actions to fraudulently conceal the harm from the Class;

21. Whether Herbalife misrepresented material facts by presenting false information, and/or omitting material information it had a duty to disclose, concerning the Circle of Success event cycle to the Plaintiffs, including but not limited to misrepresenting that attending all Circle of Success events would guarantee success, omitting the material fact that Plaintiffs could not succeed simply by attending events, and omitting the material fact that Featured Speakers achieved "success" by means other than those represented to the Plaintiffs;

22. Whether Herbalife knew or should have known that these representations were false;

23. Whether Herbalife's misrepresentations caused injury to the Plaintiffs;

24. Whether Plaintiffs' reliance on Herbalife Defendant's misrepresentations was reasonable;

25. Whether members of the public are likely to be deceived by Herbalife's representations regarding the Circle of Success;

63

26. Whether a reasonable consumer acting reasonably is likely to be deceived by Herbalife's representations regarding the Circle of Success;

27. Whether Plaintiffs and Class members are entitled to damages ascertainable by common proof and methods of proof;

28. The proper measure of damages for Herbalife's violations of law.

199.   These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual class members. These questions are susceptible to common proof and methods of proof because Herbalife's pattern of activity was consistent among Plaintiffs and Class members. Herbalife and the Featured Speakers used standardized, coordinated methods and sales materials to deceive the Plaintiffs. Plaintiffs' allegations, if proven, will necessarily prove harm to the Class.

200.   Plaintiffs' claims are typical of the Class in that Plaintiffs suffered monetary damages attending Circle of Success events after Defendant represented that such purchases were required to have success with the Herbalife opportunity. Defendant used the same and/or substantially similar, false marketing materials and implemented the same and/or substantially similar manipulative tactics to exploit the Plaintiffs' and the Class members' inferior informational position.

201.   Plaintiffs will fairly and adequately represent the interests of the Class, in that Plaintiffs' interests are fully aligned with those of the Class. Plaintiffs were all damaged in the same or similar manner, by the same or similar methods, used by

64

Defendant to injure the Class. Plaintiffs have retained counsel who is experienced and skilled in complex class-action litigation.

202.   A class action is superior to other methods for the fair and efficient adjudication of the controversy given that the size of the Class makes joinder of all Class members a practical impossibility.

203.   Class action treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort, evidence, and expense that a multitude of individual actions would engender. The issues in this case are amenable to class resolution.

204.   Most Circle of Success participants are people of average means and could not afford to bring individual actions against Herbalife. Denial of class treatment in this case would likely deny numerous Class members a remedy and the opportunity to be heard.

205.   The class action would be manageable because it presents a limited set of causes and targets a single coordinated enterprise; with common key issues, documents, witnesses and experts, all, or a majority of which are susceptible to treatment on a class basis in a single forum.

206.   California substantive law can be reasonably applied to all Plaintiff and Class members' claims because:

- Herbalife's headquarters are in Los Angeles;
- Herbalife's distributor agreements select California substantive law;
- Featured Speakers from California play a critical role in the Circle of Success enterprise;
- A substantial amount of the relevant conduct has taken place in California.

207.   Alternatively, Plaintiffs' state law claims are readily susceptible to Class treatment by categorization into cohesive subclasses based on similarities in state laws that would otherwise apply.

## CAUSES OF ACTION

### COUNT I: CONDUCTING THE AFFAIRS OF A RACKETEERING ENTERPRISE – RICO 18 U.S.C. § 1962(C)

208.   Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

209.   The Defendant violated RICO and Plaintiffs were injured as a result.

210.   The Defendant is a "person" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. Section 1961(3).

211.   The Defendant violated 18 U.S.C. § 1962(c) by the acts described in the preceding paragraphs and as further described below.

212.   The Circle of Success is a continuous and continuing association-in-fact enterprise consisting of Herbalife, the Featured Speakers (approximately 100 leadership level members of its President's Team), and the business entities owned and operated by the Featured Speakers. The modern formulation of the Circle of

66

Success began in 2009 when Herbalife relinquished "ownership" of the STS level event to members of "the leadership."

213.   The Circle of Success produces and sells expensive monthly events whose primary purpose is to:

- disseminate misleading and fraudulent income claims
- recruit new members into the fraudulent business opportunity scheme
- increase the investment and engagement of those already ensnared in the scheme

214.   The Circle of Success has a presence in most states, and it plays a central role in the business model of a multi-billion dollar publicly traded company. Herbalife and Featured Speakers actively participate in, and promote, this fraudulent enterprise across the several states. The enterprise is engaging in, and affecting, interstate commerce.

