Mark T. Drooks – State Bar No. 123561
  mdrooks@birdmarella.com
Paul S. Chan – State Bar No. 183406
  pchan@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Herbalife
International of America, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HERBALIFE LTD., *et al.*, <br><br> Defendants. | CASE NO. 2:18-cv-07480-JAK (MRWx) <br><br> [Related Case 2:13-cv-02488-BRO-RZ] <br><br> **HERBALIFE'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT** <br><br> Date:   March 9, 2020 <br> Time:   8:30 A.M. <br> Crtrm.:   10B <br><br> Assigned to Hon. John A. Kronstadt |

3618872.2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 9, 2020 at 8:30 A.M., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable John A. Kronstadt, United States District Judge for the Central District of California, Western Division, located at 350 W. First Street, Los Angeles, California 90012, in Courtroom 10B, Defendant Herbalife International of America, Inc. ("Herbalife") will, and hereby does, move pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiffs Jeff Rodgers, Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez's Amended Complaint (the "Complaint").  The motion is based on the following grounds:

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Plaintiffs fail to state a claim upon which relief may be granted with respect to Count I (conducting the affairs of a civil RICO enterprise) and Count II (conspiracy to violate civil RICO) because Plaintiffs fail to plead (a) the underlying fraud allegations with particularity and (b) that the alleged predicate acts proximately caused their losses.

- Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Plaintiffs fail to state a claim upon which relief may be granted with respect to Count III (violation of California's Unfair Competition Law) and Count IV (negligent misrepresentation) because they fail to plead the underlying fraud allegations with particularity.

The motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings on file, and such other evidence and argument as the Court may receive.

Pursuant to Local Rule 7-3, counsel for Herbalife apprised Plaintiffs' counsel of the bases for its motion on November 18, 2019, and attempted to meet and confer with Plaintiffs' counsel on multiple occasions.  Plaintiffs never expressed their availability to meet and confer.

1  DATED:  November 26, 2019

Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:      */s/ Mark T. Drooks*
Mark T. Drooks
Attorneys for Defendant Herbalife
International of America, Inc.

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................... 1

II.   RELEVANT BACKGROUND .................................................................. 2

    A.   Plaintiffs' Original Complaint .......................................................... 2

    B.   The Court's Order Dismissing Plaintiffs' Original Complaint .............. 3

    C.   Plaintiffs' Amended Complaint ........................................................ 4

        1.   The Amended Complaint Lacks Allegations That Tie Herbalife to the Alleged Conduct of the Featured Speakers. ...................................................................................... 4

        2.   Plaintiffs' New Allegations Against Herbalife Are Contradicted by the Amended Complaint's Own Exhibit ........... 5

III.  ARGUMENT ............................................................................................ 6

    A.   Plaintiffs' RICO Claims Fail. .......................................................... 6

        1.   The Amended Complaint Fails to Plead the Underlying Fraud with Particularity. ..................................................... 6

            a.   Rule 9(b) Applies to Plaintiffs' RICO Claims. ................ 6

            b.   Plaintiffs Fail to Plead with Specificity Herbalife's Participation in the Featured Speakers' Alleged Misrepresentations ............................................................ 7

            c.   The Amended Complaint Does Not Even Address the Allegations That the Court Found to Be Deficient Under Rule 9(b). ................................................ 9

            d.   Plaintiffs' New Allegations Regarding Herbalife's Promotion of Events Are Insufficient Under Rule 9(b). ...................................................................... 10

            e.   Plaintiffs' Theory of Fraud Is Contradicted by Their Own Allegations. ................................................... 12

        2.   The Amended Complaint Does Not Plead That the Alleged Predicate Acts Proximately Caused Plaintiffs' Losses ..................................................................................... 13

            a.   RICO's Proximate Causation Requirement Is Stringent. ....................................................................... 13

            b.   Plaintiffs' Own Allegations Demonstrate That RICO's Proximate Causation Requirement Cannot Be Met Here. ................................................................. 14

    3. Plaintiffs' RICO Conspiracy Claim Fails....................................17

  B. Plaintiffs' Claim for Negligent Misrepresentation Fails. .....................17

  C. Plaintiffs' Claim Under California's Unfair Competition Law
    Fails for the Same Reasons. ....................................................................18

  D. The Amended Complaint Should Be Dismissed Without Leave
    to Amend..................................................................................................19

IV. CONCLUSION ......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ...................................................................................... 15, 17

*Ascon Properties, Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989) ............................................................................. 19

*Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) ................................................................ 14, 16, 17

*Big O Relief v. Cty. of Kern*,
    No. 117CV01566LJOBAM, 2018 WL 1210976 (E.D. Cal. Mar. 8,
    2018) .................................................................................................................. 12

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) .............................................................................. 8

*Cty. of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011) .............................................................. 10

*Curry v. Yelp Inc.*,
    875 F.3d 1219 (9th Cir. 2017) ............................................................................. 19

*DeSoto v. Condon*,
    No. SACV08514AHSMLGX, 2008 WL 11338233 (C.D. Cal.
    July 18, 2008) .................................................................................................... 11

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019) ................................................ 14, 15, 16, 17

*Gintowt v. TL Ventures*,
    226 F. Supp. 2d 672 (E.D. Pa. 2002) .................................................................. 11

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) .............................................................. 17

*Gustafson v. BAC Home Loans Servicing, LP*,
    No. SACV 11-915-JST ANX, 2012 WL 7071488 (C.D. Cal.
    Dec. 26, 2012) .................................................................................................. 13

