Mark T. Drooks – State Bar No. 123561
    mdrooks@birdmarella.com
Paul S. Chan – State Bar No. 183406
    pchan@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
    gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Herbalife
International of America, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, | CASE NO. 2:18-cv-07480-JAK (MRWx) |
| Plaintiffs, | [Related Case 2:13-cv-02488-BRO-RZ] |
| vs. | **HERBALIFE'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| HERBALIFE LTD., *et al.*, | |
| Defendants. | Date: February 10, 2020<br>Time: 8:30 A.M.<br>Crtrm.: 10B |
| | Assigned to Hon. John A. Kronstadt |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. Plaintiffs Fail to Cure the Defects Identified in the Court's Dismissal Order. ................................................................................... 2

    B. Plaintiffs' RICO Claims Fail. ................................................................ 3

        1. The Mail and Wire Fraud Predicate Acts Are Not Pled with Specificity. .......................................................................... 3

            a. Plaintiffs Do Not Specifically Plead the Underlying Fraud. .................................................................................. 4

            b. Plaintiffs Do Not Sufficiently Allege Herbalife's Participation in the Featured Speakers' Purported Fraud. ....................................................................................... 5

            c. Plaintiffs Do Not Allege a Duty to Disclose. ...................... 7

        2. Plaintiffs Cannot Meet RICO's Proximate Causation Requirement. ............................................................................... 7

            a. There Are No Predicate Offenses Alleged Against Herbalife That Proximately Caused Plaintiffs' Losses. ................................................................................... 7

            b. *Trump* Requires Dismissal of Plaintiffs' RICO Claims. .................................................................................. 8

    C. Plaintiffs' State Law Claims Fail for the Same Reasons. ..................... 10

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*,
   241 F.3d 696 (9th Cir. 2001) ............................................................................. 9

*Doe v. Trump Corp.*,
   385 F. Supp. 3d 265 (S.D.N.Y. 2019) ............................................................ 8, 9

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) ............................................................................ 7

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ................................................................................................ 7

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019) ........................................................................ 8, 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .................................................................... 3, 5, 6

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) .............................................................................. 4

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 3, 6

**Statutes**

RICO ............................................................................................................. *passim*

Unfair Competition Law .............................................................................. 2, 10

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

## I. INTRODUCTION

Plaintiffs' response boils down to the argument that their elimination of two of three Herbalife corporate defendants is a cure-all. It is not. The original complaint violated Rule 9(b) because it did not differentiate between the actions of the corporate Herbalife defendants and multiple individual defendants. The Amended Complaint reduces the corporate defendants to one—but still fails to distinguish the actions supposedly undertaken by Herbalife from the actions of dozens of (now dismissed) individual distributors. This basic pleading defect is fatal to Plaintiffs' claims.

The Amended Complaint's new allegations compound the problem by expanding the universe of individual distributors from 44 individually-named defendants to an unidentified group of an estimated 100 event speakers (the so-called "Featured Speakers"). All of these largely unnamed speakers supposedly failed to disclose at events the alleged illegitimate methods by which they achieved success. But there are no specific allegations that connect Herbalife to these unidentified event speakers, let alone the purported fraudulent scheme. There are no specific allegations that define the scope of the underlying fraud, *i.e.*, the names of the Featured Speakers who achieved success through the use of "banned" methods, the methods they purportedly used, the events at which they failed to disclose their use of such methods, or how Herbalife is alleged to have known of their omissions.

As such, Plaintiffs' RICO claims still fail to plead the predicate fraud with particularity. The new allegations about Herbalife's use of the mail and wires are inconsequential—because there is no allegation that demonstrates those actions were taken *in furtherance of* the purported fraudulent scheme. Herbalife's advertisement of a given event does not establish that Herbalife knew the speaker(s) at that event intended to engage in relevant misconduct beforehand, yet still promoted their appearances. Plaintiffs' RICO claims also fail to meet the proximate causation requirement. Plaintiffs themselves allege in the Amended Complaint that

they spent money on events as an investment in their own Herbalife businesses. Their alleged "event" losses therefore cannot be viewed in a vacuum separate and apart from their net business losses (or gains). The innumerable factors that go into the successful pursuit of a business—particularly a multi-level marketing business that involves both the sale of product and potential recruitment of others to do the same—would make it impossible for a factfinder to ascertain which portion of Plaintiffs' net losses are attributable to Herbalife's promotion of events.

