**PAUL A. LEVIN (State Bar No. 229077)**
**MORTGAGE RECOVERY LAW GROUP LLP**
**550 North Brand Boulevard, Suite 1100**
**Glendale, California 91203**
**TELEPHONE: (818) 630-7900 FASCIMILE: (818) 630-7920**
**EMAIL:     plevin@themrlg.com**

**ETAN MARK (admitted *pro hac*)**
**DONALD J. HAYDEN (admitted *pro hac*)**
**YANIV ADAR (admitted *pro hac*)**
**MARK MIGDAL & HAYDEN**
**80 SW 8th Street, Suite 1999**
**Miami, Florida 33130**
**TELEPHONE: (305) 374-0440**
**EMAIL:     etan@markmigdal.com**
**            don@markmigdal.com**
**            yaniv@markmigdal.com**

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, | CASE NO. 2:18-cv-07480-JAK (MRWx) |
| Plaintiffs, | [Related Case 2:13-cv-02488-BRO-RZ] |
| vs. | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM RE: PLAINITFFS' MOTION TO COMPEL DISCOVERY** |
| HERBALIFE LTD., *et al.*, | |
| Defendants. | Assigned to Hon. Michael R. Wilner Courtroom 550 |

## SUPPLEMENTAL MEMORANDUM

### I.   The Court should not condone Herbalife's mass, indiscriminate, and routinized designations.

The Stipulated Protective Order (ECF No. 211, "SPO") unambiguously prohibits "mass, indiscriminate, or routinized designations." § 5.1. In blatant disregard of this prohibition, Defendant Herbalife International of America, Inc. ("Herbalife") designated a staggering 98% of the documents produced in this matter as confidential under the SPO. *See* Adar Declaration at ¶ 3. When the multiple copies of their publicly available rules are omitted from this calculation, that number increases to 99% of all documents produced. *Id.* at ¶ 4.  Herbalife concedes that they have indiscriminately designated virtually all their production as confidential and seek to justify these routinized designations by making several unavailing arguments.

First, Herbalife asks the Court to recognize an unprecedented "aggregate" exception to the SPO. Herbalife concedes that it "does not contend that disclosure of a single document (or a small subset of documents) would necessarily cause significant harm to the company." Stipulation at p. 11. Herbalife contends that it has designated those documents as confidential because, "taken together in their entirety, the documents produced to Plaintiffs provide a comprehensive picture of Herbalife's event presentation strategy." *Id.* at pp. 10-11. But Herbalife fails to identify any authority recognizing such a justification for indiscriminate confidentiality designations. To the contrary, the SPO mandates a more granular approach, providing that "the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." SPO at § 5.1. Herbalife's mass, aggregate designation directly contradicts section 5.1 of the SPO.

Second, Herbalife claims its mass designations are appropriate because Plaintiffs

have not articulated a valid reason to enforce section 5.1 of the SPO. But the SPO expressly requires Herbalife to exercise restraint and care in its designations; ordering Herbalife to designate only those materials that qualify so that non-confidential materials "are not swept unjustifiably within the ambit of this Order." SPO at § 5.1. Herbalife disregards this clear requirement and instead insists that all documents should be treated as confidential — shifting the burden to Plaintiffs to explain why each document should have the improper designation removed. Not only is this position inconsistent with section 5.1 of the SPO, it also contradicts section 6.3 of the SPO (noting the burden of persuasion in upholding a confidentiality designation lies with the designating party).

Finally, Herbalife's prior "accommodations" do not justify their willful disregard for the SPO. Although Herbalife has agreed to remove some, but not all, of its confidentiality designations, conferences surrounding those agreements revealed Herbalife's default position that documents they produced will be designated as confidential. Herbalife suggests that Plaintiffs should be compelled to catalogue improperly designated documents, confer with Defendant regarding same, and then raise individual challenges with the Court for the over 130,000 pages of improperly classified documents. This suggestion would create a strain on judicial resources, a result the SPO's prohibition against mass, indiscriminate, and routinized designation was designed to avoid. The SPO expressly prohibits Herbalife's abusive designations.

## II.   Herbalife has failed to identify any lawful basis for maintaining the confidentiality designations on Event videos.

Noticeably absent from Herbalife's portion of the Joint Stipulation is the identification of any specific proprietary business information it seeks to protect by designating all Event videos as confidential. "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). When the confidentiality of information under a protective order is

2

challenged, the court must conduct a two-step analysis: (1) first, it must determine whether particularized harm will result from disclosure of information to the public; and (2) second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *Todd v. Tempur-Sealy Int'l, Inc.*, 13CV04984JST (MEJ), 2015 WL 1006534, at *2 (N.D. Cal. Mar. 6, 2015) (quoting *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011)).

