**PAUL A. LEVIN (State Bar No. 229077)**
**MORTGAGE RECOVERY LAW GROUP LLP**
**550 North Brand Boulevard, Suite 1100**
**Glendale, California 91203**
**TELEPHONE: (818) 630-7900 FASCIMILE: (818) 630-7920**
**EMAIL:     plevin@themrlg.com**

**ETAN MARK (admitted *pro hac*)**
**DONALD J. HAYDEN (admitted *pro hac*)**
**YANIV ADAR (admitted *pro hac*)**
**MARK MIGDAL & HAYDEN**
**80 SW 8th Street, Suite 1999**
**Miami, Florida 33130**
**TELEPHONE: (305) 374-0440**
**EMAIL:     etan@markmigdal.com**
**            don@markmigdal.com**
**            yaniv@markmigdal.com**

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MICHAEL LAVIGNE, *et al.*,

            Plaintiffs,

      vs.

HERBALIFE LTD., *et al.*,

            Defendants.

CASE NO. 2:18-cv-07480-JAK (MRWx)

[Related Case 2:13-cv-02488-BRO-RZ]

**PLANTIFFS' NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE RULINGS**

*[Filed concurrently with Memorandum of Points and Authorities]*

Date: May 10, 2021
Time: 8:30AM
Courtroom: 10B

Assigned to Hon. John A. Kronstadt,

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 10, 2021, at 8:30am, or as soon thereafter as the matter may be heard in the above-styled court, before the Honorable John A. Kronstadt, United States District Judge for the Central District of California, Western Division, in Courtroom 10B (or virtually as required by any applicable Court Order), Plaintiffs Patricia Rodgers, Izaar Valdez, and Jennifer Ribalta, move pursuant to Federal Rule of Civil Procedure 72(a), Local Rule 72-2.1, and 28 U.S.C. § 636(b)(1)(A) for an order for review of Magistrate Judge Wilner's Order Denying Motion to Re-Designate Documents (the "Challenged Order"). The Motion is based on the grounds that the Challenged Order is clearly erroneous and contrary to the law. The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, all of the papers filed in this action, and such other evidence and argument as the Court may receive.

Pursuant to Local Rule 7-3, counsel for Defendant Herbalife and Plaintiffs met and conferred several times consistent with Local Rule 37-1 but was unable to reach an agreement on the underlying discovery issues.

DATED: January 6, 2021

Respectfully submitted,

Mark Migdal & Hayden

By:  /s/ Yaniv Adar
     Yaniv Adar
     Attorneys for Plaintiffs Patricia Rodgers,
     Jennifer Ribalta, and Izaar Valdez

# **TABLE OF CONTENTS**

**Page**

I.    Introduction ....……………………………………………………3

II.   Procedural Background ……………………………………………4

    a.  The Stipulated Protective Order ………………………………4

    b.  Herbalife's Overbroad Designations …………………………..6

    c.  The First Round of Briefing …………………………………...6

    d.  The Oral Argument …………………………………………7

    e.  The Challenged Order …………………………………….....10

III.  Argument ………………………………………………………12

    a.  The Challenged Order's holding that parties have no recourse to challenge deliberate and overbroad confidential designations was clear error and contrary to law. …………………………………...12

    b.  The Challenged Order's holding that Plaintiffs waived their right to challenge otherwise unjustified confidentiality designations of event videos was clear error and contrary to the law. ………………….....17

IV.  Conclusion ………………………………………………………19

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*12180 Stratford Tr. v. Unigard Indem. Co.*,
   LACV1706643JAKGJSX, 2018 WL 6219867 (C.D. Cal. Apr. 16, 2018)...........13

*Edifecs, Inc. v. TIBCO Software, Inc.*,
   2011 WL 13362103 (W.D. Wash. 2011) .............................................17

*Glenmede Trust Co. v. Thompson*,
   56 F.3d 476 (3d Cir. 1995) ...........................................................20

*Lallemand v. County of Los Angeles*, CV 17-0781 JAK (SSX),
   2018 WL 6136814 (C.D. Cal. Jan. 12, 2018)..................................14, 15

