Mark T. Drooks – State Bar No. 123561
  mdrooks@birdmarella.com
Paul S. Chan – State Bar No. 183406
  pchan@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
Jon M. Jackson – State Bar No. 257554
  jjackson@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Herbalife
International of America, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, | CASE NO. 2:18-cv-07480-JAK (MRWx) |
| Plaintiffs, | [Related Case 2:13-cv-02488-BRO-RZ] |
| vs. | **HERBALIFE'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. WILLIAM W. KEEP** |
| HERBALIFE LTD., *et al.*, | |
| Defendants. | *[Filed concurrently with Declaration of Gopi K. Panchapakesan; and [Proposed] Order]* |
| | Date:    June 7, 2021 |
| | Time:    8:30 A.M. |
| | Crtrm.:  10B |
| | Assigned to Hon. John A. Kronstadt |

3700524.6

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE** that on June 7, 2021, at 8:30 A.M. in Courtroom 10B in the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable John A. Kronstadt presiding, Defendant Herbalife International of America, Inc. ("Herbalife") will move, pursuant to Federal Rules of Evidence 401, 402, 403, 702, and 703, for an order precluding Plaintiffs' expert Dr. William W. Keep from offering opinions and testimony in this case on grounds that Dr. Keep's purported expertise does not qualify him to opine on whether Herbalife's conduct and representations were fraudulent; his opinions are not based on any scientific data and analysis and therefore are not helpful to the jury; and his opinions regarding Herbalife's goal of retaining distributors are not relevant to any material issues in this case.  This motion is based on this Notice, Defendant's Memorandum in Support, the Declaration of Gopi K. Panchapakesan, and accompanying Exhibits, such matters of which this Court may take judicial notice, and other matters and arguments as may be presented to this Court in connection with this Motion.

 This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on February 8, 2021, wherein the parties were unable to agree on a resolution of the matters raised in this Motion, and Counsel for Plaintiffs indicated Plaintiffs' intent to file an opposition to this motion.

DATED:  February 15, 2021          Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


                    By:     _/s/ Mark T. Drooks_
                            Mark T. Drooks
                         Attorneys for Defendant Herbalife
                         International of America, Inc.

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................ 1

II.  RELEVANT FACTS .................................................................................. 2

    A.  Keep's Proposed Expert Opinions Conclude, in Essence, That Herbalife Acted Wrongfully or Fraudulently. ................................. 3

    B.  Keep's Expert Opinions Are Drawn from His Review of Deposition Testimony and Exhibits, Not from Any Specialized Research or Analysis. ......................................................................... 5

    C.  Keep Admits There Is Nothing Wrongful or Unlawful About a Business Having Retention as a Goal. ............................................. 7

III.  LEGAL STANDARD ................................................................................ 8

IV.  ARGUMENT ............................................................................................ 10

    A.  Keep Is Not Qualified to Opine on Whether Herbalife Acted Fraudulently by Failing to Disclose Its "Real and Unspoken Goal" of Retention, Distributors' Likelihood of Success, or Its Control Over Events. ..................................................................... 10

    B.  Keep Lacks Any Foundation to Opine on Herbalife's "Unspoken Goal" of Retention, the Likelihood of Success of Herbalife Distributors or Herbalife's Level of Control of STS Events. ............... 12

        1.  Keep's Opinions Regarding Likelihood of Success Are Untethered to Any Quantitative Analysis. .................................. 13

        2.  Keep Does Not Apply Any Expertise to Arrive at His Conclusions Regarding Herbalife's Alleged Control over STS Events. ............................................................................. 14

    C.  Keep's Opinion That Herbalife's Goal Was Retention Is Irrelevant to This Action. .................................................................. 17

V.  CONCLUSION ........................................................................................ 19

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3                                                                                    **Page(s)**

4   **Cases**

5   *Amorgianos v. Nat'l R.R. Passenger Corp.*
6         303 F.3d 256 (2d Cir. 2002) .................................................................. 12

7   *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,*
8         222 F. Supp. 2d 423 (S.D.N.Y. 2002) ............................................ 17, 18

9   *Barber v. City of Santa Rosa*
          2010 WL 5069868 .................................................................................. 10
10

11  *Berry v. City of Detroit*
          25 F.3d 1342 (6th Cir. 1994) ................................................................. 10
12

13  *Bourjaily v. United States*
          483 U.S. 171 (1987) ................................................................................. 9

14
    *Calhoun v. Yamaha Motor Corp., U.S.A.*
15        350 F.3d 316 (3d Cir. 2003) .................................................................. 10

16  *Chemipal, Ltd. v. Slim-Fast Nutritional Foods International Inc.*
17        350 F. Supp. 2d 582, 2004 WL 2998783 (Dec. 22, 2004) ................... 12

18  *Daubert v. Merrell Dow Pharms, Inc.*
          509 U.S. 579 (1993) .......................................................................*passim*
19

20  *Domingo ex rel. Domingo v. T.K.*
          289 F.3d 600 (9th Cir. 2002) ................................................................. 18
21

22  *Eghnayem v. Bos. Sci. Corp.*
          57 F. Supp. 3d 658 (S.D.W. Va. 2014) ................................................. 17
23

