Mark T. Drooks – State Bar No. 123561
  mdrooks@birdmarella.com
Paul S. Chan – State Bar No. 183406
  pchan@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
Jon M. Jackson – State Bar No. 257554
  jjackson@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Herbalife
International of America, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HERBALIFE LTD., *et al.*, <br><br> Defendants. | CASE NO. 2:18-cv-07480-JAK (MRWx) <br><br> [Related Case 2:13-cv-02488-BRO-RZ] <br><br> **HERBALIFE'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. JANJA LALICH** <br><br> *[Filed concurrently with Declaration of Gopi K. Panchapakesan; and [Proposed] Order]* <br><br> Date:    June 7, 2021 <br> Time:    8:30 A.M. <br> Crtrm.:  10B <br><br> Assigned to Hon. John A. Kronstadt |

3698443.6

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 7, 2021, at 8:30 A.M. in Courtroom 10B in the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable John A. Kronstadt presiding, Defendant Herbalife International of America, Inc. ("Herbalife") will move pursuant to Federal Rules of Evidence 702 and 403 for an order excluding the testimony of Plaintiffs' expert Dr. Janja Lalich on grounds that Dr. Lalich is not qualified to offer expert opinions as to the disputed issues in this case; the opinions she proposes to offer are not relevant to any disputed issue; and her opinions, which are entirely lacking in relevance or helpfulness, can only serve to inflame the jury. This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Gopi K. Panchapakesan, and accompanying Exhibits, such matters of which this Court may take judicial notice, and other matters and arguments as may be presented to this Court in connection with this Motion.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on February 8, 2021, wherein the parties were unable to agree on a resolution of the matters raised in this Motion, and Counsel for Plaintiffs indicated Plaintiffs' intent to file an opposition to this Motion.


DATED:  February 15, 2021         Mark T. Drooks
                                  Paul S. Chan
                                  Gopi K. Panchapakesan
                                  Jon M. Jackson
                                  Bird, Marella, Boxer, Wolpert, Nessim,
                                  Drooks, Lincenberg & Rhow, P.C.


                        By:      */s/ Mark T. Drooks*
                                  Mark T. Drooks
                        Attorneys for Defendant Herbalife
                        International of America, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................. 1

    A.     The Material Factual and Legal Issues Underlying Plaintiffs'
        Claims Bear No Connection to Cults or Extremist Groups. ................... 2

    B.     Lalich's Academic Background Reflects No Experience in
        Assessing Fraudulent Business Practices, Business Performance,
        or Any Other Disputed Material Issue. ................................................... 3

    C.     Lalich's Opinions Center on Her Conclusion That Herbalife Is
        a Cult. .................................................................................................... 4

    D.     In Spite of Her Opinions on the Nature of Herbalife as an
        Organization, Lalich Admits That She Has No Knowledge of
        Basic Aspects of Herbalife's Business and Did Not Attempt to
        Learn About Its Business Model or Practices. ........................................ 5

    E.     Lalich Admits That Herbalife Distributors' Experiences Are Far
        More Variable Than Those of the Three Distributors Whose
        Experiences She Considered. .................................................................. 6

III.   LEGAL STANDARD ............................................................................ 8

IV.    ARGUMENT ......................................................................................... 9

    A.     Lalich Lacks Expertise Relevant to the Matters at Issue in This
        Case. ..................................................................................................... 10

    B.     Lalich's Opinions Are Not Based on Any Reliable Methodology
        Applied to the Material Facts of This Case. ......................................... 12

    C.     Lalich's Proposed Expert Opinions Are Not Relevant to, and Do
        Not "Fit," the Facts at Issue in This Case. ........................................... 14

    D.     Lalich's Irrelevant Expert Opinions Lack Probative Value and
        Risk Unfairly Prejudicing and Inflaming the Jury. .............................. 17

V.     CONCLUSION ................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................ 15

*Barber v. City of Santa Rosa*
    No. C–08–5649 MMC, 2010 WL 5069868 (N.D. Cal. Dec. 7, 2010) .............. 10

*Berry v. City of Detroit,*
    25 F.3d 1342 (6th Cir. 1994) .......................................................................... 10

*Bourjaily v. United States*
    483 U.S. 171 (1987) .......................................................................................... 9

*Calhoun v. Yamaha Motor Corp., U.S.A.*
    350 F.3d 316 (3d Cir. 2003) .......................................................................... 10

*Daubert v. Merrell Dow Pharms, Inc.*
    509 U.S. 579 (1993) ...............................................................................*passim*

*Domingo ex rel. Domingo v. T.K.*
    289 F.3d 600 (9th Cir. 2002) .......................................................................... 15

*Flores v. Gain Capital Group*
    No. CV 17-7873-DMG, 2018 WL 7501120 (C.D. Cal. Dec. 21,
    2018) ................................................................................................................ 16

*General Elec. Co. v. Joiner*
    522 U.S. 136 (1997) ................................................................................... 8, 15

