Paul A. Levin (State Bar No. 229077)
   plevin@themrlg.com
MORTGAGE RECOVERY LAW GROUP, LLP
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900 / Fax: (818) 630-7920

Etan Mark (admitted *pro hac*)
   etan@markmigdal.com
Donald J. Hayden (admitted *pro hac*)
   don@markmigdal.com
MARK MIGDAL & HAYDEN
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

Attorneys for Plaintiffs

Mark T. Drooks – State Bar No. 123561
   mdrooks@birdmarella.com
Paul S. Chan – State Bar No. 183406
   pchan@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
   gkp@birdmarella.com
Jonathan M. Jackson – State Bar No. 257554
   jjackson@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Herbalife
International of America, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HERBALIFE LTD., *et al.*,<br><br>Defendants. | CASE NO. 2:18-cv-07480-JAK (MRWx)<br><br>[Related Case 2:13-cv-02488-BRO-RZ]<br><br>**STIPULATION OF SETTLEMENT**<br><br>Assigned to Hon. John A. Kronstadt, Courtroom 10B |

This Stipulation of Settlement and attached exhibits (the "Settlement Agreement" or "Settlement") dated as of May 27, 2022, is made by and among the following Settling Parties (as defined below): on the one hand, Plaintiffs Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez on behalf of themselves, and on behalf of each of the Settlement Class Members (as defined herein), by and through Plaintiffs' Counsel; and on the other, Defendant Herbalife International of America, Inc. ("Herbalife"), by and through its counsel.  This Settlement Agreement is intended by the Settling Parties to resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Settlement Agreement.

## 1.      DEFINITIONS

In addition to the foregoing defined terms, the following terms shall have the meanings as set forth below:

1.1     "Action" means the action filed in the United States District Court for the Central District of California entitled *Lavigne, et al. v. Herbalife Ltd., et al.*, Case No. 2:18-cv-07480-JAK (MRWx), including all pleadings on file in that action.

1.2     "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Claim Form to the Claims Administrator or is otherwise authorized to receive benefits under this Settlement Agreement.

1.3     "Claims Administrator" means A.B. Data, who shall be subject to and comply with this Settlement Agreement.

1.4     "Plaintiffs' Counsel" means the law firms Mark Migdal & Hayden and Mortgage Recovery Law Group, LLP.

1.5     "Class Period" means the period beginning January 1, 2009, through and including the date the Preliminary Approval Order is entered.

1.6     "Court" means the United States District Court for the Central District of California.

1.7     "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred:

2

1.7.1 The Settlement Agreement is executed and delivered by/to all Parties and approved by the Court;

1.7.2 Entry of the Final Judgment and Order Approving Settlement ("Final Judgment");

1.7.3 The Final Judgment becomes "Final." "Final" means the occurrence of any of the following: (a) final affirmance on an appeal of the Final Judgment, the expiration of the time for a petition for review of the Final Judgment, and, if the petition is granted, final affirmance of the Final Judgment following review pursuant to that grant; (b) final dismissal of any appeal from the Final Judgment or the final dismissal of any proceeding to review the Final Judgment; or (c) if no appeal is filed, the expiration of the time for the filing or noticing of any appeal from the Court's Final Judgment. If the Final Judgment is set aside, materially modified, vacated, or reversed by the Court or by an appellate court, and is not fully reinstated on further appeal, then the Final Judgment does not become "Final" and the Effective Date cannot occur.

1.7.4 Plaintiffs and Herbalife shall have the option to elect to waive the failure, in whole or in part, of any of the conditions set forth in Subsections 1.7.1-1.7.3. If Plaintiffs or Herbalife elect to waive the failure, in whole or in part, of such condition, Plaintiffs or Herbalife shall file a written notice of waiver with the Court within ten (10) days after they become aware of the failure of such condition. If Plaintiffs and Herbalife both waive the failure, in whole or in part, of any condition in Subsections 1.7.1-1.7.3, then the Effective Date will occur without satisfaction of that condition.

1.8 "Escrow Agent" means A.B. Data.

1.9 "Herbalife Corporate Event" means any U.S.-based Herbalife Event with respect to which Herbalife directly sells tickets.

1.10 "Herbalife Event" means any U.S.-based Herbalife Event (inclusive of Herbalife Corporate Events) including: Extravaganza, Leadership Development

3

Weekend (LDW), Future President's Team Retreat, Kickoff, Spectacular(s), January Kickoff (JKO), January Spectacular, Herbalife Honors, African American Recruiting Tour, Herbalife Summit, Building Your Business Workshop, Future Millionaire Team Event (FMTE), RSM LA Experience, Galaxy Rally, Success Training Seminar (STS), Herbalife Opportunity Meeting (HOM), Scale to Success, and any Latin market equivalent of these events, including, but not limited to, FSL, Fin de Semana de Liderazgo, Mega Escuela, Latin Recruit Tours, Latin Market Extravaganza, Latin Market LDW, and Latin Market Future President's Team Retreat.

