**PAUL A. LEVIN (State Bar No. 229077)**
**MORTGAGE RECOVERY LAW GROUP LLP**
**550 North Brand Boulevard, Suite 1100**
**Glendale, California 91203**
**TELEPHONE: (818) 630-7900 FASCIMILE: (818) 630-7920**
**EMAIL:     plevin@themrlg.com**

**ETAN MARK (admitted *pro hac*)**
**DONALD J. HAYDEN (admitted *pro hac*)**
**YANIV ADAR (admitted *pro hac*)**
**MARK MIGDAL & HAYDEN**
**80 SW 8th Street, Suite 1999**
**Miami, Florida 33130**
**TELEPHONE: (305) 374-0440**
**EMAIL:     etan@markmigdal.com**
**            don@markmigdal.com**
**            yaniv@markmigdal.com**

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL LAVIGNE, *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>HERBALIFE LTD., *et al.*,<br><br>        Defendants. | CASE NO. 2:18-cv-07480-JAK (MRWx)<br><br>[Related Case 2:13-cv-02488-BRO-RZ]<br><br>**PLAINTIFFS' NOTICE OF MOTION; MOTION FOR CLASS COUNSEL'S ATTORNEY FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS**<br><br><br>Date: October 24, 2022<br>Time: 9:30 AM<br>Courtroom: 10B<br><br>Assigned to Hon. John A. Kronstadt |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Patricia Rodgers, Jennifer Ribalta and Izaar Valdez ("Plaintiffs") will move the Court for an order, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for a preliminary approval of (1) attorneys' fees of $4,166,666 in accordance with Ninth Circuit precedent; (2) reimbursement for incurred expenses; and to grant (3) counsel's request for service awards.

Specifically, the Class requests that the Court:

1. Grant counsel's request for a payment of $4,166,666 of the additional $12,500,000.00 settlement fund ("Settlement Fund"), now pending before the Court for preliminary approval.

2. Grant counsel's request for a payment of $337,926.03 to reimburse incurred litigation costs and expenses.

3. Grant counsel's request for service awards for the named plaintiffs of the additional Settlement Fund. Specifically, awards of $30,000 for Plaintiff Patricia Rodgers; $30,000 for Plaintiff Jennifer Ribalta; and $18,000 for Plaintiff Izaar Valdez.

The Class's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Etan Mark, and the exhibits thereto, the Declaration of Jason Jones, the Declaration of Patricia Rodgers, the Declaration of Jennifer Ribalta, the Declaration of Izaar Valdez, the Court's files and records in this matter, argument of counsel, and such other and further matters as the Court may consider.

1  DATED:  October 21, 2022          Mark Migdal & Hayden

2

3                                    By:

4                                         _____

5                                         Etan Mark
                                          Attorneys for Plaintiffs Patricia Rodgers,
6                                         Jennifer Ribalta, and Izaar Valdez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   INTRODUCTION ...................................................................................... 1

    A.   The Settlement ............................................................................... 1

    B.   The Pending Requests for Attorneys' Fees and Reimbursement of Expenses ............................................................................... 4

II.  LEGAL STANDARD ................................................................................ 5

    A.   Attorneys' Fees .............................................................................. 5

    B.   Costs Reimbursement .................................................................... 5

III. THE COURT SHOULD AWARD THE CLASS'S COUNSEL $4,166,666.66 – 33.33% PERCENT OF THE FUND – AS A PARTIAL PAYMENY OF THEIR FEES ACCRUED AS OF DATE ............ 5

    A.   The Percentage-of-the-Fund Method for Calculating Fees is Appropriate Here ......................................................................... 5

    B.   The *Vizcaino* Factors Warrant Granting Counsel's Fee Request ........... 7

        1.   Counsel Obtained an Exceptional Result for the Plaintiffs ......... 7

        2.   Counsel Have Taken Significate Risks Prosecuting This Litigation ......................................................................... 9

        3.   Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill ............................... 9

        4.   Awards in Similar Complex Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award ........................... 10

        5.   Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Class's Claims ...... 11