215.   Herbalife and the Featured Speakers jointly conduct, manage, and control the affairs of the Circle of Success enterprise.

216.   The Featured Speakers are organized into regional hierarchies and closely control who appears on the Circle of Success stage in their own regions. Featured Speakers continually endeavor to expand the enterprise into new markets. They set the "qualification" price for their local events and present themselves as the "special guest" speakers.

217.   Herbalife controls the event calendar, slotting the local STS events in

67

around its own schedule of larger corporate sponsored events. Herbalife dictates a standardized curriculum for Circle of Success events and controls the many trademarks used in the "approved" presentations. Herbalife lays out a to-the-minute STS agenda and designs and dictates standardized event agendas for all corporate sponsored events.

218.   Herbalife and the Featured Speakers jointly affect the strategic direction of the Circle of Success enterprise through regular meetings of the Strategy & Planning Committee and the Event Committee; these committees are made up of top-level distributors and various Herbalife corporate employees and executives.

219.   Defendant Herbalife and the Featured Speakers jointly decided that Herbalife would relinquish ownership of the STS in order to reinvigorate recruiting, retention, and participation in the North American market.

220.   The Circle of Success is a vehicle utilized by Defendant to carry out a pattern of racketeering activity over a protracted period. Herbalife engaged in a pattern of racketeering activity by continuously transmitting and causing others to transmit, by means of the mails and wires in interstate commerce, writings, signs, signals, pictures and sounds, all in furtherance of, and for the purposes of executing a scheme or artifice to defraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

221.   With these acts, Defendant and the Featured Speakers have collectively

persuaded tens of thousands of victims to invest substantial sums into attending events which are held out as the secret to becoming financially successful in a fraudulent scheme to which Defendants know financial success is not possible.

222.   Herbalife has a duty to disclose that increased event attendance does not lead to increased success in Herbalife, and/or that Herbalife is unaware of any correlation between a distributor's event attendance and financial success.

223.   The continuous predicate acts of mail and wire fraud are related because they have the same or similar purpose, they target the same victims, and they have the same result: hundreds of millions of dollars flowing from the putative Class into the coffers of Herbalife and its top few President's Team distributors.

224.   The acts complained of herein project into the future with a threat of repetition as the Circle of Success continues its nationwide operations unabated.

225.   As a direct and proximate result of the Defendant's pattern of racketeering activity, Plaintiff Class was injured in their business and property. Each Plaintiff was induced — by reason of Defendant's misrepresentations, omissions, and blatant untruths — to surrender valuable consideration in order to participate in the inherently fraudulent scheme promoted by Herbalife's racketeering enterprise.

WHEREFORE, as to Count I, Plaintiffs demand that judgment be entered against the Defendant in favor of Plaintiffs and the Class members as follows:

69

1. Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

2. Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs;

3. Granting such further relief as this Court deems just and proper.

## COUNT II: CONSPIRACY TO CONDUCT THE AFFAIRS OF A RACKETEERING ENTERPRISE – 18 U.S.C. § 1962(D)

226. Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

227. Defendant has agreed and conspired to violate 18 U.S.C. § 1962(c) as set forth above in violation of 18 U.S.C. § 1962(d). Herbalife and the Featured Speakers have intentionally conspired and agreed to directly, and indirectly, conduct and participate in the conduct of the affairs of the Circle of Success enterprise through a pattern of racketeering activity.

228. Herbalife knew that its predicate acts of mail and wire fraud were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme to defraud hopeful business opportunity participants.

229. As a direct and proximate result of Defendant's conspiracy, and the multiple overt acts taken by Defendant in furtherance of that conspiracy, Plaintiffs have been injured in their business and property. Plaintiffs invested substantial sums

of time and money qualifying for, and attending, fraudulent Circle of Success events.

WHEREFORE, as to Count II, Plaintiffs demand that judgment be entered against Defendant in favor of Plaintiffs and the Class members as follows:

1. Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;
2. Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs;
3. Granting such further relief as this Court deems just and proper.

## COUNT III: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW — CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

230.   Plaintiffs incorporate by reference and reallege all allegations in the above paragraphs.

231.   Plaintiffs and Herbalife are each "persons" as defined by Cal. Bus. & Prof. Code § 17201.

232.   Herbalife's operation of the Circle of Success enterprise includes intentional misrepresentations, material omissions, and aggressive sales tactics which constitute unlawful, unfair, and fraudulent conduct under the UCL.

233.   Plaintiffs were exposed to, and influenced by, Herbalife's standardized messaging, emanating from California, regarding the essential nature of the Circle of Success over a protracted period.