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010) ................................................................................. 13, 14

*Henderson v. J.M. Smucker Co.*,
    No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *2 (C.D. Cal.
    Mar. 17, 2011) ............................................................................................ 11

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ...................................................................... 17

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ........................................................................ 6

*Matthews v. San Diego Cty. Bd. of Supervisors*,
    No. 3:18-CV-711-GPC-NLS, 2019 WL 4039651 (S.D. Cal.
    Aug. 27, 2019) ............................................................................................. 19

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ................................................................................ 18

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) .................................................................... 6, 7

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275
    F.3d 1187 (9th Cir. 2001) .............................................................................. 8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................... 6, 7, 8, 18

*Titan Glob. LLC v. Organo Gold Int'l, Inc.*,
    No. 12-CV-2104-LHK, 2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) ............. 17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, & Prod. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ......................................................... 6

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................... 18

**Statutes**

18 U.S.C. § 1962(c) ............................................................................................ 4

18 U.S.C. § 1962(d) ........................................................................................... 4

Cal. Bus. & Prof. Code § 17200, et seq..............................................................2, 3

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Plaintiffs ignore the defects observed by the Court in its October 22, 2019

4  Order (the "Order").  The Order dismissed the original complaint because Plaintiffs

5  had not pled with specificity any fraudulent actions taken by Herbalife, as opposed

6  to the actions taken by the 44 "Florida Defendants."  The Amended Complaint

7  instead merely eliminates two of the three Herbalife defendants and re-brands the

8  Florida Defendants as "Featured Speakers"—an undefined group of about 100 of

9  Herbalife's top distributors.  These cosmetic changes do not fix anything.  Having

10 had over two years to plead sufficient claims against Herbalife—and over a year of

11 discovery to investigate those alleged claims—the Amended Complaint makes

12 unmistakably clear that there is no set of facts under which Herbalife could be liable

13 for these individual Plaintiffs' purported losses.

14       Plaintiffs' RICO claims fail for two reasons.  First, the Amended Complaint

15 does not plead with particularity Herbalife's role in the underlying alleged fraud—

16 namely, the purported failure of unidentified Featured Speakers to disclose at events

17 that they did not achieve success through event attendance, but rather did so through

18 illegitimate practices.  That Herbalife may have promoted some of the events at

19 which these speakers appeared does not establish fraud under Rule 9(b).  Among

20 other things, the Amended Complaint does not even specify which Featured

21 Speakers engaged in any banned practices, the specific events at which these

22 Featured Speakers failed to make any necessary disclosures, Herbalife's knowledge

23 that these Featured Speakers made the alleged false statements, or Herbalife's

24 purported participation in that conduct.  Not only does the Amended Complaint

25 force the Court and Herbalife to connect the dots—which is itself a defect—it does

26 not even allege the dots required under Rule 9(b).

27       Second, Plaintiffs fail to plead under RICO that their alleged losses—event

28 expenditures—were proximately caused by the alleged predicate acts, Herbalife's

promotion of events. RICO's proximate causation requirement is stringent; that Plaintiffs would not have attended events "but for" Herbalife's promotion of them is insufficient. Plaintiffs also must allege that Herbalife's promotion of events—as opposed to the conduct and representations of third parties—directly caused their injuries; they cannot and do not do so. Similarly, implicit in Plaintiffs' RICO claims is that their investment in events did not pay off because they did not profit from the Herbalife business opportunity. But there are multiple factors that could have contributed to their failure, like their sales skills, their business inexperience, or local demand for Herbalife product. Plaintiffs cannot plausibly allege that the promotion of events—and no other factor—directly caused their business failures. Therefore, under well-settled law, Plaintiffs cannot plead proximate causation under civil RICO.

Plaintiffs' state-law claims fail as well. Their claim for negligent misrepresentation is not pled with the requisite specificity under Rule 9(b). Further, Plaintiffs fail to specify which representations made by Herbalife—as opposed to those made by third parties—they relied upon in attending events. For the same reasons, Plaintiffs claim under California's Unfair Competition Law ("UCL")— which is premised on the same alleged misrepresentations—is insufficiently pled.

The Court should dismiss Plaintiffs' claims with prejudice. Further amendment would be futile here. Despite conducting extensive discovery, Plaintiffs have not pled sufficient claims against Herbalife. There is no reason to believe that another round of pleading would remedy the deficiencies inherent in their claims.

## II.     RELEVANT BACKGROUND

### A.     Plaintiffs' Original Complaint

Plaintiffs originally sued three Herbalife entities and the 44 Florida Defendants in the District Court for the Southern District of Florida on September 18, 2017. Dkt. 1. The claims of four of the original plaintiffs, who had joined Herbalife before 2009 or after 2013, were compelled to arbitration. Dkt. 106.

The claims of the remaining four plaintiffs, Patricia Rodgers, Jeff Rodgers, Jennifer Ribalta, and Izaar Valdez, were transferred to this Court pursuant to valid forum selection clauses.  *Id.*  Plaintiffs' claims against the Florida Defendants remain in the Southern District of Florida.  *Id.*  That case has been stayed pending an appeal of the District Court's order denying the Florida Defendants' motion to compel arbitration.

## B.   The Court's Order Dismissing Plaintiffs' Original Complaint

Herbalife moved to dismiss the original complaint on September 28, 2018. Dkt. 142.  The Court heard Herbalife's motion on February 11, 2019, and took the matter under submission.  Dkt. 163.  On October 22, 2019, the Court granted Herbalife's motion, without prejudice as to the filing of an amended complaint. Dkt. 196.  The Court held that Plaintiffs had failed to plead their claims with particularity under Rule 9(b).  *See id.* at 10, 13-15.