Plaintiffs' state law claims, which are premised on the same underlying fraud, fail to meet Rule 9(b)'s heightened pleading requirement for these and additional reasons. As to the negligent misrepresentation claim, Plaintiffs still cannot point to actionable representations *made by Herbalife* on which they relied. As to the Unfair Competition Law ("UCL") claim, Plaintiffs' recitation of statements allegedly made by some of the Featured Speakers does not suffice for specific allegations against Herbalife.

After over two years of litigation, and despite nearing the end of discovery, Plaintiffs still cannot plead any viable claims against Herbalife. Any amendment would be futile. The Amended Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail to Cure the Defects Identified in the Court's Dismissal Order.

Plaintiffs did not heed the Court's warning in its order dismissing the original complaint that "[a]ctions that could be attributed to one or more of the Herbalife Defendants are alleged *as to either or all defendants, inclusive of those claims against those Individual Defendants that were not transferred to this District* . . . ." Dkt. 196 ("Order") at 10 (emphasis added). In other words, the Court observed that not only did the original complaint impermissibly lump together the Herbalife defendants, but it also *blurred any distinction between the alleged roles of Herbalife and the former individual defendants*. Plaintiffs' Amended

Complaint does not cure this pervasive problem.  Indeed, it does not even address the specific allegations that the Court found problematic.  Dkt. 208 ("Mtn.") at 9-10 (quoting Dkt. 202 at ¶¶ 76, 120-122) (alleging, for example, that "**Herbalife and its Featured Speakers** expect and encourage their . . . promotional messages to be remixed and echoed across the wires" and that a "**web of entities**" own and control distributor-run events) (emphasis added).  These underlying pleading deficiencies doom both the RICO and state law claims.

## B. Plaintiffs' RICO Claims Fail.

### 1. The Mail and Wire Fraud Predicate Acts Are Not Pled with Specificity.

Plaintiffs fundamentally misapprehend what is required of them under Rule 9(b).  They must plead with specificity Herbalife's use of the mail or wires "*in furtherance of the [alleged] scheme*," or put another way, Herbalife's "role" in the scheme.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (emphasis added);[1] *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).  Under the Amended Complaint, the alleged fraud is that some event speakers failed to disclose the true means by which they achieved success.  Dkt. 219 ("Opp.") at 14 ("The Amended Complaint plainly alleges a scheme by which Herbalife uses its Featured Speakers to sell a dream, while Herbalife knows that the methods these individuals purport to teach have no relationship to the success these Featured Speakers allegedly attained.").[2]  It is Herbalife's purported role in that fraud that must be pled with specificity.  Merely eliminating two of the corporate defendants falls short of this requirement.

---

[1] Unless otherwise noted, internal citations and quotation marks have been omitted.

[2] By way of example, Plaintiffs do not contend that an income testimonial made at an event ("I made $X pursuing the business opportunity") is misleading because the amount is wrong.  Rather, they assert that such testimonials are misleading because the speakers achieved success through illegitimate means, not by attending events.

### a. Plaintiffs Do Not Specifically Plead the Underlying Fraud.

Plaintiffs assert that they need only allege "that the Featured Speakers said something fraudulent." Opp. at 5. At the very least, that "something" must be pled with particularity—it is not. Rather, Plaintiffs ask the Court and Herbalife to presume that each of the estimated 100 Featured Speakers (over twice the number of former individual defendants)[3] achieved success through "banned" methods and made representations to the contrary at each event at which they spoke since 2009. Such conclusory allegations cannot form the basis for a RICO claim. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.").