First, Herbalife has failed to identify a <u>particularized</u> harm that would result if the Event videos were made public. Herbalife argues only that the Event content was intended to be private and that recordings of these large gathering are forbidden. But "this general blanket argument would apply to all non-public communications." *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, C-06-1066 PHJ EMC, 2007 WL 4169628, at *2 (N.D. Cal. Nov. 20, 2007). Herbalife claims that "the substance presented and the manner in which the content is presented – *e.g.*, the best music to play, for how long, and at what point in the event" is a "proprietary business method[] that [is] competitively sensitive in nature." Stipulation at 10, 19. The Court should look past these distractions and determine that Herbalife "has not demonstrated any specific harm will ensue from disclosure of the documents at issue." *Medtronic*, 2007 WL 4169628 at *2.  Herbalife's failure to identify any trade secret, proprietary business information, or anything else of value uttered at these Events further demonstrates why they should not be allowed to restrict Plaintiffs' access to videos of those Events.

Second, if there is any marginal harm associated with removing confidentiality designations, such harm is outweighed by the public interest. This case is about the misrepresentations that Herbalife makes at, and about, its emotionally manipulative live events. The Events are a worthless sham, providing nothing of value to putative class members. The claims publicly made by Herbalife regarding the utility of these

3

1  Events does not correspond with the unflattering reality. The public has a clear interest
2  in understanding the nature of the allegations at issue in this putative class action.[1]

### III. Herbalife has failed to demonstrate any burden related to the production of Affiliated Monitors, Inc.'s reports.

5  Herbalife has failed to set forth any evidence supporting its conclusory allegation
6  that Plaintiffs' request for documents regarding Affiliated Monitors, Inc.'s reports is
7  burdensome. Without any affidavit, declaration, or evidence, Herbalife claims that it
8  would need to review or redact "thousands of pages of reports and communications".
9  Stipulation at 27. Even if this unsubstantiated number were accurate, Herbalife has
10 consistently refused to produce **any** documents or agree to **any** protocol that would
11 limit this burden. For this reason alone, the Court must reject Herbalife's claim of
12 undue burden. *See, e.g. Amazing Ins., Inc. v. DiManno*, 219CV01349TLNCKD, 2020
13 WL 5440050, at *4 (E.D. Cal. Sept. 10, 2020) ("Plaintiff and third-party defendants
14 have not satisfied their burden to show that responding to the discovery requests poses
15 an undue burden. They have not submitted affidavits or other evidence to support their
16 undue burden argument, nor have they submitted summaries or other information
17 about the discovery already produced to establish that the requested ESI would be
18 duplicative or unreasonably cumulative. Accordingly, plaintiff and third-party
19 defendants have not shown that the requested discovery should not be allowed.")

20 Herbalife's relevance arguments are both improper and inaccurate. Herbalife
21 concedes that its corporate representative testified that monitors attended corporate
22 events, but claims that Mr. Domingo did not testify that the monitors included any
23 information about Events in their reports. Stipulation at 25. But Mr. Domingo failed
24 to testify about whether Events were discussed in the monitor reports because he was

---

26 [1] Herbalife claims that Plaintiffs' request to de-designate the Event videos as
27 confidential should be denied because Plaintiffs do not identify the videos at issue.
   While Plaintiffs disagree with this contention, the specific events and bates ranges are
28 referenced in the attached declaration of Yaniv Adar. *See* Adar Declaration at ¶¶ 5-6.

4

1   instructed by counsel not to answer. *See* Deposition of Mauricio Domingo at 177:12-

2   14. Herbalife does not dispute that the reports they refuse to produce contain relevant

3   information; rather, they simply claim that Plaintiffs should not be able to access those

4   reports because they have not independently been able to establish the content of those

5   reports. This circular logic is unavailing. The undisputed record evidence establishes

6   that monitors attended these events. Plaintiffs should be allowed to review their

7   reports to identify any relevant information.

8       Herbalife's relevance arguments are also factually inaccurate. Herbalife repeatedly

9   claims that the FTC Order "<u>expressly</u> excludes from Affiliated Monitors' purview *any*

10  monitoring or reporting regarding representations made at events." Stipulation at 24

11  (emphasis and italics in original). However, the FTC Order does not contain any such

12  "express" exclusion.

13      Finally, Herbalife's contention that Plaintiffs should be denied access to the

14  monitoring reports and related documents because those documents contain

15  confidential information disregards the SPO. If Herbalife contends responsive

16  documents contain confidential information, they can designate those documents as

17  confidential or attorneys' eyes only consistent with the SPO. Confidentiality should

18  not serve as a basis for denying Plaintiffs access to otherwise responsive documents.

19

20  DATED: November 3, 2020        Respectfully submitted,

21

22                                 Mark Migdal & Hayden

23                                 By:  _____
                                          */s/ Yaniv Adar*

24                                       Yaniv Adar
                                   Attorneys for Plaintiffs Patricia Rodgers,
25                                 Jennifer Ribalta, and Izaar Valdez

26

27

28