*Marshall v. Galvanoni*,
   217CV00820KJMCKD, 2019 WL 2491524 (E.D. Cal. June 14, 2019)..............14

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, C-06-1066 PHJ EMC,
   2007 WL 4169628 (N.D. Cal. Nov. 20, 2007)....................................20

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ...................................................13

*Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants*,
   661 F.3d 417 (9th Cir. 2011) ....................................................20

*San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*,
   187 F.3d 1096 (9th Cir. 1999) .............................................13, 14, 19

*Seegert v. Rexall Sundown, Inc.*,
   17CV01243JAHJLB, 2019 WL 3774485 (S.D. Cal. Aug. 9, 2019)....................14

Statutes

28 U.S.C. § 636(b)(1)(A)...................................................2, 13

Rules

Federal Rule of Civil Procedure 72(a)..........................................2, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is a putative class action brought on behalf of tens of thousands of Herbalife distributors. At the heart of this action are emotionally charged live events specifically designed to deceive and manipulate the putative class members. Herbalife maintains that every second of every event video it produced in discovery should be treated as confidential. Plaintiffs formally challenged Herbalife's improper designation of these videos and, pursuant to the Stipulated Protective Order entered by Magistrate Judge Wilner and agreed to by the parties, ECF No. 212 (the "SPO"), Herbalife bore the burden of showing why those videos should be treated as confidential pursuant to the SPO. *See* SPO at § 6.3. Rather than satisfy this burden, Herbalife argued that the good cause statement of the SPO provided for all event videos to remain confidential. ECF No. 285 at p. 16. That is <u>not</u> what the SPO said and at oral argument Magistrate Judge Wilner seemed to expressly reject this interpretation of the SPO. Transcript of November 5, 2020 Hearing, at 15:21-22 ("That's not what I said in the order and that was really problematic.").[1]   However, the December 23, 2020, Order Denying Motion to Re-Designate Documents (the "Challenged Order") bases its ruling on that very argument; holding that Plaintiffs had waived their right to challenge the confidentiality designations of event videos. ECF No. 304 at ¶ 13. The Challenged Order's denial of Plaintiffs' request to de-designate was clear error and contrary to law.

Separately, the Challenged Order's refusal to enforce the SPO's prohibition against mass, indiscriminate, and routinized designations was clearly erroneous and contrary to law. Herbalife does not dispute that it engaged in mass, indiscriminate, and routinized designations, and does not (and cannot) deny that it designated more than 97% of the documents it produced in this case as confidential. Instead, Herbalife

---

[1] A complete copy of the transcript is attached hereto as Exhibit A.

asks the Court to excuse its conduct because although "disclosure of a single document (or a small subset of documents) would [not] necessarily cause significant harm to the company . . . taken together in their entirety, the documents produced to Plaintiffs provide a comprehensive picture of Herbalife's event presentation strategy." *Id.* at pp. 10-11. Plaintiffs provided the Court with several demonstrative examples of Herbalife improperly designating documents as confidential, including (but not limited to) the very arbitration agreements that they publicly relied on in their effort to compel Plaintiffs to arbitration. Despite the SPO's clear prohibition against Herbalife's conduct, the Challenged Order held that Plaintiffs lack any recourse to challenge Herbalife's overbroad designations (regardless of whether those designations were improper) unless Plaintiffs identify a specific frivolous designation **and** Herbalife maintains that designation after the mandated conferral process. In other words, the Challenged Order held that Herbalife was authorized to engage in mass, indiscriminate, and routinized designations so long as it withdraws specific designations when petitioned by Plaintiffs. This holding, which gives Herbalife (and possibly other federal litigants) carte blanche to engage in abusive confidentiality designations was also clearly erroneous and contrary to law.