24  *General Elec. Co. v. Joiner*
          522 U.S. 136 (1997) ........................................................................... 9, 18
25

26  *Glastetter v. Novartis Pharms. Corp.*
          252 F.3d 986 (8th Cir. 2001) ........................................................... 13, 16

27  *Highland Capital Mgmt., L.P. v. Schneider*
28        379 F. Supp. 2d 461 (S.D.N.Y. 2005) .................................................. 16

*In re Paoli R.R. Yard PCB Litig.*
    35 F.3d 717 ( 3d Cir. 1994) ................................................................ 17

*Indiana Insurance Co. v. General Electric Co.*
    326 F. Supp. 2d 844 (N.D. Ohio 2004) ............................................. 12

*Jinro America Inc. v. Secure Investments, Inc.*
    266 F.3d 993 (9th Cir. 2001) ............................................................ 10

*Johns v. Bayer Corp.,*
    WL 1498965 (S.D. Cal. 2013) ........................................................... 17

*Keegan v. American Honda Motor Co., Inc.*
    284 F.R.D. 504 (C.D. Cal. 2012) ......................................................... 9

*Kennedy v. Collagen Corp.*
    161 F.3d 1226 (9th Cir. 1998) .......................................................... 17

*Kumho Tire Co., Ltd. v. Carmichael*
    526 U.S. 137, 119 S. Ct. 1167 (1999) ......................................... 13, 14

*Lukov v. Schindler Elevator Corp.*
    2012 WL 2428251 (N.D. Cal. June 26, 2012) ................................... 12

*Mesfun v. Hagos*
    No. CV 03-02182 MMM, 2005 WL 5956612 (C.D. Cal. Feb. 16,
    2005) ................................................................................................. 12

*Messick v. Novarits Pharm. Corp.*
    747 F.3d 1193 (9th Cir. 2014) .......................................................... 12

*Newkirk v. ConAgra Foods Inc.*
    438 Fed. App'x. 607 (9th Cir. 2011) ................................................. 15

*Redfoot v. B.F. Ascher & Co.*
    No. C 05-2045 PJH, 2007 WL 1593239 (N.D. Cal. June 1, 2007) ................... 17

*Sementilli v. Trinidad Corp.*
    155 F.3d 1130 (9th Cir. 1998) ............................................................ 9

*Smith v. Pacific Bell Telephone Co., Inc.*
    662 F. Supp. 2d 1199 (E.D. Cal. 2009) .............................................. 10

*Sterner v. U.S. Drug Enforcement Agency*
    467 F. Supp. 2d 1017 (S.D. Cal. 2006) ............................................... 9

*Thomas v. FAG Bearings Corp.*
  846 F. Supp. 1382 (W.D. Mo. 1994) ................................................................ 12

*U.S. v. Freeman*
  498 F.3d 893 (9th Cir. 2007) ...................................................................... 17, 18

*U.S. v. W.R. Grace*
  455 F. Supp. 2d 1177 (D. Mont. 2006) ............................................................ 17

*United States v. Chang*
  207 F.3d 1169 (9th Cir. 2000) ........................................................................ 10

*United States v. Flores*
  901 F.3d 1150 (9th Cir. 2018) .......................................................................... 9

**Other Authorities**

Fed. R. Evid.
  104 ..................................................................................................................... 9
  401 ..................................................................................................................... 2
  402 .............................................................................................................. 2, 17
  403 ..................................................................................................................... 2
  702 ................................................................................................. 2, 9, 10, 12
  704 ..................................................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs have proffered Dr. William W. Keep, a professor of marketing, as an expert on the economic structure and ethical appropriateness of multi-level marketing ("MLM") companies.  Although Keep's expert report presumes otherwise, his purported marketing expertise *does not* make him an expert in whether or not Defendant Herbalife International of America, Inc. ("Herbalife") committed fraud—no expert would be qualified to make such a determination.  Nor does it give him license to offer opinions that are entirely irrelevant to, and incapable of helping the jury resolve, any disputed material issues in this case.

*First*, Keep's purported expertise does not qualify him to render his overarching opinions that essentially restate the allegations in Plaintiffs' First Amended Complaint ("FAC")—namely, that it was fraudulent or inappropriate for Herbalife to tout its events as helpful to distributors' success, because (according to Keep) Herbalife's business model carries a "low" likelihood of success.  Keep also claims Herbalife made certain misrepresentations that Plaintiffs themselves have never asserted are actual misrepresentations, namely that (1) Herbalife represents that STS events are "completely independent and under local control" when in fact Herbalife "works closely" with organizers of the STS events; and (2) Herbalife fails to disclose the fact that its "true purpose" for holding events is retention of distributors.  Again, Keep is an expert in marketing—not assessing fraud or control or "true" intent.

*Second*, any expertise of Keep's that he claims *is relevant* to these opinions was not employed in reaching them.  Keep's report is devoid of any scientific analysis; evidence of Herbalife distributors' actual likelihood of success or evidence supporting his conclusion that it is "low" compared to other MLMs or businesses generally; data or expert analysis of who did or should control STS events; or data sufficient to ascertain the "real purpose" of Herbalife events.  He merely

regurgitates deposition testimony and allegations from the FAC, such as testimonials delivered from the stage at an event, and concludes that Herbalife's event practices are misleading.  Given this absence of any reliable data or analysis, Keep's opinions lack foundation and amount to no more than a parroting of Plaintiffs' central allegation that Herbalife employed a fraudulent and inappropriate business model.  The jury is capable reaching or rejecting this conclusion without Keep's help; indeed, that function is exclusively within the province of the jury.