*Glastetter v. Novartis Pharms. Corp.*
    252 F.3d 986 (8th Cir. 2001) .......................................................................... 12

*In re Paoli R.R. Yard PCB Litig.*
    35 F.3d at 745 n.13 .......................................................................................... 15

*Jinro America Inc. v. Secure Investments, Inc.*
    266 F.3d 993 (9th Cir. 2001) .......................................................................... 10

*Johns v. Bayer Corp.*
  No. 09cv1935 AJB, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ................... 14

*Keegan v. American Honda Motor Co., Inc.*
  284 F.R.D. 504 (C.D. Cal. 2012)....................................................... 9

*Kennedy v. Collagen Corp.*
  161 F.3d 1226 (9th Cir. 1998) ....................................................... 14

*Kumho Tire Co., Ltd. v. Carmichael*
  526 U.S. 137 (1999) ................................................................ 12

*Messick v. Novarits Pharm. Corp.*
  747 F.3d 1193 (9th Cir. 2014) ...................................................... 12

*People v. Roberson*
  No. C064027, 2012 WL 3217709 (Cal. App. Aug, 9, 2012) ............................ 4

*Redfoot v. B.F. Ascher & Co.*
  No. C 05-2045 PJH, 2007 WL 1593239 (N.D. Cal. June 1, 2007).................... 15

*Sementilli v. Trinidad Corp.*
  155 F.3d 1130 (9th Cir. 1998) ....................................................... 9

*Smith v. Pacific Bell Telephone Co., Inc.*
  662 F.Supp.2d 1199 (E.D. Cal. 2009) .............................................. 10

*Sterner v. U.S. Drug Enforcement Agency*
  467 F. Supp. 2d 1017 (S.D. Cal. 2006) ............................................. 9

*Target Corp. v. Greenberg Farrow Architecture, Inc.*
  No. 10–4810, 2012 WL 1963362 (D. Minn. May 31, 2012) ........................... 17

*U.S. v. Freeman*
  498 F.3d 893 (9th Cir. 2007) ....................................................... 14

*U.S. v. W.R. Grace*
  455 F. Supp. 2d 1177 (D. Mont. 2006) ............................................. 14

*United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*
  660 F. Supp. 2d 1163 (C.D. Cal. 2009)............................................ 16

*United States v. Chang*
  207 F.3d 1169 (9th Cir. 2000) ................................................... 9, 10

*United States v. Flores*
   901 F.3d 1150 (9th Cir. 2018) ................................................................. 9

**Other Authorities**

Fed. R. Evid.
   104 ............................................................................................... 1, 8
   401 ..................................................................................................... 1
   402 ............................................................................................. 1, 14
   403 ......................................................................................... 1, 9, 17
   702 ........................................................................................... *passim*
   703 ..................................................................................................... 9
   704 ..................................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Herbalife International of America, Inc. ("Herbalife") moves to exclude the testimony and expert report of Plaintiffs' purported expert on cults, Dr. Janja A. Lalich, pursuant to *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 104, 401, 402, 403, 702, and 704, on the grounds that neither Lalich's purported expertise nor the inflammatory opinions she intends to offer are relevant to the issues in this case.

*First*, Lalich purports to have expertise in "self-sealing systems," *i.e.*, cults and extremist groups.  Even assuming that her background and litigation experience supports such expertise, it does not qualify her to offer any expert opinions relevant to the fraud and misrepresentation issues, or any other issues, in this case.

*Second*, Lalich's opinions—consisting of conclusions about Herbalife's entire event program and its entire distributor network that were extrapolated from interviews of just three named Plaintiffs in this case—are not the product of any scientific methodology, let alone a reliable methodology applied reliably to the facts of the case.

*Third*, even if Lalich were qualified to offer expert opinions in this case (she is not), the opinions that Lalich purports to offer are wholly irrelevant to the factual issues underlying the fraud and unfair competition claims asserted here.

*Fourth*, as Lalich's opinions regarding cults and extremist groups have nothing to do with the issues in this case, they can serve only to inflame the jury and unfairly prejudice Herbalife.

### II.   FACTUAL BACKGROUND

Dr. Lalich is a sociology professor and researcher specializing in what she describes as "self-sealing systems," *i.e.*, "extremist groups" and "cultic" environments.  (Declaration of Gopi K. Panchapakesan ("Panchapakesan Decl."), Ex. A: January 11, 2021 Expert Report of Dr. Janja A. Lalich ("Lalich Rpt.")

¶¶ 3-4.)  Plaintiffs retained her in this case to offer opinions on self-sealing systems. (Panchapakesan Decl., Exh. B: February 12, 2021 Transcript of Deposition of Janja Lalich ("Lalich Tr.") at 21:16-25.)

### A.   The Material Factual and Legal Issues Underlying Plaintiffs' Claims Bear No Connection to Cults or Extremist Groups.