1.11 "Named Plaintiffs" refers to Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez.

1.12 "Notice" means the notice provided for in Section 6 and substantially in the form attached hereto as Exhibit A.

1.13 "Person" means an Herbalife member or distributor in his or her individual capacity; any corporation, limited liability company, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, or any business or legal entity through which he or she has conducted or conducts an Herbalife distributorship; and their spouses, heirs, predecessors, successors, representatives, alter egos, or assigns.

1.14 "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes only, approving the Notice of Proposed Settlement, approving the Summary Notice, and setting the Settlement Hearing, as provided for in Section 6.

1.15 "Settlement Agreement" means this Stipulation of Settlement, including all attached exhibits.

1.16 "Settlement Class" means all U.S. Herbalife distributors who purchased tickets to at least two Herbalife Events during the Class Period.

1.16.1 Excluded from the Settlement Class are past and present

4

members of Herbalife's President's Team or above (including past and present members of Herbalife's Chairman's Club and Founder's Circle) to the extent those individuals were members of Herbalife's President's Team or above throughout the Class Period, including their spouses, heirs, predecessors, successors, representatives, alter egos, or assigns. Also excluded are any U.S. Herbalife distributors who have previously executed a release of the claims that are the subject matter of this litigation.

1.17 "Settlement Class Member" means a Person who fits within the definition of the Settlement Class and who has not validly and timely requested exclusion from the Settlement Class, as provided in Section 9.

1.18 "Settlement Hearing" means the hearing to determine whether this Settlement Agreement should be finally approved by the Court, as provided for in Section 6.

1.19 "Settling Parties" means Herbalife and each of the Plaintiffs on behalf of themselves and each of the Settlement Class Members.

1.20 "Summary Notice" means the written notice provided for in Section 6 and substantially in the form attached hereto as Exhibit B.

1.21 The word "or" means and/or.

1.22 The plural includes the singular and vice-versa.

**2.   LITIGATION BACKGROUND**

2.1 <u>Original Complaint</u>. On September 18, 2017, Plaintiffs Jeff Rodgers, Patricia Rodgers, Michael Lavigne, Jennifer Lavigne, Cody Pyle, Jennifer Ribalta, Izaar Valdez, and Felix Valdez, on behalf of themselves and a putative class of "others similarly situated," filed this Action in the United States District Court for the Southern District of Florida, naming as defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Nutrition Ltd., as well as several individual Herbalife distributors, alleging the following claims for relief: (1) violations of the federal Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §§ 1962 (c) and (d)); (2) violations of Florida's Deceptive and Unfair Trade

5

Practices Act (FDUTPA) (Fla. Stat. §§ 501.201 – 501.213); (3) a common law claim for unjust enrichment; and (4) a common law claim for negligent misrepresentation. Dkt. 1. The complaint sought, among other things, damages for the financial losses incurred by Plaintiffs and the class; general, compensatory, and exemplary damages; temporary and permanent injunctive relief; costs; reasonable attorneys' fees; pre- and post-judgment interest; and other relief the Court may deem just and proper.

2.2     <u>Transfer to this Court</u>. Pursuant to an order issued by the United States District Court for the Southern District of Florida, the claims of Jeff Rodgers, Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez against Herbalife were transferred to this Court on August 23, 2018. Dkt. 106. The other four Plaintiffs' claims against Herbalife were compelled to arbitration. *Id.* Jeff Rodgers subsequently passed away during the pendency of this case.

2.3     <u>Motion to Dismiss</u>. On September 28, 2018, Herbalife moved to dismiss the Complaint. Dkt. 142. On October 22, 2019, the Court granted Herbalife's motion to dismiss without prejudice. Dkt. 196.

2.4     <u>First Amended Complaint</u>. On November 12, 2019, Plaintiffs filed the First Amended Complaint. Dkt. 202. The First Amended Complaint omitted the previously pled common law claim for unjust enrichment, and in lieu of the FDUTPA claim, Plaintiffs pled a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). It also named only Herbalife International of America, Inc. as a defendant.