    C.   Londestar Cross-Check Confirms That the Fee Sought by Class Counsel Are Reasonable ................................................................ 12

IV.  THE COURT SHOULD GRANT CLASS COUNSEL $337,926,05 FOR THEIR COSTS ADVANCED FROM SEPTEMBER 18, 2017,

|     | TO PRESENT ............................................................................................. 13 |
| V.  | THE COURT SHOULD GRANT SERVICE AWARDS TO THE NAMED PLAINTIFFS IN LIGHT OF THEIR SUBSTANTIAL CONTRIBUTIONS TO THE LITIGATION.................................................. 14 |
| VI. | CONCLUSION ........................................................................................... 15 |

1

## <u>TABLE OF AUTHORITIES</u>

2

3    Cases                                                                  Page(s)

4    *Aichele v. City of Los Angeles*,
     2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) .................................................6

5    *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431 (E.D. Cal. 2013).....................9

6    *Beaver v. Tarsadia Hotels*,
     No. 11-cv-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sep. 28, 2017)........11

7    *Bellinghausen v. Tractor Supply Co.*,
8    306 F.R.D. 245 (N.D. Cal. 2015) ...........................................................6

9    *Boeing Co. v. Van Gemert*,
     444 U.S. 472 (1980)............................................................................5

10   *Boyd v. Bank of Am. Corp.*,
     No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)
11   ......................................................................................................11

12   *Carlin v. Dairy America, Inc.*,
     380 F.Supp.3d 998 (E.D. Cal. 2019) ......................................................6

13   *Carter v. San Pasqual Fiduciary Tr. Co.*,
14   No. SACV 15- 1507 JVS (JCGx), 2018 WL 6174767 (C.D. Cal. Feb. 28, 2018)11

     *Cook v. Niedert*,
15   142 F.3d 1004 (9th Cir. 1998) ..............................................................14

16   *Fischel v. Equitable Life Assur. Soc'y of U.S.*,
     307 F.3d 997 (9th Cir. 2002) .................................................................5

17   *Gomez v. USF Reddaway Inc.*,
18   LACV1605572JAKFFMX, 2020 WL 10964592 (C.D. Cal. Mar. 30, 2020) .......15

19   *Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ..............................................................6

20   *Harris v. Marhoefer*,
     24 F.3d 16 (9th Cir. 1994) ...................................................................13
21

22   *In re Am. Apparel, Inc. S'holder Litig.*,
     2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) ..........................................5

23   *In re Bluetooth Headset Prods. Liab. Litig.*,
     654 F.3d 935 (9th Cir. 2011) .................................................................6
24
     *In re Facebook Biometric Info. Priv. Litig.*,
25   522 F. Supp. 3d 617 (N.D. Cal. 2021).....................................................14

26   *In re Korean Air Lines Co. Antitrust Litig.*,
     No. CV 07-05107 SJO (AGRx), 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013)....6

27   *In re Media Vision Technology Securities Litigation*,
     913 F. Supp. 1362 (N.D. Cal. 1996).......................................................13
28
     *In re Nat'l Collegiate Athl. Ass'n Athl. Grant-In-Aid Cap Antitrust Litig.*,

768 F. App'x 651 (9th Cir. 2019) .......................................................................... 4

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 7

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................................ 14

*In re Quantum Health Resources, Inc. Sec. Litig.*,
962 F. Supp. 1254 (C.D. Cal. 1997) ................................................................... 5

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................................ 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............................................................................. 5

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
909 F.3d 272 (N.D. Cal. 2018) .......................................................................... 5

*Mauss v. NuVasive, Inc.*,
Case No. 13cv2005 JM ( JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...... 13

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ........................................................................................... 5

*Moreyra v. Fresenius Med. Care. Holdings, Inc.*,
No. SACV 10-517 JVS (RZx), 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) .... 11

*Perez v. Rash Curtis & Assocs.*,
No. 16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ................ 5

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ........................................................................... 6

*Rodriguez v. West Publishing*,
563 F.3d 948 (9th Cir. 2009) ........................................................................... 14