71

234.   Plaintiffs and putative Class members each suffered economic injury directly resultant of Herbalife's unlawful, unfair, and fraudulent conduct.

235.   At Circle of Success events, Herbalife materially misrepresents: i) the cost associated with pursuing the Herbalife business opportunity scheme, ii) the likelihood of achieving substantial success, iii) the manner in which those who have been successful in the scheme have achieved that success, iv) the value to the participant of "attending every event" and "qualifying for everything."

236.   Herbalife offers convincing social proof of its legitimacy:

- Hiring a former U.S. Surgeon General
- Hiring a former FTC commissioner
- Hiring a Nobel Prize winner
- Hiring former Olympic athletes
- Associating with a former U.S. Secretary of State
- Sponsoring some of the world's most famous athletes

237.   Herbalife's misrepresentations regarding the Circle of Success are fraudulent because an ordinary consumer acting reasonably under the circumstances might be convinced, as Plaintiffs were here, that the Circle of Success could be utilized to achieve success in the Herbalife business opportunity — as Herbalife and the Featured Speakers continuously claim.

238.   Herbalife's misrepresentations regarding the Circle of Success are unfair because misrepresenting that a series of repetitive and manipulative events are the secret to having success in the business opportunity offered by a multi-billion

dollar publicly traded company offends established public policy, is immoral, unethical, oppressive, unscrupulous and is substantially injurious to consumers. The substantial harm caused to Plaintiffs and consumers by these representations greatly outweighs the utility of allowing Defendant to continually misrepresent the possibilities and probabilities of achieving meaningful financial success pursuing the Herbalife business opportunity.

239.   Herbalife's misrepresentations regarding the Circle of Success are unlawful because they violate 18 U.S.C. § 1341 and 1343's prohibitions against mail and wire fraud; violate 18 U.S.C. § 1962's prohibitions against racketeering; and violate Califorina's prohibitions against false and misleading advertising codified at Cal. Bus. & Prof. Code §§ 17500 *et seq.*

WHEREFORE, as to Count III, Plaintiffs demand that judgment be entered against Herbalife and in favor of Plaintiffs and the Class members as follows:

1.  Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

2.  Awarding Plaintiffs and the Class restitution for their losses in an amount to be determined at trial;

3.  Enjoining Herbalife from continuing to operate the Circle of Success in the manner described herein;

4.  Granting such further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENT MISREPRESENTATION

240.   Plaintiffs incorporate by reference and reallege all allegations in the

73

above paragraphs.

241.   Defendant misrepresented material facts and omitted material information when presenting the Circle of Success to Plaintiffs. These misrepresentations include that regular attendance of Circle of Success events would guarantee success; omitting the material fact that Plaintiffs could not succeed simply by "plugging in" to the event system as claimed by Herbalife and the Featured Speakers, and omitting the material fact that the Featured Speakers achieved their "success" by means other than those represented to the Plaintiffs at Circle of Success events.

242.   Herbalife had — and has — no reasonable grounds to believe that their representations regarding the Circle of Success are true.

243.   Plaintiffs relied on the representations made by Herbalife at Circle of Success events and were harmed when they expended substantial money, time, effort attending those events.

WHEREFORE, as to Count IV, Plaintiffs demand that judgment be entered against Herbalife in favor of Plaintiffs and the Class members as follows:

1.   Determining that this action is a proper class action and certifying an appropriate plaintiff Class pursuant to Fed. R. Civ. P. 23;

2.   Awarding Plaintiffs and the Class recoverable damages in an amount to be determined at trial, including compensatory and actual damages, prejudgment interest, post-judgment interest, and costs;

74

3.  Granting such further relief as this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury as to all issues so triable.

DATED:  November 12, 2019          Respectfully submitted,

Mark Migdal & Hayden

By:  */s/ Etan Mark*
     Etan Mark

AND

Jason Jones, Esq.
Ohio Bar No. 0095384
jason@jonesatlaw.com

Attorneys for Plaintiffs Jeff Rodgers,
Patricia Rodgers, Jennifer Ribalta, and
Izaar Valdez

75

## <u>SERVICE LIST</u>

Mark T. Drooks, Esq.
mdrooks@birdmarella.com
Paul S. Chan, Esq.
pchan@birdmarella.com
Gopi K. Panchapakesan, Esq.
gpanchapakesan@birdmarella.com
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

*Attorneys for Defendants Herbalife Nutrition Ltd. (fka Herbalife Ltd.); Herbalife International, Inc.; and Herbalife International of America, Inc.*

PLAINTIFFS' AMENDED COMPLAINT