As to Plaintiffs' RICO claims, the Court held that "[t]he Complaint does not include allegations as to any specific actions taken by wire by any single Herbalife Defendant," as opposed to the Florida Defendants.  *Id.* at 9.  The Court further observed that "[a]ctions that could be attributed to one or more of the Herbalife Defendants are alleged as to either or all defendants, *inclusive of the claims against those Individual Defendants* that were not transferred to this District . . . ."  *Id.* at 10 (emphasis added) (citing Dkt. 1 at ¶¶ 96-97).  For example, the original complaint alleged that "a flier for an event 'was originally published to Defendant Herbalife's various websites,' with 'hopeful distributors repackag[ing] the flier and pass[ing] it along through the wires" without specifying "which, if any, of the Individual or Herbalife Defendants published something on the websites, or to which websites." *Id.* at 10 (quoting Dkt. 1 at ¶¶ 98-100); *see also id.* ("Plaintiffs also cite an internet advertisement for an event that 'was posted by new president[']s team member, Bill Garvey & reposted by Pres Team Lori Baker.") (quoting Dkt. 1-7; Dkt. 1 at ¶¶ 84-85).  The Court concluded that Plaintiffs had not alleged Herbalife's "role in these actions."  *Id.*

1    The Court found that Plaintiffs' state law claims also are subject to Rule 9(b)
2  and suffered from the same pleading defect as their RICO claims. *Id*. at 13-15
3  ("[T]he allegations against Herbalife are stated in general terms" and are
4  "insufficient for the same reasons stated . . . with respect to the RICO fraud claim.")
5  (citing Dkt. 1 at ¶ 372).

6    **C.    Plaintiffs' Amended Complaint**

7    The Amended Complaint asserts claims only against Herbalife International
8  of America, Inc. ("Herbalife"), specifically RICO claims under 18 U.S.C. § 1962(c)
9  (conducting the affairs of a racketeering enterprise) and § 1962(d) (conspiracy), a
10  claim under the UCL, and a claim for negligent misrepresentation.  Plaintiffs no
11  longer allege a claim for unjust enrichment.  The Amended Complaint also no
12  longer refers to the 44 Florida Defendants.  Instead, it alleges the existence of
13  "Featured Speakers," an undefined group of Herbalife's "most active and highest-
14  ranking members," of whom Plaintiffs estimate there are 100 and with whom
15  Plaintiffs contend Herbalife conspired to defraud event attendees.  Dkt. 202 at ¶¶ 6,
16  212.  Plaintiffs allege that they themselves ultimately were not successful in
17  pursuing the Herbalife business opportunity, despite attending events. *See, e.g, id*.
18  at ¶¶ 4-5, 9-10, 173-174, 181.

19    **1.    The Amended Complaint Lacks Allegations That Tie**
20    **Herbalife to the Alleged Conduct of the Featured Speakers.**

21    The central allegation of the Amended Complaint is that some (but not all)
22  Featured Speakers contend they achieved success by attending both corporate and
23  distributor-run events, without disclosing to event attendees that their success is
24  "largely attributable" to their alleged use of "banned methods."  Dkt. 202 at ¶ 6, 21,
25  27-50.  But Plaintiffs do not specify which "Featured Speakers" engaged in these
26  alleged methods or the events at which they failed to disclose their use of these
27  methods. *See, e.g.*, at ¶ 40 (alleging merely that "high volume cross-border
28  transactions presents the *opportunity* for top distributors to generate illegal profits

impossible for new recruits.") (emphasis added); ¶ 42 ("*Certain* Presidents' Team members have profited greatly from an undisclosed currency arbitrage scheme.") (emphasis added).  And while the Amended Complaint generally alleges that Herbalife "promotes" and "parade[s] around the country" some of these speakers, it pleads no facts suggesting that Herbalife had any role in either (a) their alleged use of certain illegitimate business practices or (b) their alleged failure to disclose their use of these practices at events.  *Id.* at ¶¶ 22, 27.

### 2.   Plaintiffs' New Allegations Against Herbalife Are Contradicted by the Amended Complaint's Own Exhibit.

The Amended Complaint references and attaches Herbalife's speaker guidelines, alleging that Herbalife requires any income claims made at events to be substantiated.  *Id.* at ¶ 65.  Plaintiffs' allegations regarding Herbalife's speaker guidelines contradict their central theory that Herbalife deliberately defrauded event-goers.  The guidelines themselves, attached as Exhibit 5 to the Amended Complaint, note that "[p]resentations must include income . . . disclaimers as required" and advise speakers to "keep lifestyle photos to a minimum" and that any such photos "must include the income disclaimer."  Dkt. 202-6 at 2-3.  The guidelines further provide that speakers who do not timely submit their presentations for review "risk not being permitted to present."  *Id.*  Although Plaintiffs allege that the guidelines are not enforced in connection with distributor-run Success Training Seminars ("STS"), "because of the sheer 'number of events,'" (*id.* at ¶ 66), Plaintiffs do not challenge the guidelines' applicability to corporate events.  Plaintiffs also allege that Herbalife provides certain "core training materials" to Featured Speakers who run STS events.  *Id.*  at ¶ 79.  Importantly, Plaintiffs do not allege that anything about these training materials is fraudulent.