Although the Court observed that the original complaint specifically alleged false statements made by some of the individual defendants regarding event attendance, those statements, under the Amended Complaint, are only fraudulent if the individuals who made them (a) achieved success through illegitimate methods and (b) did not disclose their use of such methods at events. Neither of these predicate allegations is pled with particularity. The Amended Complaint only alleges that *two* out of the estimated 100 Featured Speakers engaged in certain "banned" practices, and even these allegations are deficient. Dkt. 202 at ¶¶ 36, 47.[4]

The Amended Complaint does not contain any specific allegations that the other estimated 98 Featured Speakers engaged in relevant misconduct. *See, e.g., id.* at ¶¶ 28, 31-33, 42 (alleging that "many," "some," or "certain" Featured Speakers

---

[3] Nor are all of these 100 speakers identified. By Herbalife's count, only about 60 or so speakers' names are prefaced with the label of "Featured Speaker."

[4] As to John Tartol, there is no allegation that he achieved success through illegitimate means. *Id.* at ¶ 36. As to Michael Burton, there is no allegation that his bankruptcy had anything to do with his Herbalife business. *Id.* at ¶ 47.

relied on "banned" methods), ¶ 40 (speculating that "high volume cross-border transactions present[] the opportunity" for money laundering).  Without knowing which Featured Speakers are alleged to have done what, Herbalife cannot meaningfully defend against Plaintiffs' RICO claims.

### b. Plaintiffs Do Not Sufficiently Allege Herbalife's Participation in the Featured Speakers' Purported Fraud.

Plaintiffs merely point to a handful of benign actions on the part of Herbalife, like its (1) posting of fliers that certain "distributors and aspirants" then "*republished in increasingly fraudulent form*;" (2) sale of tickets to corporate events; (3) distribution of event curricula and agendas; and (4) sponsoring of pre-event calls.  Opp. at 6-7.  Critically, Plaintiffs do not allege that any of this conduct by itself is fraudulent.  Instead, they fall back on the uncontroversial proposition that the innocent use of the mail and wires can form the basis for a RICO claim.  That misses the point.  Plaintiffs do not plead with specificity how these alleged, non-tortious acts on the part of Herbalife were "in furtherance" of the alleged non-disclosure scheme.[5]  *Schreiber*, 806 F.2d at 1400.  Herbalife's circulation of an innocuous event agenda, for example, does not establish that it knew an individual who was slated to speak at that event achieved success through illegitimate means and nevertheless promoted that speaker (let alone that it did for 100 different speakers at thousands of events over a ten-year time period).  Plaintiffs admit as much, acknowledging that Herbalife's "statements are *independent* of the dozens of additional allegations regarding fraudulent representations made by Featured Speakers."  Opp. at 7 (emphasis added).  Plaintiffs do not plead with specificity the

---

[5]   Plaintiffs conflate RICO's "distinct enterprise" element with the requirement that the predicate acts of mail and wire fraud be pled with particularity.  Opp. at 8.  It is Herbalife's role in the Featured Speakers' alleged fraud that is not adequately pled.

supposed link between Herbalife's "independent" acts and the fraud allegedly perpetrated by event speakers.[6]

The only allegations purportedly connecting Herbalife to the Featured Speakers' alleged fraud do not satisfy Rule 9(b)'s heightened pleading standard. *See* Dkt. 202 at ¶¶ 2, 21, 22, 27 (merely alleging that Herbalife "encourages" Featured Speakers to "promote the events;" has "actual knowledge" that the event-related claims made by the Featured Speakers are false; and "promotes a steady stream of" such speakers and "parade[s]" them "around the country."); *see Swartz*, 476 F.3d at 765 (finding that such allegations do not meet Rule 9(b)).[7]

Plaintiffs' reference to statements allegedly made by Herbalife in 2011 and 2012 are unavailing. Opp. at 8-9. Plaintiffs do not respond to Herbalife's argument that such statements should be disregarded because they pre-date the relevant period under the applicable statutes of limitations. Mtn. at 11 n.5. The allegation that Herbalife circulated a presentation in April 2013 (which also pre-dates the relevant statutory period) stating only that "my ability to grow a royalty check is completely dependent on my ability *to get people to events"* is irrelevant. Opp. at 9; Dkt. 202 at ¶ 59 (emphasis added). The alleged fraud is not that Plaintiffs were duped into *inviting others to attend events*—Plaintiffs do not allege they suffered any monetary losses in doing so—but rather that they were misled into attending events themselves. Opp. at 9.[8]

---

[6] Plaintiffs' admission that Herbalife has a policy designed to prevent misrepresentations at events further attenuates any purported link between Herbalife's conduct and the underlying fraud. If Herbalife's alleged sin here is a failure to "uniformly enforce[]" its policy (Opp. at 10), that surely cannot form the basis for a RICO claim, which requires a "specific intent to deceive or defraud." *Schreiber*, 806 F.2d at 1400.