## II.    PROCEDURAL BACKGROUND

### a.  The Stipulated Protective Order

On December 2, 2019, the parties and court entered into the Stipulated Protective Order. The "Good Cause Statement" of the SPO notes that "Plaintiffs have propounded discovery requests that seek, among other things, video and audio recordings of Herbalife events . . ." SPO at § 1.2 The statement goes on to note that "**Herbalife** asserts that such materials consist of, among other things, information regarding confidential business strategies and policies; sensitive financial information; information implicating the privacy rights of third parties; and/or information which may be privileged . . ." *Id.* (emphasis added). At the end of that paragraph, the Good Cause Statement makes clear that "Nothing in this Good Cause

Statement or Stipulated Protective Order shall be construed as an agreement by Plaintiffs that any specific documents or categories of documents are properly considered 'Confidential Information' as defined herein." *Id.*

Although the SPO enabled the parties to preliminarily label select documents as confidential, the tradeoff was that such designations must be used sparingly. The SPO repeatedly and unambiguously made clear that overbroad designations are inconsistent with that order:

- "The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." § 1.1.

- "It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner. It is also the intent of the parties that information will not be designated as confidential unless there is good cause as to why such information should not be part of the public record of this case." *Id.*

Section 5.1 of the SPO reiterates this point, making clear that designations should be limited to only those portions of a document properly requiring protection:

5.1 Exercise of Restraint and Care in Designating Material for Protection: Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not

5

warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

In the event of a dispute regarding whether a document should be treated as confidential, the parties and Court agreed that the designating party bears the burden of persuasion. *Id.* at § 6.3.

### b. Herbalife's Overbroad Designations

From the moment Herbalife began reluctantly producing documents in this case, the company designated virtually all documents as confidential. Herbalife produced 136,600 pages in this matter, 133,858 were designated as confidential. ECF No. 287-1 at p. 2. This represents 97.9% of Herbalife's total production. *Id.* Excluding copies of Herbalife's voluminous, and very public, rules and procedures, that percentage increases to 99.3%. *Id.* These include: the publicly available arbitration agreements relied on and filed by Herbalife to try and compel Plaintiffs to arbitration, a document containing a list of YouTube songs that might be played at an event, mass e-mails to Herbalife distributors linking to publicly available YouTube videos, and other communications Herbalife encourages to be widely disseminated. ECF No. 285 at p. 6, ECF No. 285-1.

### c. The First Round of Briefing

After extensive conferrals the parties submitted a Joint Stipulation pursuant to Local Rule 37-1. In the Joint Stipulation, Herbalife held fast to its position that it was permitted to engage in mass, indiscriminate, and routinized designations and attempted to justify its conduct through two distinct arguments.

First, Herbalife claimed its mass, indiscriminate, and routinized designations were appropriate because although "Herbalife does not contend that the disclosure of

6

a single document (or a small subset of documents) would necessarily cause significant harm to the company . . . [t]aken together in their entirety, the documents produced to Plaintiffs provide a comprehensive picture of Herbalife's event presentation strategy." ECF No. 285 at 11-12.

Second, Herbalife claimed that, "Rather than engage in fruitless motion practice to avoid producing so many documents, Herbalife produced them all and justifiably protected itself by designating them as confidential." ECF No. 285 at 15. But Herbalife fails to support its claim that it acted "justifiably." In fact, Herbalife never conferred with Plaintiffs to give them the option of accepting the documents as confidential as opposed to Herbalife filing motions they themselves define as "fruitless."

With regard to the event video designations, Herbalife sought to avoid its burden of establishing good cause by claiming "The Protective Order Provides For The Designation Of Event Videos As Confidential." *Id.* at 16.[2] Herbalife also claimed they had good cause for designating all event videos as confidential based on vague and unidentified "proprietary business methods that are competitively sensitive in nature," without identifying a single one of those business methods. *Id.* at 16-17. However, Herbalife failed to identify any specific harm that would ensue from disclosure of the event videos or specific portions of the videos which would warrant protection.