*Third*, Keep's opinion that Herbalife's goal was retention of distributors is entirely irrelevant.  Keep admits there is nothing wrong or unlawful about a company pursuing retention.  While he contends that it was a violation of industry ethics code and standards for Herbalife not to disclose its retention goals, industry codes and standards have *nothing to do* with Plaintiffs' RICO, unfair competition and negligent representation claims in this case; none of Plaintiffs' claims turn on whether these codes or standards were violated.  This case is about whether Herbalife conspired with top distributors to make false statements or fraudulent omissions at and about events; it is not about the company's compliance with direct-selling industry standards or alleged industry ethics violations.  Keep's opinions are intended solely to tarnish Herbalife and prejudice the jury.

Because Keep's proposed opinions consist of matters that are outside of his expertise, lacking in foundation and unhelpful to the jury, and irrelevant to any material issue in dispute, Plaintiffs cannot satisfy their burden to establish that Keep is qualified to offer expert opinions in this case.  Keep should be precluded from testifying or offering expert opinions or evidence pursuant to *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 401, 402, 403, 702, and 704.

## II.  RELEVANT FACTS

Plaintiffs have designated Keep, a marketing professor and self-described "vocal critic of MLM," to offer opinions regarding Herbalife's use of Success

Training Seminars ("STS") and corporate events.  (Expert Report of Dr. William W. Keep ("Keep Rpt.") ¶ 3, Ex. B, attached, to the Declaration of Gopi K. Panchapakesan ("Panchapakesan Decl.") as Ex. A; February 3, 2021 Transcript of Deposition of William W. Keep ( "Keep Tr.") at 136:13-19, Panchapakesan Decl., Exh. B.)  Keep's academic work has included the study of MLMs.  He admitted in deposition that in all but one of the several cases in which he has testified as an expert, he opined that the MLM at issue was a pyramid scheme.[1]  According to Keep, his training and experience "provide a relevant perspective in understanding multilevel marketing practices" that render him qualified to offer the opinions in his expert report.  (Keep Rpt. ¶ 4, Panchapakesan Decl., Exh. A; Keep Tr. at 8:25-9:10, Panchapakesan Decl., Exh. B).

### A.   Keep's Proposed Expert Opinions Conclude, in Essence, That Herbalife Acted Wrongfully or Fraudulently.

Keep intends to offer the following opinions in this case:

I.   "Retention, not distributor success, is the real and unspoken goal of the Circle of Success and regular attendance at STS and corporate events";

II.   "At a cost to downline distributors, Herbalife worked to greatly expand STS events that are misrepresented as completely independent and under local control";

III.   "As part of the Circle of Success, over many years Herbalife and top distributors communicated to downline distributors the necessity of regular attendance at STS and corporate events in order to achieve success";

IV.   "Repetitive storytelling of atypical experiences inspire, ignore, and obscure the typical distributor experience, thereby providing,

---

[1]   The lone exception was a case in which that issue was not the subject of his testimony.  (Keep Tr. at 138:18-139:12, Panchapakesan Decl., Exh. B.)

1    disclaimers notwithstanding, a net impression that the path to success

2    relies upon following the Circle of Success and monthly attendance at

3    STS and corporate events";

4        V.    "Disinformation shared at STS and corporate events obscures and

5    misrepresents the actual typical distributor compensation and

6    experiences"; and

7       VI.    "Herbalife adopted a hear-no-evil, see-no-evil, speak-no-evil approach

8    to information shared with downline distributors and potential

9    distributors, failing to share available data relevant to the decision to

10   become or remain an Herbalife distributor and to follow the Circle of

11   Success regime."

12   (Keep Rpt. ¶ 6, Panchapakesan Decl., Exh. A.)

13       Keep's opinions boil down to his belief that it was fraudulent or otherwise

14   wrong for Herbalife to promote Herbalife events while also:

15       1)    Representing that STS and corporate events were important to

16            distributors' success when, in fact, Herbalife's business model provides

17            a "low" likelihood of success;

18       2)    Failing to disclose that the "real goal" of STS and corporate events was

19            distributor retention; and

20       3)    Representing that STS events were completely independent and under

21            local control, when in fact Herbalife "maintains controlling influence

22            over" those events.

23   (*Id.* at ¶ 21; *see also*, Keep Tr. at 11:16-19 (affirming that it is Keep's opinion that it

24   is "wrong to make misrepresentations to induce people to attend events."),

25   Panchapakesan Decl., Exh. B.)  The latter two contentions are not even alleged in

26   the FAC as misrepresentations upon which Plaintiffs base their claims.