Lalich's opinions regarding "self-sealing systems" such as cults, which she defines worlds that are closed in on themselves wherein their members are part of an altered reality (*id*. at 23:14-21), have nothing to do with the legal claims in this case. Plaintiffs' First Amended Complaint ("FAC") alleges causes of action for negligent misrepresentation, unfair competition, and violations of civil RICO, stemming from alleged misrepresentations and concealment of material facts by Herbalife.  (FAC ¶¶ 209, 227, 232, 241, Dkt. 202.)  Plaintiffs contend that the key factual and legal issues they must prove for these claims are:

- Whether Herbalife committed, and conspired to commit, wire and mail fraud by carrying out and facilitating Circle of Success events;
- The extent to which Herbalife controls Circle of Success events;
- Whether Herbalife engaged in unfair, unlawful, and fraudulent business practices;
- Whether Herbalife intentionally misrepresented or withheld material information regarding Plaintiffs' likelihood of financial success and the financial success of other distributors, the (allegedly unlawful) means by which President's Team members built their downlines, and the relationship between attending Circle of Success events and Plaintiffs' financial success;
- Whether members of the public and the putative class, and reasonable consumers, are likely to be deceived by Herbalife's representations regarding the Circle of Success; and
- The existence, nature, and means of measuring damages sustained by

2

1    the Plaintiffs and the putative class a result of Herbalife's allegedly

2    unlawful acts.

3    (*Id.* at ¶ 128.)  None of these issues has anything to do with "self-sealing systems,"

4    *i.e.*, "extremist groups" or "cultic" environments.

5    **B.    Lalich's Academic Background Reflects No Experience in**

6    **Assessing Fraudulent Business Practices, Business Performance, or**

7    **Any Other Disputed Material Issue.**

8         Lalich's academic background and prior expert witness engagements reveal

9    that she has *no experience* or expertise in business performance, fraudulent or

10   deceptive sales and marketing, or any of the issues that Plaintiffs allege are material

11   to proving their case against Herbalife.[1]  (Lalich Tr. at 14:1-3, 51:14-52:2, 95:3-5,

12   Panchapakesan Decl., Exh. B; *see generally* Lalich Rpt. ¶¶ 3-8, Panchapakesan

13   Decl., Exh. A.)

14        Lalich is not a psychologist or a psychiatrist trained to diagnose the thoughts

15   or motivations of others, and her academic and professional career has been focused

16   entirely on sociology.  (Lalich Tr. at 14:1-3, 95:3-5, Panchapakesan Decl., Exh. B.)

17   Moreover, Lalich has no professional or academic experience or expertise

18   *whatsoever* in multi-level marketing companies.

19   Q:    Dr. Lalich, have you ever focused your research on multi-level
         marketing companies in the past?

20
     A:    Only when I -- in one of my -- in several of my classes we read the
21        book on DSOs.  But I didn't do any specific research, no.

22   Q:    Okay.  Are all the [direct selling] organizations also multiple marketing
         companies?

23
     A:    No.
24
     Q:    Have you ever written on multi-level marketing companies?
25

26   _____

27   [1] Lalich also attributes a large part of her expertise to being a member of a Marxist
     cult where she and the other members held anti-capitalistic political views for over
28   ten years.  (Lalich Tr. at 19:2-25, Panchapakesan Decl., Exh. B.)

1      A:    No.

2      Q:    How about direct selling companies?

3      A:    No.

4 (*Id.* at 51:14-52:2.)  Rather, Lalich's limited expert engagements include matters

5 such as *People v. Roberson*, No. C064027, 2012 WL 3217709, *9 (Cal. App.

6 Aug. 9, 2012), in which Lalich testified regarding a defendant who beat his child to

7 death, opining that the man's membership in a polygamist cult was relevant to

8 explain why the women in his household did not intervene.  Her other recent

9 engagements as a consulting expert also involve matters such as "1st degree murder

10 and child abuse resulting in [the] death of 2 children," personal injury, "sexual abuse

11 of a minor," and "gay conversion therapy."  (Lalich Rpt., Appx. A at pp. 1-2,

12 Panchapakesan Decl., Exh. A.)

13       Lalich's recent academic, teaching, and media engagements include

14 appearing as a featured expert in documentaries about the NXIVM cult, consulting

15 producer on an A&E series titled *Cults and Extreme Belief*, giving a TED Talk titled

16 "Why Do People Join Cults?," appearing as a panelist at a university program on

17 "The Lure of Terrorism," and conducting Zoom workshops for former cult

18 members.  (*Id*. at pp. 2-4.)