## 3.     BENEFITS OF THE SETTLEMENT

3.1     <u>Diligence of Counsel</u>. Counsel for Herbalife and Plaintiffs are represented by experienced counsel who have conducted extensive fact and expert discovery. Plaintiffs' counsel has also conducted an investigation prior to and throughout the prosecution of the Action. The discovery and investigation have included: (i) review of hundreds of thousands of pages of documents and hundreds of hours of Herbalife Event video footage; (ii) depositions of three Herbalife corporate

6

representatives pursuant to Federal Rule of Civil Procedure 30(b)(6), the named Plaintiffs, and the parties' respective experts; (iii) depositions of, and review of documents produced by, third-party Herbalife distributors and other persons with relevant information; (iv) review of written discovery responses provided by the parties; (v) review of publicly available documents; (vi) interviews with former Herbalife members or distributors; (vii) consultation with experts; and (viii) research of the applicable law with respect to the claims asserted in the complaints and the potential defenses thereto.

3.2    <u>Benefits to Settlement Class</u>.   Plaintiffs' Counsel have analyzed the benefits to be obtained under the terms of the proposed Settlement and have considered the costs, risks, potential weaknesses of the case, and delays associated with the continued prosecution of the Action and likely appeals, as well as the merits of the defenses asserted by Herbalife.   Among other things, Herbalife presented an expert survey opining that a very high percentage of Herbalife distributors polled found "value" in Herbalife Event attendance, and an opinion that there is a positive, statistically significant relationship between attending Herbalife Events and distributor earnings.  Plaintiffs presented rebuttal experts opining, among other things, that there is no such correlation and that event attendance does not lead to "success" in the Herbalife business opportunity.    Plaintiffs' Counsel believe that, in consideration of all of the circumstances and after prolonged, serious, and contentious arm's-length negotiations in mediation with Herbalife, facilitated by Hon. S. James Otero (Ret.), the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

3.3    <u>Benefits to Herbalife</u>.   Herbalife has concluded that it is in its best interests that the Action be settled on the terms set forth in the Settlement Agreement. Herbalife reached that conclusion after: (1) analyzing the factual and legal issues in the Action and considering the uncertainty of litigation; (2) determining that further conduct of the Action through trial and any possible appeals would be protracted and

expensive; and (3) considering the benefits of permitting Herbalife to conduct its business unhampered by the distractions of continued litigation.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the parties, through their respective counsel, that the Action and the Released Claims be finally and fully settled, compromised, and released, and the Action shall be dismissed with prejudice, on the terms set forth herein, as between Plaintiffs and the Settlement Class Members on the one hand, and Herbalife on the other.

## 4.   MONETARY RELIEF

4.1   <u>Monetary Fund</u>.   Herbalife shall establish a non-reversionary "Settlement Fund" in the amount of $12,500,000.00. This amount shall be deposited into an escrow account within ten (10) business days after the Court issues the Preliminary Approval Order. The Settlement Fund shall be applied: (a) first, to pay the costs of notice and settlement administration; (b) second, to pay Plaintiffs' Counsel's attorneys' fees and expenses and any plaintiff service awards in the amount awarded by the Court; and (c) third, to pay Settlement Class Members who submit a valid claim for a cash award (this final amount is the "Net Settlement Fund"). If there are insufficient funds available to satisfy all class claims, then claims to the Settlement Class Members shall be paid proportionately from the Net Settlement Fund. The Court shall oversee the distribution of any amounts remaining in the Net Settlement Fund pursuant to the *cy pres* doctrine to Consumer Federation of America.  To the extent interest is earned on amounts held in escrow, it shall accrue and be added to the Settlement Fund.  The Escrow Agent, on behalf of the Settlement Class, shall be responsible for all administrative, accounting, and tax compliance activities in connection with this escrow account and shall comply with the provisions of the escrow agreement.

4.2   <u>Calculation of Pro Rata Cash Awards to Settlement Class Members</u>.

4.2.1  Each Settlement Class Member shall be informed by the Claims Administrator as to the Herbalife Corporate Events for which that Settlement Class

8

Member purchased tickets according to Herbalife's records.

       4.2.2 A Settlement Class Member may claim additional Herbalife Events for which the Settlement Class Member purchased tickets if the Settlement Class Member certifies the following as to each additional Herbalife Event:

       (a)    The name of the event;

       (b)    The date of the event;

       (c)    The location of the event; and

       (d)    The cost of the ticket to attend the event.

       4.2.3 Following the claims deadline set by the Court, the Claims Administrator shall calculate the Net Settlement Fund amount. The Claims Administrator shall then divide the Net Settlement Fund amount by the total number of Herbalife Event tickets purchased by Authorized Claimants (the "Per Event Award").