*Rosado v. Ebay Inc.*,
No. 5:12-CV04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ............. 13

*Smith v. CRST Van Expedited, Inc.*,
No. 10-cv1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .......... 11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................ 9, 14

*Syed v. M-I, L.L.C.*,
No. 1:12-cv-01718-DAD-MJS, 2017 WL 3190341 (E.D. Cal. July 26, 2017) .... 10

*Thornberry v. Delta Air Lines*, Inc.,
676 F.2d 1240 (9th Cir. 1982) ......................................................................... 13

*Torres v. Pick-A-Part Auto Wrecking*,
No. 1:16-cv-01915-DAD-BAM, 2018 WL 3570238 (E.D. Cal. July 23, 2018) ... 10

*Trosper v. Stryker Corp.*,
No. 13-CV-00607-LHK, 2015 WL 5915360 (N.D. Cal. Oct. 9, 2015) ............... 13

*Van Vranken*,
901 F. Supp. 294 ............................................................................................. 13

vi

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) .................................................................................. 14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................... 6, 11, 12, 13

Rules

Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure ............................. i

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

Counsel for the Settlement Class Members[1] submit this supplemental briefing pursuant to the Court's order. ECF No. 390. Counsel for the Settlement Class Members, which includes the law firms of Mark Migdal & Hayden, Jason Jones, Attorney at Law, Mortgage Recovery Law Group, LLP, and Jennifer Jones Law (together, "Counsel"), and the named Plaintiffs have been working for more than five years to obtain recovery for the Settlement Class Members. This case began in the Southern District of Florida, where, following Herbalife's successful motion to transfer venue and Herbalife's and the Florida individual Defendants' (of whom there were 44 at the time) unsuccessful motion to compel arbitration, this case was split. The bifurcated action proceeded in both the Southern District of Florida and Central District of California with a detour at the 11th Circuit Court of Appeals. This complex journey navigated by Counsel for the Settlement Class and the named Plaintiffs was rife which obstacles warranting Settlement Class Counsel to seek an award of (1) $4,166,666 for fees (33% of the Settlement Fund); (2) $337,926.03  to fully reimburse incurred litigation costs and expenses; and (3) service awards for the named plaintiffs in the amount of $30,000 for Plaintiffs Patricia Rodgers and Jennifer Ribalta and $18,000 for Plaintiff Izaar Valdez.

### A. <u>The Settlement</u>

This case was filed on September 18, 2017. Since then, Class Counsel—all of whom work on a contingency basis—have devoted substantial time which has not been compensated and have advanced costs on behalf of the Class. The Settlement, if approved, provides Class Counsel the opportunity to be compensated for their hard and successful work for the benefit of the Class, and to receive reimbursement for

---

[1] Capitalized terms used herein are defined with reference to the Settlement Agreement.

costs incurred in the litigation. On a cumulative basis, the total amount of attorneys' fees amounts to one-third of the fund which Class Counsel has recovered for the benefit of the Class in this case.

The sheer amount of work put in by Class Counsel is borne out by the time records summary attached as an Exhibit to the contemporaneously filed Declaration of Etan Mark ("Mark Decl."), attached hereto as **Exhibit A**, and the Declaration of Jason Jones, attached hereto as **Exhibit B**, but the following points are worth emphasizing:

- The Settlement fully and completely resolves two intertwined matters: *Lavigne, et al. v. Herbalife Ltd.*, Case No. 1:17-23429-MGC (S.D. Fla.) (the "Florida Action") and this action. Class Counsel spent approximately 2,500 hours on the Florida Action, approximately 7,200 hours on this action,[2] for a total approximate amount of fees in the amounts of $1.1 million and $3.45 million, respectively. The scope of the two actions is the same: they both involve claims regarding the same Herbalife Events, and they both involve claims brought on behalf of the same class that the parties seek to certify through a settlement here. The primary distinction was that considering the absence of a contractual relationship between the individual defendants named in the Florida action and the named Plaintiffs, there was no legal basis to transfer the Florida Action to this district. The absence of that provision resulted in the bifurcation of the case pursuant to Judge Cooke's order on August 23, 2018. *See* Florida Action at ECF No. 106. The parties to the Florida Action moved to stay that case pending final approval of a class wide settlement here, with the intention of dismissing the Florida Action should this Court finally approve the parties' proposed class Settlement. *See* Florida Action, ECF No. 235; Mark Decl. at ¶ 4.