The Amended Complaint further alleges that Herbalife promoted certain events through its website and marketing mailings and emails.  *Id.* at ¶¶ 98-114.  The specific examples cited in the Amended Complaint, state, among other things:

1   "Sharpen your skills and take your team to the next level," "All things Herbalife

2   Extravaganza just a few clicks away," "Ignite Your Business," and that "the

3   event . . . will help you build your future." *Id.* at ¶¶ 102, 103, 105, 107.  Plaintiffs

4   do not allege that these benign statements are false.

5   **III.   ARGUMENT**

6      **A.    Plaintiffs' RICO Claims Fail.**

7         **1.    The Amended Complaint Fails to Plead the Underlying**

8               **Fraud with Particularity.**

9            **a.    Rule 9(b) Applies to Plaintiffs' RICO Claims.**

10      Rule 9(b) applies to the alleged predicate acts of wire fraud and mail fraud.

11   *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

12   *Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) ("In the context of

13   RICO, Rule 9(b) requires that the Plaintiffs 'detail with particularity the time, place,

14   and manner of each act of fraud, plus the role of each defendant in each scheme.'")

15   (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

16   (9th Cir. 1991)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

17   (Rule 9(b) "requires more specificity including an account of the time, place, and

18   specific content of the false representations as well as the identities of the parties to

19   the misrepresentations.").[1]

20      As to wire fraud, a RICO plaintiff must allege "(1) the formation of a scheme

21   or artifice to defraud; (2) use of the United States wires or causing a use of the

22   United States wires in furtherance of the scheme; and (3) specific intent to deceive

23   or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

24   1400 (9th Cir. 1986).  The requirements for mail fraud are identical, the only

25   difference being that a plaintiff must allege the use of the mails in furtherance of the

26

27   _____

28   [1]   Unless otherwise noted, internal citations and quotation marks have been
     omitted.

1   alleged scheme.  *Id.*

2                      **b.**        **Plaintiffs Fail to Plead with Specificity Herbalife's**

3                              **Participation in the Featured Speakers' Alleged**

4                              **Misrepresentations.**

5            Plaintiffs do not plead with specificity under Rule 9(b) what Herbalife's

6   purported role is with respect to the underlying alleged fraud—that so-called

7   Featured Speakers did not achieve success through event attendance, but represented

8   otherwise to event attendees.  *See, e.g.,* Dkt. 202 at ¶¶ 21, 30.  Instead, Plaintiffs

9   allege, in cursory fashion, that Herbalife "encourages" these distributors to "promote

10   the events;" has "actual knowledge" that the event-related claims made by the

11   Featured Speakers are false; and "promotes a steady stream of" such speakers and

12   "parade[s]" them "around the country." *Id.* at ¶¶ 2, 21, 22, 27.  These conclusory

13   allegations do not come close to meeting Rule 9(b)'s heightened pleading standard.

14   The Amended Complaint falls into the same trap as the original complaint—

15   impermissibly attributing to Herbalife representations made by third parties

16   (including the Florida Defendants), without specifically alleging that Herbalife

17   participated in those representations.  Dkt. 196 at 10.[2]

18            *Swartz* is instructive here.  There, the complaint was "shot through with

19   general allegations that the 'defendants' engaged in fraudulent conduct but attributes

20   specific misconduct only to" certain other defendants.  *Swartz*, 476 F.3d at 765.  The

21   Ninth Circuit affirmed the dismissal of plaintiff's fraud claim against the defendants

22   in question, holding that "[c]onclusory allegations that [defendants] 'knew that [the

23   other defendants] were making . . . false statements . . . and thus were acting in

24   concert with [the other defendants]' and 'were acting as agents [of the other

25   defendants]' and were 'active participants in the conspiracy' without any stated

26   

27   ───────────────────
[2]   In any event, Plaintiffs do not even allege that the representations made to them

28   by certain Featured Speakers were false.  *See, e.g.*, Dkt. 202 at ¶¶ 164, 166, 176, 182, 184, 188-89, 191.

factual basis are insufficient as a matter of law." *Id*.  Here too, the Amended Complaint does not allege—other than in conclusory terms—Herbalife's role in the Featured Speakers' alleged failure to disclose to event-goers their use of certain "banned" practices.

Further, the Amended Complaint's unworkably vague definition of "Featured Speakers" as Herbalife's "most active and highest-ranking members"—not all of whom are Florida Defendants or even identified by name—renders the alleged fraud that forms the basis for Plaintiffs' RICO claims totally indiscernible.  Who are the Featured Speakers?  Which alleged "banned" practices did each of them employ?[3] When and how did Herbalife become aware of each of these unnamed Featured Speakers' use of such practices?  At which events did the Featured Speakers fail to disclose their use of such practices?  When and how did Herbalife specifically promote the Featured Speakers who engaged in these practices?  When and how did Herbalife become aware of the Featured Speakers' alleged failure to disclose their use of such practices at events?  Even more generally, under what circumstances were these alleged misrepresentations made at what the Amended Complaint describes as "thousands" of events that occurred over the period that the plaintiffs have put at issue?  These are all essential questions that the Amended Complaint does not even attempt to answer.  *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just

---

[3]   The Amended Complaint makes outlandish and speculative claims of, among other things, money laundering and currency arbitrage, without alleging who, if anyone, actually engaged in these practices.  Dkt. 202 at ¶¶ 40-43.  These allegations should be rejected.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

deny that they have done anything wrong.").