[7] Plaintiffs' attempt to distinguish *Swartz* falls flat. None of the additional allegations in the Amended Complaint address with specificity Herbalife's role in the alleged fraud.

[8] Plaintiffs also do not dispute that the other new statements allegedly made by

### c. Plaintiffs Do Not Allege a Duty to Disclose.

Under the Amended Complaint, Plaintiffs' RICO claim is predicated on an alleged failure to disclose the means by which the Featured Speakers' attained success. *See, e.g.*, Dkts. 202, 202-1 (redline comparison of the two complaints) at ¶¶ 27, 30, 32, 34, ¶ 37 ("Yet while promoting these individuals, Herbalife never discloses the true source of their so-called 'success' within the business"); ¶ 38 (alleging the same), ¶ 41 (alleging an "undisclosed currency arbitrage scheme"), ¶ 43 ("The existence of this method of operation was never disclosed . . . ."); ¶ 45 ("[N]or does Herbalife disclose that the very methods that these Featured Speakers used to attain their standing in the Herbalife business are currently banned.").

Plaintiffs' response—that they plead with specificity actions Herbalife took through the mail and wires—is a non-sequitur. Because their RICO claims are premised on an alleged non-disclosure, Plaintiffs must allege a corresponding duty to disclose. *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme."). Plaintiffs' admitted failure to do so requires dismissal of their RICO claims.

### 2. Plaintiffs Cannot Meet RICO's Proximate Causation Requirement.

#### a. There Are No Predicate Offenses Alleged Against Herbalife That Proximately Caused Plaintiffs' Losses.

It is not enough under RICO for Plaintiffs to allege that they would not have attended events had "Herbalife told the truth" regarding the "correlation between financial success and event attendance." Opp. at 13. That is merely another way of saying that Herbalife's conduct was a "but for" cause of Plaintiffs' decisions to attend events. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010)

---

Herbalife, like "Sharpen your skills," "Ignite Your Business," and "learn to build a more successful business," are puffery. Mtn. at 10.

("[T]he plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.").

Further, the Amended Complaint does not establish that the alleged predicate offenses of mail and wire fraud proximately caused Plaintiffs' losses. *Id*. The only predicate acts alleged against Herbalife concern its benign promotion of events through various media. There are no specifically pled predicate acts, however, that tie Herbalife to the Featured Speakers' alleged non-disclosures. Thus, Plaintiffs' reliance on *Takeda* is misplaced. Opp. at 13. Unlike in *Takeda*, where the plaintiffs alleged that a drug manufacturer had "learn[ed] through multiple studies" that the drug at issue increased the risk of bladder cancer, here, there is no specifically alleged predicate act demonstrating that Herbalife knew that even a single Featured Speaker achieved success through illegitimate means or that it later promoted any speakers alleged to have done so. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1246 (9th Cir. 2019).

### b. *Trump* Requires Dismissal of Plaintiffs' RICO Claims.

Because Plaintiffs attended events in order to pursue a business—a business at which they claim they ultimately failed—their attendance cannot be hermetically sealed from other factors that may have contributed to their lack of success, like, for example, their sales skills, the size of their networks, local demand for Herbalife product, representations made by third parties outside of events, the extent to which they followed advice given at events, and other aspects of the business opportunity purportedly not at issue in this case.[9] *Doe v. Trump Corp.*, 385 F. Supp. 3d 280 (S.D.N.Y. 2019).[10] If instead it is Plaintiffs' contention that there are no

---

[9] Plaintiffs attack by proxy the viability of the business opportunity. Events are only valueless, Plaintiffs contend, because those who tout their value did not "buil[d] a significant income by retailing Herbalife's products according to Herbalife's rules." Dkt. 202 at ¶ 21.