### d.  The Oral Argument

On November 5, 2020, Magistrate Judge Wilner held oral argument on the outstanding discovery issues. At that hearing, Judge Wilner responded to the limited evidence advanced by Herbalife to support its claim that the event videos should be treated as confidential:

---

[2] This is wrong, but more on that below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

> THE COURT:  I found that to be incredibly vague,
> thoroughly unconvincing.  And I found that really kind of
> shocking, particularly since you folks had quoted to me -- or
> cited to me the decision that Judge Siegel (phonetic) wrote in
> the *Sellgean* (phonetic) case, right?  That was in your papers
> where she wrote an incredibly lengthy order making findings,
> both establishing the good cause for -- not just in sort of
> summary fashion that this is confidential and this is really
> important and we don't want it publicized -- but explaining
> what the materials were, what the competitive issues were.  And
> then, of course, she took the party seeking de-designation to
> task because they really couldn't establish anything that was
> in the public interest or anything beneficial about
> de-designating the materials.
>
>         So I looked at Ms. Rodriguez's declaration and it was
> a cookie-cutter boilerplate.  And it was thunderously not
> helpful, as was what I took to be your side's misstatement
> about my protective order.

15
16

Ex. A. at 13:23-14:15. Judge Wilner continued by soundly rejecting Herbalife's position that the SPO "provided for the designation of event videos as confidential":

17
18
19
20

> You folks said or implied that either I found or that
> Plaintiffs admitted that the videos were sort of, per se,
> confidential, and I don't think that's an accurate reading of
> the protective order at all.

*Id.* at 14:16-19. In response, Herbalife walked back from that argument:

21
22
23
24

> We certainly don't think that your protective order
> found that they are blanketly on a per se basis entitled to
> confidentiality.  In fact, that's not our position.  And to the
> extent we gave that --

25
26

*Id.* at 15:5-8. The Court replied again clearly and unambiguously rejecting Herbalife's argument:

27
28

**THE COURT:** That's exactly how I read on page 16 of
your brief that the stipulated protective order's good-cause
statement expressly provides that, (quote,):

> "Plaintiffs have propounded discovery requests that
> seek among other things, video and audio recordings
> of Herbalife events," (close/quote).

> That Herbalife has a good-faith belief that this
> information has been maintained in a confidential non-public
> manner, (comma), and, (quote):

> "There is good cause as to why such information
> should not be part of the public record in this
> case."

> That's not what I said in the order and that was
> really problematic.

*Id.* at 15:9-22.

With regard to Herbalife's mass, indiscriminate, and routinized designations, the Court recognized the burden on Plaintiffs in dealing with such designations and noted Plaintiffs can properly raise over-designations with the Court regardless of whether Herbalife ultimately agreed to withdraw those designations:

> I mean, look. I understand and I absolutely -- I
> absolutely take seriously, Mr. Adar, that when you want to do
> certain things with these papers, with these materials, if the
> other side has slapped a label on it and said it's confidential
> and you use this at your risk, and then you go to them and say
> take the label off and sometimes they say yes and sometimes
> they say no -- and it's more often than not they say yes
> because we shouldn't have put it on in the first place --
> that's a real burden on you. That, I get. And that's time and
> that's lawyering and it's meeting and conferring. And if it
> appears that these labels were done in an overly extravagant
> way, I mean I could absolutely see a cost shift for aspects of

PLAINTIFF'S MOTION FOR REVIEW OF NON-DISPOSITIVE RULINGS

```
this.  If they've incurred that kind of a tangible burden and

you have to spend this much time on the papers and meeting with

them and sending emails and so forth, I understand that and you

and your client shouldn't be burdened by that.  And that's sort

of what was envisioned by the sanction language in the order.

          So why is that not the route forward?  Judge, here's

a list of how many times we tried to get them to lighten up on

these restrictions because they put them on too hard and it's

cost "x" number of dollars, please make them pay.  Why is that

not the remedy?
```

*Id.* at 38:4-25.

### e. The Challenged Order

On December 23, 2020, Magistrate Judge Wilner entered an order denying all relief to Plaintiffs. The Challenged Order held that: (a) Plaintiffs lacked an independent remedy to enforce Section 5.1 of the SPO or challenge Defendant's abusive designation practices; and (2) Plaintiffs waived their ability to challenge confidentiality designations of event videos when they entered into the SPO.