27

28

**B.      Keep's Expert Opinions Are Drawn from His Review of Deposition Testimony and Exhibits, Not from Any Specialized Research or Analysis.**

Keep is clear in his report that his opinions are ***not*** the product of any specialized research or studies that he conducted in this case.  (Keep Rpt. ¶ 4, Panchapakesan Decl., Exh. A.)  Rather, apart from some irrelevant studies that purportedly showed a correlation between event attendance and distributor retention, they are based entirely on his analysis of deposition testimony, exhibits, and other papers from this case, as well as industry codes of conduct and ethics.  (*Id.*)  Keep's deposition testimony confirmed as much.

While Keep opines that Herbalife's representations regarding event attendance were wrongful or fraudulent in light of distributors' alleged "low" likelihood of success (*id.* at ¶ 14), he acknowledged in deposition that he has no frame of reference to assess what constitutes an acceptable success rate.  (Keep Tr. at 135:11-20, Panchapakesan Decl., Exh. B.)  Nor did he compare Herbalife's success rates—which he purports to have gleaned from Herbalife's publicly available materials—to those of other businesses or MLMs to provide some point of reference for what makes Herbalife's success rates "low" (*id.* at 134:13-135:20):

> Q:      Say that again there's no legal requirement that MLMs publish information about the success rate of their distributors?
>
> A:      I believe that's correct.
>
> Q:      Now among those that you studied Nanocare, Genesis NuSkin perhaps some others, did you conclude that any of them had what you considered to be a -- an acceptable level of success among distributors?
>
> A:      Yeah I described earnings at how they're being shared (and how).  I -- let other people decide whether or not it's acceptable."

(*Id.* at 135:7-20) (objection omitted).  Despite this inability to quantify an acceptable success rate, and failure to discuss the success rates of any businesses or MLMs as a means of comparison in preparing his opinions in this case, Keep has had no problem taking a stance that is "highly critical" of the distributor success rate of

Herbalife and *every other MLM he has ever studied*.  (*Id.* at 135:22-136:6.)

Keep similarly reached his opinions regarding Herbalife's obligation to disclose the extent of its control over STS events based not on expert research or analysis but, rather, on the inferences and conclusions he drew from the same testimony, email correspondence, event fliers, and other evidence that will be available to the jury.  (Keep Tr. at 70-71, Panchapakesan Decl., Exh. B. (testifying that the documents Keep is relying on to reach his opinions on control over events are the transcripts, exhibits and ethics trade association ethics and conduct codes listed in his report).)  Yet, Keep concedes that he is not in any better position than the jury to assess whether or not events in question were locally controlled.  (*Id.* at 65:25-66:3.)

Though he opines that it was fraudulent or wrong of Herbalife not to disclose its alleged involvement in STS events, Keep admits that he has no basis, other than reading deposition transcripts in this case, to contend that any distributors represented to other distributors that STS events were completely independent.  (*Id.* at 61:7-62:9, 63:21-64:13.)

> Q:  So it is your opinion that certain Herbalife distributors made representations to other Herbalife distributors that the events were locally controlled –
>
> A:  Yes.
>
> Q:  -- in order to induce those people to attend the event?
>
> A:  Yes.
>
> Q:  . . . How frequently did that happen?
>
> A:  I don't - - No.  I don't have enough data.
>
> Q:  And the only way you know that is by reading the deposition transcripts; is that right?
>
> A:  Correct.

(*Id.* at 63:21-64:13.)  He also has no idea what percentage of distributors believe that STS events are solely under local control, or would not go to events if they believed

the events *were not* under local control, and he has undertaken no study or analysis to obtain that information.  (*Id.* at 90:1-92:11.)

> Q:   If [sic] fact if the -- if all of the events were known to be under Herbalife control, do you think nobody would attend them?
>
> A:   I don't -- I -- that is not what I think.
>
> Q:   So I mean in the -- in the hypothetical world in which Herbalife had a big sign out and made clear everywhere Herbalife controls these STS events these are corporate events you don't think the events would be empty do you.
>
> A:   I do not think they'd be empty
>
> Q:   Do you think people would pay less to go to them?
>
> A:   I don't know what people would pay.
>
> Q:   So other than some generalized sense that Herbalife distributors prefer to go to events that they think are locally controlled you really have no other information as to the extent to which the belief that they were under local control influenced the conduct of any Herbalife distributors is that --
>
> A:   I don't have that data, that's correct.

(*Id.* at 91:7-92:11.)  Keep also acknowledges that the STS and corporate events have value to some attendees, though he has not undertaken any analysis to quantify that proportion.  (*Id.* at 41:3-10, 161:4-7.)

## C.   Keep Admits There Is Nothing Wrongful or Unlawful About a Business Having Retention as a Goal.

Keep's overarching opinion is that "retention is the unspoken goal [of events] and despite whatever small benefit the distributor may get from attending an event they are unaware of the real goal which is to retain them to keep trying in an environment where a large percentage will achieve no financial success.  That's in my view not just unethical but potentially illegal." (*Id.* at 52:22-53:4, 127:24-128:4.)  Keep nevertheless concedes that there is nothing inherently wrong with having retention as a goal, and that retention is not necessarily inconsistent with distributor success.  (*Id.* at 32:24-33:1.)  Keep admitted that:

- "Making distributors more successful is not inconsistent with

retention."  (*Id.* at 35-37.)