19      **C.**    **Lalich's Opinions Center on Her Conclusion That Herbalife Is**

20           **a Cult.**

21       Lalich's overarching opinion in this case, based on the above-described

22 experience, literature on cults and extremist groups, her review of case-related

23 documents, and her phone interviews of three Plaintiffs, essentially is that "the most

24 plausible explanation for any individual's continued participation in the event

25 system - even in the face of significant financial losses—is the coercive influence

26 and coercive control" described in her report.  (*Id*. at pp. 14-15, ¶ 39.)  In support of

27 this conclusion, Lalich also opines that:

28             &bull; "Plaintiffs were subjected to manipulative techniques, justified and

rationalized by uplines and other company higher-ups as the proven pathway for financial success" (*Id.* at ¶ 39);

- "Plaintiffs were given the false promise that they could become millionaires by working hard in the Herbalife system and blindly following all of the 'advice' and admonitions of uplines and others" (*Id.*);

- "Plaintiffs were convinced that Herbalife had the "answer" and they put all their hopes into that belief.  Thus, . . . [Plaintiffs] were exploited and manipulated as pawns in the Herbalife system - all the while losing family and friends, putting in countless hours of unpaid labor, going deeper into debt, and losing vast amounts of money - their own and borrowed from others."  (*Id.*)

**D.   In Spite of Her Opinions on the Nature of Herbalife as an Organization, Lalich Admits That She Has No Knowledge of Basic Aspects of Herbalife's Business and Did Not Attempt to Learn About Its Business Model or Practices.**

Notwithstanding her sweeping allegations regarding Herbalife's recruitment, retention, and organizational practices and techniques, Lalich conceded at deposition that she has no real understanding of the fundamental aspects of Herbalife's business.  She admitted that she did not know that Herbalife was a publicly-traded company, or that it has a Board of Directors.  (Lalich Tr. at 57:5-8, Panchapakesan Decl., Exh. B.)   And she admitted she has no understanding of, or familiarity with, the marketing and compensation allegations that are fundamental to Plaintiffs' claims in this case:

Q:   Are you familiar with Herbalife's marketing plan?

A:   No.

Q:   Are you familiar with the system by which distributors at Herbalife earn multilevel compensation?

1    A:    Vaguely.

2 (Lalich Tr. at 52:15-21, Panchapakesan Decl., Exh. B.)  Lalich's understanding in

3 this area is indeed vague:  She admitted she has no understanding of the *meaning* of

4 a "royalty override," a "production bonus," "retail profits," "profitable retail sales,"

5 "preferred members," "personal consumption," or "Gold Standard Guarantee" as

6 they relate to Herbalife's business and compensation structure.  (*Id.* at 53:18-55:22.)

7    And although she believes "overt rules and regulations" are a key aspect of

8 cults and self-sealing systems (*id.* at 31:5-32:11), she has never even reviewed

9 Herbalife's rule book or rules:

10    Q:    Have you ever reviewed Herbalife's rule book?

11    A:    No.

12    Q:    Are you familiar with any of Herbalife's rules?

13    A:    No.

14 (*Id.* at 56:18-23.)  Nor is she familiar with Herbalife's refund policy or other

15 disclosures to distributors and potential distributors.  (*Id.* 55:13-19; 110:3-11.)

16    Despite her very limited knowledge and understanding of Herbalife's

17 business, Lalich believed herself qualified to author a 2016 web article describing

18 Herbalife as a "scam," and to offer opinions in this case.  (*Id.* at 114:3-117:19.)

19    **E.    Lalich Admits That Herbalife Distributors' Experiences Are Far**

20    **More Variable Than Those of the Three Distributors Whose**

21    **Experiences She Considered.**

22    Although Lalich draws her conclusion that Herbalife is a "self-sealing

23 system" and opinions regarding the experience of Herbalife distributors from

24 interviews with a few individuals, she concedes that such experiences are highly

25 individualized.  Specifically, Lalich admitted at deposition that:

26    • The ***only*** distributors she interviewed were the three Plaintiffs. (*Id*. at

27    59:20-60:14.)

28    • She concluded—without speaking with any other distributors—that

3698443.6

6

two of the three Plaintiffs' experiences were representative of other people who attended events, although she could not say how many people or experiences they represented. (*Id.* at 91:25-92:13.)

- Numerous individual characteristics may make people more or less susceptible to being recruited into a so-called "self-sealing" system, and there are "millions of examples" as to why someone may join a so-called "self-sealing system," such as experiencing the death of a loved one, divorce, or moving to a new city. (*Id.* at 33:4-34:4.)

- Recruitment and indoctrination into a self-sealing system can take months or even years and is often a gradual process. (*Id.* at 39:24-40:13.)

- Individuals recruited into self-sealing systems typically are ignorant and "uninformed" of the "true nature" of the system into which they are being recruited. (*Id.* at 35:1-23.)

- In a self-sealing system, it occurs that "the higher level members . . . are also indoctrinated themselves." (*Id.* at 46:20-23.)

- Numerous individual factors also affect members' susceptibility to retention in "self-sealing system," including physical and mental health factors, age, finances, and outside friends or support groups. (*Id.* at 44:15-22.)

- Members of cults still may bear personal responsibility for their actions and such situations should be evaluated on a case-by-case basis. (*Id.* at 49:11-50:1.)

Despite extrapolating her sweeping opinions in this case from just three interviews, Lalich admitted that she did not undertake any methods to determine the extent to which these three interviewees' alleged experiences were credible, let alone representative:

- She did not ask to review the emails the Plaintiffs she interviewed

1    purportedly received from their uplines or verify their assertions.