       4.2.4 Each Authorized Claimant shall be entitled to receive the Per Event Award for each Herbalife Event for which that Authorized Claimant purchased a ticket. Payments made to an Authorized Claimant may exceed the total amount that the Authorized Claimant spent on tickets to attend Herbalife Events during the Class Period, up to a total payment ceiling of 150 percent of the total amount spent on tickets by an Authorized Claimant.

       4.2.5 The total amount of payments allocated to Authorized Claimants may not exceed the amount of the Net Settlement Fund. In the event that the total amount of payments allocated to Authorized Claimants exceeds the amount of the Net Settlement Fund, the Per Event Award shall be reduced according to the below graduated scale. Under the below scale, a given Authorized Claimant's Herbalife Per Event Award shall be reduced in accordance with the number of Herbalife Events for which the Authorized Claimant purchased tickets.

       (a)    2 to 5 Herbalife Events: Per Event Award.

       (b)    6 to 10 Herbalife Events: 75 percent of Per Event Award for

9

the tickets purchased for this subset of events.

       (c)    11 to 15 Herbalife Events: 50 percent of Per Event Award for the tickets purchased for this subset of events.

       (d)    16-plus Herbalife Events: 25 percent of Per Event Award for the tickets purchased for this subset of events.

4.2.6 In the event that the total amount of payments allocated to Authorized Claimants exceeds the amount of the Net Settlement Fund under the above graduated scale, then cash awards shall be paid to Authorized Claimants on a pro rata basis.

4.3    <u>Claim Forms</u>.   Claim Forms shall be available from the Claims Administrator, as set forth in the Notice to the Settlement Class. Completed Claims Forms shall be due to the Claims Administrator no later than 120 days after the entry of preliminary approval of the Settlement Agreement.

4.4    <u>Opt-Out Request</u>.  Settlement Class Members may submit an Opt-Out request to the Claims Administrator prior to the Claims Deadline asking to be excluded from the Settlement Class. If a Settlement Class Member submits both a Claim Form and an Opt-Out request, the Claims Administrator shall disregard the Opt-Out request.

4.5    The claims process shall employ standard anti-fraud measures to be implemented by the Claims Administrator. These measures may include comparing data provided by Settlement Class Members with information otherwise available to Herbalife. If the Claims Administrator reasonably determines that it needs further information or documentation to properly process a claim, it will so notify the claimant in writing.  If the claimant fails to correct any deficient conditions identified, the claim may be rejected in whole or in part by the Claims Administrator.

4.6    <u>No Disbursement of Direct Relief Before Effective Date</u>. The Escrow Agent and the Claims Administrator shall not disburse any portion of the Net Settlement Fund before the Effective Date, except as provided for in the Settlement

10

Agreement.

4.7    <u>Privacy</u>.  The Claims Administrator shall take reasonable measures to the extent permitted by law to assert and to protect the privacy rights of Settlement Class Members, including by maintaining the confidentiality and security of and preventing the unauthorized access or acquisition of any financial or personal information submitted in connection with any claim for benefits pursuant to this Settlement Agreement. In the event of any unauthorized access to or acquisition of personal information concerning any Settlement Class Member as a direct result of the intentional or negligent acts or omissions of the Claims Administrator, the Claims Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Settlement Class Members, and/or other persons or entities.

4.8    <u>Taxes on Escrow Account</u>.  The Settlement Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulations Sections 1.468B-1 through l.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992). The Settling Parties shall treat the Settlement Fund as a qualified settlement fund for all reporting purposes under the federal tax laws. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. Section 1.468B-2(k)). Such returns shall be consistent with this Subsection and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the income earned by the Settlement Fund. Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding

11

anything herein to the contrary) to withhold from the income earned by the Settlement Fund any funds necessary to pay such taxes, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Section 1.468B-2(1)(2)). The Escrow Agent shall maintain accurate records of all expenditures made pursuant to this Subsection, and shall provide the records upon request to Plaintiffs' Counsel and Herbalife's counsel. None of the Settling Parties, or any of their counsel, shall have any responsibility for the payment of taxes described in this Subsection. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Subsection.

4.9   <u>Discretion of Claims Administrator</u>.   The Claims Administrator, who shall be approved by the Court, shall have discretion to make equitable decisions to carry out the intent of the Settlement Agreement.

4.10   <u>Continuing Jurisdiction Over Direct Relief</u>.   The Settlement Fund shall be within the control and jurisdiction of the Court, *custodia legis*, until such time as they are distributed pursuant to this Settlement Agreement.