---

[2] For purposes of this Motion, Plaintiffs are referring to the litigation prior to the case being bifurcated as part of "this" action, while referring to the litigation in Florida after bifurcation as the Florida Action.

**<u>Case Dispositive Filings</u>**

- Class Counsel staved off several case dispositive filings, including a motion to compel arbitration [Florida Action ECF No. 62] and multiple motions to dismiss in this action and the Florida Action. *Id.*

- In the Florida Action, after the motion to compel arbitration was denied, the Defendants appealed that order to the 11th Circuit Court of Appeals. The matter was briefed, and, after holding argument, the 11th Circuit Court of Appeals affirmed the trial court. ECF No. 106 (the "Order Re: Arbitration").

- The day before Herbalife filed its second Motion to Dismiss, Plaintiffs filed their Motion to Certify Class ("Class Certification Motion") which was also briefed and argued before the Court. *See* ECF Nos. 207, 218, 234, and 261. *Id.*

- While the Second Motion to Dismiss and Class Certification Motion were pending, the parties extensively briefed Herbalife's Motion for Summary Judgment (ECF No. 322) and collectively filed eight separate *Daubert* motions, each of which was fully briefed. *See* ECF Nos. 323-338, 341-349. *Id.*

- Herbalife ultimately withdrew its Second Motion to Dismiss (ECF No. 350), answered the First Amended Complaint (ECF No. 352), and the parties subsequently fully briefed Plaintiffs' Motion to Strike Herbalife's Affirmative Defenses (ECF No. 359). *Id.*

- Once the Eleventh Circuit issued its mandate in August 2020, the parties in that action engaged in two rounds of briefing on the Individual Defendants' Motion to Dismiss, and had oral argument before Judge Cooke on that motion to dismiss. At the time of Settlement, Plaintiffs were in the process of amending their complaint. *Id.*

**<u>Discovery</u>**

- The Defendants produced more than 400,000 pages of documents in the cases, which documents were used in both actions. Mark Decl. at ¶ 4. Mr. Jones,

3

counsel for the Plaintiffs, expended hundreds of hours reviewing these documents, watching videos, and investigating the allegations in painstaking detail. *See* Jones Decl. at ¶¶ 4, 6.

- Forty depositions were taken. Mark Decl. at ¶ 4.

- Hundreds of hours of video from events were produced and watched as well.

- In the California Action, Plaintiffs had seven separate discovery hearings before Magistrate Judge Michael R. Wilner (ECF Nos. 176, 190, 191, 206, 221, 253, and 288); there were also seven discovery hearings before Magistrate Judge Goodman in the Southern District of Florida. *Id.*

- The parties also engaged in extensive expert discovery. Both sides collectively designated eight experts. Each prepared an expert report and each was deposed. *Id.*

## B. <u>The Pending Requests for Attorneys' Fees and Reimbursement of Expenses</u>

Counsel's request for an award of attorneys' fees from the pending settlements in the amount of $4,166,666 is consistent with the Ninth Circuit's permitted fee awards calculated using the "percentage-of-the-fund" approach. See *In re Nat'l Collegiate Athl. Ass'n Athl. Grant-In-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). Class Counsel have taken a significant risk, invested substantial amounts of their time and money on a contingent basis, and forgone other work opportunities to dedicate their professional efforts to this case. *See* Mark Decl. at ¶ 4.

In support of this Motion, Class Counsel has submitted declarations summarizing its time and expenses.