### c. The Amended Complaint Does Not Even Address the Allegations That the Court Found to Be Deficient Under Rule 9(b).

As demonstrated by the below chart, Plaintiffs have not even fixed the original complaint's deficient allegations that the Court specifically identified in the Order.  *See* Dkt. 196 at 10.  The redlines in the right-hand column demonstrate that Plaintiffs made only cosmetic changes to these defective allegations:

| Allegation in Original Complaint | Allegation in Amended Complaint |
|---|---|
| "Defendants expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires via the social media accounts of event participants.  Each event flier published by Defendants generates thousands of clone publications in the months leading up to the event."  Dkt. 1 at ¶ 97; *see* Dkt. 196 at 10. | "~~Defendants~~ Herbalife and its Featured Speakers expect and encourage their Circle of Success promotional messages to be remixed and echoed across the wires via the social media accounts of event participants.  Each event flier published by ~~Defendants~~ Herbalife generates thousands of clone publications in the months leading up to the event."  Dkt. 202 at ¶ 120. |
| "For example, the flier for the October 3-5, 2014, LDW in Jacksonville was originally published to Defendant Herbalife's various websites.  Regional leadership then republished the flier over their event websites and social media feeds.  In the final step, hopeful distributors repackaged the flier and passed it along through the wires to their own social networks."  Dkt. 1 at ¶¶ 98-99; *see* Dkt. 196 at 10. | "For example, the flier for the October 3–5, 2014, LDW in Jacksonville was originally published to Defendant Herbalife's ~~various~~ event websites.  Regional leadership then republished the flier over their event websites and social media feeds.  In the final step, hopeful distributors repackaged the flier and passed it along through the wires to their own social networks."  Dkt. 202 at ¶¶ 121-122. |
| "Extravaganza is billed as 'the BIGGEST and MOST IMPORTANT event to attend' on the Circle of Success calendar."  Dkt. 1 at ¶ 84 (citing Dkt. 1-7); *see* Dkt. 196 at 10. | "Extravaganza is billed as 'the BIGGEST and MOST IMPORTANT event to attend' on the Circle of Success calendar."  Dkt. 202 at ¶ 91 (citing Dkt. 202-10) (the exhibit remains unchanged). |
| "Herbalife's STS system is owned and controlled by a web of Defendant | "Herbalife's STS system is owned and controlled by a web of ~~Defendant~~ |

| Allegation in Original Complaint | Allegation in Amended Complaint |
|---|---|
| connected entities.  There are currently more than sixty ever-changing U.S. based STS websites registered to various distributors.  Some of the site registrations are private or registered to mid-level proxies but many are registered to one of the President's Team members controlling a local area for Herbalife."  Dkt. 1 at ¶ 71. | ~~connected~~ entities.  There are currently more than sixty ever-changing U.S. based STS websites registered to various distributors. Some of the site registrations are private or registered to mid-level proxies, but many are registered to one of the President's Team members controlling a local area for Herbalife."  Dkt. 202 at ¶ 76. |

Merely changing the "Herbalife Defendants" to "Herbalife" or "Individual Defendants" to "Featured Speakers" (a loosely defined group that appears to include some, but not all, of the Florida Defendants) fails to address the Court's concerns that (1) actions that "could be attributed" to Herbalife also are alleged as to the re-branded "Featured Speakers" without distinguishing which actions were taken by which parties and (2) these allegations lack specificity as to "the time, place and method of transmission."  Dkt. 196 at 10.

### d.      Plaintiffs' New Allegations Regarding Herbalife's Promotion of Events Are Insufficient Under Rule 9(b).

The Amended Complaint's allegations regarding statements made by Herbalife on its website, in magazines, and through other media regarding events do not save its RICO (and other fraud-based) claims.  Those allegations indicate only that Herbalife promoted certain events with generic statements like, "Sharpen your skills," "Ignite Your Business," and "learn to build a more successful business." Dkt. 202 at ¶¶ 102, 103, 105.  Not only are statements like these puffery,[4] but the Amended Complaint fails to connect these benign statements to the Featured Speakers' alleged failure to disclose at events the manner in which they achieved

---

[4]    *See Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011) (puffery is characterized by "vague, exaggerated, generalized or highly subjective statements regarding a product or business which do not make specific claims.").

1   success.  *DeSoto v. Condon*, No. SACV08514AHSMLGX, 2008 WL 11338233, at

2   *7 (C.D. Cal. July 18, 2008) ("While plaintiffs' FAC sets forth certain dates,

3   amounts, and particular transactions between various individuals, the FAC fails to

4   allege the intent to engage in a scheme or outline a scheme to defraud in a manner

5   that allows the Court to draw the inference that the predicate acts show the existence

6   of a scheme furthered through mail and wire transactions."); *Gintowt v. TL*

7   *Ventures*, 226 F. Supp. 2d 672, 678 (E.D. Pa. 2002) (despite the complaint's

8   "extraordinary length," "even viewing together the many 'dots' of fraud alleged,

9   Plaintiff's Complaint . . . fails to connect those dots in the language and particulars

10  of RICO.").[5]

11         Further, the exhibits containing those innocuous statements confirm that they

12  were made only in connection with corporate events, like the Extravaganza and

13  Spectacular.  *See, e.g.*, Dkts. 202-12, 202-13, 202-14.  There are no specific

14  allegations, however, tying Herbalife to the alleged statements made by Featured

15  Speakers at or in connection with much more numerous distributor-run events, like

16  STSs.  *See, e.g.*, Dkt. 202 at ¶ 117 (failing to allege that Herbalife reviewed,

17  approved, or promoted the alleged testimonials contained in the referenced fliers);