[10] Plaintiffs are wrong to imply that the Court previously rejected these arguments.

circumstances under which they could have successfully pursued the Herbalife business opportunity, then there is no meaningful way for a trier of fact to "ascertain the amount of [Plaintiffs'] damages attributable to" Herbalife's event-related conduct alone. *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001). Either way, Plaintiffs cannot meet RICO's stringent proximate causation requirement.

Plaintiffs' assertion that event attendance is "independent[]" from the pursuit of the business opportunity (Opp. at 15) makes no sense. They allege that they *invested* in events and propose a class of individuals who attended events "in pursuit of Herbalife's business opportunity." Dkt. 202 at ¶ 195; *see id*. at ¶ 164 ("Peterson convincingly claimed that the Herbalife business opportunity offered a certain path to financial freedom for anyone willing to ***invest the time, money, and energy***.") (emphasis added), ¶ 221 ("Defendant and the Featured Speakers have collectively persuaded tens of thousands of victims to ***invest substantial sums into attending events*** which are held out as the secret to becoming financially successful in a fraudulent scheme to which Defendants know financial success is not possible.") (emphasis added).[11] Herbalife is not "mutat[ing]" Plaintiffs' allegations. Opp. at 15. It is Plaintiffs who are running away from the essential nature of their allegations in order to avoid dismissal of their RICO claims.

Plaintiffs' attempts to distinguish *Trump* fail. It does not matter that the defendants there were alleged to have promoted third-party companies. That was not a basis for the Court's holding (and in any case, Herbalife also is alleged to have

---

Opp. at 11. The Amended Complaint alleges new predicate offenses against Herbalife, none of which, as noted above, proximately caused Plaintiffs' losses. Further, the *Trump* case was decided after briefing was complete in connection with Herbalife's motion to dismiss the original complaint. Soon after the *Trump* decision was published, Herbalife apprised the Court of it in a supplemental memorandum. Dkt. 183.

[11] *Takeda* also is distinguishable because it did not involve plaintiffs who invested in their own businesses.

promoted events run by third parties, *see* Mtn. at 11-12).  Additionally, that Plaintiffs seek only the money they spent in connection with events does not save their RICO claims.  Those admitted *investments* cannot be viewed in a vacuum, separate and apart from Plaintiffs' overall pursuit of the business opportunity.

### C.     Plaintiffs' State Law Claims Fail for the Same Reasons.

Plaintiffs erroneously assert that their retention of only one corporate defendant renders their negligent misrepresentation claim compliant with the Court's Order and Rule 9(b).  That claim is based on the same underlying fraud as Plaintiffs' RICO claims, and is not pled with specificity for the reasons noted above.  Nor do Plaintiffs address their lack of actual reliance on any statements made by Herbalife.  Mtn. at 18.

As to their UCL claim, Plaintiffs respond by referencing a handful of statements allegedly made by Featured Speakers, not Herbalife.  Opp. at 17.  Further, there is no allegation that (1) any of these speakers achieved success through illegitimate means or (2) Herbalife was aware of any relevant misconduct on the part of these speakers at the time of the events in question.  Without those predicate allegations, there can be no inference that Herbalife violated the UCL.

## III.    CONCLUSION

Herbalife respectfully urges the Court to dismiss Plaintiffs' Amended Complaint with prejudice.  Retaining only one defendant is not a "good faith attempt" to comply with the Court's Order.  Opp. at 18.  Nor do the Amended Complaint's additional allegations bring it into compliance with Rule 9(b).  Further, the supposed lack of certain discovery is not an excuse for a failure in pleading that should have been addressed when the complaint was filed over two years ago.[12]

---

[12]  Plaintiffs are wrong to assert that Herbalife has not been forthcoming in discovery.  Opp. at 18-19.  Plaintiffs have filed one motion to compel to date.  In connection with that motion, Judge Wilner ordered narrow relief and did not award Plaintiffs their attorneys' fees.  Dkt. 203 at ¶ 25 (acknowledging that the parties have a "legitimate beef about the scope of discovery in this action").

DATED: January 6, 2020

Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: ___*/s/ Mark T. Drooks*___
   Mark T. Drooks
Attorneys for Defendant Herbalife
International of America, Inc.