In doing so the Challenged Order made several legal errors. First, the Challenged Order erroneously claimed that Plaintiffs "want the Court to deem all of Herbalife's materials not to be confidential." ECF No. 304 at ¶ 8. But Plaintiffs never requested this relief in any of their filings and in fact made clear at oral argument that they were not seeking this relief. Ex. A at 7:23-25. Instead, the relief sought by Plaintiffs was merely enforcement of Section 5.1 of the SPO and a requirement that Herbalife limit their designations to only those specific materials which warrant such designation as agreed. *See, e.g.*, ECF No. 285 at p. 7 ("Plaintiff request an order . . . ordering compliance with Section 5.1 by requiring Herbalife to limit confidentiality designations to only those warranting such designation . . ."); ECF No. 290 at p. 10 ("Herbalife should be required to comply with the terms of the SPO and only mark confidential documents confidential"); Ex. A at 7:23-25.

Second, the Challenged Order failed to consider the undisputed evidence that

Herbalife deliberately ignored the terms of the Court's protective order. The Joint Stipulation provided seven concrete examples of Herbalife frivolously designating documents confidential. ECF No. 285 at 6-7. Herbalife admitted that it engaged in mass, indiscriminate, and routinized designations but attempted to justify its conduct by claiming an "aggregate" exception to the SPO's prohibition on overbroad designations. *Id.* at 7-8. Herbalife admitted that it engaged in the prohibited conduct to avoid motion practice. *See id.* at 15. The clear legal question before the Court, therefore, was whether Herbalife's deliberate violations of the SPO were justified. The Challenged Order did not answer this question, instead avoiding the issue by misclassifying Plaintiffs' request as an attempt to de-designate all documents (something Plaintiffs never and currently do not request). This avoidance is made clear by footnote 3 of the Challenged Order:

> [3]  To be clear, the courthouse window remains open to a legitimate claim that the defense deliberately failed to abide by the terms of this Court's protective order.  Such a claim will require considerably more detail than the vague allegations put forward to date.

Plaintiffs brought the underlying motion to raise "a legitimate claim that the defense deliberately failed to abide by the terms of the Court's protective order," but the Challenged Order did not consider any of the evidence before it.

Third, the Challenged Order erroneously stated that Plaintiffs agreed that good cause existed to protect "video and audio recordings of Herbalife events" ECF No. 304 at ¶ 13. Herbalife's suggestion that Plaintiffs agreed that event videos would be treated as confidential was not only rejected by the Court, it was abandoned at oral argument. Ex. A at 13:23-15:22. Moreover, the parties and Court expressly agreed that "Nothing in this Good Cause Statement or Stipulated Protective Order shall be construed as an agreement by Plaintiffs that any specific documents or categories of documents are properly considered as 'Confidential Information.'" SPO at § 1.2.[3]

---

[3] It is worth noting that the Challenged Order not only held that Plaintiffs waived their right to challenge event videos, it went even further to call Plaintiffs' attempt to avoid

### III.   ARGUMENT

Where a magistrate judge is designated to hear a discovery motion, as is the case here, a district court judge may reconsider the magistrate judge's order if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(a). "Under these standards, findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are reviewed de novo." *12180 Stratford Tr. v. Unigard Indem. Co.*, LACV1706643JAKGJSX, 2018 WL 6219867, at *2 (C.D. Cal. Apr. 16, 2018). Here, the Challenged Order is both clearly erroneous and contrary to law for two separate and independent reasons.

### a.   The Challenged Order's holding that parties have no recourse to challenge deliberate and overbroad confidential designations was clear error and contrary to law.