- It is "verifiable" that "[d]istributor success would tend to improve retention."  (*Id.* at 35:9-12, 37:20-23.)

- "[S]ome ways to improve the likelihood of success would be to educate distributors concerning new product."  (*Id.* at 36:9-13.)

- "Some ways to improve the likelihood of success would be to assist distributors in building [a] down line."  (*Id.* at 36:14-17.)

- "It would be important to distributor success to educate them concerning ethical issues."  (*Id.* at 36:18-23.)

- Despite believing "events provide some value to distributors," Keep does not "believe many distributors are capable of assessing whether benefits they receive at events justify the cost."  (*Id.* at 50:15-22.)

Nevertheless, Keep believes that "retention is [] an ethically inappropriate goal of an MLM" because of what he characterizes—without any quantifiable standard for the characterization—as a "very high failure rate" of MLM distributors. (*Id.* at 32:21-33:14.)  While conceding that retention is not wrongful *per se*, Keep still concludes that, because retention is Herbalife's primary goal, *any* objective of *any* Herbalife event must run afoul of ethical norms (*id.* at 37:7-16):

> Q:   Okay.  Are there any goals for Herbalife events that in your mind do not violate ethical norms?
>
> A:   Given my position that a goal – overriding goal is the overriding unspoken goal is retention then my answer's no.

(*Id.* at 37:11-16).  It is this purported violation of ethical norms by Herbalife that informs Keep's conclusion that Herbalife's conduct was "not just unethical but potentially illegal"—*i.e.*, that Herbalife engaged in actionable misconduct or fraud. (*Id.* at 52:21-53:4.)

## III.   LEGAL STANDARD

The U.S. Supreme Court has charged district courts with a "gatekeeping" function with respect to admitting expert testimony.  *Daubert v. Merrell Dow*

1 *Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The admissibility of all expert

2 testimony under Rule 702 is a preliminary question of law for the district court to

3 determine pursuant to Rule 104.  *Daubert*, 509 U.S. at 592; Fed. R. Evid. 104(a).[2]

4 Federal Rule of Evidence 702, which governs the admission of expert testimony,

5 provides that:

> 6 A witness who is qualified as an expert by knowledge,
> skill, experience, training, or education may testify in the
> 7 form of an opinion or otherwise if:
>
> 8 (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the
> 9 evidence or to determine a fact in issue;
>
> 10 (b) the testimony is based on sufficient facts or data;
>
> 11 (c) the testimony is the product of reliable principles and
> methods; and
>
> 12
> (d) the expert has reliably applied the principles and
> 13 methods to the facts of the case.

14 Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of

15 establishing that the proffered testimony is admissible under Rule 702.  *See*

16 *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

17       The district court, exercising its gatekeeping function, must determine

18 whether the expert is qualified to provide the proffered testimony, whether the

19 testimony is relevant, whether the testimony is useful to a finder of fact, and whether

20 the testimony is reliable and trustworthy.  *Sementilli v. Trinidad Corp.*, 155 F.3d

21 1130, 1134 (9th Cir. 1998); *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp.

22 2d 1017, 1033 (S.D. Cal. 2006); *Keegan v. American Honda Motor Co., Inc.*, 284

23 F.R.D. 504, 514-20 (C.D. Cal. 2012).  Rule 702's ultimate goal "is to protect juries

24 from being swayed by dubious scientific testimony."  *United States v. Flores*, 901

25

26 ─────────────────

27 [2]   The failure of a district court to make this determination and state its reasons for excluding proffered testimony is an abuse of discretion and reversible error.

28 *General Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997).

F.3d 1150, 1165 (9th Cir. 2018) (citation omitted).  As set forth below, Keep's proffered testimony is precisely the type of irrelevant expert testimony the *Daubert* Court intended for district courts to exclude.

## IV.  ARGUMENT

### A.  Keep Is Not Qualified to Opine on Whether Herbalife Acted Fraudulently by Failing to Disclose Its "Real and Unspoken Goal" of Retention, Distributors' Likelihood of Success, or Its Control Over Events.

As a threshold matter, "care must be taken to assure that a proffered witness truly qualifies as an expert" under Rule 702 before allowing him or her to come "before the jury cloaked with the mantle of an expert." *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).  The key determination is whether the witness has "specialized knowledge" through "experience, training or education" that is "relevant to such evidence or fact in issue." Fed. R. Evid. 702; *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000).  While "background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003).  This is because the "issue with regard to expert testimony is not the qualifications of a witness in the abstract, *but whether those qualifications provide a foundation for a witness to answer a specific question.*"  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (emphasis added); *see also United States v. Chang*, 207 F.3d at 1172 ("To qualify as an expert, a witness must have 'knowledge, skill, experience, training or education' *relevant to such evidence or fact in issue*.") (emphasis added); *Barber v. City of Santa Rosa*, 2010 WL 5069868, *7 (similar); *Smith v. Pacific Bell Telephone Co., Inc.*, 662 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (similar).