2    (Lalich Tr. at 79:16-22.)

3    • She did not review any event videos other than selected excerpts of a

4    2014 Extravaganza in Chicago.  (*Id.* at 72:16-23.)

5    • She relied on Plaintiffs' allegations recounting their experiences and

6    the actions and statements of uplines without vetting the details of these

7    allegations or even the identities of persons involved.  (*See, e.g.*, *id.* at

8    66:11-67:12, 68:1-22, 69:8-24, 69:25-70:13, 79:3-22.)

## III.   LEGAL STANDARD

The U.S. Supreme Court has charged district courts with a "gatekeeping" function with respect to admitting expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The admissibility of all expert testimony under Rule 702 is a preliminary question of law for the district court to determine pursuant to Rule 104.  *Daubert*, 509 U.S. at 592; Fed. R. Evid. 104(a).[2] Federal Rule of Evidence 702, which governs the admission of expert testimony, provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2]   The failure of a district court to make this determination and state its reasons for excluding proffered testimony is an abuse of discretion and reversible error. *General Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997).

8

1   Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of

2   establishing that the proffered testimony is admissible under Rule 702.  *See*

3   *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

4          The district court, exercising its gatekeeping function, must determine

5   whether the expert is qualified to provide the proffered testimony, whether the

6   testimony is relevant, whether the testimony is useful to a finder of fact, and whether

7   the testimony is reliable and trustworthy.  *Sementilli v. Trinidad Corp.*, 155 F.3d

8   1130, 1134 (9th Cir. 1998); *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp.

9   2d 1017, 1033 (S.D. Cal. 2006); *Keegan v. American Honda Motor Co., Inc.*, 284

10  F.R.D. 504, 514-20 (C.D. Cal. 2012).  Rule 702's ultimate goal "is to protect juries

11  from being swayed by dubious scientific testimony."  *United States v. Flores*, 901

12  F.3d 1150, 1165 (9th Cir. 2018) (citation omitted).  As set forth below, Lalich's

13  proffered opinions are precisely the type of irrelevant and inflammatory testimony

14  by an unqualified "expert" the *Daubert* court tasked district courts with excluding.

15  **IV.   ARGUMENT**

16         Plaintiffs cannot satisfy their burden of demonstrating that Lalich is qualified

17  to offer opinions in this case.  To overcome a motion to exclude Lalich's expert

18  testimony, the Plaintiffs must show, *inter alia*, that she is qualified to give testimony

19  relevant to the specific facts at issue and that the proposed testimony is actually

20  relevant to the specific facts at issue.  *See* Fed. R. Evid. 702; *United States v. Chang*,

21  207 F.3d 1169, 1172 (9th Cir. 2000); *Sementilli v. Trinidad Corp.*, 155 F.3d 1130,

22  1134 (9th Cir. 1998).  Moreover, even testimony from a qualified expert that is of

23  some relevance to the facts at issues should be excluded where the risk that it will

24  inflame or upset the jury outweighs any probative value that may possess.  Fed. R.

25  Evid. 403, 703.

26         Lalich's purported expertise on cults and extremist groups does not qualify

27  her to offer ***any*** opinions that bear on the material issues in this case.  Moreover, the

28  opinions that she does propose to offer—in essence, that Herbalife is an extremist

cult that manipulated Plaintiffs—are not based on any reliable methodology, are irrelevant to the very factual and legal issues *Plaintiffs contend* are relevant to their underlying alleged misrepresentation claims in this case, and serve no purpose but to inflame the jury with their salaciousness.  Any one of these deficiencies warrants excluding Lalich from opining on this case.

> A.    **Lalich Lacks Expertise Relevant to the Matters at Issue in This Case.**

As a threshold matter, the Court must determine whether each designated expert is qualified to render the proffered testimony.  *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).  The key determination is whether the witness has attained "specialized knowledge" through "experience, training or education" that is "relevant to such evidence or fact in issue."  Fed. R. Evid. 702; *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000).  Still, while "background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions."  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003).  This is because the "issue with regard to expert testimony is not the qualifications of a witness in the abstract, *but whether those qualifications provide a foundation for a witness to answer a specific question*."  *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (emphasis added); *see also Chang*, 207 F.3d at 1172 ("To qualify as an expert, a witness must have 'knowledge, skill, experience, training or education' *relevant to such evidence or fact in issue*.") (emphasis added); *Barber v. City of Santa Rosa*, No. C–08–5649 MMC, 2010 WL 5069868, *7 (N.D. Cal. Dec. 7, 2010) (similar); *Smith v. Pacific Bell Telephone Co., Inc.*, 662 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (similar).