## 5.   CORPORATE POLICIES

5.1.1   All corporate policies set forth in this Section 5 shall be continued for no less than three years from the date the Court issues final approval of the Settlement Agreement or such earlier date as Herbalife shall elect to implement them. These policies shall relate to all U.S. Herbalife distributors, regardless of whether they are Settlement Class Members or opt out of the Settlement Class.

5.1.2   Herbalife shall amend its U.S. Rules of Conduct and Distributor Policies to indicate that U.S. event attendance is not mandatory and does not guarantee financial success.

5.1.3   Herbalife shall amend its U.S. Rules of Conduct and Distributor Policies to indicate that representations made by distributors that U.S. event attendance is mandatory or that it guarantees financial success are prohibited.

5.1.4 U.S. Herbalife Corporate Event flyers, and the portion of Herbalife's website promoting U.S. STS events, shall include a disclaimer that U.S. event attendance is not mandatory and does not guarantee financial success.

5.1.5 Herbalife shall amend its U.S. Rules of Conduct and Distributor Policies to provide that ticket purchases for U.S. Herbalife Corporate Events shall be refundable via the company's existing buyback procedure pursuant to its Gold Standard Guarantee.

(a)     Additionally, Herbalife shall also allow distributors to cancel their U.S. Herbalife Corporate Event ticket purchases within 24 hours of purchase.

5.1.6 Herbalife distributors shall be precluded from purchasing more than two tickets per distributorship for any given U.S. Herbalife Corporate Event.

## 6.     ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT

6.1     <u>Motion for Preliminary Approval</u>.  Promptly upon execution of this Settlement, the Settling Parties shall submit this Settlement Agreement together with its exhibits and shall jointly apply to the Court for entry of the Preliminary Approval Order, which includes provisions that, among other things, will:

6.1.1 Preliminarily approve the Settlement Agreement as being reasonable and the product of good faith negotiations;

6.1.2 Certify for settlement purposes only the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure;

6.1.3 Approve the Claim Form substantially in the form attached as Exhibit C, and approve A.B. Data as the Claims Administrator, or as otherwise proposed by the parties or selected by the Court;

6.1.4 Approve the Notice substantially in the form attached as Exhibit A and the Summary Notice substantially in the form attached as Exhibit B;

6.1.5 Order that the Summary Notice be disseminated in accordance

13

with the Preliminary Approval Order;

6.1.6  Provide that any person falling within the definition of the Settlement Class who desires to be excluded from the Settlement Class must request exclusion by submitting a timely and valid exclusion request, in compliance with the instructions in the Notice of Proposed Settlement, to the Claims Administrator no later than 120 days after the entry of preliminary approval of the Settlement Agreement;

6.1.7  Provide that persons falling within the definition of the Settlement Class who do not file valid and timely requests for exclusion will be: (i) bound by the Final Judgment dismissing the Action on the merits and with prejudice; and (ii) permanently barred and enjoined from commencing, prosecuting, or participating in the recovery in any direct or representative action, or any action in any other capacity, asserting or relating to any of the Released Claims, in the manner described in Section 8;

6.1.8  Find that the notice to be given in accordance with the Preliminary Approval Order (including the contents of the Notice and Summary Notice and the proposed means for effecting notice to persons falling within the definition of the Settlement Class) constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all members of the Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

6.1.9  Order that notice to persons falling within the definition of the Settlement Class shall be structured to be as efficient as possible and to make maximum use of notice by email and other electronic means and that such notice shall be undertaken by the Claims Administrator;

6.1.10 Schedule a Settlement Hearing to consider and determine whether the Settlement proposed under the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Judgment approving the Settlement Agreement and resolving the Action should be entered, and

14

to consider the request for an award of attorney's fees and reimbursement of expenses;

6.1.11  Provide that the hearing on this Settlement Agreement and any request for an award of attorneys' fees and reimbursement of expenses may, from time to time and without further notice to the Settlement Class, be continued or adjourned by order of the Court;

6.1.12  Provide that any Settlement Class Member seeking to object to (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel (an "Objector") shall, no later than 120 days after entry of the Court's Preliminary Approval Order, file a written objection with the Court stating the basis for the Objector's objection(s) and whether the Objector intends to appear at the Settlement Hearing;

6.1.13  Provide that, on the Effective Date, all Settlement Class Members, whether or not they file a Claim Form or sign a release, shall be barred from asserting any Released Claims against any of the Released Parties, and each and all Settlement Class Members shall conclusively be deemed to have released and forever discharged any and all such Released Claims as against all of the Released Parties, in the manner described in Section 8.