## II.    LEGAL STANDARD

### A. Attorneys' Fees

The Supreme Court has explained that "'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Indep. Living Ctr. of S. Cal., Inc. v. Kent,* 909 F.3d 272, 284 (N.D. Cal. 2018) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); see also *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The underlying premise is the existence of risk—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition, attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labors created the fund. See *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994).

### B. Costs Reimbursement

Counsel may obtain reimbursement for costs from a common fund settlement. *In re Am. Apparel, Inc. S'holder Litig.,* 2014 WL 10212865, at *28 (C.D. Cal. Jul. 28, 2014). "'The prevailing view is that expenses are awarded in addition to the fee percentage.'" *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (citations omitted).

## III.   THE COURT SHOULD AWARD THE CLASS'S COUNSEL $4,166,666—33.33% PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DATE

### A. The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v.*

5

*Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Where there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); see also *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015). Courts supervising class actions in this District apply the percentage of the fund approach. *Aichele v. City of Los Angeles*, 2015 WL 5286028, at *4 (C.D. Cal. Sept. 9, 2015). The Court should do so as well here.

"In the Ninth Circuit, the benchmark for percentage of recovery awards is 25 percent of the total settlement award, which may be adjusted up or down." *Carlin v. Dairy America, Inc.*, 380 F.Supp.3d 998, 1019 (E.D. Cal. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Selection of the benchmark or any other rate, however, must be supported by findings that account for all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. See *id*. at 1048-50. The complexity of this case, the significant benefits achieved for the Settlement Class and the work performed support an upwards adjustment.

### B. The *Vizcaino* Factors Warrant Granting Counsel's Fee Request

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $4,166,666, which amounts to 33.33% of the Settlement Fund.

#### 1. Counsel Obtained an Exceptional Result for the Plaintiffs.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Assuming liability could be proven, the Plaintiffs' potential damages theories ranged from under $4MM to $121.1MM. Significant fluctuation in these ranges depended on whether Plaintiffs would be able to prove any damages for non-Herbalife corporate events (or "STS" events), whether Plaintiffs would be able to extend the time period for claims back to 2009 (instead of 2013 – four years before the Florida Action was filed), whether damages for those distributors who signed an arbitration agreement would be recoverable, and whether the damages for the putative class would be limited pursuant to a private one-year statute of limitations in the distributor agreements. If, for example, STS event damages could not be proven and the Plaintiffs were held to a four-year statute of limitations from when they first discovered their injury (which Herbalife argued was at the time they realized they were losing money), then the maximum recoverable damages for the Plaintiffs was $21MM. ECF. No. 322 at 21.; Mark Decl. at ¶ 6.

For the reasons discussed in Herbalife's Motion for Summary Judgment (ECF No. 322) and Herbalife's Response in Opposition to Plaintiff's Motion to Certify the Class (ECF No. 218), this litigation was fraught with risk. Aside from the risks associated with the class not being certified, there was a possibility of large swaths of the damages sought in this action being excluded based on statutes of limitations defenses, the applicability of the *Bostick* release, the contention that the alleged "fraud" was mere puffery, the contention that the vast majority of Herbalife distributors reported recognizing "value" from events, and the conclusions of

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Herbalife's correlation expert that there is a statistically positive correlation between those who attend events and the amount of money they earn pursuing the Herbalife opportunity. *See generally* ECF No. 218.

For that reason, the extensively negotiated mediator's proposal was agreed to so a significant recovery for a class was ensured for the Settlement Class Members who might have otherwise obtained nothing.

In addition to the significant monetary recovery obtained here, Herbalife has also agreed to substantial injunctive relief that drastically alters Herbalife's corporate policies as it pertains to events and the event system. Mark Decl. at ¶ 9.