18  ¶¶ 78, 80 (admitting that "top distributors" receive all of the revenues from STS

19  ticket sales and run the events themselves).  Plaintiffs also do not allege that

20  anything contained in the training materials Herbalife provides for such events is

21  fraudulent.  *Id.* at ¶ 79.  Nor do general allegations that Herbalife sometimes

22  "provides product and marketing" for STSs or that there is a "web" of unspecified

23  _____

24  [5]   Plaintiffs' references to statements made in *Herbalife Today* from July 2011 and
    June 2012 should be disregarded because they pre-date the relevant period under the

25  applicable statutes of limitations, the longest of which is RICO's four-year statute.
    Plaintiffs do not allege that their claims should be tolled under the delayed discovery

26  rule.  *See Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL

27  1050637, at *2 (C.D. Cal. Mar. 17, 2011) (requiring that a plaintiff plead specific
    facts justifying the application of the delayed discovery rule).

28

1   "entities" who own and control STSs satisfy Rule 9(b)'s heightened pleading

2   standard.  *Id*. at ¶¶ 76, 78.[6]

3           To the extent Plaintiffs' allegations of mail and wire fraud are premised on

4   a failure to disclose, they are insufficient for an additional reason.  The Amended

5   Complaint does not plead—other than in conclusory fashion—that Herbalife had

6   a fiduciary or statutory duty to make certain disclosures to Plaintiffs.  *See Big O*

7   *Relief v. Cty. of Kern*, No. 117CV01566LJOBAM, 2018 WL 1210976, at *6 (E.D.

8   Cal. Mar. 8, 2018) ("Absent an independent duty, such as a fiduciary duty or an

9   explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent

10  scheme."); Dkt. 202 at ¶ 222.

11                  **e.     Plaintiffs' Theory of Fraud Is Contradicted by Their**

12                          **Own Allegations.**

13          Plaintiffs central fraud allegation against Herbalife—that it promoted event

14  speakers who failed to disclose the manner in which they actually achieved

15  success—is directly contradicted by Plaintiffs' new allegation that Herbalife issues

16  speaker guidelines governing the accuracy of statements made at events.  Dkt. 202

17  at ¶¶ 64-66; Dkt. 202-6; *see Sprewell*, 266 F.3d at 988 (9th Cir.) (a court "need not .

18  . . accept as true allegations that contradict matters properly subject to judicial notice

19  or by exhibit.").  Those guidelines, attached as Exhibit 5 to the Amended Complaint,

20  expressly require event speakers to (1) provide detailed substantiation regarding

21  anticipated earnings claims and (2) include a disclaimer along with any such claims.

22  Dkt. 202-6 at 2-3.

23          Plaintiffs' fraud allegations collapse under the weight of their admission that

24  _____

25  [6]   The allegation that Herbalife circulated a presentation to certain speakers stating

26  that "my ability to grow a royalty check is completely dependent on my ability to
    get people to events" is a non-sequitur.  Dkt. 202 at ¶ 59.  That presentation says

27  nothing about the value of event *attendance*, as opposed to inviting others to attend
    events.  Plaintiffs do not contend that they suffered losses by virtue of inviting

28  others to attend events.

Herbalife has a policy in place to address the accuracy of the content presented by event speakers. *See Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 7071488, at *6 (C.D. Cal. Dec. 26, 2012) ("Plaintiffs are unable to state their fraud allegations with any particularity without contradicting what is expressly alleged in the TAC and included within the TAC's exhibits."). Plaintiffs' allegations about those guidelines only further demonstrate the insufficiency of their theory of fraud. Plaintiffs allege only that "Herbalife does not enforce these guidelines" because it does not require presentations made at STS events to be reviewed given the high volume of those events that take place each year. Dkt. 202 at ¶ 66. Herbalife's purported failure to consistently enforce its speaker guidelines, however, does not amount to a scheme to defraud under RICO. *See Gustafson*, 2012 WL at *6 ("A scheme to defraud requires 'an affirmative, material misrepresentation' or the nondisclosure of facts where there exists an independent duty to disclose.") (quoting *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986)).

### 2. The Amended Complaint Does Not Plead That the Alleged Predicate Acts Proximately Caused Plaintiffs' Losses.

#### a. RICO's Proximate Causation Requirement Is Stringent.

A civil RICO plaintiff "is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). The Ninth Circuit applies a three-factor test to determine whether an injury is "too remote" to allow recovery under RICO, specifically "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the

risk of multiple recoveries." *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).

> **b.      Plaintiffs' Own Allegations Demonstrate That RICO's Proximate Causation Requirement Cannot Be Met Here.**

At the most basic level, Plaintiffs do not allege that any predicate acts purportedly committed by Herbalife—namely, the promotion of events through their website and other media—proximately caused their losses. *See, e.g.*, Dkt. 202 at ¶¶ 102, 103, 105, 107, 109.  Plaintiffs instead allege that those losses—the amounts they spent attending events—resulted from the failure of certain event speakers to disclose the manner in which they earned money pursuing the business opportunity. *Id.* at ¶ 21, 27.  That Plaintiffs may not have attended those events "but for" Herbalife's promotion of them is not sufficient to establish proximate causation under RICO.  *See Hemi*, 559 U.S. at 9.