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). "Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). The vehicle for a party to avoid public disclosure of documents they produce in discovery is Rule 26(c), and the standard the party avoiding party must meet is "good cause." *See San Jose Mercury*, 187 F.3d at

---

that alleged waiver as "frivolous." ECF No. 304 at ¶ 13. This characterization is unwarranted not only because it is clearly erroneous and contrary to law, but also because Magistrate Judge Wilner himself said Herbalife's waiver argument was not "an accurate reading of the protective order at all" and "[t]hat's not what I said in the order and that was really problematic." Ex A. at 14:16-19, 15:21-22. In light of the Challenged Order's implication that fees may be awarded against Plaintiffs and their counsel, Plaintiffs request the Court specifically find that Plaintiffs' good faith attempt to enforce the terms of the SPO, comply with Local Rule 37-1, and advocate for the best interests of the class were not "frivolous."

1103 ("Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown.").

In *San Jose*, the district court entered a blanket stipulated protective order providing for all documents to be produced confidentially. *Id.* The Ninth Circuit said that was in error, holding "[s]uch blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document." *Id.* Courts in this circuit have consistently held that for protective orders governing confidentiality to have merit, they must require parties seeking confidentiality designations to make a particularized showing of good cause with respect to any individual document. *See, e.g.*, *Seegert v. Rexall Sundown, Inc.*, 17CV01243JAHJLB, 2019 WL 3774485, at *3 (S.D. Cal. Aug. 9, 2019) (providing that *San Jose* provides that "to merit a protective order the party must make particularized showing of good cause with respect to any individual document"); *Marshall v. Galvanoni*, 217CV00820KJMCKD, 2019 WL 2491524, at *8 (E.D. Cal. June 14, 2019) ("[T]o gain a protective order the party must make particularized showing of good cause with respect to any individual document"); *Lallemand v. County of Los Angeles*, CV 17-0781 JAK (SSX), 2018 WL 6136814, at *8 (C.D. Cal. Jan. 12, 2018) ("To shield materials from public view pursuant to a protective order, a party must make 'a particularized showing of good cause with respect to any individual document.'") (quotations omitted). The key takeaway from these cases is that Herbalife was not inherently entitled to a protective order to keep all of its documents confidential; it was required to agree to make a "particularized showing of good cause with respect to any individual document."

With this backdrop in mind, the parties and Magistrate Judge Wilner entered into an agreed order which provided Herbalife a mechanism for preliminarily shielding certain documents from the public, but at a cost. The SPO specifically said that in exchange for such protection (which is a deviation from the presumption in

favor of public access), Herbalife (and Plaintiffs) were required to adhere to the following conditions:

- The parties will not designate documents as confidential for tactical reasons. SPO at § 1.1.

- Nothing will be designated as confidential without a good faith belief that it has been maintained in a confidential, non-public manner. *Id.*

- Documents will not be designated as confidential unless there is good cause as to why such information should not be part of the public record of this case. *Id.*

- The parties will exercise "restraint and care in designating material for protection." *Id.* at § 5.1.

- Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. *Id.*

- The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. *Id.*

- Mass, indiscriminate, or routinized designations are prohibited. *Id.*

- The party seeking a confidential designation bears the burden of whether that document should be treated as confidential. *Id.* at § 6.3.

That was the deal. Consistent with Ninth Circuit precedent, common sense, and the agreement and intent of the parties the SPO allowed Herbalife to designate documents as confidential in exchange for Herbalife's promise to use that ability sparingly. But Herbalife did not uphold their end of the bargain.

There is no dispute that Herbalife deliberately violated the SPO. Plaintiffs set forth undisputed record evidence that: (a) Herbalife designated over 97% of all

documents as confidential, ECF No. 287-1 at p. 2; (b) Herbalife frivolously designated arbitration agreements it publicly filed with the Court as confidential; ECF No. 285 at p. 6, ECF No. 285-1; and (c) Herbalife refused to "take care to limit any such designation to specific material that qualifies under the appropriate standards," SPO at § 5.1. Moreover, in disregard of the SPO's prohibition against overbroad designations, Herbalife stated that it unilaterally designated virtually all documents as confidential to "justifiably protect itself" without articulating what that justification is. ECF No. 285 at 15.