Keep's "expert" opinions amount to his own beliefs that Herbalife's "real and

10

unspoken goal" of retention was unethical, and its conduct in failing to disclose this "goal," or information about distributor success and STS events, was fraudulent. But Keep is a professor of marketing—not an expert in fraud, ethics, or the hidden intentions of others.  He is not qualified to opine on Herbalife's "real and unspoken goal" in putting on an event program for its distributors.  Similarly, Keep does not purport to have expertise or knowledge of what constitutes "local control" as opposed to corporate control of events, or how to make that distinction.

Keep is equally unqualified to opine on whether Herbalife failed to disclose information about the control of STS events and the unquantified "low success rate" of distributors, or whether it was fraudulent or unethical for Herbalife not to communicate that information.  He has no professional expertise in determining what Herbalife and third-party distributors "communicated to downline distributors" "over many years."  He cannot serve as a substitute for the presentation of evidence to a factfinder of what Herbalife actually did and said.  Nor is it for Keep to explain "the net impression" created by what was presented at events.  Or whether "disinformation" was presented at events and, if so, whether it "obscures and misrepresents" what Keep considers "the actual typical distributor compensation and experiences."  These are factual conclusions to be drawn (or not) from the presentation of evidence to the trier of fact, not matters of expert opinion.

And it is certainly not for Keep to determine whether, ultimately, Herbalife acted fraudulently or wrongfully.  Keep is not an ethicist, cleric, judge, or jury, and has no credentials on which to assess the ethics or legality of Herbalife's conduct. The industry ethics and conduct codes Keep quotes essentially say nothing more than MLMs should avoid fraudulent conduct; they not do apply that generalized standard to anything akin to Herbalife's alleged conduct here.  They have no bearing on whether Herbalife acted fraudulently with respect to the claims in this case.

As a matter of law, expert testimony should be excluded where, as here, the expert's report "amounts to nothing more than personal opinions and assumptions

regarding the facts of the case and the motivations that led to its filing," and "many of the opinions . . . are nothing more than rank speculation." *Mesfun v. Hagos*, No. CV 03-02182 MMM (RNBX), 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005). "Opinions of an expert need not be accepted when they are based on nothing more than personal opinion or belief, instead of an understandable scientific [or experiential] basis." *Id.*, citing *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1382, 1393 (W.D. Mo. 1994); *see also, Chemipal, Ltd. v. Slim-Fast Nutritional Foods International Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004) ("testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder"); *Indiana Insurance Co. v. General Electric Co.*, 326 F. Supp. 2d 844, 847 (N.D. Ohio 2004) (same). Such expert testimony is inadmissible because it "would not assist the trier of fact, as jurors are more than capable of drawing their own conclusions about the evidence presented without the benefit of [the expert's] personal interpretation of it." *Mesfun*, 2005 WL 5956612 at *11.

Because Keep has no expertise that qualifies him to render opinions on whether Herbalife acted fraudulently, unethically, or otherwise wrongfully, his opinions and testimony should be excluded entirely.

**B.** **Keep Lacks Any Foundation to Opine on Herbalife's "Unspoken Goal" of Retention, the Likelihood of Success of Herbalife Distributors or Herbalife's Level of Control of STS Events.**

Expert testimony is reliable only if the expert's underlying reasoning and methodology are scientifically valid. *See Daubert, supra*, 509 U.S. at 589–90; *Messick v. Novarits Pharm. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Lukov v. Schindler Elevator Corp.*, No. 5:11–cv–00201 EJD, 2012 WL 2428251 *3 n.4 (N.D. Cal. June 26, 2012) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir.

2002)). Thus, when district courts weigh the *Daubert* factors, the district court must continue to function as a gatekeeper who "separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (citations omitted). Courts must focus on the "reasonableness of using [the expert's] approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 154, 119 S. Ct. 1167, 1177 (1999).

The methodology, data, and analyses (or lack thereof) that Keep relied on here are "simply inadequate to support the conclusions [he] reached" regarding Herbalife's goals, its distributors' likelihood of success, its control over STS events, and whether Herbalife acted fraudulently by not disclosing that information when promoting events.  Keep's expert report and deposition testimony make clear that, other than a few correlation studies not relevant here, no expert research, analysis, or knowledge informed the opinions he intends to offer.  Keep reached his opinions regarding Herbalife's "true, unspoken goal" of retention (and all of his other opinions) by reviewing the same deposition transcripts, exhibits, and documents that will be made equally available to the jury.

### 1. Keep's Opinions Regarding Likelihood of Success Are Untethered to Any Quantitative Analysis.

Keep's latter three opinions—which all relate to Herbalife's alleged misrepresentation of distributors' likelihood of success[3]—are effectively an

---

[3] Keep's Opinions IV through VI are: (IV) "Repetitive storytelling of atypical experiences inspire, ignore, and obscure the typical distributor experience, thereby providing, disclaimers notwithstanding, a net impression that the path to success relies upon following the Circle of Success and monthly attendance at STS and corporate events;" (V) "Disinformation shared at STS and corporate events obscures

opportunity for Plaintiffs to make him a dubiously-credentialed mouthpiece for their theory of the case.  But Keep admitted he relied on no specialized studies, analysis, or data to compare Herbalife distributors' rate of success to those of other MLMs or businesses, and did not even have a standard or metric to assess what would constitute an "acceptable," as opposed to an unacceptably low, rate of success.  Absent any analysis, study, or methodology whatsoever, there is simply no foundation for these untethered opinions.  *Kumho Tire*, 526 U.S. at 138 (when an expert's methodology is unsound, the expert's testimony should be excluded).  And, as discussed above, Keep has no expertise that would qualify him to perform this kind of expert analysis in any event.