Lalich is wholly unqualified to opine on any "specific question" that is material to facts at issue in this case.  Plaintiffs have identified the specific questions they believe are material to their claims against Herbalife: the extent of Herbalife's

control over the Circle of Success event program, the existence or absence of opportunities for success afforded to Herbalife distributors, and Herbalife's misrepresentation or concealment of facts material to those issues in its sales, marketing, and events. Lalich is not an expert on direct sales or multi-level marketing companies, the financial or business performance of such companies or its distributors, or whether commercial business marketing or events are misleading or deceptive. It is patently absurd to contend that the opinions of a purported expert on cults and extremist groups are helpful to shed light on any of these issues. Lalich's own description of her sphere of expertise only underscores this point.

At deposition, Lalich conceded that she has not studied direct selling or multi-level marketing companies, and has no experience or expertise in such companies. She also lacks a basic understanding of Herbalife's business model and structure that one would expect any expert offering opinions on the nature of the company to know. She admitted she did not know that Herbalife was a publicly-traded company. She admitted that she did not review Herbalife's marketing plan and had no knowledge of how Herbalife's business worked *at all* other than the fact that there are upline and downline distributors who recruit other distributors. She is not familiar with core aspects of the Herbalife business and compensation structure, including the meanings of royalty overrides, production businesses, retail profits, and other terms and concepts that are central to Herbalife's business model. She further conceded that she never reviewed Herbalife's rule book and was unaware of the company's rules—even though she believes that a key feature of a self-sealing system is the system's overt rules. She was equally ignorant of Herbalife's disclosures to distributors, including the company's refund policy and Gold Standard Guarantees.

Because Lalich lacks any semblance of the "specialized knowledge" of material issues in this case required to qualify her as an expert under Rule 702, she should be excluded from offering any opinions in this action.

**B.      Lalich's Opinions Are Not Based on Any Reliable Methodology Applied to the Material Facts of This Case.**

Lalich did not employ any viable scientific methodology to reach her opinions that Herbalife functions as a cult and Plaintiffs—along with roughly 100,000 members of the purported class—were in effect operating with "diminished capacity" as a result of Herbalife's "cultic tactics."[3]

Expert testimony is reliable only if the expert's underlying methodology is scientifically valid.  *See Daubert, supra*, 509 U.S. at 589–90; *Messick v. Novarits Pharm. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014).  When an expert's methodology is not sound, the expert's testimony should be excluded.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999).  Thus, when a district court weighs the *Daubert* factors, the court must continue to function as a gatekeeper who "separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (citations omitted).  Courts must focus on the "reasonableness of using [the expert's] approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." *Kumho Tire*, 526 U.S. at 154 (1999).

There is nothing reliable or scientifically valid about the "methodology" Lalich employed to reach her opinions here.  Lalich admits that her opinions regarding the "coercive influence and control" Herbalife purportedly exercised over

---

[3]    Lalich's opinion that Herbalife is a cult that indoctrinated its members is also dubious in light of the evidence that she was biased against the company before she was even engaged in this matter.  Despite admittedly knowing virtually nothing about Herbalife's business structure and practices, Lalich referred to Herbalife as a "scam" in a 2016 web article.  (Lalich Tr. at 114:3-117:19, Panchapakesan Decl., Exh. B.)

tens of thousands of distributors, through an event program consisting of thousands of events taking place over the span of many years in numerous locations nationwide, are drawn from her phone interviews with (and review of deposition transcripts of) *three named Plaintiffs*.  (Lalich Rpt. ¶ 28, Panchapakesan Decl., Exh. A.)  In deciding that two of these interviews were "representative" of thousands of Herbalife distributors (and inexplicably setting aside the third), Lalich conceded that she did not undertake any efforts to vet the statements made by these interviewees, review communications they claimed to have received, or even obtain basic information about the events they attended or the individuals with whom they claimed to have interacted.  She also conceded that not all distributors would have had the same experiences as the three she interviewed, but was unable to identify what number would be representative of the plaintiffs she interviewed.

Moreover, while Herbalife's event program is central to Plaintiffs' allegations and Lalich's opinions about the "nature" of Herbalife, Lalich watched only video excerpts of *one event* from 2014.  As she did with the two distributor interviews featured in her report, Lalich conveniently concludes that this single event is "representative" of thousands of Herbalife events across a span of several years, and bases her opinions on it accordingly.  (Lalich Tr. at 72:16-73:25, Panchapakesan Decl., Exh. B.)

Lalich does not provide any explanation of how or why she determined it was appropriate to extrapolate from two individuals' experiences and a single event to the entire universe of Herbalife's distributors and the entirety of events in the class period.  Nor does she attempt to reconcile her reliance on information from two "representative" distributors with her repeated statements that inherently individualized factors, life experiences, and personal characteristics are critical to shaping each member's susceptibility to, retention in, and experience of belonging to a self-sealing system.  Instead, she simply asserts (without any foundation) that the alleged experiences of the two plaintiffs were "indicative of and exemplars of

precisely how the Herbalife system works" and "typical of what has been experienced by many other Distributors who have been involved with Herbalife." (Lalich Rpt. at ¶ 28, Panchapakesan Decl., Exh. A.)