6.2  <u>Cooperation</u>.  Herbalife shall cooperate in providing to the Claims Administrator the names, email addresses, Herbalife Event attendance information, last-known addresses of the Settlement Class Members, and all other contact information reasonably necessary for the Claims Administrator to provide the notice contemplated by Section 4.2.1 and this Section 6, to the extent Herbalife has such information.  Such information shall be provided to the Claims Administrator pursuant to a confidentiality agreement.

6.3  <u>Motion for Final Judgment</u>.  If, after the Settlement Hearing scheduled by the Court in the Preliminary Approval Order, the Court approves the Settlement Agreement, then counsel for the Settling Parties shall request that the Court enter

15

Final Judgment.

6.4   Dismissal of Florida Action.   Within three (3) business days of the Effective Date, the related Florida action stylized as *Lavigne, et al. v. Herbalife Ltd., et al.*, Case No. 1:17-cv-23429-MGC (S.D. Fla.) shall be dismissed with prejudice.

**7.   NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING**

7.1   The Settlement is Not an Acknowledgement of Liability or Wrongdoing. Herbalife enters into this Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind. Herbalife continues to deny all of the material allegations in the Complaint and First Amended Complaint and assert that Plaintiffs' claims are without merit.

7.2   The Settlement Raises No Inference of Liability or Wrongdoing.   Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Settlement Agreement by any of the Settling Parties shall be construed as, or shall be used as, or shall raise any presumption or inference of, an admission or concession by or against or respecting Herbalife of the truth of any of the allegations in the Complaint or First Amended Complaint, or of any liability, fault, or wrongdoing.

7.3   The Settlement is Not Evidence of Liability or Wrongdoing.   Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with them shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or be used to create any inference or presumption of liability or an admission of any kind by Herbalife, except as may be necessary to enforce the terms of this Settlement Agreement.

**8.   RELEASE**

8.1   As of the Effective Date and in consideration of this Settlement Agreement and the benefits extended to the Settlement Class, Herbalife Nutrition Ltd., Herbalife International, Inc., and Herbalife International of America, Inc., and

16

each of their present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives, as well as any non-Settlement Class Members who spoke at, presented at, planned, or promoted any Herbalife Event or sold tickets to any Herbalife Event during the Class Period (collectively, the "Released Parties") shall be released and forever discharged by (i) the Named Plaintiffs, for themselves and as the representatives of each Settlement Class Member; (ii) each Settlement Class Member on behalf of himself or herself or itself; and (iii) their respective present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, spouses, and/or representatives (collectively, the "Releasing Parties") from all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, that were or could have been asserted in the Action that are based upon, arise out of, or relate to Herbalife Events, whether organized by Herbalife or independent distributors ("Released Claims").

8.2   The Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Action that the Settlement Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement. With respect to the Released Claims only, the Settlement Class Members stipulate and agree that, upon the Effective Date, the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar

17

provision under federal or state law, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.3     The Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in this Action without regard to the subsequent discovery or existence of such different or additional facts.

8.4     <u>Continuing Jurisdiction</u>.     Except for the enforcement of the Final Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall be barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim.  The Court shall retain jurisdiction to enforce the Final Judgment, releases, and bars to suits contemplated by this Settlement Agreement. It is further agreed that the Settlement Agreement and the Final Judgment may be pleaded as a complete defense to any proceeding subject to this Section.

**9.     EXCLUSION (OPTING OUT) FROM THE SETTLEMENT CLASS**

9.1     Any Person falling within the definition of the Settlement Class who

does not wish to participate in the Net Settlement Fund and be bound by the dismissals and releases provided for in this Settlement Agreement must request exclusion from the Settlement Class.  A request for exclusion must state: (1) the name, address, and telephone number of the Person requesting exclusion, (2) the statement "I wish to exclude myself from the Settlement Class and do not wish to participate in the Settlement in *Lavigne, et al. v. Herbalife*, No. 2:18-cv-07480-JAK (MRWx)" or substantially similar words to this effect that are clear and unambiguous, and (3) signed by the individual personally and not by a lawyer or someone acting on that person's behalf. "Mass" or "class" opt outs made on behalf of multiple persons or classes of persons will be deemed invalid. The exclusion request must be sent by mail or email to the Claims Administrator and postmarked or emailed on or before the date specified in the Preliminary Order. The Claims Administrator shall deliver copies of any and all requests for exclusion to Plaintiffs' Counsel and Herbalife's counsel. The Claims Administrator shall make such deliveries on a weekly basis and shall ensure that the final such delivery is received by Plaintiffs' Counsel and Herbalife's counsel at least thirty (30) days before the Settlement Hearing. Plaintiffs' Counsel shall file any and all such requests for exclusion with the Court at or before the Settlement Hearing.  All Persons who submit valid and timely requests for exclusion in the manner set forth in this Section shall have no rights under this Settlement Agreement, and shall not share in the distribution of the Net Settlement Fund.  All Persons falling within the definition of the Settlement Class who do not request exclusion in the manner set forth in this Section shall be Settlement Class Members and shall be bound by this Settlement Agreement and the Final Judgment. Any Person falling within the definition of the Settlement Class who timely requests exclusion shall, upon approval of the Court, be excluded from the Settlement Class certified pursuant to Fed. R. Civ. Proc. 23(b)(3).