As alleged in the Amended Complaint, Plaintiffs contend in this action that Herbalife's Circle of Success is premised on a combination of emotional manipulation and peer pressure; coupled with statements guaranteeing financial success or statements in which attendees are told attendance is "mandatory." *See* ECF No. 202 at ¶¶ 1, 4, 5, 7. Specific examples of high-level distributors stating that event attendance is mandatory or directly correlating event attendance to financial success within Herbalife are referenced throughout the Amended Complaint and in the Plaintiffs' briefing. *See id.* at ¶ 7 ("If you go to all of the events . . . you will get rich"); ¶ 56 ("There is a DIRECT CORRELATION between the amount of people you bring to an event and your position in the Herbalife Marketing Plan"); ¶¶ 59-60 ("MY ABILITY TO GROW A ROYALTY CHECK IS COMPLETELY DEPENDENT ON MY ABILITY TO GET PEOPLE TO EVENTS"). *See also* ECF No. 339 at 7-8 (examples of "the narrative that event attendance leads to financial success is a central component of Herbalife's manipulative event system"). Mark Decl. at ¶ 10.

Further, "a primary focus of each event is aggressively encouraging distributors to attend future events – and using hard-selling tactics to get participants to purchase their non-refundable tickets on site." ECF No. 339 at 10-11; Mark Decl. at ¶ 11.

The injunctive relief obtained here directly mitigates these alleged tactics. As a result of the Settlement, Herbalife is required to amend its corporate policies to state

8

that event attendance is not mandatory, to state that event attendance does not guarantee financial success, to include disclaimers on all event promotional materials, and to amend its policies to allow for a refund for any ticket purchases within 24 hours of purchase. *See* ECF No. 282 at ¶ 5.1.1 – ¶ 5.1.5; Mark Decl. at ¶ 12.

It is impossible to place a monetary value on this hard-fought injunctive relief. In considering, however, the requested upward adjustment in Counsel's fees, "courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

### 2. Counsel Have Taken Significant Risks Prosecuting This Litigation.

Counsel assumed a significant risk in undertaking this litigation. See Mark Decl., ¶ 20. By its nature, recovery is never guaranteed in contingency litigation. Counsel committed their time, money, and energy to the prosecution of a multi-year, multi-district litigation against more than 20 defendants represented by three separate sets of excellent law firms. *See id*. This case is complex, and complex RICO cases often take years to resolve through settlement, trial, or appeal— indeed, this litigation has now lasted over 5 years. *See id*. Class Counsel have expended millions of dollars of their time and incurred hundreds of thousands of dollars in expenses, all on a purely contingent basis. Counsel have turned away other case opportunities over the last five years to dedicate the time and resources needed to prosecute the Class's claims. *Id.*

### 3. Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill.

The docket and the procedural history in this this case demonstrate Class Counsel's expertise and the Class's successes to date. Counsel have done much to prosecute the Class's claims effectively and efficiently. Counsels' success was hard won. Defendants have hired excellent defense counsel to defend them against the Class's claims. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D.

9

Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Indeed, Class Counsel has litigated this case to a successful conclusion despite multiple motions to dismiss, a motion for summary judgment, an opposition to class certification, motions to disqualify experts and 40 depositions.

### 4. Awards in Similar Complex Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.

It is challenging to assess the requested fee award compared to a likely recovery because many potentially dispositive questions remained unresolved – putting aside whether the class would be certified at all. Would a four-year statute of limitations apply beginning in 2013? Would a one-year private statute of limitations apply? Would damages associated with STS tickets be recoverable? Would individuals who signed arbitration clauses be included in the class? Would the *Bostick* release apply and eviscerate the entire class?

Although it is hard to predict which of the different damages outcomes was "most likely," certainly one very possible outcome was an assessment of $38 million in damages against Herbalife, which represented the damages of all events, including STS events, limiting claims to those arising four years prior to the filing of the lawsuit and excluding those distributors who signed arbitration agreements. Under that scenario, a $12.5 million settlement represents a 32.8% recovery of the $38 million of damages for any distributor who attended his/her first event after August 2013 which is four years prior to the filing of the complaint. Courts in the Ninth Circuit have awarded 33% of attorneys' fees from the common fund to lawyers who obtained settlement amounts that comprised similar percentage shares of claimed amount of damages. See, e.g., *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 3190341, at *4, 6-8 (E.D. Cal. July 26, 2017) (awarding one-third in fees when the common fund represents 35% of damages); *Torres v. Pick-A-Part Auto Wrecking*, No. 1:16-cv-01915-DAD-BAM, 2018 WL 3570238, at *5, 7 (E.D. Cal. July 23, 2018) (awarding one-third in fees when the common fund represents between 5% and 44%