*Doe v. Trump Corp.*, 385 F. Supp. 3d 265 (S.D.N.Y. 2019) is instructive here. In *Trump*, the plaintiffs sought to represent a nationwide class of individuals who allegedly pursued multi-level marketing programs, including the "ACN Opportunity," as "independent business owners" ("IBO").  *Id.* at 271.  They alleged that "[k]ey to ACN's recruiting operation are small group events hosted by IBOs in their own homes or at local hotels and event spaces," as well as national conventions.  *Id.*  The plaintiffs alleged that senior ACN members told them they had to attend events to be successful, that they felt "substantial pressure to do so," and that they were "criticized and shunned" by senior members when they did not do so.  *Id.* at 272-73.  They also alleged that the defendants misled them into believing that the business opportunity "offered a reasonable probability of success" and that Trump "falsely represented" his reasons for supporting the opportunity, failing to disclose that he did so only because he was being paid to endorse it.  *Id.* Among other things, the plaintiffs sought as damages the expenses they incurred in

1    attending such events.  *Id*. at 272-73.

2          The Court dismissed the plaintiffs' RICO claims for failure to allege

3    proximate cause, holding that "[n]umerous intervening factors may account for

4    [p]laintiffs' inability to recover their investments," aside from defendant's conduct:

> Plaintiffs' lack of success could be attributable to the
> inherent challenges of multi-level marketing, Plaintiffs'
> capabilities as salespeople and the extent of Plaintiffs'
> existing networks to whom Plaintiffs could sell ACN
> products and recruit new IBOs.  The losses may also be
> attributable to the market for ACN products in the
> Plaintiffs' localities and ACN's business practices –
> legitimate or otherwise – separate from Defendants' role.
> These factors, contributing in whole or part to Plaintiffs'
> losses, make the question of Defendants' responsibility the
> sort of 'intricate, uncertain inquir[y]' that the proximate
> cause requirement is intended to avert.

13   *Id.* at 280 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006)).

14         The Court further observed that the conduct of third parties, namely those

15   who recruited Plaintiffs into the ACN opportunity and encouraged them to attend

16   events, "bears on the question of proximate cause" and further "attenuat[es] the link

17   between Defendants' conduct and Plaintiffs' losses."  *Id.* at 280-81.

18         The facts here are very similar to those in *Trump*.  Implicit in Plaintiffs'

19   allegations is that they did not recoup their investment in events through their

20   pursuit of the Herbalife business opportunity.  *See* Dkt. 202 at ¶ 4 ("The events are

21   pitched as the guaranteed pathway to attaining life changing financial success with

22   the multi-level marketing business opportunity sold by Defendant Herbalife.").  If

23   they had been successful, and the events they attended helped them successfully

24   pursue the business opportunity at a profit, then they would have no claim here.

25   Thus, like the plaintiffs in *Trump*, the Court must analyze the proximate causation

26   issue with reference to Plaintiffs "net loss[es]" rather than their "expenditures."

27   *Trump*, 385 F. Supp. 3d at 272.

28         As a result, the latter two factors that the Ninth Circuit considers in analyzing

proximate causation under RICO are dispositive here and require the dismissal of Plaintiffs' RICO claims.  First, "it will be difficult to ascertain the amount of [Plaintiffs'] damages attributable to [Herbalife's] wrongful conduct."  *Philip Morris*, 241 F.3d at 701.  Here, like in *Trump*, in order to "assess with accuracy the losses attributable to" Herbalife, "the factfinder would first need to determine the extent to which Plaintiffs' payments to [Herbalife and third-party distributors] . . . were induced by [Herbalife]," as opposed to third parties like the Featured Speakers. *Trump*, 385 F. Supp. 3d at 281.  Then, "after subtracting monies recouped [by Plaintiffs], the factfinder would need to reduce the loss further by the extent to which Plaintiffs' inability to recover their costs was attributable to Plaintiffs' sales abilities and networks, [Herbalife and the Featured Speakers'] business practices, the demand for [Herbalife] products in Plaintiffs' localities, and the inherent difficulties of succeeding in multi-level marketing ventures, among other factors." *Id*.  This would be an unworkably complex analysis.

Further, like in *Trump*, Plaintiffs allege that they were convinced to attend events and pursue the business opportunity by third parties, including what appear to be private conversations Plaintiffs had with their "mentors."  *See, e.g.*, Dkt. 202 at ¶¶ 164, 166, 167, 170, 179, 182, 184, 188-191.  Plaintiffs also allege that distributors "remix[]" and "repackage[]" over social media innocuous fliers detailing the date, location, and price of a given event.  Dkt. 202 at ¶¶ 120-21; *see also, e.g.*, Dkt. 202 at ¶ 122 (alleging one such instance of distributor activity on social media), ¶ 126 (alleging that a Featured Speaker posted a "meme" on Facebook, which was then "shared more than sixty times."), ¶ 129 (alleging that a Featured Speaker posted a message to a "*private* Facebook group") (emphasis added), ¶ 154 (alleging 6,000 Instagram posts made by distributors).

That a factfinder would need to both (a) engage in a "complex assessment" to ascertain what portion of Plaintiffs' losses are attributable to their attendance at events, as opposed to other factors inherent in the business opportunity and

(b) disentangle who made the aforementioned representations, and what Herbalife's role was, if any, in those representations, "compels the conclusion that the [Amended Complaint] does not sufficiently plead proximate cause." *Anza*, 547 U.S. at 459; *Trump*, 385 F. Supp. 3d at 281; *see also Titan Glob. LLC v. Organo Gold Int'l, Inc.*, No. 12-CV-2104-LHK, 2012 WL 6019285, at *8 (N.D. Cal. Dec. 2, 2012) ("Even if Plaintiffs adequately allege the three purported acts of interstate wire fraud, it will be difficult to ascertain the amount of damages attributable to this wrongful conduct.").