Herbalife's other justification for violating the SPO only serves to reaffirm the fact that the SPO has been violated. Herbalife asked the Court to recognize an unprecedented "aggregate" exception to the SPO. Herbalife concedes that it "does not contend that disclosure of a single document (or a small subset of documents) would necessarily cause significant harm to the company." ECF No. 285 at p. 11. Herbalife contends that it has designated those documents as confidential because, "taken together in their entirety, the documents produced to Plaintiffs provide a comprehensive picture of Herbalife's event presentation strategy." *Id.* at pp. 10-11. But Herbalife fails to identify any authority recognizing such a justification for indiscriminate confidentiality designations. To the contrary, the SPO mandates granular approach, providing that "the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." SPO at § 5.1. Herbalife's mass, aggregate designation directly contradicts section 5.1 of the SPO.

The Challenged Order, however, did not address the question of whether Herbalife violated the SPO. Instead, it sidestepped the issue by asserting that it is improper for courts to consider whether an SPO has been violated outside the context of a specific dispute over a document that the designating party refuses to de-

designate. In support of this assertion the Challenged Order relied exclusively on *Edifecs, Inc. v. TIBCO Software, Inc.*, 2011 WL 13362103 at *3 (W.D. Wash. 2011), an out-of-district decision which held that courts should not issue advisory rulings "regarding what, generally speaking, constitutes 'good cause' to designate a discovery document as confidential under a protective order." ECF No. 304 at ¶ 9. Relying on *Edifecs*, the Challenged Order held that "Plaintiffs don't challenge specific documents or categories of records – they want the Court to deem <u>all</u> of Herbalife's materials not to be confidential." *Id.* at ¶ 8. The Challenged Order's findings are both factually and legally erroneous.

First, the Challenged Order's factual statements of Plaintiffs' position are inaccurate. In the Joint Stipulation Plaintiffs specifically referenced seven documents which were frivolously designated as confidential without good cause **and** identified a category of documents, event videos, as designated as confidential without any attempt to limit the designations as required by the SPO. ECF 285 at 10-11, 13-14. The Challenged Order does not explain why: (a) Herbalife should not be sanctioned for frivolously designating the seven identified documents (as Magistrate Judge Wilner suggested may be appropriate at the oral argument); or (b) why the Court should not consider the overbroad designation of the specifically identified event videos as violative of the SPO's prohibition against overbroad designations. Moreover, the Challenged Order's statement that Plaintiffs sought to de-designate all documents is demonstrably false.

Second, this Court should decline to treat *Edifecs* as dispositive here. As a threshold matter, nothing in the *Edifecs* decision suggested that the protective order at issue in that case had the same stringent prohibitions against overbroad designations as the protective order at issue here. The *Edifecs* decision did not reference an admission from the designating party that it engaged in mass, indiscriminate, and routinized designations but sought to excuse that behavior. Even if this Court chose to follow *Edifecs* (it should not), Herbalife's stark admission that it has refused to

16

individually designate documents creates an extraordinary fact pattern mandating judicial action.

Moreover, following the *Edifecs* prohibition on so-called "advisory opinions" would have the effect of shifting the burden of contesting confidential designations to the opposing party. There is a good reason why not a single court (before the Challenged Order) has followed *Edifecs*. If the Court accepts Herbalife and the Challenged Order's interpretation of *Edifecs*, litigants in this district would be free to designate all documents produced as confidential and escape responsibility by simply agreeing to remove designations for limited documents identified by parties opposing designation. That risk is not hypothetical as that is precisely what has happened here. Herbalife designated 98% of all documents as confidential, and then only agreed to de-designate select documents after forcing Plaintiffs to identify why they wanted the documents to be publicly available. This process in turn requires the Plaintiffs, in advance of any filing that refers to a document produced in this case, to disclose the document to the Defendants, ask for permission to file it, and then contend with the administrative responsibility of filing it under seal – or filing a separate motion to de-designate the document. This effect is contrary the spirit of the *Phillips* and *San Jose* decisions, and would create a chilling effect for any party to enter into a SPO in this district in the future.