> **2.    Keep Does Not Apply Any Expertise to Arrive at His Conclusions Regarding Herbalife's Alleged Control over STS Events.**

Keep's complete lack of foundation to opine that Herbalife controlled and concealed its control over local events is even more egregious.  During depositions in this case, numerous distributors associated with the non-corporate (*i.e.*, local) STS event programs testified that the events are primarily under the control of top level distributors, not Herbalife.  Specifically, as is reflected in their sworn declarations, the distributors testified that:

- The events are put on locally (*See* Dkt. 218-3 ¶ 13; Dkt. 218-4 ¶ 3; Dkt. 218-5 ¶ 3);
- Expenses are paid by distributors who sponsor the STS events (*See* Dkt. 218-4 ¶ 3);

---

and misrepresents the actual typical distributor compensation and experiences;" and (IV) "Herbalife adopted a hear-no-evil, see-no-evil, speak-no-evil approach to information shared with downline distributors and potential distributors, failing to share available data relevant to the decision to become or remain an Herbalife distributor and to follow the Circle of Success regime."

- Apart from providing sample product to be given away at STS events, Herbalife does not provide financial support for the events (Dkt. 218-3 ¶ 13; Dkt. 218-4 ¶ 3; Dkt. 218-5 ¶ 3);

- Tickets are sold by distributors and the revenues are kept by the distributors to offset the cost of the events conduct (Dkt. 218-3 ¶ 13; Dkt. 218-4 ¶ 3; Dkt. 218-5 ¶ 3); and

- Herbalife does not provide scripts or dictate what is said at events, other than by offering model agendas and insisting that communications be consistent with Herbalife's rules of conduct (Dkt. 218-3 ¶¶ 13, 15, 16; Dkt. 218-4 ¶¶ 4, 6; Dkt. 218-5 ¶¶ 4, 6).

Moreover, Plaintiffs themselves admit in the FAC that the STS system is "owned and controlled by a web of entities" and registered to distributors—*not Herbalife*—and that "top distributors receive all of the revenue from STS ticket sales." (FAC ¶¶ 76, 80, Dkt. 202.)

While Keep does not purport to have any particular expertise or methodology to assess the extent to which local distributors versus Herbalife "control" these events, and in spite of Plaintiffs own allegations to the contrary, Keep states that he simply does not believe this testimony. Without ever defining "control"—financial, administrative, content-driven, or otherwise—Keep offers the unsupported conclusion that the events are not "completely independent" or "under local control." Keep admits that he reached this conclusion (that Herbalife exercised control over local events) based on nothing other than deposition testimony of a handful of individuals. However, nothing about Keep's career as a marketing professor qualifies him to make that determination any better than a juror can. *See*, *Newkirk v. ConAgra Foods Inc*. 438 Fed. App'x. 607, 608- 09 (9th Cir. 2011) (expert's testimony excluded where he did not sufficiently justify his foundational assumption or refute contrary evidence). Nor is this purely factual determination appropriate for an expert to make anyway.

1    Keep's derivative opinion, that it was fraudulent for Herbalife not to disclose

2    its purported control over local STS events, is equally lacking in foundation.  In the

3    first place, as discussed above, Keep admits that he has no basis, other than his

4    assessment of deposition testimony and extrapolations from the conduct of

5    deponents, to conclude that some distributors misrepresented the extent of

6    Herbalife's control over local events.  Moreover, even assuming that these

7    misrepresentations were made to some distributors, Keep has no foundation for his

8    conclusion that the distributors actually cared, *i.e.*, that they were defrauded.  To the

9    contrary, Keep admits that some distributors found Herbalife events valuable

10   regardless of who "controlled" them (though he performed no survey or analysis of

11   this issue), and that he took no steps to determine how many distributors would or

12   would not attend an event they knew *was not* under local control.[4]

13       As such, Keep's opinions reflect the kind of "subjective speculation that

14   masquerades as scientific knowledge" eschewed by *Daubert* and the Rules of

15   Evidence.  *Glastetter*, 252 F.3d at 989.  The "methodology" and data that produced

16   Keep's "expert" opinions are no different from those available to the jury:  a review

17   of the testimony and evidence in this case to reach a determination as to Herbalife's

18   conduct, based not on any special skill, analysis, or research, but on the same life

19   experience and judgment that any lay person possesses.  Keep's purported expert

20   opinions are devoid of any foundation and any value to the jury, and therefore are

21   inadmissible.  *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461,

22   469 (S.D.N.Y. 2005) ("[A]n expert cannot be presented to the jury solely for the

23

24   _____

[4]   Plaintiffs may offer Keep's opinion regarding "control" as evidence that
25   Herbalife and certain unidentified distributors constituted an "enterprise" under
     RICO.  But Keep's methodology is no less flawed if the testimony is re-engineered
26   for that purpose.  Moreover, because Keep does not distinguish between financial,
     administrative, content-related or other types of control, his opinion as to "control"
27   has no connection to the definition of a RICO "enterprise."
28

1   purpose of constructing a factual narrative based upon record evidence.");

2   *Eghnayem v. Bos. Sci. Corp.*, 57 F. Supp. 3d 658, 699 (S.D.W. Va. 2014) (granting

3   *Daubert* motion where expert's report reflected "a narrative review of corporate

4   documents and his opinions are riddled with improper testimony regarding

5   [defendant's] state of mind and legal conclusions.").