Lalich's decision to interview *only* three plaintiffs and review selected video footage of a *single event* within this entire case to reach purported opinions about the motivations and mental capacity of ***all Herbalife distributors*** and ***all of Herbalife's conduct*** vis-à-vis all of its distributors was plainly unreasonable. Her methodology for doing so—apparently, deciding that plaintiffs' experiences and the 2014 Chicago Extravaganza were representative of those of all distributors with no further analysis to support that conclusion—was manifestly unsound. *Daubert* and Rule 702 thus mandate that Lalich's resulting expert opinions be excluded.

### C.     Lalich's Proposed Expert Opinions Are Not Relevant to, and Do Not "Fit," the Facts at Issue in This Case.

Lalich's opinions—concluding, in effect, that Herbalife is a cult that manipulated Plaintiffs—are not relevant and do not "fit" or shed light on any of the specific factual issues that Plaintiffs allege are central to their civil RICO and fraud-related claims.

Absent a "valid scientific connection to material facts in dispute," an expert opinion is irrelevant and inadmissible. *See* Fed. R. Evid. 402; *U.S. v. W.R. Grace*, 455 F. Supp. 2d 1177, 1179 (D. Mont. 2006) (citing *Daubert*, 509 U.S. at 591). Moreover, expert testimony is relevant only if the expert properly applies his or her methodology or reasoning to the facts in issue. *See Daubert*, 509 U.S. at 591–93; *U.S. v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007). "Under the relevancy or 'fit' prong, the testimony must be 'relevant to the task at hand, . . . *i.e.*, that it logically advances a material aspect of the proposing party's case.'" *Johns v. Bayer Corp.*, No. 09cv1935 AJB, 2013 WL 1498965, *6 (S.D. Cal. Apr. 10, 2013) (citations omitted). While relevancy requires opinions that assist the trier of fact in reaching a conclusion necessary to the case, *see Kennedy v. Collagen Corp.*, 161 F.3d 1226,

1230 (9th Cir. 1998), "the standard for fit is higher than bare relevance," *Redfoot v. B.F. Ascher & Co.*, No. C 05-2045 PJH, 2007 WL 1593239, *4 (N.D. Cal. June 1, 2007) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745 n.13).  As the district court noted in *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*:

> [E]ven if the methodology used by the expert is considered to be reliable, the expert's testimony will nevertheless fail to meet the "fit" requirement and should be excluded if the data relied upon by the expert is materially different from the data relevant to the facts of the case. [citation omitted] . . . Likewise, where the proffered testimony is based on a methodology transposed from one area to a completely different context, and there is no independent research supporting the transposition, the "fit" requirement may not be satisfied.

222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (expert testimony inadmissible where "there is simply too great an analytical gap between the data and the opinion proffered").

Lalich's proposed testimony is not relevant, and does not "fit" the facts at issue in this case.  There is *no nexus whatsoever* between Lalich's proposed testimony about Herbalife's similarities to a cult and the facts necessary to prove fraud or civil RICO; her opinions are entirely divorced and "materially different from the data relevant to the facts of this case"; and her proposed testimony is drawn from a "completely different context" from the business development and promotion context at issue here, namely the world of extremist cults.  *Astra*, 222 F. Supp. 2d at 488.

Indeed, even assuming, *arguendo*, that Lalich's overarching opinion is that Herbalife is a cult (it is not), so what?  Plaintiffs still have the burden to adduce evidence proving that the hypothetical Herbalife cult engaged in negligent misrepresentation, fraudulent and unfair business practices, or violations of civil RICO that caused them injury to establish any of their claims in this case.  But neither Plaintiffs nor Lalich are able to demonstrate how the fact that Herbalife is or

is not an extremist cult helps them meet that burden. Indeed, even if it is assumed Plaintiffs operated under the sort of "coercive control" or diminished capacity theorized by Lalich to explain Plaintiffs' "continued participation in the [Herbalife] events system" and "self-deception" (Lalich Rpt. ¶¶ 38(d), 39, Panchapakesan Decl., Exh. A.), that assumption would not provide any additional factual or legal support for Plaintiffs' claims, nor would it relieve the Plaintiffs or any other member of the class from responsibility for their conduct. The motivations behind specific individuals' decisions to take certain actions or not have no bearing on the material issue of whether it was *objectively reasonable* for them to do so; a jury is more than capable of making that determination. *See United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1189 (C.D. Cal. 2009) ("Under California law, reasonable reliance is judged by an objective standard."); *Flores v. Gain Capital Group*, No. CV 17-7873-DMG, 2018 WL 7501120, *3 (C.D. Cal. Dec. 21, 2018) ("the delayed discovery rule employs an objective reasonable person standard."). Indeed, Lalich's attempt to explain the Plaintiffs' conduct as she does is an implied admission that their alleged reliance on the alleged misrepresentations (or their continued attendance at events after believing the events had no value to them) would ***not*** have been objectively reasonable.[4]

By Lalich's own admission, her opinions simply do not "fit" the facts of this case. This is not surprising, given that the only subject area Lalich is arguably qualified to opine on—cults—is entirely irrelevant to this case. Regardless of whether it is for lack of qualification, lack of relevance, or both, Lalich's testimony must be excluded.