**10.   ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES**

      10.1   <u>Application for Attorneys' Fees and Expenses</u>.  Plaintiffs' Counsel may

apply to the Court at the Settlement Hearing for an award of attorneys' fees and reimbursement of their expenses and costs from the Settlement Fund in an amount to be determined by the Court as a percentage of the entire value of settlement, including monetary and other relief (such as corporate reforms), as a common fund, in accordance with Ninth Circuit Court of Appeals precedent and the pertinent law. Plaintiffs' Counsel anticipates requesting an award of attorneys' fees. Plaintiffs' Counsel will file a separate motion with the Court requesting an award of attorney fees, costs to be reimbursed, and any enhancements from the Settlement Fund in an amount consistent with Ninth Circuit precedent. Plaintiffs and Plaintiffs' Counsel agree that they will not seek to collect any attorneys' fees, expenses, or costs from any source other than the Settlement Fund. To the extent the Court may award fees to counsel for any Settlement Class Member appearing before the Court in connection with the approval or implementation of this Settlement Agreement, such fees shall be payable solely from the Settlement Fund.

10.2   <u>Payment of Attorneys' Fees and Expenses Award</u>.  The attorneys' fees, expenses, and costs approved by the Court to be distributed to Plaintiffs' Counsel shall be paid by the Escrow Agent to Plaintiffs' Counsel from the Settlement Fund within five (5) business days after the Effective Date.

10.3   <u>Named Plaintiffs' Compensation</u>.  The Court may award reasonable incentive compensation to the Named Plaintiffs for their service in the case, which shall come from the Settlement Fund. Any such Court-ordered compensation shall be paid within (5) five business days after the Effective Date. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any incentive compensation to any of the Named Plaintiffs, except as expressly provided in Subsection 4.1.

10.4   <u>No Effect On Settlement</u>.  Any orders or proceedings relating to the application of Plaintiffs' Counsel for an award of attorneys' fees, costs, and expenses shall not operate to terminate or cancel this Settlement Agreement and shall have no

effect on the finality of the Final Judgment to be entered pursuant to this Settlement Agreement.

       10.5  <u>Released Parties Not Responsible for Payment of Award</u>.  The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel from the Settlement Fund that may occur, except as expressly provided in Subsection 4.1.

       10.6  <u>Released Parties Not Responsible for Allocation of Award</u>.   The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel, and any other Person who may assert some claim thereto, of any award of attorneys' fees, costs, or expenses that the Court may make.

**11.    TERMINATION OF SETTLEMENT AGREEMENT**

       11.1  <u>Conditions Permitting Termination</u>.  Herbalife or Plaintiffs may elect to terminate the Settlement Agreement, at their option, in the event that more than five percent (5%) of members of the Settlement Class exclude themselves from the Settlement pursuant to the provisions of Section 9.

       11.2  <u>Procedure for Termination</u>.   In order to terminate this Settlement Agreement pursuant to Subsection 11.1, a party must serve a written notice of termination on the Court and on opposing counsel, by hand delivery or by First-Class Mail. Such written notice must be delivered or postmarked within ten (10) business days after counsel for the party seeking termination of the Settlement Agreement receives from the Claims Administrator the last weekly delivery of copies of requests for exclusion as provided for in Section 9 or within ten (10) business days after the Court grants any additional request for exclusion from the Settlement Class for any reason.

       11.3  <u>Consequences of Termination</u>.  If the Effective Date does not occur or if a party terminates this Settlement Agreement as provided in this Section 11, then this Settlement Agreement shall have no further force or effect and the Settling Parties

shall revert to their respective positions as of the date that the Settlement Agreement was executed by Plaintiffs and Herbalife as though this Settlement Agreement had never been executed. In that event, within five (5) business days after written notification of such event is sent by Herbalife's counsel or Plaintiffs' Counsel to the Escrow Agent, the Settlement Fund, less expenses and any costs which have been disbursed pursuant to Subsections 4.1 and/or 4.2, shall be refunded by the Escrow Agent to Herbalife's counsel. In such event, Herbalife shall be entitled to any tax refund owing to the Settlement Fund. At the request of Herbalife, the Escrow Agent or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Herbalife.