of damages); *Carter v. San Pasqual Fiduciary Tr. Co.*, No. SACV 15- 1507 JVS (JCGx), 2018 WL 6174767, at *4 (C.D. Cal. Feb. 28, 2018) (awarding one-third in fees when the common fund represents 35% of damages); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *9-12 (C.D. Cal. Nov. 18, 2014) (awarding one-third in fees when the common fund represents 36% of damages); *Moreyra v. Fresenius Med. Care. Holdings, Inc.*, No. SACV 10-517 JVS (RZx), 2013 WL 12248139, at *3- 4 (C.D. Cal. Aug. 7, 2013) (awarding one-third in fees when the common fund represents 32% of damages). Indeed, "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sep. 28, 2017). Moreover, "[d]istrict courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." Id. at *10. *See also Smith v. CRST Van Expedited, Inc.*, No. 10-cv1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.").

As these precedents demonstrate, Class Counsel's request is consistent with recognized "market rates," i.e., rates typically awarded in similar contingency fee cases in this District and across the United States, see *Vizcaino*, 290 F.3d at 1050, particularly in light of the posture of the litigation and the state of the Class's evidence here.

### 5. Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Class's Claims

Counsel have invested significant amounts of time, money, and resources in this case for over five years, as shown in their time and expense records. Class Counsel's time submissions— approximately $4.8 million total lodestar billed to date—illustrates the point. Mark Decl., ¶ 4. This litigation has required a significant devotion of Class Counsel for the past few years including:

---

11

- **Discovery:** Class Counsel undertook significant discovery efforts in this case. Discovery included drafting discovery responses, evaluating, and analyzing defendants' discovery responses, including document productions, managing hundreds of thousands of documents, and 40 depositions.

- **Motion Practice:** Class Counsel prepared, edited, and briefed various court filings, including several dispositive motions. This included responses to motions to dismiss, a motion to compel arbitration, a motion to transfer venue, over a dozen discovery disputes, responding to and drafting eight Daubert motions or responses to Daubert motions, and responding to a motion for summary judgment. Class Counsel also selected and prepared the Class's expert witnesses and reports, oversaw and coordinated the work of its experts.

- **Case Management:** Class counsel diligently communicated with Class members, responded to inquiries concerning the status of the case and settlement and coordinated various notice and claims management issues.

- **Mediation and Settlement:** Class counsel expended significant efforts to negotiate a successful resolution of this case, participating in multiple mediations over many months, ultimately leading to a mediator's proposal consistent with that submitted herein.

Mark Decl., ¶ 4.

### C. Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050. "[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306-07 (3d Cir. 2005)) (citation omitted).

On a cumulative basis, the total amount of attorneys' fees is $4,564,848.50. Mark Decl. at 4. In the Ninth Circuit, a lodestar multiplier of around four has frequently been awarded in common fund cases such as this. See *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held "within the range of multipliers applied in common fund cases"); *see also Van Vranken*, 901 F. Supp. 294 at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."). Here, Plaintiff is seeking a negative multiplier of approximately .91 – passing the lodestar check. *See Rosado v. Ebay Inc.*, No. 5:12-CV04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (conducting a lodestar cross-check and finding that a negative multiplier "strongly suggests the reasonableness of the negotiated fee").

## IV.    THE COURT SHOULD GRANT CLASS COUNSEL $337,926.05 FOR THEIR COSTS ADVANCED FROM SEPTEMBER 18, 2017, TO PRESENT

Counsel requests the amount of $337,926.03 to reimburse incurred litigation costs and expenses that have not been reimbursed. Mark Decl., ¶ 22.