Second, the court will "have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Philip Morris*, 241 F.3d at 701. Because Plaintiffs have made identical allegations and asserted identical claims against 44 distributors (some of whom are "Featured Speakers" here) in a case that is pending in the Southern District of Florida, there is no way to avoid the very type of "intricate, uncertain inquiries" that the "element of proximate causation . . . is meant to prevent." *Anza*, 547 U.S. at 460. In order to avoid the possibility that Plaintiffs seek multiple and duplicative recoveries in this case and in the Florida action, the Court must dismiss Plaintiffs' RICO claims.

### 3. Plaintiffs' RICO Conspiracy Claim Fails.

As the Court held in its Order, a failure to plead a substantive claim under RICO requires dismissal of the related conspiracy claim. *See* Dkt. 196 at 10; *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("The failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."). The Court must therefore dismiss the RICO conspiracy claim.

### B. Plaintiffs' Claim for Negligent Misrepresentation Fails.

The Court held that Plaintiffs' claim for negligent misrepresentation is subject to Rule 9(b)'s heightened pleading standard. *See* Dkt. 196 at 14-15; *see also Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("Claims for fraud and negligent misrepresentation must meet the heightened

1   pleading requirements of Rule 9(b).").  For the reasons discussed above, Plaintiffs

2   fail to plead their fraud allegations with specificity; therefore, their claim for

3   negligent misrepresentation must be dismissed.

4          Further, the Amended Complaint does not even plead *as to the named*

5   *Plaintiffs* the specific representations made by Herbalife that induced them to attend

6   events.  *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1089 n.2 (1993) ("Negligent

7   misrepresentation . . . requires plaintiffs to plead and prove *actual reliance* just as in

8   a claim for intentional misrepresentation.") (emphasis added).  Putting aside whether

9   the Amended Complaint adequately pleads representations that the class may have

10  relied upon (it does not), class-wide allegations are not a substitute for specific

11  allegations as to the four named  Plaintiffs.  As to the benign promotional materials

12  from Herbalife that Plaintiffs contend they received (*see* Dkt. 202 at ¶¶ 102, 103,

13  105, 107, 109), Plaintiffs do not even allege that they read those materials (or in the

14  case of Exhibit 14, attended the alleged conference call), attended the events being

15  promoted by those materials, or attended those events in reliance on the promotional

16  materials.  Their lack of actual reliance bars Plaintiffs' negligent misrepresentation

17  claim.

18         Plaintiffs' allegations that the Featured Speakers misrepresented the manner

19  in which they achieved success, without more, cannot form the basis for a negligent

20  misrepresentation claim against Herbalife.  *See Swartz*, 476 F.3d at 765.

21  **C.    Plaintiffs' Claim Under California's Unfair Competition Law Fails**

22  **for the Same Reasons.**

23         Plaintiffs' UCL claim fails because the underlying fraud is not sufficiently

24  pled.  First, the claim fails because the misrepresentations on which it is based are

25  not pled with specificity under Rule 9(b).  *See* Dkt. 196 at 13; *see also Vess v. Ciba-*

26  *Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in

27  this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to

28  state-law causes of action.").  Second, Plaintiffs also fail to specifically allege the

1    representations made by Herbalife on which they each relied in attending events.

2         **D.    The Amended Complaint Should Be Dismissed Without Leave to**

3              **Amend.**

4         A "district court's discretion to deny leave to amend is particularly broad

5    where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v.*

6    *Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  Further amendment would be

7    futile here for several reasons.

8         First, Plaintiffs bluntly failed to address the deficient allegations noted by the

9    Court in its Order.  *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017)

10   (affirming district court's dismissal of first amended complaint with prejudice,

11   noting that "[i]n the district court's first order dismissing Plaintiffs' complaint with

12   leave to amend, it pointed out deficiencies in Plaintiffs' pleadings of materiality,

13   falsity, loss causation, and scienter.  Despite these explicit warnings, Plaintiffs' first

14   amended complaint failed to remedy the deficiencies.").

15        Second, as discussed above, Plaintiffs "assertion of a fraudulent scheme is

16   irredeemably contradicted by" Herbalife's speaker guidelines, attached as an exhibit

17   to the Amended Complaint.  *Matthews v. San Diego Cty. Bd. of Supervisors*,

18   No. 3:18-CV-711-GPC-NLS, 2019 WL 4039651, at *10 (S.D. Cal. Aug. 27, 2019)

19   (finding futility in dismissing complaint with prejudice).

20        Third, having had over a year to conduct discovery, some of which is

21   referenced in the Amended Complaint, there is no reason to believe that there is any

22   additional information Plaintiffs possess that could be used to remedy their

23   insufficient allegations.

24        Ultimately, Plaintiffs effectively have had three opportunities to file a well-

25   pled complaint:  (1) over two years ago at the outset of the case; (2) over a year ago

26   when their claims against only Herbalife were transferred to this Court; and (3) after

27   the Court dismissed the original complaint without prejudice.  Plaintiffs should not

28   be afforded a fourth chance to amend their deficient allegations.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Herbalife respectfully urges the Court to grant its motion, and dismiss the Amended Complaint with prejudice.

DATED:  November 26, 2019          Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:      */s/ Mark T. Drooks*
—————————————————
Mark T. Drooks
Attorneys for Defendant Herbalife
International of America, Inc.