The public has a presumptive right to access any documents produced to the representative Plaintiffs in this case. If Herbalife wants to keep a select number of documents confidential, the SPO and Ninth Circuit require Herbalife to take the time to specifically designate only those documents warranting protection. The Challenged Order failed to hold Herbalife to that burden, and therefore should be reversed.

      **b. The Challenged Order's holding that Plaintiffs waived their right to challenge otherwise unjustified confidentiality designations of event videos was clear error and contrary to the law.**

After relying on Plaintiffs' purported failure to identify specific categories of

documents as the basis for denying Plaintiffs' request to enforce Section 5.1 of the SPO, ECF No. 304 at ¶ 8, the Challenged Order denied Plaintiffs' request to de-designate a specific category of documents (event videos), *id.* at ¶¶ 12-13. For several independent reasons, this portion of the Challenged Order's ruling was clearly erroneous and contrary to law.

The sole basis for the Court refusing to de-designate the event videos as confidential is based on a factually and legally erroneous finding: that Plaintiffs "waived their ability" to challenge these designations when it entered into the SPO. *Id.* at ¶ 13. Although stated above, it is worth repeating that Magistrate Judge Wilner said that "I don't think that's an accurate reading of the protective order at all," Ex. A. at 14:18-19 and "[t]hat's not what I said in the order and that was really problematic," *id.* at 15-21:22. Needless to say, the 180 degree turn on this point was surprising, coupled with the characterization of Plaintiffs' position as "frivolous." The parties and Court expressly agreed that "Nothing in this Good Cause Statement or Stipulated Protective Order shall be construed as an agreement by Plaintiffs that any specific documents or categories of documents are properly considered as 'Confidential Information.'" SPO at § 1.2. The Challenged Order's reliance on the Good Cause Statement is factually and legally wrong. At a minimum, the Ninth Circuit requires Herbalife to meet its burden of making a "particularized showing of good cause with respect to <u>any individual document</u>." *See San Jose Mercury*, 187 F.3d at 1103 (emphasis added).

Moreover, even if the Challenged Order's suggestion that the SPO was a contract and Plaintiffs "obviously knew what they signed up for," ECF No. 304 at ¶ 13, were accurate, Herbalife failed to honor its end of the bargain. Any agreement by Plaintiffs would be conditioned on Herbalife complying with its obligation to avoid overbroad designations and "designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection

is not warranted are not swept unjustifiably within the ambit of this Order." SPO at § 5.1. The party that breached the SPO was Herbalife — not Plaintiffs.

Lastly, the Challenged Order failed to adequately apply the *Archbishop/Glenmede* standards in footnote 4 of the SPO.[4] Herbalife has failed to identify any <u>particularized</u> harm that would result if the event videos at issue were made public. The only argument advanced by Herbalife in their papers is that the events are not public, but "this general blanket argument would apply to all non-public communications." *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, C-06-1066 PHJ EMC, 2007 WL 4169628, at *2 (N.D. Cal. Nov. 20, 2007). Herbalife has failed to identify a single trade secret, proprietary business document, or anything else of value uttered at these events that would meet the Ninth Circuit's particularized harm standard. Even if Herbalife could identify such specific information, it has failed to explain why every second of every video must be treated as confidential rather than limiting designation to "only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order." SPO at § 5.1. The Challenged Order failed to hold Herbalife to its burden and therefore was in error.

## IV.   CONCLUSION

This case is important to not only the named Plaintiffs, but also to the tens of thousands of putative class members watching the wheels of justice turning from afar. If the Court is going to keep the public in the dark, it should at a minimum require Herbalife to explain why. The SPO, Ninth Circuit, and the interests of justice demand nothing less.

---

[4] *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995); *Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants*, 661 F.3d 417 (9th Cir. 2011).

DATED:  January 6, 2021                  Respectfully submitted,

Mark Migdal & Hayden

By:   */s/ Yaniv Adar*
       Yaniv Adar
       Attorneys for Plaintiffs Patricia Rodgers,
       Jennifer Ribalta, and Izaar Valdez