6       **C.     Keep's Opinion That Herbalife's Goal Was Retention Is Irrelevant**

7                  **to This Action.**

8       Keep's opinions regarding Herbalife's retention goals are not relevant and do

9   not "fit" or shed light on specific factual issues in this litigation.  Absent a "valid

10  scientific connection to material facts in dispute," an expert opinion is irrelevant and

11  inadmissible.  *See* Fed. R. Evid. 402; *U.S. v. W.R. Grace*, 455 F. Supp. 2d 1177,

12  1179 (D. Mont. 2006) (citing *Daubert*, 509 U.S. at 591).  Expert testimony is

13  relevant only if the expert properly applies his or her methodology or reasoning to

14  the facts in issue.  *See Daubert*, 509 U.S. at 591–93; *U.S. v. Freeman*, 498 F.3d 893,

15  901 (9th Cir. 2007).  "Under the relevancy or 'fit' prong, the testimony must be

16  'relevant to the task at hand: *i.e.*, "logically advance[] a material aspect of the

17  proposing party's case.'"  *Johns v. Bayer Corp.*, WL 1498965 (S.D. Cal. 2013)

18  (citations omitted).  Only expert testimony that is "sufficiently tied to the facts of the

19  case that it will aid the jury in resolving a factual dispute," should be admitted.

20  *Daubert*, 509 U.S. at 591.

21      Relevancy requires opinions that assist the trier of fact in reaching a

22  conclusion necessary to the case, *see Kennedy v. Collagen Corp.*, 161 F.3d 1226,

23  1230 (9th Cir. 1998), but "the standard for fit is higher than bare relevance."

24  *Redfoot v. B.F. Ascher & Co.*, No. C 05-2045 PJH, 2007 WL 1593239, *4 (N.D.

25  Cal. June 1, 2007) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, at 745

26  n.13 ( 3d Cir. 1994).)  As the district court noted in *Astra Aktiebolag v. Andrx*

27  *Pharmaceuticals, Inc.*:

28           [E]ven if the methodology used by the expert is considered

1
2
3
4
5
6
7

to be reliable, the expert's testimony will nevertheless fail to meet the "fit" requirement and should be excluded if the data relied upon by the expert is materially different from the data relevant to the facts of the case. [citation omitted] If the expert has failed to consider the necessary factors or if the analysis is premised upon a faulty assumption, his testimony may be excluded for lack of probative value. [citation omitted.] Likewise, where the proffered testimony is based on a methodology transposed from one area to a completely different context, and there is no independent research supporting the transposition, the "fit" requirement may not be satisfied.

8   222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002); *see also Domingo ex rel. Domingo v.*

9   *T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S.

10   136, 146 (1997)) (expert testimony inadmissible where "there is simply too great an

11   analytical gap between the data and the opinion proffered").

12         Here, Keep's testimony that retention was the overarching goal of Herbalife

13   events cannot "logically advance a material aspect" of Plaintiffs' case because it

14   does not "fit" the facts of this case.  This case is a civil RICO and unfair competition

15   action premised on fraud and misrepresentation.  Whether Herbalife aimed to

16   promote retention through its events is entirely irrelevant to whether Herbalife

17   engaged in *actionable* representations or omissions.  *Daubert*, 509 U.S. at 591–93;

18   *U.S. v. Freeman*, 498 F.3d at 901.  In any event, expert testimony is not necessary to

19   establish that Herbalife hopes that its events system will increase retention among its

20   distributors.  Of course it would.  It is manifestly good for any business to retain

21   distributors and/or customers.  Keep himself admits that retention is not an ethically

22   impermissible goal of any business, including MLMs.  Wanting to retain distributors

23   does not make anything Herbalife did unethical, much less unlawful so as to be

24   relevant to Plaintiffs' RICO and fraud-based claims here.  Keep's global opinions on

25   the overall ethics and propriety of an event system aimed at retention are no

26   substitute for what the Plaintiffs manifestly do not have here—evidence of specific

27   misrepresentations made widely to the class.

28         There is no valid connection between Keep's overarching opinion that the

primary goal of Herbalife events was retention, and any fact at issue that tends to prove Plaintiffs' RICO and other fraud-based claims in this action. *Daubert*, 509 U.S. at 591 (expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")  Keep's opinions and expert report are irrelevant and inadmissible.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Herbalife respectfully urges the Court to enter an order excluding Dr. William W. Keep and precluding him from offering any testimony or other evidence in this case.

DATED:  February 15, 2021          Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Jon M. Jackson
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By:      */s/ Mark T. Drooks*
　　　　　　　Mark T. Drooks
　　　Attorneys for Defendant Herbalife
　　　International of America, Inc.

3700524.6

19