---

[4] To the extent they relate to any relevant issue at all, the only possible inference one could draw from Lalich's opinions is that the Plaintiffs *did not* act reasonably in continuing to attend events but instead acted irrationally for reasons alluded to in Lalich's report, thereby undermining Plaintiffs' existing allegations in the case.

### D.     Lalich's Irrelevant Expert Opinions Lack Probative Value and Risk Unfairly Prejudicing and Inflaming the Jury.

It is beyond serious dispute that Lalich's opinions are not relevant to any fact in issue in this case, and thus lack any probative value *whatsoever*.  But even if her testimony were of some tangential relevance to this matter, any conceivable probative value of her opinions is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" and must be excluded on that ground.  Fed. R. Evid. 403.

The Supreme Court has recognized the critical role Rule 403 plays in ferreting irrelevant and prejudicial evidence proffered by expert witnesses, in particular: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.  In *Target Corp. v. Greenberg Farrow Architecture, Inc.*, No. 10–4810 (RHK/JSM), 2012 WL 1963362 (D. Minn. May 31, 2012), the district court underscored the heightened risk of prejudice from expert testimony due to the presumption of authority experts carry.  It found that, because "the expert 'patina' that might attach to [the expert]'s testimony could lead a jury to give his causation theory more credibility than it deserves," it is the "[c]ourt's obligation as a gatekeeper to prevent that from happening." *Id.* at *12.

For the same reasons, it is the Court's obligation to prevent Lalich's irrelevant and inflammatory opinions from influencing the jury here.  Lalich's expert report, and her likely testimony, is rife with references to the literature on extreme and dangerous organizations and practices from which she derived her opinions in this case, including references to

- "Crazy therapies";
- "[M]anipulative techniques used in coercive environments";

- "Large Group Awareness Trainings" shown to bring about "hospitalizations, manic episodes, debilitating anxiety, major depressions, psychosis, suicide attempts, and death";
- Programs constituting a "premeditated attack upon the self of the participant" that "results in severe psychological crisis and identity impasse";
- "[S]erious psychological injury"; and
- "Charismatic cults."

(Lalich Rpt. ¶¶ 10, 11, 12, 13, 15, 16, 19, 20, Panchapakesan Decl., Exh. A.)  Lalich refers to this literature in the context of opining on Herbalife's "high-pressure and high-arousal tactics and techniques in order to recruit"; use of an "orchestrated resocialization process" known as "thought reform" or "coercive persuasion"; "program of indoctrination;" and various other practices she attributes to Herbalife. (*Id.* ¶¶ 9, 21.)  She does so in service of creating the impression that—regardless of the civil RICO and misrepresentation allegations Plaintiffs *actually* assert against Herbalife in this case—the bad acts Herbalife is actually liable for are the manipulative, psychologically damaging, physically dangerous, and even fatal tactics and techniques of a cult.

Even putting aside these specific references, the mere mention of the word "cult"—which is central to Lalich's opinions—undoubtedly conjures a host of negative and prejudicial associations that have nothing to do with this case.  Lalich's proffered opinions about cults and cult dynamics risk distracting the jury from the relevant question of what Herbalife *did or did not do* (*i.e.*, whether it engaged in fraud) and instead focusing their attention on the completely irrelevant question of what Herbalife *is* (*i.e.*, whether Herbalife is a cult, and by extension, a "bad actor" regardless of the material facts).

The risk that Lalich will unfairly prejudice, confuse, and inflame the jury by opining on cults and extremist groups in this fraud and civil RICO case is acute.  If

Lalich's testimony is admitted, Plaintiffs will tout her as a credentialed expert, despite the fact that she has no actual background or expertise in the subject matter at issue in this case—namely, whether Herbalife concealed or misrepresented material facts and caused Plaintiffs to suffer damages.  Notwithstanding that Lalich's opinions lack *any* connection to *any* disputed fact in this case, the "expert" label creates a serious risk that Lalich's dubious testimony will be mistaken for worthwhile sociological analysis applicable to the facts at issue.  Given the patina of authority assumed by experts, once admitted, it will be difficult, if not impossible, to counteract the jury's mistaken impression that Lalich's opinions are somehow significant to resolving the disputes facts in this case.  The Court should exercise its gatekeeping authority under *Daubert* and Rule 702 to prevent this from occurring.

## V.    <u>CONCLUSION</u>

For all the reasons set forth above, Defendant respectfully urges the Court to preclude Dr. Janja Lalich from providing any expert testimony at trial or offering any opinions in this case.


DATED:  February 15, 2021        Respectfully submitted,

Mark T. Drooks
Paul S. Chan
Gopi K. Panchapakesan
Jon M. Jackson
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:      */s/ Mark T. Drooks*
          Mark T. Drooks
    Attorneys for Defendant Herbalife
    International of America, Inc.