11.4   <u>Inadmissible for Purposes of Certifying a Litigation Class</u>.   If the Settlement Agreement is terminated pursuant to the provisions set forth in this Section 11 or the Effective Date does not occur for any reason, the parties will not offer this Settlement Agreement, any agreement negotiated between the parties in connection with or regarding the Settlement or the Settlement Agreement, or any motion seeking approval of the Settlement or Settlement Agreement in connection with a motion to certify a litigation class or in any other proceeding in this Action.

## 12.   OTHER PROVISIONS OF THE SETTLEMENT

12.1   <u>Public Communications</u>.   The Settling Parties shall consult concerning separate communications to the public with respect to the Settlement, and shall agree that any other public communications regarding the Settlement will be consistent with those communications. For a period of one year from the date the Court issues final approval of the Settlement Agreement, counsel for the Settling Parties agree not to disparage any Settling Parties on social media or in any statement that will be publicly disseminated.

12.2   <u>Stay of Proceedings</u>.   Upon the execution of this Settlement Agreement, all discovery and other proceedings in the Action shall be stayed until further order

of the Court, except for proceedings that may be necessary to implement the Settlement or comply with or effectuate the terms of this Settlement Agreement.

12.3   <u>Restoration to Status Quo Upon Termination</u>.   In the event this Settlement Agreement is not approved by the Court in its present form, or the conditions required for the Settlement Agreement to be consummated do not occur, then the Settling Parties hereto shall be restored to their respective positions as of the date that the Settlement Agreement was executed by Plaintiffs and Herbalife, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties, and to the extent permitted by law, the Settlement Agreement and associated exhibits shall not be used in any action or proceeding for any purpose, and any orders entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated nunc pro tunc.

12.4   <u>Best Efforts and Cooperation</u>.  The Settling Parties acknowledge that it is their intent to consummate this Settlement Agreement. Accordingly, the Settling Parties agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement Agreement and exercise their best efforts to establish the foregoing terms and conditions of the Settlement Agreement. The Settling Parties further agree to cooperate in effecting notice to members of the Settlement Class and in securing the Court's approval of the Settlement.

12.5   <u>Authorization of Counsel</u>.  The undersigned counsel represent that they are fully authorized to execute and enter into the terms and conditions of the Settlement Agreement on behalf of their respective clients.

12.6   <u>Entire Agreement</u>.  This Settlement Agreement (along with the exhibits thereto) constitutes the entire agreement among the Settling Parties and supersedes any prior agreements or understandings between them. All terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted by all Settling Parties. The terms of this Settlement Agreement are and shall be binding upon and inure to the benefit of each of the Settling Parties and Settlement

Class Members, their agents, attorneys, employees, heirs, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the parties hereto, including any Plaintiff or Settlement Class Member.

12.7    Amendment.  This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all parties hereto or their successors in interest. Amendments and modifications may be made without notice to the Settlement Class, unless notice is required by the Court.

12.8    Execution in Counterparts.  This Settlement Agreement may be executed in counterparts or by facsimile, with each counterpart or facsimile signature having the same force and effect as an original. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

12.9    Jurisdiction.  The Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, and execution of the Final Judgment and this Settlement Agreement and all exhibits thereto, with respect to all parties hereto, including all Settlement Class Members.

12.10   Governing Law.   The rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

12.11   Headings.  The headings and subheadings to this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

12.12   Severability.  In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if the Settling Parties all elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Agreement.

1      IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement

2 to be executed on its behalf by its duly authorized counsel of record, all as of the day

3 set forth below.

4

5      ***Local Rule 5-4.3.4(a)(2)(i) Compliance:*** Filer attests that all other signatories

6 listed concur in the filing's content and have authorized this filing.

7 DATED:  May 27, 2022      Mark Migdal & Hayden

8

     By:    /s/ *Etan Mark*

9      Etan Mark

10      Attorneys for Plaintiffs Patricia Rodgers, Jennifer Ribalta, and Izaar Valdez

11

12

13 DATED:  May 27, 2022      Mark T. Drooks

     Paul S. Chan

14      Gopi K. Panchapakesan

     Jonathan M. Jackson

15      Bird, Marella, Boxer, Wolpert, Nessim,

16      Drooks, Lincenberg & Rhow, P.C.

17

18      By:    /s/ *Paul S. Chan*

     Paul S. Chan

19      Attorneys for Defendant Herbalife

20      International of America, Inc.

21

22

23

24

25

26

27

28

STIPULATION OF SETTLEMENT