It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," i.e., costs "incidental and necessary to the effective representation of the Class." *Trosper v. Stryker Corp.,* No. 13-CV-00607-LHK, 2015 WL 5915360, at *1 (N.D. Cal. Oct. 9, 2015) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Reasonable reimbursable litigation expenses include those for document production, experts and consultants, depositions, translation services, travel, mail, and postage costs.[3] Under the common fund doctrine, plaintiffs'

---

[3] See, e.g., *In re Media Vision Technology Securities Litigation*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage,

counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See generally Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977).

## V.   THE COURT SHOULD GRANT SERVICE AWARDS TO THE NAMED PLAINTIFFS IN LIGHT OF THEIR SUBSTANTIAL CONTRIBUTIONS TO THE LITIGATION.

Class Counsel seeks service awards for the three named class representatives: $30,000.00 for Patricia Rodgers, $30,000.00 for Jennifer Ribalta, and $18,000.00 for Izaar Valdez. Service awards are "fairly typical in class action cases." *Rodriguez v. West Publishing,* 563 F.3d 948, 958 (9th Cir. 2009). Service awards are particularly appropriate when the litigation is "complicated" and "took up quite a bit of the class representatives' time." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015); accord *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633-34 (N.D. Cal. 2021). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (9th Cir. 1998); accord *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).

The named Plaintiffs undertook significant action to protect the interests of the class. Each of the named Plaintiffs maintained close contact with Class Counsel throughout the case, produced thousands of documents during the course of this complex litigation, Ms. Ribalta and Ms. Rodgers were subjected to multiple depositions, and devoted hundreds of hours in assisting Class Counsel in this case,

---

telephone/fax); *Thornberry v. Delta Air Lines*, Inc., 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), remanded on other grounds, 461 U.S. 952(1983); *Mauss v. NuVasive, Inc.*, Case No. 13cv2005 JM ( JLB), 2018 WL 6421623, at *8-9 (S.D. Cal. Dec. 6, 2018) (online research, press release and newswires).

expending a great deal of time and effort. Attached hereto as **Exhibits C, D and E** are the Declarations of Ms. Rodgers, Ms. Ribalta and Ms. Valdez, respectively. *See* Rodgers Decl., ¶¶ 3-10; Ribalta Decl., ¶¶ 3-10; and Valdez Decl. at ¶¶ 3-9. Specifically, Ms. Ribalta and Ms. Rodgers have both attested to spending between 250-300 hours on this case, while Ms. Valdez spent approximately 180 hours. *See also* Mark Decl. at ¶¶ 17-18.

Counsel is mindful that the requested incentive award is atypically high. However, as all three have attested, over the past five years, this litigation has had a significant negative impact on their lives and their relationships, including being cut-off from friends and other close personal relationships. *See* Rodgers Decl., ¶ 4; Ribalta Decl., ¶ 4; and Valdez Decl. at ¶ 4; Mark Decl. at ¶¶17-18. This, coupled with the time and assistance each Plaintiff provided, including in some cases having to travel to miss work to travel to Los Angeles (Ms. Ribalta and Ms. Valdez), the trauma of losing a spouse during the litigation (Ms. Rodgers), enduring two, separate full-day depositions (Ms. Ribalta and Ms. Rodgers), and spending many, many hours collecting and reviewing documents, warrants this atypically high incentive award. *See* Rodgers Decl., ¶¶ 3-10; Ribalta Decl., ¶¶ 3-10; and Valdez Decl. at ¶¶ 3-9. The Court should preliminarily approve these amounts. *See Gomez v. USF Reddaway Inc.*, LACV1605572JAKFFMX, 2020 WL 10964592, at *18–20 (C.D. Cal. Mar. 30, 2020).

## VI.   CONCLUSION

For the reasons set forth above, Counsel requests the Court grant its request for payment of $4,166,666 in attorneys' fees, $337,926.03 in reimbursable costs, and $78,000 in service awards.

1    DATED:  October 21, 2022          Mark Migdal & Hayden

2

3                                       By: _____

4

5                                       Etan Mark
                                        Attorneys for Plaintiffs Patricia Rodgers,
6                                       Jennifer Ribalta, and Izaar Valdez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28